IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 02-306C |
| v. | ) | |
| | ) | (Judge Hewitt) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S SECOND MOTION TO COMPEL

Pursuant to RCFC 37(a)(2)(B),[1] defendant, the United States, respectfully requests that the Court issue an order compelling plaintiff, Renda Marine, Inc. (Renda), to answer Interrogatories Nos. 4 and 5 contained in "Defendant's Second Set of Interrogatories and Fourth Request for Production of Documents." As required by Rule 37(a)(2)(B) and ¶ 10 of Appendix A to the Rules of the Court of Federal Claims, defendant's counsel has in good faith attempted to confer with plaintiff's counsel with respect to these discovery requests to resolve the matters in dispute. On December 31, 2003, defendant's counsel attempted to contact plaintiff's counsel to discuss Renda's responses to Interrogatories Nos. 4 and 5, but he was not available. Defendant's counsel left a voice mail message for plaintiff's counsel. To date, however, he has not returned defendant's counsel's telephone call. Under the amended pretrial schedule adopted by the Court on September 10, 2003, the deadline for completing fact discovery is January 14, 2004. Therefore, we are filing this motion without further delay.

---

1 Rule 37(a)(2)(B) provides, in relevant part, that "[i]f a party fails to answer an interrogatory submitted under RCFC 33 . . . , the discovering party may move for an order compelling an answer, . . . or an order compelling inspection in accordance with the request." For purposes of this rule, "an evasive or incomplete [answer or response] is to be treated as a failure to [answer or respond]." RCFC 37(a)(3).

BACKGROUND

This case involves claims governed by the Contract Disputes Act of 1978, as amended (41 U.S.C. §§ 601-13), arising under or relating to a contract between Renda and the United States, acting through the Army Corps of Engineers, Galveston, Texas District, to dredge part of the Galveston-Houston Ship Channel and to construct levees at the Lost Lake Placement Area for dredged material. This contract is referred to in the complaint and other documents as the "Upper Bayou Project." The complaint seeks damages, in the aggregate, of approximately $14.25 million, plus interest, based upon numerous alleged differing site conditions encountered by Renda during the course of contract performance.

The claim that is the subject of the Government's Interrogatories Nos. 4 and 5 is the so-called "Lost Lake Levees Claim" for $6,258,853. See Complaint, at ¶¶ 148-197, and "Summary" of claims at page 29 of the complaint. The claimed $6,258,853 in damages is computed upon a "modified total cost" basis. See "Hydraulic Levee Construction Project Claim Accounting Modified Total Cost Approach" chart, Def. App. 13.[2/] This amount represents the difference between $30,827,513.16 (alleged actual costs for the Upper Bayou Project) and $24,568,660.16 (the sum of payments by the Government to Renda under the contract and the amounts of Renda's seven other claims relating to the Upper Bayou Project). Id. The $30,827,513.16 of alleged actual costs for the Upper Bayou Project includes $24,663,589 for "actual total costs to date," to which are added "Company Overhead" ($1,233,179.45), "Home Office Overhead" ($1,627,796.87), and "Profit" ($3,302,947.84). Id. Renda's Lost Lake Levees Claim, however, does not identify the cost components of the $24,663,589 for "actual total costs to date" or state how that figure was computed.

---

[2] "Def. App. ____" refers to the referenced page(s) of the appendix to this motion.

THE GOVERNMENT'S DISCOVERY REQUEST

On November 25, 2004, the Government served Renda with "Defendant's Second Set of Interrogatories and Fourth Request for Production of Documents." Def. App. 1-14. In Interrogatory No. 4, the Government requested:

> Identify each category or component of cost (e.g., labor, equipment, materials, vendor costs, shop cost allocation) contained in the $24,663,589 figure in the column "Actual Project Costs" in the chart "Hydraulic Levee Construction Project Claim Accounting Modified Total Cost Approach," a copy of which is appended to this interrogatory, and, for each such category or component of cost, identify the accounting or other document(s) upon which that category or component of cost is based.

Def. App. 9. In Interrogatory No. 5, the Government requested:

> State in a step-by-step fashion the calculation or computation resulting in the $24,663,589 figure in the column "Actual Project Costs" in the chart "Hydraulic Levee Construction Project Claim Accounting Modified Total Cost Approach," a copy of which is appended to this interrogatory.

Def. App. 10.

Renda responded to each of those interrogatories as follows:

> Renda produced such information to the DCAA auditors that Defendant brought in to analyze Renda's claim. Renda invokes Federal Rule of Civil Procedure 33(d), inasmuch as the burden of ascertaining or deriving an answer to this interrogatory from documents Renda has produced or will produce is substantially the same for Defendant.

Def. App. 17.

ARGUMENT

Renda asserts that it "produced [the information requested by Interrogatories Nos. 4 and 5] to the DCAA auditors that Defendant brought in to analyze Renda's claim." Def. App. 17. That is incorrect. Renda did *not* provide the explanatory information sought by these discovery

requests to DCAA. In its audit report concerning the Lost Lake Levees Claim, DCAA noted that Renda "applied indirect cost allocations from on-site and corporate office and profit to the total amount of $24,663,589" of alleged total actual cost for the Upper Bayou Project, that "[t]his total amount was not identified to specific elements," and that DCAA was "unable to verify the $24,663,589 to [Renda's] accounting books and records." DCAA Audit Report No. 3511-2003M17200012 dated December 12, 2003, at 4, Def. App. 23. The audit report further states that Renda "*indicates that it will, at a later date, prepare and break out the claimed costs and provide them for either settlement or an appeal through the agency board of contract appeals or the U.S. Court of Federal Claims*." Id. (emphasis added). The DCAA work papers relating to the audit of the Lost Lake Levees Claim do not contain any document(s) provided by Renda to DCAA that (a) identify each category or component of cost (e.g., labor, equipment, materials, vendor costs, shop cost allocation) contained in the $24,663,589 figure in the column "Actual Project Costs" in the chart "Hydraulic Levee Construction Project Claim Accounting Modified Total Cost Approach" appended to Renda's certified claim and the documents upon which each such cost component is based or (b) provide a step-by-step statement of the calculation or computation of that figure. See Kosloske Declaration ¶ 4, Def. App. 38.[3]

Even assuming for the sake of discussion that Renda had provided DCAA auditors with the explanatory information requested by Interrogatories Nos. 4 and 5, that would not constitute a legitimate basis for refusing to answer those discovery requests. An interrogatory "shall be answered separately and fully in writing under oath," RCFC 33(b), and interrogatories "may

---

[3] If, as it asserts, Renda provided the DCAA auditors with the explanatory information requested by Interrogatories Nos. 4 and 5, it easily could have, and in good faith should have, incorporated that information into answers to the Government's discovery requests.

relate to any matters which can be inquired into under RCFC 26(b)(1),[[4]] and the answers may be used to the extent permitted by the rules of evidence." RCFC 33(c). The Court's rules make no exception for discovery requests that pertain to information provided by a party to Government auditors during the course of an audit of a claim.[5] Renda, moreover, does not suggest that providing the requested break out of the cost components of the $24,663,589 figure and identification of related documents (which are the subject of Interrogatory No. 4) or the step-by-step explanation of how it computed that amount (which is the subject of Interrogatory No. 5) would be oppressive or unduly burdensome or expensive.

In response to Interrogatories Nos. 4 and 5, Renda also "invokes Federal Rule of Civil Procedure 33(d), inasmuch as the burden of ascertaining or deriving an answer to this interrogatory from documents Renda has produced or will produce is substantially the same for Defendant.." Def. App. 17. We disagree. RCFC 33(d) may not be invoked here and, in any event,

---

[4] Rule 26(b)(1) provides, in relevant part, that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter."

[5] The DCAA audit of Renda's claims in this case was not even undertaken at the request of the Department of Justice. Kosloske Declaration ¶ 5, Def. App. 38. The DCAA audit was requested by Thomas Benero, an employee of the Army Corps of Engineers. See April 29, 2002 letter from Mr. Benero to DCAA, Def. App. 36. The onsite part of DCAA's audit of Renda's claims, including the Lost Lake Levees Claim, which began on April 15, 2002, just four days after Renda instituted suit in this Court upon the claims, was completed the week ending May 10, 2002, more than 3-1/2 months *before* the Government was permitted by the Court's rules to *seek* discovery from any source, including Renda. See RCFC 26(d), which prohibits a party from seeking discovery from "any source before the parties have conferred as required by Appendix A ¶ 3." Counsel for plaintiff and defendant did not have the early meeting of counsel required by Appendix A ¶ 3 until August 29, 2002. Kosloske Declaration ¶ 6, Def. App. 38.

Renda has not properly invoked that provision.[6]

Several conditions must be satisfied before a party may invoke RCFC 33(d).[7] First, this provision may be invoked "only if there is some burden involved in compiling or extracting the requested information, above and beyond the simple task of referring to the records in order to answer the interrogatories." Pascale v. G.D. Searle & Co., 90 F.R.D. 55, 60 (D.R.I. 1981). "Referring to a document in order to answer an interrogatory is not the kind of burden contemplated by the rule." Id.; accord Flour Mills of America, Inc. v. D.F. Pace, 75 F.R.D. 676, 682 (E.D. Okla. 1977) ("A party cannot refuse to answer an interrogatory simply because he would have to consult books or documents in order to prepare a response.").[8]

Second, Rule 33(d) may not be invoked unless "the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served . . . ." Accord Pascale, 90 F.R.D. at 61 (Rule 33(d) is available "only if [the burden involved

---

[6] Renda's reliance upon Fed.R.Civ.P. 33(c) is inappropriate because the proceedings in this Court are governed by the Rules of the Court of Federal Claims. The counterpart in this Court's rules to Fed.R.Civ.P. 33(c) is RCFC 33(d), which is patterned after, and virtually identical to, Fed.R.Civ.P. 33(c). Therefore, we respond to Renda's invocation of Fed.R.Civ.P. 33(c) as if Renda had invoked RCFC 33(d).

[7] Rule 33(d) provides: "Where the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served or from an examination, audit or inspection of such business records, including a compilation, abstract or summary thereof, and the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts or summaries. A specification shall be in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained."

[8] In applying the rules of the Court of Federal Claims, including RCFC 33(d), the Court "examines the general federal law interpreting the corresponding Federal Rule of Civil Procedure as persuasive." Wheeler v. United States, 11 F.3d 156, 157n.1 (Fed. Cir. 1993); accord Exxon Research and Engineering Co. v. United States, 44 Fed. Cl. 597, 599 (1999).

in deriving information from business records] is substantially the same for both parties.").

Third, where the burden of deriving or ascertaining the answer to an interrogatory is substantially the same for the party serving the interrogatory as for the party served, Rule 33(d) provides that, "it is a sufficient answer to [the] interrogatory *to specify the records from which the answer may be derived or ascertained* and to afford to the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts or summaries" and the required specification of records "shall be in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained." Id. (emphasis added).

The final sentence of Rule 33(d) is intended "to make it clear that the party [invoking that provision] has a duty to specify the category and location of those records which contain the responses to the interrogatory." Willemijn Houndstermaatschaapij BV v. Apollo Computer, Inc., 707 F.Supp. 1429, 1440 (D. Del. 1989). To rely upon Rule 33(d), "the responding party must specifically identify which documents contain the requested *information* in its answer to the interrogatory" and, "[i]f the party cannot comply with these requirements, it must otherwise answer the interrogatory fully and completely." Oleson v. Kmart Corp., 175 F.R.D. 560, 564 (D. Kan. 1997) (emphasis in original). To comply with Rule 33(d), the responding party must have "adequately and precisely specified," for each interrogatory, "the actual documents where information will be found." SEC v. Elfindepan, S.A., 206 F.R.D. 574, 576 (M.D.N.C. 2002).[9] Thus, in Rainbow Pioneer #44-18-04A v. Hawaii-Nevada Investment Corp., 711 F.2d 902, 906

[9] See also American Rockwool, Inc. v. Owens-Corning Fiberglas Corp., 109 F.R.D. 263, 266 (E.D.N.C. 1985) (A party invoking Rule 33(d) "must respond in sufficient detail to permit the interrogating party to identify readily the individual documents from which the answer may be ascertained.").

(9th Cir. 1983), the court held that a response to an interrogatory which merely recited that the answers could be found "in partnership books of accounts, banking accounts, records, computer printouts, ledgers and other documents" did *not* satisfy Rule 33(d)'s requirement that documents be specified in "sufficient detail to permit the interrogating party to locate and identify, as readily as the party served, the records from which the answer may be obtained."[10]

Renda asserts that "the burden of ascertaining or deriving an answer to [Interrogatories Nos. 4 and 5] from documents Renda has produced or will produce is substantially the same for Defendant." Def. App. 17. In fact, Renda would not bear any "burden" at all within the meaning of Rule 33(d). The Government's discovery requests only seek information about a computation of costs *previously made* by Renda in support of a certified claim submitted to the Government, as opposed to information that would require Renda to compile information or to make a calculation or computation that it has not made. We are requesting that Renda identify the cost components and provide a step-by-step statement of the calculation or computation by which Renda arrived at the $24,663,589 figure in the "Hydraulic Levee Construction Project Claim Accounting Modified Total Cost Approach" chart that is a part of Renda's certified claim. This $24,663,589 figure is a critical part of Renda's calculation of the $6,258,853 sought under the Lost Lake Levees Claim. All that would be required of Renda to answer Interrogatories Nos. 4 and 5 is to refer to its records of this *existing* computation of costs in support of its certified

---

[10] "Directing the opposing party to an undifferentiated mass of records is not a suitable response to a legitimate request for discovery." American Rockwool, 109 F.R.D. at 266; accord Elfindepan, S.A., 206 F.R.D. at 576 ("Document dumps or vague references to documents do not suffice."); In re Tutu Wells Contamination Litigation, 162 F.R.D. 46, 68 (D.V. I. 1995) ("[A] responding party's responsibility to provide answers to interrogatories is not satisfied under [Rule 33(d)] by dumping several volumes of unspecified raw data on opposing counsel."); Derson Group, Ltd. v. Right Management Consultants, Inc., 119 F.R.D. 396 (N.D. Ill. 1988) (general reference to 33,000 documents previously produced did not satisfy Rule 33(d)'s requirement to identify in sufficient detail material from which answer to interrogatory could be ascertained).

claim. Having to refer to a document for the information needed to answer an interrogatory is not the kind of burden contemplated by RCFC 33(d). Pascale, 90 F.R.D. at 60.

Renda's responses to Interrogatories Nos. 4 and 5, moreover, do not specify the records from which the answers to those discovery requests may be derived or ascertained in any detail, much less in "sufficient detail" to permit the Government to locate and to identify, as readily as can Renda, the records from which answers to those discovery requests may be ascertained, as required by Rule 33(d). The responses to those discovery requests do not specify the records that identify the components of the $24,663,589 figure that is the subject of Interrogatory No. 4, that identify, for each component of cost that is a part of the $24,663,589 figure, the accounting or other document(s) upon which each such category or component of cost is based,[11/] or that reflect, step-by-step, the calculation or computation by which Renda arrived at the $24,663,589 figure.

CONCLUSION

For the foregoing reasons, defendant's motion to compel should be granted and the Court should order plaintiff to respond to Interrogatories Nos. 4 and 5.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

---

[11] It is important that Renda be required to identify with specificity the particular records that are the source of, and constitute the basis for, the cost components of the $24,663,589 figure. The Government should not be put in a position of having to rummage through a pile of accounting and other records in an attempt to identify the costs or combination of costs which form the basis for the various components of the $24,663,589 figure. Renda, having made that journey already, should be required to identify the specific records upon which it relied, so that the Government may review those materials without having to speculate about which ones constitute the basis for each of the cost components of the $24,663,589 figure.

s/John E. Kosloske
JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-0282
(fax) (202) 514-8624

Attorneys for Defendant

JANUARY 7, 2004