No. 02-306C
(Judge Hewitt)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

RENDA MARINE, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

**DEFENDANT'S MOTION TO COMPEL COMPLIANCE WITH RULE 26(a)(2)(B), TO COMPEL PRODUCTION OF DOCUMENTS, TO PERMIT DEFENDANT TO PERFORM AN AUDIT OF PLAINTIFF'S JOB COST SCHEDULES, AND FOR A MODIFICATION OF THE PRETRIAL AND TRIAL SCHEDULE**

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-0282
(fax) (202) 514-8624

Attorneys for Defendant

OF COUNSEL:

MR. P. ALEX PETTY
Assistant District Counsel
Office of Counsel
Galveston District
U.S. Army Corps of Engineers
Galveston, TX

FEBRUARY 18, 2004

## TABLE OF CONTENTS

DEFENDANT'S MOTION TO COMPEL COMPLIANCE WITH RULE 26(a)(2)(B), TO COMPEL PRODUCTION OF DOCUMENTS, TO PERMIT DEFENDANT TO PERFORM AN AUDIT OF PLAINTIFF'S JOB COST SCHEDULES, AND FOR A MODIFICATION OF THE PRETRIAL AND TRIAL SCHEDULE . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. Nature Of The Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. The Current Pretrial And Trial Schedule . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. Renda's Recent Expert Testimony Disclosures And Response To The Government's Related Document Production Request . . . . . . . . . . . . . . . . 3

IV. The Government's Attempt To Arrange For An Audit Of Job Cost Schedules For The Upper Bayou Project Recently Produced By Renda . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

I. Renda's Expert Testimony Disclosures Do Not Comply With RCFC 26(a)(2) . . . 9

A. The Report Of Barry Smith Does Not Conform To Rule 26(a)(B) . . . . 11

B. The Report Of Kent Ray, C.P.A., Does Not Conform To Rule 26(a)(B) . 13

C. The Report Of Robert McCullough, P.E. Does Not Conform To Rule 26(a)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

II. Renda Has Not Produced All Documents Prepared By Its Experts That Are Responsive To Document Production Request No. 2 Contained In The Government's Document Production request Regarding Renda's Experts. . . . . . 15

III. The Government Should be Permitted To Perform An Audit Of The Job Cost Schedules For The Upper Bayou Project Recently Produced By Renda . . . . . . . 16

IV. The Pretrial And Trial Schedule Should Be Modified . . . . . . . . . . . . . . . . . . . . . 19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Abruzzo v. United States*, 21 Cl. Ct. 351, 357 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Air Safety, Inc. v. Roman Catholic Archbishop of Boston*,
94 F.3d 1 (1st Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Bath Iron Works Corp. v. United States*,
34 Fed. Cl. 218 (1995), aff'd, 98 F.3d 1357 (Fed. Cir. 1996) (Table) . . . . . . . . . . 18

*Exxon Research and Engineering Co. v. United States*,
44 Fed. Cl. 597 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Hewlett-Packard Co. v. Bausch & Lomb, Inc.*,
116 F.R.D. 533 (N.D. Cal. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re IBM Peripheral EDP Devices Antitrust Litigation*,
77 F.R.D. 39 (N.D. Cal. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Lamarca v. United States*, 31 F. Supp. 2d 110 (E.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . 10

*McNerney v. Archer Daniels Midland Co.*, 164 F.R.D. 584 (W.D.N.Y. 1995) . . . . . . . 13

*Nguyen v. IBP, Inc.*, 162 F.R.D. 675 (D . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,10

*Quadrini v. Sikorsky Aircraft Division, United Aircraft Corp.*,
74 F.R.D. 594 (D. Conn. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Reed v. Binder*, 165 F.R.D. 424 (D.N.J. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*,
73 F.3d 546 (5th Cir.), cert. denied, 519 U.S. 811 (1996) . . . . . . . . . . . . . . . . . . . . 11

*Smith v. State Farm Fire and Casualty Co.*, 164 F.R.D. 49 (S.D. W.Va. 1995) . 10,13,14

*Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*,
47 F.3d 277 (8th Cir.), cert. denied, 516 U.S. 822 (1995) . . . . . . . . . . . . . . . . . . . . 10

*United States v. Modena*, 302 F.3d 626 (6th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . 18

*Wheeler v. United States*, 11 F.3d 156 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . 9

### FEDERAL STATUTES

Contract Disputes Act of 1978, as amended (41 U.S.C. §§ 601-13) . . . . . . . . . . . . . . . . 2

## TABLE OF AUTHORITIES (CONT'D)

## MISCELLANEOUS

RCFC 26(a)(2) .......... 2,9,21

RCFC 26(a)(2)(B) .......... passim

RCFC 26(a)(2)(C) .......... 20

RCFC 26(b)(4)(A) .......... 10

RCFC 37(a) .......... 1

RCFC 37(a)(2)(A) .......... 1,2

RCFC 37(a)(2)(B) .......... 1,2

RCFC 37(a)(3) .......... 1

Fed.R.Civ.P. 26 .......... 11

Fed.R.Civ.P. 26(a)(2) .......... 9

Fed.R.Civ.P. 26(a)(2)(B) .......... 10

Fed.R.Civ.P. 26(b)(4)(A) .......... 10

Fed.R.Evid. 1006 .......... 18

## INDEX TO DEFENDANT'S APPENDIX

| Document | Page |
|---|---|
| Order filed on September 10, 2003 | 1 |
| "Defendant's First Set of Interrogatories and Second Request for Production of Documents" dated January 23, 2003 | 3 |
| "Renda Marine, Inc.'s Second Supplemental Answers/Responses to Defendant's First Set of Interrogatories and Second Request for Production of Documents" dated January 23, 2004 | 17 |
| Report of McCullough & Associates dated January 23, 2004 | 38 |
| Report of Christopher C. Mathewson, Ph.D., P.E. dated January 26, 2004 | 57 |
| Report of Benton Goodloe dated January 27, 2004 | 60 |
| Letter dated February 2, 2004, from defendant's counsel to plaintiff's counsel | 63 |
| Letter dated February 3, 2004, from Jedonna Adams to defendant's counsel | 65 |
| Letter dated February 11, 2004, from plaintiff's counsel to defendant's counsel | 66 |
| Report of Barry Smith dated February 13, 2004 | 92 |
| Letter dated February 11, 2004, from Cheryl Mosely, PLS, to defendant's counsel | 96 |
| Order filed on January 15, 2004 | 108 |
| Chart titled "Hydraulic Levee Construction, Project Claim Accounting, Modified Total Cost Approach" | 109 |
| DCAA Audit Report No. 3511-2003M17200012 dated 12/12/03 | 110 |
| Letter dated February 9, 2004, from defendant's counsel to plaintiff's counsel | 127 |
| Letter dated February 16, 2004, from plaintiff's counsel to defendant's counsel | 128 |

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 02-306C |
| v. | ) | |
| | ) | (Judge Hewitt) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO COMPEL COMPLIANCE WITH RULE 26(a)(2)(B), TO COMPEL PRODUCTION OF DOCUMENTS, TO PERMIT DEFENDANT TO PERFORM AN AUDIT OF PLAINTIFF'S JOB COST SCHEDULES, AND FOR A MODIFICATION OF THE PRETRIAL AND TRIAL SCHEDULE

Pursuant to RCFC 37(a)(2)(A),(B) & (c)(1),[1] defendant, the United States, respectfully requests that the Court order that: (a) plaintiff provide the Government with reports by plaintiff's retained experts Barry Smith, Kent Ray, C.P.A., and Robert McCullough, P.E., that comply with the requirements of RCFC 26(a)(2) regarding the disclosure of expert testimony; (b) plaintiff produce for inspection and/or copying by the Government documents prepared by its trial experts Barry Smith, Kent Ray, C.P.A., Robert B. McCullough, P.E., and Christopher C. Mathewson, Ph.D., P.E., that are the subject of Request No. 2 contained in "Defendant's First Set of Interrogatories and Second Request for Production of Documents;" and (c) the Government be permitted to perform an audit of the job cost schedules for the Upper Bayou project provided by plaintiff to the Government on January 15, 2004; and (d) the pretrial and trial schedule be modified

---

[1] RCFC 37(a)(2)(A) provides that, "[i]f a party fails to make a disclosure required by RCFC 26(a), any other party may move to compel disclosure and for appropriate sanctions." RCFC 37(a)(2)(B) provides, in relevant part, that "[i]f a party, in response to a request for inspection submitted under RCFC 34, fails to respond that inspection will be permitted as requested or fails to permit inspection as requested, the discovering party may move for an order compelling . . . inspection in accordance with the request." For purposes of RCFC 37(a), an evasive or incomplete disclosure or response is treated as a failure to disclose or respond. RCFC 37(a)(3).

by rescheduling the trial for a period of three weeks in November 2004 and establishing new interim dates for the completion of expert witness discovery and subsequent pretrial activities.

As required by RCFC 37(a)(2)(A) & (B) and ¶ 10 of Appendix A to the Rules of the Court of Federal Claims, defendant's counsel has attempted in good faith to confer with Renda's counsel in an effort to secure, without court action, the Rule 26(a)(2) expert testimony disclosures and materials responsive to the Government's production request relative to Renda's trial experts and to arrange for an audit by the Government of the job cost schedules for the Upper Bayou Project recently produced by Renda.

## BACKGROUND

### I. Nature Of The Case

This case involves claims governed by the Contract Disputes Act of 1978, as amended (41 U.S.C. §§ 601-13), arising under or relating to Contract No. DACW64-99-C-0001 between Renda and the United States, acting through the Army Corps of Engineers, Galveston, Texas District, to dredge reach of the Galveston-Houston Ship Channel known as the Upper Bayou and to construct containment levees and other structures at the Lost Lake Placement Area for dredged material. The contract is referred to in the complaint and other documents as the "Upper Bayou Project." The complaint seeks damages, in the aggregate, of approximately $14.25 million, plus interest, based upon numerous alleged differing site conditions encountered by Renda during the course of contract performance.

### II. The Current Pretrial And Trial Schedule

Under the amended schedule adopted by the Court on September 10, 2003, the deadline for completing expert discovery, except depositions of experts, is February 4, 2004, and the

deadline for completing depositions of experts is February 18, 2004, the deadline for the meeting of counsel require by Appendix A, ¶ 13, of the Court's rules is March 24, 2004, Renda's pretrial memorandum of contentions of fact and law, witness and exhibit lists, and related materials are due on or before April 14, 2004, the Government's pretrial memorandum of contentions of fact and law, witness and exhibit lists, and related materials are due on or before May 12, 2004, the final pretrial conference is scheduled for June 2, 2004, and trial is scheduled to take place during June 15-25, 2004, in Houston, Texas. See Order filed on September 10, 2003, Def. App. 1-2.

III. Renda's Recent Expert Testimony Disclosures And Response To The Government's Related Document Production Request

On January 23, 2004, Renda served the Government with "Renda Marine, Inc.'s Second Supplemental Answers/Responses to Defendant's First Set of Interrogatories and Second Request for Production of Documents." Def. App. 3-16.[2/] Renda supplemented its response to Interrogatory No. 1[3/] contained in "Defendant's First Set of Interrogatories and Second Request for Production of Documents" by identifying the following trial experts: (1) Barry Smith, Pathfinder Construction Consulting, Inc.; (2) Robert B. McCullough, P.E., C.C.E., McCullough & Associates; (3) Christopher C. Mathewson, Ph.D., P.E., Texas A&M University; (4) Ben Goodloe, a Renda employee; and (5) Kent Ray, C.P.A., Milbern Ray & Company, L.L.C., and stating that "[d]ocuments will be produced under separate cover." Def. App. 17-24. Renda supplemented its

[2] "Def. App. ____" refers to the referenced page(s) of the appendix to this motion.

[3] Interrogatory No. 1 requests that Renda "[i]dentify each individual that [Renda] expects to call as an expert witness at trial and, with respect to each such individual, state: (a) the subject matter upon which he or she is expected to testify; (b) the substance of the facts to which he or she is expected to testify; and (c) the substance of the opinions to which he or she is expected to testify and the ground(s) for each such opinion." Def. App. 11.

response to Document Request No. 2 contained in "Defendant's First Set of Interrogatories and Second Request for Production of Documents"[4] by stating that "[d]ocuments will be produced under separate cover." Def. App. 25.

On January 26, 2004, Renda provided the Government with a report dated January 23, 2004, prepared by "McCullough & Associates." Def. App. 38-56. On January 27, 2004, Renda provided the Government with a three-page report from Dr. Mathewson dated January 26, 2004, Def. App. 57-59, appended to which was a curriculum vitae. On January 30, 2004, Renda provided the Government with a two-page report by Benton Goodloe, appended to which was a summary of his experience in the dredging industry. Def. App. 60-62.

On February 2, 2004, defendant's counsel sent a letter to Renda's counsel, Brian Erikson, concerning Renda's expert testimony disclosures and Renda's second supplemental responses to the Government's discovery request regarding expert witnesses in which defendant's counsel stated:

> In the cases of Messrs. Smith and Ray, plaintiff has not provided the Government with the report required by Rule 26(a)(2)(B). In the case of Mr. McCullough, the report produced by plaintiff does not contain any of the information required by Rule 26(a)(2)(B) enumerated at items (b) through (f) above and, to the extent that it is a "preliminary" report and does not contain a "complete statement" of "all opinions" to be expressed by Robert McCullough and the basis and reasons for those opinions, the report also does not comply with Rule 26(a)(2)(B).

---

[4] Document Request No. 2 sought production of "[a]ll reports, affidavits, declarations, memoranda, papers, notes, studies, graphs, charts, tabulations, analyses, summaries, data sheets, statistical or informational accumulations, and computer generated documents, including drafts or preliminary revisions of any of the above, prepared in connection with this litigation by or under the direction or supervision of any individual that Renda expects to call as an expert witness at trial." Def. App. 14.

> In the Government's second request for production of documents, we requested that plaintiff produce the following documents relative to experts to be called at the trial of this case: "All reports, affidavits, declarations, memoranda, papers, notes, studies, graphs, charts, tabulations, analyses, summaries, data sheets, statistical or informational accumulations, and computer generated documents, including drafts or preliminary revisions of any of the above, prepared in connection with this litigation by or under the direction or supervision of any individual that Renda expects to call as an expert witness at trial." Plaintiff has not produced any such materials for Messrs. Smith, Mathewson, McCullough, or Ray, other than a report in the cases of Mr. Mathewson and Mr. McCullough and cost schedules and equipment lists in the case of Mr. Ray.

Def. App. 63-64.

On February 3, 2003, Ms. Jedonna Adams (Renda's counsel's secretary) telephoned defendant's counsel and advised that Mr. Erikson was tied up in a trial in another matter in Houston, Texas, during the week of February 2-6, 2004. She requested an "extension of time" to February 10, 2004, for Renda to respond to defendant's counsel's February 2, 2004 letter. See February 3, 2004 letter from Ms. Adams to defendant's counsel, Def. App. 65.

On February 11, 2004, Renda's counsel sent a letter to defendant's counsel's in response to defendant's counsel's February 2, 2004 letter. Def. App. 66-67. Appended to Renda's counsel's letter were a one-page letter dated January 23, 2004, from Kent Ray, C.P.A., appended to which were a curriculum vitae and job cost schedules for the Upper Bayou Project, Def. App. 79-91, which Renda's counsel stated is Mr. Ray's "report." Def. App. 66.[5] Also appended to Renda's counsel's February 11, 2004 letter were curricula vitae for Barry Smith and Robert McCullough. Def. App. 68, 69-78.

---

[5] Renda's counsel indicated that Mr. Ray's report was "inadvertently omitted from a previous mailing to [defendant's counsel.]." Def. App. 66.

With respect to Barry Smith, Renda's counsel stated in his February 11, 2004 correspondence: "Barry Smith's opinions and reports have been the various claims that he prepared and which were submitted to the Galveston District Corps of Engineers. In the spirit of cooperation, I will transmit a condensed report, encapsulating his opinions." I am enclosing Mr. Smith's curriculum vitae." Def. App. 66. Regarding Robert McCullough, Renda's counsel stated: "Mr. McCullough's report contains all of the opinions that he has to date. I do anticipate that he will supplement the report based on his review of Defendant's experts' reports. I am enclosing Mr. McCullough's curriculum vitae." Id.

As for the Government's request for the production of materials "*prepared* in connection with this litigation by or under the direction or supervision of any individual that Renda expects to call as an expert witness at trial," including "[a]ll reports, affidavits, declarations, memoranda, papers, notes, studies, graphs, charts, tabulations, analyses, summaries, data sheets, statistical or informational accumulations, and computer generated documents, including drafts or preliminary revisions of any of the above," Renda's counsel stated: "All of the documents *reviewed* by Renda's experts have been previously produced to the United States during this litigation. The experts have not *reviewed* any documents which have not previously been produced to the United States. If the Government wants Renda to re-copy documents that the Government already has, Renda will do so, but at the Government's expense." Def. App. 66 (emphases added).

On February 13, 2004, Renda provided the Government with a four-page report from Barry Smith dated February 13, 2004. Def. App. 92-95. The report states that the curriculum vitae of Mr. Smith is an enclosure to the report, but the curriculum vitae is not appended to the copy of the report provided to the Government.

IV. The Government's Attempt To Arrange For An Audit Of Job Cost Schedules For The Upper Bayou Project Recently Produced By Renda

One of Renda's claims in this case is the "Lost Lake Levees Claim" for $6,258,853. See Complaint, at ¶¶ 148-197, and "Summary" of claims at page 29 of the complaint. The claimed $6,258,853 in damages, which is computed upon a "modified total cost" basis, represents the difference between $30,827,513.16 (alleged actual costs for the Upper Bayou Project) and $24,568,660.16 (the sum of payments by the Government to Renda under the contract and the amounts of Renda's seven other claims for the Upper Bayou Project). See chart contained in Renda's Lost Lake Levees Claim titled "Hydraulic Levee Construction Project Claim Accounting Modified Total Cost Approach," Def. App. 109. The $30,827,513.16 of alleged actual costs for the Upper Bayou Project includes $24,663,589 for "actual total costs to date," to which are added "Company Overhead" ($1,233,179.45), "Home Office Overhead" ($1,627,796.87), and "Profit" ($3,302,947.84). Id.

In its audit report concerning the Lost Lake Levees Claim, DCAA noted that Renda "applied indirect cost allocations from on-site and corporate office and profit to the total amount of $24,663,589" of alleged total actual cost for the Upper Bayou Project, that "[t]his total amount was not identified to specific elements," and that DCAA was "unable to verify the $24,663,589 to [Renda's] accounting books and records." DCAA Audit Report No. 3511-2003M17200012 dated December 12, 2003, at 4, Def. App. 114. The audit report further states that Renda "indicates that it will, at a later date, prepare and break out the claimed costs and provide them for either settlement or an appeal through the agency board of contract appeals or the U.S. Court of Federal Claims." Id.

The Government served interrogatories and a document production request upon Renda on November 25, 2003, seeking information and documents about Renda's Lost Lake Levees Claim for $6,258,853. Specifically, the Government sought information about the $24,663,589 for "actual total costs to date," the components of which Renda's Lost Lake Levees Claim does not identify or explain how that figure was computed. When Renda failed to provide that information, the Government applied to the Court for an order requiring Renda to respond our discovery request. See "Defendant's Second Motion to Compel" on January 7, 2004. Shortly before a telephonic status conference on January 15, 2004, between the Court and counsel for Renda and the Government concerning the motion to compel, Renda's counsel delivered a letter to defendant's counsel which enclosed "the accounting backup for Renda Marine's claims." Def. App. 96. This "accounting backup" consists of job cost schedules for the Upper Bayou Project reflecting total job costs of $24,793,035.90. Def. App. 97-107.[6] That disclosure rendered the Government's second motion to compel moot. See Order filed on January 15, 2004, Def. App. 108.

Upon receipt of the job cost schedules for the Upper Bayou Project produced by Renda on January 15, 2004, defendant's counsel requested the Defense Contract Audit Agency (DCAA) to perform an audit of those job cost schedules. The auditor assigned by DCAA to perform this audit requested that defendant's counsel identify the representative of Renda to contact for purposes of the audit.

On February 9, 2004, defendant's counsel sent a letter to Renda's counsel advising that arrangements had been made for DCAA to perform an audit of the recently-produced job cost

---

[6] The same job cost schedules are appended to the report of Renda's designated trial expert, Kent Ray, C.P.A., and to Renda's recent supplementation of its responses to the Government's discovery requests relative to Renda's trial experts. See Def. App. 27-37, 81-91.

schedules for the Upper Bayou Project and requesting that Renda's counsel advise us who the DCAA auditor should contact for purposes the audit "as soon as possible so that the audit may get underway." Def. App. 127. On February 16, 2004, Renda's counsel responded that Renda would not permit the Government to perform an audit of the job cost schedules for the Upper Bayou Project unless the Government agreed to respond to an untimely discovery request served by Renda upon the Government after the Court's January 14, 2004 deadline for the close of fact discovery in this litigation. Def. App. 128.

## ARGUMENT

### I. Renda's Expert Testimony Disclosures Do Not Comply With RCFC 26(a)(2).

Rule 26(a)(2)(A) provides that "a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence." The rule "identifies the manner of disclosure as well as the specific disclosures to be concerning a retained expert." Nguyen v. IBP, Inc., 162 F.R.D. 675, 679 (D. Kan. 1995).[7] Except as otherwise stipulated or directed by the court,[8] the disclosure of a retained expert required by Rule 26(a)(2)(A) must be "accompanied by a written report prepared and signed by the witness" that contain six items:

---

[7] RCFC 26(a)(2) mirrors Fed. R. Civ.P. 26(a)(2). The Rules Committee Note to RCFC 26 states that "RCFC 26 has been revised to parallel the structure and content of its counterpart in the Federal Rules of Civil Procedure" and that, except for a "limited number of changes" "necessary to accommodate the nature and jurisdiction of this court," "the rule shown conforms fully to the text of [Fed.R.Civ.P. 26]."). In applying the Rules of the Court of Federal Claims, the Court "examines the general federal law interpreting the corresponding Federal Rule of Civil Procedure as persuasive." Wheeler v. United States, 11 F.3d 156, 157n.1 (Fed. Cir. 1993); accord Exxon Research and Engineering Co. v. United States, 44 Fed. Cl. 597, 599 (1999).

[8] There is no such stipulation by the parties or directive by the Court in the present case.

1. A "complete statement of all opinions to be expressed and the basis and reasons therefor."

2. The "data or other information considered by the witness in forming the opinions."

3. Any "exhibits to be used as a summary of or support for the opinions."

4. The "qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years."

5. The "compensation to be paid for the study and testimony."

6. A "listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years."

RCFC 26(a)(2)(B); see also Smith v. State Farm Fire and Casualty Co., 164 F.R.D. 49, 53 (S.D. W.Va. 1995) (construing Fed.R.Civ.P. 26(a)(2)(B)); Nguyen, 162 F.R.D. at 679 (same). The Rule 26(a)(2)(B) requirement for a written report by a retained expert "is best understood when read in conjunction with Rule 26(b)(4)(A)." Reed v. Binder, 165 F.R.D. 424, 429 (D.N.J. 1996). Rule 26(b)(4)(A) provides that "[a] party may depose any person who has been identified as an expert whose opinions may be presented at trial" and that, "[i]f a report is required under [Rule 26(a)(2)(B)], the deposition shall not be conducted until after the report is provided."[9]

The purposes of Rule 26(a)(2)(B) & (b)(4)(A) are "the elimination of unfair surprise to the opposing party and the conservation of resources[.]" Sylla-Sawdon v. Uniroyal Goodrich Tire Co., 47 F.3d 277, 284 (8th Cir.), cert. denied, 516 U.S. 822 (1995). Those objectives are reflected in the commentary to Fed.R.Civ.P. 26(a)(2)(B) & (b)(4)(A), which provides, in relevant part:

---

[9] Deposition testimony "does not cure deficiencies in the Rule 26(a)(2)(B) notice." Lamarca v. United States, 31 F.Supp.2d 110, 123 (E.D.N.Y. 1998).

> Paragraph 2(B) requires that persons retained or specially employed to provide expert testimony . . . must prepare a detailed and complete written report, stating the testimony the witness is expected to present during direct examination, together with the reasons therefor. The information disclosed under the former rule in answering interrogatories about the 'substance' of expert testimony was frequently so sketchy and vague that it rarely dispensed with the need to depose the expert and often was of little help in preparing for a deposition of the witness.
>
> * * * *
>
> Revised subdivision (b)(4)(A) authorizes the deposition of expert witnesses. Since depositions of experts required to prepare a written report may be taken only after the report has been served, the length of the deposition of such experts should be reduced, and in many cases the report may eliminate the need for a deposition.
>
> * * * *
>
> The requirement under subdivision (a)(2)(B) of a complete and detailed report of the expected testimony of certain forensic experts may, moreover, eliminate the need for some such depositions or at least reduce the length of the depositions. Accordingly, the deposition of an expert required by subdivision (a)(2)(B) to provide a written report may be taken only after the report has been served.

Advisory Committee Notes to 1993 Amendments to Fed.R.Civ.P. 26, subdivisions (a)(2) & (b), 146 F.R.D. 401, 634, 638-39.

A. <u>The Report Of Barry Smith Does Not Conform To Rule 26(a)(2)(B)</u>

An expert's report must be "detailed and complete." <u>Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.</u>, 73 F.3d 546, 571 (5th Cir.), <u>cert.</u> <u>denied</u>, 519 U.S. 811 (1996) (<u>quoting</u> Rule 26(a)(2) advisory committee's note). The Smith report is neither detailed nor complete. The report is only five pages in length, including Mr. Smith's curriculum vitae. The report does not contain a "complete" statement of "all opinions to be expressed and the basis and reasons therefor." Typical of the vague and imprecise content of this report is the statement, at the con-

clusion of the brief discussion of each of Renda's claims, that "Renda is entitled to an equitable adjustment of time and money." See Def. App. 93, 94, 95. The report does not contain the data or other information considered by Mr. Smith in forming the opinions or any exhibits to be used as a summary of or support for the opinions.[10]

Regarding "obstructions" claims (i.e., the South Ferry Landing, Obstructions No. 1, and Obstructions No. 2 claims, the Smith report vaguely states that "[c]ertain obstructions or limitations to dredging were marked on the plans or indicated in the specifications for the project" and that "Renda encountered many more obstructions than were marked or indicated." Def. App. 92-93. As for the Flare Area and Section 7 Clay differing site conditions claims, the report asserts summarily that "Renda encountered hard clay while dredging [the Flare Area and Section 7] of the channel, much stiffer clay than was shown in the contract documents," that "Renda's production was slowed and the project delayed by the stiffer clay," and that "Renda incurred extra cost while performing the work." Def. App. 93. With respect to the HL&P Tower Claim, the Smith report describes the construction by HL&P of a second electrical transmission tower at the Lost Lake Placement Area as a "disruption" and states that, "[a]s a result of the disruption, Renda's work was delayed, and Renda incurred extra cost." Def. App. 93-94.

In his report, Mr. Smith states that, "[b]ased upon comments made by the DCAA during its 2002 audit, I am reviewing the claims and updating or responding to information presented" and that, "[w]here appropriate, I am revising the claim components or base costs, which will revise the claim amounts." Def. App. 92. A preliminary or incomplete report, however, is not

---

[10] Mr. Smith's report also does not include the compensation to be paid for the study and his testimony or a listing of any other cases in which Mr. Smith has testified as an expert at trial or by deposition within the preceding four years.

contemplated by Rule 26(a)(2)(B), which calls for "a complete statement of all opinions to be expressed." Smith, 164 F.R.D. at 53.

Mr. Smith's report purports to "incorporate by reference" "Renda's requests for equitable adjustment and certified claims" as to which Mr. Smith states he was "instrumental in preparing." See Def. App. 92. In Smith, the court rejected a similar attempt at incorporating external material. In that case, where the experts' reports incorporated interrogatory answers, the court stated that this was not acceptable because "[i]nterrogatories are answered by the party to whom they are addressed, under oath," whereas "[a]n expert witness' report is prepared and signed by the expert witness." 164 F.R.D. at 54. The Court, therefore, should require that Renda provide the Government with a detailed and complete report by Mr. Smith that satisfies the requirements of Rule 26(a)(2)(B).

B. The Report Of Kent Ray, C.P.A., Does Not Conform To Rule 26(a)(2)(B)

The report of Kent Ray, C.P.A., is also not detailed or complete. The report consists of a one-page letter, a curriculum vitae, and job cost schedules for the Upper Bayou Project prepared by Mr. Ray. The letter simply states that "[t]he first job cost schedule represents direct job cost and allocation of indirect cost (or shop cost) to the Upper Bayou Project" and that "[t]he second job cost schedule represents the same items as the first schedule, plus allocation of equipment cost to the project for the duration of the job." Def. App. 79. As for the basis of the cost schedules, the letter states, without specific references, that "[t]he schedules were prepared by our firm from our monthly job schedules and audit work papers" and that "[t]he original raw information was schedules and reports prepared by Renda Marine, Inc." Id. In McNerney v. Archer Daniels Midland Co., 164 F.R.D. 584, 587 (W.D.N.Y. 1995), the court held that a report which

"only contained numerical calculations" and "did not contain a statement of the expert's opinions or the basis of his calculations" did not comply with Rule 26(a)(2). The Court, therefore, should require that Renda provide the Government with a detailed and complete report by Mr. Ray that satisfies the requirements of Rule 26(a)(2)(B).

C. The Report Of Robert McCullough, P.E., Does Not Conform To Rule 26(a)(2)(B)

The McCullough & Associates (M&A) report, which is not signed, states that "[M&A] is in the process of reviewing the claims and the audit comments made by DCAA" and that "M&A is continuing to analyze the amounts claimed and will revise this report, if necessary, as the analysis proceeds." Def. App. 39. Regarding Renda's claims for $14,406,646, M&A states, without providing the basis or reasoning, that "[w]e have performed a preliminary evaluation of these costs and their basis and have determined they are compensable costs" and that "[a] more detailed evaluation is ongoing and revisions to this report will be made, as necessary." Def. App. 40. With respect to the Flare Area claim, the M&A report states that equipment repair costs claimed by Renda and questioned by DCAA "are still being evaluated." Def. App. 42. Regarding indirect expenses claimed by Renda, the M&A report again states that exceptions by DCAA to such costs "are still being evaluated." Def. App. 42, 44, 46, 49, 51, 55. But Rule 26(a)(2)(B) does not contemplate a preliminary or incomplete report; it requires "a complete statement of all opinions to be expressed." Smith, 164 F.R.D. at 53.

The M&A report does not contain the data or other information considered by Robert McCullough in forming the opinions or any exhibits to be used as a summary of or support for the opinions. The report only states that, in performing its analysis, "M&A reviewed the Project correspondence, claim documentation prepared by [Renda], talked to various employees of

[Renda], talked to Pathfinder Construction Consulting (Patherfinder), and reviewed documentation prepared by the Government in response to [Renda's] claims and reviewed the DCAA audit reports." Def. App. 39.[11] The Court, therefore, should require that Renda provide the Government with a detailed and complete report by Mr. McCullough that satisfies the requirements of Rule 26(a)(2)(B).

II. Renda Has Not Produced All Documents Prepared By Its Experts That Are Responsive To Document Production Request No. 2 Contained In The Government's Document Production Request Regarding Renda's Experts.

As noted above, in Document Request 2 contained in "Defendant's First Set of Interrogatories and Second Request for Production of Documents" dated January 23, 2003, the Government requested production of "[a]ll reports, affidavits, declarations, memoranda, papers, notes, studies, graphs, charts, tabulations, analyses, summaries, data sheets, statistical or informational accumulations, and computer generated documents, including drafts or preliminary revisions of any of the above, prepared in connection with this litigation by or under the direction or supervision of any individual that Renda expects to call as an expert witness at trial." Def. App. 14.[12]

Renda argues that "[a]ll of the documents reviewed by Renda's experts have been previously produced to the United States during this litigation." Def. App. 66. Document Request No. 2, however, does not concern materials *reviewed* by Renda's experts. Rather, it is addressed

---

[11] Mr. MuCullough's report also does not include the compensation to be paid for the study and his testimony.

[12] It is settled that such materials are within the scope of permissible discovery of experts. See, e.g., Abruzzo v. United States, 21 Cl. Ct. 351, 357 (1990); Hewlett-Packard Co. v. Bausch & Lomb, Inc., 116 F.R.D. 533, 537-41 (N.D. Cal. 1987); In re IBM Peripheral EDP Devices Antitrust Litigation, 77 F.R.D. 39, 41 (N.D. Cal. 1977); Quadrini v. Sikorsky Aircraft Division, United Aircraft Corp., 74 F.R.D. 594, 595 (D. Conn. 1977).

to documents *prepared* by Renda's experts.[13] The only documents responsive to Request No. 2 produced by Renda thus far have been the reports of it experts and, to the extent that Barry Smith was involved in their preparation, the certified claims submitted by Renda to the contracting officer. Request No. 2 is much broader in scope. In addition to the reports of experts, Request No. 2 seeks production of any "affidavits, declarations, memoranda, papers, notes, studies, graphs, charts, tabulations, analyses, summaries, data sheets, statistical or informational accumulations, and computer generated documents, including drafts or preliminary revisions of any of the above," prepared in connection with this litigation by or under the direction or supervision of Renda's experts. That would include all work papers of Renda's experts relating to their reports.

III. The Government Should Be Permitted To Perform An Audit Of The Job Cost Schedules For The Upper Bayou Project Recently Produced By Renda.

As discussed above, on January 15, 2004, Renda delivered to defendant's counsel "the accounting backup for Renda Marine's claims," which consists of consists of job cost schedules for the Upper Bayou Project reflecting total job costs of $24,793,035.90. These same job cost schedules are appended to the report of Renda's designated trial expert, Kent Ray, C.P.A., and to Renda's recent supplementation of its responses to the Government's discovery requests relative to Renda's trial experts. The job cost schedules in question cover the period 1999-2001and purport to set forth Renda's total direct costs for the Upper Bayou Project. They are a summary of voluminous cost accounting information.

---

[13] Materials *reviewed* by Renda's experts is the subject of a separate document production request, i.e., Request No. 3: "All documents relied upon or considered by any individual that Renda expects to call as an expert witness at trial in formulating his or her opinion(s), including, but not limited to, the report of, or any other document prepared by, any non-testifying expert." Def. App. 14.

When defendant's counsel contacted Renda's counsel to arrange for a DCAA audit of those cost schedules, Renda's counsel responded that our audit request is untimely because it was made after January 14, 2004, the deadline for completing fact discovery in this case. Renda's counsel advised that Renda would not permit the Government to perform an audit of the job cost schedules for the Upper Bayou Project unless the Government agreed to respond to an untimely discovery request by Renda served upon the Government after the deadline for the close of fact discovery.

The Government's request to audit Renda's job cost schedules is not untimely. In our November 25, 2003 discovery request, we asked Renda to identify the categories or components of costs in the $24,663,589 total costs figure contained in Renda's Lost Lake Levees Claim and to identify and produce "the accounting or other document(s)" upon which each such category or component of cost is based. Our request for that information thus predated the January 14, 2004 fact discovery deadline and we are entitled under RCFC 34 to inspect and/or copy those materials. The Government also is entitled to inspect and/or copy the materials from which the recently-produced job cost schedules were prepared as part of the discovery of experts in this case, inasmuch as the job cost schedules were prepared by, and are appended to the report of, Kent Ray, C.P.A., one of Renda's experts in this case. In that regard, Request No. 3 contained in "Defendant's First Set of Interrogatories and Second Request for Production of Documents" dated January 23, *2003*, requests that Renda produce "[a]ll documents relied upon or considered by any individual that Renda expects to call as an expert witness at trial in formulating his or her opinion(s), including, but not limited to, the report of, or any other document prepared by, any non-testifying expert." <u>See</u> Def. App. 14.

In addition to the Government's right under the Court's discovery rules to inspect and/or copy the accounting or other materials upon which Renda's job cost schedules are based is our right under the Federal Rules of Evidence to examine and/or copy such materials. Presumably, Renda intends to offer the cost schedules at trial through Kent Ray, C.P.A., Renda's accounting expert, as a summary pursuant to Fed.R.Evid. 1006, which provides: "The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. *The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time and place*. The court may order that they be produced in court." (Emphasis added.).

Rule 1006 "operates independently of the discovery rules" and "the failure to request or obtain the documents during discovery does not negate a party's 'absolute right to subsequent production of material under Rule 1006, should that material become incorporated in a chart, summary, or calculation.'" Air Safety, Inc. v. Roman Catholic Archbishop of Boston, 94 F.3d 1, 8 (1st Cir. 1996) (quoting Weinstein's Evidence ¶ 1006[04], at 1006-16); accord United States v. Modena, 302 F.3d 626, 633 (6th Cir. 2002). Nothing in Rule 1006 indicates that the right of a party to examine or copy records underlying a summary may be conditioned upon that party's compliance with a request for discovery by the proponent of the summary. Modena, 302 F.3d at 633.

To satisfy the "made available" requirement, "a party seeking to use a summary under Rule 1006 must identify its exhibit as such, provide a list or description of the documents supporting the exhibit, and state when and where they may be reviewed." Air Safety, 94 F.3d at 8; accord Modena, 302 F.3d at 633 (For the admission of an evidentiary summary, among other

things, "the proponent of the summary must have made the documents available for examination or copying at a reasonable time and place[.]"); Bath Iron Works Corp. v. United States, 34 Fed. Cl. 218, 232-33 (1995), aff'd, 98 F.3d 1357 (Fed. Cir. 1996) (Table) (In order for a summary to be admitted, the "the original or copies of the summarized writings must be made available to the opposing party[.]").

The most efficient, convenient way for the Government to evaluate Renda's job cost schedules for the Upper Bayou Project is by a DCAA audit of those schedules, including the underlying materials. The Government, therefore, should be permitted to inspect or examine such materials as part of an audit of the job cost schedules.

IV. The Pretrial And Trial Schedule Should Be Modified.

Under the current pretrial schedule, expert depositions were to have been completed by February 18, 2004. See Order filed on September 10, 2003, Def. App. 2. This deadline should be enlarged for several reasons.[14/] *First*, Renda has not provided the Government with complete reports of its designated trial experts required by RCFC 26(a)(2)(B),[15/] or the materials prepared by its experts responsive to Request No. 2 contained in "Defendant's First Set of Interrogatories and Second Request for Production of Documents" discussed above. The Government should have the benefit of those materials *before* any depositions of Renda's experts. *Second*, the parties

---

[14] Renda states that it "[has no] objection to asking the Court to extend the discovery deadline of February 18, 2004, for the taking of expert depositions." Def. App. 65.

[15] Under the current pretrial schedule, those reports were due on or before February 4, 2004. See Order filed on September 10, 2003, Def. App. 1.

have identified *nine* experts between them.[16] It is not reasonable to expect that the parties can prepare for and take the depositions of those experts within the 14-day window established by the current pretrial schedule for deposition, especially given that all of the parties' expert testimony disclosures have been made within the last three weeks. *Third*, the parties have not yet provided each other with rebuttal reports by its experts.[17] Under RCFC 26(a)(2)(C), such reports are due within 30 days of the initial expert testimony disclosure to which they respond. To avoid the necessity for taking two depositions of an expert, it makes better sense to schedule depositions only after the time within which any rebuttal reports must be produced has expired.

As noted above, under the current schedule, the meeting of counsel required by Appendix A, ¶ 13, of the Court's rules, including the exchange of trial witness and exhibit lists, is to occur on or before March 24, 2004, Renda's pretrial memorandum of contentions of fact and law, final witness and exhibit lists, and related materials are due on or before April 14, 2004, the Government's pretrial memorandum of contentions of fact and law, witness and exhibit lists, and related materials are due on or before May 12, 2004, the final pretrial conference is scheduled for June 2, 2004, and trial is scheduled to take place during June 15-25, 2004, in Houston, Texas. See Order filed on September 10, 2003, Def. App. 1-2. That schedule is no longer practical because discovery of expert witnesses has not been completed and also because of the need for an audit by the Government of the Upper Bayou Project job cost schedules recently produced by Renda, which

---

[16] In "Defendant's Disclosure of Expert Testimony" dated February 3, 2004, we identified four trial experts: Robert Lofgren; Jack Fowler, Ph.D., P.E.; William F. Connole, P.E.; and Darrell Shobert, C.P.A.

[17] Renda's counsel states that he anticipates that Robert McCullough will "supplement" his report "based on his review of Defendant's experts' reports." Def. App. 66.

will require at least 60 days to complete.

From the above discussion of experts, it should be obvious that the trial schedule itself is not feasible. The Court has set aside a total of only nine days for trial. The parties, however, have now identified *nine* expert witnesses for trial, not to mention fact witnesses in the case. No dispositive motions have been filed. Therefore, all issues in the case – both liability and damages – will have to be tried. Accordingly, the deadlines for completing expert discovery, including depositions, and subsequent pretrial activities and the trial schedule need to be modified for an appropriate period of time. We propose that the trial be rescheduled for a period of three weeks in November 2004 and that the Court establish new interim dates for the completion of expert witness discovery and subsequent pretrial activities.

CONCLUSION

For the foregoing reasons, defendant's motion should be granted and the Court should order: (a) that plaintiff provide the Government with reports by plaintiff's retained experts Barry Smith, Kent Ray, C.P.A., and Robert McCullough, P.E., that comply with the requirements of RCFC 26(a)(2) regarding the disclosure of expert testimony; (b) that plaintiff produce for inspection and/or copying by the Government documents prepared by its trial experts Barry Smith, Kent Ray, C.P.A., Robert B. McCullough, P.E., and Christopher C. Mathewson, Ph.D., P.E., that are the subject of Request No. 2 contained in "Defendant’s First Set of Interrogatories and Second Request for Production of Documents;" (c) that the Government be permitted to perform an audit of the job cost schedules for the Upper Bayou project provided by plaintiff to the Government on January 15, 2004; and (d) that the pretrial and trial schedule be modified by rescheduling the trial for a period of three weeks in November 2004 and establishing new interim dates

for the completion of expert witness discovery and subsequent pretrial activities.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/John E. Kosloske

JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-0282
(fax) (202) 514-8624

Attorneys for Defendant

FEBRUARY 18, 2004