# Request for Equitable Adjustment

Contract No. DACW64-99-C-0001

## Houston-Galveston Navigation Channels, Texas
## Dredging Upper Boyou, (45-Foot Project)
## Harris and Galveston Counties, Texas

**Prepared for:**

Renda Marine, Inc.
Freeport, Texas

**Prepared by:**

**McCullough & Associates**
15938 Midway Road
Addison, Texas 75001
(972) 385-3158

January 23, 2004

## Introduction

McCullough & Associates (M&A) was asked to analyze the claims made by Renda Marine, Inc. (RMI) to the U.S. Army Corps of Engineers, Galveston District Office ("Government" or "USACE"). In performing this analysis, M&A reviewed the Project correspondence, claim documentation prepared by RMI, talked to various employees of RMI, talked to Pathfinder Construction Consulting (Pathfinder), reviewed documentation prepared by the Government in response to RMI's claims and reviewed the DCAA audit reports. M&A is in the process of reviewing the claims and the audit comments made by DCAA. For the purposes of this report M&A has used the amounts claimed by RMI as prepared by Pathfinder. M&A is continuing to analyze the amounts claimed and will revise this report, if necessary, as the analysis proceeds. Since discovery is proceeding, M&A reserves the right to revise this report as additional information becomes available.

## Project Summary

The Project is the Houston Ship Channel, Dredging Upper Bayou, located in Harris County, Texas (Project). The Project was the beginning of a 5 year, $508 million program to deepen the navigation channel to 45 feet and widen it by an additional 130 feet to facilitate ships delivering cargo to Houston directly rather than unloading part of their cargo in the Gulf of Mexico. RMI was acknowledged as the low bidder on July 17, 1998, but due to a bid protest initiated by another bidder, RMI's bid was not accepted until October 26, 1998. RMI and the Government entered into Contract No. DACW64-99-C-0001 (Contract) on October 26, 1998. The Notice to Proceed issued by the Government was acknowledged by RMI on November 19, 1998, and work associated with the Project started shortly thereafter.

While performing its work, RMI encountered various differing site conditions and other situations concerning the Project that caused RMI to expend additional funds and/or to incur additional time to perform its work. Because of these situations, RMI submitted various Requests for Equitable Adjustment (REA) to the Government that subsequently were presented to the Government as Certified Claims. The Government has granted parts of the following claims while denying parts or all of others.

## Claim Summary

RMI filed the following REA's:

| Item | Description | Claimed Amount |
|---|---|---|
| 1 | Differing Site Condition – Flare Area Stations 520+00 to 550+00 (very stiff clay) | $1,607,855 |
| 2 | Differing Site Condition – South Ferry Landing Stations 470+00 to 472+00 | 1,049,173 |
| 3 | Changed Conditions – HL&P Transmission Tower Delays | 170,863 |

| | | |
|---|---|---|
| 4 | Differing Site Condition – Obstruction in Sections 4 to 8, Stations 570+00 to 685+00 | 2,126,083 |
| 5 | Differing Site Condition – Obstruction in Section 9, Stations 660+00 to 685+00 | 1,158,642 |
| 6 | Changed Conditions – West Levee Realignment, Lost Lake Placement Area Between Stations 166+00 to 215+00 (Modification CO-10, P00027) | 789,600 |
| 7 | Differing Site Condition – Section 7 Clay | 1,123,884 |
| 8 | Differing Site Condition – Lost Lake Levees | 6,380,546 |
| | **Total** | **$14,406,646** |

We have performed a preliminary evaluation of these costs and their basis and have determined they are compensable costs. A more detailed evaluation is ongoing and revisions to this report will be made, if necessary.

**Differing Site Condition – Flare Area Stations 520+00 to 550+00 (very stiff clay)**

On February 14, 2001, RMI submitted a revised Request for Equitable Adjustment (REA) for differing site conditions pertaining to the Flare Area in the amount of $4,691,688 to the USACE, Galveston, Texas. The "Measured Mile" approach is used to calculate damage dollar amounts and delay days. The measured mile approach is the most widely used method for calculating these types of impact costs in use today. Additional costs were incurred by RMI during the periods between January 23, 2000 through March 11, 2000 and July 17, 2000 through September 29, 2000. The USACE granted merit to the Differing Site Condition on December 13, 2001 in correspondence to RMI. RMI submitted a revised REA and, per various Government regulations, simultaneously, "certified" it as a Certified Claim. RMI submitted its REA for $4,691,688. USACE issued and paid a Change Order for $3,083,833 leaving a balance of $1,607,855 being claimed by RMI. As of the date of this analysis, the balance of RMI's claim has not been resolved.

Audit Report Comments

An audit report for this specific claim was performed by the Defense Contract Audit Agency ("DCAA") and submitted to the USACE on December 12, 2002. The purpose of the audit was primarily to determine if the claimed costs were acceptable as a basis for settlement. The report does not address the technical validity of the claim. The DCAA identifies $1,306,729 of "questioned costs" in the following categories – Equipment & Labor ($875,784), Equipment Repair Cost ($50,000), Indirect Expenses ($208,116) and Professional Fees/Consultants ($50,000). Overall, the DCAA indicates that *"because the non-compliances and inadequacies are considered insignificant, we believe the claim is an acceptable basis for settlement of the price adjustment claim request."*

Response to Audit Report Comments

Equipment & Labor

The DCAA primarily questioned two items – inclusion of equipment related to levee construction ($548,951) and depreciation periods for the dredge *Millennium* and the booster barge ($530,502). Also, the DCAA questioned $120,070 because it appears to be due to levee labor costs which should not appear in the claim per the USACE. RMI disagrees with both levee-related amounts questioned and indicates that these are actual costs that must be recovered. The levee costs are recoverable since they are directly related to the delay to the dredge. The cost of the levee work increased as a direct result of the impact to the dredging work.

For depreciation, RMI calculated project expenses for the dredge using a 10 year depreciation period and a 7 year period for the booster barge. DCAA implies that a 25 year period must be used for both. RMI based its depreciation calculations on the USACE Manual EP 1110-108, Volume 6 worksheets provided in Chapter 4, Methodology for Dredging Plant and used its actual depreciation amounts. DCAA determined that RMI must use both EFARS regulations and the USACE Manual EP 1110-1-8, Volume 6 to determine the useful life period for the dredge. DCAA further determined the amount in the Equipment category to be specifically noncompliant with EFARS provision 52.231-5000 and that RMI must use the manual for both operating and ownership costs – not either or. Upon review of the EFARS 52.231-5000 regulation, RMI may use a depreciation period of its choice if appropriate records are available to support their calculations with regard to both ownership and operating expenses. EFARS 52.231-5000 (b) states:

> "Allowable cost for construction and marine plant and equipment in sound workable condition owned or controlled and furnished by a contractor or subcontractor at any tier shall be based on actual cost data for each piece of equipment or groups of similar serial and series for which the Government can determine both ownership and operating costs from the contractor's accounting records. When both ownership and operating costs cannot be determined for any piece of equipment or groups of similar serial or series equipment from the contractor's accounting records, costs for that equipment shall be based upon the applicable provisions of EP 1110-1-8, Construction Equipment Ownership and Operating Expense Schedule, Region."

It is not mandatory that RMI use the USACE Equipment Manual depreciation period if actual supporting cost information and/or related accounting records are available for the dredge and the barge. Two other sources were used to validate the cost numbers provided by RMI for the dredge, an Internal Revenue Service (IRS) publication and an industry standard cost publication, "Rental Rate Blue Book for Construction Equipment" Volume 1, 2003. The IRS Publication 956 titled "How to Depreciate Property" allows depreciation terms for Construction Equipment including "equipment used by heavy and marine construction contractors" from 5 to 6 years depending upon the method of depreciation used (see Table B-2, Asset Class 15.0, page 98). Furthermore, "Vessels, Barges, Tugs, and Similar Water Transportation Equipment, except those used in marine construction" – considered lighter duty use than dredging equipment – has

depreciation terms from 10 to 18 years depending upon the depreciation method used (see Table B-1, Asset Class 00.28, page 97). The Rental Rate Blue Book specifies an hourly rate of $694.58 per hour not including ancillary equipment. This rate is consistent with the $542.49 (Non-Effective Time) and $831.83 (Adjusted Rate) per hour rates specified in the RMI claim.

Equipment Repair Cost

DCAA questions the entire $50,000 amount due to RMI "being unable to support the claimed costs." These costs represent estimated incurred rental equipment repair costs and were provided by Barry Smith, Pathfinder Construction Consulting, Inc. These costs are still being evaluated.

Indirect Expenses

Indirect expenses are calculated as a percentage of the claimed amounts. The indirect expense amounts questioned by DCAA were based on reducing the claimed amounts which we disagree with. There were minor DCAA exceptions that are still being evaluated. Therefore, the majority of the claimed amounts are compensable.

Professional Fees/Consultants

DCAA states that claim preparation costs are unallowable under FAR 31.205-47(f) (1). A check of this regulation was made and "costs are unallowable if incurred in connection with the prosecution of claims or appeals against the Federal Government." However, REA preparation costs and costs incurred prior to this item becoming a claim are allowable. A more detailed evaluation of these expenses is being conducted.

**Differing Site Condition – South Ferry Landing Stations 470+00 to 472+00**

On August 23, 2001, RMI submitted to the USACE, Galveston, Texas a revised REA for differing site conditions pertaining to the South Ferry Landing Area in the amount of $1,049,173. The REA was originally submitted to the USACE on January 10, 2001 and revised on March 6, 2001.

This claim involves dredging problems when encountering debris and rubble material (primarily man-made erosion protection stone, concrete and steel) near the South Ferry Landing Area. Between April 7, 2000 and May 17, 2000 while dredging, RMI incurred additional costs due to unanticipated obstructions within the channel between stations 470+00 and 472+00 of the Upper Bayou Project near Houston, Texas. Specification Section 02482 – Dredging, paragraph 1.11.1 states:

> "Other materials such as scrap, rope, wire cable, snags, and stumps may be encountered within the specified limits of required dredging and overdepth dredging. No separate payment will be made for removal and placement of the debris."

However, RMI believes it encountered significant amounts of man-made materials, not identified in the plans and specifications, above and beyond what a reasonable contractor would expect. As a result, significant time was expended in this area or "lost" (approximately 18 days) and the dredging machinery sustained serious damages. The dredge *Millennium* was also moved to other locations while awaiting responses from the USACE for appropriate action increasing RMI's cost and time. Numerous notifications were made as the extent and scale of the problems were realized.

RMI uses the "measured mile" approach to calculate damages for this claim. The claimed costs are compensable. As of the date of this analysis, RMI's claim has not been resolved.

Audit Report Comments

An audit report for this specific claim was performed by the Defense Contract Audit Agency ("DCAA") and submitted to the USACE on December 12, 2002. The purpose of the audit was primarily to determine if the claimed costs were acceptable as a basis for settlement. The report does not address the technical validity of the claim. The DCAA identifies $334,881 of "questioned costs" in the following categories – Equipment & Labor ($200,034), Dredge Equipment Repair Cost ($16,489), Indirect Expenses ($48,675) and Professional Fees/Consultants ($40,000). Overall, the DCAA indicates that *"because the noncompliances and inadequacies are considered insignificant, we believe the claim is an acceptable basis for settlement of the price adjustment claim request."*

Response to Audit Report Comments

Equipment & Labor

The DCAA primarily questioned two items – inclusion of equipment related to levee construction ($136,930) and depreciation periods for the dredge *Millennium* and the booster barge ($86,434).

The DCAA questioned $136,930 ($93,575 for equipment and $43,355 for labor) in costs that were included for what they believe to be related to levee construction. RMI disagrees and indicates that these are actual costs that must be recovered. The levee costs are recoverable since they are directly related to the delay to the dredge. The cost of the levee work increased as a direct result of the impact to the dredging work.

The primary item within the Equipment category is the depreciation period allowed for the dredge *Millennium* and the booster barge. RMI calculated project expenses for the dredge using a 10 year depreciation period and a 7 year period for the booster barge. DCAA implies that a 25 year period must be used for both. RMI based its depreciation calculations on the USACE Manual EP 1110-108, Volume 6 worksheets provided in Chapter 4, Methodology for Dredging Plant and used its actual depreciation amounts. DCAA determined that RMI must use both EFARS regulations and the USACE Manual EP 1110-1-8, Volume 6 to determine the useful life period for the dredge. DCAA further determined the amount in the Equipment category to be specifically noncompliant with EFARS provision 52.231-5000 and that RMI must use the

manual for both operating and ownership costs – not either or. Upon review of the EFARS 52.231-5000 regulation, RMI may use a depreciation period of its choice if appropriate records are available to support their calculations with regard to both ownership and operating expenses. EFARS 52.231-5000 (b) states:

> "Allowable cost for construction and marine plant and equipment in sound workable condition owned or controlled and furnished by a contractor or subcontractor at any tier shall be based on actual cost data for each piece of equipment or groups of similar serial and series for which the Government can determine both ownership and operating costs from the contractor's accounting records. When both ownership and operating costs cannot be determined for any piece of equipment or groups of similar serial or series equipment from the contractor's accounting records, costs for that equipment shall be based upon the applicable provisions of EP 1110-1-8, Construction Equipment Ownership and Operating Expense Schedule, Region."

It is not mandatory that RMI use the USACE Equipment Manual depreciation period if other supporting cost information and/or related accounting records are available for the dredge and the barge. Two other sources were used to validate the cost numbers provided by RMI for the dredge, an Internal Revenue Service (IRS) publication and an industry standard cost publication, "Rental Rate Blue Book for Construction Equipment" Volume 1, 2003. The IRS Publication 956 titled "How to Depreciate Property" allows depreciation terms for Construction Equipment including "equipment used by heavy and marine construction contractors" from 5 to 6 years depending upon the method of depreciation used (see Table B-2, Asset Class 15.0, page 98). Furthermore, "Vessels, Barges, Tugs, and Similar Water Transportation Equipment, except those used in marine construction" – considered lighter duty use than dredging equipment – has depreciation terms from 10 to 18 years depending upon the depreciation method used (see Table B-1, Asset Class 00.28, page 97). The Rental Rate Blue Book specifies an hourly rate of $694.58 per hour not including ancillary equipment ($815.00 per hour adjusted as follows: Age Adjustment (0.974) and Regional Adjustment (0.875). This rate is consistent with the $542.49 (Non-Effective Time) and $831.83 (Adjusted Rate) per hour rates specified in the RMI claim.

Dredge Equipment Repair Cost

Several rental equipment repair invoices occurred outside the delay date range. DCAA questioned these costs. These costs were incurred for spare parts which are purchased before they are required and were used to repair damage caused by the encountered debris and rubble. These costs are compensable.

Indirect Expenses

Indirect expenses are calculated as a percentage of the claimed amounts. The indirect expense amounts questioned by DCAA were based on reducing the claimed amounts which we disagree with. There were minor DCAA exceptions that are still being evaluated. Therefore, the majority of the claimed amounts are compensable.

Professional Fees/Consultants

DCAA states that claim preparation costs are unallowable under FAR 31.205-47(f) (1). A check of this regulation was made and "costs are unallowable if incurred in connection with the prosecution of claims or appeals against the Federal Government." However, REA preparation costs and costs incurred prior to this item becoming a claim are allowable. A more detailed evaluation of these expenses is being conducted.

**Changed Conditions – HL&P Transmission Tower Delays**

On May 16, 2001, RMI submitted to the USACE, Galveston, Texas a revised REA for changed conditions pertaining to the Houston Lighting & Power ("HLP") Transmission Tower Delays in the amount of $170,863. The REA was originally submitted to the USACE on April 11, 2001. While performing dredging work on the Upper Bayou near Houston, Texas, RMI was forced to move its discharge line two times because of HLP transmission line and tower work in the immediate area. Additional costs were incurred by RMI during the periods of July 16 and 17, 2000 and October 16, 17, and 18, 2000. To prevent a disruption of the HLP work, RMI had to move the discharge line for the dredge *Millennium* during each of these periods. Moving the discharge line is a substantial operation that cannot be accomplished without significant labor and equipment costs and production delays. The USACE granted "merit" to the claim in its December 13, 2000 correspondence to RMI, acknowledging "HLP failed to coordinate with the government with respect to this tower." RMI submitted the Request for Equitable Adjustment (REA) which was later changed to a Certified Claim on August 9, 2001. As of the date of this analysis, RMI's claim has not been resolved.

Audit Report Comments

An audit report for this specific claim was performed by the DCAA and submitted to the USACE on December 12, 2002. The purpose of the audit was primarily to determine if the claimed costs were acceptable as a basis for settlement. The report does not address the technical validity of the claim. The DCAA identifies $45,000 of "questioned costs" in the following categories – Equipment ($26,000), Indirect Expenses ($6,000) and Professional and Consulting Cost ($10,000). Overall, the DCAA indicates that *"because the noncompliances and inadequacies are considered insignificant, we believe the claim is an acceptable basis for settlement of the price adjustment claim request."*

Response to Audit Report Comments

Equipment

For depreciation, RMI calculated project expenses for the dredge using a 10 year depreciation period and a 7 year period for the booster barge. DCAA implies that a 25 year period must be used for both. RMI based its depreciation calculations on the USACE Manual EP 1110-108, Volume 6 worksheets provided in Chapter 4, Methodology for Dredging Plant and used its actual depreciation amounts. DCAA determined that RMI must use both EFARS regulations and the

USACE Manual EP 1110-1-8, Volume 6 to determine the useful life period for the dredge. DCAA further determined the amount in the Equipment category to be specifically noncompliant with EFARS provision 52.231-5000 and that RMI must use the manual for both operating and ownership costs – not either or. Upon review of the EFARS 52.231-5000 regulation, RMI may use a depreciation period of its choice if appropriate records are available to support their calculations with regard to both ownership and operating expenses. EFARS 52.231-5000 (b) states:

> "Allowable cost for construction and marine plant and equipment in sound workable condition owned or controlled and furnished by a contractor or subcontractor at any tier shall be based on actual cost data for each piece of equipment or groups of similar serial and series for which the Government can determine both ownership and operating costs from the contractor's accounting records. When both ownership and operating costs cannot be determined for any piece of equipment or groups of similar serial or series equipment from the contractor's accounting records, costs for that equipment shall be based upon the applicable provisions of EP 1110-1-8, Construction Equipment Ownership and Operating Expense Schedule, Region."

It is not mandatory that RMI use the USACE Equipment Manual depreciation period if actual supporting cost information and/or related accounting records are available for the dredge and the barge. Two other sources were used to validate the cost numbers provided by RMI for the dredge, an Internal Revenue Service (IRS) publication and an industry standard cost publication, "Rental Rate Blue Book for Construction Equipment" Volume 1, 2003. The IRS Publication 956 titled "How to Depreciate Property" allows depreciation terms for Construction Equipment including "equipment used by heavy and marine construction contractors" from 5 to 6 years depending upon the method of depreciation used (see Table B-2, Asset Class 15.0, page 98). Furthermore, "Vessels, Barges, Tugs, and Similar Water Transportation Equipment, except those used in marine construction" – considered lighter duty use than dredging equipment – has depreciation terms from 10 to 18 years depending upon the depreciation method used (see Table B-1, Asset Class 00.28, page 97). The Rental Rate Blue Book specifies an hourly rate of $694.58 per hour not including ancillary equipment. This rate is consistent with the $542.49 (Non-Effective Time) and $831.83 (Adjusted Rate) per hour rates specified in the RMI claim.

Indirect Expenses

Indirect expenses are calculated as a percentage of the claimed amounts. The indirect expense amounts questioned by DCAA were based on reducing the claimed amounts which we disagree with. There were minor DCAA exceptions that are still being evaluated. Therefore, the majority of the claimed amounts are compensable.

Professional Fees/Consultants

DCAA states that claim preparation costs are unallowable under FAR 31.205-47(f) (1). A check of this regulation was made and "costs are unallowable if incurred in connection with the prosecution of claims or appeals against the Federal Government." However, REA preparation

costs and costs incurred prior to this item becoming a claim are allowable. A more detailed evaluation of these expenses is being conducted.

**Differing Site Condition – Obstruction in Sections 4 to 8, Stations 570+00 to 685+00**

On June 11, 2001, RMI submitted to the USACE, Galveston, Texas a revised REA for differing site conditions related to channel obstructions (Sections 4 through 8) in the amount of $2,126,083. The REA was originally submitted to the USACE on April 16, 2001. While performing dredging work on the Upper Bayou near Houston, Texas between October 20, 2000 and December 20, 2000, RMI incurred additional costs due to higher than normal obstructions within the channel between stations 570+00 and 640+00. Specification Section 02482 – Dredging, paragraph 1.11.1 states:

> "Other materials such as scrap, rope, wire cable, snags, and stumps may be encountered within the specified limits of required dredging and overdepth dredging. No seperage (sic?) payment will be made for removal and placement of the debris."

However, RMI struck numerous buried obstructions and sustained serious damage to dredging machinery as well as significant downtime while repairs were being made. Some of these objects were extremely heavy (one approximately 10 tons) and extremely large (a CONEX sea container). Other obstructions included, but were not limited to old large diameter iron pipe, pieces of cars, heavy industrial construction demolition material and literally thousands of tires. Immediately after each major encounter, notification was provided to the USACE by RMI. In certain cases, the USACE subsequently directed RMI to remove obstructions and specified additional compensation. Other obstructions were either removed by third parties or left in the channel. On December 13, 2000, the USACE, via correspondence, granted "merit" to several notifications as the existence of debris was noted to be in excess of what is considered "normal." During the period between January 7 and January 11, 2001, an underwater survey of the Upper Bayou channels was performed. Several large objects were located and various scattered debris fields were confirmed to exist and mapped. As of the date of this analysis, RMI's claim has not been resolved.

Audit Report Comments

An audit report for this specific claim was performed by the Defense Contract Audit Agency ("DCAA") and submitted to the USACE on December 12, 2002. The purpose of the audit was primarily to determine if the claimed costs were acceptable as a basis for settlement. The report does not address the technical validity of the claim. The DCAA identifies $351,000 of "questioned costs" in the following categories – Equipment ($171,000), Dredge Equipment Repair Cost ($58,000), Indirect Expenses ($51,000) and Professional Fees/Consultants ($34,000). Overall, the DCAA indicates that *"because the noncompliances and inadequacies are considered insignificant, we believe the claim is an acceptable basis for settlement of the price adjustment claim request."*