Response to Audit Report Comments

Equipment

For depreciation, RMI calculated project expenses for the dredge using a 10 year depreciation period and a 7 year period for the booster barge. DCAA implies that a 25 year period must be used for both. RMI based its depreciation calculations on the USACE Manual EP 1110-108, Volume 6 worksheets provided in Chapter 4, Methodology for Dredging Plant and used its actual depreciation amounts. DCAA determined that RMI must use both EFARS regulations and the USACE Manual EP 1110-1-8, Volume 6 to determine the useful life period for the dredge. DCAA further determined the amount in the Equipment category to be specifically noncompliant with EFARS provision 52.231-5000 and that RMI must use the manual for both operating and ownership costs – not either or. Upon review of the EFARS 52.231-5000 regulation, RMI may use a depreciation period of its choice if appropriate records are available to support their calculations with regard to both ownership and operating expenses. EFARS 52.231-5000 (b) states:

> "Allowable cost for construction and marine plant and equipment in sound workable condition owned or controlled and furnished by a contractor or subcontractor at any tier shall be based on actual cost data for each piece of equipment or groups of similar serial and series for which the Government can determine both ownership and operating costs from the contractor's accounting records. When both ownership and operating costs cannot be determined for any piece of equipment or groups of similar serial or series equipment from the contractor's accounting records, costs for that equipment shall be based upon the applicable provisions of EP 1110-1-8, Construction Equipment Ownership and Operating Expense Schedule, Region."

It is not mandatory that RMI use the USACE Equipment Manual depreciation period if actual supporting cost information and/or related accounting records are available for the dredge and the barge. Two other sources were used to validate the cost numbers provided by RMI for the dredge, an Internal Revenue Service (IRS) publication and an industry standard cost publication, "Rental Rate Blue Book for Construction Equipment" Volume 1, 2003. The IRS Publication 956 titled "How to Depreciate Property" allows depreciation terms for Construction Equipment including "equipment used by heavy and marine construction contractors" from 5 to 6 years depending upon the method of depreciation used (see Table B-2, Asset Class 15.0, page 98). Furthermore, "Vessels, Barges, Tugs, and Similar Water Transportation Equipment, except those used in marine construction" – considered lighter duty use than dredging equipment – has depreciation terms from 10 to 18 years depending upon the depreciation method used (see Table B-1, Asset Class 00.28, page 97). The Rental Rate Blue Book specifies an hourly rate of $694.58 per hour not including ancillary equipment. This rate is consistent with the $542.49 (Non-Effective Time) and $831.83 (Adjusted Rate) per hour rates specified in the RMI claim.

The DCAA also questioned $53,657 in costs that were included for equipment that they believe to be related to levee construction. RMI disagrees and indicates that these are actual costs that must be recovered. The levee costs are recoverable since they are directly related to the delay to

the dredge. The cost of the levee work increased as a direct result of the impact to the dredging work.

Dredge Equipment Repair Cost

Four repair invoices were discovered that occurred prior to the first obstruction in this claim. Per RMI, these items were mistakenly included in this claim as well at the South Ferry Landing claim. Both DCAA and RMI concur that these items are duplicated and should be removed from this differing site condition claim.

Indirect Expenses

Indirect expenses are calculated as a percentage of the claimed amounts. The indirect expense amounts questioned by DCAA were based on reducing the claimed amounts which we disagree with. There were minor DCAA exceptions that are still being evaluated. Therefore, the majority of the claimed amounts are compensable.

Professional Fees/Consultants

DCAA states that claim preparation costs are unallowable under FAR 31.205-47(f) (1). A check of this regulation was made and "costs are unallowable if incurred in connection with the prosecution of claims or appeals against the Federal Government." However, REA preparation costs and costs incurred prior to this item becoming a claim are allowable. A more detailed evaluation of these expenses is being conducted.

**Differing Site Condition – Obstruction in Section 9, Stations 660+00 to 685+00**

On June 14, 2001, RMI submitted to the USACE, Galveston, Texas a Request for Equitable Adjustment (REA) for differing site conditions related to channel obstructions (Section 9) in the amount of $1,158,642. While performing dredging work on the Upper Bayou near Houston, Texas between April 12, 2001 and May 8, 2001, RMI incurred additional costs due to higher than normal obstructions within the channel between stations 658+00 and 680+00. Specification Section 02482 – Dredging, paragraph 1.11.1 states:

> "Other materials such as scrap, rope, wire cable, snags, and stumps may be encountered within the specified limits of required dredging and overdepth dredging. No seperage (sic?) payment will be made for removal and placement of the debris."

However, RMI struck numerous buried obstructions and sustained serious damage to dredging machinery as well as significant downtime while repairs were being made. In addition, the occurrences were made after a sonar survey performed between January 7 and January 11, 2001 indicated the presence of debris fields and other large obstructions within the Section 9 channel. Because of previous difficulties with obstructions in dredging Sections 4 through 8 and the survey results, RMI suggested to the USACE that, before hydraulic dredging proceeds in Section

9, the debris should be removed by clamshell cranes. The USACE directed RMI to proceed with the work regardless of this warning on March 29, 2001 and contact the USACE for verification if excessive debris is encountered. Work proceeded in Section 9 and on April 12, 2001 after encountering several obstructions, RMI contacted the USACE for verification of the conditions and possible solutions. RMI suggested that, if dredging continued, the dredge may be extensively damaged causing delays and dollar damages. After additional encounters with objects and significant damages to the dredge *Millennium*, RMI again sought change or deletion of this section of the contract. On June 1, 2001, the USACE directed RMI to delete the remaining portion of Section 9 in the contract. The claim submitted by RMI on June 14, 2001 relates to damages and additional costs incurred before this contract change. As of the date of this analysis, RMI's claim has not been resolved.

Audit Report Comments

An audit report for this specific claim was performed by the Defense Contract Audit Agency ("DCAA") and submitted to the USACE on December 12, 2002. The purpose of the audit was primarily to determine if the claimed costs were acceptable as a basis for settlement. The report does not address the technical validity of the claim. The DCAA identifies $131,000 of "questioned costs" in the following categories – Equipment ($87,000), Indirect Expenses ($19,000) and Professional Fees/Consultants ($10,000). Overall, the DCAA indicates that *"because the noncompliances and inadequacies are considered insignificant, we believe the claim is an acceptable basis for settlement of the price adjustment claim request."*

Response to Audit Report Comments

Equipment

For depreciation, RMI calculated project expenses for the dredge using a 10 year depreciation period and a 7 year period for the booster barge. DCAA implies that a 25 year period must be used for both. RMI based its depreciation calculations on the USACE Manual EP 1110-108, Volume 6 worksheets provided in Chapter 4, Methodology for Dredging Plant and used its actual depreciation amounts. DCAA determined that RMI must use both EFARS regulations and the USACE Manual EP 1110-1-8, Volume 6 to determine the useful life period for the dredge. DCAA further determined the amount in the Equipment category to be specifically noncompliant with EFARS provision 52.231-5000 and that RMI must use the manual for both operating and ownership costs – not either or. Upon review of the EFARS 52.231-5000 regulation, RMI may use a depreciation period of its choice if appropriate records are available to support their calculations with regard to both ownership and operating expenses. EFARS 52.231-5000 (b) states:

> "Allowable cost for construction and marine plant and equipment in sound workable condition owned or controlled and furnished by a contractor or subcontractor at any tier shall be based on actual cost data for each piece of equipment or groups of similar serial and series for which the Government can determine both ownership and operating costs from the contractor's accounting records. When both ownership and operating costs cannot be determined for any

piece of equipment or groups of similar serial or series equipment from the contractor's accounting records, costs for that equipment shall be based upon the applicable provisions of EP 1110-1-8, Construction Equipment Ownership and Operating Expense Schedule, Region."

It is not mandatory that RMI use the USACE Equipment Manual depreciation period if actual supporting cost information and/or related accounting records are available for the dredge and the barge. Two other sources were used to validate the cost numbers provided by RMI for the dredge, an Internal Revenue Service (IRS) publication and an industry standard cost publication, "Rental Rate Blue Book for Construction Equipment" Volume 1, 2003. The IRS Publication 956 titled "How to Depreciate Property" allows depreciation terms for Construction Equipment including "equipment used by heavy and marine construction contractors" from 5 to 6 years depending upon the method of depreciation used (see Table B-2, Asset Class 15.0, page 98). Furthermore, "Vessels, Barges, Tugs, and Similar Water Transportation Equipment, except those used in marine construction" – considered lighter duty use than dredging equipment – has depreciation terms from 10 to 18 years depending upon the depreciation method used (see Table B-1, Asset Class 00.28, page 97). The Rental Rate Blue Book specifies an hourly rate of $694.58 per hour not including ancillary equipment. This rate is consistent with the $542.49 (Non-Effective Time) and $831.83 (Adjusted Rate) per hour rates specified in the RMI claim.

The DCAA also questioned $11,962 in costs that were included for equipment that they believe to be related to levee construction. RMI disagrees and indicates that these are actual costs that must be recovered. The levee costs are recoverable since they are directly related to the delay to the dredge. The cost of the levee work increased as a direct result of the impact to the dredging work.

Indirect Expenses

Indirect expenses are calculated as a percentage of the claimed amounts. The indirect expense amounts questioned by DCAA were based on reducing the claimed amounts which we disagree with. There were minor DCAA exceptions that are still being evaluated. Therefore, the majority of the claimed amounts are compensable.

Professional Fees/Consultants

DCAA states that claim preparation costs are unallowable under FAR 31.205-47(f) (1). A check of this regulation was made and "costs are unallowable if incurred in connection with the prosecution of claims or appeals against the Federal Government." However, REA preparation costs and costs incurred prior to this item becoming a claim are allowable. A more detailed evaluation of these expenses is being conducted.

**Changed Conditions – West Levee Realignment, Lost Lake Placement Area Between Stations 166+00 to 215+00 (Modification CO-10, P00027)**

On May 31, 2001, RMI submitted to the USACE, Galveston, Texas an REA for Levee Realignment between Stations 166+00 to 215+00 in the amount of $789,600. Modification CO-10 had been issued previously but RMI was not in agreement with the cost and time provisions suggested by the USACE. Therefore, RMI submitted the REA to recover its additional costs. In July, 2000, while performing dredging work on the Upper Bayou near Houston, Texas, RMI became aware of a design problem with the levee alignment as described in the contract documents, and on July 28, 2000, notified the USACE. Subsequent discussions and correspondence led to Modification CO-10 issued by the USACE directing RMI to realign the levee per an attached new drawing without any change to the contract cost or completion period. RMI notified the USACE on May 31, 2001 that the cost and time portions of the modification were unacceptable noting that additional costs were incurred and time required to complete the levee realignment. The REA was submitted on the same date to request cost (an additional $789,600) and time (an additional 40 days) adjustments to the contract. RMI further noted that it did not believe that cost and pricing data was required for this REA Proposal as unit prices had been agreed to in earlier modifications CO-1 and CO-2. In its REA, RMI references the Unit Price of $4.70/CY for realignment and relocation of levees per Modification Pay Item Nos. 1CO-2, 3CO-2, 4CO-2 and 5CO-2 and used that amount to calculate the amount claimed by RMI. RMI mentions that the Unit Price of $4.70/CY was approved by the Government in March 1999. Also related to this claim is a dispute over the amount of material hydraulically placed by RMI. On August 16, 2000, a quality assurance survey was made by JV consultants for the USACE. The JV stated "quantity calculations indicate the contractor has pumped 132,937 CY of material versus a required quantity of 59,087 or about 2.5 times the needed quantity." RMI states that material was not wasted, as alleged by the JV but was used to fill borrow areas and displace unsuitable material. As of the date of this analysis, RMI's claim has not been resolved.

Audit Report Comments

An audit report for this specific claim was performed by the Defense Contract Audit Agency ("DCAA") and submitted to the USACE on December 12, 2002. The purpose of the audit was primarily to determine if the claimed costs were acceptable as a basis for settlement. The report does not address the technical validity of the claim. The DCAA labels the entire claim amount of $789,600 as "questioned costs" due to "RMI not providing adequate support for its claim related to Changed Conditions-West Levee Realignment, Lost Lake Placement Area." More specifically, the DCAA stated the claim was not prepared in accordance with Federal Acquisition Regulation (FAR) 15, particularly FAR 15.408, Table 15-2. This FAR requires that the contractor provide breakdowns for the basic cost elements claimed. This FAR provides instructions on the format of cost/price proposals and requires specific cost break outs - for example: Materials and Services, Direct Labor, Indirect Costs, etc.

Response to Audit Report Comments

It should be noted that this position contradicts that which was outlined in the original REA – cost detail is not required due to a previous agreement with the USACE regarding unit costs.

The additional costs are compensable. A more detailed evaluation of costs is being conducted and this claim will be modified, if necessary.

**Differing Site Condition – Section 7 Clay**

On April 16, 2001, RMI submitted to the USACE, Galveston, Texas a REA for dredging in clay areas pertaining to the Section 7 Area in the amount of $1,083,779. RMI submitted a certified claim on August 9, 2001 and revised it on April 19, 2002. The total damages are now stated to be $1,123,884 supported by a revised Damages Summary report and audit-related documents. While performing dredging work on the Upper Bayou near Houston, Texas, RMI encountered heavy red clay material at the north side of the channel between Station Nos. 561+20 and 609+00 during the period between October 2, 2000 and November 6, 2000. RMI had notified the USACE on October 20, 2000 in writing that hardpan clay had been encountered. This type of clay, per the REA, is "very difficult to dredge through." The USACE denied "merit" to the issue in correspondence dated December 13, 2000 and indicated:

> "The soils borings shown in the contract drawings pertaining to this area indicate stiff to very stiff clays and medium dense to dense sands. Encountering these materials should be anticipated in various areas during dredging operations."

In the REA, RMI states it anticipated dredging gray and blue clays per the soil borings but not hardpan or red clay as the December 13 USACE correspondence implied. The log borings in the impacted area do not show the conditions actually encountered. The dredge was delayed 20 calendar days in a 35 day period and incurred additional equipment, labor, and overhead costs. RMI uses past historical data, operating information for the dredge, and the "measured mile" approach to calculate damages for this claim. A "Show Cause Notice", dated November 6, 2000, was issued by the USACE indicating the USACE was considering terminating the contract for default. RMI responded to the Show Cause Notice on November 15, 2000. On November 29, 2000, the JV consultants reviewed RMI's response to the Show Cause Notice and were of the belief that there was no differing site condition. More specifically, the JV wrote that RMI "has not provided notice and allowed the Government it's right to investigate" and "heavy clays are depicted in the soil borings and drawings." In a subsequent letter dated June 1, 2001, the JV stated they had further reviewed the boring logs which indicated the presence of hard clays ranging from light gray, blue gray, olive, brown, rust, red, and mixtures thereof. As of the date of this analysis, RMI's claim has not been resolved nor does there appear to be any evidence that the USACE has given "merit" to this issue.

<u>Audit Report Comments</u>

An audit report for this specific claim was performed by the Defense Contract Audit Agency ("DCAA") and submitted to the USACE on December 12, 2002. The purpose of the audit was primarily to determine if the claimed costs were acceptable as a basis for settlement. The report does not address the technical validity of the claim. The DCAA identifies $256,143 of "questioned costs" in the following categories – Equipment ($166,564), Indirect Expenses ($37,444) and Professional Fees/Consultants ($25,000). Overall, the DCAA indicates that

*"because the non-compliances and inadequacies are considered insignificant, we believe the claim is an acceptable basis for settlement of the price adjustment claim request."*

Response to Audit Report Comments

Equipment

The DCAA questioned two specific items – inclusion of equipment related to levee construction ($207,130) and depreciation periods for the dredge *Millennium* and the booster barge ($114,221). RMI disagrees with all levee-related amounts questioned and indicates that these are actual costs that must be recovered. The levee costs are recoverable since they are directly related to the delay to the dredge. The cost of the levee work increased as a direct result of the impact to the dredging work.

For depreciation, RMI calculated project expenses for the dredge using a 10 year depreciation period and a 7 year period for the booster barge. DCAA implies that a 25 year period must be used for both. RMI based its depreciation calculations on the USACE Manual EP 1110-108, Volume 6 worksheets provided in Chapter 4, Methodology for Dredging Plant and used its actual depreciation amounts. DCAA determined that RMI must use both EFARS regulations and the USACE Manual EP 1110-1-8, Volume 6 to determine the useful life period for the dredge. DCAA further determined the amount in the Equipment category to be specifically noncompliant with EFARS provision 52.231-5000 and that RMI must use the manual for both operating and ownership costs – not either or. Upon review of the EFARS 52.231-5000 regulation, RMI may use a depreciation period of its choice if appropriate records are available to support their calculations with regard to both ownership and operating expenses. EFARS 52.231-5000 (b) states:

> "Allowable cost for construction and marine plant and equipment in sound workable condition owned or controlled and furnished by a contractor or subcontractor at any tier shall be based on actual cost data for each piece of equipment or groups of similar serial and series for which the Government can determine both ownership and operating costs from the contractor's accounting records. When both ownership and operating costs cannot be determined for any piece of equipment or groups of similar serial or series equipment from the contractor's accounting records, costs for that equipment shall be based upon the applicable provisions of EP 1110-1-8, Construction Equipment Ownership and Operating Expense Schedule, Region."

It is not mandatory that RMI use the USACE Equipment Manual depreciation period if actual supporting cost information and/or related accounting records are available for the dredge and the barge. Two other sources were used to validate the cost numbers provided by RMI for the dredge, an Internal Revenue Service (IRS) publication and an industry standard cost publication, "Rental Rate Blue Book for Construction Equipment" Volume 1, 2003. The IRS Publication 956 titled "How to Depreciate Property" allows depreciation terms for Construction Equipment including "equipment used by heavy and marine construction contractors" from 5 to 6 years depending upon the method of depreciation used (see Table B-2, Asset Class 15.0, page 98).

Furthermore, "Vessels, Barges, Tugs, and Similar Water Transportation Equipment, except those used in marine construction" – considered lighter duty use than dredging equipment – has depreciation terms from 10 to 18 years depending upon the depreciation method used (see Table B-1, Asset Class 00.28, page 97). The Rental Rate Blue Book specifies an hourly rate of $694.58 per hour not including ancillary equipment. This rate is consistent with the $542.49 (Non-Effective Time) and $831.83 (Adjusted Rate) per hour rates specified in the RMI claim.

Indirect Expenses

Indirect expenses are calculated as a percentage of the claimed amounts. The indirect expense amounts questioned by DCAA were based on reducing the claimed amounts which we disagree with. There were minor DCAA exceptions that are still being evaluated. Therefore, the majority of the claimed amounts are compensable.

Professional Fees/Consultants

DCAA states that claim preparation costs are unallowable under FAR 31.205-47(f) (1). A check of this regulation was made and "costs are unallowable if incurred in connection with the prosecution of claims or appeals against the Federal Government." However, REA preparation costs and costs incurred prior to this item becoming a claim are allowable. A more detailed evaluation of these expenses is being conducted.

**Differing Site Condition – Lost Lake Levees**

On October 16, 2001, RMI submitted to the USACE, Galveston, Texas a REA for differing site conditions and changed conditions related to hydraulic levees at the Lost Lake Placement Area in the amount of $6,258,853. While performing dredging work on the Upper Bayou near Houston, Texas between September 13, 1999 and September 18, 2001, RMI incurred additional costs due to a combination of several Changed Conditions and/or Differing Site Conditions discovered at the Lost Lake Disposal Placement Area. This claim encompasses a wide time-frame and is supported by numerous reports, letters, and other documents. Essentially, it involves extra costs for work and effort incurred to reconstruct levees damaged by subsidence of existing foundation materials. On December 13, 2000, the USACE via correspondence denied "merit" for these differing site conditions. The JV also supports this position and indicates that over-dredging, improper levee construction methods, use of unsuitable material, and inexperience are likely causes. RMI disagrees with these positions and believes the USACE did not accurately estimate quantities of suitable materials nor did it provide proper contract specifications and drawings in order to construct the levees as desired and that the foundation materials were unstable causing subsidence of the newly placed levees.

Audit Report Comments

An audit report for this specific claim was performed by the Defense Contract Audit Agency ("DCAA") and submitted to the USACE on December 12, 2002. The purpose of the audit was primarily to determine if the claimed costs were acceptable as a basis for settlement. The report

does not address the technical validity of the claim. The DCAA labels the entire claim amount of $6,258,853 as "questioned costs" due to RMI not providing adequate support for its claim. More specifically, the claim was not prepared in accordance with Federal Acquisition Regulation (FAR) 15, particularly FAR 15.408, Table 15-2. This FAR requires that the contractor provide breakdowns for the basic cost elements claimed. A review of this FAR was completed; it provides instructions on the format of cost/price proposals and requires specific cost break outs - for example: Materials and Services, Direct Labor, Indirect Costs, etc. The DCAA also states *"Because the cost or pricing data inadequacies are considered significant, we do not believe the claim is an acceptable basis for settlement of the price adjustment claim request..."*

<u>Response to Audit Report Comments</u>

The amount claimed represents the additional costs to attempt to construct and maintain the levees while they were subsiding. RMI indicates that the claim was prepared using the Modified Total Cost approach. RMI indicates that at a later date it will prepare and break out the claimed costs. These costs are compensable. A more detailed evaluation of these costs is being performed to provide detailed cost backup.

**Conclusions**

M&A believes these claims to be valid and compensable by the USACE in the amount of $14,406,646.