UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC.,<br>PLAINTIFF,<br><br>V.<br><br>UNITED STATES,<br>DEFENDANT. | §<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 02-306C<br><br>(JUDGE HEWITT) |

**RESPONSE BY PLAINTIFF, RENDA MARINE, INC., TO DEFENDANT'S MOTION TO COMPEL COMPLIANCE WITH RULE 26(a)(2)(B), TO COMPEL PRODUCTION OF DOCUMENTS, TO PERMIT DEFENDANT TO PERFORM AN AUDIT OF PLAINTIFF'S JOB COST SCHEDULES, AND FOR A MODIFICATION OF THE PRETRIAL AND TRIAL SCHEDULE**

**AND CONTINGENT MOTION FOR LEAVE TO REQUIRE DEFENDANT TO ANSWER RENDA'S DISCOVERY**

Plaintiff, Renda Marine, Inc. ("Renda"), respectfully responds to Defendant's Motion to Compel Compliance with Rule 26 (a)(2)(B), to Compel Production of Documents, to Permit Defendant to Perform an Audit of Plaintiff's Job Cost Schedules, and for a Modification of the Pretrial and Trial Schedule. Renda also submits a contingent request for leave to require Defendant to answer Renda's discovery, as follows.

From the beginning of this case, Defendant has sought to delay the discovery deadlines and trial date. During the initial scheduling conference with the Court, Defendant sought to delay the trial until about November 2004, about 2 ½ years after the case was filed on April 11, 2002.

On October 12, 2002, the Court set this case for a two week trial commencing on June 14, 2004.

On about August 26, 2003, before taking any depositions, Defendant filed a Motion for Modification of Pretrial Schedule, seeking to delay the pretrial deadlines by 152 days, resulting in a continuance of the trial setting. The Court adjusted some of the pretrial deadlines, but maintained

the trial date. Defendant did not begin to take depositions until about December 8, 2003, knowing full well that the fact discovery cutoff was February 4, 2004.

On February 18, 2004, Defendant filed the instant motion striving for a third time to delay the trial date. Defendant's purported basis is to allow time to undertake expert discovery, but Defendant made no attempt to depose any of Renda's experts before or after filing its motion. It is clear that Defendant's complaints about expert reports are not genuine but are calculated to support Defendant's request for a trial continuance.

**Certificate of Conference**

Defendant's attorney telephoned Renda's counsel on Friday, February 13, 2004, and left a message to return the call. Renda's counsel returned the call on Monday, February 16, 2004, but Defendant's attorney did not answer, and has no voice mail. Renda's counsel telecopied a letter to Defendant's attorney the same day indicating that Renda's counsel had tried to return the call. See Exhibit A. Defendant's attorney did not thereafter call Renda's counsel to discuss this matter.

Whatever concern Defendant has with Renda's expert reports and materials is something that the parties should be able to work out. There was no need for this motion.

**Need for Expert Reports**

Defendant mistakenly asserts that all experts must prepare expert reports that satisfy RCFC 26(a)(2) or Federal Rule of Civil Procedure 26(a)(2). Hybrid witnesses, that is, fact witnesses who are experts, are not required to provide the detailed disclosures required by Rule 26(a)(2)(B). Sullivan v. Glock, Inc., 175 F.R.D. 497, 501 (D. Md. 1997).

In Sullivan, the court stated that the failure to appreciate the distinction between a hybrid witness and a retained expert can be a trap for the unwary. Id. The court observed that a treating physician whose opinions derived from information learned during the actual treatment of the patient

– as opposed to being subsequently supplied by an attorney involved in litigating a case involving the condition or injury – need not furnish a Rule 26(a)(2)(B) report. Id. The court noted that the defendant's counsel did not appreciate the distinction between hybrid witnesses and retained experts, and repeatedly demanded the complete Rule 26(a)(2)(B) disclosures, when counsel was not entitled to receive them. Id.

See also, Sprague v. Liberty Mutual Ins. Co., 177 F.R.D. 78, 81 (D. N.H. 1998)(unretained experts who formed opinions from pre-litigation observation, need not provide Rule 26(a)(2)(B) reports).

Renda has "retained" only two experts: Rob McCullough and Christopher Mathewson. Renda has listed other persons who would qualify as experts based on their education, experience and training. These other persons include: Barry Smith, Kent Ray and Benton Goodloe. Messrs. Smith, Ray, and Goodloe each acquired their knowledge about the Project while it was ongoing. Messrs. Smith, Ray, and Goodloe each developed opinions based on such knowledge. Under Rule 26(a)(2)(B), these gentlemen would not have to submit an expert report. In the spirit of cooperation, however, Renda has tried to accommodate Defendant's request for expert reports and materials from these gentlemen, although none are actually required. See Renda's Third Supplemental Answers to Defendant's First set of Interrogatories, attached as Exhibit B. In addition, the Third Supplemental Answers to Defendant's First Set of Interrogatories contain much if not all of the information Defendant seeks about Renda's experts, retained and unretained.

Renda believes that it has adequately responded under Rule 26(a)(2) for Mr. Smith even as a retained expert. Mr. Smith prepared the claims at issue. The fact that Mr. Smith has adopted the claims as part of his expert report appears to be Defendant's chief objection. There is no proscription against an expert incorporating by reference writings that the expert prepared earlier in

time. Requiring a verbatim repeat of his earlier writings would be a waste of time, money, and paper.

Defendant appears to have adopted a strategy of needlessly complicating this case. The parties have scanned the documents that each has produced in the case. With the documents now in electronic form, each has been assigned Bates numbers for ready reference. In other words, the parties can cite documents by their Bates number to save on copying, printing, and shipping cost.

When Defendant produced its expert reports, however, Defendant shipped 23 boxes of documents – 7 for Robert Lofgren, 2 for Jack Fowler, and 12 for William Connole, as well as 2 for the expert reports. Most of the documents had already been produced or should have been produced by Defendant. By letter of February 11, 2004, Renda's counsel wrote to Defendant's attorney requesting the original Bates numbers for the documents. Renda's counsel noted that by reproducing the same documents with new Bates numbers, our already document intensive case has doubled in size. See Exhibit C.

There is no need to increase exponentially the number of documents in this case. The parties should be able to incorporate by reference or refer to Bates numbers of documents already produced.

Mr. McCullough has prepared a supplemental report which should resolve any questions about Mr. McCullough. See Exhibit D.

**Audit Request**

The Defendant also attempts to delay the trial by contending that it needs an additional audit of Renda's job costs. However, on October 18, 2002, the Court issued its scheduling order requiring that Defendant complete its audit of Renda by December 16, 2002, and deliver a copy of the audit to Renda. The Defendant did not protest that it could not complete the audit by December 16, 2002.

Defendant waited until December 1, 2003, to issue a subpoena to Kent Ray, Renda's certified public accountant. Defendant took the deposition of Mr. Ray on December 8, 2003. Defendant did not voice a need to audit Renda's books again until about February 9, 2004. See Exhibit E.

Renda responded to the audit request by letter of February 16, 2004. See Exhibit F. Renda offered to allow the audit if Defendant would respond to Renda's Second Set of Interrogatories and Third Request for Production of Documents. The copies of Renda's Second Set of Interrogatories and Third Request for Production of Documents are attached as Exhibits G and H, respectively. Defendant had previously refused to respond to the discovery, contending that discovery had been cutoff. See Exhibits I and J, respectively. However, the need for such discovery did not arise until Renda had taken the depositions of the Corps of Engineers' witnesses.

Renda's offer still holds: Renda will not object to the audit if Defendant in good faith responds to Renda's Second Set of Interrogatories and Third Request for Production of Documents.

If Defendant continues to refuse to respond to Renda's discovery, Defendant should not be permitted to re-audit Renda's books and records since the audit was required to be completed by December 16, 2002. Besides, auditing is a discovery procedure and was listed under Fact Discovery in the Court's Scheduling Order.

**Trial Date**

Renda filed this suit on April 11, 2002. Over Renda's wishes, the Court set this case for trial commencing on June 14, 2004, more than two years later. The Government's withholding of payment from Renda has effectively forced Renda out of the marine dredging contracting business. Renda respectfully requests that the Court not delay justice any further.

If the Government would pay Renda the amounts of money authorized by the DCAA audit, or that the Corps has previously admitted that it owes, Renda would voluntarily agree to a trial in November 2004.

**Renda's Contingent Motion for Leave to Require Defendant to Answer Renda's Discovery**

Renda respectfully requests that the Court grant leave to Renda and require Defendant to answer Renda's Second Set of Interrogatories (Exhibit G) and Third Request for Production of Documents (Exhibit H), but only if the Court reopens discovery to allow Defendant to audit Renda's books again, or if the Court delays the trial date in this case.

The Government is correct that Renda's discovery was submitted to the Government on January 15, 2004, and that the answers would not have been due before February 4, 2004, the discovery cut off.

Under the circumstances, it is only fair to require Defendant to answer the discovery if discovery reopens for more audit work or if the trial is delayed.

The need for the discovery did not become apparent until Renda deposed the Corps of Engineers' witnesses in mid-January 2004. For example, Renda deposed Luis Saenz on January 9, 2004. Mr. Saenz testified that borrow areas (or areas of excavated material) were created along the inside of the perimeter levees of the Lost Lake Placement Area. He testified that material from these borrow areas was used to increase the height and to maintain the existing perimeter levees at the Lost Lake Placement Area not long before the Upper Bayou Project at issue was released for bid solicitation. He candidly admitted that the Corps had surveyed the extent of the borrow areas. See Exhibit K, pages from the deposition of Mr. Saenz. These surveys were not part of the bid solicitation for the Project, and were not released to the bidders. In fact, these surveys have never been produced by the Government. Renda did not know that the surveys existed.

Since Defendant has not produced these surveys, and had not previously admitted the existence of the borrow areas, Renda submitted discovery to force Defendant to confess. The existence of these borrow areas and the fact that Defendant had failed to reveal their existence during bid solicitation is critical to this case. The borrow areas ultimately made it impossible for Renda to construct the hydraulically placed levees at the Lost Lake Placement Area.

At the very least, Defendant should be ordered to respond to the discovery concerning the borrow areas about which Mr. Saenz testified.

Accordingly, Plaintiff, Renda Marine, Inc., respectfully requests that the Court deny Defendant's motions in their entirety, and confirm that trial will occur as scheduled in June 2004. Only if the Court grants Defendant's request for further auditing, or delays the trial, Renda respectfully requests that the Court order Defendant to answer Renda's Second Set of Interrogatories and Third Request for Production of Documents.

Respectfully submitted,

QUILLING, SELANDER, CUMMISKEY & LOWNDS, P.C.

BY: S/BRIAN W. ERIKSON
Brian W. Erikson, TX Bar No. 06643800

2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Telefax)
ATTORNEYS FOR RENDA MARINE, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of March, 2004, a true and correct copy of Response by Plaintiff, Renda Marine, Inc. to Defendant's Motion to Compel Compliance with Rule 26(a)(2)(B), to Compel Production of Documents, to Permit Defendant to Perform an Audit of Plaintiff's Job Cost Schedules, and for a Modification of the Pretrial and Trial Schedule; and Contingent Motion for Leave to Require Defendant to Answer Renda's Discovery, was served by electronic means through the CM/ECF system of the Court of Federal Claims to counsel for Defendant, John E. Kosloske.

s/Brian W. Erikson
Brian W. Erikson

QSCL
QUILLING · SELANDER · CUMMISKEY · LOWNDS

BRIAN W. ERIKSON
Direct: 214.880.1844

E-mail: berikson@qsclpc.com

February 16, 2004

Via Facsimile & First Class Mail

John E. Kosloske, Esq.
Senior Trial Counsel, Commercial Litigation Branch
Department of Justice
Attn.: Classification Unit
1100 L Street, N.W., Room 12052
Washington, D.C. 20005

Re: Case No. 02-306C; *Renda Marine, Inc. v. United States Army Corps of Engineers*; United States Court of Federal Claims; DACW64-99-C-0001, Dredging Upper Bayou

Dear Mr. Kosloske:

I tried to return your telephone call of February 13, 2004, but no one answers your telephone, and you have no voice mail picking up.

Sincerely yours,

Brian W. Erikson

BWE/ja

S:\Construction\Renda Marine\Upper Bayou 565.09\Kosloske 050.wpd

EXHIBIT A

MODE = BATCH TRANSMISSION START=FEB-16 16:37 END=FEB-16 16:39

FILE NO.=153

| STN NO. | COMM. | ABBR NO. | STATION NAME/TEL NO. | PAGES | DURATION |
|---|---|---|---|---|---|
| 001 | B-OK | a | 12025148624 | 002/002 | BATCH |

-Q S C L -

************************************ -Q S C L - ***** - 214 871 2111- *********

QSCL
QUILLING · SELANDER · CUMMISKEY · LOWNDS

# FAX TRANSMITTAL

TO: John E. Kosloske
Senior Trial Counsel, Commercial Litigation
Department of Justice, Civil Division

FAX NO: (202) 514-8624

FROM: Brian W. Erikson

DATE: February 16, 2004

CLIENT MATTER NUMBER: Renda Marine / Upper Bayou / 565.0009

NUMBER OF PAGES INCLUDING COVER PAGE: 2

IF YOU DO NOT RECEIVE ALL MATERIALS BEING TRANSMITTED, PLEASE CALL OUR OFFICE AT (214) 871-2100.

**COMMENTS:**

Please see attached.

The information contained in this facsimile message is legally privileged and confidential information which is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any use, dissemination, distribution or reproduction of this message is strictly prohibited. If you have received this message in error, the material herewith should be destroyed immediately and the sender listed above should be notified by telephone.

S:\Construction\Renda Marine\Upper Bayou 565.09\Kosloske Fax.wpd

Bryan Tower 2001 Bryan St., Suite 1600 Dallas, TX 75201 | ph. 214.871.2100 fx. 214.871.2111 www.qsclpc.com
A PROFESSIONAL CORPORATION | ATTORNEYS AND COUNSELORS

United States Court of Federal Claims

| | | |
|---|---|---|
| Renda Marine, Inc.,<br>plaintiff, | §<br>§ | |
| v. | §<br>§ | Case No. 02-306C |
| | § | (Judge Hewitt) |
| United States,<br>DEFENDANT. | §<br>§ | |

**RENDA MARINE, INC.'S THIRD SUPPLEMENTAL ANSWERS TO DEFENDANT'S FIRST SET OF INTERROGATORIES**

TO: United States Army Corps of Engineers, through its attorney of record, John E. Kosloske, Department of Justice, 1100 L Street, N.W., Room 8012, Washington, D.C. 20530.

Renda Marine, Inc. ("Renda"), supplements its answers to the First Set of Interrogatories of the United States Army Corps of Engineers ("Corps"), as follows.

**FIRST SET OF INTERROGATORIES**

INTERROGATORY NO. 1:

Identify each individual that plaintiff expects to call as an expert witness at trial and, with respect to each such individual, state:

(a) the subject matter upon which he or she is expected to testify;

(b) the substance of the facts to which he or she is expected to testify; and

(c) the substance of the opinions to which he or she is expected to testify and the ground(s) for each such opinion.

ANSWER:

Barry Smith

Mr. Smith has authored no publications in the last ten years. Mr. Smith has not testified in deposition or at trial in the last four years.

Blumberg No. 5118 EXHIBIT B

Mr. Smith was a consultant for Renda during the Upper Bayou Project. He undertook project administration work as well as claims preparation and consulting work. He was paid the following amounts by Renda:

| | |
|---|---|
| Fiscal Year 2000 | |
| Labor @ $90.00/hour | $2,610.00 |
| Labor @ $3,000/week | $27,000.00 |
| Expenses | $5,293.44 |
| Fiscal Year 2001 | |
| Labor @ $100.00/hour | $12,800.00 |
| Labor @ $3,000/week | $144,000.00 |
| Expenses | $37,891.59 |
| Fiscal Year 2002 | |
| Labor @ $100.00/hour | $1,210.00 |
| Clerical | $225.00 |
| Labor @ $3,000/week | $52,850.00 |
| Expenses | $5,461.48 |
| Fiscal Year 2003 | |
| Labor @ $100/hour | Approx. $47,600.00 |
| Expenses | $4,150.78 |
| Fiscal Year 2004 | |
| Labor (through Feb. 2004) | Approx. $17,500.00 |

Mr. Smith is charging $100.00/hour for his continued work on this project.

Mr. Smith has been provided all of the CD-Roms containing the documents produced in this case. Mr. Smith has reviewed many of the documents on those CD-Roms. He has also reviewed first hand Renda's project files at the project office. Additionally, Smith was also furnished with a set of the DCAA Audit Papers, CDs of documents produced by Government in case; CDs of documents produced by Renda in case; Defendants' experts witnesses reports, two CDs provided by Government with aerial and ground surveys of Lost Lake Placement Area, 13 CDs provided by Renda with photos and report (REM39201-46781), supplemental reports by Government. Smith's

file materials were previously furnished to the Government bearing Bates numbers REM 40000-REM 41052, not in electronic form, and not part of the database.

Mr. Smith also reviewed the following materials on the internet:

1) Federal Acquisition Regulations - http://www.arnet.gov/far/

2) DCAAP 7641.90 (Jan2002) - Information for Contractors, DOD, DCAA Manual - http://www.dcaa.mil/info.htm

3) DCAAM 7640.1 - DCAA Contract Audit Manual (CAM), DCAA - http://www.dcaa.mil/cam.htm

4) FAR Cost Principles Guide - http://www.dcaa.mil/far_cost.pdf

5) Small Business Administration Guidelines - http://www.sba.gov/

6) Bert Visser's Directory of Dredgers - http://www.dredgers.nl/Welcome.html

7) Dredging News - http://www.sandandgravel.com/news/welcome.html

8) Port of Houston Website - http://www.portofhouston.com/

9) Contract Disputes Act of 1978 - http://www4.law.cornell.edu/uscode/41/ch9.html

10) NOAA Weather Data - http://www.srh.noaa.gov/ , http://www.srh.noaa.gov/hgx/marine.htm

11) EFARS - http://www.hq.usace.army.mil/cepr/asp/library/efar.asp?strCat=8&strSubCat=6

12) DFARS - http://www.acq.osd.mil/dp/dars/dfars.html

13) EP 1110-1-8 (1999 & 2001) - Construction Equipment Ownership and Operating Expense Schedule, USACE - http://www.nww.usace.army.mil/cost/ep.asp

14) Prompt Payment Act - http://www.publicdebt.treas.gov/opd/opdprmt2.htm

15) DCAA Manuals - http://www.dcaa.mil/site_index.htm

16) USACE Publications (obtained online) - http://www.usace.army.mil/inet/usace-docs/

17) Department of Defense, Defense Procurement and Acquisition Policy, Guidelines - http://www.acq.osd.mil/dpap/

Rob McCullough

Mr. McCullough's resume lists the publications he has authored, and his trial and deposition testimony. Mr. McCullough's resume is incorporated by reference, and has previously been furnished to Defendant. Mr. McCullough has been furnished with a set of the DCAA Audit Papers, Defendants' expert witnesses reports, two CDs provided by Government with aerial and ground surveys of Lost Lake Placement Area, 13 CDs provided by Renda with photos and reports (REM39201-46781), and the supplemental reports by Government. Mr. McCullough has also been furnished with Renda's claims against the Corps of Engineers, the plans and project manual for the Project, and the deposition exhibits for Thomas Benero. See Attachment 1 for additional items Mr. McCullough has reviewed. Mr. McCullough has discussed this Project at length with Barry Smith, Steve Bowman, and Ben Gooloe. Mr. McCullough's supplemental report is being produced under separate cover.

Christopher Mathewson

Dr. Mathewson's publications are listed in his resume.

Dr. Mathewson has been provided copies of Renda's claims for the Flare Area, South Ferry Landing, Section 7 Clay and Lost Lake Levees. Dr. Mathewson has also been provided Defendant's experts' reports, the plans and project manual for the Project, soil boring by HJV Associates in May 2000, and the deposition exhibits for Thomas Benero. Dr. Mathewson plans to produce additional materials aside from his report. Upon receipt, these materials will be furnished to Defendant.

Kent Ray

Mr. Ray has authored no publications and has testified at no trial or depositions as an expert. He has testified as an accountant for financial statements reviewed or audited by his firm. He and his accounting firm have performed audits of Renda's financial statements and bookkeeping for

Renda. He has reviewed job schedules and audit work papers for Renda. He and his firm are compensated as follows: Kent Ray (CPA) - $160/hour; James Willa (CPA) - $95/hour; Stephanie James (CPA) - $115/hour; and Renee Hale (assistant) - $67.50/hour.

Mr. Ray is a fact witness to whom Renda expects to submit questions which may be expert in nature. Mr. Ray is a certified public accountant, and, as such, qualifies as an expert based on his education, experience and training.

Renda will produce under separate cover copies of documents that Mr. Ray and/or his firm have produced or reviewed concerning Renda and the equipment listing and costs for the Upper Bayou Project.

Benton Goodloe

Mr. Goodloe is a fact witness who is or has been on Renda's payroll. Mr. Goodloe qualifies as an expert based on his years in the marine dredging industry.

Mr. Goodloe is not charging Renda separately for his time for this case.

Mr. Goodloe did not review any documents to prepare his report. He is well familiar with the facts of the Project, as he experienced them first hand. During the course of the Project, he reviewed the dredging logs for the Project, and the documents that Renda prepared or received concerning its dredging operations.

Other than his report, Mr. Goodloe did not prepare any other documents reflecting his opinions.

Respectfully submitted,

QUILLING, SELANDER, CUMMISKEY & LOWNDS, P.C.

BY: ______________________________
Brian W. Erikson, TX Bar No. 06643800

2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Telefax)
ATTORNEYS FOR RENDA MARINE, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of March, 2004, a true and correct copy of Plaintiff, Renda Marine, Inc.'s Supplemental Answers to Defendant's Interrogatories, was served via Federal Express to counsel for Defendant, John E. Kosloske, Esq.

______________________________
Brian W. Erikson

# ATTACHMENT A

<u>Documents Reviewed by McCullough & Associates</u>

Certified Claim (Revised) for Differing Site Conditions South Ferry Landing Area, Binder 1 of 1 (Bates #RMI 05749 – 06423)

Documents Bates #RMI 06424 – 06782

Certified Claim for Differing Site Conditions South Ferry Landing Area, Binder 1 of 1 (Bates #RMI 06783 – 06841)

Documents Bates #RMI 06842 – 07471

Documents Bates #RMI 10788 – 10933

Documents Bates #RMI 10675 – 10787

Audit Report No. 3521-99M17200005 dated 8/27/99 (on CD)

RMI's 2/13/01 Certified Claim for Differing Site Conditions Flare Area (on CD)

RMI's 10/16/01 Certified Claim for Equitable Adjustment of the Contract Price for Differing Site Conditions & Changed Conditions for Hydraulic Levees at the Lost Lake Placement Area (on CD received from Brian Erikson identified as DACW 64-99-C-0001 DCAA Work Papers Disk 2)

RMI's 6/11/01 Request for Equitable Adjustment (Revision No. 1) for Differing Site Conditions Damages and Delays Related to Obstructions in Channel (Station Nos. 570+00 thru 630+00) (on CD received from Brian Erikson identified as DACW 64-99-C-0001 DCAA Work Papers Disk 3)

RMI's 5/16/01 Request for Equitable Adjustment (Revision No. 1) for Changed Conditions H.L.&P. Transmission Tower Delays (on CD received from Brian Erikson identified as DACW 64-99-C-0001 DCAA Work Papers Disk 3)

RMI's 6/14/01 Request for Equitable Adjustment for Differing Site Conditions Damages and Delays Related to Obstructions No. 2 in Channel (Section 9) (Station Nos. 660+00 thru 685+00) (on CD received from Brian Erikson identified as DACW 64-99-C-0001 DCAA Work Papers Disk 3)

RMI Quality Control Reports dated 12/3/98 – 4/15/01 (on CD received from Brian Erikson identified as DACW 64-99-C-0001 DCAA Work Papers Disk 3))

Quality Control Correspondence (on CD received from Brian Erikson identified as DACW 64-99-C-0001 DCAA Work Papers Disk 4)

Quality Control Submittals (on CD received from Brian Erikson identified as DACW 64-99-C-0001 DCAA Work Papers Disk 4)

General Correspondence (on CD received from Brian Erikson identified as DACW 64-99-C-0001 DCAA Work Papers Disk 5)

Insurance & Permit Correspondence (on CD received from Brian Erikson identified as DACW 64-99-C-0001 DCAA Work Papers Disk 5)

RMI Pay Estimates (on CD received from Brian Erikson identified as DACW 64-99-C-0001 DCAA Work Papers Disk 5)

Safety Reports/Meetings (on CD received from Brian Erikson identified as DACW 64-99-C-0001 DCAA Work Papers Disk 5)

Certified Payroll Reports (on CD received from Brian Erikson identified as DACW 64-99-C-0001 DCAA Work Papers Disk 5)

Pre-Award/Bid Documents (on CD received from Brian Erikson identified as DACW 64-99-C-0001 DCAA Work Papers Disk 6)

Contract Modifications (on CD received from Brian Erikson identified as DACW 64-99-C-0001 DCAA Work Papers Disk 6)

Bid Protest Correspondence (on CD received from Brian Erikson identified as DACW 64-99-C-0001 DCAA Work Papers Disk 6)

Spreadsheets regarding Dredge Quantity Calculations (on CD received from Brian Erikson identified as DACW 64-99-C-0001 DCAA Work Papers Disk 7)

RMI Binder #1 containing payroll information (from RMI's office)

RMI Binder #2 containing payroll information (from RMI's office)

RMI Binder #3 containing certified payroll for Nov. 1999 – Aug. 2000 (from RMI's office)

RMI Binder #4 containing certified payroll for Sept. 2000 – April 2001 Book II (from RMI's office)

RMI Binder #38 containing CQC Reports for Nov. thru Dec. 1999 (from RMI's office)

RMI Binder #39 containing CQC Reports for Jan. thru June 2000 (from RMI's office)

RMI Binder #40 containing CQC Reports for July thru Dec. 2000 (from RMI's office)

RMI Binder #41 containing CQC Reports for Jan. thru April 2001 (from RMI's office)

RMI Binder #61 identified as Binder 2 of 4 Plus Drawings of RMI's 10/16/01 Certified Claim for Equitable Adjustment of the Contract Price for Differing Site Conditions & Changed Conditions for Hydraulic Levees at the Lost Lake Placement Area (from RMI's office)

RMI Binder #62 identified as Binder 3 of 4 Plus Drawings of RMI's 10/16/01 Certified Claim for Equitable Adjustment of the Contract Price for Differing Site Conditions & Changed Conditions for Hydraulic Levees at the Lost Lake Placement Area (from RMI's office)

RMI Binder #63 identified as Binder 4 of 4 Plus Drawings of RMI's 10/16/01 Certified Claim for Equitable Adjustment of the Contract Price for Differing Site Conditions & Changed Conditions for Hydraulic Levees at the Lost Lake Placement Area (from RMI's office)

CD labeled Dec. 19, 2002 Lost Lake Placement Area DNG Files & Report Preliminary (from Brian Erikson's office)

CD labeled Dec. 19, 2002 Lost Lake Placement Area Aerial Photos Preliminary (from Brian Erikson's office)

Audit Report #3511-2003M17200005 documentation (RM-DCAA-0900001 – 0900528; also CD from Brian Erikson's office identified as DACW 64-99-C-0001 DCAA Work Papers Disk 1)

Audit Report #3511-2003M17200006 documentation (RM-DCAA-1000001 – 1001660)

Audit Report #3511-2003M17200007 documentation (RM-DCAA-1100001 – 1100435)

Audit Report #3511-2003M17200008 documentation (RM-DCAA-1200001 – 1200769)

Audit Report #3511-2003M17200009 documentation (RM-DCAA-1300001 – 1300312)

Audit Report #3511-2003M17200010 documentation (RMI 06439 - 06711; RMI 10744 – 10787; RM-DCAA-1400001 – 1400178)

Audit Report #3511-2003M17200011 documentation (RM-DCAA-1500001 – 1500334; RMI 10789 – 10933; RMI 06427 – 06428; RMI 06465; RMI 06506 – 06513; RMI 06574 – 06576; RMI 06615 – 06622)

Audit Report #3511-2003M17200012 documentation (RM-DCAA-1600001 – 1600227)

June 1998 Plans (from Barry Smith/Pathfinder)

FAR, Section 15.408

FAR 31

COE Construction Equipment Ownership and Operating Expense Schedule – Region VI, EP 1110-1-8, Volume 6 June 1999

McCullough & Associates Report and Exhibits thereto

Photograph CD's 1 – 13 (REM 39201 – REM 46781)

Handwritten diaries (from RMI's office)

Affolter Contracting correspondence

RMI Chronology/History for Claims at Upper Bayou Project

Spreadsheet titled "List of Equipment – Impacted Period (Revised 2/12/04)

Spreadsheet titled "Equipment Rate Schedule Summary (Revised 2/12/04")

Spreadsheet titled "Dredge 'Millenium' – Associated List of Equipment (Revised 2/22/04)"

Spreadsheet titled "List of Equipment (Average Hours of Operation Per Week/Month for Hourly Rate Calculation)"

Spreadsheet titled "Claim 12 – Lost Lake Levees Chronology-Summary"

Spreadsheets pertaining to Dredge Standby Rate Calculations, Dredge Operating Rate Calculations, Dredge Hourly Rate Calculations, Hydraulic Levees – Labor & Equipment Damage Calculations, Mechanical Levees – Equipment, Booster Equipment & Labor Calculations, Repair Invoice Duplication, Payroll Rate Calculation, Claim 12 Damage Calculations

Chart titled "Dredging Production – Daily and Cumulative"

Spreadsheet re Dredge CY and Levee LF "Based on Daily Dredging Reports Submitted by Renda Marine"

Spreadsheet re Levee LF "Based on Contractor Quality Control Reports Submitted by Renda Marine"

Chart titled "Remaining Dredge Material (CY)"

Chart titled "Dredged Material Cum CY"

Chart titled “Dredged Material Production Rates”

Spreadsheet re Flare Area Claim – “Dredge CY – Modified”

Chart titled “Upper Bayou Project – Dredging Production Week Ending Data”

Spreadsheet titled “Mechanical Levee Labor and Equipment – Proposed Deductions”

Spreadsheet titled “Original Estimate”

Charts/work sheets and spreadsheets titled “Modified Total Cost Approach”

2/27/04 e-mail correspondence from Barry Smith to John Coakley and documents referred to therein

File labeled “RMI Accounting Records” consisting of spreadsheet titled “Renda Marine, Inc. Job Cost Schedule With Equipment Cost Job 1100 – Corp. of Engineers – Upper Bayou From Start Date of 9/1/98 to 10/31/02; Schedule of Equipment Cost 9/15/01; Equipment List 1999 – 2001; Equipment List 1999; Equipment List 2001; Equipment List 2000

Spreadsheet re costs charged by Pathfinder Construction Consulting in performance of Contract Administration, REA/Modification Development and Certified Claims Development.

2/23/04 report of William F. Connole, P.E.

Transmittals per 2/3/04 Pathfinder Construction Consulting letter to Rob McCullough of half size drawings and RMI’s Submittal No. 3 for Hydraulic Levees with comments from the Corps of Engineers

QSCL
QUILLING · SELANDER · CUMMISKEY · LOWNDS

BRIAN W. ERIKSON
Direct: 214.880.1844

E-mail: berikson@qsclpc.com

February 11, 2004

John E. Kosloske, Esq.
Senior Trial Counsel, Commercial Litigation Branch
Department of Justice
Attn.: Classification Unit
1100 L Street, N.W., Room 12052
Washington, D.C. 20005

*Via Facsimile*

Re: Case No. 02-306C; *Renda Marine, Inc. v. United States Army Corps of Engineers*; United States Court of Federal Claims; DACW64-99-C-0001, Dredging Upper Bayou

Dear Mr. Kosloske:

In response to yours of February 3, 2004, transmitting Defendant's expert reports, I note the following.

You have produced seven boxes of documents for Robert Lofgren, two boxes of documents for Jack Fowler, and twelve boxes of documents for William F. Connole. Most, if not all, of the documents produced should have been previously exchanged between the parties. Please advise the original bates numbers for the documents you just produced so that we can cross-reference them to documents previously exchanged in this case.

I had expected that you would have referred me to Bates numbers of the documents already produced. Instead, it appears that you have renumbered the same documents multiple times simply to reflect that an expert has seen the document. Our already document intensive case has doubled in size.

Sincerely yours,

Brian W. Erikson

BWE/cam
S:\Construction\Renda Marine\Upper Bayou 565.09\Kosloske 048.wpd

cc: Oscar Renda

EXHIBIT
C
Blumberg No. 5118

MODE = MEMORY TRANSMISSION START=FEB-11 16:01 END=FEB-11 16:02

FILE NO.=071

| STN NO. | COMM. | ABBR NO. | STATION NAME/TEL NO. | PAGES | DURATION |
|---|---|---|---|---|---|
| 001 | OK | ☎ | 12025148624 | 002/002 | 00:00:21 |

-Q S C L -

************************************ -Q S C L - ***** - 214 871 2111- *********

QSCL
QUILLING • SELANDER • CUMMISKEY • LOWNDS

# FAX TRANSMITTAL

TO: John E. Kosloske
Senior Trial Counsel, Commercial Litigation
Department of Justice, Civil Division

FAX NO: (202) 514-8624

FROM: Brian W. Erikson

DATE: February 11, 2004

CLIENT MATTER NUMBER: Renda Marine / Upper Bayou / 565.0009

NUMBER OF PAGES INCLUDING COVER PAGE: 2

IF YOU DO NOT RECEIVE ALL MATERIALS BEING TRANSMITTED, PLEASE CALL OUR OFFICE AT (214) 871-2100.

**COMMENTS:**

Please see attached.

The information contained in this facsimile message is legally privileged and confidential information which is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any use, dissemination, distribution or reproduction of this message is strictly prohibited. If you have received this message in error, the material herewith should be destroyed immediately and the sender listed above should be notified by telephone.

S:\Construction\Renda Marine\Upper Bayou 565.09\Kosloske Fax.wpd