United States Court of Federal Claims

| | | |
|---|---|---|
| Renda Marine, Inc.,<br>plaintiff, | § | |
| | § | Case No. 02-306C |
| v. | § | |
| | § | (Judge Hewitt) |
| United States,<br>DEFENDANT. | § | |

**RENDA MARINE, INC.'S THIRD SUPPLEMENTAL ANSWERS TO DEFENDANT'S FIRST SET OF INTERROGATORIES**

TO: United States Army Corps of Engineers, through its attorney of record, John E. Kosloske, Department of Justice, 1100 L Street, N.W., Room 8012, Washington, D.C. 20530.

Renda Marine, Inc. ("Renda"), supplements its answers to the First Set of Interrogatories of the United States Army Corps of Engineers ("Corps"), as follows.

**FIRST SET OF INTERROGATORIES**

INTERROGATORY NO. 1:

Identify each individual that plaintiff expects to call as an expert witness at trial and, with respect to each such individual, state:

(a) the subject matter upon which he or she is expected to testify;

(b) the substance of the facts to which he or she is expected to testify; and

(c) the substance of the opinions to which he or she is expected to testify and the ground(s) for each such opinion.

ANSWER:

Barry Smith

Mr. Smith has authored no publications in the last ten years. Mr. Smith has not testified in deposition or at trial in the last four years.

Mr. Smith was a consultant for Renda during the Upper Bayou Project. He undertook project administration work as well as claims preparation and consulting work. He was paid the following amounts by Renda:

| | |
|---|---|
| Fiscal Year 2000 | |
| Labor @ $90.00/hour | $2,610.00 |
| Labor @ $3,000/week | $27,000.00 |
| Expenses | $5,293.44 |
| Fiscal Year 2001 | |
| Labor @ $100.00/hour | $12,800.00 |
| Labor @ $3,000/week | $144,000.00 |
| Expenses | $37,891.59 |
| Fiscal Year 2002 | |
| Labor @ $100.00/hour | $1,210.00 |
| Clerical | $225.00 |
| Labor @ $3,000/week | $52,850.00 |
| Expenses | $5,461.48 |
| Fiscal Year 2003 | |
| Labor @ $100/hour | Approx. $47,600.00 |
| Expenses | $4,150.78 |
| Fiscal Year 2004 | |
| Labor (through Feb. 2004) | Approx. $17,500.00 |

Mr. Smith is charging $100.00/hour for his continued work on this project.

Mr. Smith has been provided all of the CD-Roms containing the documents produced in this case. Mr. Smith has reviewed many of the documents on those CD-Roms. He has also reviewed first hand Renda's project files at the project office. Additionally, Smith was also furnished with a set of the DCAA Audit Papers, CDs of documents produced by Government in case; CDs of documents produced by Renda in case; Defendants' experts witnesses reports, two CDs provided by Government with aerial and ground surveys of Lost Lake Placement Area, 13 CDs provided by Renda with photos and report (REM39201-46781), supplemental reports by Government. Smith's

file materials were previously furnished to the Government bearing Bates numbers REM 40000-REM 41052, not in electronic form, and not part of the database.

Mr. Smith also reviewed the following materials on the internet:

1) Federal Acquisition Regulations - http://www.arnet.gov/far/

2) DCAAP 7641.90 (Jan2002) - Information for Contractors, DOD, DCAA Manual - http://www.dcaa.mil/info.htm

3) DCAAM 7640.1 - DCAA Contract Audit Manual (CAM), DCAA - http://www.dcaa.mil/cam.htm

4) FAR Cost Principles Guide - http://www.dcaa.mil/far_cost.pdf

5) Small Business Administration Guidelines - http://www.sba.gov/

6) Bert Visser's Directory of Dredgers - http://www.dredgers.nl/Welcome.html

7) Dredging News - http://www.sandandgravel.com/news/welcome.html

8) Port of Houston Website - http://www.portofhouston.com/

9) Contract Disputes Act of 1978 - http://www4.law.cornell.edu/uscode/41/ch9.html

10) NOAA Weather Data - http://www.srh.noaa.gov/, http://www.srh.noaa.gov/hgx/marine.htm

11) EFARS - http://www.hq.usace.army.mil/cepr/asp/library/efar.asp?strCat=8&strSubCat=6

12) DFARS - http://www.acq.osd.mil/dp/dars/dfars.html

13) EP 1110-1-8 (1999 & 2001) - Construction Equipment Ownership and Operating Expense Schedule, USACE - http://www.nww.usace.army.mil/cost/ep.asp

14) Prompt Payment Act - http://www.publicdebt.treas.gov/opd/opdprmt2.htm

15) DCAA Manuals - http://www.dcaa.mil/site_index.htm

16) USACE Publications (obtained online) - http://www.usace.army.mil/inet/usace-docs/

17) Department of Defense, Defense Procurement and Acquisition Policy, Guidelines - http://www.acq.osd.mil/dpap/

Rob McCullough

Mr. McCullough's resume lists the publications he has authored, and his trial and deposition testimony. Mr. McCullough's resume is incorporated by reference, and has previously been furnished to Defendant. Mr. McCullough has been furnished with a set of the DCAA Audit Papers, Defendants' expert witnesses reports, two CDs provided by Government with aerial and ground surveys of Lost Lake Placement Area, 13 CDs provided by Renda with photos and reports (REM39201-46781), and the supplemental reports by Government. Mr. McCullough has also been furnished with Renda's claims against the Corps of Engineers, the plans and project manual for the Project, and the deposition exhibits for Thomas Benero. See Attachment 1 for additional items Mr. McCullough has reviewed. Mr. McCullough has discussed this Project at length with Barry Smith, Steve Bowman, and Ben Gooloe. Mr. McCullough's supplemental report is being produced under separate cover.

Christopher Mathewson

Dr. Mathewson's publications are listed in his resume.

Dr. Mathewson has been provided copies of Renda's claims for the Flare Area, South Ferry Landing, Section 7 Clay and Lost Lake Levees. Dr. Mathewson has also been provided Defendant's experts' reports, the plans and project manual for the Project, soil boring by HJV Associates in May 2000, and the deposition exhibits for Thomas Benero. Dr. Mathewson plans to produce additional materials aside from his report. Upon receipt, these materials will be furnished to Defendant.

Kent Ray

Mr. Ray has authored no publications and has testified at no trial or depositions as an expert. He has testified as an accountant for financial statements reviewed or audited by his firm. He and his accounting firm have performed audits of Renda's financial statements and bookkeeping for

Renda. He has reviewed job schedules and audit work papers for Renda. He and his firm are compensated as follows: Kent Ray (CPA) - $160/hour; James Willa (CPA) - $95/hour; Stephanie James (CPA) - $115/hour; and Renee Hale (assistant) - $67.50/hour.

Mr. Ray is a fact witness to whom Renda expects to submit questions which may be expert in nature. Mr. Ray is a certified public accountant, and, as such, qualifies as an expert based on his education, experience and training.

Renda will produce under separate cover copies of documents that Mr. Ray and/or his firm have produced or reviewed concerning Renda and the equipment listing and costs for the Upper Bayou Project.

<u>Benton Goodloe</u>

Mr. Goodloe is a fact witness who is or has been on Renda's payroll. Mr. Goodloe qualifies as an expert based on his years in the marine dredging industry.

Mr. Goodloe is not charging Renda separately for his time for this case.

Mr. Goodloe did not review any documents to prepare his report. He is well familiar with the facts of the Project, as he experienced them first hand. During the course of the Project, he reviewed the dredging logs for the Project, and the documents that Renda prepared or received concerning its dredging operations.

Other than his report, Mr. Goodloe did not prepare any other documents reflecting his opinions.

Respectfully submitted,

QUILLING, SELANDER, CUMMISKEY & LOWNDS, P.C.

BY: ______________________________
Brian W. Erikson, TX Bar No. 06643800

2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Telefax)
ATTORNEYS FOR RENDA MARINE, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of March, 2004, a true and correct copy of Plaintiff, Renda Marine, Inc.'s Supplemental Answers to Defendant's Interrogatories, was served via facsimile and certified mail, return receipt requested to counsel for Defendant, John E. Kosloske, Esq.

______________________________
Brian W. Erikson

# ATTACHMENT A

Documents Reviewed by McCullough & Associates

Certified Claim (Revised) for Differing Site Conditions South Ferry Landing Area, Binder 1 of 1 (Bates #RMI 05749 – 06423)

Documents Bates #RMI 06424 – 06782

Certified Claim for Differing Site Conditions South Ferry Landing Area, Binder 1 of 1 (Bates #RMI 06783 – 06841)

Documents Bates #RMI 06842 – 07471

Documents Bates #RMI 10788 – 10933

Documents Bates #RMI 10675 – 10787

Audit Report No. 3521-99M17200005 dated 8/27/99 (on CD)

RMI's 2/13/01 Certified Claim for Differing Site Conditions Flare Area (on CD)

RMI's 10/16/01 Certified Claim for Equitable Adjustment of the Contract Price for Differing Site Conditions & Changed Conditions for Hydraulic Levees at the Lost Lake Placement Area (on CD received from Brian Erikson identified as DACW 64-99-C-0001 DCAA Work Papers Disk 2)

RMI's 6/11/01 Request for Equitable Adjustment (Revision No. 1) for Differing Site Conditions Damages and Delays Related to Obstructions in Channel (Station Nos. 570+00 thru 630+00) (on CD received from Brian Erikson identified as DACW 64-99-C-0001 DCAA Work Papers Disk 3)

RMI's 5/16/01 Request for Equitable Adjustment (Revision No. 1) for Changed Conditions H.L.&P. Transmission Tower Delays (on CD received from Brian Erikson identified as DACW 64-99-C-0001 DCAA Work Papers Disk 3)

RMI's 6/14/01 Request for Equitable Adjustment for Differing Site Conditions Damages and Delays Related to Obstructions No. 2 in Channel (Section 9) (Station Nos. 660+00 thru 685+00) (on CD received from Brian Erikson identified as DACW 64-99-C-0001 DCAA Work Papers Disk 3)

RMI Quality Control Reports dated 12/3/98 – 4/15/01 (on CD received from Brian Erikson identified as DACW 64-99-C-0001 DCAA Work Papers Disk 3))

Quality Control Correspondence (on CD received from Brian Erikson identified as DACW 64-99-C-0001 DCAA Work Papers Disk 4)

Quality Control Submittals (on CD received from Brian Erikson identified as DACW 64-99-C-0001 DCAA Work Papers Disk 4)

General Correspondence (on CD received from Brian Erikson identified as DACW 64-99-C-0001 DCAA Work Papers Disk 5)

Insurance & Permit Correspondence (on CD received from Brian Erikson identified as DACW 64-99-C-0001 DCAA Work Papers Disk 5)

RMI Pay Estimates (on CD received from Brian Erikson identified as DACW 64-99-C-0001 DCAA Work Papers Disk 5)

Safety Reports/Meetings (on CD received from Brian Erikson identified as DACW 64-99-C-0001 DCAA Work Papers Disk 5)

Certified Payroll Reports (on CD received from Brian Erikson identified as DACW 64-99-C-0001 DCAA Work Papers Disk 5)

Pre-Award/Bid Documents (on CD received from Brian Erikson identified as DACW 64-99-C-0001 DCAA Work Papers Disk 6)

Contract Modifications (on CD received from Brian Erikson identified as DACW 64-99-C-0001 DCAA Work Papers Disk 6)

Bid Protest Correspondence (on CD received from Brian Erikson identified as DACW 64-99-C-0001 DCAA Work Papers Disk 6)

Spreadsheets regarding Dredge Quantity Calculations (on CD received from Brian Erikson identified as DACW 64-99-C-0001 DCAA Work Papers Disk 7)

RMI Binder #1 containing payroll information (from RMI's office)

RMI Binder #2 containing payroll information (from RMI's office)

RMI Binder #3 containing certified payroll for Nov. 1999 – Aug. 2000 (from RMI's office)

RMI Binder #4 containing certified payroll for Sept. 2000 – April 2001 Book II (from RMI's office)

RMI Binder #38 containing CQC Reports for Nov. thru Dec. 1999 (from RMI's office)

RMI Binder #39 containing CQC Reports for Jan. thru June 2000 (from RMI's office)

RMI Binder #40 containing CQC Reports for July thru Dec. 2000 (from RMI's office)

RMI Binder #41 containing CQC Reports for Jan. thru April 2001 (from RMI's office)

RMI Binder #61 identified as Binder 2 of 4 Plus Drawings of RMI's 10/16/01 Certified Claim for Equitable Adjustment of the Contract Price for Differing Site Conditions & Changed Conditions for Hydraulic Levees at the Lost Lake Placement Area (from RMI's office)

RMI Binder #62 identified as Binder 3 of 4 Plus Drawings of RMI's 10/16/01 Certified Claim for Equitable Adjustment of the Contract Price for Differing Site Conditions & Changed Conditions for Hydraulic Levees at the Lost Lake Placement Area (from RMI's office)

RMI Binder #63 identified as Binder 4 of 4 Plus Drawings of RMI's 10/16/01 Certified Claim for Equitable Adjustment of the Contract Price for Differing Site Conditions & Changed Conditions for Hydraulic Levees at the Lost Lake Placement Area (from RMI's office)

CD labeled Dec. 19, 2002 Lost Lake Placement Area DNG Files & Report Preliminary (from Brian Erikson's office)

CD labeled Dec. 19, 2002 Lost Lake Placement Area Aerial Photos Preliminary (from Brian Erikson's office)

Audit Report #3511-2003M17200005 documentation (RM-DCAA-0900001 – 0900528; also CD from Brian Erikson's office identified as DACW 64-99-C-0001 DCAA Work Papers Disk 1)

Audit Report #3511-2003M17200006 documentation (RM-DCAA-1000001 – 1001660)

Audit Report #3511-2003M17200007 documentation (RM-DCAA-1100001 – 1100435)

Audit Report #3511-2003M17200008 documentation (RM-DCAA-1200001 – 1200769)

Audit Report #3511-2003M17200009 documentation (RM-DCAA-1300001 – 1300312)

Audit Report #3511-2003M17200010 documentation (RMI 06439 - 06711; RMI 10744 – 10787; RM-DCAA-1400001 – 1400178)

Audit Report #3511-2003M17200011 documentation (RM-DCAA-1500001 – 1500334; RMI 10789 – 10933; RMI 06427 – 06428; RMI 06465; RMI 06506 – 06513; RMI 06574 – 06576; RMI 06615 – 06622)

Audit Report #3511-2003M17200012 documentation (RM-DCAA-1600001 – 1600227)

June 1998 Plans (from Barry Smith/Pathfinder)

FAR, Section 15.408

FAR 31

COE Construction Equipment Ownership and Operating Expense Schedule – Region VI, EP 1110-1-8, Volume 6 June 1999

McCullough & Associates Report and Exhibits thereto

Photograph CD's 1 – 13 (REM 39201 – REM 46781)

Handwritten diaries (from RMI's office)

Affolter Contracting correspondence

RMI Chronology/History for Claims at Upper Bayou Project

Spreadsheet titled "List of Equipment – Impacted Period (Revised 2/12/04)

Spreadsheet titled "Equipment Rate Schedule Summary (Revised 2/12/04")

Spreadsheet titled "Dredge 'Millenium' – Associated List of Equipment (Revised 2/22/04)"

Spreadsheet titled "List of Equipment (Average Hours of Operation Per Week/Month for Hourly Rate Calculation)"

Spreadsheet titled "Claim 12 – Lost Lake Levees Chronology-Summary"

Spreadsheets pertaining to Dredge Standby Rate Calculations, Dredge Operating Rate Calculations, Dredge Hourly Rate Calculations, Hydraulic Levees – Labor & Equipment Damage Calculations, Mechanical Levees – Equipment, Booster Equipment & Labor Calculations, Repair Invoice Duplication, Payroll Rate Calculation, Claim 12 Damage Calculations

Chart titled "Dredging Production – Daily and Cumulative"

Spreadsheet re Dredge CY and Levee LF "Based on Daily Dredging Reports Submitted by Renda Marine"

Spreadsheet re Levee LF "Based on Contractor Quality Control Reports Submitted by Renda Marine"

Chart titled "Remaining Dredge Material (CY)"

Chart titled "Dredged Material Cum CY"

Chart titled "Dredged Material Production Rates"

Spreadsheet re Flare Area Claim – "Dredge CY – Modified"

Chart titled "Upper Bayou Project – Dredging Production Week Ending Data"

Spreadsheet titled "Mechanical Levee Labor and Equipment – Proposed Deductions"

Spreadsheet titled "Original Estimate"

Charts/work sheets and spreadsheets titled "Modified Total Cost Approach"

2/27/04 e-mail correspondence from Barry Smith to John Coakley and documents referred to therein

File labeled "RMI Accounting Records" consisting of spreadsheet titled "Renda Marine, Inc. Job Cost Schedule With Equipment Cost Job 1100 – Corp. of Engineers – Upper Bayou From Start Date of 9/1/98 to 10/31/02; Schedule of Equipment Cost 9/15/01; Equipment List 1999 – 2001; Equipment List 1999; Equipment List 2001; Equipment List 2000

Spreadsheet re costs charged by Pathfinder Construction Consulting in performance of Contract Administration, REA/Modification Development and Certified Claims Development.

2/23/04 report of William F. Connole, P.E.

Transmittals per 2/3/04 Pathfinder Construction Consulting letter to Rob McCullough of half size drawings and RMI's Submittal No. 3 for Hydraulic Levees with comments from the Corps of Engineers

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RENDA MARINE, INC. | ) | |
| | ) | |
| Plaintiff | ) | CASE NO. 02-306C |
| | ) | |
| V. | ) | |
| | ) | |
| THE UNITED STATES | ) | |
| | ) | |
| Defendant | ) | |

* * * * * * * * * * * * * * * *

STEVE BOWMAN

* * * * * * * * * * * * * * * *

COPY

January 12, 2004 Dallas, Texas

Monica S. Faulk

IN THE DIST ·T COURT OF THE UNITED STATES
FOR THE ORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

RENDA MARINE, INC. )
Plaintiff ) CASE NO. 02-306C
V. )
THE UNITED STATES )
Defendant )

* * * * * * * * * * * * * * * *

STEVE BOWMAN

* * * * * * * * * * * * * * * *

January 12, 2004 Dallas, Texas

Monica S. Faulk



IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

RENDA MARINE, INC. )
Plaintiff ) CASE NO. 02-306C
V. )
THE UNITED STATES )
Defendant )

* * * * * * * * * * * * * * * *

STEVE BOWMAN

* * * * * * * * * * * * * * * *

ANSWERS AND ORAL DEPOSITION OF STEVE BOWMAN, produced as a witness at the instance of the Defendant, taken in the above-styled and -numbered cause on the 12th day of January, 2002, at 9:15 a.m., before Monica S. Faulk, a Certified Shorthand Reporter in and for the State of Texas, in the conference room of QUILLING, SELANDER, CUMMISKEY & LOWNDS, 2001 Bryan Street, Suite 1800, City of Dallas, County of Dallas and State of Texas, in accordance with the Federal Rules of Civil Procedure and the agreement hereinafter set forth:



A P P E A R A N C E S

UNITED STATES DEPARTMENT OF JUSTICE
1100 L Street, N.W., Room 12052
Washington, DC 20005
By: Mr. John Kosloske

APPEARING ON BEHALF OF THE UNITED STATES

QUILLING, SELANDER, CUMMISKEY & LOWNDS
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
By: Mr. Brian Erikson

APPEARING ON BEHALF OF RENDA MARINE, INC.

Also Present:

George Strickler



I N D E X

ORAL DEPOSITION OF STEVE BOWMAN
Taken on January 12, 2004

PAGE

Appearances....................................3

Exhibit Index..................................5

STEVE BOWMAN

DIRECT EXAMINATION
BY: Mr. Kosloske........................6

Signature and Corrigendum........................203

Reporter's Certificate...........................204

with the construction of levees at dredged disposal sites?

A. I had -- clay is clay. Dirt is dirt. It works the same way whether it comes beneath of the dredge or out of the end of the back hole bucket. Now, you can refute that if you want. The basic chemistry and the molecular structure of this material is the same. You get it to a certain stage, you get it to a certain dryness and a certain amount of compacted effort, you'll end up with a certain product. I over the years have built lots and lots of levees and earth fills and have worked with extremely wet clays and materials.

If you're asking me if I had ever constructed a levee by use of discharge from a dredge line, no.

Q. Okay. So prior to your preparation of the bid estimate for the Upper Bayou project, you had not had any experience with the construction of levees by the use of hydraulic placement material?

A. Structural levees like this, no, I had not.

Q. What if any experience had you had with the construction of levees at dredge disposal areas such as, for example, Lost Lake placement area?

A. For the specific use of dredge soil? Like I



said, I got involved in some at Eby back in the early '80s in Mississippi. We had built a number of lagoons for biosolids applications that are of similar technology and similar function. I've built a number of levees for a containment of wet soils at -- in various construction projects.

You know, again, dredging is a -- hydraulic dredging or dredging is a very general term too. The fact is it's pumping mud out of a shaft into a containment at the same time area. You essentially dredge material out of the hole into a containment at the same time area. On this scope and scale, no, I hadn't done one.

Q. You hadn't constructed a levee using the hydraulic placement method on the scope and scale of the levees that were to be constructed hydraulically at the Lost Lake placement area?

A. I'd argue there's very few people in the world that have.

Q. But I'm just asking you.

A. Yes, I'm giving you an answer. No.

Q. Who is Barry Smith?

A. He's a -- a construction consultant from St. Louis.

Q. When did you first become acquainted with



Barry Smith?

A. Probably -- I'm guessing I actually physically met Barry May of 2000.

Q. And how did you come to meet Barry Smith in May of 2000?

A. He was in our Freeport office putting together some information on a subcontract that we had with Great Lakes, and he had been involved -- Eddie Fisher had called me indicating he needed -- in fact, I asked Eddie Fisher to find somebody to help support him with some of the issues that we had outstanding on a few of the projects down there, and he had known Barry Smith from doing some work with Barry Smith back when Barry worked for somebody else back in the mid-'90s. And we acquired Barry's services to help Eddie get caught up on some things he was working on.

Q. Is Barry Smith a claims consultant?

A. No. I don't think that he solely wears that hat. I think Barry Smith -- he will do -- you know, he's a consultant. So he's a hired gun. But Barry gets involved in all aspects of construction issues.

Q. To what extent did Barry Smith advise Renda Marine on how to proceed with different issues, matters during the Upper Bayou project?





A. I didn't get involved other than in some meetings that we had had about the direction that our administrative work was going on. I was asked by Oscar in May or June of 2000 to -- I had been going to the project site -- the Upper Bayou site essentially the entire year of 2000 from time to time to look at things, and I was involved with specific issues out on the site; and I had talked to Barry some at that point. I took over the entire management responsibility of the -- all of the projects that Renda Marine had in South Texas around July 1st of 2000 when Eddie Fisher resigned.

Q. I think Mr. Fisher resigned the last -- the last Sunday of July of 2000?

A. Four o'clock, Sunday afternoon, 2000. Yes, he did.

Q. And then the following Monday or -- you took over the responsibility for the day-to-day operations of the company?

A. I was involved in the field operations. Eddie pretty much was the home body at the office. I went back down -- we had a meeting here on Monday, and I came down Monday night and actually took over the operation at that point in total.

Q. Was Barry Smith the -- was he retained by