# In the United States Court of Federal Claims

No. 02-306 C

(E-Filed: September 10, 2003)

| | |
|---|---|
| RENDA MARINE, INC., | ) |
| Plaintiff, | ) |
| v. | ) |
| THE UNITED STATES, | ) |
| Defendant. | ) |

## ORDER

Upon review of Defendant's Motion for Modification of Pretrial Schedule and further to the telephonic status conference held on the record on September 9, 2003, the court AMENDS its Pretrial Scheduling Order of October 18, 2002 as follows:

1. Fact Discovery. All fact discovery, including all depositions, shall conclude on or before Wednesday, January 14, 2004. In order to achieve this deadline, the parties shall make witnesses available at reasonably convenient times. The parties are reminded that the rules of the court contemplate the use of depositions at trial for testimonial purposes in certain circumstances "as though the witness were then present and testifying . . . ." See RCFC 32(a). As requested by the parties in their Joint Preliminary Status Report, the parties may conduct up to 30 depositions, up to 10 to be scheduled by plaintiff and up to 20 to be scheduled by defendant.

2. Expert Discovery. All expert discovery, including the exchange of expert reports and excepting only the completion of expert depositions, shall be completed on or before February 4, 2004.

3. Expert Depositions. All depositions of experts shall be completed on or before February 18, 2004.

4. Meeting of Counsel. As set forth in Appendix A ¶ 13, the parties shall meet to satisfy the requirements of this section including the exchange of exhibit and witness lists on or before March 24, 2004.

5. Dispositive Motions. Dispositive motions shall be filed on or before January 28, 2004. The motions and all responsive filings shall be filed simultaneously. Responsive briefing shall be filed within the time periods prescribed by the court's rules.

6. Memorandum of Contentions of Fact and Law. In accordance with Appendix A ¶ 14, plaintiff shall file its Memorandum of Contentions of Fact and Law on or before April 14, 2004. Defendant shall file its responsive memorandum on or before May 12, 2004. The memoranda shall be accompanied by witness lists and exhibit lists and any motions contemplated by Appendix A ¶¶ 15 and 16. Any objection to a witness or exhibit not made in the Memorandum of Contentions of Fact and Law or a separate motion filed on the same date shall be deemed waived unless justice shall otherwise require. The parties shall prepare a joint preliminary trial schedule or, if they cannot agree, separate trial schedules, using the template attached. The parties shall confer prior to the pretrial conference for the purpose of resolving as many objections as possible.

7. Pretrial Conference. The pretrial conference will be held on June 2, 2004 at the National Courts Building, 717 Madison Place, N.W., Washington, DC 20004. The parties shall bring to the pretrial conference at least three copies of any exhibit as to which an objection remains outstanding.

8. Trial. Trial will be held during the week of June 14, 2004. Trial will begin at 10:00 a.m. on Tuesday, June 15, 2004 and at 9:00 a.m. on successive days. Trial will be held in Houston, TX. The exact location of trial will be determined by further order of the court. Should additional time be required for trial, the court has set aside the following week of June 21, 2004 as well.

Due to the continuing problems with Washington, DC mail, the parties are directed to fax courtesy copies of any time-sensitive documents to the court and opposing counsel throughout the proceedings.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT

UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC., PLAINTIFF, | § § § | CASE NO. 02-306C |
| V. | § § | (JUDGE HEWITT) |
| UNITED STATES ARMY CORPS OF ENGINEERS, DEFENDANT. | § § § | |

**FIRST SET OF INTERROGATORIES BY PLAINTIFF, RENDA MARINE, INC. TO DEFENDANT, UNITED STATES ARMY CORPS OF ENGINEERS**

TO: United States Army Corps of Engineers, through its attorney of record, John E. Kosloske, Esq., Senior Trial Counsel, Commercial Litigation Branch, Department of Justice, Attn.: Classification Unit, 1100 L Street N.W., Room 8012, Washington, DC 20530.

Pursuant to Rule 33 of the Federal Rules of Civil Procedure and the Rules of the Court of Federal Claims, you are hereby required to (1) answer fully and factually each of the interrogatories hereinafter set forth; (2) furnish all information called for in said interrogatories as is available to you or your agents; (3) sign your response; (4) swear to your response; and (5) serve your answers to the following interrogatories upon the undersigned attorney for Plaintiff, Renda Marine, Inc. ("Renda"), no later than thirty (30) days after service of these interrogatories on your attorney of record.

You are further instructed that:

(a) to the extent possible, answer these interrogatories in the spaces provided after each interrogatory. Answers may be continued on separate sheets of paper attached to these interrogatories; and

(b) you are under a duty to amend your answers to the interrogatories in a timely manner if, between the time answers are served and the time of trial herein, you obtain information upon the basis of which (i) you know the answer was incorrect when made; or

(ii) you know that the answer, though correct when made, is no longer true and the circumstances are such that a failure to amend the answer is, in substance, a knowing concealment.

**DEFINITIONS AND INSTRUCTIONS**

1. The term "Plaintiff" or "Renda" refers to Renda Marine, Inc., Plaintiff in this suit.

2. The term "Defendant" or "Corps" refers to the United States Army Corps of Engineers, Defendant in this suit.

3. "Upper Bayou Project" refers to Corps Contract No. DACW64-99-C-0001, for Houston-Galveston Navigation Channels, Texas, Dredging Upper Bayou (45-Foot Project) in Harris and Galveston Counties.

4. "Joint Venture" refers to Turner, Collie & Braden, Inc., Gahagan & Bryant & Associates, Inc., and J. Simmons Group, Inc., collectively.

5. The term "Port of Houston Authority" refers to the Port of Houston Authority of Harris County, Texas.

6. The term "active file" means any electronic data file that can be used by an electronic data processing system in any manner without modification and/or re-construction. An active file is any electronic data file that has not been deleted or otherwise destroyed and/or damaged and which is readily visible to the operating system and/or the software with which it was created.

7. The term "computer" shall include, but is not limited to, microchips, microcomputers (also known as personal computers), laptop computers, portable computers, notebook computers, palmtop computers (also known as personal digital assistants or PDA's), minicomputers and mainframe computers.

8. The term "computer system," when used in reference to any computer, includes, but is not limited to, the following information:

a. Computer type, brand and model;

b. Brand & version of all software, including operating system, private-and custom-developed applications, commercial applications, and/or shareware;

c. Communications capability, including asynchronous and/or synchronous, including, but not limited to, terminal to mainframe emulation, data download and/or upload capability to mainframe, and computer to computer connections via network, modem and/or direct connection.

9. The term "data" is equivalent to the term "electronic data" as defined herein.

10. The term "deleted file" means any electronic data file that has been deleted or deleted from the electronic media on which it resided.

11. The term "document" means the original (or an identical duplicate if the original is not available), and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description that are fixed in any form of physical media within your possession, custody, or control, or the control of any agent, employee, representative (including, without limitation, attorneys, consultants and accountants) or other person acting or purporting to act for you or on your behalf. Physical media include, but are not limited to, paper media, phonographic media, photographic film media (including pictures, films slides and microfilm), magnetic media (including but not limited to hard disks, floppy disks, compact disks, and magnetic tapes of any kind), computer memory, optical media, magneto-optical media, and other physical media on which notations or marking of any kind can be affixed. Documents shall include, but not be limited to, contracts, agreements, change orders, change proposals, communications, correspondence, letters, telegrams, memoranda, electronic mail, notes, journals, appointment

calendar, calendar, group scheduler calendar, records, reports, books, summaries, notes, notes or records of telephone conversations, notes or records of personal conversations or interviews, telephone logs, diaries, logs, field notes, inspection reports, daily or periodic reports, notices, deficiency notices, contractor's daily or periodic reports, production reports, quality control reports, batch reports, run reports, shift reports, winding reports, speed memoranda, drawings, shop drawings, sketches, details, plans, specifications, calculations, computations, forecasts, schedules, statistical statements, tests, laboratory tests, assessments, evaluations, work papers, graphs, charts, accounts, analytical records, minutes, minutes or records of meetings or conferences, consultants' reports, appraisals, reports or summaries of negotiations, brochures, marginal notations, bills, invoices, checks, drafts, bills of lading, warehouse receipts, photographs, movies, videotapes, lists, journals, advertisements, magnetic tapes, computer tapes, computer disks, computer cards, computer directory, computer printouts, and every other form of written, printed, stenographic, electronic, recorded, graphic, filmed, or photographic matter, including sound reproductions, however produced or reproduced, and all drafts, revisions, and copies with either markings or alterations of the foregoing.

12. The term "electronic data" means the original (or identical duplicate when the original is not available), and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Electronic data includes, by way of example only, computer programs (whether private, commercial or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts and/or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files,

charts, graphs and outlines, electronic mail, operating systems, source code of all types, peripheral drivers, PIF files, batch files, ASCII files, and any and all miscellaneous files and/or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists in an active file, deleted file or file fragment. Electronic data includes any and all items stored on computer memories, hard disks, floppy disks, CD-ROMs, removable media such as Zip disks, Jaz cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to EPROM, PROM, RAM and ROM, on or in any other vehicle for digital data storage and/or transmittal. The term electronic data also includes the file, folder tabs and/or containers and labels appended to, or associated with, any physical storage device associated with each original and/or copy.

13. The term "Electronic media" means any magnetic or other storage media device used to record electronic data. Electronic media devices may include, but are not limited to, computer memories, hard disks, floppy disks, CD-ROM, removable media such as Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to EPROM, PROM, RAM and ROM, or on or in any other vehicle for digital data storage and/or transmittal.

14. The term "file fragment" refers to any electronic data file that exists as a subset of an original active file. A file fragment may be active or deleted. The cause of fragmentation can include, but is not limited to the execution of ordinary file management routines such as the creation of new files over parts of previously deleted files, the creation of files on disks which do not have enough contiguous blocks to write the file from beginning to end, where the file has been split up between several sections of the disk (each piece a fragment). Other causes include manual intervention, electronic surges, and/or physical defects on electronic media.

15. The term "network" means any hardware and/or software combination that connects two or more computers together and which allows the computers to share and/or transfer data between them. For the purposes of this definition, the connection between or among the microcomputers need not be either physical or direct, i.e., wireless networks, and sharing and/or transferring data via indirect routes utilizing modems and phone company facilities. In addition, there need not be a central file or data server nor a central network operating system in place, i.e., peer-to-peer networks and networks utilizing a mainframe host to facilitate data transfer.

16. The term "rotation" means any plan, policy or scheme that involves the re-use of an electronic media device after it has been used for backup, archival or other electronic data storage purposes, particularly if such re-use results in the alteration and/or destruction of the electronic data residing on the device prior to it's re-use.

17. The term "support" means any help or assistance provided to a user of a computer by another individual, either in an official job capacity or not. Such help or assistance may take the form of, but is not limited to, answering questions, in person or via mechanical means, direct intervention, training, software troubleshooting, hardware troubleshooting, programming, systems consulting, maintenance, repair and and/or user forums. Providers of support may be employees, contractors and/or other third-party providers.

18. A "draft" of any document means and includes any earlier, preliminary, preparatory or tentative version of all or part of a document, whether or not such draft was superseded by a later draft and whether or not the terms of the draft are the same as or different from the terms of the final document; a "copy" of a document means and includes each and every reproduction of a document which is not identical in every respect with the original of such document that is produced, including

photocopies of the original or final document on which any notations or handwritten notes have been added, and copies of documents where the original is not in your possession, custody or control.

19. The term "communications" refers to and includes any form of communication from one person or entity to another person or entity, regardless of whether written or oral, or whether by direct communication, carbon copy, or indirect communication through a third party.

20. The term "person" includes natural persons, firms, general partnerships, limited partnerships, associations, proprietorships, joint ventures, corporations, professional corporations, business trusts, banking institutions, insurance companies of whatever form, unincorporated organizations, governments, governmental agencies, commissions and other formally or loosely organized entities.

21. The plural shall include the singular and the singular shall include the plural.

22. Use of the masculine gender shall also include the feminine or neuter gender where appropriate.

23. The words "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.

24. The words "pertaining to" or "reflecting" are largely synonymous and mean: concerning, discussing, referring to, pertaining to, reflecting, evidencing, constituting, showing or regarding.

25. The terms "claim" or "claims" mean a demand for money or property made by one person upon another.

26. This request shall be deemed continuing so as to require further and supplemental response, pursuant to the requirements of the Federal Rules of Civil Procedure and the Rules of the Court of Federal Claims.

27. The terms "identify" or "identity" as used herein, mean:

a. In the case of a person, to state the person's:

i. Name;

ii. Last known address and telephone number;

iii. Employer or business affiliations; and

iv. Occupation and position held.

b. In the case of a company or other entity, to state:

i. Its name;

ii. Whether a corporation, partnership or other form of business entity;

iii. Its principal place of business and telephone number; and

iv. The identity of persons having knowledge of the matters with respect to which the company is named.

c. In the case of a document, to state:

i. The identity of the person preparing it and the sender;

ii. Te title or a description of a general nature of its subject matter;

iii. The identity of its addressees, if any;

iv. Te date of its preparation;

v. The date and manner of distribution and publication, if any;

vi. The location of copies thereof and the identity of its present custodian; and

vii. Te identity of the person who can identify it.

d. In the case of an act or omission, to state:

i. A detailed description of the act or omission;

ii. The date when it occurred;

iii. The place where it occurred;

iv. The identity of the person or persons performing such acts, or in the case of an omission, the identity of the person or persons failing to act;

v. The identity of all persons who have knowledge of the act or omission;

vi. The date the act or omission first became known to you; and

vii. The circumstances and manner in which you first obtained such knowledge.

e. In the case of any electronic data, to state:

i. the software and/or operating system under which the data was created;

ii. the title and author of the data;

iii. the type of data (example: word processing document, spreadsheet, database, application program, etc.);

iv. all other means of identifying the data with sufficient particularity to meet the requirements for its inclusion in a Request for Production pursuant to the Rules of Civil Procedure; and,

v. the data's present or last known location or custodian, and if any such electronic data was, or no longer is, in the possession or subject to your control, state what disposition was made of it and the reason for such disposition.

28. None of the following interrogatories requesting to identify documents or communications shall be construed as extending to attorney-client communications, the work product of purely consulting experts or the mental impressions, opinions and/or conclusions of your attorney, and/or party communications made in anticipation of litigation.

## INTERROGATORIES

**INTERROGATORY NO. 1:** Please state the identity of all persons with any knowledge concerning the matters at issue in this suit. For each such person listed, please also state the following:

a. such person's last known business;

b. such person's residential addresses;

c. such person's telephone numbers; and

d. what you believe to be the general nature of each such person's knowledge.

**ANSWER:**

**INTERROGATORY NO. 2:** With respect to each person you expect to call as an expert witness at trial, state the following:

a. the name, business address, business phone number, home address, and home phone number of the expert;

b. the expert's qualifications to testify as an expert;

c. the subject matter on which the expert is expected to testify;

d. the substance of the facts and opinions to which the expert is expected to testify; and

e. a summary of the grounds for each opinion.

Your answer to this interrogatory will necessarily include all persons you expect to call as expert witnesses at trial. Renda will object if you attempt to call anyone to testify as an expert witness whose name and requested information is not timely supplied as provided in the Federal Rules of Civil Procedure and the Rules of the Court of Federal Claims.

**ANSWER:**

<u>INTERROGATORY NO. 3</u>: With respect to each consulting expert who is not expected to be called as a witness at trial, but whose opinions or impressions have been reviewed by a testifying expert, state the following:

a. the name, business address, business phone number, home address, and home phone number of the expert;

b. the expert's qualifications to consult as an expert;

c. the subject matter on which the expert has been or will be consulted;

d. the substance of the opinions and impressions of the expert which have been reviewed by a testifying expert; and

e. the name and address of each testifying expert who has reviewed the opinions and impressions of this expert.

<u>ANSWER</u>:

<u>INTERROGATORY NO. 4</u>: Please state the identity of each person who prepared any cost estimate for the Upper Bayou Project, and for each such person, please state the date of any such estimate, the purpose of or aspect covered by any such estimate, and the amount of any such estimate.

<u>ANSWER</u>:

<u>INTERROGATORY NO. 5</u>: Please state the identity of any persons who have borrowed or excavated material from the area of the Upper Bayou Project at any time in the last 15 years, the date(s) of any such borrowing or excavating, the approximate amount of material borrowed or excavated, the identity of each person with knowledge of any such material borrowed or excavated,

and the identity of any documents pertaining to or reflecting any such material borrowed or excavated.

**ANSWER:**

**INTERROGATORY NO. 6:** Please state the identity of any person who has surveyed, sounded, or otherwise determined or recorded the topography at any time in the area of the Upper Bayou Project, the date(s) of any such determination or recordation, and the name of the project (if any) for such determination or recording.

**ANSWER:**

**INTERROGATORY NO. 7:** Please state whether or not you have any back charges or credits to any of Renda's claims in this suit, and, if so, please state the nature and extent of any such back charge or credit, the factual basis for any such back charge or credit, the amount of any such back charge or credit, the identity of any persons with knowledge of any such back charges or credits, and the identity of any documents pertaining to or reflecting any such back charge or credit.

**ANSWER:**

**INTERROGATORY NO. 8:** Please state the nature and extent of any defenses that you have to Renda's claims in this suit, and for each such defense, please state the factual or legal basis for the defense, and the identity of each person with knowledge of any such defense.

**ANSWER:**

**INTERROGATORY NO. 9:** Please state if you contend that Renda should have in any way mitigated the damages Renda seeks in this suit, and, if so, please state for any particular damages Renda seeks the specific manner in which Renda should have mitigated its damages, the amount by which Renda should have mitigated such damages, the calculations for such amount, the identity of any documents in which Renda was advised how to mitigate its damages, and the identity of any persons with knowledge of how Renda should have mitigated such damages.

**ANSWER:**

**INTERROGATORY NO. 10:** Please state whether you contend that you did not receive timely or adequate notice of any of Renda's claims in this suit, and, if so, please state the particular claim for which you contend you did not receive timely or adequate notice, any and all deficiencies that you allege exist with any such notice, any prejudice you sustained as a result of any such alleged deficiency, and the identity of any persons with knowledge of any such prejudice.

**ANSWER:**

**INTERROGATORY NO. 11:** Please state whether you contend that Renda did not encounter the differing site conditions that Renda alleges in this suit, and, if so, please state which, if any, of the alleged differing site conditions you contend were not differing site conditions or were for some reason not compensable under a differing site condition theory, your legal and/or factual basis for such contention, and the identity of each person with personal knowledge of the basis of any such contention.

**ANSWER:**