UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC., | § | |
| PLAINTIFF, | § | |
| | § | CASE NO. 02-306C |
| V. | § | |
| | § | (JUDGE HEWITT) |
| UNITED STATES ARMY | § | |
| CORPS OF ENGINEERS, | § | |
| DEFENDANT. | § | |

**MOTION BY PLAINTIFF, RENDA MARINE, INC., TO COMPEL**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, Renda Marine, Inc. ("Renda"), respectfully requests that the Court order Defendant, United States, to: (1) comply with the Court's Order of July 29, 2003, concerning electronic discovery, attached hereto as Exhibit A and the Parties' Agreement Regarding Scope of Electronic Discovery, attached hereto as Exhibit B and (2) produce documents that Defendant had previously agreed to produce but has thus far failed to produce. In support, Renda states the following:

**RELIEF REQUESTED**

Renda respectfully requests that the Court order that Defendant: (1) produce seven or eight boxes of documents that were retrieved from computer hard drives, e-mail servers, and backup tapes; (2) produce documents over which Defendant improperly claims a privilege; (3) pay Universal Document Solutions for its services in restoring such electronic data; and (4) produce documents that Defendant previously agreed to produce but has of yet failed to so so.

**ELECTRONIC DISCOVERY ORDER**

The Court previously held a hearing on Renda's motion to gain access to the computer hard drives, e-mail servers, and backup tapes of the United States Army Corps of Engineers, Galveston District ("Corps"). The need for the motion arose when Renda discovered that the Corps' Contracting Officer had a habit or practice of deleting e-mail that he sent or received. On July 3,

2004, the Court held a lengthy telephone hearing on the matter, and following further briefing issued an Order of July 29, 2003 (Exhibit A), which required the Corps to cooperate with electronic discovery.

Under the Court's Order of July 29, 2003, (Exhibit A), and the Agreement Regarding Scope of Electronic Discovery (Exhibit "B"), the Government was required to make certain computer hard drives, back up tapes, and e-mail servers available to Renda's computer consultant "no later than fourteen (14) days after this Agreement [Exhibit B] is executed by counsel for Renda and the Government and the date upon which the Protective Order if filed." See Exhibit B at 2, ¶3.

Following the Court's Order (Exhibit A), the Corps engaged in a lengthy series of foot dragging. See the attached Affidavit of Barry Bray. Universal Document Solutions, Inc. ("UDS"), had been retained to retrieve electronic data from the Corps' computer hard drives, e-mail servers, and backup tapes relevant to the issues in this case. Barry Bray is the President of UDS, and was intimately involved in the electronic data retrieval process.

The Corps did not produce its backup tape until December 2, 2003, despite repeated requests by UDS for the tape. See Mr. Bray's Affidavit. At the time that it produced the backup tape, the Corps declared that the tape was corrupted, and no data was retrievable. After the Corps provided information on the software used to create the backup tape, UDS retrieved the documents and information from the tape without difficulty.

UDS then needed a list of search terms to query the electronic data and records to retrieve relevant documents and information. On December 11, 2003, Alex Petty, Chief Counsel for the Corps, provided an abbreviated search term list. It then took some time to coordinate with the Corps to compile a proper list of search terms.

On January 6, 2004, UDS confirmed with Mr. Petty the listing of search terms. UDS then performed search queries on the electronic data to retrieve relevant documents and information.

As required under the Agreement Regarding Scope of Electronic Discovery (Exhibit B), UDS then had to coordinate with the Government concerning review of the documents and information retrieved from the Corps' computer hard drives, e-mail servers, and backup tapes. UDS suggested that the Government accept the documents and information in electronic form. However, the Government insisted that UDS print out all the documents and information. The Government also insisted that UDS print out the documents and information organized by search term. UDS pointed out that it had restored about 38,000 documents, but printing out the documents organized by search term would duplicate the documents resulting in more than 80,000 pages. The Government persisted on insisting that the documents be printed out organized by search terms.

In compliance, UDS initially printed out four boxes of the relevant documents. UDS arranged for the four boxes to be printed out with sequentially numbered Bates stamps, and shipped the boxes to the Government in about February 2004. When the Government began its review, the Government observed that the boxes contained numerous duplicates.

The Government then requested that UDS print out the remaining documents without regard to search term. UDS complied and in February 2004, shipped eight or nine boxes of documents to the Government. These additional documents were also numbered sequentially, following the last number in the first four boxes of documents.

The twelve or thirteen boxes of documents that UDS shipped to the Government contained documents sequentially numbered for identification.

On about March 22, 2004, the Government shipped five boxes of documents to Renda's attorney, which the Government indicated contained the extent of the documents that the

Government would allow Renda to review. A true copy of the Government's letter of March 22, 2004, is attached as Exhibit C. The Government indicated that it would subsequently provide a privileged index log for the documents.

At that time, the Government had not accounted for the missing seven or eight boxes of documents that UDS had shipped. Without a privileged index log, Renda could not determine if the Government contended that all the documents not produced were privileged or only some of them.

By letter of March 30, 2004, Renda's attorney wrote to the Government's attorney concerning the limited number of documents that the Government produced. A true copy of this March 30, 2004, letter is attached as Exhibit D. In this letter, Renda's attorney inquired as to the contents of the remaining seven or so boxes, and requested a recap. The Government has not responded.

When the Government produced the five boxes of documents from the twelve or thirteen that UDS restored from the Corps' computers and tapes, the documents were incredibly jumbled and were no longer in Bates numerical sequence. Renda's attorney detailed this problem in his March 30, 2004, letter. (See Exhibit D). The Government has not responded.

Finally, in his March 30, 2004, letter (Exhibit D), Renda's attorney requested a privileged documents log as soon as possible so that Renda could determine why about seven boxes of UDS' documents were not produced.

On April 9, 2004, the Government provided a privileged index log for the documents not produced to Renda from the twelve or thirteen boxes. The log contains about 426 documents. A true and correct copy of this log is attached as Exhibit E.

By letter of April 13, 2004, Renda's attorney wrote to the Government's attorney to request production of allegedly privileged documents, which appeared not to be protected by any privilege.

A true copy of this April 13, 2004, letter is attached as Exhibit F. The Government has yet to respond.

The Government has asserted privilege over documents authored by or furnished to non-Government testifying witnesses in this case. Once the Government designated non-Government persons as witnesses to testify in this case, the Government lost the rights to claim the documents protected by such persons as privileged.

The Government has also asserted privilege over documents authored by Government testifying witnesses and sent to other Government testifying witnesses or to non-Government testifying witnesses, with no indication that any attorney was involved. The release of such documents to non-Government testifying witnesses waived any privilege to the documents.

**APPLICABLE LAW**

Rule 37 of the Rules of the United States Court of Federal Claims allows a party to move to compel when a responding party fails or refuses to answer Interrogatories under Rule 33 or provide documents requested under Rule 34:

> If a party or an officer, director, or managing agent of a party or a person designated under RCFC 30(b)(6) or 31(a) to testify on behalf of a party fails (1) to appear before the officer who is to take the deposition, after being served with a proper notice, or (2) to serve answers or objections to interrogatories submitted under RCFC 33, after proper service of the interrogatories, or (3) to serve a written response to a request for inspection submitted under RCFC 34, after proper service of the request, the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under subparagraphs (A), (B) and (C) of subdivision (b)(2) of this rule.

Rules of the United States Court of Federal Claims Rule 37.

As set forth in *First Federal Sav. Bank of Hegewisch v. U.S,* 55 Fed.Cl. 263 (Fed.Cl. 2003) the attorney-client privilege requires numerous mandatory elements:

> The privilege is properly invoked where: (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court [and] ... (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding [and] ... (4) the privilege has been (a) claimed and (b) not waived by the client.

*First Federal Sav. Bank of Hegewisch v. U.S.*, 55 Fed.Cl. 263, 266 **(**Fed.Cl., 2003)

"The party asserting the privilege has the initial burden of establishing the elements of the privilege." *First Federal Sav. Bank of Hegewisch v. U.S.*, 55 Fed.Cl. at 267.

"[D]ocuments generated by non-attorneys are not privileged." *In re Grand Jury Proceedings*, 102 F.3d 748 (4th Cir.(Va.), 1996). *See e.g. Ralph L. Jones Co., Inc. v. U.S.*, 33 Fed.Cl. 327, 335 (Fed.Cl., 1995) ("We have no reason to believe that Jones received this document in any manner other than by voluntary production from HUD. Thus, an attorney-client privilege would not apply. Also, it may not be work-product. It was created by a contracting officer, not by an attorney. It reflects the contracting officer's views and does not reveal the attorney's mental impressions. It is unlikely that this document was prepared in anticipation of litigation, but to settle the equitable adjustment claim before the contracting officer. The document merely summarizes the CO's factual conclusions. If it were considered to be work-product, we may disclose this type of non- attorney information where the opposing party has a substantial need and would not be able to retain the substantial equivalent without undue hardship.")

Further, "[t]he mere act of copying an attorney in a communication between nonattorneys does not protect the communications between the nonattorneys." *Sinclair Oil Corp. v. Texaco, Inc.,* 208 F.R.D. 329, 332, *Sinclair Oil Corp. v. Texaco, Inc.*, 208 F.R.D. 329 (N.D.Okla., 2002)

Renda respectfully requests that the Court order Defendant to produce the seven or eight boxes of documents withheld from Renda, less the truly privileged documents. Renda also

respectfully requests that the Court order Defendant to produce the documents Defendant claims as privileged. Renda also requests that the Court again order Defendant to pay UDS as required under the Court's July 29, 2003, Order (Exhibit A), since Defendant has thus far ignored UDS' invoices.

**DOCUMENTS PROMISED BUT NOT PRODUCED**

Renda's Interrogatory Number 5 to Defendant requested the following:

> "Please state the identity of any persons who have borrowed or excavated materials from the area of the Upper Bayou Project at any time in the last 15 years, the date(s) of any such borrowing or excavating, the approximate amount of material borrowed or excavated, the identity of each person with knowledge of any such material borrowed or excavated, and the identity of any documents pertaining to or reflecting any such material borrowed or excavated."

See Exhibit G (Defendant's Responses to Plaintiff's First Set of Interrogatories, at page 5).

In its response, Defendant indicated that the information requested could be found in documents that it would produce. Defendant has produced well over 30,000 pages of documents in this case. Defendant produced more than twenty boxes of documents, as well as numerous CD-ROM disks. Defendant never indicated that it was reneging on its promise to produce documents to answer this interrogatory. Defendant never specifically identified that the documents it had produced were not responsive to this interrogatory.

During the course of identifying trial exhibits, Renda discovered that Defendant had failed without explanation to produce the documents in answering this interrogatory. When Renda's attorney confronted Defendant's attorney about the omission, Defendant's attorney refused to produce the documents promised by the interrogatory answer.

Rule 33 Requires that Documents Produced in Lieu of a Response to an Interrogatory Actually be Produced.

It is not sufficient to merely state that documents will be produced and then refuse to do so. Rule 33 of the Rules of the Court of Federal Claims allows a party responding to interrogatories to

provide documents containing the information requested in the interrogatories in lieu of a detailed response. The documents containing the information requested in the interrogatory must be clearly identified. The rules do not allow a party to merely state that it will produce documents containing the information requested and then refuse to do so. The Corps should be required to produce the documents it relied upon in its response to this interrogatory, as is clearly required by Rule 33.

Wherefore, Plaintiff, Renda Marine, Inc., respectfully requests that the Court order Defendant, United States, to comply with the Court's Order on Electronic Discovery, produce documents improperly withheld, pay Universal Document Solutions, and produce documents promised in answering Renda's First Set of Interrogatories.

Respectfully submitted,

QUILLING, SELANDER, CUMMISKEY & LOWNDS, P.C.

BY: s/Brian W. Erikson
Brian W. Erikson, TX Bar No. 06643800

2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Telefax)

ATTORNEYS FOR RENDA MARINE, INC.

## CERTIFICATE OF CONFERENCE

I hereby certify that I have discussed with John Kosloske, Defendant's attorney, the relief requested in this motion. We have been unable to reach an agreement, thereby requiring that this motion be presented to the Court for adjudication.

s/Brian W. Erikson
Brian W. Erikson

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of April, 2004, a true and correct copy of the Motion by Plaintiff, Renda Marine, Inc. to Compel, was served electronically through the CM/ECF system for the Court of Federal Claims.

s/Brian W. Erikson
Brian W. Erikson