1-2-03

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 02-306C |
| v. | ) | |
| | ) | (Judge Hewitt) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Pursuant to rules 26 and 33 of the United States Court of Federal Claims, defendant, the United States, responds to the "First Set of Interrogatories by Plaintiff, Renda Marine, Inc. to Defendant, United States Army Corps of Engineers" dated November 1, 2002, as follows:

GENERAL STATEMENTS AND OBJECTIONS

1. The word usage and sentence structure is that of the attorney who prepared these responses and does not purport to be the exact language of the executing parties.

2. The information supplied in these responses is that currently available to defendant, its agents, representatives, or attorneys, unless privileged. Discovery in this litigation has not been completed, and defendant's investigation into the facts relevant to plaintiff's claims is continuing. Defendant, therefore, reserves the right to supplement or modify the responses to these interrogatories, as appropriate, if and when additional information becomes available through discovery, consultation with potential expert witnesses, or otherwise. Defendant further reserves the right to introduce at trial any testimonial, documentary, or other form of evidence of facts yet to be discovered.

EXHIBIT G

Blumberg No. 5118

RECEIVED JAN 07 2003

3. Defendant objects to plaintiff's interrogatories to the extent that they request information that is protected by the attorney-client privilege, the attorney work product doctrine, or other recognized exemptions from disclosure.

4. Defendant objects to plaintiff's interrogatories to the extent that they are overly broad, vague, ambiguous, oppressive, or unduly burdensome.

5. Defendant incorporates by reference the above general objections into its responses to the individual interrogatories below.

INTERROGATORY NO. 1: Please state the identity of all persons with any knowledge concerning the matters at issue in this suit. For each such person listed, please also state the following:

a. such person's last known business;

b. such person's residential addresses;

c. such person's telephone numbers;

d. what you believe to be the general nature of each such person's knowledge.

RESPONSE:

1. Defendant objects to subsections (b) and (c) of this interrogatory upon the ground that the information sought is contained in a system of records maintained by the Corps of Engineers or other Federal agency protected by the Privacy Act, 5 U.S.C. § 552a.

2. Defendant responds to subsections (a) and (d) of this interrogatory as follows:

| INDIVIDUAL | LAST KNOWN BUSINESS | GENERAL NATURE OF KNOWLEDGE |
|---|---|---|
| Anderson, Daniel W. | Corps of Engineers | Geotechnical Design |
| Barrow, James M. | Corps of Engineers | Environmental matters |
| Behrens, Robert L. | Corps of Engineers | Utility and pipeline issues |
| Benero, Thomas | Corps of Engineers | Contract administration/award; Renda contract performance |
| Brotman, Ira | Corps of Engineers | Elements of the project design |
| Brown, David R. | Corps of Engineers | Project design |
| Brunt, Dewey H. | Corps of Engineers | Project engineering |
| Buechler, Nicolas J. Col. | Corps of Engineers | Project design, construction contract administration |
| Campbell, David | Corps of Engineers | Geotechnical engineering |
| Carelock, Donald W. | Corps of Engineers | Contract award/administration |
| Castelline, Charles M. | Corps of Engineers | General engineering design |
| Catanzano, Andrea | Corps of Engineers | Permits |
| Cox, Paul A. | Corps of Engineers | Technician-survey data |

| | | |
|---|---|---|
| Davidson, John | Corps of Engineers | Permits |
| Devaney, Carol | Corps of Engineers | Contract administration |
| Few, James T. | Corps of Engineers | Geotech design and levee construction |
| Frendenhall, Linda M. | Corps of Engineers | Contract administration |
| Garcia, Frank T. | Corps of Engineers | Construction at Lost Lake |
| Gaskin, John B. | Corps of Engineers | Contract administration – surveying |
| Halla, Keith J. | Corps of Engineers | Project engineering; safety inspections; quality assurance |
| Heinly, Robert W. | Corps of Engineers | Permits |
| Hopkins, William J. | Corps of Engineers | Contract administration |
| Janecka, Arthur J. | Corps of Engineers | Project funding |
| Kershaw, Patricia A. | Corps of Engineers | Project funding |
| Kieslich, James M. | Corps of Engineers | Contract performance |
| Kirkley, Fern E. | Corps of Engineers | Assembly of contract specifications |
| Kohler, Harry G. | Corps of Engineers | Engineering and construction |
| Krueger, Dalton H. | Corps of Engineers | Program/project management/coordination |
| Kuhne, Patrick A. | Corps of Engineers | Project engineering |
| Martin, Arthur J. | Corps of Engineers | Survey coordination |
| Mauer, Herbert A. | Corps of Engineers | Design, construction contract administration |
| McClenan, Cecil M. | Corps of Engineers | Construction contract administration and performance, Renda claims |
| McMahon, Donald | Corps of Engineers | Structural engineering |
| McManus, John L. | Corps of Engineers | Project design |
| Meyer, Alton H. | Corps of Engineers | Project design |
| Meyers, Ronald F. | Corps of Engineers | Hydrology and hydraulic design |
| Moratto, Joan | Corps of Engineers | Quality assurance |
| Murphy, Carolyn E. | Corps of Engineers | Environmental issues |
| Norman, Paul | Corps of Engineers | Geotechnical design |
| Patel, Kanu H. | Corps of Engineers | Assembly of contract specifications |
| Rawls, Michael B. | Corps of Engineers | Engineering/construction coordination; audit scope of work |

| | | |
|---|---|---|
| Redd, Lawrence L. | Corps of Engineers | Surveys at Lost Lake |
| Reindl, Edward A. | Corps of Engineers | Hydrology and hydraulic design |
| Richardson, Randolph E. | Corps of Engineers | Real estate |
| Robinson, Laura L. | Corps of Engineers | General engineering design |
| Rocher, George R. (retired) | Corps of Engineers | Design, construction contract administration |
| Rossi, Christopher D. | Corps of Engineers | Quantities, etc. |
| Rozsypal, John | Corps of Engineers | Contract performance, Renda claims |
| Russek, Eric G. | Corps of Engineers | Contract administration and performance, Renda claims |
| Saenz, Luis F. | Corps of Engineers | Dredging operations |
| Sanford, Will | Corps of Engineers | Flare area claim |
| Smith, Lucille R. | Corps of Engineers | Modifications |
| Syed, Ishaq | Corps of Engineers | Geotechnical design |
| Weiss, Lynwood G. | Corps of Engineers | Contract administration/performance |
| Wyatt, Daniel | Corps of Engineers | Safety inspections |
| Young, Nancy | Corps of Engineers | Design engineering |
| Hason, Michael | HVJ Associates | Geotechnical design |
| Baron, Charles | Gahagan & Bryant Assoc. | Renda's performance of the contract |
| Bishop, Neil | Turner Collie & Braden | Renda's performance of the contract |
| Bryant, Grady | Gahagan & Bryant Assoc. | Renda's performance of the contract |
| Eich, Carrie | Turner Collie & Braden | Geotechnical design |
| Gorini, Richard | J. Simmons Group | Renda's performance of the contract |
| Hraborsky, Leon | Gahagan & Bryant Assoc. | Renda's performance of the contract |
| Jefts, Alan | Turner Collie & Braden | Renda's performance of the contract |
| Kornegay, Thomas | Port of Houston Authority | Project relationship with Corps of Engineers; overall project performance |
| Mears, Wendell | Gahagan & Bryant Assoc. | Renda's performance of the contract |
| Sartori, Tony | Turner Collie & Braden | |

| | | |
|---|---|---|
| Walters, Ted | Port of Houston Authority | Project relationship with Corps of Engineers; overall project performance |
| Cotosman, Samual | Defense Contract Audit Agency | Audit of Renda |
| Nguyen, Diep | Defense Contract Audit Agency | Audit of Renda |
| Schaefer, Evelyn | Defense Contract Audit Agency | Audit of Renda |
| Seiler, Gene | Defense Contract Audit Agency | Audit of Renda |
| Shobert, Darrell | Defense Contract Audit Agency | Audit of Renda |
| Wylie, Charles | Defense Contract Audit Agency | Audit of Renda |
| Bowman, Steven C. | Renda Marine, Inc. | Renda's bid and performance of the work |
| Duke, Frank | Renda Marine, Inc. | Renda's performance of the work |
| Fisher, Eddie R. | Renda Marine, Inc. | Renda's bid and performance of the work |
| Goodloe, Ben | Renda Marine, Inc. | Renda's performance of the work |
| Gonzalez, Leo | Renda Marine, Inc. | Renda's performance of the work |
| Herrara, Leo | Renda Marine, Inc. | Renda's performance of the work |
| Renda, Oscar | Renda Marine, Inc. | Contract performance, Renda's claims |
| Renda, Rudy J. | Renda Marine, Inc. | Contract performance, Renda's claims |
| Renda, Rudy V. | Renda Marine, Inc. | Levee construction |
| Rigby, William | TW Laguay | Dredge operations |
| Williams, Glen | Renda Marine, Inc. | Levee construction, surveying |
| Affolter, Kenneth | Affolter Contracting | Mechanically placed levee construction |
| Maxwell, Walter | Federal Insurance Co. | Renda's performance of the contract |
| Scribner, Jay | Chubb | Renda's performance of the contract |
| Smith, Barry | Pathfinder Construction Company | Renda's claims |

| | | |
|---|---|---|
| Machacek, Kenneth | Renda Marine, Inc. | Renda's performance of the work |
| Rodriguez, Arturo | Renda Marine, Inc. | Renda's performance of the work |
| Garcia, Cagetano | Renda Marine, Inc. | Hydraulic levees |
| Diaz, Carlos | Renda Marine, Inc. | Hydraulic levees |
| Englen, Michael | Renda Marine, Inc. | Hydraulic levees |
| Herrara, Nicholas | Renda Marine, Inc. | Dredging operations |
| Garza, David | Renda Marine, Inc. | Dredging operations |
| Rios, Delfino | Renda Marine, Inc. | Dredging operations |
| Machacek, Darrell | Renda Marine, Inc. | Surveying |

There appear to be numerous other individuals employed by plaintiff at various times who may have knowledge related to the project. At this time, we lack information that would enable us to identify any of those individuals.

INTERROGATORY NO. 2: With respect to each person you expect to call as an expert witness at trial, state the following:

a. the name, business address, business telephone number, home address, and home phone number of the expert;

b. the expert's qualifications to testify as an expert;

c. the subject matter on which the expert is expected to testify;

d. the substance of the facts and opinions to which the expert is expected to testify;

e. a summary of the grounds for each opinion.

Your answer to this interrogatory will necessarily include all persons you expect to call as expert witnesses at trial. Renda will object if you attempt to call anyone to testify as an expert witness whose name and requested information is not timely supplied as provided in the Federal Rules of Civil Procedure and the Rules of the Court of Federal Claims.

RESPONSE: Defendant states that, at this time, we cannot answer this interrogatory because we have not yet identified any expert witness(es) to be called to testify upon our behalf at the trial of this case. We will supplement the response to this interrogatory when we identify any such expert witness(es).

INTERROGATORY NO. 3: With respect to each consulting expert who is not expected to be called as a witness at trial, but whose opinions or impressions have been reviewed by a testifying expert, state the following:

a. the name, business address, business phone number, home address, and home phone number of the expert;

b. the expert's qualifications as an expert;

c. the subject matter on which the expert has been or will be consulted;

d. the substance of the opinions and impressions of the expert which have been reviewed by a testifying expert; and

e. the name and address of each testifying expert who has reviewed the opinions and impressions of this expert.

RESPONSE: Defendant states that, at this time, we cannot answer this interrogatory because we have not yet identified any expert witness(es) to be called to testify upon our behalf at the trial of this case. We will supplement the response to this interrogatory when we identify any such expert witness(es).

INTERROGATORY NO. 4: Please state the identity of each person who prepared any cost estimate for the Upper Bayou Project, and for each such person, please state the date of any such estimate, the purpose of or aspect covered by any such estimate, and the amount of any such estimate.

RESPONSE:

| **Name** | **Date** | **Purpose/Aspect** | **Amount** |
|---|---|---|---|
| Sanford, Will | March 2001 | Estimate of plaintiff's Flare Area Claim | $4,111,778 |
| Russek, Eric | July 2002 | Estimate of costs to complete/ delete/repair work under plaintiff's contract | |
| | | Multiple estimates of contract modifications | |
| | October 1999 | CO-5, Debris removal | $66,000 |
| | July 1999 | CO-3, Earthwork at Lost Lake | $367,354 |
| | May 1999 | CO-2, Earthwork at Lost Lake | $437,018 |
| | March 1999 | CO-1, Earthwork at Lost Lake | $346,590 |
| | April 2001 | Work required to complete Dredge Section 9 | $900,000/$902,200 |
| | March 2001 | Dredge Section 9 | $696,000/$700,000 |
| Lockhart, Jacquellyn | July 1998 | Government contract estimate | $13,607,400 |
| Montgomery, David | July 1998 | Government contract estimate | $13,607,400 |

In about October 1994, an estimate was prepared for the Corps of Engineers's Limited Re-Evaluation Study Report, which included the Upper Bayou area. The estimate was prepared by Jans Peterson (retired), David Montgomery, and Volker Schmidt.

Upon information and belief, in or about June/July 1998, Eddie Fisher and/or Steve Bowman prepared an estimate in support of plaintiff's bid for the Upper Bayou Project in the amount of $12,526,100. Also, in or about July 1998, Affolter Contracting Co., Inc. (Affolter) (individual unknown) prepared an estimate in the approximate amount of $2,123,029 to perform elements of the Upper Bayou Project. Eddie Fisher, Steve Bowman, and/or Barry Smith prepared, or caused to be prepared, estimates for contract modifications and claims, including the following estimates:

| **Date** | **Purpose/Aspect** | **Amount** |
|---|---|---|
| January 2001 (approx) | South Ferry Landing claim | $ 701,753 |
| March 2001 (approx) | South Ferry Landing claim | $1,049,173 |
| February 2001 (approx) | Flare Area claim | $2,973,227 |
| February 2001 (approx) | Flare Area claim | $3,641,643 |
| May 2001 (approx) | Flare Area claim | $4,691,688 |
| June 2001 (approx) | Obstruction claim (Sections 4 through 8) | $2,126,083 |
| April 2001 (approx) | Obstruction claim (Sections 4 through 8) | $1,802,083 |
| June 2001 (approx) | Obstruction claim (Section 9) | $1,158,642 |
| April 2001 (approx) | HL&P Transmission Tower claim | $ 166,143 |
| May 2001 (approx) | HL&P Transmission Tower claim | $ 170,863 |
| April 2001 (approx) | Section 7 Clay claim | $1,083,779 |
| May 2001 (approx) | West Levee Realignment claim | $ 789,600 |
| October 2001 (approx) | Lost Lake Levee claim | $6,258,853 |

Eddie Fisher, Leo Herrara, Steve Bowman, and/or Barry Smith prepared, or caused to be prepared, estimates for proposals for contract modifications, including the following:

| | | |
|---|---|---|
| 5-14-99 | Earthwork at Lost Lake | $364,201.03 |
| 5-10-99 | Earthwork at Lost Lake | $436,855.87 |
| 5-10-99 | Earthwork at Lost Lake | $446,905.78 |
| 5-10-99 | Earthwork at Lost Lake | $577,313.34 |
| 6-18-01 | Daily Standby Cost | $54,485.00 |
| Feb/Mar 2001 | Clay Material for Levee Construction | ±$305,000.0 |
| 11-03-00 | Removal of Rubble/Obstructions | $49,500.00+ |

In or about May 1999, Affolter prepared a proposal in the amount of $270,929.82 relative to Contract Modification "CO-2 P00006" for "additional work to place spillway and outfall pipes due to bulging of pipe bedding, additional dresswork to training levees and perimeter levees, additional cost to relay material with draglines, and standby cost of rental equipment."

In or about July 1998, Great Lakes Dredge & Dock Company (individual(s) unknown) prepared an estimate of $14,680,454 to perform the Upper Bayou Project.

In or about July 1998, Bean Horizon Corporation (individual(s) unknown) prepared an estimate of $22,825,590 to perform the Upper Bayou Project.

In or about July 1998, T.L. James & Company, Inc. (individual(s) unknown) prepared an estimate of $15,444,625 to perform the Upper Bayou Project.

In or about July 1998, Pine Bluff Sand and Gravel Company (individual(s) unknown) prepared an estimate of $17,776,275 to perform the Upper Bayou Project.

INTERROGATORY NO. 5: Please state the identity of any persons who have borrowed or excavated material from the area of the Upper Bayou Project at any time in the last 15 years, the date(s) of any such borrowing or excavating, the approximate amount of material borrowed or excavated, the identity of each person with knowledge of any such material borrowed or excavated, and the identity of any documents pertaining to or reflecting any such material borrowed or excavated.

RESPONSE: Plaintiff (various individuals) borrowed or excavated material from the Lost Lake Placement Area between 1998 and 2001. Defendant does not know the exact amount of material that plaintiff borrowed or excavated from the Lost Lake Placement Area. However, we believe that it exceeds several thousand yards. Persons with knowledge include Eric Russek, Mike McClenan, Tim Few, Wendell Mears, Leon Hrabovsky, Charles Baron, Eddie Fisher, Steve Bowman, Rudy Renda. Relevant documents include plaintiff's daily reports.

Additionally, Corps of Engineers contracts for dredging work performed in the area of the Upper Bayou Project during the period from 1987 to 1999 are listed in the document at Tab B to "Defendant's Responses to Requests Nos. 15, 27, and 28 of Plaintiff's First Request for Production of Documents" dated January 3, 2003. In defendant's response to document production requests 27 and 28, we have offered to produce documents relating to those contracts for plaintiff's inspection at a mutually convenient time and place. Those documents may contain information requested by this interrogatory. Pursuant to RCFC 33(d), we will produce the documents for plaintiff's examination at a mutually convenient time and place.

INTERROGATORY NO. 6: Please state the identity of any person who has surveyed, sounded, or otherwise determined or recorded the topography at any time in the area of the Upper Bayou Project, the date(s) of any such determination or recordation, and the name of the project (if any) for such determination or recording.

RESPONSE: Defendant objects to this interrogatory to the extent that it seeks information about surveys, soundings, or other recordings of the topography "at any time" in the area of the Upper Bayou Project upon the grounds that it is (a) unduly burdensome and (b) neither relevant nor reasonably calculated to lead to admissible evidence. Without waiving these objections, defendant states that Corps of Engineers contracts for dredging work performed in the area of the Upper Bayou Project during the period from 1949 to 1997 are listed in the document at Tab B to "Defendant's Responses to Requests Nos. 15, 27, and 28 of Plaintiff's First Request for Production of Documents" dated January 3, 2003. Documents relating to those contracts, which, in response to document production requests 27 and 28, we have offered to produce for plaintiff's inspection at a mutually convenient time and place, are located at one or more Federal records storage center(s). They may contain information requested by this interrogatory.

To the extent that this interrogatory seeks information about surveys, soundings, or other recordings of the topography of the area of the Upper Bayou Project created in connection with the Upper Bayou Project, defendant responds as follows:

1. Plaintiff (various individuals) intermittently conducted surveys of the new levee construction at the Lost Lake Placement Area. Plaintiff also performed before- and/or after-dredging surveys of the various sections of the ship channel.

2. The Corps of Engineers (Galveston District) performed or caused to be performed the following surveys:

   a. April 1997: survey of the Lost Lake Placement Area (contract drawings)

   b. December 1997: survey of the Lost Lake Placement Area (contract drawings)

   c. January 12, 1998: survey of power line towers on southeast side of the Lost Lake Placement Area

   d. Verification surveys performed throughout the project at the Lost Lake Placement Area by L. Redd and others

   e. June 2000: aerial survey of the Lost Lake Placement Area

   f. July 2000 after-dredging hydrographic surveys of Dredge Sections 2 and 3

   g. August 2000: survey of the Southwest Levee at the Lost Lake Placement Area (Survcon)

   h. August/September 2000: hydrographic survey of the north side of the ship channel between, approximately, stations 530+00 and 554+00

   i. October 2000: cross sections of the West Levee at the Lost Lake Placement Area

   j. November 2000: an after-dredging hydrographic survey in Dredge Section 7 of the ship channel

   k. November 20, 2000: after-dredging hydrographic survey of Dredge Section 7 through station 600+00

   l. November/December 2000: cross sections of the Lost Lake Placement Area between stations 166+00 to 195+00 (Survcon)

   m. January 2001: Side Scan & Magnetometer Survey from stations 570+00 to 685+00 (Gahagan & Bryant Associates)

   n. January 2001: hydrographic survey of Dredge Sections 4, 5, and 6

   o. February 2001, April 2001, May 2001: hydrographic surveys of the ship channel between stations 600+00 and 688+04.05

p. May 2001: surveys of the North and West Levees at the Lost Lake Placement Area (L. Redd)

q. May 2002: an after-dredging hydrographic survey in the vicinity of the South Ferry Landing

r. 2002: aerial and ground surveys of the Lost Lake Placement Area (C & C Technologies)

INTERROGATORY NO. 7: Please state whether or not you have any back charges or credits to any of Renda's claims in this suit, and, if so, please state the nature and extent of any such back charge or credit, the factual basis for any such back charge or credit, the amount of any such back charge or credit, the identity of any persons with knowledge of any such back charges or credits, and the identity of any documents pertaining to or reflecting any such back charge or credit.

RESPONSE: Discovery in this litigation has not been completed, and defendant's investigation and/or evaluation of potential defenses to the claims that are the subject of the above captioned action is continuing. Therefore, we reserve the right to supplement or modify the response to this interrogatory, as appropriate, if and when additional information becomes available through discovery, consultation with potential expert witnesses, or otherwise. We further reserve the right to introduce at trial any testimonial, documentary, or other form of evidence of facts yet to be discovered. Subject to those qualifications, defendant states that, as of this time, we have not identified a "back charge" or a "credit" to any of the claims that are the subject of the above captioned action. However, we anticipate that we will perform additional evaluation of the Flare Area claim and we will supplement the response to this interrogatory when that evaluation is concluded, as appropriate. We also note that, on November 26, 2002, the Corps of Engineers Contracting Officer issued a final decision upon Government claims arising under or relating to the Upper Bayou Project which contains a demand that plaintiff pay the Government $11,860,000.

INTERROGATORY NO. 8: Please state the nature and extent of any defenses that you have to Renda's claims in this suit, and for each such defense, please state the factual or legal basis for the defense, and the identity of each person with knowledge of any such defense.

RESPONSE: Discovery in this litigation has not been completed, and defendant's investigation and/or evaluation of potential defenses to the claims that are the subject of the above captioned action is continuing. Therefore, we reserve the right to supplement or modify the response to this interrogatory, as appropriate, if and when additional information becomes available through discovery, consultation with potential expert witnesses, or otherwise. We further reserve the right to introduce at trial any testimonial, documentary, or other form of evidence of facts yet to be discovered. Subject to those qualifications, defendant states that, as of this time, we have identified the following defenses to plaintiff's claims:

South Ferry Landing Differing Site Conditions Claim

1. The contract documents do not affirmatively indicate or represent the conditions that form the basis of this differing site conditions claim. The contract documents do not indicate, one way or the other, the presence of riprap, rubble, or other shore protection at or near the South Ferry Landing.

2. Plaintiff has not produced any evidence of the alleged "obstructions" that form the basis of this differing site conditions claim.

3. To the extent that the "obstructions" that form the basis of this differing site conditions claim are riprap, rubble, or other shore protection at or near the South Ferry Landing, plaintiff reasonably could have foreseen those conditions at the time of bidding.

4. To the extent that the "obstructions" that form the basis of this differing site conditions claim are riprap, rubble, or other shore protection at or near the South Ferry Landing, plaintiff caused or contributed to the obstructions by overdredging of the contract dredge template, as a result of which plaintiff directly encountered or undermined the shore protection at or near the South Ferry Landing.

5. Assuming for the sake of argument that defendant is liable to plaintiff upon the South Ferry Landing differing site conditions claim, the claim nevertheless is overstated by at least $334,881 for the reasons set forth in DCAA Audit Report No. 3511-2003M17200006 dated December 12, 2002, a copy of which has been provided to plaintiff.

Based upon information presently available to defendant, individuals with knowledge of facts relating to the defenses numbered 1 through 4 above are Eric Russek, Mike McClenan, John Rozsypal, Wendell Mears, Leon Hrabovsky, and Charles Baron.

Flare Area Differing Site Conditions Claim

1. The contract documents do not affirmatively indicate or represent the conditions that form the basis of this differing site conditions claim. The contract documents do not indicate, one way or the other, the character of the majority of the materials in the Flare Area.

2. Plaintiff caused or contributed to the alleged increased costs of performance by overdredging of the contract dredging template.

3. Assuming for the sake of argument that defendant is liable to plaintiff upon the Flare Area differing site conditions claim, the claim nevertheless is overstated by at least $1,306,729 for the reasons set forth in DCAA Audit Report No. 3511-2003M17200005 dated December 12, 2002, a copy of which has been provided to plaintiff.

Based upon information presently available to defendant, individuals with knowledge of facts relating to the defenses numbered 1 and 2 above are Eric Russek, Mike McClenan, John Rozsypal, James Few, Wendell Mears, Leon Hrabovsky, Charles Baron.

HL&P Tower Differing Site Conditions Claim

1. The conditions that form the basis of this claim developed during the course of contract performance. The Differing Site Conditions clause applies only to conditions that existing at the time of contract award. See, e.g., Olympus Corp. v. United States, 98 F.3d 1314, 1317-18 (Fed. Cir. 1995).

2. Plaintiff did not provide timely notice of the alleged differing site condition, as required by the contract. Plaintiff took unilateral action without requesting input or direction from the Corps of Engineers contracting officer, thereby depriving the contracting officer the opportunity to coordinate or accommodate HL&P's needs in a manner that would not have interfered with plaintiff's dredging operations.

3. Plaintiff failed to coordinate with HL&P, which could have avoided the need to relocate the dredge discharge pipe a second time.

4. Assuming for the sake of argument that defendant is liable to plaintiff upon the HL&P Tower differing site conditions claim, the claim nevertheless is overstated by at least $45,000 for the reasons set forth in DCAA Audit Report No. 3511-2003M17200007 dated December 12, 2002, a copy of which has been provided to plaintiff.

Based upon information presently available to defendant, individuals with knowledge of facts relating to the defenses numbered 1 through 3 above are Eric Russek, Mike McClenan, John Rozsypal, Wendell Mears, and Leon Hrabovsky.

Section 7 Clay Differing Site Conditions Claim

1. The conditions indicated in the contract documents do not differ materially from the conditions encountered by plaintiff that form the basis of this differing site conditions claim, i.e., significant quantities of stiff or very stiff clay.

2. Plaintiff caused or contributed to the alleged increased costs of performance by overdredging of the contract dredging template.

3. Assuming for the sake of argument that defendant is liable to plaintiff upon the Section 7 Clay differing site conditions claim, the claim nevertheless is overstated by at least $256,143 for the reasons set forth in DCAA Audit Report No. 3511-2003M17200011 dated December 12, 2002, a copy of which has been provided to plaintiff.

Based upon information presently available to defendant, individuals with knowledge of facts relating to the defenses numbered 1 and 2 above are Eric Russek, Mike McClenan, John Rozsypal, James Few, Wendell Mears, Leon Hrabovsky, and Charles Baron.

Obstruction #1 Differing Site Conditions Claim

1. Plaintiff did not provide evidence of the alleged excessive trash, which deprived the Corps of Engineers Contracting Officer of the opportunity to determine if the trash encountered in fact was excessive.

2. Assuming for the sake of argument that defendant is liable to plaintiff upon the Obstruction #1 differing site conditions claim, the claim nevertheless is overstated by at least $351,000 for the reasons set forth in DCAA Audit Report No. 3511-2003M17200008 dated December 12, 2002, a copy of which has been provided to plaintiff.

Based upon information presently available to defendant, individuals with knowledge of facts relating to the defense numbered 1 above are Eric Russek, Mike McClenan, John Rozsypal, Wendell Mears, Leon Hrabovsky, and Charles Baron.

Obstruction #2 Differing Site Conditions Claim

If defendant is liable to plaintiff upon the Obstruction #2 differing site conditions claim, the claim nevertheless is overstated by at least $131,000 for the reasons set forth in DCAA Audit Report No. 3511-2003M17200008 dated December 12, 2002, a copy of which has been provided to plaintiff.

West Levee Realignment Claim

1. Plaintiff did not construct the West Levee in accordance with the alignment specified by the contract documents.

2. The Corps of Engineers agreed only to a realignment of the West Levee to mitigate the impact of plaintiff's misalignment of the West Levee. Consequently, the realignment of the West Levee is not compensable under the contract's Changes Clause.

3. Plaintiff realigned sections of the West Levee that the Corps of Engineers agreed could remain as initially placed by plaintiff, which resulted in increased costs of performance for which defendant should not be responsible.

4. Plaintiff's damages and delays are overstated because they are based upon rates established for unrelated work, rather than upon actual costs incurred by plaintiff.

5. Plaintiff's claimed increased costs of performance are based upon estimates and are not supported by cost element or pricing data. See DCAA Audit Report No. 3511-2003M17200010 dated December 12, 2002, a copy of which has been provided to plaintiff.

Based upon information presently available to defendant, individuals with knowledge of facts relating to the defenses numbered 1 through 4 above are Eric Russek, Mike McClenan, James Few, Wendell Mears, Leon Hrabovsky and Charles Baron.

<u>Lost Lake Levees Differing Site Conditions Claim</u>

1. The conditions indicated in the contract documents do not differ materially from the conditions encountered by plaintiff that form the basis of this differing site conditions claim. The materials encountered by plaintiff during contract performance were as expected and as indicated in the contract documents, <u>i.e.</u>, soft to very soft dredged material placed during previous dredging cycles.

2. Plaintiff "wasted" a large amount of material suitable for construction of levees, "overmounded" material which had to be relocated by mechanical methods, and, ultimately, caused a shortage of available, suitable levee building material as a result of plaintiff's failures to implement a satisfactory program for monitoring placement of material in the levees and to take timely measures to correct and/or adjust its hydraulic placement of material.

3. Plaintiff did not construct the portions of the levees to be constructed by the hydraulic placement of dredged material in accordance with the alignment specified by the contract documents. Plaintiff subsequently had to realign levees and otherwise place levees by mechanical methods, which increased its costs of performance.

4. There is no causal relationship between plaintiff's allegations of differing site conditions and its claimed damages, which are based upon a modified total cost approach.

5. Plaintiff's modified total cost claim is without merit for the reasons set forth in DCAA Audit Report No. 3511-2003M17200012 dated December 12, 2002, a copy of which has been provided to plaintiff.

Based upon information presently available to defendant, individuals with knowledge of facts relating to the defenses numbered 1 through 4 above are Eric Russek, Mike McClenan, John Rozsypal, James Few, Wendell Mears, Leon Hrabovsky, and Charles Baron.

INTERROGATORY NO. 9: Please state if you contend that Renda should have in any way mitigated the damages Renda seeks in this suit, and, if so, please state for any particular damages Renda seeks the specific manner in which Renda should have mitigated its damages, the amount by which Renda should have mitigated such damages, the calculations for such amount, the identity of any documents in which Renda was advised how to mitigate its damages, and the identity of any persons with knowledge of how Renda should have mitigated such damages.

RESPONSE: Discovery in this litigation has not been completed, and defendant's investigation and/or evaluation of potential defenses to the claims that are the subject of the above captioned action is continuing. Therefore, we reserve the right to supplement or modify the response to this interrogatory, as appropriate, if and when additional information becomes available through discovery, consultation with potential expert witnesses, or otherwise. We further reserve the right to introduce at trial any testimonial, documentary, or other form of evidence of facts yet to be discovered. Subject to those qualifications, defendant states that, as of this time, we are not contending that plaintiff should in any way have "mitigated" the damages sought by plaintiff in this suit.

INTERROGATORY NO. 10: Please state whether you contend that you did not receive timely or adequate notice of any of Renda's claims in this suit, and, if so, please state the particular claim for which you contend you did not receive timely or adequate notice, any and all deficiencies that you allege exist with any such notice, any prejudice you sustained as a result of any such alleged deficiency, and the identity of any persons with knowledge of any such prejudice.

RESPONSE: Defendant contends that plaintiff did not provide the Corps of Engineers contracting officer with timely notice of the alleged differing site condition, as required by the contract. Plaintiff took unilateral action without requesting input or direction from the contracting officer, thereby depriving the contracting officer the opportunity to coordinate or accommodate HL&P's needs in a way that would not have interfered with plaintiff's dredging operations. Individuals with knowledge are Eric Russek, Mike McClenan, John Rozsypal, Wendell Mears, and Leon Hrabovsky.