UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC.,<br>PLAINTIFF, | § | |
| | § | |
| | § | CASE NO. 02-306C |
| V. | § | |
| | § | (JUDGE HEWITT) |
| UNITED STATES ARMY<br>CORPS OF ENGINEERS,<br>DEFENDANT. | §<br>§<br>§ | |

## AFFIDAVIT OF BARRY BRAY

BEFORE ME, the undersigned authority, on this day personally appeared Barry Bray, known to me to be the person whose name is subscribed hereto, who, after being by me first duly sworn, deposed on his oath as follows:

1. "My name is Barry Bray. I am over the age of 21 years and I am competent to make this affidavit. The statements which follow are based on my personal knowledge and are true and correct.

2. " I am the President of Universal Document Solutions, Inc. ("UDS"). UDS provides document and electronic media services to various clients. UDS has the capability of scanning documents and optically character reading their contents. Once the contents of a document have been optically character read, UDS can search the documents for particular words of interest.

3. "UDS also retrieves electronic information from computer hard drives, backup tapes, and e-mail servers.

4. "UDS was retained in connection with this case by Renda Marine, Inc. ("Renda"), to scan documents and to build an electronic document database. During the Summer of 2003, UDS was retained by Renda to retrieve electronic data from the hard drives, backup tapes, and e-mail servers maintained by the United States Army Corps of Engineers, Galveston District ("Corps").

5. "For UDS to perform these tasks, UDS needed cooperation and information from the Corps. Among the more important items that UDS needed was the Corps' backup tape. UDS had requested the backup tape shortly after becoming involved in the assignment. However, despite repeated requests by UDS, the Corps did not provide the backup tape to UDS until December 1, 2003. The Corps had maintained that the backup tape was corrupted and could not be restored.

6. "After the Corps provided UDS with information about the software used to backup the information on the tape, UDS restored the backup information in a couple days.

7. "Once the backup tape was restored, UDS needed search terms to query the restored information and the other electronic information that the Corps provided. The search was intended to locate documents and information relevant to the issues and project in question. The assembly of search terms required input from the Corps.

8. "On December 11, 2003, Alex Petty, Chief Counsel for the Corps, provided an abbreviated search term list. It then took some time to coordinate with the Corps the listing of search terms that UDS would actually employ. In early January 2004, the listing of search terms was compiled and UDS then completed its search query on the electronic data, and located the relevant documents and information.

9. "UDS then had to coordinate with the Corps concerning how the Corps would review the restored documents and information for privileges. UDS strongly suggested that the documents be provided electronically to the Corps. However, the Corps insisted that the documents and information be printed out on paper for the Corps' review, and that the documents be printed out by the search term used to locate the document. I protested that printout by search terms would increase the number of pages from about 38,000 to more than 80,000. This increase was due to most documents being located by more than one search term. When the Corps insisted on the printout by search term, UDS began the process of printing the documents organized by search term. UDS

initially provided four boxes of documents to the Corps for the Corps' review. These documents were Bates numbered sequentially, and constituted only a partial printout of the restored documents.

10. "The Corps noticed the number of numerous duplicates of documents. We then agreed to printout the remaining documents without regard to search terms. The remaining documents were also Bates numbered sequentially, following the last number in the original four boxes. The remaining documents were shipped to the Corps in about eight or nine boxes in early February 2004.

11. "The documents that UDS printed out and shipped to the Corps were Bates stamped in numerical sequence.

12. "In April 2004, the Government shipped five boxes of documents to Renda's attorney containing documents that the Government indicated could be disclosed to Renda. At that time, the Government did not indicate how many of the seven or eight boxes not shipped to Renda's attorney were privileged from discovery.

13. "Recently, the Government provided a privileged index log of documents. The log contained about 426 documents.

14. "I have personally reviewed a significant number of documents not on the privileged index log, and not in the five boxes that the Government produced to Renda's attorney. The documents appear to be relevant to the issues in this litigation. I know of no reason why the Government is not allowing Renda to review these documents."

Further Affiant sayeth not.

BARRY BRAY

SUBSCRIBED AND SWORN TO BEFORE ME on this 14th day of April, 2004, by Barry Bray.

CHERYL MOSELEY
Notary Public, State of Texas
My Commission Expires
August 31, 2004

Cheryl Moseley
Notary Public - State of Texas