No. 02-306C
(Judge Hewitt)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

RENDA MARINE, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-0282
(fax) (202) 514-8624

Attorneys for Defendant

OF COUNSEL:

MR. P. ALEX PETTY
Assistant District Counsel
Office of Counsel
Galveston District
U.S. Army Corps of Engineers
Galveston, TX

APRIL 30, 2004

## TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . 1

DISCOVERY BACKGROUND . . . . . . . . . . 3

I. Renda's November 2002 Discovery Request And The Government's Response . . . . . . . . . . 3

II. Discovery By Renda Of Army Corps Of Engineers Electronic Materials . . . . . . . 5

ARGUMENT . . . . . . . . . . 7

I. At This Late Stage Of The Proceedings, Should The Government Be Required To Retrieve From Records Storage Facilities And Produce Materials For Dredg-ing Projects In The Upper Bayou Reach Of The Houston Ship Channel During The 12-Year Period From 1987 To 1999? . . . . . . 7

II. Should The Government Be Required To Produce Electronic Materials Not Within the Scope Of What The Parties Agreed The Government Would Produce? . . . . . . . . . . 10

A. Materials That Are Not "Responsive Documents" Under The Agreement . . . . . . . . . . 10

B. The Privileged Documents . . . . . . . . . . 12

(1) E-Mail From Corps Attorney To Corps Employee Re: This Litigation . . . . . . . . . . 12

(2) E-Mails Between Corps Attorneys And from Corps Attorney To Corps Employee Re: FOIA Request By Renda's Counsel Concerning The Upper Bayou Project . . . . . . . . . . 15

(3) E-Mails Prepared By Consultant Retained By Government To Assist Defendant's Counsel With Defense Of This Case . . . . 15

(4) E-Mails Between Corps Attorneys And Corps Employees Re: Legal Advice . . . . . . . . . . 16

(5) E-Mails Between Corps Employees That Discuss Communi-cations Between Corps Attorneys And Government Auditors . . 17

**TABLE OF CONTENTS (CONT'D)**

III. Is An Order By The Court Directing The Government To Compensate Renda's Information Technology Consultant For Services Performed Relative To The Discovery By Renda Of Corps Computer Back-Up Tapes Warranted? . . . . . 18

CONCLUSION . . . . . 19

# TABLE OF AUTHORITIES

## FEDERAL CASES

*B.E. Meyers & Co. v. United States*, 41 Fed. Cl. 729 (1998) . . . . . . . . . . . . . . . . . . . . . 13

*Chubb Integrated Systems Ltd. v. National Bank of Washington*, 103 F.R.D. 52 (D.D.C. 1984) .......................................................................... 14

*Continental Industries, Inc. v. Integrated Logistics Solutions LLC*, 211 F.R.D. 442 (N.D. Okla. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,9

*Deuterium Corp. v. United States*, 19 Cl. Ct. 697 (1990) . . . . . . . . . . . . . . . . . . . . . . 13

*Eagle-Picher Industries, Inc. v. United States*, 11 Cl. Ct. 452 (1987) . . . . . . . . . . . . 13,14

*Oneida, Ltd. v. United States*, 43 Fed. Cl. 611 (1999) .................................................. 14

*Transamerica Products Corp. v. Monsanto Chemical Co.*, 26 F.R.D. 572 (S.D.N.Y. 1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. AT&T Corp.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980) .......................... 14

## FEDERAL STATUTES

Public Laws:

Contract Disputes Act of 1978, as amended (41 U.S.C. §§ 601-13) . . . . . . . . . . . . . . . . 1

## MISCELLANEOUS

RCFC 26(b)(3) ............................................................................................................ 14

Fed.R.Civ.P. 37 ............................................................................................................ 8

## INDEX TO DEFENDANT'S APPENDIX


| Document | Page |
|---|---|
| Excerpt from "Defendant's Responses to Plaintiff's First Set of Interrogatories" dated January 3, 2003 | 1 |
| Excerpt from "Defendant's Responses to Requests Nos. 15, 27, and 28 of Plaintiff's First Request for Production of Documents" dated January 3, 2003 | 6 |
| "Agreement Regarding Scope of Electronic Discovery" filed on July 29, 2003 | 12 |
| Letter dated March 22, 2004, from defendant's counsel to plaintiff's counsel | 23 |
| Letter dated April 9, 2004, from defendant's counsel to plaintiff's counsel | 24 |
| Letter dated April 13, 2004, from defendant's counsel to plaintiff's counsel | 25 |
| Letter dated April 13, 2004, from plaintiff's counsel to defendant's counsel | 26 |
| Letter dated April 22, 2004, from defendant's counsel to plaintiff's counsel | 29 |
| Excerpt from transcript of March 18, 2004 telephonic hearing | 31 |
| March 2004 Privileged Documents Log (Corps of Engineers – Electronic Discovery Documents) | 35 |
| Copies of Redacted Documents from March 2004 Privileged Documents Log: | |
| Document No. 13 | 56 |
| Document No. 74 | 58 |
| Document No. 87 | 63 |
| Document No. 88 | 65 |
| Document No. 90 | 66 |
| Document No. 91 | 68 |
| Document No. 92 | 70 |
| Document No. 4 | 75 |
| Document No. 75 | 76 |
| Document No. 80 | 78 |
| Document No. 81 | 80 |
| Document No. 86 | 81 |
| Document No. 15 | 82 |
| Document No. 23 | 84 |
| Document No. 27 | 85 |
| Document No. 45 | 88 |
| Document No. 107 | 90 |
| Document No. 116 | 92 |

**INDEX TO DEFENDANT'S APPENDIX (CONT'D)**


**Document** **Page**

Copies of Redacted Documents from March 2004 Privileged Documents Log (cont'd):

Document No. 40 .......... 96
Document No. 6 .......... 97
Document No. 67 .......... 98
Document No. 93 .......... 99
Document No. 104 .......... 101

Letter dated April 22, 2003, from defendant's counsel to plaintiff's counsel .......... 102

Declaration of John E. Kosloske dated April 28, 2004 .......... 104

Chronology of Electronic Discovery Activity
prepared by Universal Document Solutions .......... 110

Invoice No. 402099BB dated February 6, 2004, for $72,981.93
from Universal Document Solutions .......... 111

Invoice No. 402098AR dated February 12, 2004, for $2,273.17
from Universal Document Solutions .......... 112

Declaration of Deborah Barbour dated April 28, 2004 .......... 113

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 02-306C |
| v. | ) | |
| | ) | (Judge Hewitt) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

PRELIMINARY STATEMENT

This case involves claims governed by the Contract Disputes Act of 1978, as amended (41 U.S.C. §§ 601-13), arising under or relating to Contract No. DACW64-99-C-0001 between plaintiff, Renda Marine, Inc. (Renda) and the United States, acting through the Army Corps of Engineers, Galveston, Texas District, to dredge reach of the Galveston-Houston Ship Channel known as the Upper Bayou and to construct containment levees and other structures at the Lost Lake Placement Area for dredged material. The contract is referred to in the complaint and other documents as the "Upper Bayou Project." In its most recent statement of damages, Renda seeks to recover approximately $13.38 million in the aggregate, based upon differing site conditions allegedly encountered by Renda while performing the Upper Bayou Project.

A three-week trial in this case is set to begin on June 15, 2004, in Houston, Texas. On April 14, 2004, three months after the deadline of January 14, 2004, established by the Court for completing discovery and just two months before the scheduled start of trial, Renda filed another discovery motion in this case.[1/] The motion to compel should be denied.

[1] See "Motion by Plaintiff, Renda Marine, Inc., to Compel" filed on April 14, 2004. In this opposition, "Pl. Mot. ____" refers to the referenced page(s) of that motion to compel and "Def. App. ____" refers to the referenced page(s) of the appendix accompanying this opposition to it.

Renda's motion concerns two aspects of discovery in this case. The first is an interrogatory propounded by Renda to the Government in November 2002 seeking information about "borrowing or excavating" operations by anyone within the area of the Upper Bayou Project during the 15-year period from 1987 to 2002. In the Government's January 3, 2003 response to that interrogatory, we advised Renda that, for the years 1987 to 1999, documents for contracts listed by the Government in response to another of Renda's document production requests might contain the information sought by Renda. The Government offered to produce those materials for Renda's examination "at a mutually convenient time and place." Renda's counsel, however, did not contact defendant's counsel about production of those materials until fifteen months later on April 14, 2004, three months after the deadline for completing fact discovery set by the Court.

The second area of discovery addressed by Renda's motion to compel is discovery by Renda of electronic mail messages and other electronic material that is covered by an "Agreement Regarding Scope of Electronic Discovery" between Renda and the Government filed with the Court in July 2003. The Agreement limits Renda's access to "responsive documents" contained in certain electronic media maintained by Army Corps of Engineers Galveston District that are not privileged or otherwise exempt from disclosure. Renda seeks production of documents generated by a search of those electronic materials that are either privileged, not "responsive," or both.

In addition, Renda seeks an order from the Court that would require the Government to compensate Renda's information technology consultant, Universal Document Solutions (UDS), for services performed relative to this electronic discovery. No such order is warranted, however, because the Government has paid the invoices received from UDS. As matter of fact, in early

April 2004, *before* Renda's motion to compel was filed, a representative of the Corps spoke with Mr. Barry Bray, President of UDS, and he acknowledged that payment had been made.

## DISCOVERY BACKGROUND

### I. Renda's November 2002 Discovery Request And The Government's Response

On or about November 1, 2002, Renda served the Government with a first set of interrogatories. Interrogatory No. 5 requested that the Government "state the identity of any persons who have borrowed or excavated material from the area of the Upper Bayou Project at any time in the last 15 years, the date(s) of any such borrowing or excavating, the approximate amount of material borrowed or excavated, the identity of each person with knowledge of any such material borrowed or excavated, and the identity of any documents pertaining to or reflecting any such material borrowed or excavated." On January 3, 2003, the Government responded to this interrogatory as follows:

> Plaintiff (various individuals) borrowed or excavated material from the Lost Lake Placement Area between 1998 and 2001. Defendant does not know the exact amount of material that plaintiff borrowed or excavated from the Lost Lake Placement Area. However, we believe that it exceeds several thousand yards. Persons with knowledge include Eric Russek, Mike McClenan, Tim Few, Wendell Mears, Leon Hrabovsky, Charles Baron, Eddie Fisher, Steve Bowman, Rudy Renda. Relevant documents include plaintiff's daily reports.
>
> Additionally, Corps of Engineers contracts for dredging work performed in the area of the Upper Bayou Project during the period from 1987 to 1999 are listed in the document at Tab B to "Defendant's Responses to Requests Nos. 15, 27, and 28 of Plaintiff's First Request for Production of Documents" dated January 3, 2003. In defendant's response to document production requests 27 and 28, we have offered to produce documents relating to those contracts for plaintiff's inspection at a mutually convenient time and place. Those documents may contain information requested by this interrogatory.

> Pursuant to RCFC 33(d), we will produce the documents for plaintiff's examination at a mutually convenient time and place.

Def. App. 3.

In Document Requests Nos. 27 and 28, referred to in the Government's response to Interrogatory No. 5 quoted above, Renda requested that the Government produce documents relating to "[a]ny surveys, soundings, evaluations, or results from previous projects in the area of the Upper Bayou Project" and "[a]ny records or documents concerning any dredging, borrowing, deposits, filling, surveying, or other activity in the area of the Upper Bayou Project prior to the issuance of the notice to proceed with construction of the Upper Bayou Project." On January 3, 2003, the Government responded to those discovery requests as follows:

> Corps of Engineers contracts for dredging work performed in the area of the Upper Bayou Project during the period from 1949 to 1999 are listed in the spreadsheet at Tab B. Documents relating to those contracts, which may contain information responsive to this production request, are stored at facilities in Galveston and Fort Worth, Texas. Defendant will produce those materials for plaintiff's inspection at a mutually convenient time and place.

Def. App. 7, 8.

The spreadsheet at Tab B referred to in the Government's responses to Renda's Interrogatory No. 5 and Document Requests 27 and 28 is a list of forty-one dredging contracts performed in the area of the Upper Bayou Project during the 50-year period from 1949 to 1999. See Def. App. 10. This spreadsheet provides, for each listed contract, the contract number, dredging contractor, the start and finish dates of work, contract type (i.e., new work dredging, maintenance dredging, or levee rehabilitation), the reach of the Houston Ship Channel in which the dredging occurred, and total pay volume of dredged materials. The spreadsheet lists eight contracts per-

formed during the period from 1987 to 1999.

II. Discovery By Renda Of Army Corps Of Engineers Electronic Materials

Renda and the Government entered into an "Agreement Regarding Scope of Electronic Discovery" (Agreement), which was filed on or about July 25, 2003, and approved by the Court. See Def. App. 12-22. The Agreement provided that Universal Document Solutions (UDS), an information technology consultant retained by Renda, would retrieve "responsive documents" from electronic files contained on the hard drives of the personal computers of four employees of the Corps of Engineers Galveston District (Corps) and from e-mail or other documents located on the Corps' e-mail server or computer backup tapes sent, received, or prepared by specified Corps employees. Agreement, ¶ ¶ 2,3, Def. App. 13. For purposes of the Agreement, "responsive documents" means "e-mail or other documents sent, received, prepared by Thomas Benero, C. Michael McClenan, Johnny Rozsypal, or Luis Saenz or any of the persons listed in defendant's answer to Interrogatory No. 1 that contains, in whole or in part, information relating to the Upper Bayou Project or any of Renda's claims or the Government's defenses to Renda's claims in the above captioned action." Agreement, ¶ 1.6, Def. App. 12-13. The term "Upper Bayou Project" is defined by the Agreement to mean "Contract No. DACW64-99-C-0001 between Renda and the [Government] including, without limitation, the design, administration, or the performance of work by Renda or any subcontractor under that contract." Agreement, ¶ 1.7, Def. App. 13.

The Agreement contemplates that UDS will "provide the Government with all responsive documents retrieved by [UDS] for a review by the Government for information or documentation that is privileged or otherwise exempt from discovery." Agreement, ¶ 4, Def. App. 14. The Government is allowed 30 days to complete the privilege review, if the volume of responsive docu-

ments does not exceed 5,000 pages and 60 days or more if the volume of responsive documents exceeds 5,000 pages. Id.

In mid-February 2004, UDS provided the Government with 30,000 pages of material for review. Kosloske Declaration, ¶ 9, Def. App. 106. We reviewed those documents and, on March 22, 2004, shipped by overnight mail to Renda's counsel the non-privileged "responsive documents" in that collection, as defined by the Agreement. Def. App. 23. On April 9, 2004, we provided Renda with a privileged documents log that listed 139 documents withheld by the Government from production, in whole or in part, as exempt from discovery. Def. App. 24. On April 13, 2004, we sent to Renda redacted copies of documents listed on that log that are not wholly exempt from discovery, which constitute the vast majority of the documents enumerated on the log. Def. App. 25.

On April 13, 2004, Renda's counsel sent a letter to defendant's counsel contending that 49 of the documents listed on the Government's privileged documents log are not exempt from discovery and requesting that they be produced "in their entirety" without redactions. Def. App. 26-28. The Government responded to Renda's counsel's letter on April 22, 2004. Def. App. 29-30. We advised Renda that we had decided to remove our claim of exemption(s) with respect to 25 of the 49 documents challenged by Renda (Document Nos. 7-10, 12, 17, 33-37, 41-43, 46, 47, 55, 109, 126, 127, and 133-137) and we provided Renda's counsel with complete copies of those documents. Id.[2] The Government declined, however, to withdraw our objection to disclosure of the balance of the documents, i.e., Document Nos. 4, 6, 13, 15, 23, 27, 40, 45, 67, 73-75, 80, 81,

---

[2] The released documents are e-mails to which are attached one or the other of two e-mail messages from which the Government had redacted one paragraph in each instance.

86-88, 90-93, 104, 107, and 116. Id.

ARGUMENT

I. At This Late Stage Of The Proceedings, Should The Government Be Required To Retrieve From Records Storage Facilities And Produce Materials For Dredging Projects In The Upper Bayou Reach Of The Houston Ship Channel During The 12-Year Period From 1987 To 1999?

In the Government's January 3, 2003 responses to Renda's discovery requests, we stated that documents relating to forty-one dredging contracts performed during the 50-year period from 1949 to 1999 discussed above are located at storage facilities in Galveston and Fort Worth, Texas, and the Government advised Renda that we would produce those materials for Renda's inspection at a mutually convenient time and place. During the next fifteen months, however, Renda's counsel never once contacted defendant's counsel about these materials or to arrange for an inspection of the documents or any part of them. Kosloske Declaration, ¶ 7, Def. App. 106. Defendant's counsel assumed that Renda's counsel had determined not to pursue that line of discovery any farther, perhaps because of the burden that examination of materials for forty-one dredging contracts would entail. Id. The January 14, 2004 deadline established by the Court for completing fact discovery passed without Renda's counsel having raised with the Court or defendant's counsel anything relative to the Government's response to Renda's Interrogatory No. 5 or the discovery that is the subject of Renda's Interrogatory No. 5.[3/]

---

[3] The Government's first inkling that Renda was dissatisfied with our response to Interrogatory No. 5 was during the March 18, 2004 telephonic hearing in this case, when Renda's counsel was addressing a motion by Renda to compel the Government to comply with tardy interrogatories relating to side cast borrow areas at the Lost Lake Placement Area, which the Court did not grant. Renda's counsel complained that, in its January 3, 2003 response to Interrogatory No. 5, "[t]he Government responded, dancing around," that "finally, the Government says, pursuant to [Rule 33(d)], they'll produce documents for [Renda's] examination at a time mutually convenient and a place," and that Renda "never got any documents." Transcript of March 18, 2004 hear-

While the Government did not oppose production of documents relating to other dredging contracts for the 12-year period from 1987 to 1999 15 months ago in January 2003, we do object to having to produce those records now because it would interfere with our preparations for the three-week trial scheduled in this case set to start June 15, 2004, consuming precious time and resources needed to prepare for trial under a pretrial schedule characterized by this Court in the January 15, 2004 telephonic conference held in this case as "aggressive." It is important to note that we are not dealing here with a half-inch file of readily-obtainable material that could be produced overnight. Rather, we are dealing with a request for production of *all* documents relating to eight dredging projects that must be retrieved from Government records storage centers.[4/]

In circumstances similar to the situation in this case, courts have disallowed motions to compel responses to discovery requests. For example, in Continental Industries, Inc. v. Integrated Logistics Solutions LLC, 211 F.R.D. 442 (N.D. Okla. 2002), the plaintiff requested in April 2001 that the defendant produce certain documents, to which defendant objected in May 2001. The discovery cutoff in that case was May 31, 2002. The plaintiff waited until November 2002 to file a motion to compel the requested discovery. The court denied the motion to compel, noting that "[a]lthough Fed.R.Civ.P. 37 does not specify any time limit within which a Motion to Compel must be brought, courts have made it clear that a party seeking to compel discovery

---

ing, at 50-51, Def. App. 32-33. To which the Court responded: "I hear that, but I guess I still don't understand . . . how this year has been able to go by without either depositions being taken or this matter being ground down a little bit more finely." Id., at 51-52, Def. App. 33-34.

[4] It is not even clear that, if the Court were to grant Renda's motion to compel, the Government could retrieve the documents before the start of trial or in time for Renda to undertake any meaningful review of the materials, let alone make any intelligent use of them at trial. May 19, 2004 is the deadline fixed by the Court for filing amended trial exhibit lists in this case.

must do so in timely fashion." 211 F.R.D. at 444. The court observed that "[i]t is especially important that a party file its motion before discovery cutoff" and that "the movant not wait to file its motion until the eve of trial." Id. Finding that the plaintiff had "waived" any discovery violations "through unreasonable delay," the court stated that the plaintiff had "run afoul" of both pronouncements: "Plaintiff has known about this discovery dispute for 18 months, but taken no remedial action. Now, on the eve of trial and well after discovery cutoff, Plaintiff seeks to compel production." Id. Moreover, the court concluded, "allowing the motion to compel at this point would divert the parties' attention from trial preparation in a case that has been on file for more than two years," which would be "unfair to the Defendants." Id.

In the present case, the Government stated in January 2003 that it would produce the dredging contracts materials described above at a mutually convenient time and place, noting that the documents are located at records storage facilities in Galveston and Fort Worth, Texas. Renda, however, did not approach the Government about arrangements for production of those materials until 15 months later in April 2004, three months after the discovery cutoff in this case and just two months before the start of trial in this case. Renda has offered no explanation for its failure to raise this discovery issue with the Court or the Government well before the discovery cutoff in this case. To grant Renda's untimely motion and permit the requested discovery at this late stage of the proceedings would substantially prejudice the Government by diverting our attention from preparations for the June 2004 trial. By its unreasonable delay in pursuing this discovery, Renda waived any discovery violation by the Government. Renda's motion to compel production of documents relating to dredging contracts performed in the area of the Upper Bayou Project during the 1978-1999 time frame, therefore, should be denied.

II. Should The Government Be Required To Produce Electronic Materials Not Within the Scope Of What The Parties Agreed The Government Would Produce?

A. Materials That Are Not "Responsive Documents" Under The Agreement

Renda requests that the Court order the Government to produce the part of the 30,000 pages of electronic documents that the Government withheld from production as not "responsive" within the meaning of the Agreement, less the "truly privileged documents." Pl. Mot. 6. Renda implies that the materials not produced in fact are "responsive documents" under the Agreement. We disagree.

As discussed above, the standard of relevance established by the parties for purposes of the discovery of the Corps' e-mails and other electronic documents contained on hard drives of personal computers and computer backup tapes is "e-mail or other documents sent, received, prepared by Thomas Benero, C. Michael McClenan, Johnny Rozsypal, or Luis Saenz or any of the persons listed in defendant's answer to Interrogatory No. 1 that contains, in whole or in part, information relating to the Upper Bayou Project or any of Renda's claims or the Government's defenses to Renda's claims in the above captioned action." Agreement, ¶ 1.6, Def. App. 12-13.

To generate the 30,000 pages of material provided the Government for review, Renda's information technology consultant, UDS, conducted a search of the database of documents it created using broad search terms that were not tailored to retrieve only "responsive documents" within the meaning of the Agreement. For example, UDS used terms such as "levee," names of places such as "lost lake," names of firms such as "renda" and "great lakes," and names of individuals such as "barry smith" (a Renda consultant), "eddie fisher" (a Renda employee), "mears" (a representative of the Port of Houston Authority), and "alan jefts" (a PHA representative), without

linking those queries to the Upper Bayou Project. See Barbour Declaration, ¶ 5, Def. App. 114-115. The failure to construct search terms that are linked to the Upper Bayou Project is significant because Renda has been involved with several other dredging projects in the Corps' Galveston District besides the Upper Bayou Project, including, during the general time frame of the Upper Bayou Project, the Lower Bay, Boggy Bayou, Chocolate Bayou, and Sims Bayou projects. Kosloske Declaration, ¶ 5, Def. App. 105. Similarly, while Great Lakes Dredge & Dock Co. protested the award of the Upper Bayou Project to Renda, Great Lakes was the prime contractor for the Lower Bay Project in which Renda was a subcontractor.

The Port of Houston Authority (PHA), which is a co-sponsor with the Government of the overall project to widen and deepen the Galveston-Houston Navigation Channels responsible for a share of the costs of that endeavor, is involved in one capacity or another in all of the dredging contracts that are a part of the overall project, not just the Upper Bayou Project. Kosloske Declaration, ¶ 6, Def. App. 105-106. It should come as no surprise, therefore, that UDS's search of the data base of documents it created from the Corps' computer back-up tapes using names of PHA representatives without linking the names to the Upper Bayou Project generated materials that are not "responsive documents" within the meaning of the Agreement.

The materials generated by the search terms used by UDS thus contain a large volume of documents that are not "responsive documents" within the meaning of the Agreement. Under the Agreement, the Government has a right to withhold such materials from production.

In an affidavit appended to Renda's motion to compel, Barry Bray, President of UDS (Renda's information technology specialist), asserts that he "reviewed" a "significant number" of the documents withheld by the Government as not "responsive" within the meaning of the

Agreement and that "the documents appear to be relevant to the issues in this litigation." Bray Affidavit, ¶ 14. Mr. Bray, however, does not identify the documents he reviewed, much less the documents that "appear to be relevant to the issues in this litigation." Nor does Mr. Bray define what he means by "relevant" or identify the "issues" to which the documents he reviewed purportedly relate. The question, moreover, is not whether the withheld documents are in some sense "relevant to issues in the litigation," but whether they fall within the definition of "responsive documents" under the Agreement. Renda, therefore, has not demonstrated that, apart from the documents listed on the Government's privileged documents log, any of the documents withheld by the Government from production are "responsive documents" under the Agreement.

B. The Privileged Documents

As noted above, the Government objects to production of the following documents on the Government's privileged documents log challenged by Renda: Document Nos. 4, 6, 13, 15, 23, 27, 40, 45, 67, 73-75, 80, 81, 86-88, 90-93, 104, 107, and 116. Except for Document No. 73, which has been withheld in its entirety, only portions of the documents have been withheld from production. Redacted copies of those documents are contained in the appendix accompanying this opposition to Renda's motion to compel. These documents may be divided into five groups for purposes of analysis.

(1) E-Mail From Corps Attorney To Corps Employee Re: This Litigation

Document No. 13 is a June 1, 2003 e-mail message from Johnny Rozsypal of the Corps. Attached to that e-mail is a May 27, 2003 e-mail message from Alex Petty, an attorney with the Corps assigned to the Corps' Galveston District office, to Messrs. Benero, Rozsypal, Saenz, and McClenan, all of whom are Corps employees. See Def. App. 56-57. The message concerns the

restoration and review of the e-mail of those employees for purposes of this litigation. Copies of Mr. Petty's e-mail were sent to two other Corps employees in the Galveston District's information technology organization and to John Kosloske, defendant's counsel, and George J. Strickler, P.E., a consultant retained by the Government to assist defendant's counsel with the defense of this litigation. See Kosloske Declaration, ¶ 3, Def. App. 104.[5]

The part of Document No. 13 that has been redacted is privileged from disclosure by the attorney-client privilege and/or the work product doctrine. The attorney-client privilege "attaches to communications made by a client, or a person seeking to be a client, to an attorney outside the presence of third parties for the purpose of securing legal services." B.E. Meyers & Co. v. United States, 41 Fed. Cl. 729, 731 (1998). The privilege "extends to legal advice by the attorney, not only confidential communications by the client," Eagle-Picher Industries, Inc. v. United States, 11 Cl. Ct. 452, 456 (1987), and it applies to communications with Government employees "at all levels," not just to communications with high-ranking Government officials. Deuterium Corp. v. United States, 19 Cl. Ct. 697, 700 (1990). The redacted part of Document No. 13 is a confidential communication from a Corps attorney to his clients, Corps employees, outside the presence of strangers. The e-mail is even preceded by cautionary language: "Attorney-Client Privileged Material;" "Attorney Work Product;" and "Do Not Release Under FOIA or in Discovery." Therefore, the redacted part of Document No. 13 is privileged from disclosure by the

---

[5] George Strickler is affiliated with the consulting firm of Capital Project Management, Inc. He has been retained by the Government to provide defendant's counsel with litigation support services for this case, including assistance with: (1) development of defenses to Renda's claims; (2) discovery tasks in this case; (3) identification and selection of potential expert witnesses for this case and evaluation of their work product; and (4) assistance with trial preparation tasks for this case. Kosloske Declaration, ¶ 3, Def. App. 104-105.

attorney-client privilege.

The part of Document No. 13 that has been redacted is also privileged from disclosure under the work product doctrine. The work product doctrine, codified at RCFC 26(b)(3),[6] establishes a qualified privilege for materials prepared by counsel in anticipation of litigation or for trial and offers special protection to "opinion work product," which includes the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning litigation." Oneida, Ltd. v. United States, 43 Fed. Cl. 611, 618 & n.13 (1999). "The purpose of the work product doctrine is to protect information against opposing parties, rather than against all others outside a particular confidential relationship, in order to encourage effective trial preparation." United States v. AT&T Corp., 642 F.2d 1285, 1299 (D.C. Cir. 1980). Only disclosures that are "inconsistent with the adversary system" waive the protection of the work product doctrine. Chubb Integrated Systems Ltd. v. National Bank of Washington, 103 F.R.D. 52, 63 (D.D.C. 1984). Thus, "[t]he type of disclosure that will work a waiver typically is made to an adversary." Eagle-Picher, 11 Cl. Ct. at 461; accord Sparton Corp. v. United States, 44 Fed. Cl. 557, 564 (1999) ("The protections of the attorney work product doctrine may be waived if an otherwise discoverable item is voluntarily disclosed to an adversary in the litigation

---

[6] Rule 26(b)(3) provides, in pertinent part, that "a party may obtain discovery of documents and tangible things otherwise discoverable under [RCFC 26(b)(1)] and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."

or in a manner inconsistent with the adversary system.").

The redacted part of Document No. 13 was created by a Corps attorney in connection with this litigation and Renda does not suggest that this work product was disclosed to Renda or in any other manner that is inconsistent with the adversary system. Therefore, it is also privileged from disclosure under the work product doctrine.

(2) E-Mails Between Corps Attorneys And from Corps Attorney To Corps Employee Re: FOIA Request By Renda's Counsel Concerning The Upper Bayou Project

The redacted parts of Document Nos. 74, 87, 88, 90, 91, and 92 are e-mail messages between Corps attorneys (Thomas H. Moore, Chief Counsel, Office of Counsel, Galveston District; Edward V. Herrington, Assistant District Counsel, Office of Counsel, Galveston District; and Ruben R. Villagran, Paralegal, Office of Counsel, Galveston District) and e-mail messages from Mr. Herrington to Corps employees Benero and McClenan concerning a Freedom of Information Act request by Renda's counsel for documents relating to the Upper Bayou Project. See Def. App. 58-74; Kosloske Declaration, ¶ 4, Def. App. 105. These communications are protected by both the attorney-client privilege and work product doctrines. The disclosure of this work product to George Strickler is not inconsistent with either the attorney-client privilege or the work product doctrine. As noted above, Mr. Strickler is a consultant retained by the Government for the purpose of assisting defendant's counsel with the defense of this litigation. See Kosloske Declaration, ¶ 3, Def. App. 104.

(3) E-Mails Prepared By Consultant Retained By Government To Assist Defendant's Counsel With Defense Of This Case

The redacted parts of Document Nos. 4, 75, 80, 81, and 86 and Document No. 73 in its entirety are e-mails from George Strickler to Corps employees that concern this litigation. See

Def. App. 75-81. As noted above, Mr. Strickler is a consultant retained by the Government to provide litigation support services to defendant's counsel in this litigation. See Kosloske Declaration, ¶ 3, Def. App. 104. For purposes of this litigation, Mr. Strickler's e-mails (and other communications with Corps employees are protected by the attorney-client privilege, which protects communications to and from an attorney's representative as well as communications to and from the attorney. Mr. Strickler's e-mails are also protected by the work product doctrine, which extends not just to attorney work product, but also to the work product of other representatives of a party prepared in anticipation of litigation or for trial. RCFC 26(b)(3). Mr. Strickler's e-mails, therefore, are exempt from disclosure by the attorney-client privilege and the work product doctrine.[7]

(4) E-Mails Between Corps Attorneys And Corps Employees Re: Legal Advice

The redacted parts of Document No. 15 are an e-mail message from Corps employee Johnny Rozsypal to Corps attorney Daniel Keys seeking legal advice and a response by Mr. Keys to that communication. See Def. App. 82-83. The communication by Mr. Rozsypal is protected by the attorney-client privilege and the response by Mr. Keys is protected by both the attorney-client privilege and the work product doctrine.

---

[7] A year ago, in April 2003, the Government informed Renda of the nature of Mr. Strickler's involvement in the present litigation and our position that communications between counsel and Mr. Strickler are exempt from disclosure by the attorney-client privilege and/or the work product doctrine and that disclosure of communications between counsel and Government employees to Mr. Strickler does not result in a waiver of either of those privileges. See April 21, 2003 letter from defendant's counsel to Renda's counsel, Def. App. 102-103. Renda's counsel did not express any disagreement with the position of the Government set forth in the April 2003 correspondence until a year later in April 2004, when the pending motion to compel was filed.

The redacted part of Document No. 23 is part of an e-mail message by Thomas Benero, the Contracting Officer in this case, in which Mr. Benero requests the advice of Mr. Keys upon a matter. See Def. App. 84. The communication by Mr. Benero is protected by the attorney-client privilege.

The redacted parts of Document Nos. 27, 45, 107, and 116 are an e-mail message from Corps employee Tim Few, P.E., to Mr. Keys seeking legal advice and Mr. Keys's response. See Def. App. 85-95. The communication by Mr. Few is protected by the attorney-client privilege and the response by Mr. Keys is protected by both the attorney-client privilege and the work product doctrine.

The redacted part of Document No. 40 is an e-mail message from Mr. Keys to Corps employees McClenan (Administrative Contracting Officer in this case), Russek (Project Engineer for the Upper Bayou Project), and Dalton Krueger (Project Manager) conveying legal opinions by Thomas Moore, Chief Counsel, Office of Counsel, Galveston District. See Def. App. 96. The communication by Mr. Keys is protected by both the attorney-client privilege and the work product doctrine.

(5) E-Mails Between Corps Employees That Discuss Communications Between Corps Attorneys And Government Auditors

The redacted parts of Document Nos. 6, 67, 93, and 104 concern an e-mail message dated May 13, 2002, from Corps employee Michael Rawls to Corps employee Johnny Rozsypal. See Def. App. 97-101. The Government has redacted parts of that e-mail message that concern statements made by Daniel Keys, a Corps attorney, to Government auditors regarding Renda's claims and the related litigation, including Mr. Keys's impressions and opinions about those matters and

the Government's case. The fact that oral communications or conversations instead of written materials are involved does not preclude application of the work product doctrine. Transamerica Products Corp. v. Monsanto Chemical Co., 26 F.R.D. 572, 579 (S.D.N.Y. 1960) ("There should be no essential difference between an exchange of written legal memoranda among attorneys and one of ides and opinions developed during conversations or conferences."). The statements by Mr. Keys, therefore, are protected by the work product doctrine.

The Government has appended to this opposition to Renda's motion to compel copies of the redacted documents produced for Renda discussed above. If, to resolve the Government's privilege claims, the Court needs to review copies of those documents without the redactions, we would be happy to provide those documents to the Court for an *in camera* inspection by the Court.

III. Is An Order By The Court Directing The Government To Compensate Renda's Information Technology Consultant For Services Performed Relative To The Discovery By Renda Of Corps Computer Back-Up Tapes Warranted?

Renda seeks an order from the Court that would require the Government to compensate Renda's information technology consultant, UDS, for services performed relative to discovery of the Corps' computer back-up tapes. Pl. Mot. 1, 7, 8. According to Renda, the Government "has thus far ignored" UDS's "invoices." Pl. Mot. 7. We disagree.

To date, the Government has received two invoices from UDS for services provided by UDS with respect to discovery of the Corps' computer back-up tapes: Invoice No. 402099BB dated February 6, 2004, for $72,981.93, and Invoice No. 402098AR dated February 12, 2004, for $2,273.17. See Def. App. 111-112; Kosloske Declaration, ¶ 12, Def. App. 107-108.

On April 26, 2004, the Corps advised defendant's counsel that, on March 29, 2004, the Government issued a check to UDS in the amount of $75,225.10, and that, in early April 2004, Ms. Lynette K. Mills, an Administrative Support Assistant with the Corps' Galveston District, spoke with Barry Bray, the President of UDS, who acknowledged that this payment had been made. Kosloske Declaration, ¶ 13, Def. App. 108. Significantly, the affidavit of Mr. Bray filed by Renda does not address UDS invoices for services relating to production of computer back-up tapes, much less assert that the Government has not paid any such invoices. Renda's application for an order directing the Government to pay invoices of its consultant, UDS, therefore, should be denied.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to compel should be denied.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/John E. Kosloske
JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-0282
(fax) (202) 514-8624

Attorneys for Defendant

OF COUNSEL:

MR. P. ALEX PETTY
Assistant District Counsel
Office of Counsel
Galveston District
U.S. Army Corps of Engineers
Galveston, TX

APRIL 30, 2004

# DEFENDANT'S APPENDIX