**From:** Few, James T SWG
**Sent:** Thursday, February 08, 2001 8:53 AM
**To:** McClenan, Cecil M SWG
**Cc:** Keys, Daniel SWG; Russek, Eric G SWG; Weiss, Lynwood G SWG
**Subject:** RE: Geotechnical Expert

My position (from the design office) is that both specs gave the same instructions on what was expected for construction within the hydraulic levee reach. The first set (Upper Bayou) relied on a competent and conscientious contractor to make reasonable and prudent decisions on the details of accomplishing.

The second contract (Lower Bayou) added specific detail requirements, instead of letting the prudent contractor decide details of how he would accomplish the same basic requirements for hydraulic construction.

We will have a list of things that Renda did which were <u>not</u> reasonable nor prudent.

I think we can provide the court with the important statements relating to hydraulic levee construction, and then paint a clear picture with cross sections, typical sections, quantities and photographs, which illustrate the decisions that Renda made which were <u>not</u> reasonable nor prudent, and the results, which was misplaced material (some of the misplaced material is recoverable, some not)

With regards to your questions: Should have we expected a contractor (and will a judge expect a contractor) to interpret what we wanted from them? I mean, we know what we wanted, but did the specs convey that? Should we have made them more definitive like we began doing in our later contract plans and specs?

ANSWERS: "Yes" unequivocally, to the first one, For the second question, I personally plan to argue "yes" on most of the details (we need to call some local dredging contractors to the stand to tell everyone that Renda's actions were indications of ignorance with regards to prudent hydraulic construction)

Additionally, I would argue that some of the main important "details" were discussed with their VP before the work began. (these were ignored by Renda). Then about mid-way into the work, Renda A-E admitted this work was new to him, and asked me for information regarding "how the work should be done". I gave him a copy of Lower Bayou specs, and indicated it contained descriptions of "some details which, if applied, would assist in accomplishing proper placement of hydraulic fill". Most importantly, I pointed to the need for monitoring with cross section surveys, and using the surveys to determine when to move the pipe. Again, Renda ignored this information, and continued massive overplacement. Perhaps they had decided at this point that they were going to work on their court case, rather than actually try to do the work.

Our main argument which can be supported by dredging spec experts is that experienced and reputable dredging contractor would NOT have done any of the things we can list that Renda did. They were generally "indignant" at the Lower Bayou pre-bid conf that we put those details in there. It could be that someone at the pre-bid said the details were for an inexperienced Contractor (like someone we won't name here).......
**Could this be one of the "slander" incidents?**

QUESTION 3 - this remains open to argument. I prefer the more restricted Lower Bayou specs, since they allow tighter control, if we get a contractor who either doesn't know how to, or just doesn't want to do the work as we require it to be done.

Still, in essence, to me, both are "method" specs in that they require the Contractor to place the material in a certain manner, making efforts to accomplish a certain result ("sufficient material at all locations") If this is done, the designers believe that all levees will be completed. However, if specs are not followed, and material is misplaced, there may not be sufficient material.

I expect we need to discuss this further in-house, and with outside experts. Personally, I am convinced my answers are consistent with all previous statements I've made, all previous Memos and E-mails, and with all other explanations I've provided regarding "intent".

Thanks, Tim

Tim Few, P.E.
USAED Galveston Phone (409) 766-3030
2000 Fort Point Road FAX (409) 766-6300
P.O. Box 1229
Galveston, TX 77553 E-mail James.T.Few@SWG02.usace.army.mil

-----Original Message-----
**From:** McClenan, Cecil M SWG
**Sent:** Thursday, February 08, 2001 8:04 AM
**To:** Few, James T SWG
**Cc:** Keys, Daniel SWG; Russek, Eric G SWG; Weiss, Lynwood G SWG
**Subject:** RE: Geotechnical Expert

Tim,
I believe getting other, independent, geotech support would be great. If that's the way they play it, I think we'll be in pretty good shape. However, I think we should be prepared for the primary focus of attack being our specs, i.e., are they clear? Should have we expected a contractor (and will a judge expect a contractor) to interpret what we wanted from them? I mean, we know what we wanted, but did the specs convey that? Should we have made them more definitive like we began doing in our later contract plans and specs? To help in interpreting this, I think we also should seek some very good independent assistance with a lot of experience in contract interpretation.
Mike

-----Original Message-----
**From:** **Few, James T SWG**
**Sent:** Wednesday, February 07, 2001 4:17 PM
**To:** McClenan, Cecil M SWG
**Subject:** FW: Geotechnical Expert

Mike, I meant to put your name on "Cc:" -
Are you OK with getting some geotech expert help?

Thanks, Tim

Tim Few, P.E.
USAED Galveston Phone (409) 766-3030
2000 Fort Point Road FAX (409) 766-6300
P.O. Box 1229
Galveston, TX 77553 E-mail James.T.Few@SWG02.usace.army.mil

-----Original Message-----
**From:** Few, James T SWG
**Sent:** Wednesday, February 07, 2001 4:14 PM
**To:** Keys, Daniel SWG
**Subject:** Geotechnical Expert

Dan,

[redacted]

Thanks, Tim

Tim Few, P.E.
USAED Galveston Phone (409) 766-3030
2000 Fort Point Road FAX (409) 766-6300
P.O. Box 1229
Galveston, TX 77553 E-mail James.T.Few@SWG02.usace.army.mil

**From:** Few, James T SWG
**Sent:** Thursday, February 22, 2001 10:47 PM
**To:** Russek, Eric G SWG; McClenan, Cecil M SWG
**Subject:** FW: Geotechnical Expert

In Dan Keys message below, he mentions that [redacted]

I sure wasn't comfortable with Dan and Tom at the site with Steve Bowman, Leon and Wendell, and whoever else has been tempted to provide geotechnical engineering "explanations and reasons" for why or how things occurred.

Regarding expert geotechnical engineering assistance - maybe Ira could come down in a pay status, since he is with Norfolk District, I think.

Thanks, Tim

Tim Few, P.E.
USAED Galveston
2000 Fort Point Road
P.O. Box 1229
Galveston, TX 77553
Phone (409) 766-3030
FAX (409) 766-6300
E-mail James.T.Few@SWG02.usace.army.mil

-----Original Message-----
**From:** Keys, Daniel SWG
**Sent:** Wednesday, February 14, 2001 5:23 PM
**To:** Few, James T SWG
**Subject:** RE: Geotechnical Expert

[redacted]

-----Original Message-----
**From:** Few, James T SWG
**Sent:** Wednesday, February 07, 2001 4:14 PM
**To:** Keys, Daniel SWG
**Subject:** Geotechnical Expert

Dan,

[redacted]

1

[redacted]

Thanks, Tim

Tim Few, P.E.
USAED Galveston Phone (409) 766-3030
2000 Fort Point Road FAX (409) 766-6300
P.O. Box 1229
Galveston, TX 77553 E-mail James.T.Few@SWG02.usace.army.mil

**From:** **Few, James T SWG**
**Sent:** Thursday, February 22, 2001 4:47 PM
**To:** Russek, Eric G SWG; McClenan, Cecil M SWG
**Subject:** FW: Geotechnical Expert

In Dan Keys message below, he mentions that [redacted]

I sure wasn't comfortable with Dan and Tom at the site with Steve Bowman, Leon and Wendell, and whoever else has been tempted to provide geotechnical engineering "explanations and reasons" for why or how things occurred.

Regarding expert geotechnical engineering assistance - maybe Ira could come down in a pay status, since he is with Norfolk District, I think.

Thanks, Tim

Tim Few, P.E.
USAED Galveston
2000 Fort Point Road
P.O. Box 1229
Galveston, TX 77553

Phone (409) 766-3030
FAX (409) 766-6300

E-mail James.T.Few@SWG02.usace.army.mil

-----Original Message-----
**From:** Keys, Daniel SWG
**Sent:** Wednesday, February 14, 2001 5:23 PM
**To:** Few, James T SWG
**Subject:** RE: Geotechnical Expert

[redacted]

-----Original Message-----
**From:** Few, James T SWG
**Sent:** Wednesday, February 07, 2001 4:14 PM
**To:** Keys, Daniel SWG
**Subject:** Geotechnical Expert

Dan,

[redacted]

[redacted]

Thanks, Tim

Tim Few, P.E.
USAED Galveston Phone (409) 766-3030
2000 Fort Point Road FAX (409) 766-6300
P.O. Box 1229
Galveston, TX 77553 E-mail James.T.Few@SWG02.usace.army.mil

**From:** **Few, James T SWG**
**Sent:** Thursday, February 08, 2001 10:53 AM
**To:** McClenan, Cecil M SWG
**Cc:** Keys, Daniel SWG; Russek, Eric G SWG; Weiss, Lynwood G SWG
**Subject:** RE: Geotechnical Expert

My position (from the design office) is that both specs gave the same instructions on what was expected for construction within the hydraulic levee reach. The first set (Upper Bayou) relied on a competent and conscientious contractor to make reasonable and prudent decisions on the details of accomplishing.

The second contract (Lower Bayou) added specific detail requirements, instead of letting the prudent contractor decide details of how he would accomplish the same basic requirements for hydraulic construction.

We will have a list of things that Renda did which were not reasonable nor prudent.

I think we can provide the court with the important statements relating to hydraulic levee construction, and then paint a clear picture with cross sections, typical sections, quantities and photographs, which illustrate the decisions that Renda made which were not reasonable nor prudent, and the results, which was misplaced material (some of the misplaced material is recoverable, some not)

With regards to your questions: Should have we expected a contractor (and will a judge expect a contractor) to interpret what we wanted from them? I mean, we know what we wanted, but did the specs convey that? Should we have made them more definitive like we began doing in our later contract plans and specs?

ANSWERS: "Yes" unequivocally, to the first one, For the second question, I personally plan to argue "yes" on most of the details (we need to call some local dredging contractors to the stand to tell everyone that Renda's actions were indications of ignorance with regards to prudent hydraulic construction)

Additionally, I would argue that some of the main important "details" were discussed with their VP before the work began. (these were ignored by Renda). Then about mid-way into the work, Renda A-E admitted this work was new to him, and asked me for information regarding "how the work should be done". I gave him a copy of Lower Bayou specs, and indicated it contained descriptions of "some details which, if applied, would assist in accomplishing proper placement of hydraulic fill". Most importantly, I pointed to the need for monitoring with cross section surveys, and using the surveys to determine when to move the pipe. Again, Renda ignored this information, and continued massive overplacement. Perhaps they had decided at this point that they were going to work on their court case, rather than actually try to do the work.

Our main argument which can be supported by dredging spec experts is that experienced and reputable dredging contractor would NOT have done any of the things we can list that Renda did. They were generally "indignant" at the Lower Bayou pre-bid conf that we put those details in there. It could be that someone at the pre-bid said the

details were for an inexperienced Contractor (like someone we won't name here).......
**Could this be one of the "slander" incidents?**

QUESTION 3 - this remains open to argument. I prefer the more restricted Lower Bayou specs, since they allow tighter control, if we get a contractor who either doesn't know how to, or just doesn't want to do the work as we require it to be done.

Still, in essence, to me, both are "method" specs in that they require the Contractor to place the material in a certain manner, making efforts to accomplish a certain result ("sufficient material at all locations") If this is done, the designers believe that all levees will be completed. However, if specs are not followed, and material is misplaced, there may not be sufficient material.

I expect we need to discuss this further in-house, and with outside experts. Personally, I am convinced my answers are consistent with all previous statements I've made, all previous Memos and E-mails, and with all other explanations I've provided regarding "intent".

Thanks, Tim

Tim Few, P.E.
USAED Galveston
2000 Fort Point Road
P.O. Box 1229
Galveston, TX 77553
Phone (409) 766-3030
FAX (409) 766-6300
E-mail James.T.Few@SWG02.usace.army.mil

-----Original Message-----
**From:** McClenan, Cecil M SWG
**Sent:** Thursday, February 08, 2001 8:04 AM
**To:** Few, James T SWG
**Cc:** Keys, Daniel SWG; Russek, Eric G SWG; Weiss, Lynwood G SWG
**Subject:** RE: Geotechnical Expert

Tim,
I believe getting other, independent, geotech support would be great. If that's the way they play it, I think we'll be in pretty good shape. However, I think we should be prepared for the primary focus of attack being our specs, i.e., are they clear? Should have we expected a contractor (and will a judge expect a contractor) to interpret what we wanted from them? I mean, we know what we wanted, but did the specs convey that? Should we have made them more definitive like we began doing in our later contract plans and specs? To help in interpreting this, I think we also should seek some very good independent assistance with a lot of experience in contract interpretation.
Mike

-----Original Message-----

**From:** **Few, James T SWG**
**Sent:** Wednesday, February 07, 2001 4:17 PM
**To:** McClenan, Cecil M SWG
**Subject:** FW: Geotechnical Expert

Mike, I meant to put your name on "Cc:" -
Are you OK with getting some geotech expert help?

Thanks, Tim

Tim Few, P.E.
USAED Galveston Phone (409) 766-3030
2000 Fort Point Road FAX (409) 766-6300
P.O. Box 1229
Galveston, TX 77553 E-mail James.T.Few@SWG02.usace.army.mil

-----Original Message-----
**From:** Few, James T SWG
**Sent:** Wednesday, February 07, 2001 4:14 PM
**To:** Keys, Daniel SWG
**Subject:** Geotechnical Expert

Dan,

[redacted]

[redacted]

Thanks, Tim

Tim Few, P.E.
USAED Galveston Phone (409) 766-3030
2000 Fort Point Road FAX (409) 766-6300
P.O. Box 1229
Galveston, TX 77553 E-mail James.T.Few@SWG02.usace.army.mil

**From:** Keys, Daniel SWG
**Sent:** Monday, April 23, 2001 11:27 AM
**To:** McClenan, Cecil M SWG; Russek, Eric G SWG; Krueger, Dalton H SWG
**Cc:** Benero, Thomas SWG
**Subject:** Renda/JV

[redacted]

**Daniel Keys, III**
Assistant District Counsel
U.S. Army Engineer District, Galveston
<mailto:daniel.keys@swg02.usace.army.mil>
☎ (409) 766-3191 ☎ FAX (409) 766-3165

**From:** Rawls, Michael B SWG
**Sent:** Monday, May 13, 2002 4:53 AM
**To:** Rozsypal, Johnny SWG
**Cc:** Keys, Daniel SWG; Russek, Eric G SWG; McClenan, Cecil M SWG; Cole, Curtis SWG
**Subject:** FW: Call Auditor

We called Gene Seiler. Where their letter said they needed the Corps assistance in verifying reasonableness of the contractors calculations and quantifying in dollars each claim, that was auditor speak for they will give us the data they found but we will have to crunch the numbers and apply our own judgmental factors to arrive at a reasonable cost for the claims.

Dan told them tha[redacted] Dan also told them that [redacted] Mr.'s Wylie was not real happy about this. Both Mr. Wylie and Seiler repeated that [redacted] Later, after the meeting, Dan said [redacted]

Dan asked them [redacted]
They replied [redacted]

After the meeting, Eric Russek and I discussed the present course of action and decided not to jump into a lot of calculations for the auditors May 2 letter, but it would be better to wait to read the audit report. The auditors said the report was basically finished. We asked for a draft copy for review, they said no problem, but as of this morning I have not seen a draft. I think they took a step back at the mention on the importance of the audit and probably are giving it a fresh scrub before we will see anything.

-----Original Message-----
**From:** **Keys, Daniel SWG**
**Sent:** Friday, May 10, 2002 10:09 AM
**To:** Rawls, Michael B SWG
**Cc:** Cole, Curtis SWG; Russek, Eric G SWG
**Subject:** RE: Call Auditor

Lets get together at 10:30 in Contracting.

-----Original Message-----
**From:** Rawls, Michael B SWG
**Sent:** Friday, May 10, 2002 10:03 AM
**To:** Keys, Daniel SWG
**Cc:** Cole, Curtis SWG; Russek, Eric G SWG
**Subject:** Call Auditor

Let us know when you are ready to make the call.

**From:** Rawls, Michael B SWG
**Sent:** Monday, May 13, 2002 12:53 PM
**To:** Rozsypal, Johnny SWG
**Cc:** Keys, Daniel SWG; Russek, Eric G SWG; McClenan, Cecil M SWG; Cole, Curtis SWG
**Subject:** FW: Call Auditor

We called Gene Seiler. Where their letter said they needed the Corps assistance in verifying reasonableness of the contractors calculations and quantifying in dollars each claim, that was auditor speak for they will give us the data they found but we will have to crunch the numbers and apply our own judgmental factors to arrive at a reasonable cost for the claims.

Dan told them [redacted] Dan also told them [redacted] Mr.'s Wylie was not real happy about this. Both Mr. Wylie and Seiler repeated that [redacted] Later, after the meeting, Dan said [redacted]

Dan asked them [redacted]

After the meeting, Eric Russek and I discussed the present course of action and decided not to jump into a lot of calculations for the auditors May 2 letter, but it would be better to wait to read the audit report. The auditors said the report was basically finished. We asked for a draft copy for review, they said no problem, but as of this morning I have not seen a draft. I think they took a step back at the mention on the importance of the audit and probably are giving it a fresh scrub before we will see anything.

-----Original Message-----
**From:** **Keys, Daniel SWG**
**Sent:** Friday, May 10, 2002 10:09 AM
**To:** Rawls, Michael B SWG
**Cc:** Cole, Curtis SWG; Russek, Eric G SWG
**Subject:** RE: Call Auditor

Lets get together at 10:30 in Contracting.

-----Original Message-----
**From:** Rawls, Michael B SWG
**Sent:** Friday, May 10, 2002 10:03 AM
**To:** Keys, Daniel SWG
**Cc:** Cole, Curtis SWG; Russek, Eric G SWG
**Subject:** Call Auditor

Let us know when you are ready to make the call.

**From:** Rozsypal, Johnny SWG
**Sent:** Tuesday, May 14, 2002 9:06 PM
**To:** Rawls, Michael B SWG
**Cc:** Keys, Daniel SWG; Russek, Eric G SWG; McClenan, Cecil M SWG; Cole, Curtis SWG
**Subject:** RE: Call Auditor

Playing catch up today after daughter's graduation and way too much packing, unpacking, stacking, etc. etc.
I'm a bit disgruntled with their comment about the dredge suit info. This issue was discussed at length with several of the auditors, inclcuding Gene I think, when we had the conference call with them on 9 April. I was at SAO in Corpus and participated in the conf. call from there. We got into many issues in detail in that conversation which included the dredge suit issue. That conf. call included me, Curtis Cole, M. McClenan, M. Rawls, Eric Russek, and T. Benero for a bit. They did ask for the date of the suit's settlement which Dan , I think, fed them.
I assume now we seek that info. in the discovery process.

-----Original Message-----
**From:** Rawls, Michael B SWG
**Sent:** Monday, May 13, 2002 6:53 AM
**To:** Rozsypal, Johnny SWG
**Cc:** Keys, Daniel SWG; Russek, Eric G SWG; McClenan, Cecil M SWG; Cole, Curtis SWG
**Subject:** FW: Call Auditor

We called Gene Seiler. Where their letter said they needed the Corps assistance in verifying reasonableness of the contractors calculations and quantifying in dollars each claim, that was auditor speak for they will give us the data they found but we will have to crunch the numbers and apply our own judgmental factors to arrive at a reasonable cost for the claims.

Dan told them [redacted] Dan also told them [redacted] Mr.'s Wylie was not real happy about this. Both Mr. Wylie and Seiler repeated that [redacted] Later, after the meeting, Dan said [redacted]

Dan asked them [redacted] They replied [redacted]

After the meeting, Eric Russek and I discussed the present course of action and decided not to jump into a lot of calculations for the auditors May 2 letter, but it would be better to wait to read the audit report. The auditors said the report was basically finished. We asked for a draft copy for review, they said no problem, but as of this morning I have not seen a draft. I think they took a step back at the mention on the importance of the audit and probably are giving it a fresh scrub before we will see anything.

-----Original Message-----
**From:** **Keys, Daniel SWG**
**Sent:** Friday, May 10, 2002 10:09 AM
**To:** Rawls, Michael B SWG
**Cc:** Cole, Curtis SWG; Russek, Eric G SWG
**Subject:** RE: Call Auditor

Lets get together at 10:30 in Contracting.

-----Original Message-----
**From:** Rawls, Michael B SWG
**Sent:** Friday, May 10, 2002 10:03 AM
**To:** Keys, Daniel SWG
**Cc:** Cole, Curtis SWG; Russek, Eric G SWG
**Subject:** Call Auditor

Let us know when you are ready to make the call.

**From:** **Rawls, Michael B SWG**
**Sent:** Monday, May 13, 2002 6:53 AM
**To:** Rozsypal, Johnny SWG
**Cc:** Keys, Daniel SWG; Russek, Eric G SWG; McClenan, Cecil M SWG; Cole, Curtis SWG
**Subject:** FW: Call Auditor

We called Gene Seiler. Where their letter said they needed the Corps assistance in verifying reasonableness of the contractors calculations and quantifying in dollars each claim, that was auditor speak for they will give us the data they found but we will have to crunch the numbers and apply our own judgmental factors to arrive at a reasonable cost for the claims.

Dan told them [redacted] Dan also told them that the [redacted] Mr.'s Wylie was not real happy about [redacted] Both Mr. Wylie and Seiler repeated that [redacted] Later, after the meeting, Dan said [redacted]

Dan asked them [redacted] They replied [redacted]

After the meeting, Eric Russek and I discussed the present course of action and decided not to jump into a lot of calculations for the auditors May 2 letter, but it would be better to wait to read the audit report. The auditors said the report was basically finished. We asked for a draft copy for review, they said no problem, but as of this morning I have not seen a draft. I think they took a step back at the mention on the importance of the audit and probably are giving it a fresh scrub before we will see anything.

-----Original Message-----
**From:** **Keys, Daniel SWG**
**Sent:** Friday, May 10, 2002 10:09 AM
**To:** Rawls, Michael B SWG
**Cc:** Cole, Curtis SWG; Russek, Eric G SWG
**Subject:** RE: Call Auditor

Lets get together at 10:30 in Contracting.

-----Original Message-----
**From:** Rawls, Michael B SWG
**Sent:** Friday, May 10, 2002 10:03 AM
**To:** Keys, Daniel SWG
**Cc:** Cole, Curtis SWG; Russek, Eric G SWG
**Subject:** Call Auditor

Let us know when you are ready to make the call.

**U.S. Department of Justice**

Civil Division

JKosloske
DJ # 154-02-306

Telephone: (202) 307-0282
Telecopy: (202) 514-8624

*Washington, D.C. 20530*

April 21, 2003

By Federal Express

Brian W. Erikson, Esq.
Quilling, Selander, Cummiskey & Lownds, P.C.
2001 Bryan Street, Suite 1800
Dallas, TX 75201
(Tele: (214) 871-2100)

Re: Renda Marine, Inc. v. United States,
No. 02-306C (Fed. Cl.)

Dear Mr. Erikson:

This is in response to your letter of April 10, 2003, requesting unredacted copies of certain documents portions of which we redacted upon the ground those parts of the documents are exempt from disclosure for the reason(s) enumerated in our "Privileged Documents Log." You state that "[i]nformation in the email is not protected by attorney-client privilege, as the information was circulated to third parties who are not authorized to speak or act on behalf of your client in relation to this lawsuit." Upon further review in light of your assertion, we agree that documents 16, 17, 18, and 63 in the "Privileged Documents Log" are not exempt from discovery, inasmuch as they appear to have been disclosed to the firm SURVCON, and that document 25 is not exempt from discovery, inasmuch as it appears to have been disclosed to the firm C & C Technologies Inc. Enclosed are unredacted copies of these documents (RM-COE-22706-22707 (#16); RM-COE-22708-22709 (#17); RM-COE-22710-22711 (#18); RM-COE-22729-22743 (#25); and RM-COE-22725-22726 (#63)). We also enclose other copies of documents 25 and 63 (RM-COE-22744-22760).

For the reasons enumerated in the "Privileged Documents Log," however, we disagree that the information redacted from documents 19-21, 26, 28-30, 64, 70, 78, 79, 87, 88, 104, and 108 is subject to discovery. Disclosure of material that contains attorney work product to representatives of the "joint venture" entities retained by the Port of Houston Authority (PHA) to provide services to the PHA relative to the Galveston-Houston Ship Channel project, a cooperative endeavor between the PHA and Army Corps of Engineers (Corps), and which also provided inspection services to the Corps on the Upper Bayou Project, does not result in a waiver the attorney work product doctrine. The Government has retained George Strickler of Capital Project Management Inc. to provide litigation support services in this case. Therefore, communications

between counsel and Mr. Strickler are exempt from disclosure by the attorney-client privilege and/or the attorney work product doctrine and disclosure of communications between counsel and Government employees to Mr. Strickler does not result in a waiver of either the attorney-client privilege or the attorney work product doctrine. Moreover, documents 64 and 70, which contain an analysis of plaintiff's claims prepared by Mr. Strickler at the request of and for Government counsel, are work product protected by RCFC 26(b)(3).

We also enclose copies of two e-mail messages printed out and saved by Thomas Benero (RM-COE-22712-22715), copies of documents with Bates numbers RM-COE-22716-22724 and RM-COE-22727-22728, and color photographs.

Very truly yours,

John Kosloske

JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch

Enclosures

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 02-306C |
| v. | ) | |
| | ) | (Judge Hewitt) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DECLARATION OF JOHN E. KOSLOSKE

I, JOHN E. KOSLOSKE, declare as follows:

1. I am an attorney in the Commercial Litigation Branch of the Department of Justice and counsel of record for the United States in the above captioned action.

2. The above captioned action involves claims governed by the Contract Disputes Act of 1978, as amended (41 U.S.C. §§ 601-13), arising under or relating to a contract between plaintiff, Renda Marine, Inc. (Renda), and the United States, acting through the Army Corps of Engineers, Galveston, Texas District (Corps), to dredge part of the Galveston-Houston Ship Channel and to construct levees at the Lost Lake Placement Area for dredged material. This contract is referred to in the complaint and other documents as the "Upper Bayou Project."

3. I am being assisted in this litigation by Deborah Barbour, Paralegal Specialist, Department of Justice, and by George J. Strickler, P.E., who is affiliated with Capital Project Management, Inc., a consulting firm. Mr. Strickler has been retained by the Government to assist me with the defense of the above captioned action, including the following litigation support services: (1) evaluation of and development of defenses to Renda's claims; (2) discovery tasks, such as preparation of responses to Renda's discovery requests; (3) identification and selection of ex-

pert witnesses for this case and evaluation of their work product; and (4) trial preparation tasks for this case.

4. The Corps attorney presently assigned to the above captioned action is Alex Petty, an Assistant District Counsel with the Office of Counsel, Galveston District, U.S. Army Corps of Engineers. The Corps attorney previously assigned to this litigation was Daniel Keys, III, who at the time was an Assistant District Counsel in the Galveston District's Office of Counsel. The Chief Counsel of the Galveston District's Office of Counsel is Thomas H. Moore. Mr. Edward V. Herrington is an Assistant District Counsel in the Galveston District's Office of Counsel. Mr. Ruben R. Villagran is a paralegal employee in the Galveston District's Office of Counsel. The Galveston District Office of Counsel is responsible for providing legal services to the Galveston District.

5. During the general time frame of the Upper Bayou Project, Renda was involved with other dredging projects in the Corps' Galveston District. The other dredging projects with which Renda was involved include the "Dredging Boggy Bayou to Colorado River & Mouth of the Colorado" on the Intracoastal Waterway (Contract No. DACW64-98-C-0028), "Dredging Chocolate Bayou" (DACW64-00-C-0021), and the Sims Bayou Project awarded in or about June 2001. In addition, Renda was a subcontractor to the Great Lakes Dock & Dredging Co. on the Lower Bay Project.

6. The Port of Houston Authority (PHA) is a co-sponsor with the Corps of the overall project to widen and deepen the Galveston-Houston Navigation Channels and is responsible for a share of the costs of that endeavor. The PHA has been involved, in one capacity or another,

in all of the dredging contracts that are a part of the overall project to widen and deepen the Galveston-Houston Navigation Channels.

7. In the Government's January 3, 2003 responses to Renda's November 2002 discovery requests, we stated that documents relating to forty-one dredging contracts performed during the fifty-year period from 1949 to 1999 are located at storage facilities in Galveston and Fort Worth, Texas, and we advised Renda that the Government would produce those materials for Renda's inspection "at a mutually convenient time and place." During the next fifteen months, however, Renda's counsel never once contacted defendant's counsel about these materials or to arrange for an inspection of the documents or any part of them. I assumed that Renda's counsel had determined not to pursue that line of discovery any farther, perhaps because of the burden associated with examination of materials for forty-one dredging contracts. The January 14, 2004 deadline established by the Court for completing fact discovery passed without Renda's counsel having raised with the Court or defendant's counsel anything concerning the Government's response to Interrogatory No. 5 contained in Renda's first set of interrogatories served in November 2002.

8. On April 14, 2004, during a break in the Government's deposition of one of Renda's expert witnesses at Renda counsel's law offices in Dallas, Texas, Renda's counsel approached defendant's counsel and requested that the Government produce the records of dredging projects in the area of the Upper Bayou Project performed during the 1987-1999 period referred to in the Government's January 3, 2003 response to Renda's Interrogatory No. 5.

9. In mid-February 2004, Renda's information technology consultant for the above captioned litigation, Universal Document Systems (UDS), provided the Government with 30,000 pages of material for review. Deborah Barbour and George Strickler reviewed those documents

and, on March 22, 2004, we shipped by overnight mail to Renda's counsel the non-privileged materials in that collection that are "responsive documents," as defined by the "Agreement Regarding Scope of Electronic Discovery" entered by Renda and the Government in July 2004.

10. On April 9, 2004, the Government provided Renda with a privileged documents log that listed 139 documents withheld by the Government from production, in whole or in part, as exempt from discovery. On April 13, 2004, we sent to Renda redacted copies of documents listed on that log that are not wholly exempt from discovery, which constitute the vast majority of the documents enumerated on the log.

11. On April 13, 2004, Renda's counsel sent a letter to defendant's counsel contending that forty-nine of the documents listed on the Government's privileged documents log are not exempt from discovery and requesting that they be produced "in their entirety" without redactions. I did not see that correspondence until April 19, 2004, after returning to Washington, D.C. from taking depositions of Renda's expert witnesses in Dallas, Texas, during April 13-16, 2004. On April 22, 2004, I responded to Renda's counsel's April 13 letter by advising him that the Government we had decided to remove our claim of exemption(s) with respect to twenty-five of the forty-nine challenged by Renda, i.e., Document Nos. 7-10, 12, 17, 33-37, 41-43, 46, 47, 55, 109, 126, 127, and 133-137. We provided Renda's counsel with complete copies of those documents. We declined, however, to withdraw our objection to disclosure of the balance of the documents, i.e., Document Nos. 4, 6, 13, 15, 23, 27, 40, 45, 67, 73-75, 80, 81, 86-88, 90-93, 104, 107, and 116.

12. To date, the Government has received two invoices from UDS for services provided by UDS with respect to discovery of the Corps' computer back-up tapes: Invoice No. 402099BB

dated February 6, 2004, for $72,981.93, and Invoice No. 402098AR dated February 12, 2004, for $2,273.17. Copies of these invoices are appended to this Declaration as "Exhibit A."

13. On April 26, 2004, the Corps has advised me that, on March 29, 2004, the Government issued a check to UDS in the amount of $75,225.10, and that, in early April 2004, Ms. Lynette K. Mills, an Administrative Support Assistant with the Corps' Galveston District, spoke with Mr. Barry Bray of UDS at which time he acknowledged that this payment had been made.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 28, 2004, at Washington, D.C.

JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W., Room 12052
Washington, D.C. 20005
Tele: (202) 307-0282

**EXHIBIT A**

DIGITAL SOLUTIONS FOR AN ANALOG WORLD.

UNIVERSAL DOCUMENT SOLUTIONS

# TIMELINE

UDSTX, LLC

1700 Commerce

Suite 1800

Dallas, TX 75201

469.621.8390

UDSTX.com

## *U.S. Army Corp. of Engineers*

*2600 Fort Point Rd., Room 361, Galveston, TX 77550*

***09/17/2003*** *- Setup visit*

***10/10/2003*** *- Recovery process*

***10/10/2003 to 11/10/2003*** *- On hold for the rest of backup data. Army Corp. of Engineers were to FedEx.*

***12/1/2003*** *- All recovered data from Galveston processed and waiting for search terms.*

***12/2/2003*** *- Backup tapes arrived in Dallas via FedEx.*

***12/11/2003*** *- Backup tapes restored.*

***12/11/2003*** *- First draft of search terms for documents received from Alex Petty.*

***12/30/2003*** *- Final search terms for recovery document received.*

**UDSTX**
UNIVERSAL DOCUMENT SOLUTIONS
Universal Document Solutions, Texas
1700 Commerce, Suite 1800
Dallas, TX 75201

| Date | Invoice # |
|---|---|
| 2/6/2004 | 402099BB |

DEPARTMENT OF JUSTICE
ATTN: CLASSIFICATION UNIT
1100 L STREET, N.W. ROOM 12052
WASHINGTON, D.C. 20005

| Terms | Rep | Project |
|---|---|---|
| net 30 | BB | REN-GALV |

| Quantity | Description | Rate | Amount |
|---|---|---|---|
| 407,189 | EDD | 0.15 | 61,078.35T |
| | Volume discount | -20,359.45 | -20,359.45 |
| 267,009 | EDD | 0.15 | 40,051.35T |
| | discount | -13,350.45 | -13,350.45 |
| | sales tax | 8.25% | 5,562.13 |
| *THANK YOU FOR YOUR BUSINESS WITH UDSTX!* | | **Total** | $72,981.93 |

EIN # 81-0558476
Phone... 469.621.8390
Fax # 469.621.8392
E-mail info@udstx.com

**UDSTX**

UNIVERSAL DOCUMENT SOLUTIONS

Universal Document Solutions, Texas
1700 Commerce, Suite 1800
Dallas, TX 75201

| Date | Invoice # |
|---|---|
| 2/12/2004 | 402098AR |

U.S. ARMY CORP. OF ENGINEERS
2600 FORT POINT ROAD
ROOM 361
GALVESTON, TX 77550
ATTN: ACCOUNTS PAYABLE

| Terms | Rep | Project |
|---|---|---|
| net 30 | Barry | RENGAL |

| Quantity | Description | Rate | Amount |
|---|---|---|---|
| 29,999 | Blowback of documents (NOT IMAGES) | 0.05 | 1,499.95T |
| 29,999 | Bates numbering | 0.02 | 599.98T |
| | sales tax | 8.25% | 173.24 |

***Thank you for your continued business with Universal!***

**Total** $2,273.17

EIN # 81-0558476
Phone # 469.621.8390
Fax # 469.621.8392
E-mail info@udstx.com

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 02-306C |
| v. | ) | |
| | ) | (Judge Hewitt) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DECLARATION OF DEBORAH J. BARBOUR

I, DEBORAH J. BARBOUR, declare as follows:

1. I am a Paralegal Specialist in the National Courts Section, Commercial Litigation Branch, Civil Division of the Department of Justice. I have been assisting John E. Kosloske, Esq., counsel of record for the United States in the above captioned action, with that litigation for approximately two years.

2. I coordinated the shipment of the electronic discovery documents from Universal Document Solutions (UDS) to the Department of Justice. I reviewed the 29,999 documents that UDS provided to the Government in mid-February 2004 for privilege and to determine whether they are "responsive documents" as that term is defined in the "Agreement Regarding Scope of Electronic Discovery" filed in the above captioned action on July 29, 2003. I was assisted in that task by George Strickler of Capital Project Management, Inc., a consultant retained by the Government to provide litigation support services to Mr. Kosloske in the above captioned action.

3. In early February 2004, I called Barry Bray, President of UDS, and asked that he provide the documents generated by UDS's search of computer back-up tapes to the Government in paper form. Mr. Bray suggested that the Government use the electronic format of the documents

and a program called "Summation" for the review. I told Mr. Bray that using search terms in Summation to review the document for privilege purposes was not an efficient way to go about the task. I asked Mr. Bray if the documents could be provided quickly, so I could start the review of the documents right away. He said that he would blow back the documents and send them to me within the next few days.

4. I received the first shipment of documents from UDS in mid-February 2004. There were four boxes of documents, sorted by search terms. After receiving the first four boxes, Mr. Bray called me to say that UDS had determined that there were many duplicate documents in the four boxes that UDS had sent me and that UDS had devised a way to reduce the duplicate copies but that the documents would not be sorted by search terms. Mr. Bray advised that this would reduce the volume documents for review from 80,000 to 29,999 pages. Shortly thereafter, UDS sent the balance of the documents to the Government.

5. I reviewed all of the documents provided to the Government by UDS, except for two boxes of material that was reviewed by George Strickler of Capitol Project Management, Inc., a consultant retained by the Government to provide litigation support services in this case. I reviewed the documents for the attorney-client and work product privileges. We also reviewed the documents to determine whether they are "responsive documents" under the "Agreement Regarding Scope of Electronic Discovery," using ¶ 1.6 of the Agreement as my guideline. The documents that UDS sent the Government were accompanied by a computer printout showing the search terms used by UDS to generate the documents. The search terms listed included the following: "levee;" "lost lake;" "gahagan;" "strickland;" "98-C-0025; "affolte;" "mears;" "alan jefts;" "barry smith;" "bill rigby;" "bwarren;" "dacw64-99-C-0001;" "dherrera;" :eddie fisher;"

"flare area;" "goodloe;" "gorini;" "hrabovsky;" "jccarter;" "jim werner;" "m gonzalez;" "machacek;" "mears;" "oscar;" "pat duke;" "pobox;" "renda;" "steve bowman;" "upper b;" "yogi;" "great lakes;" and "south ferry landing."

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 28, 2004, at Washington, D.C.

Deborah J. Barbour

DEBORAH J. BARBOUR
Paralegal Specialist
National Courts section
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W., Room 12101
Washington, D.C. 20005
Tele: (202) 307-1011