# DEFENDANT'S APPENDIX

# INDEX TO DEFENDANT'S APPENDIX

**Document** **Page**

Declaration of William F. Connole, P.E. dated April 29, 2004 .................................... 1

Excerpt from transcript of April 9, 2004 deposition of William F. Connole, P.E. ....... 4

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 02-306C |
| | ) | (Judge Hewitt) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DECLARATION OF WILLIAM F. CONNOLE, P.E.

I, WILLIAM F. CONNOLE, P.E., declare as follows:

1. I am the President of Franvel Corp., an engineering firm located in Tulsa, Oklahoma, that specializes in construction consulting. I have been designated by the United States Department of Justice as expert witness in the above captioned proceeding, which is scheduled for a trial in Houston, Texas, in June 2004.

2. On January 30, 2004, I issued a six-volume report titled "Evaluation of Claims submitted under Renda Marine, Inc. v. United States, No. 02-306C (Fed. Cl.)." My curriculum vitae appears at Appendix A at the end of Volume I of the report.

3. On April 9, 2004, Brian Erikson, Esq., attorney for Renda Marine, Inc. (Renda) took my deposition in Washington, D.C., at the offices of the Commercial Litigation Branch, Department of Justice.

4. I was retained by the Department of Justice to evaluate Renda's claims in the above captioned action, in particular the damages claimed by Renda, including, but not limited to, the delay and loss-of-productivity components of Renda's claims. My evaluation of Renda's claims is contained in the January 30, 2004 written report identified above.

5. I have been preparing or evaluating construction claims for the past twenty years. I have substantial experience with claims in Corps of Engineers projects that involve construction of levees and embankments. Over the years, most of my clients have been levee builders and most of my work involves heavy construction. I have provided construction consulting and claims services to clients for U.S. Army Corps of Engineers levee construction projects mainly in the Southeastern United States but also in Oklahoma, Texas, Missouri, and Arkansas, including projects along the Mississippi River from St. Louis to New Orleans.

6. The claims that I evaluate frequently are differing site conditions claims in which I am asked to testify about the reasonableness of the contractor's interpretation of soil boring logs, the reasonableness of the contractor's bid, and the effect upon construction activities where the earth materials encountered vary from what is indicated in the contract documents. Evaluation of the boring logs usually is central to the issue in any damages calculation for any earthwork project. I make those evaluations and price the cost associated with those differences. As may be required, I order, witness, and review soil boring logs, soil samples, and other soil tests to evaluate their properties and construction issues.

7. In the Appeal of Jim Smith Contracting Company, Inc., ENG BCA No. 6324, listed on my curriculum vitae, which involved a contract for a Corps of Engineers levee enlargement project, I was qualified by the Corps of Engineers Board of Contract Appeals as an expert on the means and methods of constructing embanked material with soils of different classifications and moisture content.

8. In the Appeal of Souter Construction, Inc., ENG BCA No. 5701Q, also listed on my curriculum vitae, which involved a contract for a Corps of Engineers rock excavation and disposal project, I was qualified by the Corps of Engineers Board of Contract Appeals as a damages and delay expert.

9. Renda priced the equipment component of its claims using the Corps of Engineers Construction Equipment Ownership and Operating Expense Schedule, EP 1110-1-8 (Vol. 6) (June 1999). I evaluated the land-based and marine equipment components of Renda's claims, including Renda's use and application of the Construction Equipment Ownership and Operating Expense Schedule. I have had considerable experience with the use and application of the Corps' Construction Equipment Ownership and Operating Expense Schedule in pricing equipment costs for claims. I have evaluated and prepared marine equipment costs for at least 30 claims, including dredging equipment.

10. In the Appeal of Four F. Corporation, ASBCA No. 48161, also listed on my curriculum vitae, I was qualified by the Armed Services Board of Contract Appeals as an expert in the use and application of the Corps of Engineers Construction Equipment Ownership and Operating Expense Schedule.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 29, 2004, at Tulsa, Oklahoma.

WILLIAM F. CONNOLE, P.E., President
Franvel Corp.
1416 South Terrace Drive
Tulsa, OK 74104
Tele: (918) 749-3592

UNITED STATES COURT OF FEDERAL CLAIMS

- - - - - - - - - - - - - - X
RENDA MARINE, INC., :
Plaintiff, :
vs. : Case No. 02-306C
UNITED STATES ARMY CORPS OF : (Judge Hewitt)
ENGINEERS, :
Defendants. :
- - - - - - - - - - - - - - X Pages 1-233

Deposition of WILLIAM F. CONNOLE, P.E.
District of Columbia
Friday, April 9, 2004

Reported by: Marilyn Feldman, RPR
Job No. 159633



4

April 9, 2004

9:05 a.m.

Deposition of WILLIAM F. CONNOLE, P.E. held at the offices of:

U.S. Department of Justice
1100 L Street, NW
Washington, D.C. 20005

Pursuant to notice, before Marilyn Feldman, Registered Professional Reporter, a Notary Public in and for the District of Columbia.

APPEARANCES:

For the Plaintiff:

Brian W. Erikson, Esq.
Quilling, Selander, Cummiskey & Lownds, PC
2001 Bryan Street, Suite 1800
Dallas, TX 75201
(214) 871-2100

For the Defendant:

John E. Kosloske, Esq.
U.S. Department of Justice
Civil Division, Commercial Litigation Branch
1100 L Street, NW, Room 12052
Washington, D.C. 20005
(202) 307-0282

Also Present:

Oscar Renda (a.m. session)
Barry L. Smith

C O N T E N T S


| | |
|---|---|
| EXAMINATION OF WILLIAM F. CONNOLE: | PAGE: |
| BY MR. ERIKSON | 5 |
| BY MR. KOSLOSKE | 228 |
| CONNOLE DEPOSITION EXHIBITS: * | PAGE: |
| 1 Notice of Deposition | 77 |
| 2 Inspection Report of Dredging Galveston District | 101 |
| 3 Renda Marine Report of Operations | 101 |
| 4 Log of Soil boring | 203 |
| 5 Approx. Boring Locations | 203 |


* Exhibits attached to deposition.

Thereupon,

WILLIAM F. CONNOLE, P.E.

after having been duly sworn (or affirmed) by the notary, was examined and testified as follows:

EXAMINATION BY COUNSEL FOR PLAINTIFF

BY MR. ERIKSON:

Q. Mr. Connole, my name is Brian Erikson. Could you state your name for the record?

A. William F. Connole.

Q. Mr. Connole, you have been deposed before, right?

A. Yes, I have.

Q. Are you familiar with the rules concerning depositions?

A. I would say I'm vaguely familiar with them. I couldn't recite them.

Q. If at any time during the course of this deposition I ask you a question that you don't understand or it wasn't clear, inarticulate, unintelligible, will you agree to stop me and have me repeat the question so you understand it?

A. I'll do my best.

A. Well, I think when you talk about a stiff clay, you are talking about something that's bound together in soil. It would not be stiff clay as maintenance material.

Q. Do you consider yourself to be a geotechnical expert?

A. I wouldn't consider myself to be a geotech expert, although through the years I have gained a lot of geotechnical knowledge and we do do dam safety inspections for the Corps of Engineers in the Tulsa District and you have to be able to recognize soils and know when a relief well system or something like that along the dam is beginning to show signs of repair or need repair or degradation.

Q. Do you know enough about soils to be able to determine what its geological background is?

A. No.

Q. That's something you would leave for geologists or geotechnical experts?

A. I would leave it to somebody else to

tell me what age it is.

Q. Any other involvement with a confined disposal facility?

A. Yes, that was in the New Orleans District.

Q. What was that project about?

A. It was dredging on the lower Mississippi and the disposal area was to be behind a perimeter rock dike -- or I guess it wasn't a perimeter rock dike, it was a rock dike, as I recall, that was in the water and then the shore formed the other bank of the facility. So it was a combined disposal facility, it's just one side of it was a rock dike.

Q. Let me go back to the Verdigris River project. I assume in that project there were no issues over problems pumping the material, right?

A. No.

Q. There were no issues concerning dredging of the material, right?

A. No, that's correct.

Q. It was just a function of whether or