UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC., | § | |
| PLAINTIFF, | § | |
| | § | CASE NO. 02-306C |
| V. | § | |
| | § | (JUDGE HEWITT) |
| UNITED STATES ARMY | § | |
| CORPS OF ENGINEERS, | § | |
| DEFENDANT. | § | |

# REPLY BY RENDA MARINE, INC. TO DEFENDANT'S OPPOSITION TO RENDA'S MOTION TO COMPEL

Plaintiff, Renda Marine, Inc. ("Renda"), respectfully replies to the Government's Opposition to Renda's Motion to Compel.

## Electronic Discovery

Simply put, the Court ordered electronic discovery procedures to correct discovery abuse – the Government's Contracting Officer (Thomas Benero) routinely and habitually deleted e-mail that he sent or received. This destruction of evidence persisted well after Renda's claims arose on the Upper Bayou Project. In fact, the Contracting Officer admitted on the day that he was deposed that he still routinely deletes his e-mail – a practice that he shares with Curtis Cole, the Administrative Contracting Officer. See page 189 of Mr. Benero's deposition of January 8, 2004, a true copy of which is attached as Exhibit A. The discovery abuse continues despite this Court's Order of July 29, 2003.

By letter of December 17, 2003, Renda's counsel advised Defendant's counsel that Mr. Benero has continued to delete his e-mail. A true copy of this December 17, 2003, letter is attached as Exhibit B. The letter notes that the examination by Universal Document Solutions ("UDS") of Mr. Benero's hard drive revealed that the hard drive had no documents, even though the

Corps' IT personnel advised that Mr. Benero had been using his computer and hard drive for at least two years.

Not only has the Contracting Officer ignored the Court's July 29, 2003, Order, but the Government's attorney took no steps to advise Corps personnel to abide by the Order. Indeed, about three weeks later, on January 8, 2004, Mr. Benero confessed that he and Mr. Cole still routinely deleted documents. (See Exhibit A.)

The current dispute over electronic discovery centers on seven or so boxes of documents that the Government has withheld from Renda. UDS printed abut twelve boxes of documents from the Government's e-mail system and hard drives in response to the Court's July 29, 2003, Order. The Government, however, has only allowed Renda to see five of the boxes and has effectively declared itself to be judge and jury as to responsiveness of the seven or so boxes of withheld documents. The Government has asserted a privilege over a limited number of documents, but does not contend that the remaining documents in the withheld boxes of documents are protected by the attorney-client privilege or by any other privilege. The Government does not contend that it would be unduly burdened or somehow prejudiced by Renda's inspection of the withheld documents. Having already reviewed the withheld documents, the Government faces no more effort if the withheld documents are shared with Renda.

Defendant complains about Barry Bray's Affidavit and the lack of specificity about the seven boxes of withheld documents. However, Defendant overlooks the fact that Mr. Bray and UDS are constrained by a confidentiality agreement and protective order. A true copy of Mr. Bray's confidentiality agreement is attached as Exhibit C. Mr. Bray could not be specific about the withheld documents for fear that Defendant would contend that he was violating the confidentiality agreement.

In an effort to resolve the withheld documents issue, Renda's counsel sent a letter to the Government's counsel on May 4, 2004. A true copy of this May 4, 2004, letter is attached as Exhibit D. In sum, Renda's counsel proposed two alternatives: (1) UDS examine the withheld documents and prepare a concise summary of the contents of a number of the documents so that the Court and Renda could better evaluate the withholding; or (2) UDS select a number of documents which in UDS' opinion were responsive and share those documents with the Government and Renda for evaluation.

The Government responded rejecting both alternatives and proposing a cumbersome and time consuming process. The Government wants UDS to select two documents corresponding to each search term and submit those only to the Government for further evaluation. See the letter from the Government's counsel of May 5, 2004, a true copy of which is attached as Exhibit E.

The Government's process is akin to being nibbled to death by ducks. If UDS presents ten documents to the Government, the Government may agree to release all ten documents, or some of them or none of them. In any event, about seven boxes of paper (less ten documents) would still be withheld from Renda for reasons that only the Government knows.

The Government's proposed process is too slow and ineffective. There is no way at ten or so documents at a time the seven or so boxes will be reviewed this year much less before trial.

The only reason to withhold the seven or so boxes is to keep Renda from reviewing them and discovering the e-mail and other documents that Mr. Benero or Mr. Cole destroyed.

The Government has already tried to avoid turning over documents from the e-mail backup tape. By letter of November 26, 2003, Defendant's counsel wrote to Renda's counsel and advised that there was "one defective computer tape from which the Corps was unable to retrieve electronic data." A true copy of this November 26, 2003, letter is attached as Exhibit F. The "one defective

computer tape" turned out to be the most important backup of the e-mail system. Once the supposedly "defective" tape was in UDS' hands, UDS restored the tape's electronic data.

Unable to thwart Renda's attempts to review documents retrieved from the supposedly "defective" tape, the Government now attempts to shield them as "non-responsive." The Court should order Defendant to turn over the documents post haste.

The Government makes no attempt to explain why the Government violated the Court's July 29, 2003, Order, which required that the Government turn over electronic data to UDS in fourteen (14) days. Instead, the Government turned over the balance of the electronic data to UDS on December 2, 2003, one hundred twelve (112) days late. The Government's contention that UDS should have begun searching the electronic data before that date lacks merit. First, the search term list had not been resolved. Second, UDS should not have to search more than once. Requiring multiple searches over an extended period of time would have cost more money, money that the Government was dilatory in paying.

Had the Government honored the Court's July 29, 2003, Order, and turned over the electronic media within fourteen days, the time would not be an issue now. It is clear that the Government is in a stalling pattern, hoping that time runs out.

The Government also makes no attempt to excuse the incredible jumbling of the documents originally produced by UDS to the Government in Bates numerical sequence. Sorting through the Government produced documents to ferret out the withheld documents was a time consuming challenge.

The Government should be ordered to allow Renda to inspect all of the withheld documents, save those that truly are protected by privilege.

**Interrogatory No. 5**:

Interrogatory No. 5 sought information about borrowing or excavation of materials in the Upper Bayou Project area in the last 15 years. (See Exhibit G to Renda's Motion to Compel.) In response, the Government offered to produce documents "at a mutually convenient time and place." The Government now takes the position that with such wording, Renda somehow had the burden of establishing a mutually convenient time and place, and that Renda never did so.

The Government overlooks the fact that many of the documents in this case have been scanned and then exchanged electronically on CD-Roms. The Government has produced many such CD-Roms. Expecting Renda to comb through and categorize the contents of each of such CD-Roms to determine if the Government has produced something that the Government secretly knows that it has not, is unduly burdensome and entirely unfair.

The Government has also produced many boxes of documents both in response to Renda's Request for Production of Documents and as part of the Government's Initial Disclosure or supplements. See the recap of letters from the United States to Renda Producing Documents, attached as Exhibit G. See also the photographs of the boxes and CD-Roms the Government produced, attached as Exhibit H.

The Government also overlooks the fact that nearly all of Renda's responses to the Government's requests for production indicated that Renda would produce documents "at a time mutually convenient." Renda then produced massive amounts of documents. See, e.g., Renda's responses to request Nos. 1-5 in the Government's First Request for Production of Documents, attached as Exhibit I to this Reply.

Similarly, the Government responded to a few of Renda's requests for production of documents indicating that the Government would produce documents at a time and place mutually

convenient. (See, e.g., Defendant's Responses 27 and 28 to Renda's First Request for Production of Documents, a true copy of which is attached as Exhibit J.)

The Government's Third Supplemental Response to Plaintiff's First Request for Production of Documents similarly states that "Defendant will produce those materials for inspection and/or copying at a mutually convenient date and time at defendant's counsel's Washington, D.C. offices." A true copy of the Government's Third Supplemental Response is attached as Exhibit K. By letter of July 18, 2003, the Government produced the Third Supplemental Response documents. A true copy of the Government's counsel's transmittal letter is attached as Exhibit L.

The Government indicated in its Initial Disclosure that the "Government will provide plaintiff with a copy of the documents required by RCFC 26(a)(1)(B) on or before November 15, 2002." A true copy of the Government's Initial Disclosure is attached as Exhibit M. Incidentally, the documents Renda seeks should have been produced as part of the Government's initial disclosure, or in a supplement.

Throughout the course of this case, the parties have voluntarily swapped documents in an amicable manner. The Government at no time indicated that Renda needed to chant magic words to extract documents. The Government at no time indicated that it was withholding documents pending a special request by Renda. When the Government located additional documents, it simply produced them without Renda having to ask. See, e.g., Exhibit N, which is a true copy of the Government's Supplement to Defendant's Initial Disclosure.

By letter of September 24, 2003, Renda's counsel wrote to Defendant's counsel acknowledging that the Government has furnished Renda with various documents listed in an April 17, 2003, letter, and inquiring "<u>if there are any remaining documents for which I need to arrange for copies</u>." A true copy of this September 24, 2003, letter is attached as Exhibit O

(emphasis supplied). Defendant did not respond. In fact, Defendant did not confess until recently that it had not produced the documents that it promised in its answer to Interrogatory No. 5 or in its responses to Request for Production Nos. 27 and 28.

In Defendant's Amended Response to Plaintiff's First Set of Interrogatories, the Government amended its answer to Interrogatory No. 8. A true copy of this Amended Response is attached as Exhibit P. On page 8G of its Amended Response (Exhibit P), Defendant states that: "Plaintiff knew, or reasonably should have known, that levees at placement areas such as Lost Lake are commonly raised and/or maintained by 'borrowing' material from the interior perimeter of the placement area." This "borrowing of material" and the extent of such "borrowing" are at the heart of Renda's claim concerning the Lost Lake levees and the differing site condition that Renda encountered in attempting to construct such levees.

The Government is using its superior knowledge about past borrowing as a defense, yet refusing to provide to Renda the documents which support the Government's defense. The Government clearly wants to have its cake and eat it too.

Significantly, this is not a case where the Government objected to producing documents. The Government raised no objections whatsoever. The cases the Government cites about a delayed challenge to objections are inapposite.

Again, this is a situation where only Renda will be burdened by reviewing the documents that the Government indicated that it would produce at a time and place mutually convenient. By not producing the documents or listing them as exhibits, the Government has no intention of using them. Renda's trial preparation time will be disrupted, not the Government's.

Interrogatory No. 5 sought information covering a 15 year period. The Government is attempting to create the appearance of burden by responding for a 50 year period. Renda is only interested in the 15 year period listed on the interrogatory.

**Privileged Documents**:

Renda is not requesting that the Government produce documents truly protected by the attorney-client or work product privileges. Renda is requesting production of documents which cannot enjoy such privilege because they were authored or received by persons not employed by the Government or who are not purely consulting experts. This means that documents authored by or sent to the Joint Venture engineers (including, without limitation, Wendell Mears, Dick Gorini, Alan Jefts, and Leon Hrabovsky) are not shielded with privilege. Simply examining the privilege log reveals many documents which should not be privileged. (See, e.g. Exhibit F to Renda's Motion to Compel, which points out such documents.)

Defendant has clearly overreached in declaring privilege. It just took but a single letter from Renda's counsel (see Exhibit F to Renda's Motion to Compel) for Defendant to drop the privilege on 25 of the 49 challenged.

Renda suggests that the Government tender to the Court for an in camera inspection any documents that the Government still contends are privileged.

Respectfully submitted,

QUILLING, SELANDER, CUMMISKEY & LOWNDS, P.C.

BY: s/Brian W. Erikson
Brian W. Erikson, TX Bar No. 06643800

2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Telefax)
ATTORNEYS FOR RENDA MARINE, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of May, 2004, a true and correct copy of Reply by Renda Marine, Inc. to Defendant's Opposition to Renda's Motion to Compel, was served electronically through the CM/ECF system for the Court of Federal Claims.

s/Brian W. Erikson
Brian W. Erikson

APPENDIX TO REPLY BY RENDA MARINE, INC. TO DEFENDANT'S OPPOSITION TO RENDA'S MOTION TO COMPEL

APPENDIX TABLE OF CONTENTS


| Exhibit | Description | Page |
|---|---|---|
| A | Deposition of Tom Benero - cover, page 189, signature page and certification page | 1-4 |
| B | December 17, 2003 letter from Brian Erikson to John Kosloske | 5-7 |
| C | Protective Order regarding Electronic Discovery and Declaration of Barry Bray | 8-10 |
| D | May 4, 2004 letter from Brian Erikson to John Kosloske | 11-13 |
| E | May 5, 2004 letter from John Kosloske to Brian Erikson | 14 |
| F | November 26, 2003 letter from John Kosloske to Brian Erikson | 15-16 |
| G | Recap of Letters from United States to Renda Producing Documents | 17-18 |
| H | Photographs of Boxes and CD-Roms produced by Government | 19-24 |
| I | Renda's Responses to the Government's First Request for Production of Documents | 25-44 |
| J | Defendant's Responses to Requests Nos. 15, 27 and 28 of Plaintiff's First Request for Production of Documents | 45-48 |
| K | Government's Third Supplemental Response to Plaintiff's First Request for Production of Documents | 49-51 |
| L | July 18, 2003, letter from John Kosloske to Brian Erikson transmitting Government's Third Supplemental Response to Plaintiff's First Request for Production of Documents | 52 |
| M | Government's Initial Disclosure | 53-57 |
| N | Government's Supplement to Initial Disclosure | 58-60 |
| O | September 24, 2003, letter from Brian Erikson to John Kosloske | 61-63 |
| P | Government's Amended Response to Plaintiff's First Set of Interrogatories | 64-76 |

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

RENDA MARINE, INC., )
Plaintiff, )
)
vs. ) CASE NO. 02-306C
)
THE UNITED STATES, )
Defendant. )

ORAL DEPOSITION
THOMAS BENERO
January 8, 2004

ORAL DEPOSITION OF THOMAS BENERO, produced as a witness at the instance of the Plaintiff and duly sworn, was taken in the above-styled and numbered cause on the 8th day of January, 2004, from 9:02 a.m. to 5:06 p.m., before Stacey Whitley, Certified Shorthand Reporter in and for the State of Texas, reported by computerized stenotype machine at the offices of the United States Corps of Engineers, 2000 Fort Point Road, 2nd Floor, Galveston, Texas, pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.



EXHIBIT
A

A. Yes.
Q. And then it got further damaged?
A. Yes.
(Exhibit 44 marked)
Q. (BY MR. ERIKSON) Incidentally, do you still delete your E-mail?
A. Yes. It has worked very well for me the last 15 to 20 years. Why change something that ain't broke?
Q. Okay. Do you know of anybody else in the Corps who routinely deletes their E-mail?
A. Curtis Cole. He and I operate pretty similar. I asked him the same question. He does not keep a lot of stuff in personal folders and I don't either. Like I said, if I get a response to something, if it is information that I'm looking for, setting up a meeting or whatever, I get the answer, I'm satisfied with it. If I need to make a copy, I'll make a copy, stick it in the contract folder. Done.
Q. Okay. The court reporter has marked for identification as Benero Exhibit No. 44 a Steve Bowman letter signed by Mr. Smith to you dated April 16, 2001. Do you see that?
A. Yes.
Q. And this letter concerns Renda's dredge, again, hitting obstructions and debris on the Upper Bayou project, right?

I, THOMAS BENERO, have read the foregoing deposition and hereby affix my signature that same is true and correct, except as noted above.

Thomas Benero

THOMAS BENERO

THE STATE OF )

COUNTY OF )

Before me, RUBEN R. VILLAGRAN, on this day personally appeared THOMAS BENERO, known to me ~~or proved to me on the oath of~~ ~~or through~~ (description of identity card or other document) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/~~she~~ executed the same for the purpose and consideration therein expressed.

Given under my hand and seal of office on this 3rd day of MARCH, 2004.

Ruben R. Villagran

NOTARY PUBLIC IN AND FOR

THE STATE OF TEXAS

My Commission Expires:

RUBEN R. VILLAGRAN
Notary Public, State of Texas
My Commission Expires
January 02, 2005

STATE OF TEXAS
COUNTY OF HARRIS

REPORTER'S CERTIFICATE
ORAL DEPOSITION OF THOMAS BENERO
January 8, 2004

I, the undersigned Certified Shorthand Reporter in and for the State of Texas, certify that the facts stated in the foregoing pages are true and correct.

I further certify that I am neither attorney or counsel for, related to, nor employed by any parties to the action in which this testimony is taken and, further, that I am not a relative or employee of any counsel employed by the parties hereto or financially interested in the action.

SUBSCRIBED AND SWORN TO under my hand and seal of office on this the 22nd day of January, 2004.

Stacey Whitley by Norma DelaCruz

Stacey Whitley, CSR
Texas CSR 3999
Expiration: 12/31/2005
ESQUIRE DEPOSITION SERVICES
Firm Registration No.: 03
3401 Louisiana, Suite 300
Houston, Texas 77002
713-524-4600

QSCL
QUILLING · SELANDER · CUMMISKEY · LOWNDS

BRIAN W. ERIKSON
Direct: 214.880.1844

E-mail: berikson@qsclpc.com

December 17, 2003

John E. Kosloske, Esq.
Senior Trial Counsel, Commercial Litigation Branch
Department of Justice
Attn.: Classification Unit
1100 L Street, N.W., Room 12052
Washington, D.C. 20005

Re: Case No. 02-306C; *Renda Marine, Inc. v. United States Army Corps of Engineers*; United States Court of Federal Claims; DACW64-99-C-0001, Dredging Upper Bayou

Dear Mr. Kosloske:

In response to yours of November 26, 2003, concerning the attempts to retrieve data from Corps of Engineers' computers and backup tapes, I note the following.

Judge Hewitt ordered that the Corps preserve electronic data and evidence. Federal case law requires that the Corps preserve electronic data and evidence. Nevertheless, the Corps continues to delete electronic data and evidence.

Thomas Benero has continued to delete his email. When Universal Document Solutions examined Mr. Benero's computer hard drive, it appeared as if the hard drive were brand new. In fact, UDS asked if Mr. Benero's computer or hard drive were new. The corps IT personnel advised that it was the same computer and hard drive that Mr. Benero has been using for at least the last two years. Clearly, Mr. Benero is not honoring the Court's Order to preserve electronic data.

As another example, after a female Corps employee died, the Corps' IT personnel reformatted her hard drive, deleting all the information on it.

Judge Hewitt had ordered the Corps to preserve and turn over a copy of the oldest ackup tape for the email system. This tape had perhaps the most importance, and likely contains email that Mr. Benero deleted. The Corps had been telling UDS for quite some time that the Corps has been trying without success, to retrieve data from the backup tape. The Corps finally provided UDS with a copy of the backup tape, declaring that the tape was corrupted, and the data irretrievable.

With minimal effort, UDS retrieved the data from the tape, and will be sharing the data with the Corps.

UDS now needs to retrieve relevant documents and email from the data collected from the Corps. Alex Petty provided a four word search list. We are adding to the search term list. Please advise if you have any search terms which you wish that we include.

Obviously, the delayed turnover of the email backup tape, and recent retrieval of data has set back the completion of UDS's work. So that I can address the remainder of your letter, please provide the following information.

(1) Why did it take the Corps so long to announce that it could not retrieve data from the email backup tape?

(2) Why was the Corps unable to retrieve data from the email backup tape?

(3) Why is Mr. Benero continuing to delete his email and documents?

(4) Why is the Corps reformatting hard drives of persons with relevant knowledge?

Please respond at your earliest convenience.

Sincerely yours,

Brian W. Erikson

BWE/ga

cc: Oscar Renda

S:\Construction\Renda Marine\Upper Bayou 565.09\Kosloske 035.wpd

MODE = MEMORY TRANSMISSION START=DEC-18 10:40 END=DEC-18 10:41

FILE NO.=303

| STN NO. | COMM. | ABBR NO. | STATION NAME/TEL NO. | PAGES | DURATION |
|---|---|---|---|---|---|
| 001 | OK | ☎ | 12025148624 | 003/003 | 00:00:27 |

-Q S C L -

************************************** -Q S C L - ***** - 214 871 2111- *********

QSCL
QUILLING • SELANDER • CUMMISKEY • LOWNDS

# FAX TRANSMITTAL

TO: John E. Kosloske
Senior Trial Counsel, Commercial Litigation
Department of Justice, Civil Division

FAX NO: (202) 514-8624

FROM: Brian W. Erikson

DATE: December 18, 2003

CLIENT MATTER NUMBER: Renda Marine / Upper Bayou / 565.0009

NUMBER OF PAGES INCLUDING COVER PAGE: 3

IF YOU DO NOT RECEIVE ALL MATERIALS BEING TRANSMITTED, PLEASE CALL OUR OFFICE AT (214) 871-2100.

**COMMENTS:**

The information contained in this facsimile message is legally privileged and confidential information which is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any use, dissemination, distribution or reproduction of this message is strictly prohibited. If you have received this message in error, the material herewith should be destroyed immediately and the sender listed above should be notified by telephone.

S:\Construction\Renda Marine\Upper Bayou 565.09\Kosloske Fax.wpd

**APPENDIX**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC., | ) | |
| Plaintiff, | ) | |
| | ) | No. 02-306C |
| v. | ) | |
| | ) | (Judge Hewitt) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DECLARATION OF ____________________

1. My name is Barry D Bray.

2. My business address is 1700 Commerce Dallas TX 75201

______________________________.

3. My present employer is Universal Document Solutions

______________________________.

4. My present occupation or job description is CEO

______________________________.

5. I have received a copy of the "Protective Order Regarding Electronic Discovery" issued by the Court in the above captioned action and the related "Agreement Regarding Scope of Electronic Discovery."

6. I have carefully read and understand the provisions of the "Protective Order Regarding Electronic Discovery" and the related "Agreement Regarding Scope of Electronic Discovery." I have had the opportunity to confer with counsel of my choice to answer any questions I have regarding the "Protective Order Regarding Electronic Discovery."



EXHIBIT C

7. I certify that I am eligible to have access to the confidential records pursuant to the terms of the "Protective Order Regarding Electronic Discovery."

8. I shall comply with all of the provisions of the "Protective Order Regarding Electronic Discovery."

9. I shall hold all "Confidential Records" and any duplicates, notes, abstracts, or summaries thereof and any information contained therein or derived therefrom in confidence, and will not disclose such information to anyone not specifically entitled to access under the "Protective Order Regarding Electronic Discovery," and I will use the information only for the purpose and as permitted by the "Agreement Regarding Scope of Electronic Discovery."

10. I understand that I continue to have confidentiality obligations with regard to confidential information beyond the conclusion of this case.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 7-31-03

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 25th day of JULY, 2003, I caused to be sent by United States mail (postage prepaid) a copy of "PROTECTIVE ORDER REGARDING ELECTRONIC DISCOVERY" addressed as follows:

BRIAN W. ERIKSON, ESQ.
Quilling, Selander, Cummiskey & Lownds, P.C.
2001 Bryan Street, Suite 1800
Dallas, TX 75201

QSCL
QUILLING · SELANDER · CUMMISKEY · LOWNDS

BRIAN W. ERIKSON

Direct Line: 214.880.1844
E-mail: berikson@qsclpc.com

May 4, 2004

John E. Kosloske, Esq.
Senior Trial Counsel, Commercial Litigation Branch
Department of Justice
Attn.: Classification Unit
1100 L Street, N.W., Room 12052
Washington, D.C. 20005

*Via Facsimile & Certified Mail - Return Receipt Requested*

Re: Case No. 02-306C; *Renda Marine, Inc. v. United States Army Corps of Engineers*; United States Court of Federal Claims; DACW64-99-C-0001, Dredging Upper Bayou

Dear Mr. Kosloske:

As you know, Universal Document Solutions provided seven or so boxes of documents to the Government that the Government has deemed non-responsive and has not produced to Renda Marine in this case. To help resolve that matter, I propose the following.

<u>Alternative 1</u>

The Government consents to UDS examining the documents withheld and preparing a concise summary of the contents of a number of the documents so that the Court and Renda can better evaluate the propriety of the withholding of the documents.

<u>Alternative 2</u>

UDS can select a number of documents which in UDS' opinion are responsive and can share such documents with the Government and Renda for evaluation by the parties.

Alternative 2 will obviously save time and effort by UDS.

Please advise which if any of the alternatives the Government selects by signing in the appropriate place below and returning this letter to me by telecopy as soon as possible. Neither of the two alternatives above would involve documents that the Government has deemed are privileged.

Sincerely yours,

Brian W. Erikson

BWE/ja

cc: Oscar Renda



EXHIBIT D

Government Selection

Alternative 1 _____

Alternative 2 _____

Neither Alternative _____

______________________
John Kosloske

S:\Construction\Renda Marine\Upper Bayou 565.09\Kosloske 072.wpd

MODE = MEMORY TRANSMISSION START=MAY-04 16:39 END=MAY-04 16:39

FILE NO.=302

| STN NO. | COMM. | ABBR NO. | STATION NAME/TEL NO. | PAGES | DURATION |
|---|---|---|---|---|---|
| 001 | OK | 8 | 12025148624 | 003/003 | 00:00:24 |

-Q S C L -

************************************ -Q S C L - ***** - 214 871 2111- *********

QSCL

QUILLING · SELANDER · CUMMISKEY · LOWNDS

# FAX TRANSMITTAL

TO: John E. Kosloske
Senior Trial Counsel, Commercial Litigation
Department of Justice, Civil Division

FAX NO: (202) 514-8624

FROM: Brian W. Erikson

DATE: May 4, 2004

CLIENT MATTER NUMBER: Renda Marine / Upper Bayou / 565.0009

NUMBER OF PAGES INCLUDING COVER PAGE: 3

IF YOU DO NOT RECEIVE ALL MATERIALS BEING TRANSMITTED, PLEASE CALL OUR OFFICE AT (214) 871-2100.

**COMMENTS:**

Please see attached.

The information contained in this facsimile message is legally privileged and confidential information which is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any use, dissemination, distribution or reproduction of this message is strictly prohibited. If you have received this message in error, the material herewith should be destroyed immediately and the sender listed above should be notified by telephone.

S:\Construction\Renda Marine\Upper Bayou 565.09\Kosloske Fax.wpd

Bryan Tower 2001 Bryan St., Suite 1800 D... 00 fx 214.871.2111 www.qsclpc.com

A PROFESSIONAL CORP ... EYS AND COUNSELORS

**U.S. Department of Justice**

Civil Division

JKosloske
DJ # 154-02-306

Telephone: (202) 307-0282
Telecopy: (202) 514-8624

*Washington, D.C. 20530*

By Telecopy and First Class Mail

May 5, 2004

Brian W. Erikson, Esq.
Quilling, Selander, Cummiskey & Lownds, P.C.
2001 Bryan Street, Suite 1800
Dallas, TX 75201
(Telecopy: (214) 871-2111)

Re: Renda Marine, Inc. v. United States,
No. 02-306C (Fed. Cl.)

Dear Mr. Erikson:

This is in response to your letter of May 4, 2004, a copy of which is enclosed. Your proposal is unacceptable. We propose the following: For each of the search terms used by Universal Document Solutions (UDS) to produce the materials we reviewed, UDS selects two documents that the Government withheld from production as not "responsive" but which UDS believes are "responsive" and sends those documents to the Government accompanied by a statement for each document of the search term used to generate the document and the reason(s) that UDS believes the document is "responsive," i.e., that it relates to the Upper Bayou Project, that it relates to one or more of Renda's claims in this litigation (and, if so, which claim(s)), and/or that it relates to one or more of the Government's defenses in this litigation (and, if so, which defense(s)). Upon receipt of that information, we will review it and reconsider our determination to withhold documents as not "responsive" under the Agreement Regarding Scope of Electronic Discovery in this case.

Very truly yours,

John Kosloske

JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch

Enclosure



EXHIBIT
E

**U.S. Department of Justice**

Civil Division

JKosloske
DJ # 154-02-306

Telephone: (202) 307-0282
Telecopy: (202) 514-8624

*Washington, D.C. 20530*

By Telecopy and First Class Mail

November 26, 2003

Brian W. Erikson, Esq.
Quilling, Selander, Cummiskey & Lownds, P.C.
2001 Bryan Street, Suite 1800
Dallas, TX 75201
(Telecopy: (214) 871-2111)

Re: Renda Marine, Inc. v. United States,
No. 02-306C (Fed. Cl.)

Dear Mr. Erikson:

I am writing in reference to implementation of the "Agreement Regarding Scope of Electronic Discovery" (Discovery Agreement) in this case. I note that, on October 9 and 10, 2003, the Corps of Engineers Galveston District (Corps) provided Universal Document Solutions (UDS) with the bulk of the electronic data – approximately 25,000 documents – within the scope of the Discovery Agreement. The Discovery Agreement contemplates that UDS will provide the Government with "responsive documents" from those electronic data, in order that they may be reviewed for privileged information before producing the documents to plaintiff. As of last week when I consulted with the Corps about the status of implementation of the Discovery Agreement, UDS had not provided the Government with "responsive documents" for our review.

Apparently, there is one defective computer tape from which the Corps was unable to retrieve electronic data, a copy of which is I understand the Corps will provide to UDS for whatever use that UDS may be able to make of the tape. I can think of no good reason, however, why there should be any delay in providing the Government with "responsive documents" contained in the bulk of the electronic data provided by the Corps to UDS on October 9 and 10, 2003, so that we can begin the process of reviewing those materials for privileged information, in accordance with paragraph 4 of the Discovery Agreement. Under the pretrial schedule presently in effect, the parties are to have completed fact discovery – including that covered by the Discovery Agreement – by January 14, 2004.



EXHIBIT
F

Very truly yours,

JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch

Letters from the United States to Renda Producing Documents

| Date | Author | Recipient | Synopsis of letter |
|---|---|---|---|
| 11/15/2002 | | | 9 boxes arrived of documents responsive to Renda's 1st Request for Production of Documents (RM-COE-00001-19887); received CDs of documents on 1/23/03 |
| 2/3/2003 | | | One CD of additional images responsive to Renda's 1st Request for Production of Documents (RM-COE-19888-21559) |
| 2/14/2003 | J. Kosloske | B. Erikson | Forwarding hard copies of email documents responsive to Renda's 1st Request for Production of Documents (RM-COE-21560-22692) |
| 3/31/2003 | J. Kosloske | B. Erikson | Forwarding documents on CD numbered RM-COE-22693-22705 (replacement for faulty disks received earlier) |
| 4/21/2003 | J. Kosloske | B. Erikson | Discussing documents noted as privilege and providing copies of docs where privilege removed (RM-COE-22706-22760). |
| 5/1/2003 | J. Kosloske | B. Erikson | Transmitting DCAA Audit Papers and CDs (RM-DCAA-0900001 to RM-DCAA-1600227) |
| 7/18/2003 | J. Kosloske | B. Erikson | Forwarding copy of "materials described in Defendant's Third Supp. Response to Renda's 1st Request for Production" (aerial maps, C & C Technologies' binders, TVGA Consultants CD) |
| 2/3/2004 | J. Kosloske | B. Erikson | Forwarding 21 boxes of documents pertaining to experts, responsive to Renda's 1st Request for Production of Documents |
| 2/3/2004 | J. Kosloske | B. Erikson | Fowarding 2 boxes of expert reports, responsive to Renda's 1st Request for Production of Documents & 1st Set of Interrogatories. |



EXHIBIT G

| | | | |
|---|---|---|---|
| 3/22/2004 | J. Kosloske | B. Erikson | Forwarding 5 boxes from UDS query of hard drive back-up deemed to be responsive (various numbers within RM-GAL series) |
| 4/2/2004 | J. Kosloske | B. Erikson | Forwarding docs not previously provided: 41 RM-JSG photos (JSG 607-651); 5 RM-GBA photos (GBA141-145); COE Equip Manual (FM-FC-16332); Graphic of project; 668 COE project photos (RM-CPP-00001-668). |

# EXHIBIT H


1 888 ASK IKON
IKON
The Way Business Gets Communicated
RM-FC-12991
RM-FC-12998
2004 5 6

CD-Roms - 20



CD-Roms - 21




Government Produced Documents



Government Produced Documents


Pittsburgh
Baltimore
CliCKS
CliCKS
CliCKS

12:502

UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC., | § | |
| PLAINTIFF, | § | |
| | § | CASE NO. 02-306C |
| V. | § | |
| | § | (JUDGE HEWITT) |
| UNITED STATES ARMY | § | |
| CORPS OF ENGINEERS, | § | |
| DEFENDANT. | § | |

**RENDA MARINE, INC.'S OBJECTIONS AND RESPONSES TO FIRST REQUEST FOR PRODUCTION AND INSPECTION OF DOCUMENTS OF UNITED STATES ARMY CORPS OF ENGINEERS**

TO: United States Army Corps of Engineers, through its attorney of record, John E. Kosloske, Department of Justice, 1100 L Street, N.W., Room 8012, Washington, D.C. 20530.

Renda Marine, Inc. ("Renda"), objects and responds to the First Request for Production and Inspection of Documents of the United States Army Corps of Engineers ("Corps"), as follows.

## GENERAL OBJECTIONS

Renda generally objects to the Corps' requests insofar as they impose greater obligations on Renda than, or vary or conflict with, those required under RCFC 26 and 34.

Renda generally objects to these requests insofar as they seek information or documentation prepared by non-testifying consulting experts, which has not been relied on by testifying experts. Renda generally objects to these requests insofar as they invade the attorney-client, work product, investigative and other privileges. These objections shall be applicable to all responses to this document request.

Renda objects to the Definitions and Instructions insofar as they are unduly burdensome, vague, conflicting, harassing, and oppressive. Renda will interpret the requests using normal English, and comply with applicable Rules of the Court of Federal Claims.



EXHIBIT I

Renda objects to Instruction 19 insofar as it places an undue burden on Renda, and would reveal privileged information.

Renda objects to producing documents in the Corps' counsel's office as Renda will lose custody and control over such documents. Renda will produce documents in its attorney's office at a time mutually convenient.

**REQUESTS FOR PRODUCTION**

1. Any and all files and documents relating to the preparation of Renda's bid for the Contract, including, but not limited to, the following:

(a) takeoff sheets;

(b) labor or material quantity estimates;

(c) labor or material price estimates;

(d) pricing data or analyses of any kind prepared by or for Renda;

(e) work papers containing calculations of any kind;

(f) work papers relating to site conditions anticipated by Renda;

(g) documents that evaluate or analyze soil samples or borings;

(h) documents relating to Renda's anticipated rate of dredging production;

(i) documents relating to the review by Steve Bowman of the bid estimate;

(j) documents reviewed by Renda in preparing the bid; and

(k) bid preparation information provided to Renda by any subcontractor(s), potential subcontractor(s), or other person(s), including, but not limited to, work papers, worksheets, takeoff sheets, labor or material quantity estimates, labor or material price estimates, price quotes, pricing data, anticipated site conditions, and analyses of any kind.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

2. Any and all documents relating to any site investigation(s) performed by or for Renda with respect to the Upper Bayou Project prior to the submission of Renda's bid for the Contract.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

3. Any and all documents relating to the results of surveys performed by or for Renda with respect to the Upper Bayou Project prior to the submission of Renda's bid for the Contract.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

4. Any and all documents relating to any meetings with respect to the Upper Bayou Project that took place prior to the submission of Renda's bid for the Contract.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

5. Any and all documents prepared by or for Renda prior to the submission of Renda's bid for the Contract that discuss, interpret, evaluate, analyze, or otherwise comment upon any provision(s) or aspect(s) of the Contract plans and specifications, including, but not limited to, the plans and specifications for construction of the Lost Lake Levees and any evaluations or analyses prepared by any geotechnical consultants or soils engineers.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

6. Any and all documents and files relating to the bid protest referred to at paragraph 9 of the Complaint, including, but not limited to, submissions by Renda to the Government regarding

Renda's qualifications to perform the Contract and any documents prepared by or for Renda as a result of, or in connection with, the bid protest that were not submitted to the Government.

RESPONSE: Renda objects to this request insofar as it invades the attorney-client, work product, and investigative privileges. Subject to such objections, Renda will produce relevant, non-privileged documents (if any) at a time mutually convenient in Renda's counsel's offices.

7. Renda's dredging plan for the Upper Bayou Project and any revision(s), change(s), modification(s), or amendment(s) to the dredging plan.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

8. Transcripts of any and all depositions and the related deposition exhibits in Renda Marine, Inc. v. Dredging Supply Co., Inc., Case No. H-00-1721 (S.D. Tex), including, but not limited to, the depositions of Rudolph Joseph Renda, Eddie Fisher, and Steve Bowman.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

9. Any and all litigation files relating to Renda Marine, Inc. v. Dredging Supply Co., Inc., Case No. H-00-1721 (S.D. Tex).

RESPONSE: Renda objects to this request insofar as it invades the attorney-client, work product, and investigative privileges.

10. Any and all documents relating to the settlement of Renda Marine, Inc. v. Dredging Supply Co., Inc., Case No. H-00-1721 (S.D. Tex).

RESPONSE: Renda objects to this request insofar as it invades the attorney-client, work product and investigative privileges. Subject to such objections, Renda will

produce relevant, non-privileged documents (if any) at a time mutually convenient in Renda's counsel's offices.

11. Any and all documents relating to studies, reports, evaluations, and analyses prepared by "experts" retained by Renda "to analyze The Millennium and its various problems," referred to at paragraph 18 of the "Complaint" filed in Renda Marine, Inc. v. Dredging Supply Co., Inc., Case No. H-00-1721 (S.D. Tex).

RESPONSE: Renda objects to this request insofar as it invades the attorney-client, work product, and investigative privileges. Subject to such objections, Renda will produce relevant, non-privileged documents (if any) at a time mutually convenient in Renda's counsel's offices.

12. Any and all documents relating to communications between Renda and/or Oscar Renda Contracting, Inc., and Dredging Supply Co., Inc., regarding the Millennium, including, but not limited to, the dredging production capability of the Millennium, the performance of the Millennium upon the Upper Bayou Project, defects in the design, manufacture, or performance of the Millennium, and delay in the delivery of the Millennium to Renda.

RESPONSE: Renda objects to this request insofar as it invades the attorney-client, work product, and investigative privileges. Subject to such objections, Renda will produce relevant, non-privileged documents (if any) at a time mutually convenient in Renda's counsel's offices.

13. Any and all documents relating to the dredging capability of the Millennium, including, but not limited to, its production capability.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

14. Any and all documents relating to the performance of the Millennium upon the Upper Bayou Project.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

15. Any and all documents relating to defects in the design, manufacture, and/or performance of the Millennium.

RESPONSE: Renda objects to this request insofar as it invades the attorney-client, work product, and investigative privileges. Subject to such objections, Renda will produce relevant, non-privileged documents (if any) at a time mutually convenient in Renda's counsel's offices.

16. Any and all documents relating to delay in the delivery of the Millennium to Renda.

RESPONSE: Renda objects to this request insofar as it invades the attorney-client, work product, and investigative privileges. Subject to such objections, Renda will produce relevant, non-privileged documents (if any) at a time mutually convenient in Renda's counsel's offices.

17. Any and all documents relating to purchase orders for parts and/or materials for the Millennium during the period from October 26, 1998, through August 31, 2001.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

18. Any and all documents relating to engineering reports regarding the Millennium prepared by field representatives of any business entity, including, but not limited to, Dredging Supply Co., Inc., Vosta Dredging Equipment, Krupp Hagler Engineering Inc., and Krupp Fordartechnik.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

19. Any and all documents and files relating to the subcontract between Renda and Affolter Contracting Co., Inc., for the Upper Bayou Project, including, but not limited to, the subcontract, change orders, and pay requests.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

20. Any and all documents relating to communications between Renda and Affolter Contracting Co., Inc., with respect to the subcontract between Renda and Affolter Contracting Co., Inc., or the Upper Bayou Project, including, but not limited to, levee construction techniques and the design and construction of any part of the Lost Lake Levees.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

21. Any and all documents and files relating to each subcontract awarded by Renda for the Upper Bayou Project (other than the Affolter Contracting Co., Inc. subcontract), including, but not limited to, the subcontract, change orders, pay requests, and communications between Renda and the subcontractor with respect to the subcontract or the Upper Bayou Project.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

22. Any and all documents relating to payment and performance bonds acquired by Renda for the Upper Bayou Project, including, but not limited to, communications between Renda and its surety for the Contract, meeting minutes, financial documents, and loan papers.

RESPONSE: Renda objects to this request insofar as it is an impermissible fishing expedition, and seeks documents not relevant or reasonably calculated to lead to the discovery of admissible evidence. Renda objects to this request insofar as it invades the joint party communication privilege. Subject to such objections, Renda will produce relevant, non-privileged documents (if any) at a time mutually convenient in Renda's counsel's offices.

23. Any and all documents relating to dredge operations, maintenance, and/or parts or equipment for the Millennium during the period from October 26, 1998, through August 31, 2001, including, but not limited to, dredge operating, maintenance, and/or equipment logs or other periodic records of dredge operations, maintenance, and/or parts or equipment during that interval.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

24. Any and all documents relating to purchase orders for equipment and/or parts for the Millennium during the period from October 26, 1998, through August 31, 2001.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

25. Any and all documents relating to any damage sustained by the Millennium during the period from October 26, 1998, through August 31, 2001.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

26. Any and all documents relating to repairs to the Millennium for any damage sustained by the Millennium during the period from October 26, 1998, through August 31, 2001, including, but not limited to, the cost of such repairs.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

27. Any and all documents relating to communications between Renda and Oscar Renda Contracting, Inc., with respect to the Contract, the Upper Bayou Project, or any aspect of the Contract or Upper Bayou Project.

RESPONSE: Renda objects to this request insofar as it is an impermissible fishing expedition, and seeks documents not relevant or reasonably calculated to lead to the discovery of admissible evidence. Subject to such objections, Renda will produce relevant, non-privileged documents (if any) at a time mutually convenient in Renda's counsel's offices.

28. Any and all documents relating to communications between Renda and any of the following entities with respect to the Contract, the Upper Bayou Project, or any aspect of the Contract or Upper Bayou Project:

(a) the Government;

(b) the Port of Houston Authority;

(c) the Jay Simmons Group;

(d) Gahagan & Bryant Associates;

(e) Turner, Collie & Bradon;

(f) Houston Lighting & Power; and

(g) a Member of Congress.

RESPONSE: Renda objects to this request insofar as it is an impermissible fishing expedition, and seeks documents not relevant or reasonably calculated to lead to the discovery of admissible evidence. Subject to such objections, Renda

will produce relevant, non-privileged documents (if any) at a time mutually convenient in Renda's counsel's offices.

29. Any and all documents relating to communications between Renda and any supplier or manufacturer of dredge parts or equipment during the period from October 26, 1998, through August 31, 2001.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

30. Any and all documents relating to communications between officers or employees of Renda with respect to the Contract, the Upper Bayou Project, or any aspect of the Contract or Upper Bayou Project, including, but not limited to, communications between any two or more of the following persons: Oscar Renda; Rudy J. Renda; Rudy V. Renda; Steve Bowman; Eddie Fisher; Ben Goodloe; Glen Williams; Ben Warner; Heraclio Lopez; Arturo Rodriguez; Leo Herrara; Pat Duke; Lloyd Bates; Kenneth Machacek; and William Rigby.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

31. Any and all documents relating to communications between officers or employees of Oscar Renda Contracting, Inc., with respect to the Contract, the Upper Bayou Project, or any aspect of the Contract or Upper Bayou Project.

RESPONSE: Renda objects to this request insofar as it is an impermissible fishing expedition, and seeks documents not relevant or reasonably calculated to lead to the discovery of admissible evidence. Subject to such objections, Renda will produce relevant, non-privileged documents (if any) at a time mutually convenient in Renda's counsel's offices.

32. Any and all documents relating to communications between Barry Smith and/or Pathfinder Construction Consulting and Renda and/or Oscar Renda Contracting, Inc., with respect to the Contract, the Upper Bayou Project, or any aspect of the Contract or Upper Bayou Project.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

33. Any and all documents relating to communications between Barry Smith and/or Pathfinder Construction Consulting and the Government with respect to the Contract, the Upper Bayou Project, or any aspect of the Contract or Upper Bayou Project.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

34. Any and all documents that set forth the extent of the authority of Barry Smith and/or Pathfinder Construction Consulting to act for Renda either generally or with respect to the Upper Bayou Project or the Contract.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

35. The contract between Barry Smith and/or Pathfinder Construction Consulting and Renda and/or Oscar Renda Contracting, Inc., for services by Barry Smith and/or Pathfinder Construction Consulting relating to the Contract or the Upper Bayou Project, including but not limited to, the preparation of claims upon behalf of Renda under or relating to the Contract.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

36. The billings under the contract between Barry Smith and/or Pathfinder Construction Consulting and Renda and/or Oscar Renda Contracting, Inc., for services by Barry Smith and/or Pathfinder Construction Consulting relating to the Contract or the Upper Bayou Project.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

37. Any and all documents that relate to the private dredging work performed by Renda referred to at paragraphs 138 and 139 of the Complaint, including, but not limited to, the following documents:

(a) the contract for the private dredging work;

(b) documents relating to dredge operations, maintenance, and/or parts or equipment during the course of performing the private dredging work, including, but not limited to, dredge operating, maintenance, and/or equipment logs or other periodic records of dredge operations, maintenance, and/or parts or equipment;

(c) documents relating to purchase orders for equipment and/or parts for the Millennium during the course of performing the private dredging work;

(d) documents relating to any damage sustained by the Millennium during the course of performing the private dredging work; and

(e) documents relating to any repairs to the Millennium for damage sustained by the Millennium during the course of performing the private dredging work, including, but not limited to, the cost of such repairs.

RESPONSE: Renda objects to this request insofar as it is an impermissible fishing expedition, and seeks documents not relevant or reasonably calculated to lead to the discovery of admissible evidence. Subject to such objections, Renda

will produce relevant, non-privileged documents (if any) at a time mutually convenient in Renda's counsel's offices.

38. Any and all documents prepared by or for Renda and/or Oscar Renda Contracting, Inc., that relate to the progress of work upon the Upper Bayou Project.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

39. Any and all diaries, daily reports, field reports, logs, progress reports, construction reports, inspection reports, site visit reports, and job meeting minutes prepared by or for Renda and/or Oscar Renda Contracting, Inc., relating to the Upper Bayou Project, including, but not limited to, personal diaries, logs, or reports prepared by any of the following persons: Oscar Renda, Rudy J. Renda, Rudy V. Renda, Steve Bowman, Eddie Fisher, Ben Goodloe, Glen Williams, Ben Warner, Heracho Lopez, Arturo Rodriguez, Leo Herrara, Pat Duke, Lloyd Bates, Kenneth Machacek, William Rigby; and Barry Smith.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

40. Any and all documents prepared by or for Renda and/or Oscar Renda Contracting, Inc., during the course of Contract performance that evaluate or analyze the Contract plans and specifications for construction of the Lost Lake Levees, including, but not limited to, studies, evaluations, or analyses prepared by any geotechnical consultants or soils engineers.

RESPONSE: Renda objects to this request insofar as it invades the attorney-client, work product, and investigative privileges. Subject to such objections, Renda will produce relevant, non-privileged documents (if any) at a time mutually convenient in Renda's counsel's offices.

41. Any and all documents prepared by or for Renda and/or Oscar Renda Contracting, Inc., during the course of Contract performance that evaluate or analyze any difficulties experienced by Renda with construction of the Lost Lake Levees, including, but not limited to, studies, evaluations, or analyses prepared by any geotechnical consultants or soils engineers.

RESPONSE: Renda objects to this request insofar as it invades the attorney-client, work product, and investigative privileges. Subject to such objections, Renda will produce relevant, non-privileged documents (if any) at a time mutually convenient in Renda's counsel's offices.

42. Any and all documents relating to the results of surveys performed by or for Renda with respect to the Upper Bayou Project after Contract award.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

43. Any and all job cost reports, analyses, or other documents relating to periodic monitoring of costs incurred by Renda to perform the Contract.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

44. Any and all reports or other documents relating to the use, maintenance, or move-in/move-out of equipment to perform the Contract.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

45. Any and all labor time slips relating to the Upper Bayou Project.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

46. The certified payrolls for the Upper Bayou Project.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

47. Any and all documents relating to the types and number of employees assigned to the Millennium (i.e., the staffing pattern for the Millennium) during all or any part of the period from October 26, 1998, through August 31, 2001.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

48. Any and all documents that describe the duties and responsibilities of employees who performed any work upon the Millennium during all or any part of the period from October 26, 1998, through August 31, 2001.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

49. Any and all daily reports by Renda to the Government relating to dredging operations under the Contract.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

50. Any and all daily reports by Renda to the Government relating to construction at the Lost Lake Levees.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

51. Any and all daily reports prepared by or for Renda that relate to the Upper Bayou Project but which were not submitted to the Government.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

52. Any and all daily reports prepared by or for Renda relating to the Upper Bayou Project that contain any information which was not submitted to the Government.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

53. Any and all notes of meetings, minutes of meetings, or other records of meetings prepared by or for Renda relating to the Upper Bayou Project.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

54. Any and all production or productivity reports and/or analyses that relate to dredging or levee construction operations under the Contract.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

55. Any and all contract performance schedules prepared by or for Renda either before or after Contract award, including, but not limited to, any revision(s), change(s), modification(s), or amendment(s) to such schedule(s), and all narrative reports and diagrams.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

56. Any and all plans relating to the Upper Bayou Project prepared by or for Renda either before or after Contract award.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

57. Any and all as-built drawings prepared by or for Renda relating to the Upper Bayou Project.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

58. Any and all material testing reports obtained by Renda from sources outside Renda, such as laboratories or other testing firms, relating to the Upper Bayou Project, including, but not limited to, soil sampling and soil compaction tests.

RESPONSE: Renda objects to this request insofar as it seeks information or documentation produced by consulting experts. Subject to such objections, Renda will produce relevant, non-privileged documents (if any) at a time mutually convenient in Renda's counsel's offices.

59. Any and all photographs that relate to the Upper Bayou Project, including, but not limited to, photographs of the following:

(a) any damage sustained by the Millennium during Contract performance;

(b) obstructions encountered by the Millennium during Contract performance; and

(c) construction activities at the Lost Lake Levees.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

60. Any and all documents that relate to the South Ferry Landing Claim that is the subject of paragraphs 19 through 52 of the Complaint.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

61. Any and all documents that relate to the Flare Area Claim that is the subject of paragraphs 53 through 74 of the Complaint.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

62. Any and all documents that relate to the HL & P Tower Claim that is the subject of paragraphs 75 through 83 of the Complaint.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

63. Any and all documents that relate to the Section 7 Clay Claim that is the subject of paragraphs 84 through 90 of the Complaint.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

64. Any and all documents that relate to the West Levee Alignment Claim that is the subject of paragraphs 91 through 101 of the Complaint.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

65. Any and all documents that relate to the Obstruction #1 Claim that is the subject of paragraphs 102 through 120 of the Complaint.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

66. Any and all documents that relate to the Obstruction #2 Claim that is the subject of paragraphs 121 through 147 of the Complaint.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

67. Any and all documents that relate to the Lost Lake Levees Claim that is the subject of paragraphs 148 through 197 of the Complaint.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

68. The documents described at section B of the "Initial Disclosures by Plaintiff, Renda Marine, Inc.," dated October 21, 2002, in the above captioned action.

RESPONSE: Renda will produce the documents requested (if any exist) at a time mutually convenient in Renda's counsel's offices.

Respectfully submitted,

QUILLING, SELANDER, CUMMISKEY & LOWNDS, P.C.

BY: ______________________________
Brian W. Erikson, TX Bar No. 06643800
Andrew M. Trusevich, TX Bar No. 00785119

2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Telefax)
ATTORNEYS FOR RENDA MARINE, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 5th day of December, 2002, a true and correct copy of the foregoing was sent via United States mail, postage prepaid, in an envelope addressed as follows:

John E. Kosloske, Esq.
Senior Trial Counsel, Commercial Litigation Branch
Department of Justice
Attn.: Classification Unit
1100 L Street N.W., Room 8012
Washington, DC 20530

Brian W. Erikson

1.3.03

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 02-306C |
| v. | ) | |
| | ) | (Judge Hewitt) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSES TO REQUESTS NOS. 15, 27, AND 28
OF PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to RCFC 26 and 34, defendant, the United States, responds to document production requests 15, 27, and 28 contained in the "First Request for Production of Documents by Plaintiff, Renda Marine, Inc., to Defendant, United States Army Corps of Engineers" dated November 1, 2002, as follows:

REQUEST NO. 15: Any written policies, procedures and guidelines as they relate to computers, electronic data, and electronic media regarding:

A. File naming conventions and standards

B. Diskette labeling standards

C. Back up tape rotation schedules

D. Electronic media retention/destruction schedules; and,

E. Corporate policies concerning employee use of company computers and data.

RESPONSE: Defendant has identified documents responsive to this production request, copies of which are appended at Tab A.

Blumberg No. 5118 EXHIBIT J



RECEIVED JAN 07 2003

REQUEST NO. 27: Any surveys, soundings, evaluations, or results from previous projects in the area of the Upper Bayou Project.

RESPONSE: Corps of Engineers contracts for dredging work performed in the area of the Upper Bayou Project during the period from 1949 to 1999 are listed in the spreadsheet at Tab B. Documents relating to those contracts, which may contain information responsive to this production request, are stored at facilities in Galveston and Fort Worth, Texas. Defendant will produce those materials for plaintiff's inspection at a mutually convenient time and place.

REQUEST NO. 28: Any records or documents concerning any dredging, borrowing, deposits, filling, surveying, or other construction activity in the area of the Upper Bayou Project prior to the issuance of the notice to proceed with construction on the Upper Bayou Project.

RESPONSE: Corps of Engineers contracts for dredging work performed in the area of the Upper Bayou Project during the period from 1949 to 1999 are listed in the spreadsheet at Tab B. Documents relating to those contracts, which may contain information responsive to this production request, are stored at facilities in Galveston and Fort Worth, Texas. Defendant will produce those materials for plaintiff's inspection at a mutually convenient time and place.

ROBERT D. McCALLUM, JR.
Assistant Attorney General

DAVID M. COHEN
Director

JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-0282

Attorneys for Defendant

JANUARY 3, 2003

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 02-306C |
| v. | ) | |
| | ) | (Judge Hewitt) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S THIRD SUPPLEMENTAL RESPONSE
TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to RCFC 26 and 34, defendant, the United States, supplements the response to document production request 25 contained in "Defendant's Partial Response to Plaintiff's First Request for Production of Documents" dated December 4, 2002, as follows:

REQUEST NO. 25: Any surveys, soundings, maps, drawings, or other graphical depictions of the Upper Bayou Project, or any of Renda's work on the Upper Bayou Project.

RESPONSE: Defendant has identified the following additional material responsive to this document production request received by defendant after "Defendant's Partial Response to Plaintiff's First Request for Production of Documents" dated December 4, 2002, was served upon plaintiff: the results of a survey of the Lost Lake Placement Area performed by C & C Technologies, Inc., for the United States Army Corps of Engineers, Galveston District. These materials consist of seven binders of survey results, a computer disk containing an electronic version of the photogrametry of the Lost Lake Placement Area, and two poster-size photo mosaics of the photogrametry of the Lost Lake Placement Area. Defendant will produce these materials for inspection and/or copying at a mutually convenient date and time at defendant's counsel's

Blumberg No. 5118 EXHIBIT K

Washington, D.C. offices. If plaintiff would prefer to order a copy of these materials, defendant will arrange to have them copied at plaintiff's expense.

ROBERT D. McCALLUM, JR.
Assistant Attorney General

DAVID M. COHEN
Director

JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-0282

Attorneys for Defendant

OF COUNSEL:

MR. P. ALEX PETTY
Assistant District Counsel
Office of Counsel
Galveston District
U.S. Army Corps of Engineers
Galveston, TX

JUNE 25, 2003

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 25th day of JUNE, 2003, I caused to be sent by United States mail (postage prepaid) the original of "DEFENDANT'S THIRD SUPPLEMENTAL RESPONSE TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS" addressed as follows:

BRIAN W. ERIKSON, ESQ.
Quilling, Selander, Cummiskey & Lownds, P.C.
2001 Bryan Street, Suite 1800
Dallas, TX 75201

John Koslosky

**U.S. Department of Justice**

Civil Division

JKosloske
DJ # 154-02-306

Telephone: (202) 307-0282
Telecopy: (202) 514-8624

*Washington, D.C. 20530*

July 18, 2003

By Federal Express

Brian W. Erikson, Esq.
Quilling, Selander, Cummiskey & Lownds, P.C.
2001 Bryan Street, Suite 1800
Dallas, TX 75201
(Tele: (214) 871-2100)

Re: Renda Marine, Inc. v. United States,
No. 02-306C (Fed. Cl.)

Dear Mr. Erikson:

Enclosed is a copy of the materials described in "Defendant's Third Supplemental Response to Plaintiff's First Request for Production of Documents" dated June 25, 2003.

Very truly yours,

John Kosloske

JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch

Enclosures



EXHIBIT
L

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 02-306C |
| v. | ) | |
| | ) | (Judge Hewitt) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S INITIAL DISCLOSURE PURSUANT TO RULE 26(a)(1)

The information required by RCFC 26(a)(1)(A) is set forth in the appended chart. The Government will provide plaintiff with a copy of the documents required by RCFC 26(a)(1)(B) on or before November 15, 2002.

ROBERT D. McCALLUM, JR.
Assistant Attorney General

DAVID M. COHEN
Director

JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-0282

Attorneys for Defendant

OCTOBER 8, 2002

EXHIBIT
M



RECEIVED OCT 15 2002

**Initial Disclosure Of Individuals Likely To Have Discoverable Information Required By RCFC 26(a)(1)(A)**

| Witness | Organization | Title | Address & Telephone # | Subject of Information |
|---|---|---|---|---|
| Thomas Benero: | U. S. Army Corps of Engineers | Chief, Contracting Division | U. S. Army Corps of Engineers, Galveston District<br>P.O. Box 1229<br>Galveston, TX 77553<br>409-766-3899 | Contract award/administration, meetings/correspondence with Renda related to performance issues |
| Ira Brotman: | U. S. Army Corps of Engineers | Geotechnical Engineer | U. S. Army Corps of Engineers, Galveston District<br>P.O. Box 1229<br>Galveston, TX 77553<br>409-766-3899 | Elements of the project design |
| David Brown: | U. S. Army Corps of Engineers | Engineering Manager | U. S. Army Corps of Engineers, Galveston District<br>P.O. Box 1229<br>Galveston, TX 77553<br>409-766-3899 | Overall Design Management |
| Timothy Few: | U. S. Army Corps of Engineers | Geotechnical Engineer | U. S. Army Corps of Engineers, Galveston District<br>P.O. Box 1229<br>Galveston, TX 77553<br>409-766-3899 | Elements of the project design, observations of the contract work, review/analysis/resolution of construction contract issues |
| Dalton Krueger: | U. S. Army Corps of Engineers | Project Manager | U. S. Army Corps of Engineers, Galveston District<br>P.O. Box 1229<br>Galveston, TX 77553<br>409-766-3899 | Overall program development |
| C. Michael McClenan: | U. S. Army Corps of Engineers | Area Engineer | U. S. Army Corps of Engineers, Galveston District<br>P.O. Box 1229<br>Galveston, TX 77553<br>409-766-3899 | Contract administration, meetings/correspondence with Renda related to performance issues, observations of the contract work. |

| Witness | Organization | Title | Address & Telephone # | Subject of Information |
| --- | --- | --- | --- | --- |
| Michael Rawls: | U. S. Army Corps of Engineers | Construction Manager | U. S. Army Corps of Engineers, Galveston District<br>P.O. Box 1229<br>Galveston, TX 77553<br>409-766-3899 | Technical analysis for the audit |
| Alton Meyer: | U. S. Army Corps of Engineers | Civil Design Engineer | U. S. Army Corps of Engineers, Galveston District<br>P.O. Box 1229<br>Galveston, TX 77553<br>409-766-3899 | Elements of project design |
| John Rozsypal: | U. S. Army Corps of Engineers | Chief, Construction Branch | U. S. Army Corps of Engineers, Galveston District<br>P.O. Box 1229<br>Galveston, TX 77553<br>409-766-3899 | Construction contract issues, dredging industry practices and procedures |
| Eric Russek: | U. S. Army Corps of Engineers | Civil Engineer | U. S. Army Corps of Engineers, Galveston District<br>P.O. Box 1229<br>Galveston, TX 77553<br>409-766-3899 | Construction contract issues, periodic observations of the work, contract administration |
| Will Sanford: | U. S. Army Corps of Engineers | | | Analysis of Renda's Flare Area request for equitable adjustment |
| Leon Hrabovsky: | Gahagan & Bryant Assoc. | Civil Engineer | TCB/GBA – Joint Venture<br>5757 Wood Way<br>Houston, TX 77057-1599<br>713-780-4100 | Day-to-day observation of the construction |
| Charles Baron: | Gahagan & Bryant Assoc. | Construction Representative | TCB/GBA – Joint Venture<br>5757 Wood Way<br>Houston, TX 77057-1599<br>713-780-4100 | Day-to-day observation of the construction |

| Witness | Organization | Title | Address & Telephone # | Subject of Information |
|---|---|---|---|---|
| Wendell Mears: | Gahagan & Bryant Assoc. | Civil Engineer | TCB/GBA – Joint Venture<br>5757 Wood Way<br>Houston, TX 77057-1599<br>713-780-4100 | Periodic observation of the work, construction contract issues |
| Neil Bishop: | Turner, Collie & Bradon | Principal Engineer | TCB/GBA – Joint Venture<br>5757 Wood Way<br>Houston, TX 77057-1599<br>713-780-4100 | Construction contract issues, periodic observation of the work |
| Allan Jefts: | Turner, Collie & Bradon | Project Manager | TCB/GBA – Joint Venture<br>5757 Wood Way<br>Houston, TX 77057-1599<br>713-780-4100 | Construction contract issues, periodic observation of the work |
| HVJ Associates, Inc. (Michael Hasen): | HVJ Associates, Inc. | Geotechnical Engineer | HVJ Associates, Inc.<br>6120 S. Dairy Ashford Rd.<br>Houston, TX 77072<br>281-933-7388 | Elements of the project design |

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 8th day of OCTOBER, 2002, I caused to be sent by United States mail (postage prepaid) a copy of "DEFENDANT'S INITIAL DISCLOSURE PURSUANT TO RULE 26(a)(1)" addressed as follows:

BRIAN W. ERIKSON, ESQ.
Quilling, Selander, Cummiskey & Lownds, P.C.
2001 Bryan Street, Suite 1800
Dallas, TX 75201

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 02-306C |
| v. | ) | |
| | ) | (Judge Hewitt) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

SUPPLEMENT TO DEFENDANT'S INITIAL DISCLOSURE

Pursuant to RCFC 26(e)(1), defendant, the United States, supplements the Government's initial disclosure statement in the above captioned action pursuant to RCFC 26(a)(1)(B) by providing plaintiff with copies of the file titled "U.S. Army Corps of Engineers, Galveston District, "Mistake in Bid – Renda Marine," Solicitation No. DACW64-98-B-0004" (RM-COE-22761 to RM-COE-23244) and the Government's updated privileged documents log. The Government's failure to produce this file at the time of the initial document production in November 2002 was inadvertent. The "Mistake in Bid" file was discovered recently during a search for bid estimate materials relative to the Upper Bayou Project prompted by plaintiff's representation that it could not locate any such materials and the "Affidavit of Steven C. Bowman" dated August 26, 1998 (RM-COE-05620 to RM-COE-05623), a copy of which is contained in the appendix to "Defendant's Motion to Compel" dated May 2, 2003.

ROBERT D. McCALLUM, JR.
Assistant Attorney General

DAVID M. COHEN
Director

EXHIBIT N



RECEIVED JUL - 2 2003

OF COUNSEL:

MR. P. ALEX PETTY
Assistant District Counsel
Office of Counsel
Galveston District
U.S. Army Corps of Engineers
Galveston, TX

JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-0282

Attorneys for Defendant

JUNE 25, 2003

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 25th day of JUNE, 2003, I caused to be sent by United States mail (postage prepaid) a copies of "SUPPLEMENT TO DEFENDANT'S INITIAL DISCLOSURE" and the documents described therein addressed as follows:

BRIAN W. ERIKSON, ESQ.
Quilling, Selander, Cummiskey & Lownds, P.C.
2001 Bryan Street, Suite 1800
Dallas, TX 75201

BRIAN W. ERIKSON
Direct: 214.880.1844

QSCL
QUILLING · SELANDER · CUMMISKEY · LOWNDS

berikson@qsclpc.com

September 24, 2003

John E. Kosloske, Esq.
Senior Trial Counsel, Commercial Litigation Branch
Department of Justice
Attn.: Classification Unit
1100 L Street, N.W., Room 12052
Washington, D.C. 20005

Re: Case No. 02-306C; *Renda Marine, Inc. v. United States Army Corps of Engineers*; United States Court of Federal Claims; DACW64-99-C-0001, Dredging Upper Bayou

Dear Mr. Kosloske:

The Government has furnished Renda Marine various documents listed in your letter to me of April 17, 2003. I attached a copy for your ready reference. Please advise if there are any remaining documents for which I need to arrange for copies.

Sincerely yours,

Brian W. Erikson

BWE/plj
S:\Construction\Renda Marine\Upper Bayou 565.09\Kosloske 029.wpd

cc: Mr. Rudy Renda
Renda Marine
#7 Benson Lane
Roanoke, TX 76262

U.S. Department of Justice

Civil Division

JKosloske
DJ # 154-02-306

Telephone: (202) 307-0282
Telecopy: (202) 514-8624

*Washington, D.C. 20530*

April 17, 2003

By Telecopy and First Class Mail

Brian W. Erikson, Esq.
Quilling, Selander, Cummiskey & Lownds, P.C.
2001 Bryan Street, Suite 1800
Dallas, TX 75201
(Telecopy: (214) 871-2111)

Re: Renda Marine, Inc. v. United States,
No. 02-306C (Fed. Cl.)

Dear Mr. Erikson:

This is in response to your letter of April 8, 2003, requesting that we provide you with a copy of the CD-rom containing images of documents produced by Dredging Supply Company and its counsel in response to the subpoenas duces tecum that we caused to be served upon them. Here is a list of what we obtained from that document production:

1. CD of imaged documents Job #030596 dated 4/7/03 (Bates # RM-DSC-00001 to RM-DSC-05684).

2. CD of project photographs (98360) (Bates # RM-DSC-00002).

3. 140 color photographs (8-1/2" x 11").

4. 4 oversized drawings.

5. 1 videotape.

If you wish to obtain a copy of any of these materials, please contact Michael Bobo of IKON Washington, D.C. ((202) 452-8818). We have alerted Mr. Bobo to the possibility that you may contact him to place an order for all or any part of these materials, at your expense. Should you desire copies of the CD of project photographs, the color photographs, the oversized drawings, or the videotape, Mr. Bobo will retrieve those materials from us when you place the order with IKON for them.

Very truly yours,

John Kosloske

JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch

TOTAL P.03

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 02-306C |
| v. | ) | |
| | ) | (Judge Hewitt) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S AMENDED RESPONSE
TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Pursuant to Rule 26(e)(2) of the United States Court of Federal Claims, defendant, the United States, amends its response to Interrogatory No. 8 contained in the "First Set of Interrogatories by Plaintiff, Renda Marine, Inc. to Defendant, United States Army Corps of Engineers" dated November 1, 2002, as follows:

GENERAL STATEMENTS AND OBJECTIONS

1. The word usage and sentence structure is that of the attorney who prepared these responses and does not purport to be the exact language of the executing parties.

2. The information supplied in these responses is that currently available to defendant, its agents, representatives, or attorneys, unless privileged. Discovery in this litigation has not been completed. Defendant, therefore, reserves the right to supplement or modify the responses to these interrogatories, as appropriate, if and when additional information becomes available through discovery, consultation with expert witnesses, or otherwise. Defendant further reserves the right to introduce at trial any testimonial, documentary, or other form of evidence of facts yet to be discovered.



EXHIBIT P

3. Defendant objects to plaintiff's interrogatories to the extent that they request information that is protected by the attorney-client privilege, the attorney work product doctrine, or other recognized exemptions from disclosure.

4. Defendant objects to plaintiff's interrogatories to the extent that they are overly broad, vague, ambiguous, oppressive, or unduly burdensome.

5. Defendant incorporates by reference the above general objections into its responses to the individual interrogatories below.

INTERROGATORY NO. 8: Please state the nature and extent of any defenses that you have to Renda's claims in this suit, and for each such defense, please state the factual or legal basis for the defense, and the identity of each person with knowledge of any such defense.

AMENDED RESPONSE: Discovery in this litigation has not been completed, and defendant's investigation and/or evaluation of potential defenses to the claims that are the subject of the above captioned action is continuing. Therefore, we reserve the right to supplement or modify the response to this interrogatory, as appropriate, if and when additional information becomes available through discovery, consultation with potential expert witnesses, or otherwise. We further reserve the right to introduce at trial any testimonial, documentary, or other form of evidence of facts yet to be discovered. Subject to those qualifications, defendant states that, as of this time, we have identified the following defenses to plaintiff's claims:

South Ferry Landing Differing Site Conditions Claim

1. The contract documents do not affirmatively indicate or represent the conditions that form the basis of this differing site conditions claim. The contract documents do not indicate, one way or the other, the presence of riprap, rubble, or other shore protection at or near the South Ferry Landing.

2. Plaintiff has not produced any evidence of the alleged "obstructions" that form the basis of this differing site conditions claim. The contract (specification 02482, 3.4.4.2, Debris) required plaintiff to place "scrap, rope, wire cable, piles, pipe or other obstructive material which may be encountered during the dredging operations" at approved locations. Plaintiff failed to comply with this requirement.

3. To the extent that the "obstructions" that form the basis of this differing site conditions claim are riprap, rubble, or other shore protection at or near the South Ferry Landing, plaintiff reasonably could have foreseen those conditions at the time of bidding.

4. Plaintiff cannot demonstrate reasonable reliance upon its interpretation of the contract and contract documents at the time of bidding.

5. To the extent that the "obstructions" that form the basis of this differing site conditions claim are rip rap, rubble, or other shore protection at or near the South Ferry Landing, plaintiff caused or contributed to the obstructions by overdredging of the contract dredge template, as a result of which Plaintiff directly encountered or undermined the shore protection at or near South Ferry Landing, as determined in the January 30, 2004 and February 18, 2004 expert reports of Robert W. Lofgren, copies of which have been provided to plaintiff. The contract specifications (§ 02482, 3.5.2, Side and End Slopes) provided that plaintiff "use caution when cutting the side slopes in the channel from Station 470+00 to Station 473+00," that "[e]xcessive cutting outside the side slope lines and grades in these reaches of the Channel may cause damage to existing structures along the Channel," and that "the Contractor may consider shaping the top of the cut in these reaches by using the dredge cutter head or mechanical equipment." Plaintiff failed to comply with this requirement.

6. The contract specifications, at 02482, 3.4.4.2, Debris, required plaintiff to "carefully inspect the entire area to be dredged, from estimated top of cut to top of cut, by whatever means the Contractor (plaintiff) deems suitable to locate any debris which may interfere with dredging operations." Plaintiff failed to comply with this requirement.

7. The alleged conditions that form the basis of this differing site conditions claim are not unknown physical conditions at the site, of an unusual nature, that differ materially from conditions ordinarily encountered and generally recognized as inhering in the dredging work provided for in the contract.

8. Assuming for the sake of argument that defendant is liable to plaintiff upon the South Ferry Landing differing site conditions claim, the claim nevertheless is overstated by at least $334,881 for the reasons set forth in DCAA Audit Report No. 3511-2003M17200006 dated December 12, 2002, a copy of which has been provided to plaintiff.

9. Assuming for the sake of argument that defendant is liable to plaintiff upon the South Ferry Landing differing site conditions claim, plaintiff is entitled to a maximum $34,003 and a two calendar day extension for the reasons set forth in the January 30, 2004 and February 23, 2004 expert reports of William F. Connole, P.E., copies of which have been provided to plaintiff.

Based upon information presently available to defendant, individuals with knowledge of facts relating to the defenses numbered 1 through 7 above are Eric Russek, Mike McClenan, John Rozsypal, Wendell Mears, Leon Hrabovsky, William F. Connole, P.E., Robert Lofgren, Alton Meyers, and Darrell Shobert, C.P.A.

Flare Area Differing Site Conditions Claim

1. The contract documents do not affirmatively indicate or represent the conditions that form the basis of this differing site conditions claim. The contract documents do not indicate, one way or the other, the character of the majority of the materials in the Flare Area. Even so, the contract documents cannot be reasonably interpreted to indicate that plaintiff would not encounter stiff or very stiff clays in the Flare Area, for the reasons set forth in the January 30, 2004 and February 15, 2004 expert reports of Robert Lofgren, the January 30, 2004 expert report of William F. Connole, P.E., and the and the February 26, 2004 expert report of Jack Fowler, Ph.D., P.E., copies of which have been provided to plaintiff.

2. Plaintiff cannot demonstrate reasonable reliance upon its interpretation of the contract and contract documents at the time of bidding.

3. Plaintiff caused or contributed to the alleged increased costs of performance by overdredging of the contract dredging template.

4. Plaintiff caused or contributed to the alleged increased costs of performance through its failure to provide sufficient plant to the project to transport "clay balls" from the dredge to the contract disposal area at Lost Lake, for the reasons set forth in the January 30, 2004 and February 18, 2004 expert reports of Robert Lofgren, copies of which have been provided to plaintiff.

5. Plaintiff did not provide timely notice of the alleged differing site condition, as required by the contract.

6. Assuming for the sake of argument that defendant is liable to plaintiff upon the Flare Area differing site conditions claim, the claim nevertheless is overstated by at least $1,306,729 for the reasons set forth in DCAA Audit Report No. 3511-2003M17200005 dated December 12, 2002, a copy of which has been provided to plaintiff.

7. Assuming for the sake of argument that defendant is liable to plaintiff upon the Flare Area differing site conditions claim, plaintiff is entitled to a maximum of $275,352 and an eleven calendar day time extension for the reasons set forth in the January 30, 2004 and February 23, 2004 expert reports of William F. Connole, P.E., copies of which have been provide to plaintiff.

Based upon information presently available to defendant, individuals with knowledge of facts relating to the defenses numbered 1 through 6 above are Eric Russek, Mike McClenan, Johnny Rozsypal, James Few, Wendell Mears, Leon Hrabovsky, Charles Baron., Robert Lofgren, William F. Connole, P.E., Jack Fowler, Ph.D., P.E., and Darrell Shobert, C.P.A.

HL&P Tower Differing Site Conditions Claim

1. The conditions that form the basis of this claim developed during the course of contract performance. The Differing Site Conditions clause applies only to conditions that existing at the time of contract award. See Olympus Corp. v. United States, 98 F.3d 1314 (Fed. Cir. 1995).

2. The conditions that form the basis of this claim were not subsurface or latent conditions. The Differing Site Conditions clause applies only to subsurface or latent conditions. See Olympus Corp. v. United States, 98 F.3d 1314 (Fed. Cir. 1995).

3. Plaintiff did not provide timely notice of the alleged differing site condition, as required by the contract. Plaintiff took unilateral action without requesting input or direction from the Corps of Engineers contracting officer, thereby depriving the contracting officer the opportunity to coordinate or accommodate HL&P's needs in a manner that would not have interfered with plaintiff's dredging operations.

4. Plaintiff failed to coordinate with HL&P, which could have avoided the need to relocate the dredge discharge pipe a second time.

5. Assuming for the sake of argument that defendant is liable to plaintiff upon the HL&P Tower differing site conditions claim, the claim nevertheless is overstated by at least $45,000 for the reasons set forth in DCAA Audit Report No. 3511-2003M17200007 dated December 12, 2002, a copy of which has been provided to plaintiff.

6. Assuming for the sake of argument that defendant is liable to plaintiff upon the HL&P Tower differing site conditions claim, plaintiff is entitled to a maximum $18,780 and a two calendar day time extension for the reasons set forth in the January 30, 2004 and February 23, 2004 expert reports of William F. Connole, P.E., copies of which have been provided to plaintiff.

Based upon information presently available to defendant, individuals with knowledge of facts relating to the defenses numbered 1 through 5 above are Eric Russek, Mike McClenan, Wendell Mears, Leon Hrabovsky, Charles Baron, William F. Connole, P.E., and Darrell Shobert.

Section 7 Clay Differing Site Conditions Claim

1. The conditions indicated in the contract documents do not differ materially from the conditions encountered by plaintiff that form the basis of this differing site conditions claim, i.e., significant quantities of stiff or very stiff clay, for the reasons set forth in the January 30, 2004 report of William F. Connole, P.E., and the February 2, 2004 expert report of Dr. Jack Fowler, P.E., copies of which have been provided to plaintiff.

2. Plaintiff cannot demonstrate reasonable reliance upon its interpretation of the contract and contract documents at the time of bidding.

3. Plaintiff caused or contributed to the alleged increased costs of performance by overdredging of the contract dredging template.

4. Color of clay sediments does not have any effect on the consistency or stiffness of the material.

5. Assuming for the sake of argument that defendant is liable to plaintiff upon the Section 7 Clay differing site conditions claim, the claim nevertheless is overstated by at least $256,143 for the reasons set forth in DCAA Audit Report No. 3511-2003M17200011 dated December 12, 2002, a copy of which has been provided to plaintiff.

6. Plaintiff is not entitled to any additional time or monetary damages for the reasons set forth in the January 30, 2004 and February 23, 2004 expert reports of William F. Connole, P.E., copies of which have been provided to plaintiff.

Based upon information presently available to defendant, individuals with knowledge of facts relating to the defenses numbered 1 through 5 above are Eric Russek, Mike McClenan, James Few, Wendell Mears, Leon Hrabovsky, William F. Connole, P.E., and Jack Fowler, Ph.D., P.E.

Obstruction #1 Differing Site Conditions Claim

1. Plaintiff did not provide evidence of the alleged excessive trash, which deprived the Corps of Engineers Contracting Officer of the opportunity to determine if the trash encountered in fact was excessive. The contract (Specification 02482, 3.4.4.2, Debris) required plaintiff to place "scrap, rope, wire cable, piles, pipe or other obstructive material which may be encountered during the dredging operations" at approved locations. Plaintiff failed to comply with this requirement.

2. Plaintiff cannot demonstrate reasonable reliance upon its interpretation of the contract and contract documents at the time of bidding.

3. The contract specifications, at 02482, 3.4.4.2, Debris, required plaintiff to "carefully inspect the entire area to be dredged, from estimated top of cut to top of cut, by whatever means the Contractor (plaintiff) deems suitable to locate any debris which may interfere with dredging operations." Plaintiff failed to comply with this requirement.

4. A prudent contractor, dredging in an active waterway such as the Houston Ship Channel, should have reasonably anticipated encountering miscellaneous debris, trash and other objects (navigational markers) from ship traffic, nearby industry, contributories, etc. The encountering of larger objects such as a stern swivel, Conex box or mooring buoy and chain should not have presented a major problem to a reasonably prudent dredging contractor for reasons as set forth in the January30, 2004 expert report of Robert Lofgren, a copy of which was provided to plaintiff.

5. The alleged conditions that form the basis of this differing site conditions claim are not unknown physical conditions at the site, of an unusual nature, that differ materially from conditions ordinarily encountered and generally recognized as inhering in the dredging work provided for in the contract.

6. Assuming for the sake of argument that defendant is liable to plaintiff upon the Obstruction #1 differing site conditions claim, the claim nevertheless is overstated by at least $351,000 for the reasons set forth in DCAA Audit Report No. 3511-2003M17200008 dated December 12, 2002, a copy of which has been provided to plaintiff.

7. Assuming for the sake of argument that defendant is liable to plaintiff upon the Obstruction #1 differing site conditions claim. Plaintiff is entitled to a maximum $499,675 and a fourteen calendar day time extension for the reasons set forth in the January 30, 2004 and February 23, 2004 expert reports of William F. Connole, P.E., copies of which have been provided to plaintiff.

Based upon information presently available to defendant, individuals with knowledge of facts relating to the defense numbered 1 through 5 above are Eric Russek, Mike McClenan, John Rozsypal, Wendell Mears, Leon Hrabovsky, Charles Baron, William F. Connole, P.E., Robert Lofgren, and Chris Babitzke.

Obstruction #2 Differing Site Conditions Claim

1. The contract specifications, at 02482, 3.4.4.2, Debris, required plaintiff to "care-fully inspect the entire area to be dredged, from estimated top of cut to top of cut, by whatever means the Contractor (plaintiff) deems suitable to locate any debris which may interfere with dredging operations." Plaintiff failed to comply with this requirement.

2. Plaintiff cannot demonstrate reasonable reliance upon its interpretation of the contract and contract documents at the time of bidding.

3. A prudent contractor, dredging in an active waterway such as the Houston Ship Channel, should have reasonably anticipated encountering miscellaneous debris, trash and other objects (navigational markers) from ship traffic, nearby industry, contributories, etc. The encountering of larger objects such as a stern swivel, Conex box or mooring buoy and chain should not have presented a major problem to a reasonably prudent dredging contractor for reasons as set forth in the January30, 2004 expert report of Robert Lofgren, a copy of which was provided to Plaintiff.

4. The alleged conditions that form the basis of this differing site conditions claim are not unknown physical conditions at the site, of an unusual nature, that differ materially from conditions ordinarily encountered and generally recognized as inhering in the dredging work provided for in the contract.

5. If defendant is liable to plaintiff upon the Obstruction #2 differing site conditions claim, the claim nevertheless is overstated by at least $131,000 for the reasons set forth in DCAA Audit Report No. 3511-2003M17200008 dated December 12, 2002, a copy of which has been provided to plaintiff.

6. Assuming for the sake of argument that defendant is liable to plaintiff upon the Obstruction #2 differing site conditions claim. Plaintiff is entitled to a maximum $418,169 and a 26 calendar day time extension for the reasons set forth in the January 30, 2004 and February 23, 2004 expert reports of William F. Connole, P.E., copies of which have been provided to plaintiff.

Based upon information presently available to defendant, individuals with knowledge of facts relating to the defense numbered 1 through 4 above are Wendell Mears, Leon Hrabovsky, Charles Baron, Erik Russek, Mike McClenan, William F. Connole, Robert Lofgren, and Darrell Shobert.

West Levee Realignment Claim

1. Plaintiff did not construct the West Levee in accordance with the alignment specified by the contract documents.

2. The Corps of Engineers agreed only to a realignment of the West Levee to mitigate the impact of plaintiff's misalignment of the West Levee. Consequently, the realignment of the West Levee is not compensable under the contract's Changes Clause.

3. Plaintiff realigned sections of the West Levee that the Corps of Engineers agreed could remain as initially placed by plaintiff, which resulted in increased costs of performance for which defendant should not be responsible.

4. Plaintiff's damages and delays are overstated because they are based upon rates established for unrelated work, rather than upon actual costs incurred by plaintiff.

5. Plaintiff's claimed increased costs of performance are based upon estimates and are not supported by cost element or pricing data. See DCAA Audit Report No. 3511-2003M17200010 dated December 12, 2002, a copy of which has been pro-vided to plaintiff.

6. Assuming for the sake of argument that defendant is liable to plaintiff upon the West Levee Realignment claim, plaintiff is entitled to a maximum $41,754 and no additional time for the reasons set forth in the January 30, 2004 and February 23, 2004 expert reports of William F. Connole, P.E., copies of which have been provided to plaintiff.

Based upon information presently available to defendant, individuals with knowledge of facts relating to the defenses numbered 1 through 6 above are Eric Russek, Mike McClenan, James Few, Wendell Mears, Leon Hrabovsky, Charles Baron, and William F. Connole, P.E.

Lost Lake Levees Differing Site Conditions Claim

1. The conditions indicated in the contract documents do not differ materially from the conditions encountered by plaintiff that form the basis of this differing site conditions claim. The materials encountered by plaintiff during contract performance were as expected and as indicated in the contract documents, i.e., soft to very soft dredged material placed during previous dredging cycles. For reasons set forth in the January 30, 2004 expert report of Robert Lofgren and the February 2, 2004 and February 26, 2004 expert reports of Jack Fowler, Ph.D., P.E., copies of which have been provided to plaintiff, there was no differing site condition at the Lost Lake Placement Area.

2. Plaintiff cannot demonstrate reasonable reliance upon its interpretation of the contract and contract documents at the time of bidding.

3. Plaintiff knew, or reasonably should have known, that levees at placement areas such as Lost Lake are commonly raised and/or maintained by "borrowing" material from the interior perimeter of the placement area.

4. Plaintiff "wasted" a large amount of material suitable for construction of levees, "overmounded" material which had to be relocated by mechanical methods, and, ultimately, caused a shortage of available, suitable levee building material as a result of plaintiff's failures to implement a satisfactory program for monitoring placement of material in the levees and to take timely measures to correct and/or adjust its hydraulic placement of material.

5. Plaintiff did not construct the portions of the levees to be constructed by the hydraulic placement of dredged material in accordance with the alignment specified by the contract documents. Plaintiff subsequently had to realign levees and otherwise place levees by mechanical methods, which increased its costs of performance.

6. There is no causal relationship between plaintiff's allegations of differing site conditions and its claimed damages, which are based upon a modified total cost approach.

7. The alleged conditions that form the basis of this differing site conditions claim are not unknown physical conditions at the site, of an unusual nature, that differ materially from conditions ordinarily encountered and generally recognized as inhering in the hydraulic levee construction work provided for in the contract.

8. Plaintiff's total cost claim is without merit for the reasons set forth in DCAA Audit Report No. 3511-2003M17200012 dated December 12, 2002, a copy of which has been provided to plaintiff.

9. Plaintiff's total cost claim is not supported for reasons set forth in the January 30, 2004 and February 23, 2004 expert reports of William F. Connole, P.E., copies of which have been provided to plaintiff.

10. Plaintiff's total cost claim is without merit because plaintiff cannot demonstrate the impracticability of proving its alleged losses directly.

Based upon information presently available to defendant, individuals with knowledge of facts relating to the defenses numbered 1 through 7 above are Eric Russek, Mike McClenan, John Rozsypal, James Few, Wendell Mears, Leon Hrabovsky, Charles Baron, William F. Connole, P.E., Robert Lofgren, Jack Fowler, Ph.D., P.E., Leo Herrera, Eddie Fisher, Steve Bowman, and Benton Goodloe.

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-0282

Attorneys for Defendant

APRIL 2, 2004

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 2nd day of APRIL, 2004, I caused to be sent by electronic mail and by United States Mail (postage prepaid) "DEFENDANT'S AMENDED RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES" addressed as follows:

BRIAN W. ERIKSON, ESQ.
Quilling, Selander, Cummiskey & Lownds, P.C.
2001 Bryan Street, Suite 1800
Dallas, TX 75201