IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 02-306C |
| v. | ) | |
| | ) | (Judge Hewitt) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION FOR A PROTECTIVE ORDER

Pursuant to RCFC 26(c)(1),[1] defendant, the United States, respectfully requests that the Court issue an order that defendant is not required to respond to the following discovery requests by plaintiff, Renda Marine, Inc. (Renda): (1) Document Requests Nos. 27 and 28 contained in Renda's first request for production of documents; (2) Renda's second set of interrogatories; (3) Renda's third set of document production requests; (4) Renda's fourth set of document production requests; and (5) any other discovery that Renda may seek from defendant apart from that which is the subject of Renda's motion to compel filed April 14, 2004 (to the extent allowed by the Court).[2] Defendant's counsel has in good faith conferred with plaintiff's counsel in an attempt to resolve this matter. See Def. App. 17, 19, 20.

---

1 Rule 26(c)(1) provides that, "[u]pon motion by a party . . . accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court may make any order which justice requires to protect the party . . . from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the . . . discovery may not be had[.]"

2 In this motion, "Tr. ____(____)" refers to the referenced page(s) and line(s) of the transcript of the May 13, 2004 telephonic conference in this case and "Def. App. ____" refers to the referenced page(s) of the appendix accompanying this motion.

BACKGROUND

On April 14, 2004, Renda filed a motion to compel seeking production of (a) documents relating to the eight dredging projects in the area of the Upper Bayou Project during the 1987-1999 time frame identified at Tab B of the Government's response to Document Requests Nos. 27 and 28 of Renda's first request for production of documents, (b) unredacted copies of twenty-four documents from Corps of Engineers computer back-up tapes withheld from production by the Government upon the ground that they are exempt from disclosure by virtue of the attorney-client privilege and/or the attorney work product doctrine, and (c) what amount to several boxes of documents from Corps of Engineers computer back-up tapes withheld from production by the Government upon the ground that they are not "responsive documents" withing the meaning of the parties' July 2003 Agreement Regarding Scope of Electronic Discovery.

On May 13, 2004, the Court held a telephonic conference to address Renda's motion to compel. During that conference, the Court decided to vacate the June 15, 2004 trial date in order to afford Renda the opportunity to pursue the discovery that is the subject of its April 14, 2004 motion to compel. Noting that "[t]his is not a small discovery matter," Tr. 36(24), Def. App. 9, the Court scheduled a conference on November 4, 2004, to set a new trial date and dates for Renda's and the Government's pretrial submissions. Tr. 37(19-25)-38(1-4), Def. App. 10-11. The Court further stated:

> [T]he point of opening discovery is to deal with three specific issues. One of them is the boxes [of allegedly non-responsive computer back-up tape documents], and the second is Interrogatory 5, and the third is the [privileged back-up tape documents].

Tr. 38(8-11), Def. App. 11. At no point during the May 13, 2004 telephonic conference did

Renda's counsel suggest or the Court indicate that Renda should or would be allowed to pursue any discovery apart from the three items that are the subject of Renda's April 14, 2004 motion to compel.

On May 14, 2004, the Court issued an Order granting Renda's motion to compel to the extent that it sought production of documents for the eight dredging projects referred to in the Government's response to Renda's Interrogatory No. 5. See Order, ¶ (1)(A), Def. App. 1. The Court further directed that the 24 allegedly privileged back-up tape documents and a 50-document sample of the allegedly non-responsive back-up tape documents be provided to the Court for an *in camera* review. Order, ¶ (1)(B)&(C), Def. App. 1-2. In addition, the Order provided:

> Further to the court's unwillingness to disadvantage the contractor at trial in this matter in light of discussions indicating that a significant volume of evidence that may be probative of plaintiff's largest claim has yet to be reviewed, and with the concurrence of the parties, the current pre-trial date and trial dates are VACATED, and discovery is REOPENED. The court's scheduling orders dated October 18, 2002, September 10, 2003, and March 19, 2004 are hereby SUPERCEDED and the due dates therein are VACATED.

Order, ¶ (2), Def. App. 2-3. Consistent with the May 13, 2004 telephonic conference, the Order set a telephonic status conference for November 4, 2004, "to reschedule pre-trial proceedings and trial dates in this matter." Order, ¶ (4), Def. App. 3.

## RENDA'S ADDITIONAL DISCOVERY DEMANDS

Shortly after the Court's May 14, 2004 Order was issued, Renda's counsel requested discovery from the Government that is not covered by Renda's April 14, 2004 motion to compel. *First*, Renda requested that the Government produce not only documents relating to the eight dredging projects listed at Tab B for the 12-year interval from 1987 to 1999 that are the subject

of the Government's response to Renda's Interrogatory No. 5, but, in addition, documents relating to *all* 41dredging projects in the Upper Bayou Area during the 50-year period from 1949 to 1999 listed at Tab B of the Government's response to Document Requests Nos. 27 and 28. See Def. App. 17, 23, 24, 27.

*Second*, Renda requested that the Government respond to Renda's second set of interrogatories and third set of document production requests dated January 15, 2004.[3/] See Def. App. 18. The interrogatories would require the Government to provide Renda with information relative to levee maintenance projects at the Lost Lake Placement Area (Lost Lake) during the 10-year period from 1990 to 1999 and information relative to borrow areas at Lost Lake during the 20-year period from January 1980 to January 1999. See Def. App. 37.[4/]

---

[3] Renda previously applied for an order from the Court to require the Government to respond to these discovery requests, but the Court declined to grant that relief.

[4] The first interrogatory requests that the Government identify any project(s) at Lost Lake during the nine-year period from January 1, 1990, to January 1, 1999, "to maintain or increase the height of levees at that site and, if so, to identify the prime contractor, the contractor "actually working" on the levees, the amount by which the levees were raised, and the source of the material used to raise the levees. Def. App. 37. The second interrogatory requests that the Government state whether, during the 19-year period from January 1, 1980, to January 1, 1999, any "borrow areas" were created or developed adjacent to or near the existing levees at Lost Lake and, if so, to state the date(s) of "any such borrowing" and to identify the "contractor project," the prime contractor, the contractor that "actually undertook the borrowing," and the location of the borrowing "in relationship to the levees." Id. The third interrogatory requests that the Government state whether, during the 19-year period from January 1, 1980, to January 1, 1999, any "surveys or cross sections" were made of any borrow areas at Lost Lake and, if so, to state the date(s) of any such surveys or cross sections and to identify the company undertaking such surveys or cross sections and the location of such surveys or cross sections. Id.

Renda's third set of document production requests seeks production of "any and all" documents "pertaining to or reflecting"[5] responsive to 17 categories of materials:

1. Soil or core borings undertaken in the Flare Area of the Upper Bayou Project in May 2000.

2. Soil or core borings undertaken at any time on the Upper Bayou Project after September 2001.

3. Corps of Engineers claims handling or claims administration manual or policy or guidelines in existence at any time during the Upper Bayou Project.

4. Soil or core borings taken for the "Goat Island contract" awarded to Great Lakes Dredge & Dock Company.

5. Bid solicitation materials for the "Goat Island contract" awarded to Great Lakes Dredge & Dock Company.

6. "Use" of Lost Lake during the ten-year period from January 1, 1990, to January 1, 2000, including "any depositing of dredging maintenance material."

7. "Work on increasing or maintaining the height of the levees" at Lost Lake during the nine-year period from January 1, 1990, to January 1, 1999.

8. "Creation of or removal of soil material" from "borrow areas" "near or adjacent to" existing levees at Lost Lake.

9. "Surveys or cross sections" of levees or "borrow areas" at Lost Lake performed during the 12-year period from January 1, 1990, to January 1, 2002.

10. Manuals, policies, or guidelines for "the design of levees relevant to the levees at Lost Lake" in existence at any time during the Upper Bayou Project.

11. Revisions or additions to manuals, policies, or guidelines for "the design of levees relevant to the levees at Lost Lake" since July 15, 1998.

---

[5] The phrase "pertaining to or reflecting" is defined broadly by Renda's document production request to mean "concerning, discussing, referring to, pertaining to, reflecting, evidencing, constituting, showing or regarding." See "Definitions and Instructions," at ¶ 25, Def. App. 47.

12. "Calculations" of liquidated damages for the Upper Bayou Project.

13. "Determination" of the contract amount for liquidated damages listed in the contract for the Upper Bayou Project.

14. The 1993 soil cores and samples referenced at ¶ 1.11, page 02482-4, of the contract specifications for the Upper Bayou Project.

15. "Permits" for the deposit of dredged material at Lost Lake during the eight-year period from January 1, 1990, to January 1, 1998.

16. "Investigation" in response to any of Renda's notices of differing site conditions at any time prior to the commencement of this litigation.

17. The editions or versions of the Corps of Engineers Engineering Pamphlet EP 1110-1-8, "Construction Ownership and Operation Expense Schedule" "applicable" to the contract for the Upper Bayou Project.

See Def. App. 47-49.

*Third*, Renda requests that the Government respond to a fourth set of document production requests seeking production of materials that relate to the Government's trial experts in this case. See Def. App. 50-59. For each of the Government's three trial experts, Renda requests production of (a) "documents, presentations, book chapters, abstracts, or speeches authored or partially authored" by that individual pertaining to specified topics, such as levees or dredging, and (b) "all expert reports, affidavits, deposition transcripts, or trial testimony for any cases" in which that individual "may have served as an expert witness." See Def. App. 58-59.

ARGUMENT

During the telephonic conference of May 13, 2004, the Court made quite clear that discovery was being reopened for the limited purpose of addressing the discovery sought by Renda's April 14, 2004 motion to compel, i.e., (1) discovery of documents relative to the eight dredging projects in the area of the Upper Bayou Project performed after 1986, referred to in the

Government's response to Interrogatory No. 5, (2) the 24 "electronic" discovery documents that the Government contends are privileged, either in whole or in part, if allowed by the Court after an *in camera* inspection of those documents, and (3) the "electronic discovery" documents withheld by the Government from production as not "responsive" within the meaning of the parties' July 2003 Agreement Regarding Scope of Electronic Discovery, if allowed by the Court after an *in camera* inspection of a sample of 50 of those documents. The Court scheduled the November 4, 2004 telephonic conference to reset the trial and pretrial submission dates based upon what it judged would be a sufficient opportunity to address those "three specific issues." The Court's May 14, 2004 Order "reopened" discovery and "vacated" the due dates contained in the Court's October 18, 2002, September 10, 2003, and March 19, 2004 scheduling orders for the limited purpose of addressing the discovery items that are the subject of Renda's April 14, 2004 motion to compel, *not* to permit Renda to obtain any other discovery that it may desire.

CONCLUSION

For the foregoing reasons, defendant's motion for a protective order should be granted and the Court should issue an order providing that defendant is not required to respond to: (1) Document Requests Nos. 27 and 28 contained in plaintiff's first request for production of documents; (2) plaintiff's second set of interrogatories; (3) plaintiff's third set of document production requests; (4) plaintiff's fourth set of document production requests; or (5) any other discovery apart from that which is the subject of plaintiff's motion to compel filed April 14, 2004 (to the extent allowed by the Court).[6]

---

[6] If the Court should deny the Government's application for a protective order and permit the additional discovery sought by Renda, the Government reserves the right, in responding to that discovery, to raise appropriate objection(s), including that the discovery is beyond the scope of

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/John E. Kosloske
JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-0282
(fax) (202) 514-8624

Attorneys for Defendant

JUNE 1, 2004

---

discovery permitted by RCFC 26, unduly burdensome, privileged, or otherwise inappropriate, and to seek any enlargements of time needed to respond to that discovery.