# DEFENDANT'S APPENDIX

# INDEX TO DEFENDANT'S APPENDIX

**Document** **Page**

Order filed on May 14, 2004 .......... 1

Portions of transcript of telephonic hearing on May 13, 2004 .......... 4

Letter dated 5/14/04 from plaintiff's counsel to defendant's counsel .......... 17

Facsimile message dated 5/14/04 from plaintiff's counsel to defendant's counsel .......... 18

Letter dated 5/17/04 from defendant's counsel to plaintiff's counsel .......... 19

Letter dated 5/17/04 from plaintiff's counsel to defendant's counsel .......... 20

Excerpts from "Defendant's Responses to Requests Nos. 15, 27, and 28 of Plaintiff's First Request for Production of Documents" dated January 3, 2003 .......... 22

Plaintiff's Second Set of Interrogatories served on January 15, 2004 .......... 28

Plaintiff's Third Request for Production of Documents served on January 15, 2004 .... 39

Plaintiff's Fourth Request for Production of Documents served on May 20, 2004 .......... 50

# In the United States Court of Federal Claims

No. 02-306 C

(E-Filed: May 14, 2004)

| | |
|---|---|
| RENDA MARINE, INC., | ) |
| Plaintiff, | ) |
| v. | ) |
| THE UNITED STATES, | ) |
| Defendant. | ) |

ORDER

Further to the telephonic status conference held on May 13, 2004 in this matter, the court orders the following:

(1) Motion by Plaintiff, Renda Marine, Inc., to Compel is GRANTED as follows:

(A) With respect to the unproduced documents obtained from electronic discovery for which defendant asserts attorney/client privilege, defendant shall deliver to chambers, on or before 5:00 p.m. on May 14, 2004 for in camera review, a package of the documents in issue. The delivered package of documents shall contain the case caption and shall be designated as documents for in camera review only.

(B) With respect to the unproduced documents obtained from electronic discovery that defendant asserts are not responsive under the terms of the Agreement Regarding Scope of Electronic Discovery executed by

the parties on July 25, 2003, Universal Document Services, plaintiff's information technology consultant, shall select fifty (50) documents that are representative of the alleged underproduction of responsive documents by defendant, together with a memorandum explaining briefly why each such document is responsive, for in camera review by the court. The documents may be submitted by CD-Rom and shall be delivered to chambers on or before 5:00 p.m. on June 25, 2004. The submission to chambers shall be marked with the case caption and designated as documents for in camera review only.

(C) With respect to the production of documents identified as responsive to plaintiff's Interrogatory No. 5 concerning "borrow" material and the identification of certain persons who may have knowledge that is responsive to plaintiff's Interrogatory No. 5 concerning "borrow" material, the court GRANTS plaintiff's request to review the documents and, if desired, depose the identified persons if not presently employees of plaintiff.

(2) Further to the court's unwillingness to disadvantage the contractor at trial in this matter in light of discussions indicating that a significant volume of evidence that may be probative of plaintiff's largest claim has yet to be reviewed,[1] and with the concurrence of the parties, the

---

[1]The court read the following statement, guidance usually provided during the pre-trial conference, to the parties regarding the presentation of documentary evidence during trial :

> Any exhibit and/or any portion of an exhibit the import of which with respect to one or more issues in the case is not specifically pointed out by a witness at trial may be disregarded by the court in its determination of the case. "Specifically pointed out" means specific mention, with reference to an exhibit number, and to one or more specific page numbers within, or to an otherwise identifiable portion of, the exhibit, together with an indication of how the evidence supports or disproves a fact in issue. "Specifically pointed out" shall not include mention for the first time in post-trial briefing. No exhibits will be admitted after the close of evidence at the close of trial.

(continued...)

current pre-trial date and trial dates are VACATED, and discovery is REOPENED. The court's scheduling orders dated October 18, 2002, September 10, 2003, and March 19, 2004 are hereby SUPERCEDED and the due dates therein are VACATED.

(3) In light of the amendment to the trial schedule, Defendant's Motion for an Enlargement of Time to File Objections to Plaintiff's Trial Exhibits is MOOT.

(4) A telephonic status conference will be held on Thursday, November 4, 2004 at 2:00 E.S.T. to reschedule pre-trial proceedings and trial dates in this matter. A Sprint operator will initiate the call to the parties.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Judge

---

[1](...continued)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INCORPORATED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket No.: 02-306C |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

Room 712
National Courts Building
717 Madison Place N.W.
Washington, D.C. 20005

Thursday,
May 13, 2004

The parties met, pursuant to notice of the Court, at 12:01 p.m.

BEFORE: HONORABLE EMILY C. HEWITT
Judge

APPEARANCES:

For the Plaintiff:

BRIAN ERIKSON, Esquire
Quilling, Selander, et al.
2001 Bryan Tower, Suite 1800
Dallas, Texas 75201
(214) 880-1844

For the Defendant:

JOHN EDGAR KOSLOSKE, Esquire
U.S. Department of Justice
Civil Division
Litigation Branch
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
(202) 307-0282

P R O C E E D I N G S

(12:01 p.m.)

THE COURT: Good morning or afternoon, as the case may be.

MR. ERIKSON: Good afternoon, Your Honor, Brian Erikson.

MR. KOSLOSKE: Good afternoon, Your Honor.

THE COURT: The purpose of the call is to deal with a motion for enlargement from the United States, and a motion to compel from the Plaintiff. Let me ask if there are any other matters to add to the agenda at this time. Mr. Erikson?

MR. ERIKSON: Not that I know of, Your Honor.

THE COURT: Thank you. Mr. Kosloske?

MR. KOSLOSKE: No, Your Honor.

THE COURT: Thanks. All right. We are on the record with Heritage Court Reporting, and if you -- when you do speak, even if you are making a brief comment, or in response to or in a colloquy with the Court, if you would go ahead and state your name at the beginning of your remarks so that way we will be able to keep a clear record.

The Court, after looking at the papers, thinks there is two matters that I think that we can

address without discussion and argument. The first with respect to the 24 documents still in dispute from privilege disputes, the Court has without any further briefing could or would be glad to look at those documents in camera if Mr. Kosloske would arrange for a non-filed set to be -- a non-filed, non-redacted set to be delivered to the Court.

I think that the discussion of the context particularly in the Defendant's briefing will allow me to pick my way through those and see if there is anything that was not appropriate to protect.

So I will deal with that that way, and if you would just let us know generally when to expect those, Mr. Kosloske. The secret is not to have them end up on the record, so that they just get directly to chambers.

MR. KOSLOSKE: I will have them delivered to chambers I suspect no later than by the close of business tomorrow.

THE COURT: That's great, and your messenger may just have to call up here, and they should do that, and we will send someone down if that is necessary. It may be that the Clerk will receive them, but the secret is just to keep it off the record.

The other aspect which I think I can deal with without discussion is the motion for enlargement to 5/17 for Mr. Kosloske, which the Court is willing to allow. That brings us to the guts, I believe, of the motion by Plaintiffs to compel.

I'm sorry. I just should mention, and I am sure that you would have done this, Mr. Kosloske, but if you would just designate on the outside of the packaging in case these fall into some hands between the time that they are downstairs and the time that they get to me, that they are for in camera review only, anyone in the court will know how to treat them.

MR. KOSLOSKE: Of course, Your Honor.

THE COURT: The motion for enlargement, and I would like to hear discussion on that, and try to figure out what justice requires here. As I understand, there are two main focuses; the one having to do with the borrow issue relating to the materials which are roughly described in the Answer to Interrogation Number 5 from the Plaintiff to the Defendant.

And the second being the question of whether the documents that were on the tape and not disclosed to, delivered to, Plaintiffs by reason of their lack of relevance to the case based on the definition of

had been fully thought out.

The Court doesn't want to waste anyone's time; not its, not the plaintiff's, not the defendant's. But in order to avoid that, we need to pull together to have the trial as well prepared as possible, and the evidence as well prepared. With that, let us go to a 5 minute recess, and we will return and discuss the case further. Thank you so much. We are now going off the record for 5 minutes.

(Whereupon, at 12:51 p.m. the hearing was recessed and resumed at 1:02 p.m.)

THE COURT: We are back on the record. Let me ask Mr. Erikson if you would like to comment.

MR. ERIKSON: Yes, Your Honor. Renda Marine consents to a delay of the trial.

THE COURT: Okay. We will pick a -- the United States has already stated that it will go with a consensus today. The Court will order that the -- what I think we should do is have a status -- we may need to have some intermediate status conferences.

But we should have a status conference at the conclusion of this discovery, but I don't want that to be forever. I would like to pick a date in the fall that will then allow us to put back together what will then -- the document after we have our

conference, will be an amended pre-trial filing from the Plaintiff, and a response from -- well, a little before that, there needs to be a new footing, a meeting of counsel, on the things that we would need to do after the discovery extension.

There will be a meeting of counsel, and then there will be revised -- and it will be a reissue at that time of the statement of issues, the pre-trial filings from the Plaintiff, with -- based with his objections to the exhibits, and the same from the Defendant, and we would go through that exercise, and we will set a trial date.

My trial schedule is at the moment such that probably we will end up having a trial in January, but in order to get to that point, we should have our meeting I think either in early -- sometime between early October and early November, and I would take the week of -- I will look to start with the week of October 11th, which is not that far away.

I mean, we are here, and June, July (sic), September, October, and that is four months. I would -- an alternative time, which would be 5 months, would be the week, for example, of November 8th. This is not a small discovery matter that is outside. Why don't people look at their schedules and see what

types of conflicts appear, either in mid-November or mid-October.

(Pause.)

THE COURT: I could make Thursday, October 14th, or Thursday, November 11th. November 11th is technically Veterans Day. Does anyone know for the record whether that is actually a holiday on that day?

MR. KOSLOSKE: I believe it is, Your Honor. John Kosloske here.

THE COURT: Thank you.

MR. KOSLOSKE: October is a free day.

THE COURT: The 14th would work?

MR. KOSLOSKE: October 14th? Yes, Your Honor.

THE COURT: Okay. Mr. Erikson.

MR. ERIKSON: Your Honor, I am scheduled for a 2 week trial starting October 4th.

THE COURT: All right. Then that is not the right time. Let's look at the time in between. How about November 4th? It is right in the middle of those two days.

MR. KOSLOSKE: That is convenient for the government, Your Honor.

THE COURT: Thursday, November 4th?

MR. KOSLOSKE: Yes, Your Honor.

MR. ERIKSON: That's fine with me, Your Honor.

THE COURT: Okay. The afternoon of that day is fine for me, starting after two o'clock. And we will schedule for that. Okay. I am surprised to notice that the morning and noon are already busy, but two o'clock. Okay.

Let us turn -- the point of opening discovery is to deal with three specific issues. One of them is the boxes, and the second is the Interrogatory 5, and the third is the privilege. We have a trajectory on the privilege.

On the UDS investigation, since this is going to be done in camera, my instinct to permit at least several dozen, up to 50, documents that are representative, with a brief memo to explain how these fit in with the categories that are part of electronic discovery from UDS, to be shipped to the Court's attention in camera.

If 50 sounds too small, Mr. Erikson, we could up the number. But that probably is enough to give us a flavor.

MR. ERIKSON: Your Honor, Brian Erikson. A couple of points. First, I think that it would probably be a whole lot easier for UDS to accomplish

You can do what you want to tell them what the issues or the senses in the case are. I mean, that is your -- to help them understand that, but those are matters that are in the pleadings. I am going to put that responsibility on you to explain words that will -- and I expect they already know, but that will make that clear.

I leave it to the parties to -- I don't understand Mr. Erikson to say, Mr. Kosloske, that he wants 50 years of information on borrow. The interrogatories or the statement here has been for the last 15 years, back to the late '80s, and that is what he is looking for.

MR. KOSLOSKE: John Kosloske. Your Honor, we do understand that he is looking for the 12 years, and on the list of contracts that would be by our count eight drudging projects or related projects that we would be getting the records for.

THE COURT: And I also -- the other thing that you would do in response to that -- and let me ask. In the course of the omission to talk to and get those contracts and look at them, does this also mean that there is as well -- and I am going to ask this for the Plaintiff's benefit -- an omission to discuss the subject of borrow with the individuals who are

listed in the answer to Interrogatory 5, or was that done?

I mean, is that part of the plan, a preparation plan, of the Plaintiff?

MR. KOSLOSKE: I'm sorry, Your Honor, I am not sure that I --

THE COURT: Okay. In Interrogatory 5, which is sort of toward the back of the motion to compel --

MR. KOSLOSKE: Right.

THE COURT: -- it says persons with knowledge, and then it talks about a number of -- are those people who if they are no longer in the Plaintiff's employ that you have spoken to? Persons with knowledge.

MR. KOSLOSKE: Persons with knowledge.

THE COURT: Those are your -- they were at some point associated with Renda.

MR. KOSLOSKE: Yes, and they are persons with knowledge though of the information for the years 1998 to I think 2001.

THE COURT: Okay.

MR. KOSLOSKE: Not the 12 years that the Plaintiffs are talking about here, and the other drudging projects.

THE COURT: Thank you. That's helpful. So

we are talking about getting these contracts from the '87 to '99 period in the hands. I think that is -- the only other thing that I recall from the motion to compel practice that has not been brought up today, and I believe was answered in the responsive pleadings was the issue of the payment to UDS.

Now, my understanding when I looked at the amounts, it appeared to me that the payments were now made. Is that -- is the Court in error about that?

MR. ERIKSON: Brian Erikson, Your Honor. The Court is correct.

THE COURT: Thank you.

MR. ERIKSON: There is one more issue about UDS, and that would be for UDS to do the exercise about the seven boxes, who pays UDS for that?

THE COURT: I think the Court has a thought on that, which is that it would -- that I think it would depend on what the result was. Does that seem unfair to anyone? In other words --

MR. ERIKSON: No, Your Honor.

THE COURT: Mr. Kosloske.

MR. KOSLOSKE: That is acceptable to the government, Your Honor.

THE COURT: But I would do it roughly in proportion to the way that the result of that broke

out. That is to say that if there is a substantial under-disclosure that I would charge the United States, and if the disclosure appears to have been substantially made, I would charge the Plaintiff.

We will have an order on this to follow. Is there anything further from the Plaintiff?

MR. ERIKSON: Brian Erikson. No, Your Honor.

THE COURT: I will point out the Defendant's -- is there anything further from the United States?

MR. KOSLOSKE: One question, Your Honor.

THE COURT: Certainly.

MR. KOSLOSKE: In view of the modification of the schedule does the Court now still want the government to file objections to Renda's exhibits by this coming Monday?

THE COURT: Thank you for the question. The Court would regard the Defendant's motion as now moot in light of the vacating of the schedule.

MR. KOSLOSKE: Okay. Thank you.

THE COURT: You're welcome. Very good. I wish you well in these additional preparations, and I look forward to trial in this matter in Houston at our earliest opportunity. Good afternoon.

MR. ERIKSON: All right. Thank you, Your

Honor.

MR. KOSLOSKE: Thank you, Your Honor.

(Whereupon, at 1:20 p.m., the hearing was adjourned.)

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//