# EXHIBIT A

## DEFINITIONS AND INSTRUCTIONS

1. The term "Plaintiff" or "Renda" refers to Renda Marine, Inc., Plaintiff in this suit.

2. The term "Defendant" or "Corps" refers to the United States Army Corps of Engineers, Defendant in this suit.

3. "Upper Bayou Project" refers to Corps Contract No. DACW64-99-C-0001, for Houston-Galveston Navigation Channels, Texas, Dredging Upper Bayou (45-Foot Project) in Harris and Galveston Counties.

4. "Joint Venture" refers to Turner, Collie & Braden, Inc., Gahagan & Bryant & Associates, Inc., and J. Simmons Group, Inc., collectively.

5. The term "Port of Houston Authority" refers to the Port of Houston Authority of Harris County, Texas.

6. The term "active file" means any electronic data file that can be used by an electronic data processing system in any manner without modification and/or re-construction. An active file is any electronic data file that has not been deleted or otherwise destroyed and/or damaged and which is readily visible to the operating system and/or the software with which it was created.

7. The term "computer" shall include, but is not limited to, microchips, microcomputers (also known as personal computers), laptop computers, portable computers, notebook computers, palmtop computers (also known as personal digital assistants or PDA's), minicomputers and mainframe computers.

8. The term "computer system," when used in reference to any computer, includes, but is not limited to, the following information:

41

a. Computer type, brand and model;

b. Brand & version of all software, including operating system, private-and custom-developed applications, commercial applications, and/or shareware;

c. Communications capability, including asynchronous and/or synchronous, including, but not limited to, terminal to mainframe emulation, data download and/or upload capability to mainframe, and computer to computer connections via network, modem and/or direct connection.

9. The term "data" is equivalent to the term "electronic data" as defined herein.

10. The term "deleted file" means any electronic data file that has been deleted or deleted from the electronic media on which it resided.

11. The term "document" means the original (or an identical duplicate if the original is not available), and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description that are fixed in any form of physical media within your possession, custody, or control, or the control of any agent, employee, representative (including, without limitation, attorneys, consultants and accountants) or other person acting or purporting to act for you or on your behalf. Physical media include, but are not limited to, paper media, phonographic media, photographic film media (including pictures, films slides and microfilm), magnetic media (including but not limited to hard disks, floppy disks, compact disks, and magnetic tapes of any kind), computer memory, optical media, magneto-optical media, and other physical media on which notations or marking of any kind can be affixed. Documents shall include, but not be limited to, contracts, agreements, change orders, change proposals, communications, correspondence, letters, telegrams, memoranda, electronic mail, notes, journals, appointment calendar, calendar, group scheduler calendar, records, reports, books, summaries, notes, notes or

records of telephone conversations, notes or records of personal conversations or interviews, telephone logs, diaries, logs, field notes, inspection reports, daily or periodic reports, notices, deficiency notices, contractor's daily or periodic reports, production reports, quality control reports, batch reports, run reports, shift reports, winding reports, speed memoranda, drawings, shop drawings, sketches, details, plans, specifications, calculations, computations, forecasts, schedules, statistical statements, tests, laboratory tests, assessments, evaluations, work papers, graphs, charts, accounts, analytical records, minutes, minutes or records of meetings or conferences, consultants' reports, appraisals, reports or summaries of negotiations, brochures, marginal notations, bills, invoices, checks, drafts, bills of lading, warehouse receipts, photographs, movies, videotapes, lists, journals, advertisements, magnetic tapes, computer tapes, computer disks, computer cards, computer directory, computer printouts, and every other form of written, printed, stenographic, electronic, recorded, graphic, filmed, or photographic matter, including sound reproductions, however produced or reproduced, and all drafts, revisions, and copies with either markings or alterations of the foregoing.

12. The term "electronic data" means the original (or identical duplicate when the original is not available), and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Electronic data includes, by way of example only, computer programs (whether private, commercial or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts and/or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files,

charts, graphs and outlines, electronic mail, operating systems, source code of all types, peripheral drivers, PIF files, batch files, ASCII files, and any and all miscellaneous files and/or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists in an active file, deleted file or file fragment. Electronic data includes any and all items stored on computer memories, hard disks, floppy disks, CD-ROMs, removable media such as Zip disks, Jaz cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to EPROM, PROM, RAM and ROM, on or in any other vehicle for digital data storage and/or transmittal. The term electronic data also includes the file, folder tabs and/or containers and labels appended to, or associated with, any physical storage device associated with each original and/or copy.

13. The term "Electronic media" means any magnetic or other storage media device used to record electronic data. Electronic media devices may include, but are not limited to, computer memories, hard disks, floppy disks, CD-ROM, removable media such as Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to EPROM, PROM, RAM and ROM, or on or in any other vehicle for digital data storage and/or transmittal.

14. The term "file fragment" refers to any electronic data file that exists as a subset of an original active file. A file fragment may be active or deleted. The cause of fragmentation can include, but is not limited to the execution of ordinary file management routines such as the creation of new files over parts of previously deleted files, the creation of files on disks which do not have enough contiguous blocks to write the file from beginning to end, where the file has been split up between

several sections of the disk (each piece a fragment). Other causes include manual intervention, electronic surges, and/or physical defects on electronic media.

15. The term "network" means any hardware and/or software combination that connects two or more computers together and which allows the computers to share and/or transfer data between them. For the purposes of this definition, the connection between or among the microcomputers need not be either physical or direct, i.e., wireless networks, and sharing and/or transferring data via indirect routes utilizing modems and phone company facilities. In addition, there need not be a central file or data server nor a central network operating system in place, i.e., peer-to-peer networks and networks utilizing a mainframe host to facilitate data transfer.

16. The term "rotation" means any plan, policy or scheme that involves the re-use of an electronic media device after it has been used for backup, archival or other electronic data storage purposes, particularly if such re-use results in the alteration and/or destruction of the electronic data residing on the device prior to it's re-use.

17. The term "support" means any help or assistance provided to a user of a computer by another individual, either in an official job capacity or not. Such help or assistance may take the form of, but is not limited to, answering questions, in person or via mechanical means, direct intervention, training, software troubleshooting, hardware troubleshooting, programming, systems consulting, maintenance, repair and/or user forums. Providers of support may be employees, contractors and/or other third-party providers.

18. The term "Identify," when used in reference to any electronic data, means to state the software and/or operating system under which the data was created, title and author, the type of data (example: word processing document, spreadsheet, database, application program, etc.), and all other

means of identifying it with sufficient particularity to meet the requirements for its inclusion in a Request for Production pursuant to the Rules of Civil Procedure, and its present or last known location or custodian. If any such electronic data was, or no longer is, in the possession or subject to your control, state what disposition was made of it and the reason for such disposition.

19. A "draft" of any document means and includes any earlier, preliminary, preparatory or tentative version of all or part of a document, whether or not such draft was superseded by a later draft and whether or not the terms of the draft are the same as or different from the terms of the final document; a "copy" of a document means and includes each and every reproduction of a document which is not identical in every respect with the original of such document that is produced, including photocopies of the original or final document on which any notations or handwritten notes have been added, and copies of documents where the original is not in your possession, custody or control.

20. The term "communications" refers to and includes any form of communication from one person or entity to another person or entity, regardless of whether written or oral, or whether by direct communication, carbon copy, or indirect communication through a third party.

21. The term "person" includes natural persons, firms, general partnerships, limited partnerships, associations, proprietorships, joint ventures, corporations, professional corporations, business trusts, banking institutions, insurance companies of whatever form, unincorporated organizations, governments, governmental agencies, commissions and other formally or loosely organized entities.

22. The plural shall include the singular and the singular shall include the plural.

23. Use of the masculine gender shall also include the feminine or neuter gender where appropriate.

24. The words "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.

25. The words "pertaining to" or "reflecting" are largely synonymous and mean: concerning, discussing, referring to, pertaining to, reflecting, evidencing, constituting, showing or regarding.

26. The terms "claim" or "claims" mean a demand for money or property made by one person upon another.

27. This request shall be deemed continuing so as to require further and supplemental response, pursuant to the requirements of the Federal Rules of Civil Procedure and the Rules of the Court of Federal Claims.

28. If any documents otherwise responsive to this request are withheld for any reason, including assertions of the attorney-client privilege, the work product doctrine, or any other claim of privilege or immunity, you shall identify the document by stating its date, author, recipients and the reason for withholding.

29. Pursuant to the Federal Rules of Civil Procedure, and the Rules of the Court of Federal Claims, you are instructed to produce the documents as they are kept in the usual course of business, or shall organize and label them to correspond with the categories in this request.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1. Any and all documents pertaining to or reflecting any soil or core borings undertaken in the Flare Area of the Project in May 2000.

2. Any and all documents pertaining to or reflecting any soil or core borings undertaken at any time on the Project after September 2001, including, without limitations, any borings undertaken in 2002.

3. Any and all documents pertaining to or reflecting Corps claims handling or claims administration manual or policy or guidelines in existence at any time during the Project.

4. Any and all documents pertaining to or reflecting any soil or core borings taken for the Goat Island contract awarded to Great Lakes Dredge & Dock ("Great Lakes").

5. Any and all documents pertaining to or reflecting the bid solicitation materials for the Goat Island contract subsequently awarded to Great Lakes.

6. Any and all documents pertaining to or reflecting records of use of the Lost Lake Placement Area at any time between January 1, 1990, and January 1, 2000, including without limitation, any depositing of dredging maintenance material.

7. Any and all documents pertaining to or reflecting any work on increasing or maintaining the height of the levees at the Lost Lake Placement Area at any time between January 1, 1990, and January 1, 1999.

8. Any and all documents pertaining to or reflecting any creation of or removal of soil material from borrow areas near or adjacent to the existing levees at the Lost Lake Placement Area.

9. Any and all documents pertaining to or reflecting any surveys or cross sections of the levees or borrow areas at the Lost Lake Placement Area performed at any time between January 1, 1990, and January 1, 2002.

10. Any and all documents pertaining to or reflecting any manuals, policies, or guidelines for the design of levees relevant to the levees at the Lost Lake Placement Area in existence at any time during the Project.

11. Any and all documents pertaining to or reflecting any revisions or additions to manuals, policies, or guidelines for the design of levees relevant to the levees at the Lost Lake Placement Area since July 15, 1998.

12. Any and all documents pertaining to or reflecting any calculations of liquidated damages for the Project.

13. Any and all documents pertaining to or reflecting any determination of the contract amount for the liquidated damages listed in the contract for the Project.

14. The 1993 soil cores and samples referenced in paragraph 1.11 on page 02482-4 of the Project specification book.

15. Any and all documents pertaining to or reflecting any permits for depositing of dredged material in the Lost Lake Placement Area at any time between January 1, 1990, and January 1, 1998.

16. Any and all documents pertaining to or reflecting any investigation in response to any of Renda's notices of differing site conditions at any time prior to Renda's filing of this suit.

17. Any and all documents pertaining to or reflecting the Corps Engineering Pamphlet EP 1110-1-8, "Construction Ownership and Operating Expense Schedule," whichever editions or versions were applicable to the Project.

UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC.,<br>PLAINTIFF,<br><br>V.<br><br>UNITED STATES ARMY<br>CORPS OF ENGINEERS,<br>DEFENDANT. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 02-306C<br><br>(JUDGE HEWITT) |

**FOURTH REQUEST FOR PRODUCTION OF DOCUMENTS BY PLAINTIFF, RENDA MARINE, INC. TO DEFENDANT, UNITED STATES**

TO: United States, through its attorney of record, John E. Kosloske, Esq., Senior Trial Counsel, Commercial Litigation Branch, Department of Justice, Attn.: Classification Unit, 1100 L Street N.W., Room 8012, Washington, DC 20530.

Plaintiff, Renda Marine, Inc. ("Renda"), requests that you produce for discovery under the provisions of FED. R. CIV. P. 34 and RCFC 34, the items specified on Exhibit A attached hereto and incorporated herein for all purposes.

The documents listed on Exhibit "A" are to be produced for inspection and copying within thirty (30) days of the date of service of this request on you, in the offices of Quilling, Selander, Cummiskey & Lownds, 2001 Bryan Street, Suite 1800, Dallas, Texas 75201.

Respectfully submitted,

QUILLING, SELANDER, CUMMISKEY & LOWNDS, P.C.

BY: [signature]
Brian W. Erikson, TX Bar No. 06643800
Andrew M. Trusevich, TX Bar No. 00785119

2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Telefax)
ATTORNEYS FOR RENDA MARINE, INC.

50

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of May, 2004, a true and correct copy of Plaintiff, Renda Marine, Inc.'s Fourth Request for Production of Documents to Defendant, United States Army Corps of Engineers, by serving John E. Kosloske, Esq., by facsimile and certified mail, return receipt requested.

Brian W. Erikson

51

**EXHIBIT A**

**DEFINITIONS AND INSTRUCTIONS**

1. The term "Plaintiff" or "Renda" refers to Renda Marine, Inc., Plaintiff in this suit.

2. The term "Defendant" or "Corps" refers to the United States Army Corps of Engineers, Defendant in this suit.

3. "Upper Bayou Project" refers to Corps Contract No. DACW64-99-C-0001, for Houston-Galveston Navigation Channels, Texas, Dredging Upper Bayou (45-Foot Project) in Harris and Galveston Counties.

4. "Joint Venture" refers to Turner, Collie & Braden, Inc., Gahagan & Bryant & Associates, Inc., and J. Simmons Group, Inc., collectively.

5. The term "Port of Houston Authority" refers to the Port of Houston Authority of Harris County, Texas.

6. The term "active file" means any electronic data file that can be used by an electronic data processing system in any manner without modification and/or re-construction. An active file is any electronic data file that has not been deleted or otherwise destroyed and/or damaged and which is readily visible to the operating system and/or the software with which it was created.

7. The term "computer" shall include, but is not limited to, microchips, microcomputers (also known as personal computers), laptop computers, portable computers, notebook computers, palmtop computers (also known as personal digital assistants or PDA's), minicomputers and mainframe computers.

8. The term "computer system," when used in reference to any computer, includes, but is not limited to, the following information:

a. Computer type, brand and model;

b. Brand & version of all software, including operating system, private-and custom-developed applications, commercial applications, and/or shareware;

c. Communications capability, including asynchronous and/or synchronous, including, but not limited to, terminal to mainframe emulation, data download and/or upload capability to mainframe, and computer to computer connections via network, modem and/or direct connection.

9. The term "data" is equivalent to the term "electronic data" as defined herein.

10. The term "deleted file" means any electronic data file that has been deleted or deleted from the electronic media on which it resided.

11. The term "document" means the original (or an identical duplicate if the original is not available), and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description that are fixed in any form of physical media within your possession, custody, or control, or the control of any agent, employee, representative (including, without limitation, attorneys, consultants and accountants) or other person acting or purporting to act for you or on your behalf. Physical media include, but are not limited to, paper media, phonographic media, photographic film media (including pictures, films slides and microfilm), magnetic media (including but not limited to hard disks, floppy disks, compact disks, and magnetic tapes of any kind), computer memory, optical media, magneto-optical media, and other physical media on which notations or marking of any kind can be affixed. Documents shall include, but not be limited to, contracts, agreements, change orders, change proposals, communications, correspondence, letters, telegrams, memoranda, electronic mail, notes, journals, appointment calendar, calendar, group scheduler calendar, records, reports, books, summaries, notes, notes or

records of telephone conversations, notes or records of personal conversations or interviews, telephone logs, diaries, logs, field notes, inspection reports, daily or periodic reports, notices, deficiency notices, contractor's daily or periodic reports, production reports, quality control reports, batch reports, run reports, shift reports, winding reports, speed memoranda, drawings, shop drawings, sketches, details, plans, specifications, calculations, computations, forecasts, schedules, statistical statements, tests, laboratory tests, assessments, evaluations, work papers, graphs, charts, accounts, analytical records, minutes, minutes or records of meetings or conferences, consultants' reports, appraisals, reports or summaries of negotiations, brochures, marginal notations, bills, invoices, checks, drafts, bills of lading, warehouse receipts, photographs, movies, videotapes, lists, journals, advertisements, magnetic tapes, computer tapes, computer disks, computer cards, computer directory, computer printouts, and every other form of written, printed, stenographic, electronic, recorded, graphic, filmed, or photographic matter, including sound reproductions, however produced or reproduced, and all drafts, revisions, and copies with either markings or alterations of the foregoing.

12. The term "electronic data" means the original (or identical duplicate when the original is not available), and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Electronic data includes, by way of example only, computer programs (whether private, commercial or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts and/or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files,

charts, graphs and outlines, electronic mail, operating systems, source code of all types, peripheral drivers, PIF files, batch files, ASCII files, and any and all miscellaneous files and/or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists in an active file, deleted file or file fragment. Electronic data includes any and all items stored on computer memories, hard disks, floppy disks, CD-ROMs, removable media such as Zip disks, Jaz cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to EPROM, PROM, RAM and ROM, on or in any other vehicle for digital data storage and/or transmittal. The term electronic data also includes the file, folder tabs and/or containers and labels appended to, or associated with, any physical storage device associated with each original and/or copy.

13. The term "Electronic media" means any magnetic or other storage media device used to record electronic data. Electronic media devices may include, but are not limited to, computer memories, hard disks, floppy disks, CD-ROM, removable media such as Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to EPROM, PROM, RAM and ROM, or on or in any other vehicle for digital data storage and/or transmittal.

14. The term "file fragment" refers to any electronic data file that exists as a subset of an original active file. A file fragment may be active or deleted. The cause of fragmentation can include, but is not limited to the execution of ordinary file management routines such as the creation of new files over parts of previously deleted files, the creation of files on disks which do not have enough contiguous blocks to write the file from beginning to end, where the file has been split up between

several sections of the disk (each piece a fragment). Other causes include manual intervention, electronic surges, and/or physical defects on electronic media.

15. The term "network" means any hardware and/or software combination that connects two or more computers together and which allows the computers to share and/or transfer data between them. For the purposes of this definition, the connection between or among the microcomputers need not be either physical or direct, i.e., wireless networks, and sharing and/or transferring data via indirect routes utilizing modems and phone company facilities. In addition, there need not be a central file or data server nor a central network operating system in place, i.e., peer-to-peer networks and networks utilizing a mainframe host to facilitate data transfer.

16. The term "rotation" means any plan, policy or scheme that involves the re-use of an electronic media device after it has been used for backup, archival or other electronic data storage purposes, particularly if such re-use results in the alteration and/or destruction of the electronic data residing on the device prior to it's re-use.

17. The term "support" means any help or assistance provided to a user of a computer by another individual, either in an official job capacity or not. Such help or assistance may take the form of, but is not limited to, answering questions, in person or via mechanical means, direct intervention, training, software troubleshooting, hardware troubleshooting, programming, systems consulting, maintenance, repair and/or user forums. Providers of support may be employees, contractors and/or other third-party providers.

18. The term "Identify," when used in reference to any electronic data, means to state the software and/or operating system under which the data was created, title and author, the type of data (example: word processing document, spreadsheet, database, application program, etc.), and all other

means of identifying it with sufficient particularity to meet the requirements for its inclusion in a Request for Production pursuant to the Rules of Civil Procedure, and its present or last known location or custodian. If any such electronic data was, or no longer is, in the possession or subject to your control, state what disposition was made of it and the reason for such disposition.

19. A "draft" of any document means and includes any earlier, preliminary, preparatory or tentative version of all or part of a document, whether or not such draft was superseded by a later draft and whether or not the terms of the draft are the same as or different from the terms of the final document; a "copy" of a document means and includes each and every reproduction of a document which is not identical in every respect with the original of such document that is produced, including photocopies of the original or final document on which any notations or handwritten notes have been added, and copies of documents where the original is not in your possession, custody or control.

20. The term "communications" refers to and includes any form of communication from one person or entity to another person or entity, regardless of whether written or oral, or whether by direct communication, carbon copy, or indirect communication through a third party.

21. The term "person" includes natural persons, firms, general partnerships, limited partnerships, associations, proprietorships, joint ventures, corporations, professional corporations, business trusts, banking institutions, insurance companies of whatever form, unincorporated organizations, governments, governmental agencies, commissions and other formally or loosely organized entities.

22. The plural shall include the singular and the singular shall include the plural.

23. Use of the masculine gender shall also include the feminine or neuter gender where appropriate.

24. The words "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.

25. The words "pertaining to" or "reflecting" are largely synonymous and mean: concerning, discussing, referring to, pertaining to, reflecting, evidencing, constituting, showing or regarding.

26. The terms "claim" or "claims" mean a demand for money or property made by one person upon another.

27. This request shall be deemed continuing so as to require further and supplemental response, pursuant to the requirements of the Federal Rules of Civil Procedure and the Rules of the Court of Federal Claims.

28. If any documents otherwise responsive to this request are withheld for any reason, including assertions of the attorney-client privilege, the work product doctrine, or any other claim of privilege or immunity, you shall identify the document by stating its date, author, recipients and the reason for withholding.

29. Pursuant to the Federal Rules of Civil Procedure, and the Rules of the Court of Federal Claims, you are instructed to produce the documents as they are kept in the usual course of business, or shall organize and label them to correspond with the categories in this request.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1. Any and all documents, presentations, book chapters, abstracts, or speeches authored or partially authored by Jack Fowler, Ph.D., P.E., pertaining to any of the publications and/or presentations identified on his resume, and concerning dredging, levees, or related issues involved in this suit.

2. Any and all expert reports, affidavits, deposition transcripts, or trial testimony for any cases in which Jack Fowler, Ph.D., P.E., may have served as an expert witness.

3. Any and all documents, presentations, book chapters, abstracts, or speeches authored or partially authored by Robert W. Lofgren, pertaining to dredging or levee construction.

4. Any and all expert reports, affidavits, deposition transcripts, or trial testimony for any cases in which Robert W. Lofgren may have served as an expert witness.

5. Any and all documents, presentations, book chapters, abstracts, or speeches authored or partially authored by William Frank Connole.

6. Any and all expert reports, affidavits, deposition transcripts, or trial testimony for any cases in which William Frank Connole may have served as an expert witness, including, but not limited to, those cases identified on his resume.



S:\Construction\Renda Marine\Upper Bayou 565.09\Pleadings\RFP4.wpd