IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 02-306C |
| v. | ) | |
| | ) | (Judge Hewitt) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION
TO DEFENDANT'S MOTION FOR A PROTECTIVE ORDER

In its response to the Government's motion for a protective order concerning additional discovery, plaintiff, Renda Marine, Inc. (Renda), asserts that, by virtue of the Court's May 14, 2004 Order, "discovery is wide open" in this case. Pl. Opp. 1.[1/] That view, however, is inconsistent with the Court's statements during the May 13, 2004 telephonic hearing that resulted in the Order. During the May 13 hearing, the Court stated that the trial schedule would be vacated and discovery reopened to address the three issues raised by Renda's April 14, 2004 motion to compel, i.e., (1) documents relating to the eight dredging projects from 1987 to 1999 referred to in the Government's response to Renda's Interrogatory No. 5; (2) documents on the Government's computer back-up tapes that the Government claims are privileged from disclosure; and (3) documents on the computer back-up tapes withheld by the Government from production upon the ground that they are not "responsive" documents within the meaning of the parties' July 2003

[1] In this motion, "Pl. Opp. ____" refers to the referenced page(s) of the "Response by Renda Marine, Inc. to Defendant's Motion for a Protective Order;" "Tr. ____(____)" refers to the referenced page(s) and line(s) of the transcript of the May 13, 2004 telephonic conference in this case; "Def. App. ____" refers to the referenced page(s) of the appendix accompanying "Defendant's Motion for a protective Order dated June 1, 2004; and "Def. Supp. App. ____" refers to the referenced page(s) of this reply to plaintiff's response to the Government's motion for a protective order.

Agreement concerning the scope of electronic discovery.[2] And the Court described what it envisioned would occur after that as follows:

> We would give a date in the fall, mid-fall probably, by which . . . the Plaintiff would state that it is ready to put forward a final list of exhibits, and then we would allow the Plaintiff to amend pre-trial filings, put forward a final list of exhibits and witnesses. It would not include new witnesses, but would revise its exhibits to correct these omissions, and then we would schedule a trial from there, including the pre-trial activities. That is the best that I can think of . . . in order . . . not to have the Plaintiff suffer from the omission to review [an] available and potentially important source.

Tr. 27(18-25)-28(1-8), Def. Supp. App. 5-6.

The discovery that Renda seeks and to which the Government's motion for a protective order is addressed is not the discovery that is the subject of Renda's April 14, 2004 motion to compel. For example, *in addition to* documents relating to the eight dredging projects in the Upper Bayou area from 1987 to 1999 referred to in the Government's response to Renda's Interrogatory No. 5, Renda now is seeking production of documents relating to *thirty-three* dredging projects in the Upper Bayou area during the *38-year* interval from 1949 to 1987.

To allow Renda *unrestricted* discovery at this point would be fundamentally unfair to the Government. We had to jump through hoops to complete discovery under the Court's previous scheduling orders, orders characterized by the Court as "athletic efforts" "to bring [the] case to a speedy trial" "at the behest of [Renda] from the very beginning." See Tr. 25(21-23), Def. Supp. App. 3. Under those schedules, the Government did not pursue or curtailed discovery in this

---

[2] As the Court stated: "[T]he point of opening discovery is to deal with three specific issues. One of them is the boxes [of allegedly non-responsive computer back-up tape documents], and the second is Interrogatory 5, and the third is the [privileged back-up tape documents]." Tr. 38(8-11), Def. App. 11.

case, including depositions, that we otherwise likely would have pursued – discovery that, while not essential to our defenses, would have been useful to the preparation of our case.

The discovery that Renda seeks, moreover, cannot be considered "follow-up" discovery relating to the three discovery matters raised by its April 14, 2004 motion to compel. As Renda notes, the Government has not yet produced the documents referenced in our response to Renda's Interrogatory No. 5 and the Court has yet to rule whether any additional computer back-up tape documents must be produced.

If the Court did not intend to confine discovery to the three items that are the subject of Renda's April 14, 2004 motion to compel, the Court should afford the Government a similar opportunity to conduct additional discovery. And the Court should understand that the scope of additional discovery now sought by Renda is quite broad and very likely cannot be completed by the status conference scheduled for November 4, 2004, when a new trial schedule is supposed to be set. The Court allowed five months for the completion of discovery with respect to the three items that are the subject of Renda's April 14, 2004 motion to compel, in part because, as the Court noted during the May 13, 2004 hearing, "just the section of documents that are described in Interrogatory 5 could be a pretty substantial undertaking." Tr. 27(15-17), Def. Supp. App. 5; see also Tr. 36(24), Def. App. 9 ("This is not a small discovery matter."). Now Renda is seeking documents relating to an additional *thirty-three* dredging projects during the *38-year* period from 1949 to 1987, not to mention interrogatories requesting information about the Lost Lake Placement Area back to *1980*, and twenty new document production requests.

In support of its opposition to the Government's application for a protective order, Renda also states that "[s]ignificantly, [d]efendant is not complaining of undue burden or privilege, or

any other excuse from compliance with reasonable discovery." Pl. Opp. 1. The issue presented by the Government's motion, however, is a threshold one of whether Renda should be allowed to pursue this additional discovery at all, not whether individual discovery requests are "unreasonable" or otherwise objectionable. This is not the time for objections of that kind to individual discovery requests. If the Court should deny the Government's application for a protective order and permit the additional discovery sought by Renda, we reserve the right, in responding to that discovery, to raise appropriate objection(s) under the Court's discovery rules, including that the discovery is unduly burdensome, privileged, or otherwise inappropriate, and to seek any enlargements of time needed to respond to that discovery.

For the foregoing reasons and the reasons set forth in defendant's motion for a protective order, defendant's motion should be granted and the Court should issue an order providing that defendant is not required to respond to: (1) Document Requests Nos. 27 and 28 contained in plaintiff's first request for production of documents; (2) plaintiff's second set of interrogatories; (3) plaintiff's third set of document production requests; (4) plaintiff's fourth set of document production requests; or (5) any other discovery apart from that which is the subject of plaintiff's motion to compel filed April 14, 2004 (to the extent allowed by the Court).

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/John E. Kosloske
JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-0282
(fax) (202) 514-8624

Attorneys for Defendant

JUNE 16, 2004

# DEFENDANT'S SUPPLEMENTAL APPENDIX

# INDEX TO DEFENDANT'S SUPPLEMENTAL APPENDIX

**Document** **Page**

Portions of transcript of telephonic hearing on May 13, 2004 ........................................ 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INCORPORATED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket No.: 02-306C |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

Room 712
National Courts Building
717 Madison Place N.W.
Washington, D.C. 20005

Thursday,
May 13, 2004

The parties met, pursuant to notice of the Court, at 12:01 p.m.

BEFORE: HONORABLE EMILY C. HEWITT
Judge

APPEARANCES:

For the Plaintiff:

BRIAN ERIKSON, Esquire
Quilling, Selander, et al.
2001 Bryan Tower, Suite 1800
Dallas, Texas 75201
(214) 880-1844

For the Defendant:

JOHN EDGAR KOSLOSKE, Esquire
U.S. Department of Justice
Civil Division
Litigation Branch
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
(202) 307-0282

P R O C E E D I N G S

(12:01 p.m.)

THE COURT: Good morning or afternoon, as the case may be.

MR. ERIKSON: Good afternoon, Your Honor, Brian Erikson.

MR. KOSLOSKE: Good afternoon, Your Honor.

THE COURT: The purpose of the call is to deal with a motion for enlargement from the United States, and a motion to compel from the Plaintiff. Let me ask if there are any other matters to add to the agenda at this time. Mr. Erikson?

MR. ERIKSON: Not that I know of, Your Honor.

THE COURT: Thank you. Mr. Kosloske?

MR. KOSLOSKE: No, Your Honor.

THE COURT: Thanks. All right. We are on the record with Heritage Court Reporting, and if you -- when you do speak, even if you are making a brief comment, or in response to or in a colloquy with the Court, if you would go ahead and state your name at the beginning of your remarks so that way we will be able to keep a clear record.

The Court, after looking at the papers, thinks there is two matters that I think that we can

stand, Mr. Erikson, my question asks for a yes or a no.

MR. ERIKSON: I'm sorry, Your Honor. Could you repeat the question?

THE COURT: Certainly. Would you expect to find in these documents illumination about the types of materials encountered?

MR. ERIKSON: Probably yes, Your Honor.

THE COURT: Would you say that these documents are material to the Plaintiff's case in that regard?

MR. ERIKSON: Yes, Your Honor.

THE COURT: I will express some frustration here, because the Court has done some very -- what I have referred to I think previously as athletic scheduling to try to bring this case to a prompt trial.

And it is not the purpose of the Court to have the Plaintiff contractor be unable to have the resources to bring his case. That is not our purpose. But the athletic efforts that we have made to bring this to a speedy trial have been at the behest of the Plaintiff from the very beginning.

And I must tell you, Mr. Erikson, that Mr. Kosloske, in the view of the Court, has the better of

it on where the ball falls on whether or not the Plaintiff has had an opportunity to look at these documents.

That is, the documents -- this is the way that it looks to the Court. About a year-and-a-half ago the documents were requested. Not much less than that the documents were identified in a response.

Then over a year passed. The discovery deadline passed, and only in the course of preparing apparently exhibit lists in preparation for the pre-trial activities did the Plaintiff notice that a hunk of its evidence had not been gathered.

I mean, I think that is what it looks like to the Court, looks to the Court like what happened. Now, I am not -- I am unwilling to have the contractor in this circumstance, I am unwilling to have the contractor disadvantaged by those sets of circumstances where this is a significant claim, and with potentially significant evidence that has not been examined.

I am also unwilling to conduct a trial in absolute chaos. I am prepared to allow the motion to the extent of allowing -- the government has already said it will provide -- it would produce documents relating to the contract. It has already offered

that. That offer has not been taken up. Now is the time to take it up.

What that will result in is the Court will vacate the trial date, and we will simultaneously perform other activities in connection with pre-trial, which is that we will review the documents. We will set up at the conclusion of this hearing a schedule to review UDS documents so that we can determine yea or nay whether the discovery so far has been under-inclusive in connection with the electronic review.

And we will also of course review the in camera -- as well as in camera, we will review the attorney-client. And then we will set a date. We recognize that this itself is -- and I think it has been indicated that looking at just the section of documents that are described in Interrogatory 5 could be a pretty substantial undertaking.

We would give a date in the fall, mid-fall probably, by which the parties would advise -- I think the United States has already stated that it is ready for trial.

The Plaintiff would state that it is ready to put forward a final list of exhibits, and then we would allow the Plaintiff to amend pre-trial fillings, put forward a final list of exhibits and witnesses.

It would not include new witnesses, but would revise its exhibits to correct these omissions, and then we would schedule a trial from there, including the pre-trial activities.

That is the best that I can think of to do here in order to -- not to have the Plaintiff suffer from the omission to review a available and potentially important source. That is the result of the thing.

I feel or take some comfortable to the point of the view of the Plaintiff that this is a Contract Disputes Act case, which does afford in the case of money owed an interest remedy, as well as a principal remedy.

So that I feel that if there were money owed to the Plaintiff contractor that the delay would be -- delay is always a problem, but it is less burdensome than it might be in some other cases.

That is my instinct just based on the argument of what to do, and I will hear comment, but I am not sure that I can think of a better thing. Go ahead.

MR. ERIKSON: Your Honor, I need to talk to my client about what the Court is suggesting.

THE COURT: The Court is not necessarily