IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 02-306C |
| v. | ) | |
| | ) | (Judge Hewitt) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION
FOR LEAVE TO AMEND COMPLAINT

PRELIMINARY STATEMENT

Pending before the Court is the motion of plaintiff, Renda Marine, Inc. (Renda), for leave to file a first amended complaint.[1/] The motion should be denied because of Renda's undue delay in bringing the motion and because of the prejudice to the Government that would result if Renda were allowed to file the amended complaint at this juncture of the proceedings, when discovery for the Government has concluded.[2/]

[1] In this response to Renda's motion for leave to amend the complaint, "Pl. Mot. ____" refers to the referenced page(s) of the "Motion by Renda Marine, Inc. for Leave of Court to Amend Complaint" filed on July 1, 2004; "Compl. ¶ ____" refers to the referenced paragraph(s) of the "Complaint" filed in this matter filed on April 11, 2002; "Amended Compl., ¶ ____ refers to the referenced paragraph(s) of the proposed amended complaint that is the subject of Renda's motion for leave to amend its complaint; "Tr. ____(____)" refers to the referenced page(s) and line(s) of the transcript of the May 13, 2004 telephonic conference in this case; and "Def. App. ____" refers to the referenced page(s) of the appendix to this opposition to Renda's motion for leave to amend its complaint.

[2] If, however, the motion to amend the complaint is granted and Renda is allowed to file the proposed first amended complaint, the Government requests a conference between counsel and the Court for the purpose of establishing a new pretrial schedule in this case that: (1) fixes a date by which a response to the amended complaint must be served; (2) provides the Government a full and fair opportunity for additional discovery addressed to the new matter raised in the amended complaint, to include written discovery and depositions of fact witnesses (including previously-deposed fact witnesses); (3) disclosure of expert testimony by any new experts as well as

## BACKGROUND

### I. The Original Complaint

This litigation was commenced by plaintiff, Renda Marine, Inc. (Renda), by the filing of a complaint on April 11, 2002. The Government served and filed an answer to the complaint on July 25, 2002.

The April 2002 complaint involves claims by Renda against the Government governed by the Contract Disputes Act of 1978, as amended (41 U.S.C. §§ 601-13) (CDA). Those claims relate to Contract No. DACW64-99-C-0001 (the Contract) between Renda and the United States, acting through the Army Corps of Engineers, Galveston, Texas District (the Corps), to dredge a reach of the Galveston-Houston Ship Channel known as the Upper Bayou and to build containment levees and other structures at the Lost Lake Placement Area, a disposal facility for dredged material owned and operated by the Port of Houston Authority. Renda appealed to this Court from the deemed denial of eight claims against the Government: (1) the "South Ferry Landing Differing Site Conditions Claim" (Compl. ¶¶ 19-52); the "Flare Area Claim (Compl. ¶¶ 53-74); (3) the "HL&P Tower Claim" (Compl. ¶¶ 75-83); (4) the "Section 7 Clay Claim" (Compl. ¶¶ 84-90); (5) the "West Levee Realignment Claim" (Compl. ¶¶ 91-101); (6) the "Obstruction #1 Claim" (Compl. ¶¶ 102-120); (7) the "Obstruction #2 Claim" (Compl. ¶¶ 121-147); and the "Lost Lake Levees Claim" (Compl. ¶¶ 148-197). Renda sought a recovery of about $14.25 million, in the aggregate, upon those claims, plus interest under the CDA.

---

any revised expert testimony disclosures by previously-identified experts; (4) depositions of experts based upon any such expert testimony disclosures; and (5) a schedule for any motions pursuant to RCFC 12(b)(1) and/or 56, including motions addressed to the Court's jurisdiction to entertain any of the new matters raised by the amended complaint.

II. Pretrial Proceedings Under The Court's Scheduling Orders

During the period from October 2002 until April 2004, under scheduling orders entered by the Court on October 18, 2002, as amended on September 10, 2003, and on March 19, 2004, the parties conducted discovery addressed to the claims that are the subject of the April 2002 complaint of record in this matter discussed above. The Government took depositions of fact witnesses, including former management officials of Renda, retained consultants who evaluated various facets of the claims that are the subject of Renda's April 2002 complaint, and deposed Renda's designated trial experts.

A three-week trial in this case originally was set to commence on June 15, 2004. To that end, in April and May 2004, the parties filed the pretrial submissions required by Appendix A to the Rules of the Court of Federal Claims, including memoranda of contentions of fact and law, exhibit and witness lists, and related motions.

Renda's pretrial submission was accompanied by a motion to compel production of certain documents. On May 13, 2004, the Court held a telephonic conference to address Renda's motion to compel. During that conference, the Court decided to vacate the June 15, 2004 trial date in order to afford Renda the opportunity to pursue the discovery that was the subject of its motion to compel, which involved three discrete matters. As the Court stated: "[T]he point of opening discovery is to deal with three specific issues. One of them is the boxes [of allegedly non-responsive computer back-up tape documents], and the second is Interrogatory 5, and the third is the [privileged back-up tape documents]." Tr. 38(8-11), Def. App. 8. The Court described what it envisioned would occur thereafter as follows:

> We would give a date in the fall, mid-fall probably, by which . . . the Plaintiff would state that it is ready to put forward a final list of exhibits, and then we would allow the Plaintiff to amend pre-trial filings, put forward a final list of exhibits and witnesses. It would not include new witnesses, but would revise its exhibits to correct these omissions, and then we would schedule a trial from there, including the pre-trial activities. That is the best that I can think of . . . in order . . . not to have the Plaintiff suffer from the omission to review [an] available and potentially important source.

Tr. 27(18-25)-28(1-8), Def. App. 6-7.

On May 14, 2004, the Court issued an Order granting Renda's motion to compel to the extent that it sought production of documents for the eight dredging projects referred to in the Government's response to Renda's Interrogatory No. 5. See Order, ¶ (1)(A), Def. App. 1. The Court further directed that the 24 allegedly privileged back-up tape documents and a 50-document sample of the allegedly non-responsive back-up tape documents be provided to the Court for an *in camera* review. Order, ¶ (1)(B)&(C), Def. App. 1-2. In addition, the Order provided:

> Further to the court's unwillingness to disadvantage the contractor at trial in this matter in light of discussions indicating that a significant volume of evidence that may be probative of plaintiff's largest claim has yet to be reviewed, and with the concurrence of the parties, the current pre-trial date and trial dates are VACATED, and discovery is REOPENED. The court's scheduling orders dated October 18, 2002, September 10, 2003, and March 19, 2004 are hereby SUPERCEDED and the due dates therein are VACATED.

Order, ¶ (2), Def. App. 2-3. Consistent with the May 13, 2004 telephonic conference, the Order set a telephonic status conference for November 4, 2004, "to reschedule pre-trial proceedings and trial dates in this matter." Order, ¶ (4), Def. App. 3.

III. The Proposed First Amended Complaint

Six weeks later, on July 1, 2004, Renda filed the pending motion for leave to amend its complaint by filing a "First Amended Complaint." The proposed first amended complaint contains 37 paragraphs[3] that do not appear in the original complaint filed by Renda in April 2002. See Amended Compl. ¶¶ 16, 17, 19, 20, 55, 78, 88, 96, 109, 110, 130, 131, 150, 159, 160, 211-219, 221-243. The amended complaint revises an additional 20 paragraphs contained in the original complaint. See Amended Compl. ¶¶ 26, 50, 54, 63, 76, 87, 91, 95, 107, 111, 112, 117, 123, 127, 129, 132, 140, 158, 170, and 210. The amended complaint seeks a recovery of about $13.38 million, in the aggregate.

The first amended complaint contains ten counts. Count I of the amended complaint corresponds to the "South Ferry Landing Differing Site Conditions Claim" contained in the original complaint, except that the amended complaint adds a new theory of relief, i.e., that Renda is entitled to payment for its alleged extra costs in the South Ferry Landing area based upon "the [Government's] termination of dredging work for convenience." See Amended Complaint, ¶ 54.

Counts II and III of the amended complaint correspond to the "Flare Area Claim" and "HL&P Tower Claim" contained in the original complaint.

Count IV of the first amended complaint corresponds to the "Section 7 Clay Claim" contained in the original complaint, except that the amended complaint avers that the alleged failure of the Government to investigate this supposed differing site condition was a breach of contract and it adds a new theory of relief, i.e., that Renda is entitled to compensation based upon "the

[3] This does not include paragraphs appearing in the proposed first amended complaint that incorporate by reference and "reaver" allegations set out in previous paragraphs of the amended complaint.

[Government's] termination for convenience of dredging and levee construction work." See Amended Compl., ¶¶ 91, 96.

Count V of the first amended complaint corresponds to the "West Levee Realignment Claim" contained in the original complaint, except that the amended complaint avers that the alleged failure of the Government to investigate this supposed differing site condition was a breach of contract and it adds a new theory of relief, i.e., that Renda is entitled to compensation based upon "the [Government's] termination for convenience of the levee construction work." See Amended Compl., ¶ 109.

Counts VI and VII of the first amended complaint correspond to the "Obstruction #1 Claim" and the "Obstruction #2 Claim" contained in the original complaint, except that the amended complaint adds a new theory of relief, i.e., that Renda is entitled to compensation based upon "the [Government's] termination for convenience of the dredging work on the Project." See Amended Compl., ¶¶ 130, 159.

Count VIII of the first amended complaint corresponds to the "Lost Lake Levees Claim" contained in the original complaint, except that the amended complaint adds new theories of relief, i.e., that the levees at the Lost Lake Placement Area to be constructed by hydraulic placement of fill were "impossible or commercially impracticable to build"[4] and that Renda is entitled

---

[4] The amended complaint alleges that the hydraulically placed levees were "impossible or commercially impracticable to build" for three reasons: (1) "there was not enough suitable material available from the areas specified for dredging on the Project;" (2) "the foundations for the new hydraulically placed levees were too soft and unstable to allow the levee to be constructed to 30 feet above mean low tide, or to remain at 30 feet above mean low tide;" and (3) "there was not enough time in the contract for the Project to allow for construction of the Lost Lake levees even if there was enough suitable materials due to the softness and instability of the levee foundations." See Amended Compl. ¶¶ 211-213.

to compensation based upon "the [Government's] termination for convenience of the levee construction work." See Amended Complaint, ¶¶ 211, 218.

Count IX of the first amended complaint is a challenge by Renda to the November 26, 2002 decision of the Contracting Officer upon Government claims against Renda, in which the Contracting Officer determined that Renda owes the Government approximately $11.8 million. Although Renda received this decision in late November or early December 2002, it neglected to appeal the decision either to the Armed Services Board of Contract Appeals within 90 days of its receipt or to this Court within 12 months of its receipt, as required by the Contract Disputes Act.[5] Renda now belatedly attempts to contest that decision by way of an amended pleading in the present litigation.

In Count X of the first amended complaint, denominated "Damages," Renda alleges that it is entitled to compensation for unspecified "extra or changed work that Renda had to perform or was directed to perform on the Project" based upon "the differing site conditions and changes provisions in the contract or due to the [Government's] termination for convenience of the work at issue." See Amended Complaint, ¶ 242.

The proposed first amended complaint also asserts that Renda is entitled to "multiple equitable adjustments of contract time for the [Government's] delays and disruptions," based

---

[5] The Contract Disputes Act (CDA) provides that a contractor may appeal a contracting officer's decision to an agency board of contract appeals within 90 days from the date of the contractor's receipt of the decision, 41 U.S.C. § 606, or, in lieu of an appeal to a board, the contractor may institute a proceeding upon a claim in the Court of Federal Claims within 12 months from the date of the contractor's receipt of the contracting officer's decision concerning the claim. Id. at § 609(a)(1),(3). Absent a such "timely commenced appeal or suit," [t]he contracting officer's decision on the claim shall be final and conclusive and not subject to review by any forum, tribunal, or Government agency[.]" Id. at § 605(b).

upon the following "non-exclusive" list of acts or omissions:

(a) "Refusal or failure to make a timely decision on releasing the Dredge Millennium from work on the Project;"

(b) "Refusal or failure to make a timely decision on deleting Section 9 from Renda's work on the Project;"

(c) "Refusal or failure to make a timely decision on how to resolve design and construction problems with the Lost Lake levees;"

(d) "Refusal or failure to recognize a lack of suitable dredge materials to construct the Lost Lake levees;"

(e) "Refusal or failure to recognize that the Lost Lake levees could not be constructed to the contractually required height;"

(f) "Refusal or failure to award Renda appropriate extensions of time in connection with other differing site conditions that Renda encountered on the Project;" and

(g) "Refusal or failure to make a timely decision on the release of Renda's construction equipment from the Project."

See Amended Compl. ¶ 222.

## ARGUMENT

RCFC 15(a) provides that a party may amend a pleading, e.g., a complaint, to which a responsive pleading, e.g., an answer, has been served "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." In deciding how to rule upon a motion to amend, "a court must consider the presence of the following factors: undue delay, bad faith or dilatory motive on the part of the movant, futility of the proposed amendment, and undue prejudice to the opposing party." Siemens Aktiengesellschaft v. United States, 26 Cl. Ct. 312, 313 (1992). In applying this standard, particular emphasis is placed upon the element of prejudice to the opposing party. Id. (citing United States v. Hougham, 364 U.S.

310, 316 (1960) ("Rule 15 of the Federal Rules of Civil Procedure . . . was designed to facilitate the amendment of pleadings except where prejudice to the opposing party would result.").

Renda's motion for leave to amend the complaint should be denied for two reasons. First, Renda unduly delayed in bringing the motion. Count IX of the proposed first amended complaint is a challenge by Renda to the November 26, 2002 decision of the Contracting Officer upon Government claims relative to the Upper Bayou Project. Renda had that decision in hand for 1-1/2 years before attempting to make it a subject of this litigation.

In addition to contesting the contracting officer's decision upon Government claims, the proposed first amended complaint raises several new claims for relief:

(1) claims based upon the alleged termination by the Government of the Contract for the convenience of the Government;

(2) a claim of impossibility or commercial impracticability with respect to the construction of levees at the Lost Lake Placement Area that were to be built by the hydraulic placement of dredged material;

(3) a claim for breach of contract regarding the putative failure of the Government to investigate the alleged differing site condition that is the subject of Count IV of the amended complaint;

(4) a claim for compensation for unspecified "extra or changed work" that Renda allegedly "had to perform or was directed to perform" on the Upper Bayou Project (Amended Compl., Count X); and

(5) claims for additional time under the Contract for alleged Government "delays and disruptions" based upon a "non-exclusive" list of alleged refusals or failures by the Government to act during the course of the Upper Bayou Project (Amended Compl., ¶ 222.).

In Siemens, the Government was allowed to amend its answer in part because the amendments

were the product of what the Government had learned in discovery after the original answer had been served. 26 Cl.Ct. at 313. Renda asserts that it has made other changes to the complaint "to reflect discovery that has occurred in this case," Pl. Mot. 2, but it does not identify the discovery that resulted in the need for the proposed revisions to the complaint. Contrary to what Renda implies, as of April 2002, when this lawsuit was instituted, Renda possessed all of the information necessary to recognize and raise the new claims listed above that it now seeks to introduce into the case.

Second, permitting Renda to amend the complaint at this point in the case would result in prejudice to the Government. Discovery proceedings in this case have concluded, except for the discrete discovery requests by Renda that are the subject of the Court's May 14, 2004 Order. The Government's discovery in the case, e.g., examination of Renda's present and former officials and employees of Renda was addressed to the claims and allegations contained in Renda's April 2002 complaint. Similarly, our identification of experts for this litigation and the scope of their investigations and opinions was made with a view to the claims and allegations contained in Renda's April 2002 complaint. Had the Government been placed on notice at the outset of discovery of the matters Renda now seeks to raise in the proposed amended complaint, we would have structured our discovery and other case preparation (including identification of experts) to address these new claims and allegations. To permit Renda to revise its case after the close of discovery for the Government, therefore, would deprive the Government of its fundamental right to conduct discovery with respect to the new matters raised in the proposed amended complaint.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to amend the complaint should be denied.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/John E. Kosloske
JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-0282
(fax) (202) 514-8624

Attorneys for Defendant

OF COUNSEL:

MR. P. ALEX PETTY
Assistant District Counsel
Office of Counsel
Galveston District
U.S. Army Corps of Engineers
Galveston, TX

JULY 19, 2004