UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC., PLAINTIFF, | § § § | CASE NO. 02-306C |
| V. | § § | (JUDGE HEWITT) |
| UNITED STATES ARMY CORPS OF ENGINEERS, DEFENDANT. | § § § | |

**REPLY BY RENDA MARINE, INC. TO DEFENDANT'S RESPONSE TO RENDA'S MOTION TO ENFORCE COURT ORDER REQUIRING PRODUCTION OF INTERROGATORY NO. 5 DOCUMENTS**

Plaintiff, Renda Marine, Inc. ("Renda"), respectfully replies to Defendant's Response to Renda's Motion to Enforce Court Order Requiring Production of Interrogatory No. 5 Documents as follows:

The Government has indeed produced four partially filled boxes of documents concerning the following projects.

1. Contract No. DACW64-99-C-0012 – Houston Ship Channel, Texas, Dredging Sims Bayou to Greens Bayou with Extension to Boggy Bayou Basin in Harris County, Texas
   Contractor: King Fisher Marine Service, Inc.

2. Contract No. DACW64-96-C-0032 – Houston Ship Channel, Texas, Dredging Carpenters Bayou to Greens Bayou in Harris County, Texas
   Contractor: T. L. James & Co., Inc.

3. Contract No. DACW64-95-B-0010 – Houston Ship Channel, Emergency Dredging Morgan Point to Carpenter Bayou in Harris County, Texas
   Contractor: Mike Hooks, Inc.

4. Contract No. DACW64-97-C-0028 – Houston Ship Channel, Dredging Morgans Point to Carpenter Bayou in Harris and Chambers County, Texas
   Contractor: King Fisher Marine Service, Inc.

5. Contract No. DACW64-96-C-0027 – Erosion Protection, Alexander Island and Peggy Lake, Houston Ship Channel, Texas
   Contractor: W. B. Construction, Inc.

6. Contract No. DACW64-95-C-0011 – Maintenance Dredging, Port of Houston, Morgan Point to Carpenter Bayou
Contractor: Mike Hooks, Inc.

The documents appear to have been scanned. Most of the stacks of documents contain a "scanned" label with someone's initials. One such illustrative label is attached as Exhibit A. The Government has not produced electronic versions of the scanned documents, but should be ordered to do so.

It appears likely that the Government may have "scanned" versions of the other project documents that it claims were destroyed. If so, the Government should also produce the "scanned" versions of the destroyed documents.

While resisting Renda's requests for these documents, the Government represented to the Court that 41 projects were involved, and intimated that the document production was massive. For example, in response to Renda's Interrogatory No. 5, the Government wrote: "Additionally, Corps of Engineers contracts for dredging work performed in the area of the Upper Bayou Project during the period from 1987 to 1999 are listed in the document at Tab B to 'Defendant's Responses to Requests Nos. 15, 27, and 28 of Plaintiff's First Request for Production of Documents' dated January 3, 2003. In defendant's response to document production requests 27 and 28, we have offered to produce documents relating to those contracts for plaintiff's inspection at a mutually convenient time and place." A true copy of Tab B is attached as Exhibit B. Tab B lists 41 projects.

On March 17, 2004, in its opposition to Renda's motion for leave to require Defendant to answer discovery, Defendant stated that "Renda's discovery requests . . . would require a substantial amount of time and effort by the Government to address. . . . To the extent such records exist, they would have to be retrieved from a Government records storage center . . ." See Exhibit C, a true and

correct copy of Defendant's Opposition to Plaintiff's Contingent Motion for Leave to Require Defendant to Answer Plaintiff's Discovery.

On April 30, 2004, in its opposition to Renda's Motion to Compel, the Government objected to production of the dredging project records and stated that "It is important to note that we are not dealing here with a half-inch file of readily-obtainable material that could be produced overnight. Rather, we are dealing with a request for production of *all* documents relating to eight dredging projects that must be retrieved from Government records storage centers."

At no time prior to Renda's Motion did the Government advise that it had destroyed or was destroying documents from the Tab B projects. At all times, the Government represented that documents for such projects existed and were in storage in Galveston or Fort Worth or some other federal records detention center. Interestingly, the Government indicates that it has searched the Galveston District, but makes no mention of a search of the Fort Worth Federal Records Center or any other federal records center. The Government should be ordered to search the Fort Worth Federal Records Center or any other federal records center which may have responsive documents.

The Court should order the Government to reveal when it actually destroyed the documents that it offered to produce. The Government thus far has only indicated that the documents were scheduled to be destroyed during some year, but not when the documents were actually destroyed. If the Government destroyed the documents after Renda requested them, or while this motion was pending, Renda is entitled to know the particulars about what was destroyed, and when it was destroyed. Renda may have other spoliation of evidence concerns.

If the Government has scans of the destroyed documents, the Government should produce the scans.

Respectfully submitted,

QUILLING, SELANDER, CUMMISKEY & LOWNDS, P.C.

BY: s/Brian W. Erikson
Brian W. Erikson, TX Bar No. 06643800

2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Telefax)
ATTORNEYS FOR RENDA MARINE, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of July, 2004, a true and correct copy of Reply by Renda Marine, Inc. to Defendant's Response to Renda's Motion to Enforce Court Order Requiring Production of Interrogatory No. 5 Documents, was served electronically through the CM/ECF system for the Court of Federal Claims.

s/Brian W. Erikson
Brian W. Erikson

1

1180 GEN'l COE CONTRACT CORRESP FILES
PRE-AWARD DACW64-97-C-0028
King Fisher Marine Service, INC.
Dredging Morgan's Pt. to Carpenter's Bayou in
Harris & Chambers Counties, TX.

Scanned

DEST WHEN NLN FOR CURRENT OPERATION

EXHIBIT
A

Blumberg No. 5118

| ContractNum | Contractor | ActStrt | WorkComp | ContType | Channel | Total Pay Yardage |
|---|---|---|---|---|---|---|
| DACW6449C1931 | Alantic Gulf and Pacific Company | 05-Jul-49 | 25-Nov-49 | New Work Dredging | Morgans Point to Carpenters Bayou | 3,137,934 |
| DACW6450C0429 | Alantic Gulf and Pacific Company | 13-Jan-50 | 15-May-50 | New Work Dredging | Morgans Point to Carpenters Bayou | 3,797,290 |
| DACW6451C0890 | Alantic Gulf and Pacific Company | 08-Feb-51 | 26-Apr-51 | New Work Dredging | Morgans Point to Carpenters Bayou | 2,135,626 |
| DACW6451C0941 | Alantic Gulf and Pacific Company | 25-Apr-51 | 27-Apr-52 | New Work Dredging | Carpenters Bayou to Greens Bayou | 3,747,914 |
| DACW6452C1231 | Alantic Gulf and Pacific Company | 05-Feb-52 | 21-Apr-52 | Maintenance Dredging | Morgans Point to Carpenters Bayou | 2,280,453 |
| DACW6452C1449 | Alantic Gulf and Pacific Company | 24-Apr-52 | 15-Jun-53 | New Work Dredging | Carpenters Bayou to Greens Bayou | 3,733,053 |
| DACW6453C2068 | Standard Dredging Corp. | 06-Apr-53 | 19-Aug-53 | Maintenance Dredging | Morgans Point to Carpenters Bayou | 1,421,779 |
| DACW6453C2411 | Alantic Gulf and Pacific Company | 21-Sep-53 | 08-Apr-54 | Maintenance Dredging | Morgans Point to Carpenters Bayou | 2,547,692 |
| DACW6455C0017 | Alantic Gulf and Pacific Company | 27-Oct-55 | 12-Dec-55 | Maintenance Dredging | Morgans Point to Carpenters Bayou | 1,226,129 |
| DACW6457C0006 | Alantic Gulf and Pacific Company | 30-Aug-56 | 12-Mar-57 | Maintenance Dredging | Morgans Point to Carpenters Bayou | 2,369,408 |
| DACW6458C0176 | Alantic Gulf and Pacific Company | 10-Jun-58 | 24-Sep-58 | Maintenance Dredging | Morgans Point to Carpenters Bayou | 3,211,008 |
| DACW6461C0084 | Alantic Gulf and Pacific Company | 16-Feb-61 | 14-Nov-61 | New Work Dredging | Morgans Point to Carpenters Bayou | 5,346,051 |
| DACW6461C0117 | Alantic Gulf and Pacific Company | 21-May-61 | 12-Feb-62 | Maintenance Dredging | Morgans Point to Carpenters Bayou | 1,463,397 |
| DACW6462C0055 | T.L. James & Company, Inc. (Area Office) | 08-Nov-61 | 14-Sep-63 | New Work Dredging | Carpenters Bayou to Greens Bayou | 4,969,399 |
| DACW6462C0226 | Alantic Gulf and Pacific Company | 31-May-62 | 16-Sep-63 | New Work Dredging | Carpenters Bayou to Greens Bayou | 7,738,855 |
| DACW6464C0107 | Standard Dredging Corp. | 13-Jan-64 | 02-Apr-65 | New Work Dredging | Morgans Point to Carpenters Bayou | 7,745,380 |
| DACW6464C0186 | T.L. James & Company, Inc. (Area Office) | 03-Nov-64 | 07-May-65 | New Work Dredging | Carpenters Bayou to Greens Bayou | 3,224,363 |
| DACW6466C0106 | Bauer Dredging | 27-Apr-66 | 12-Oct-66 | Maintenance Dredging | Morgans Point to Carpenters Bayou | 3,109,765 |
| DACW6468C0048 | T.L. James & Company, Inc. (Area Office) | 17-Jan-68 | 20-Aug-68 | Maintenance Dredging | Morgans Point to Carpenters Bayou | 3,215,614 |
| DACW6468C0130 | Alantic Gulf and Pacific Company | 13-Aug-68 | 23-Dec-68 | Maintenance Dredging | Carpenters Bayou to Greens Bayou | 1,287,593 |
| DACW6469C0087 | Alantic Gulf and Pacific Company | 07-Aug-69 | 19-Oct-69 | Maintenance Dredging | Carpenters Bayou to Greens Bayou | 136,686 |
| DACW6470C0062 | Alantic Gulf and Pacific Company | 28-Apr-70 | 21-Jul-70 | Maintenance Dredging | Morgans Point to Carpenters Bayou | 2,591,474 |
| DACW6472C0051 | Great Lakes Dredge & Dock Company (Area Office) | 24-Apr-72 | 21-Jun-72 | Maintenance Dredging | Morgans Point to Greens Bayou | 1,715,341 |
| DACW6474C0044 | Alantic Gulf and Pacific Company | 04-Jan-74 | 15-May-74 | Maintenance Dredging | Carpenters Bayou to Greens Bayou | 850,214 |
| DACW6475C0076 | T.L. James & Company, Inc. (Area Office) | 25-Mar-75 | 31-Jul-75 | Maintenance Dredging | Morgans Point to Carpenters Bayou | 2,957,799 |
| DACW6475C0105 | T.L. James & Company, Inc. (Area Office) | 25-Jun-75 | 15-Jan-76 | Maintenance Dredging | Morgans Point to Carpenters Bayou | 971,666 |
| DACW6476C0051 | T.L. James & Company, Inc. (Area Office) | 10-May-76 | 02-Aug-76 | New Work Dredging | Morgans Point to Carpenters Bayou | 491,409 |
| DACW6477C0016 | Mike Hooks, Inc. | 17-Feb-77 | 30-Sep-77 | Maintenance Dredging | Morgans Point to Carpenters Bayou | 964,127 |
| DACW6478C0028 | T.L. James & Company, Inc. (Area Office) | 10-May-78 | 28-Nov-78 | Maintenance Dredging | Carpenters Bayou to Greens Bayou | 1,357,924 |
| DACW6480C0065 | T.L. James & Company, Inc. (Area Office) | 23-Sep-80 | 15-Jun-81 | Maintenance Dredging | Morgans Point to Carpenters Bayou | 2,974,432 |
| DACW6483C0008 | T.L. James & Company, Inc. (Area Office) | 02-May-83 | 18-Oct-83 | Maintenance Dredging | Carpenters Bayou to Greens Bayou | 1,062,844 |
| DACW6484C0035 | Bean Dredging Corporation | 06-Oct-84 | 24-Mar-85 | Maintenance Dredging | Morgans Point to Carpenters Bayou | 3,252,658 |
| DACW6486C0022 | T.L. James & Company, Inc. (Area Office) | 14-May-86 | 22-Aug-86 | Maintenance Dredging | Carpenters Bayou to Greens Bayou | 607,330 |
| DACW6488C0025 | T.L. James & Company, Inc. (Area Office) | 11-Jul-88 | 16-Jan-89 | Maintenance Dredging | Morgans Point to Carpenters Bayou | 2,736,603 |
| DACW6489C0042 | Folk Construction | approx. | 1989 - 90 | Levee Rehabilitation | Lost Lake Disposal Area | unknown |
| DACW6490C0018 | T.L. James & Company, Inc. (Area Office) | 21-Jul-90 | 10-Dec-90 | Maintenance Dredging | Carpenters Bayou to Greens Bayou | 786,800 |
| DACW6492C0049 | Great Lakes Dredge & Dock Company (Area Office) | 11-Sep-92 | 16-Jul-93 | Maintenance Dredging | Morgans Point to Carpenters Bayou | 2,983,792 |
| DACW6495C0011 | Mike Hooks, Inc. | 29-Dec-94 | 11-May-95 | Maintenance Dredging | Morgans Point to Carpenters Bayou | 1,309,900 |
| DACW6496C0032 | T.L. James & Company, Inc. (Area Office) | 19-Aug-96 | 01-Dec-96 | Maintenance Dredging | Carpenters Bayou to Greens Bayou | 806,225 |
| DACW6497C0028 | King Fisher Marine Service, Inc. | 03-Aug-97 | | Maintenance Dredging | Morgans Point to Carpenters Bayou | 1,983,067 |
| DACW6499C0012 | King Fisher Marine Service, Inc. | | | | | 132000(est) |

EXHIBIT
B
Blumberg No. 5118

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

RENDA MARINE, INC., )
)
Plaintiff, )
) No. 02-306C
v. )
) (Judge Hewitt)
THE UNITED STATES, )
)
Defendant. )

DEFENDANT'S OPPOSITION TO PLAINTIFF'S CONTINGENT MOTION
FOR LEAVE TO REQUIRE DEFENDANT TO ANSWER PLAINTIFF'S DISCOVERY

PRELIMINARY STATEMENT

Pending before the Court is the "contingent" motion of plaintiff, Renda Marine, Inc. (Renda), for leave to require the Government to answer Renda's Second Set of Interrogatories,[1] Def. App. 20-30,[2] and Third Request for Production of Documents, Def. App. 31-41, which Renda served upon the Government on January 15, 2004, the day after the deadline established by the Court for completion of fact discovery in this case. The Government objected to these discovery requests upon the ground that they are untimely. Def. App. 42-47. For the reasons stated below, the motion should be denied.

BACKGROUND

This case involves claims governed by the Contract Disputes Act of 1978, as amended (41 U.S.C. §§ 601-13), arising under or relating to Contract No. DACW64-99-C-0001 between

---

[1] In this opposition, "Pl. Mot. ____" refers to the referenced page(s) of "Response by Plaintiff, Renda Marine, Inc., to Defendant's Motion to Compel Compliance with Rule 26(a)(2)(B), to Compel Production of Documents, to Permit Defendant to Perform an Audit of Plaintiff's Job Cost Schedules, and for a Modification of the Pretrial and Trial Schedule and *Contingent Motion to Require Defendant to Answer Renda's Discovery*" filed on March 3, 2004 (emphasis added).

[2] "Def. App. ____" refers to the referenced page(s) of the appendix to this opposition to plaintiff's motion for leave to require the Government to respond to Renda's discovery requests.

Blumberg No. 5118 EXHIBIT C

Renda and the United States, acting through the Army Corps of Engineers, Galveston, Texas District, to dredge reach of the Galveston-Houston Ship Channel known as the Upper Bayou and to construct containment levees and other structures at the Lost Lake Placement Area for dredged material. The contract is referred to in the complaint and other documents as the "Upper Bayou Project." The complaint seeks damages, in the aggregate, of approximately $14.25 million, plus interest, based upon numerous alleged differing site conditions encountered by Renda during the course of contract performance.

On September 10, 2003, the Court entered an Order that amended the pretrial and trial schedule in this case. Def. App. 1-2. The Order established a deadline of January 14, 2004, for the completion of "fact discovery." Id. at ¶ 1, Def. App. 1.[3]

THE DISCOVERY REQUESTS

A. Renda's Second Set Of Interrogatories

Renda propounded three interrogatories. The first interrogatory requests that the Government identify any project(s) at the Lost Lake Placement Area (Lost Lake) during the nine-year period from January 1, 1990, to January 1, 1999, "to maintain or increase the height of levees at that site and, if so, to identify the prime contractor, the contractor "actually working" on the levees, the amount by which the levees were raised, and the source of the material used to raise the levees. Def. App. 29.

---

[3] Renda appears to contend that the Court's deadline for completing fact discovery, including interrogatories and document production requests, is February 4, 2004. See Pl. Mot. 6. That is incorrect. Under the pretrial schedule established by the Court's September 10, 2004 Order, February 4, 2004, is the deadline for completing "expert discovery," except for depositions of experts. Id. at ¶ 2, Def. App. 1.

The second interrogatory requests that the Government state whether, during the 19-year period from January 1, 1980, to January 1, 1999, any "borrow areas" were created or developed adjacent to or near the existing levees at Lost Lake and, if so, to state the date(s) of "any such borrowing" and to identify the "contractor project," the prime contractor, the contractor that "actually undertook the borrowing," and the location of the borrowing "in relationship to the levees." Def. App. 29.

The third interrogatory requests that the Government state whether, during the 19-year period from January 1, 1980, to January 1, 1999, any "surveys or cross sections" were made of any borrow areas at Lost Lake and, if so, to state the date(s) of any such surveys or cross sections and to identify the company undertaking such surveys or cross sections and the location of such surveys or cross sections. Def. App. 29.

B. Renda's Third Request For Production Of Documents

Renda requests that the Government produce for inspection and/or copying "any and all" documents "pertaining to or reflecting"[4] responsive to 17 categories of materials:

1. Soil or core borings undertaken in the Flare Area of the Upper Bayou Project in May 2000.

2. Soil or core borings undertaken at any time on the Upper Bayou Project after September 2001.

3. Corps of Engineers claims handling or claims administration manual or policy or guidelines in existence at any time during the Upper Bayou Project.

4. Soil or core borings taken for the "Goat Island contract" awarded to Great Lakes Dredge & Dock Company.

---

[4] The phrase "pertaining to or reflecting" is defined broadly by Renda's document production request to mean "concerning, discussing, referring to, pertaining to, reflecting, evidencing, constituting, showing or regarding." See "Definitions and Instructions," at ¶ 25, Def. App. 39.

5. Bid solicitation materials for the "Goat Island contract" awarded to Great Lakes Dredge & Dock Company.

6. "Use" of Lost Lake during the ten-year period from January 1, 1990, to January 1, 2000, including "any depositing of dredging maintenance material."

7. "Work on increasing or maintaining the height of the levees" at Lost Lake during the nine-year period from January 1, 1990, to January 1, 1999.

8. "Creation of or removal of soil material" from "borrow areas" "near or adjacent to" existing levees at Lost Lake.

9. "Surveys or cross sections" of levees or "borrow areas" at Lost Lake performed during the 12-year period from January 1, 1990, to January 1, 2002.

10. Manuals, policies, or guidelines for "the design of levees relevant to the levees at Lost Lake" in existence at any time during the Upper Bayou Project.

11. Revisions or additions to manuals, policies, or guidelines for "the design of levees relevant to the levees at Lost Lake" since July 15, 1998.

12. "Calculations" of liquidated damages for the Upper Bayou Project.

13. "Determination" of the contract amount for liquidated damages listed in the contract for the Upper Bayou Project.

14. The 1993 soil cores and samples referenced at ¶ 1.11, page 02482-4, of the contract specifications for the Upper Bayou Project.

15. "Permits" for the deposit of dredged material at Lost Lake during the eight-year period from January 1, 1990, to January 1, 1998.

16. "Investigation" in response to any of Renda's notices of differing site conditions at any time prior to the commencement of this litigation.

17. The editions or versions of the Corps of Engineers Engineering Pamphlet EP 1110-1-8, "Construction Ownership and Operation Expense Schedule" "applicable" to the contract for the Upper Bayou Project.

ARGUMENT

Although RCFC 33 and 34 do not contain an express limitation upon how late in the proceedings interrogatories or document production requests may be served, when the Court has established a discovery deadline, a party must serve interrogatories or document production requests in sufficient time to permit the responding party the 30-day response time allowed by Rules 33 and 34 (plus the additional time allowed by RCFC 6(e) in the case of service by means other than by hand). Thomas v. Pacificorp, 324 F.3d 1176, 1179 (10th Cir. 2003) (discovery requests served two days after discovery completion deadline not timely); Gavenda v. Orleans County, 182 F.R.D. 17, 20 (W.D.N.Y. 1997) (document production request served two days before discovery cutoff untimely); Smith v. Principal Casualty Insurance Co., 131 F.R.D. 104, 105 (S.D. Miss. 1990) (interrogatories served six days before discovery cutoff untimely); see also 7 Moore's Federal Practice, § 33.41[5] (Matthew Bender 3d ed.), at pages 33-46 and 33-47. When the need to serve interrogatories or document production requests arises less than 30 days prior to a court-ordered discovery completion deadline or after the deadline has passed, a party should file a motion seeking leave of court to serve the discovery requests before serving them. See Beller v. Credit Alliance Corp., 106 F.R.D. 557, 560 (N.D. Ga. 1985) ("If new matters arise during the final thirty days of discovery, it is the responsibility of the party needing additional discovery to petition the court for an extension of time."); accord Contardo v. Merrill Lynch, Pierce, Fenner & Smith, 119 F.R.D. 622, 624-25 (D. Mass. 1988); 7 Moore's Federal Practice, § 34.10[3] (Matthew Bender 3d ed.), at pages 34-26 and 34-27.

Renda's discovery requests are not timely. Under the schedule fixed by the Court's September 10, 2003 Order, "all fact discovery, including all depositions," was to "conclude"

on or before January 14, 2004. Id. at ¶ 1, Def. App. 1. To be timely, Renda's discovery requests had to be served at least 30 days before January 14, 2004, i.e., no later than December 15, 2003. Renda, however, did not serve the discovery requests until January 15, 2004, the day after the deadline for completing fact discovery. Nor did Renda seek (and obtain) leave of the Court to serve the discovery requests before serving them, as it was required to do.

The only excuse offered by Renda for its untimely discovery requests is that "[t]he need for the discovery did not become apparent until Renda deposed the Corps of Engineers' witnesses in mid-January 2004." Pl. Mot. 6. There are several problems with this explanation.

*First*, this excuse does not justify Renda's failure to obtain leave of the Court to serve the discovery requests before doing so or making application to the Court for an order requiring the Government to respond to the discovery requests. As noted above, when a party desires to serve interrogatories or document production requests and there is less than 30 days before the discovery cutoff date or the discovery cutoff date has passed, it should obtain leave of court *before* serving the discovery requests.[5] Renda's motion to require the Government to "answer" its untimely discovery requests (which, for all practical purposes, is a motion to compel) is therefore improper. See Beller, 106 F.R.D. at 560 ("Since no extension of discovery beyond [the December 31, 1984 discovery cutoff] was sought or granted, Plaintiff's December 14 discovery requests were untimely. A motion to compel with respect to these requests is therefore improper.").

---

[5] A party served with an untimely discovery request under Rule 33 or 34, such as the Government here, should not be put in the position of having to take any steps, such as making inquiries or undertaking investigation to ascertain the burden(s) that responding to the discovery would entail or to identify other potential objections to the discovery, until the Court has determined in the first instance whether to allow the untimely discovery.

*Second*, even assuming for the sake of argument that Renda could not have anticipated the need for the discovery that is the subject of its second set of interrogatories and third document production request until Renda took the depositions of Government employees, that would not by itself justify the untimely discovery requests. Renda did not begin taking depositions in this case until January 5, 2004 – just ten days before the close of the 15-month period allowed by the Court for the completion of fact discovery. In Gavenda, the court rejected a similar excuse for untimely discovery requests: "The depositions, from which plaintiff contends the document demands arose, could have been taken months earlier but for the availability of plaintiff's counsel. The circumstances do not justify the service of a document request, such as the May 8, 1996 document request, two days before the [May 10, 1996] discovery cutoff date." 182 F.R.D. at 20.

*Third*, contrary to its contention, Renda could (and should) have recognized the need for the discovery that is the subject of its second set of interrogatories and third document production request at least as early as April 2002, when the complaint in this case was filed. The interrogatories and Document Requests 2, 4-9, and 15 seek information relative to the location and dimensions of sidecast borrow areas and soils testing at the Lost Lake Placement Area (Lost Lake). See Def. App. 29, 40, 41.[6] These discovery requests relate to Renda's $6.3 million Lost Lake Levees Claim in which Renda asserts that sidecast borrow pits and poor soil foundation conditions at or near the footprint of the new perimeter levees to be constructed at Lost Lake constitute differing site conditions that increased Renda's costs of performance. The allegations at paragraphs 153-

---

[6] Document requests 4 and 5 seek soil or core borings and bid solicitation materials for the "Goat Island contract" awarded to Great Lakes Dredge & Dock Company. Under this contract, which is known as the "Mid-Bayou Project, " the contractor, among other things, will complete construction of the perimeter levees at Lost Lake that Renda began but did not finish.

158, 178, 180, and 181 of the complaint filed by Renda in this case concern the same matters, including the alleged omission of the contract documents to indicate the "existence, depth, width, and extent of the sidecast borrow areas" at Lost Lake. There is thus no reason why Renda should not have recognized *at the time this litigation was commenced* the need to inquire about the matters that are the subject of its second set of interrogatories and Document Requests 2, 4-9, and 15.

The same is true for the balance of Renda's document production requests, with respect to which Renda does not even attempt to demonstrate how the need for that discovery could not have been anticipated until it began taking depositions of Government employees in mid-January 2004. Document Request 1 seeks production of documents relating to soil or core borings undertaken in the Flare Area of the Upper Bayou Project. Def. App. 39. These soil tests are the subject of paragraphs 60 and 61 of Renda's complaint. Requests 12 and 13 seek production of documents relating to calculations of liquidated damages and determination of the contract amount for liquidated damages for the Upper Bayou Project. Def. App. 41. Liquidated damages are the subject of an allegation at page 28 of Renda's complaint. These are hardly new matters about which Renda could not have anticipated the need for discovery until it began taking depositions of Government employees in January 2004, shortly before the close of the period for completing fact discovery.

Document Request 14 seeks production of documents relating to soil cores and samples explicitly referred to in a specification contained in the contract for the Upper Bayou Project at issue in this litigation and Request 16 seeks documents concerning any investigation by the Government in response to any of Renda's notices of differing site conditions prior to the commencement of this litigation. Def. App. 41. It is difficult to imagine that Renda could not have envi-

sioned the need for that information until it began taking depositions of Government employees in January 2004, shortly before the close of the period for completing fact discovery. Renda does not identify the specific deposition testimony that allegedly gave rise to the need for the documents sought by Requests 14 and 16. The alleged lack of investigation by the Government of putative differing site conditions is a matter raised in Renda's certified claims.

Document Requests 3, 10, 11, and 17 seek production of documents relating to "Corps of Engineers claims handling or claims administration manual or policy or guidelines," "[m]anuals, policies, or guidelines for the "design of levees relevant to the levees at Lost Lake," revisions or additions to any such materials after June 15, 1998, and the Corps's Engineering Pamphlet EP 1110-1-8, "Construction Ownership and Operation Expense Schedule" used by Renda to price several of the certified claims in this case. Def. App. 40, 41. There is no good reason why, as of the time this litigation was instituted, Renda could not have recognized the need for discovery relating to those materials. The dispute between Renda and the Government about the proper application of the "Construction Ownership and Operation Expense Schedule" in the preparation of its claims arose when Government auditors examined Renda's claims in the spring of 2002. Again, Renda does not cite to specific deposition testimony allegedly giving rise to the need for discovery of the broad categories of documents sought by Requests 3, 10, 11, and 17.

Even where a court has not established a discovery deadline, the right to serve interrogatories or document production requests is subject to reasonable limitations, depending upon the facts in the case, complexity of the discovery requests, proximity to trial, hardship to the responding party, and the amount of time that previously was available to conduct discovery. 7 Moore's Federal Practice, § 33.41[5] (Matthew Bender 3d ed.), at page 33-46. Renda's discovery requests

are very broad and would require a substantial amount of time and effort by the Government to address. For example, the interrogatories and Document Requests 6, 7, 9, and 15 would require a search of records of dredging projects involving Lost Lake that occurred during all or part of the 19-year interval between 1980 and 1999. To the extent such records exist, they most likely would have to be retrieved from a Government records storage center, which increases the time needed for response. Renda has not offered a reasonable explanation for why it waited until 22 months after this suit was commenced and just five months before the presently-scheduled trial date to pursue this discovery.

## CONCLUSION

For the foregoing reasons, plaintiff's "contingent" motion to require defendant to respond to its second set of interrogatories and third document production request should be denied.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/John E. Kosloske
JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-0282
(fax) (202) 514-8624

MARCH 17, 2004

Attorneys for Defendant