UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC.,<br>PLAINTIFF, | §<br>§ | |
| | § | CASE NO. 02-306C |
| V. | § | |
| | § | (JUDGE HEWITT) |
| UNITED STATES ARMY<br>CORPS OF ENGINEERS,<br>DEFENDANT. | §<br>§<br>§ | |

**REPLY BY RENDA MARINE, INC. TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT**

Plaintiff, Renda Marine, Inc. ("Renda"), respectfully replies to the Response by Defendant, United States, to Renda's Motion for Leave to Amend Complaint ("Response"), as follows:

In the Court's Order of May 14, 2004, the Court unambiguously reopened discovery for both parties, not just Renda. The Order states that "the current pre-trial date and trial dates are VACATED, and discovery is REOPENED. The court's scheduling orders dated October 18, 2002, September 10, 2003, and March 19, 2004 are SUPERCEDED and the due dates therein are VACATED." (Emphasis original.) See Defendant's Response, Appendix at 2-3.

If Defendant needs additional discovery for any issues raised in the First Amended Complaint, Renda has no objection. Renda is simply responding to the Contracting Officer's Final Decision of November 26, 2002 ("Final Decision"), which was issued well after this suit was filed.

The Final Decision came out of the blue. There had been no discussions between the parties about the Government's claims. The Government had never before presented any claims against Renda. In fact, the Government had terminated Renda's work for convenience for both dredging and levee construction on the Upper Bayou Project. See Change Order 11, P00028, a true copy of which is attached as Exhibit A.

During the deposition of Oscar Renda on January 15, 2004, the Government's attorney tendered the Final Decision as an exhibit. This was the first time that the Final Decision was discussed in this case. In response, on January 19, 2004, Renda's attorney wrote to the Government's attorney to advise that the Final Decision was not valid. A true copy of this January 19, 2004, letter is attached as Exhibit B. Renda's attorney requested in the letter that the Government submit the bases of the claims to Renda for comment "if the Government intends to pursue the claims." The letter concluded: "Please advise if the Government for any reasons intends to seek relief or satisfaction under [the Final Decision]." The Government never responded.

With no response to Renda's attorney's January 19, 2004, letter (Exhibit B) Renda presumed that the Government had no intention of pursuing the Final Decision claims. After all, the claims would be compulsory counterclaims under Court of Federal Claims Rule 13(a). When the Government chose not to file the counterclaims, Renda was led to believe the Government had no interest in the counterclaims.

The Government's response to Renda's mention of the Final Decision in Renda's Memorandum of Contentions of Fact and Law, however, indicated that the Government may be harboring some (to Renda's perspective) malevolent intentions for the Final Decision counterclaims.

The Government's argument that Renda unreasonably delayed bringing its motion for leave to amend is disingenuous. The Government led Renda to believe that the Government had no interest in pursuing the Final Decision counterclaims. The Government cannot now claim that Renda slept on its rights.

The Final Decision rejects Renda's claims in this suit. As such, the Final Decision embodies the Government's position, and will be a key exhibit at trial. It is only fair that Renda be allowed to address the Final Decision by way of amended complaint.

All of Renda's claims in the First Amended Complaint arose out of the conduct, transaction, or occurrence set forth in Renda's original complaint. As such, the claims relate back to the date of the original filing of Renda's complaint. CFCR 15(c).

In *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230 (1962), the Supreme Court discussed the decision matrix for allowing an amended complaint. The Court stated:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. [Unless there is a] reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – then leave should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason . . . is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the [FRCPs].

Id. at 182, 83 S.Ct. at 230.

The Final Decision will certainly be at issue at trial. It is only fair to allow Renda to address the Final Decision by way of amended complaint. Discovery has reopened. The Government will not be unduly prejudiced. Although the Government contends that Renda should have sought leave to amend earlier, the Government's attorney led Renda to believe that the Final Decision was not at issue by not responding in any way to Renda's attorney's letter of January 19, 2004 (Exhibit B). Had the Government been forthright, Renda would have addressed the Final Decision earlier.

In terms of scheduling, now is the time to allow the amendment. There is no trial date. There is no scheduling order. Discovery has been reopened.

Respectfully submitted,

QUILLING, SELANDER, CUMMISKEY & LOWNDS, P.C.

BY: s/Brian W. Erikson
Brian W. Erikson, TX Bar No. 06643800

2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Telefax)
ATTORNEYS FOR RENDA MARINE, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of July, 2004, a true and correct copy of Reply by Renda Marine, Inc. to Defendant's Response to Plaintiff's Motion for Leave to Amend Complaint, was served electronically through the CM/ECF system for the Court of Federal Claims.

s/Brian W. Erikson
Brian W. Erikson

# AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

1. CONTRACT ID CODE | PAGE 1 OF PAGES 2

2. AMENDMENT/MODIFICATION NO. P00028 CO-11

3. EFFECTIVE DATE Sep 18, 2001

4. REQUISITION/PURCHASE REQ. NO.

5. PROJECT NO. (If applicable)

6. ISSUED BY CODE
U.S. ARMY CORPS OF ENGINEERS
2000 FORT POINT ROAD, CONTRACTING DIVISION
P.O. BOX 1229
GALVESTON, TEXAS 77553-1229

7. ADMINISTERED BY (If other than Item 6) CODE
U.S. ARMY CORPS OF ENGINEERS
BAY AREA OFFICE
2000 FORT POINT ROAD, CONTRACTING DIVISION
P.O. BOX 1229
GALVESTON, TEXAS 77553-1229

8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code)
RENDA MARINE, INC.
P.O. Box 1036
Freeport, TX 77542

**APPROVED COPY**

(✓) 9A. AMENDMENT OF SOLICITATION NO.

9B. DATED (SEE ITEM 11)

X 10A. MODIFICATION OF CONTRACTS/ORDER NO. DACW64-99-C-0001

10B. DATED (SEE ITEM 13) 26 OCT 98

CODE | FACILITY CODE

## 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing Items 8 and 15, and returning ____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)

## 13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

(✓)

X A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.
FAR 52.243-4 (a)(2)

B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b).

C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:

D. OTHER (Specify type of modification and authority)

E. IMPORTANT: Contractor ☒ is not, ☐ is required to sign this document and return ____ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

CONTRACT FOR: Houston-Galveston Navigation Channels, Texas, Dredging Upper Bayou (45-Foot Project)

You are hereby directed to proceed with the following:

(See attached)

**RECEIVED**
SEP 24 2001

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

15A. NAME AND TITLE OF SIGNER (Type or print)

16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print)
THOMAS BENERO

15B. CONTRACTOR/OFFEROR
(Signature of person authorized to sign)

15C. DATE SIGNED

16B. UNITED STATES OF AMERICA
BY Thomas Benero
(Signature of Contracting Officer)

16C. DATE SIGNED 18 SEP 01

NSN 7540-01-152-8070
PREVIOUS EDITION UNUSABLE
30-105-02
STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243
USAPPC V2.00

EXHIBIT A

DACW64-99-C-0001
CO-11
Page 2 of 2

A. **STATEMENT OF CHANGE.** This formalizes verbal direction given the contractor to delete the remaining unfinished dredging and levee construction from Contract No. DACW64-99-C-0001 as follows:

1. This change deletes any remaining work under Change Order, CO-10, issued on or about May 23, 2001, directing the contractor to complete the west levees of Lost Lake Placement Area, Station 182+33 to Station 215+00 with a different alignment than that shown in the contract drawings.

2. This change deletes all requirements to complete any remaining work on the North Levees between Stations 4+00 and 40+00.

3. This change deletes the remainder of dredging as stated in a Contracting Officer's Decision letter dated June 1, 2001, signed by Mr. Curtis Cole, Jr.

B. **CHANGE IN SPECIFICATIONS.** N/A.

C. **CHANGE IN DRAWINGS.** N/A.

D. **CHANGE IN COST AND QUANTITIES.** To be determined.

E. **ADDITIONAL TIME ALLOWED.** No change in time.

F. **LIMITED OBLIGATION.** There is no additional obligation to the Government for the work under this directive, at this time.

Post-it® Fax Note 7671

| | |
|---|---|
| Date 9/24 | # of pages ▸ 2 |
| To Barry | From Lynn |
| Co./Dept. | Co. |
| Phone # | Phone # |
| Fax # FYI | Fax # |

QSCL
QUILLING · SELANDER · CUMMISKEY · LOWNDS

BRIAN W. ERIKSON
Direct: 214.880.1844

E-mail: berikson@qsclpc.com

January 19, 2004

John E. Kosloske, Esq.
Senior Trial Counsel, Commercial Litigation Branch
Department of Justice
Attn.: Classification Unit
1100 L Street, N.W., Room 12052
Washington, D.C. 20005

*Via Facsimile and*
*Via Certified Mail*

Re: Case No. 02-306C; *Renda Marine, Inc. v. United States Army Corps of Engineers*; United States Court of Federal Claims; DACW64-99-C-0001, Dredging Upper Bayou

Dear Mr. Kosloske:

You entered as an exhibit for Oscar Renda's deposition Thomas Benero's letter of November 26, 2002, to Mr. Renda. Since Mr. Benero's November 26, 2002, letter purports to be a Contracting Officer's Final Decision, please note the following.

In the Spring of 2001, Renda Marine completed its work on the Upper Bayou Project. By letter of July 23, 2001, Mike McClenan, Area Engineer, wrote to Renda Marine to advise that "there will be no further requirements for the use of a hydraulic dredge under this contract." A copy of Mr. McClenan's July 23, 2001, letter is attached for your convenience. In compliance, Renda demobilized the Dredge Millennium.

By letter of August 27, 2001, Mr. Benero wrote to Renda to advise that: "Since there are no further requirements for placement of dredged material under this contract you are directed to remove any remaining pipelines or appurtenant equipment belonging to Renda Marine from the Lost Lake Placement Area not later than 30 days from receipt of this letter." A copy of Mr. Benero's August 27, 2001, letter is attached for your convenience.

There were no further communications from Mr. Benero (or Mr. McClenan) until the November 26, 2002, letter, one and a quarter (1-1/4) years later. The Corps of Engineers never advised Renda prior to November 26, 2002, that the Corps requested money from Renda or that the Corps had claims against Renda.

Before issuing a Contracting Officer's Final Decision, the Contracting Officer must give the contractor notice and an opportunity to comment. See FAR 33.211(a). In *Instruments & Controls Service Co.*, ASBCA No. 38332, 89-3 BCA ¶ 22, 237 (1989), the Board of Contract Appeals invalidated a facially valid contracting officer's final decision for lack of prior notice to the contractor. The court held that "by failing to comply with the prerequisites for a valid decision prescribed by FAR 33.211, the contracting officer's purported November 1988 'decision' was ineffective as an assertion of a Government claim and as a basis for our jurisdiction." The court dismissed without prejudice to the issuance of a new contracting officer's decision. I enclose a copy of the *Instruments* case for your convenience.

EXHIBIT
B

Blumberg No. 5118

If the Government intends to pursue the claims listed in Mr. Benero's November 26, 2002, letter, please submit the bases of such claims to Renda so that Renda can review and comment upon them.

Please advise if the Government for any reason intends to seek relief or satisfaction under Mr. Benero's November 26, 2002, "final decision."

Sincerely yours,

Brian W. Erikson

BWE/cam
Enclosures
S:\Construction\Renda Marine\Upper Bayou 565.09\Kosloske 040.wpd

cc: Mr. Oscar Renda

1989 WL 109783 (A.S.B.C.A.), 89-3 BCA P 22,237, ASBCA No. 38,332
ASBCA

Appeal of Instruments & Controls Service Company

Under Contract No. N62477-85-C-6064

July 12, 1989

APPEARANCES FOR THE APPELLANT:
Edward J. Tolchin, Esq.
Ginsburg, Feldman and Bress
Washington, D.C.
APPEARANCES FOR THE GOVERNMENT:
C. John Turnquist, Esq. Navy Chief Trial Attorney
David G. Ranowsky, Esq. Trial Attorney Naval Facilities Engineering Command Alexandria, Virginia

OPINION BY ADMINISTRATIVE JUDGE GROSSBAUM ON APPELLANT'S MOTION TO DISMISS

Without conceding jurisdiction, the contractor timely appeals from what appears to be a contracting officer's decision asserting a Government claim in the amount of $144,298.87 as damages for alleged performance failures under a services contract.
Accompanying the contractor's notice of appeal and complaint is a motion captioned "Appellant's Motion for Summary Judgment," which challenges the validity of the contracting officer's purported "final decision" and prays only that the motion "be granted." The Government opposes the motion. Since the alleged invalidity of the contracting officer's decision affects our jurisdiction to entertain this appeal, we treat appellant's motion as a motion to dismiss the appeal for lack of jurisdiction.
The contract was awarded to appellant, Instruments & Controls Service Co. of Newtown, Pennsylvania (I & CS), in March 1986 to maintain and service all heating, ventilation and air conditioning (HVAC) systems in designated buildings at Patuxent River Naval Air Station, Maryland for the fixed price of $360,000. The contract period of performance commenced on 1 April 1986 and expired on 31 March 1987.
The contract general provisions incorporated by reference the Changes-Fixed Price (Apr 1984) clause prescribed by Federal Acquisition Regulation (FAR) 52.243-1. The scheme for monitoring contractor performance was reflected in contract section E, Inspection and Acceptance, together with a Schedule of Deductions in contract section B. [FN1] Section E included, inter alia, the standard Inspection of Services-Fixed Price (Apr 1984) clause prescribed by FAR 52.246-4. In addition, general provision I.21 set forth a version of the Warranty of Services (Apr 1984) clause prescribed by FAR 52.246-20, which required the contracting officer to "give written notice of any defect or nonconformance to the Contractor within three working days from the date of acceptance by the Government." (Emphasis added).
During contract performance I & CS made several claims for additional compensation, based on alleged Government breaches and constructive changes, and also sought to recover approximately $40,000 deducted by the Government from I & CS' regular invoices because of allegedly unsatisfactory performance (see n. 1). I & CS' timely appeals from contracting officers' decisions denying part or all of these claims have been docketed as ASBCA Nos. 33777, 33989, 35982 and 35983.
Under letter dated 28 November 1988, twenty months after the contract expired, the contracting officer mailed to I & CS a "final decision" asserting a nearly $144,300 claim, purportedly based on the contractor's alleged failure "to perform portions of [its] contract in an effective manner." The amount claimed is allegedly attributable to "extra costs" the Government "incurred ... to remedy the results of [I & CS's] failure to perform." [FN2] The purported "decision" expressly stated the reasons for the decision reached and informed I & CS of its rights either to appeal to this Board or bring an action directly in the U.S. Claims Court.
None of the performance failures alleged in the contracting officer's November 1988 "decision" is within the scope of any of the other currently pending appeals. In particular, no item of defective performance cited in the "decision" is included among the allegedly unsatisfactory work for which the Government took deductions during the contract term.
The Government admits that, prior to issuing the 28 November 1988 "decision," it never sent any related claim to I & CS. The Government also admits that the "decision" was issued without notice to or opportunity for comment by I & CS (answ. ¶ 7).
In a 4 January 1989 letter to the contracting officer, pointing out certain alleged deficiencies in the 28 November 1988 "decision" but not otherwise addressing the merits of the Government's claim, appellant's attorney asserted that the " 'Final Decision' is a nullity" and requested that it be withdrawn. The Government did not withdraw the "decision" and appellant filed the instant appeal.

DECISION

On its face, the "decision" from which the instant appeal was taken satisfies all the requirements for a contracting officer's decision under Section 6(a) of the Contract Disputes Act (CDA): it was in writing; a copy of the decision was mailed to the contractor; it "state[d] the reasons for the decision reached" and it "inform[ed] the contractor of his [appeal] rights as provided in [the Contract Disputes] Act." Moreover, the Government's assertion of its claim against the contractor was made "the subject of" the purported "decision by the contracting officer." 41 U.S.C. § 605(a). Accordingly, the purported "decision" is facially valid.
Pursuant to CDA Section 6(b), a contracting officer's decision "shall be final and conclusive and not subject to review by any forum, tribunal or Government agency, unless an appeal or suit is timely commenced as authorized by this Act." 41 U.S.C. § 605(b). Where the decision asserts a Government claim against a contractor, once the appeal and suit commencement period has expired the Government may obtain summary judgment to enforce that decision and it can no longer be challenged by the contractor. United States v. Roarda, Inc., 671 F.Supp. 1084 (D.Md.1987); United States v. Dabbs, 608 F.Supp. 507 (S.D.Miss.1985).
However, the taking of a timely appeal from a contracting officer's decision vacates whatever finality and conclusiveness would otherwise attach to that decision. Robert L. Guyler Co., ASBCA No. 27229, 83-1 BCA ¶ 16,251 at 80,767. We regard the instant appeal as having been taken to prevent finality from attaching to an ostensibly regular and facially valid contracting officer's decision, rather than as challenging the merits of that decision. Such a protective appeal need not subject the contractor to the jurisdiction of this Board, but may be used as a vehicle to vacate or challenge an infirmity in the contracting officer's decision. See American Manufacturing Co. of Texas, ASBCA No. 28451, 83-2 BCA ¶ 16,851, where we dismissed for lack of subject matter jurisdiction an appeal from a facially valid contracting officer's decision purporting to assert a Government claim under the Economic Stabilization

Act.
Despite the ostensible regularity of the contracting officer's "decision" in this case, appellant challenges its procedural validity on the ground that it was issued before the existence of any dispute. Relying mainly on the decision in Keystone Coat & Apron Mfg. Corp. v. United States, 150 Ct.Cl. 277 (1960), [FN3] and regulations at FAR Part 33, appellant argues that "a contracting officer lacks authority to issue a 'final decision' " until a dispute is pending between the Government and a contractor (app. mot. 3).
Opposing the motion, the Government contends that a dispute regarding "the essence of the Government's claim" predated the contracting officer's decision. According to the Government the "very essence" of its instant claim "is that Appellant's improper performance of its contractual responsibilities caused [the Government] to incur certain costs." Two of the four appeals under this contract now pending on our docket, ASBCA Nos. 35982 and 35983, involve deductions taken by the Government. From this fact the Government argues that "[t]he issue of Appellant's improper performance is the subject of [these] two appeals." Thus, the Government concludes, "appellant had clear notice of a pre-existing dispute ... involving essentially the same issue." (Gov't opp. 3).
The Government's argument lacks merit. The substance of the disputes under the four pending appeals, including those items of allegedly defective performance for which the Government previously took deductions, bears no relation to the alleged performance failures that are the subject of the contracting officer's November 1988 "decision." The pendency of an appeal under a particular government contract does not put one party on notice of every other potential claim within the fertile imagination of the other party. In the instant appeal, the Government admits that it never gave I & CS anything to alert it to any of the claims that first surfaced nearly two years after the contract term had expired. Cf. J.G. Enterprises, Inc., ASBCA Nos. 27287, 28033, 84-1 BCA ¶ 17,106 at 85,154 (contractor "well aware of the Government's position" concerning specific price reduction for "alleged poor performance").
Appellant's position is correct. This Board has long followed the rule, predating the CDA, that "a contracting officer's decision is not a procedurally valid 'final' decision unless there is a dispute to decide." United Aero, Inc., ASBCA Nos. 26967, 26968, 83-1 BCA ¶ 16,268 at 80,835, citing, e.g., Desert Moving & Storage Co., Inc., ASBCA No. 12665, 68-2 BCA ¶ 7243; see Eastern Realty & Construction Co, ASBCA No. 8066, 1963 BCA ¶ 3636. Guided mainly by regulations implementing the CDA, we have continued to apply that rule to cases to which the Act applies. United Aero, 83-1 BCA at 80,836; Chandler Manufacturing and Supply, ASBCA Nos. 27030, 27031, 82-2 BCA ¶ 15,997; see E.C. Morris & Son, Inc., ASBCA No. 30385, 86-2 BCA ¶ 18,785.
Making existence of a dispute a prerequisite to a procedurally valid contracting officer's decision is particularly important where the "decision" purports to assert a Government claim against the contractor. "[I]f a contractor had never even been informed of the facts, or at least the claim based on them, and given an opportunity to agree or disagree, then there could be no dispute to decide." United Aero, 83-1 BCA at 80,835.
Of even greater importance are regulations in FAR Part 33 implementing the CDA. FAR 33.211(a) permits a contracting officer to issue a decision "[w]hen a claim by or against a contractor cannot be satisfied or settled by mutual agreement and a decision on the claim is necessary." Moreover, in addition to other prescribed requirements, a procedurally valid contracting officer's decision is required to include a "[s]tatement of the factual areas of agreement and disagreement." FAR 33.211(a)(4)(iv); cf. United Aero, 83-1 BCA at 80,836 (citing comparable subparagraphs in DAR 1-314).
The appeals in United Aero were taken more than six months after receipt of two ostensibly regular contracting officer's "decisions" assessing excess repurchase costs under two defaulted contracts. We there denied a Government motion to dismiss the appeals for untimeliness on the ground that the purported "decisions" were not procedurally valid, since there had not previously been a dispute for the contracting officer to decide, and were ineffective to initiate the period for taking an appeal. 83-1 BCA at 80,836. Noting the apparent prematurity of at least one of the excess cost assessments in United Aero, the Board also gave the parties the choice of having the appeals remain on the docket or having them dismissed without prejudice to new assessments. Ibid.; see Eaton Corp., ASBCA No. 35753, 88-1 BCA ¶ 20,504; Lafayette Coal Co., ASBCA Nos. 32174, 33311, 87-3 BCA ¶ 20,116.
In the instant appeal, the contracting officer never advised I & CS of the Government's claim nor did he afford I & CS an opportunity to respond to it before proceeding to issue his 28 November 1988 "decision." Indeed, "the mere failure of the contracting officer to hear a contractor before rendering judgment 'deprives the decision of any efficacy.' " E.C. Morris & Son, Inc., 86-2 BCA at 94,653 (quoting Woods Hole Oceanographics Institution v. United States, 677 F.2d 149 (1st Cir.1982).
We hold that, by failing to comply with the prequisites for a valid decision prescribed by FAR 33.211, the contracting officer's purported November 1988 "decision" was ineffective as an assertion of a Government claim and as a basis for our jurisdiction. [FN4]
Accordingly, appellant's motion is granted. The appeal is dismissed without prejudice to the issuance of a new contracting officer's decision asserting a government claim that is genuinely in dispute.
JOHN J. GROSSBAUM
Administrative Judge
Member of the Armed Services
Board of Contract Appeals

I concur
WILLIAM J. RUBERRY
Administrative Judge
Acting Chairman, Armed Services
Board of Contract Appeals

I concur
ALAN M. SPECTOR
Administrative Judge
Vice Chairman, Armed Services
Board of Contract Appeals
I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in **ASBCA No. 38332**, Appeal of Instruments & Controls Service Company, rendered in conformance with the Board's Charter.
EDWARD S. ADAMKEWICZ
Recorder, Armed Services
Board of Contract Appeals

1. Special provision E.6, Consequences of Contractor's Failure to Perform Required Services, gave the Government the options, with respect to either unperformed or unsatisfactory work, to either: (a) deduct from the contractor's invoice all billings associated with such work at the rates set out in the Schedule of Deductions; (b) afford the contractor an opportunity to perform the unperformed

work or reperform the unsatisfactory work at its own expense; or (c) perform the services by Government personnel or other means. If the Government elected either option (a) or option (b) it was also entitled to deduct an additional 10 per cent of the applicable rate in the Schedule of Deductions, "as liquidated damages, to compensate the Government for administrative costs and other expenses resulting from the non-performance or unsatisfactory performance." If the Government elected option (c) above, the Government was entitled both to "effect the deduction" under option (a) and to deduct an additional 20 per cent of the applicable rate in the Schedule of Deductions. "This 20% is liquidated damages to compensate the Government for administrative costs and other expenses incurred by the Government to obtain satisfactory completion of the services." (Emphasis added).

2, The "decision" indicated that, in accordance with option (c) under special provision E.6, the Government had chosen to have "non-performed work accomplished by other means." Special provisions E.6 and C.1 ("General Requirements") were the only contract clauses mentioned in the 10-page "decision."

3. Keystone Coat is best remembered for such colorful expressions as:
This can hardly be classified as a dispute. We have always thought that it takes two to make a dispute. But this was unilateral.... The contracting officer did not ask for plaintiff's position so that a dispute might arise. He merely took a shillalah and struck him down. and "[a]s they say in the range country, [the contracting officer] did not give plaintiff a chance to establish his brand." 150 Ct.Cl. at 281-82. The case was decided on 8 June 1960 at a time when the only guidelines applicable to initiating the "disputes" process appeared in a Navy Procurement Directive that required the contracting officer to "decide the dispute and furnish directly to the contractor a statement in writing of his 'decision', together with 'findings of fact' ... accompanied by a copy of the rules of the Board of Contract Appeals." 150 Ct.Cl. 280-81. Within four months after Keystone Coat was decided, revision No. 2 to the Armed Services Procurement Regulation (1960 Edition), issued on 3 October 1960, added a new paragraph 1-314, Contracting Officer's Decision Under the Disputes Clause, to provide an affirmative statement by the contracting officer clearly indicating that his "final decision" is made under the Disputes clause and giving the contractor appropriate notice concerning the right to appeal.

4. In light of our holding, it is unnecessary for us to discuss appellant's alternative arguments concerning the contracting officer's allegedly erroneous citation in his "decision" to special provision E.6 as the basis for the Government's claim (app. mot. 5-6; app. reply. 4-8; n. 2). These arguments go mainly to the merits of the Government's claim, rather than to our jurisdiction to entertain it.
1989 WL 109783 (A.S.B.C.A.), 89-3 BCA P 22,237, ASBCA No. 38,332
END OF DOCUMENT

Copr. (C) West 2004 No Claim to Orig. U.S. Govt. Works

DEPARTMENT OF THE ARMY
GALVESTON DISTRICT, CORPS OF ENGINEERS
P.O. BOX 1229
GALVESTON, TEXAS 77553-1229

REPLY TO ATTENTION OF

July 23, 2001

Bay Area Office

Mr. Steven C. Bowman
Vice President & Construction Manager
Renda Marine, Inc.
P.O. Box 1036
Freeport, Texas 77542

Dear Mr. Bowman,

This concerns your contract DACW64-99-C-0001, Houston-Galveston Navigation Channels, Texas (45-Foot Project), Dredging Upper Bayou.

In accordance with your request for written notification, this is to advise you that there will be no further requirements for the use of a hydraulic dredge under this contract.

Should you require additional explanation or clarification, please call on me.

Sincerely,

C.M. McClenan

C.M. McClenan, P.E.
Area Engineer

RECEIVED
JUL 25 2001

EXHIBIT 61 Benero

Copy Furnished:

Mr. Richard Gorini
Executive Vise President
7129 N. Loop East
Houston, Texas 77028

Mr. Alan Jefts, P.E.
Project Manager
TC&B/GBA Joint Venture
5757 Woodway
Houston, Texas 77051-1599

DEPARTMENT OF THE ARMY
GALVESTON DISTRICT, CORPS OF ENGINEERS
P.O. BOX 1229
GALVESTON, TEXAS 77553-1229

REPLY TO ATTENTION OF

August 27, 2001

Contracting Division

Mr. Steven C. Bowman
Vice President & Construction Manager
Renda Marine, Inc.
P.O. Box 1036
Freeport, Texas 77542

Dear Mr. Bowman,

This concerns your contract DACW64-99-C-0001, Houston-Galveston Navigation Channels, Texas (45-Foot Project), Dredging Upper Bayou.

As conveyed to you in previous conversations, we are desiring to dewater the Lost Lake Placement Area so that we may begin placement area management work prior to the site receiving maintenance dredged material. Since there are no further requirements for placement of dredged material under this contract you are directed to remove any remaining pipelines or appurtenant equipment belonging to Renda Marine from the Lost Lake Placement Area not later than 30 days from receipt of this letter.

Should you require additional explanation or clarification, please call on me.

Sincerely,

Thomas Benero

Thomas Benero
Contracting Officer

Copy Furnished:

Mr. Richard Gorini
Executive Vise President
7129 N. Loop East
Houston, Texas 77028

EXHIBIT
63
Benero

MODE = MEMORY TRANSMISSION START=JAN-19 14:12 END=JAN-19 14:14

FILE NO.=639

| STN NO. | COMM. | ABBR NO. | STATION NAME/TEL NO. | PAGES | DURATION |
| --- | --- | --- | --- | --- | --- |
| 001 | OK | ☎ | 12025148624 | 009/009 | 00:01:20 |

-Q S C L -

************************************** -Q S C L - ***** - 214 871 2111- *********

QSCL

QUILLING · SELANDER · CUMMISKEY · LOWNDS

# FAX TRANSMITTAL

TO: John E. Kosloske
Senior Trial Counsel, Commercial Litigation
Department of Justice, Civil Division

FAX NO: (202) 514-8624

FROM: Brian W. Erikson

DATE: January 19, 2004

CLIENT MATTER NUMBER: Renda Marine / Upper Bayou / 565.0009

NUMBER OF PAGES INCLUDING COVER PAGE: 9

IF YOU DO NOT RECEIVE ALL MATERIALS BEING TRANSMITTED, PLEASE CALL OUR OFFICE AT (214) 871-2100.

**COMMENTS:**

The information contained in this facsimile message is legally privileged and confidential information which is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any use, dissemination, distribution or reproduction of this message is strictly prohibited. If you have received this message in error, the material herewith should be destroyed immediately and the sender listed above should be notified by telephone.

S:\Construction\Renda Marine\Upper Bayou 565.09\Kosloske Fax.wpd

MR. BRIAN W. ERIKSON
QSC&L, P.C.
2001 BRYAN STREET, SUITE 1800
DALLAS, TX 75201

**4.** Restricted Delivery? *(Extra Fee)* ☐ **Yes**

**3.** Service Type **CERTIFIED**

**2.** Article Number

7180 2708 8598 4500 6837

**COMPLETE THIS SECTION ON DELIVERY**

**A.** Signature: (☐ *Addressee* or ☐ *Agent*)
X [signature]

**B.** Received By: *(Please Print Clearly)*
FEB 3 2004

**C.** Date of Delivery

**D.** Addressee's Address *(If Different From Address Used by Sender)*

Secondary Address / Suite / Apt. / Floor *(Please Print Clearly)*

Delivery Address

City State ZIP + 4 Code

7180 2708 8598 4500 6837

**1. Article Addressed To:**

MR. JOHN E. KOSLOSKE
DEPARTMENT OF JUSTICE, CIVIL DIVI
ATTN.: CLASSIFICATION UNIT
1100 L STREET, N.W., ROOM 12052
WASHINGTON DC 20005