# In the United States Court of Federal Claims

No. 02-306 C

(E-Filed: July 30, 2004)

RENDA MARINE, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

ORDER

Before the court are the following documents: (1) Motion by Renda Marine, Inc., for Leave of Court to Amend Complaint (Pl.'s Mot.), (2) Defendant's Response to Plaintiff's Motion for Leave to Amend Complaint (Def.'s Resp.) and (3) Reply by Renda Marine, Inc. to Defendant's Response to Plaintiff's Motion for Leave to Amend Complaint (Pl.'s Reply). Plaintiff moves to file an amended complaint "to assert issues which arose well after the Complaint was originally filed." Pl.'s Mot. at 1.

Defendant urges the court to deny the motion on two grounds, specifically: (1) that by waiting more than a year and a half to challenge the contracting officer's November 26, 2002 decision, "Renda unduly delayed in bringing the motion" and (2) that the amended complaint raises new claims for relief based on the alleged termination for convenience of the contract and on defendant's failure to investigate the alleged differing site conditions. Def.'s Resp. at 9. Defendant argues that "[c]ontrary to what Renda implies, as of April 2002, when this lawsuit was instituted, Renda possessed all of the information necessary to recognize and raise the new claims . . . that it now seeks to introduce into the case." Id. at 10. Defendant further argues that permitting this amendment would prejudice the government because discovery proceedings have concluded in this matter, "except for the discrete discovery requests by Renda that are the subject of the [c]ourt's May 14, 2004 Order." Id.

Plaintiff does not dispute its timely receipt of the contracting officer's final decision dated November 26, 2002. See Pl.'s Reply. Rather, plaintiff contends that the first time that the contracting officer's final decision "was discussed in this case" was during the deposition of Oscar Renda on January 15, 2004 when defendant's counsel "tendered the Final Decision as an exhibit." Id. at 2. Plaintiff argues that defendant's failure to respond, after Mr. Renda's deposition, to a January 19, 2004 follow-up letter from plaintiff inquiring whether the government intended to pursue the counterclaims addressed in the contracting officer's November 26, 2002 final decision "led Renda to believe that the [g]overnment had no interest in pursuing the Final Decision counterclaims." Id. Plaintiff asserts that "[i]t is only fair that Renda be allowed to address the Final Decision by way of amended complaint," id., and observes that "[i]n terms of scheduling, now is the time to allow the amendment [because] [t]here is no trial date [and] . . . [d]iscovery has been reopened," id. at 3.

Plaintiff further asserts that all of the claims in the amended complaint "arose out of the conduct, transaction, or occurrence set forth in Renda's original complaint . . . [and therefore,] relate back to the date of the original filing of Renda's complaint." Id. (citing Rule 15(c) of the Rules of the United States Court of Federal Claims (RCFC)). Plaintiff adds that it has no objection "[i]f [d]efendant needs additional discovery for any [of the] issues raised in the First Amended Complaint." Id. at 1.

Rule 15(a) permits a party to amend its pleading "only by leave of court or by written consent of the adverse party" if a responsive pleading has been served or if the action has been placed upon the trial calendar. RCFC 15(a). The rule provides that "leave shall be freely given when justice so requires." Id. Citing Foman v. Davis, 371 U.S. 178, 182 (1962), this court has observed that "[t]he Supreme Court has interpreted Rule 15(a) liberally." Siemens Aktiengesellschaft v. United States, 26 Cl. Ct. 312, 313 (1992) (footnote omitted) (Siemens). The Siemens court further observed that "[i]n deciding how to rule on a motion to amend, . . . the court must consider the presence of the following factors: undue delay, bad faith or dilatory motive on the part of the movant, futility of the proposed amendment, and undue prejudice to the opposing party." Id. "Particular emphasis" must be paid to the element of prejudice to the opposing party. Id. (citing United States v. Hougham, 364 U.S. 310, 316 (1960)).

The court first examines the proposed amended complaint. The proposed first amended complaint contains ten counts. See Pl.'s Mot. Ex. A (First Amended Complaint).

Count I of the amended complaint, see First Amended Complaint ¶¶ 20-54, corresponds to the "South Ferry Landing Differing Site Conditions Claim" contained in

the original complaint, see Pl.'s Mot. Ex. E (Complaint) ¶¶ 19-52, but adds a new theory of relief, specifically, plaintiff's alleged entitlement to compensation either as a result of the differing site conditions encountered or as a result of defendant's termination for convenience of the dredging work, see First Amended Complaint ¶ 54.

Counts II and III of the amended complaint, see First Amended Complaint ¶¶ 55-77; id. ¶¶ 78-87, correspond respectively to the "Flare Area Claim" and the "HL&P Tower Claim" contained in the original complaint, see Complaint ¶¶ 53-74; id. ¶¶ 75-83.

Count IV of the amended complaint corresponds to the "Section 7 Clay Claim" contained in the original complaint, compare First Amended Complaint ¶¶ 88-96 with Complaint ¶¶ 84-90, but adds a new theory of relief seeking recovery based, alternatively, on defendant's failure to investigate the alleged differing site conditions or on the Corps' termination for convenience of the dredging and levee construction work, see First Amended Complaint ¶ 96.

Count V of the amended complaint corresponds to the "West Levee Realignment Claim" contained in the original complaint, compare First Amended Complaint ¶¶ 97-109 with Complaint ¶¶ 91-101, but adds a new theory of relief in the alternative based either on the changes provision in the contract or on the Corps' termination for convenience of the levee construction work, see First Amended Complaint ¶ 109.

Counts VI and VII of the amended complaint correspond to the "Obstruction #1 Claim" and the "Obstruction #2 Claim" contained in the original complaint, compare First Amended Complaint ¶¶ 110-30; id. ¶¶ 131-59 with Complaint ¶¶ 102-20; id. ¶¶ 121-47, but asserts a new theory of relief in the alternative based either on the differing site conditions clause of the contract or on the Corps' termination for convenience of the dredging work, see First Amended Complaint ¶¶ 130, 159.

Count VIII of the amended complaint corresponds to the "Lost Lake Levees Claim"contained in the original complaint. Compare First Amended Complaint ¶¶ 160-226 with Complaint ¶¶ 148-97.

Count IX of the amended complaint is new. Count IX seeks a declaration that the November 26, 2002 final decision of the contracting officer in which the contracting officer determined that plaintiff owed defendant approximately $11.86 million for deficient or incomplete contract items, see Pl.'s Mot. Ex. B at 39, 42, "is a nullity or is otherwise invalid," First Amended Complaint ¶ 228.

Count X of the amended complaint is new. Count X is denominated "Damages," Amended Complaint ¶¶ 241-43, and asserts entitlement to compensation "for the extra or changed work that [it] had to perform . . . on the Project," id. ¶ 242. Plaintiff claims that its "entitlement is based on the differing site conditions and changes provisions in the contract or due to the Corps' termination for convenience of the work at issue." Id.

Of particular interest to the court is plaintiff's failure to provide a reasonable explanation for the timing of this motion. First, plaintiff offers no explanation for the belated assertion of the new theories of relief set forth in the proposed amended complaint. Instead, plaintiff attempts to seize what it apparently views as an opportunity presented by the vacated trial date to address legal theories that were knowable to plaintiff much earlier in this litigation. Plaintiff's claim that discovery has been reopened ignores the fact that the scope of discovery to be undertaken by the parties in the next few months is limited to three discrete issues. See Order of May 14, 2004 (granting plaintiff's motion to compel production); Order of July 28, 2004 (mooting plaintiff's motion to enforce Order of May 14, 2004). The vacating of the trial date provides no opportunity to expand the complaint. The court vacated the trial date to provide plaintiff's counsel the opportunity to address apparently incomplete aspects of its trial preparation.

At a telephonic status conference to discuss preparation for trial, defendant's counsel stated, without contradiction, that, in response to certain document production requests from plaintiff, the government had long before offered to make records available:

> [The government] indicated that . . . [it] would be prepared to produce the files from the previous contract job at a mutually convenient time and place.
>
> [Then] [b]asically, 15 months went by, and the discovery deadline closed without the [p]laintiff's attorney having raised the issue, picked up the phone and called me, or even sent me a letter saying . . . let's set up a schedule for reviewing those records and getting them from the records center. . . . Now the problem that we have with the request is that there is no explanation for why it was not raised earlier, but it was raised in mid-April, which is shortly before trial in this case.
>
> And frankly we are trying to get ready for the trial, and we have to stop now and go to records centers and produce these documents, and potentially do privilege reviews on these documents, [which,] in our view[,] is unfair to the government.

Transcript of Telephonic Status Conference held on May 13, 2004 (Tr.) at 22-23; see also id. at 25 (court observing that while "it is not the purpose of the [c]ourt to have the [p]laintiff contractor be unable to have the resources to bring his case," there is "some frustration" regarding "the athletic efforts . . . made to bring this to a speedy trial [that] have been at the behest of the [p]laintiff from the very beginning").[1]

---

[1]The court further stated:

> And I must tell you, Mr. Erikson, that Mr. Kosloske, in the view of the Court, has the better of it on where the ball falls on whether or not the Plaintiff has had an opportunity to look at these documents.
>
> That is, the documents -- this is the way that it looks to the Court. About a year-and-a-half ago the documents were requested. Not much less than that the documents were identified in a response.
>
> Then over a year passed. The discovery deadline passed, and only in the course of preparing apparently exhibit lists in preparation for the pre-trial activities did the Plaintiff notice that a hunk of its evidence had not been gathered.
>
> I mean, I think that is what it looks like to the Court, looks to the Court like what happened. Now, I am not -- I am unwilling to have the contractor in this circumstance, I am unwilling to have the contractor disadvantaged by those sets of circumstances where this is a significant claim, and with potentially significant evidence that has not been examined.
>
> I am also unwilling to conduct a trial in absolute chaos. I am prepared to allow the motion to the extent of allowing -- the government has already said it will provide -- it would produce documents relating to the contract. It has already offered that. That offer has not been taken up. Now is the time to take it up.
>
> What that will result in is the Court will vacate the trial date, and we will simultaneously perform other activities in connection with pre-trial, which is that we will review the documents. We will set up at the conclusion of this hearing a schedule to review UDS documents so that we can determine yea or nay whether the discovery so far has been under-inclusive in connection with the electronic review.
>
> And we will also of course review the in camera -- as well as in camera, we will review the attorney-client. And then we will set a date. We recognize that this itself is -- and I think it has been indicated that looking at just the section of documents that are described in Interrogatory 5 could be a pretty substantial undertaking.
>
> We would give a date in the fall, mid-fall probably, by which the parties would advise -- I think the United States has already stated that it is ready for trial.
>
> The Plaintiff would state that it is ready to put forward a final list of exhibits, and then we would allow the Plaintiff to amend pre-trial fillings, put

(continued...)

[1](...continued)
forward a final list of exhibits and witnesses. It would not include new witnesses, but would revise its exhibits to correct these omissions, and then we would schedule a trial from there, including the pre-trial activities.

That is the best that I can think of to do here in order to -- not to have the Plaintiff suffer from the omission to review a available and potentially important source. That is the result of the thing.

I feel or take some comfortable to the point of the view of the Plaintiff that this is a Contract Disputes Act case, which does afford in the case of money owed an interest remedy, as well as a principal remedy.

So that I feel that if there were money owed to the Plaintiff contractor that the delay would be -- delay is always a problem, but it is less burdensome than it might be in some other cases.

That is my instinct just based on the argument of what to do, and I will hear comment, but I am not sure that I can think of a better thing. Go ahead.

Tr. at 25-28. Before offering plaintiff's counsel a brief recess to confer with his client regarding the court's proposal, the court further stated:

> The Court was dismayed by . . . what the motion to compel practice indicated [-- which] was a somewhat overwhelmed by documents plaintiff.
>
> And, for example, the fact that the documents were filed when they were filed, were filed with many irregularities in the production of exhibit lists, was the subject of concern to the Court.
>
> And by this I mean that the Court would intend to control our own schedule so that material comes before us in an orderly way. This trial has been extended from 2 weeks to 3 weeks in an effort to afford some more space to the presentation of issues.
>
> . . . [A]n orderly presentation . . . did not appear to be what was coming at [the court] based on what [the court] ha[s] been seeing about the presentation here.
>
> The Court, at its pre-trial conference, and I would give you the following guidance, and would enter as an order after pre-trial -- I am going to read you the guidance now, because it may influence whether you want to, as opposed to possibly being ordered to, but want to and see the value of having a more -- for lack of a better phrase, fin[e]ly ground down preparation.
>
> Here is what the Court would order. Any exhibit and/or any portion of an exhibit, the import of which with respect to one or more issues in the case, is not specifically pointed out by a witness at trial may be disregarded by the Court in its determination of the case.
>
> Specifically pointed out means specific mention with reference to an

(continued...)

It is the view of the court that plaintiff's explanation for the delay in asserting its new theories of recovery is unreasonable and prejudices defendant.

Plaintiff's explanation for its belated challenge to the contracting officer's November 26, 2002 final decision is similarly unpersuasive. Plaintiff does not dispute either that it timely received the final decision or that it declined to exercise its appeal rights under the Contract Dispute Act, in particular, to appeal the decision to an agency board of contract appeals, 41 U.S.C. § 606 (2000), or to institute a proceeding in this court upon that claim, 41 U.S.C. § 609(a)(1), (3) (2000). Because plaintiff has failed to establish that "justice . . . requires," RCFC 15(a), the proposed amendment of the complaint, plaintiff's motion is DENIED.[2]

IT IS SO ORDERED.

s/Emily C. Hewitt
EMILY C. HEWITT
Judge

---

[1](...continued)

> exhibit number, and to one or more specific page numbers within, or to an otherwise identifiable portion of the exhibit, together with an indication of how the evidence supports or disproves a fact in issue.
>
> Specifically pointed out shall not include mentioned for the first time in post-trial briefing. No exhibits will be admitted after the close of evidence, at the close of trial.

Tr. at 32-33.

[2]In accordance with the rules of this court, however, if the issues that plaintiff seeks to raise by this proposed amendment to the complaint "are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." RCFC 15(b).

> If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits.

Id. The court necessarily reserves any ruling on proposed amendments to conform to the evidence presented at trial until trial.