No. 02-306C
(Judge Hewitt)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

RENDA MARINE, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S MOTION TO EXCLUDE TESTIMONY REGARDING OPINIONS AND OTHER MATTER CONTAINED IN NOVEMBER 2004 REVISIONS OF REPORTS OF PLAINTIFF'S DESIGNATED TRIAL EXPERTS OR, IN THE ALTERNATIVE, TO VACATE THE COURT'S NOVEMBER 4, 2004 SCHEDULING ORDER PENDING COMPLETION OF DISCOVERY RELATING TO PLAINTIFF'S EXPERTS' REVISED REPORTS, INCLUDING DOCUMENT PRODUCTION AND DEPOSITIONS, AND THE OPPORTUNITY TO IDENTIFY ADDITIONAL EXPERTS

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-0282
(fax) (202) 514-8624

Attorneys for Defendant

<u>OF COUNSEL</u>:

MR. P. ALEX PETTY
Assistant District Counsel
Office of Counsel
Galveston District
U.S. Army Corps of Engineers
Galveston, TX

DECEMBER 2, 2004

# TABLE OF CONTENTS

Page

DEFENDANT'S MOTION TO EXCLUDE TESTIMONY REGARDING OPINIONS AND OTHER MATTER CONTAINED IN NOVEMBER 2004 REVISIONS OF REPORTS OF PLAINTIFF'S DESIGNATED TRIAL EXPERTS OR, IN THE ALTERNATIVE, TO VACATE THE COURT'S NOVEMBER 4, 2004 SCHEDULING ORDER PENDING COMPLETION OF DISCOVERY RELATING TO PLAINTIFF'S EXPERTS' REVISED REPORTS, INCLUDING DOCUMENT PRODUCTION AND DEPOSITIONS, AND THE OPPORTUNITY TO IDENTIFY ADDITIONAL EXPERTS . . . . . 1

PRELIMINARY STATEMENT . . . . . 2

BACKGROUND . . . . . 3

A. The Court's September 10, 2003 Scheduling Order . . . . . 3

B. The January 2004 Mathewson Report And The March 2004 McCullough Report . . . . . 3

C. The Court's March 19, 2004 Order . . . . . 4

D. The Court's May 14, 2004 Order . . . . . 5

E. November 4, 2004 Telephonic Status Conference And Related Scheduling Order . . . . . 5

F. Renda's Revised Expert Reports . . . . . 6

(1) The November 2004 Mathewson Revised Report . . . . . 6

(2) The November 2004 McCullough Revised Report . . . . . 10

ARGUMENT . . . . . 14

A. Renda's Experts Mathewson And McCullough Should Not Be Permitted To Testify Regarding The Matter Contained In Their November 2004 Reports, Except To The Extent That It Is Addressed To Information Contained In The Discovery Obtained By Renda From The Government After May 14, 2004, In Response To The Court's May 14, 2004 Order . . . . . 14

**TABLE OF CONTENTS (CONT'D)**

B. If Renda's Experts Mathewson And McCullough Are Allowed To Testify Regarding The Opinions And Other Matters Contained In Their November 2004 Reports, The Court's November 4, 2004 Scheduling Order Should Be Vacated To Allow For The Completion Of Discovery Addressed To The Revised Reports . . . . . . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# INDEX TO DEFENDANT'S APPENDIX

**Document** **Page**

September 10, 2003 Order .......... 1

March 19, 2004 Order .......... 4

May 14, 2004 Order .......... 8

July 26, 2004 Order .......... 11

July 30, 2004 Order .......... 16

Portions of transcript of November 4, 2004 telephonic status conference .......... 23

Portion of "Defendant's First Set of Interrogatories and Second Request for Production of Documents" dated January 23, 2003 .......... 31

Letter dated February 3, 2004 from defendant's counsel to plaintiff's counsel re: Rule 26(a)(2) expert testimony disclosure, expert witness reports, and other documents .......... 42

Letter dated February 3, 2004 from defendant's counsel to plaintiff's counsel re: documents produced in response to plaintiff's request for expert witness work papers and other materials and other documents .......... 43

Letter dated February 3, 2004 from defendant's counsel to plaintiff's counsel transmitting rebuttal by Government expert to January 26, 2004 report of plaintiff's expert Christopher C. Mathewson, Ph.D., P.E. .......... 44

Letter dated May 14, 2004, from defendant's counsel to plaintiff's counsel transmitting rebuttal by Government expert to March 3, 2004 report of plaintiff's expert Robert B. McCullough .......... 45

January 26, 2004 report of Christopher C. Mathewson, Ph.D., P.E. .......... 46

Letter dated November 17, 2004, from plaintiff's counsel to defendant's counsel transmitting November 17, 2004 report of Christopher C. Mathewson, Ph.D., P.E. .......... 50

**INDEX TO DEFENDANT'S APPENDIX (CONT'D)**

November 17, 2004 report of Christopher C. Mathewson, Ph.D., P.E. ......................... 51

Letter dated November 17, 2004, from plaintiff's counsel to defendant's counsel re: continuing investigation by Christopher C. Mathewson, Ph.D., P.E. .......... 58

Letter dated November 18, 2004, from plaintiff's counsel to defendant's counsel transmitting November 17, 2004 report of Robert McCullough .......... 59

Portions of November 17, 2004 report of Robert McCullough .................................... 60

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 02-306C |
| v. | ) | |
| | ) | (Judge Hewitt) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO EXCLUDE TESTIMONY REGARDING OPINIONS AND OTHER MATTER CONTAINED IN NOVEMBER 2004 REVISIONS OF REPORTS OF PLAINTIFF'S DESIGNATED TRIAL EXPERTS OR, IN THE ALTERNATIVE, TO VACATE THE COURT'S NOVEMBER 4, 2004 SCHEDULING ORDER PENDING COMPLETION OF DISCOVERY RELATING TO PLAINTIFF'S EXPERTS' REVISED REPORTS, INCLUDING DOCUMENT PRODUCTION AND DEPOSITIONS, AND THE OPPORTUNITY TO IDENTIFY ADDITIONAL EXPERTS

Pursuant to RCFC 37(b)(2)(B),[1/] defendant, the United States, respectfully requests that, the Court exclude from the trial of this case expert testimony regarding the opinions and other matter contained in the November 2004 reports of the designated trial experts of plaintiff, Renda Marine, Inc. (Renda), Christopher Mathewson, Ph.D., P.E., and Robert B. McCullough, P.E., that are not based upon document discovery obtained by Renda pursuant to the Court's May 14, 2004 Order, thereby limiting the scope of the testimony of Dr. Mathewson to opinions and other matter contained in his January 26, 2004 report and in one paragraph, quoted below, of his November 2004 report that is addressed to documents produced by the Government after May 14, 2004, and restricting the scope of the testimony of Mr. McCullough to the opinions and other matter contained in his March 3, 2004 report (except to the extent that the opinions and matters addressed

[1] Rule 37(b)(2)(B) provides, in pertinent part, that, "[i]f a party fails to obey an order entered under RCFC 16(b), the court may make such orders in regard to the failure as are just, and among others the following: . . . (B) [a]n order . . . prohibiting [the disobedient party] from introducing designated matters in evidence . . . ." Rule 16(b)(3) provides for the entry of a scheduling order "that limits the time . . . to complete discovery."

in the earlier reports of those experts should be excluded for other reasons). Alternatively, the Government requests that the Court vacate its November 4, 2004 scheduling order to allow for the completion of discovery relating to the content of the revised reports of Dr. Mathewson and Mr. McCullough, including document discovery and depositions, and the identification of any new experts that the Government may deem necessary to respond to the new opinions or other matter contained in the revised reports and the production of any rebuttal reports by any of our presently-retained experts *after* the completion of such document discovery and depositions.

PRELIMINARY STATEMENT

On May 14, 2004, the Court vacated the trial dates to allow Renda to obtain discovery of Corps of Engineers Galveston District electronic mail messages and documents relating to certain previous dredging and/or levee maintenance contracts involving the Lost Lake Placement Area or the site of the Upper Bayou Project. The Government produced the materials and, during the November 4, 2004 status conference to reset the schedule for post-discovery pretrial and trial dates, Renda requested that it be afforded the opportunity to revise its previous expert testimony disclosures to address information gleaned from the documents produced by the Government. The Court allowed that request and set November 18, 2004, as the date for the production of "updated versions" Renda's existing expert reports, with the understanding that, consistent with Renda's representation to the Court during the November 4 status conference, Renda was being afforded an opportunity "to revise its previously submitted expert reports, in light of material produced by defendant during discovery."

With one exception discussed below, the revised expert reports produced by Renda, do not consist of the matter contained in the reports previously issued by Dr. Mathewson and Mr.

McCullough, revised to include commentary, opinions, or analysis based upon information contained in the Galveston District electronic mail messages or documents relating previous dredging and/or levee maintenance contracts involving the Lost Lake Placement Area or the site of the Upper Bayou Project. Accordingly, these experts should not be permitted to testify regarding the new matter contained in the November 2004 reports that is not based upon information obtained from documents produced by the Government for Renda in response to the Court's May 2004 Order.

## BACKGROUND

### A. The Court's September 10, 2003 Scheduling Order

The Court's September 10, 2003 scheduling order provided, among other things, that "[a]ll expert discovery, including the exchange of expert reports and excepting only the completion of expert depositions, shall be completed on or before February 4, 2004." Def. App. 1. Depositions of experts were to be completed by February 18, 2004. Def. App. 2.

### B. The January 2004 Mathewson Report And The March 2004 McCullough Report

On January 27, 2004, Renda provided the Government with a three-page report issued by Dr. Mathewson dated January 26, 2004 (not counting the curriculum vitae). Def. App. 46-49. On March 3, 2004, Renda provided the Government (and the Court) with a revised report issued by Mr. McCullough.[2]

[2] The March 3, 2004 McCullough report is appended as Exhibit D to the "Response by Plaintiff, Renda Marine, Inc., to Defendant's Motion to Compel Compliance with Rule 26(a)(2)(B), to Compel Production of Documents, to Permit Defendant to Perform an Audit of Plaintiff's Job Cost Schedules, and for a Modification of the Pretrial and Trial Schedule" dated March 3, 2004.

C. The Court's March 19, 2004 Order

On March 19, 2004, following a telephonic status conference held the previous day with respect to a motion filed by the Government to compel Renda's compliance with RCFC 26(a)(2)(B), to permit the Government to audit Renda's job cost schedules, and for a modification of the pretrial and trial schedule, the entered an Order in which, among other things, the Court stated that it "disregards the report prepared by Mr. McCullough dated January 23, 2004 and deems the report prepared by Mr. McCullough dated March 3, 2004 to supercede the January 23, 2004 report" and that, "[a]s soon as reasonably practicable, plaintiff shall make Mr. McCullough available to defendant for deposition. Order, ¶ 3, Def. App. 5.

During April 14-16, 2004, the Government took the depositions of Dr. Mathewson and Mr. McCullough. These depositions concerned the January 2004 report issued by Dr. Mathewson and the March 2004 report issued by Mr. McCullough.

On May 14, 2004, pursuant to RCFC 26(a)(2)(C), the Government provided Renda with the rebuttal report of the Government's expert, William F. Connole, P.E., to the March 3, 2004 revised report of Mr. McCullough and, in addition, the work papers relating to Mr. Connole's rebuttal report. Def. App. 45.[3]

[3] On February 27, 2004, pursuant to RCFC 26(a)(2)(C), the Government provided Renda with a rebuttal report issued by Jack Fowler, Ph.D. P.E., one the Government's designated trial experts, to the January 26, 2004 report issued by Dr. Mathewson. Def. App. 44. Earlier that month, on February 3, 2004, the Government made the expert testimony disclosure required by RCFC 26(a)(2)(B) to Renda, including the written reports and associated work papers of the Government's expert's Jack Fowler, Ph.D. P.E., Robert Lofgren, and William F. Connole, P.E. Def. App. 42-43.

D. The Court's May 14, 2004 Order

On May 14, 2004, following a telephonic status conference, the Court entered an Order granting Renda's April 14, 2004 motion to compel discovery, vacating the pretrial and trial dates set by the Court's September 10, 2003 Order, as amended by the Court's March 19, 2004 Order, and scheduled a telephonic status conference for November 4, 2004. Def. App. 8-10.[4]

E. November 4, 2004 Telephonic Status Conference And Related Scheduling Order

On November 4, 2004, the Court held a telephonic status conference to set a schedule for pretrial and trial and to address any outstanding issues with the parties. Near the end of the conference, after Renda's counsel advised the Court that discovery had been concluded and after the Court and counsel for the parties had agreed upon dated for post-discovery pretrial activities and trial, Renda's counsel stated:

> Your Honor, I do have one thing. Based on all of the documents that the [G]overnment has produced in recent months, Renda will probably have to change its expert report some. We will try to get those changes done as quickly as we can and submit them to counsel for the [Government].

Tr. 18(24-25)-19(1-4), Def. App. 24-25. In response to the Court's inquiry as to when Renda would produce such a revised expert report, Renda's counsel stated:

> Your Honor, I would be happy to do it myself . . . , but the [G]overnment literally produced thousands and thousands and thousands of documents and it is only fair that the experts have a chance to make some comment on the additional documents that the [G]overnment produced. But, in any event, I think if you gave us two

4 As the Court stated in its July 26, 2004 Order granting the Government's motion for a protective order regarding Renda's post-May 14, 2004 discovery demands: "[T]he court issued its Order of May 14, 2004 permitting plaintiff to conduct discovery, prior to the rescheduling of trial, that is not open-ended but limited to the discovery contemplated by the grant of plaintiff's April 14, 2004 motion to compel." Def. App. 14.

> weeks that would be enough time.

Tr. 19(23-24)-20(1-5), Def. App. 25-26. Regarding the need for any rebuttal report(s) by the Government's trial expert(s), defendant's counsel stated:

> It is difficult for the [G]overnment to really say anything until we see [Renda's revised report(s)] . . . . [W]e have no idea of how extensive the changes or revisions might be to the previously expressed opinions. . . . It could be relatively insignificant; they may be major. Until we see the reports, we don't know.

Tr. 20(10-13; 15-17), Def. App. 26.

Following the status conference, the Court entered an Order re-setting the pretrial and trial dates. November 4, 2004 Order, ¶¶ 4-7. With respect to "Expert Discovery," the Order provides:

> Plaintiff has requested the opportunity to revise its previously submitted expert reports, in light of material produced by defendant during discovery. Plaintiff also has represented to the court that it intends only to supplement its previously submitted expert reports, and that it does not intend to submit reports by any new expert witnesses. In accordance with RCFC 26(a)(2), plaintiff shall submit updated versions of its existing expert reports on or before November 18, 2004.

Order, ¶ 2, Def. App. 28. Concerning "Rebuttal Expert Discovery," the Order provides that, "[i]n accordance with RCFC 26(a)(2), defendant shall submit updated rebuttal expert reports, if any, on or before December 16, 2004." Id., ¶ 3, Def. App. 29.

F. Renda's Revised Expert Reports

(1) The November 2004 Mathewson Revised Report

On or about November 18, 2004, Renda produced for the Government a report dated November 17, 2004, issued by Dr. Mathewson that "supercedes" his January 26, 2004 report,

which is seven pages (not counting the curriculum vitae). See Def. App. 50-57. The revised report recites that the opinions therein are based upon his January 26, 2004 report, his "visit to the project site, including an examination of the Section 7 clay issue and a number of on-site photographs," and his "review of numerous other" unspecified "documents, photographs, videos and CD's that [Renda's counsel provided]." Def. App. 51.

Dr. Mathewson's November 2004 report substantially revises and adds to the opinions and other matters contained in his initial January 2004 report. Contrary to Renda's counsel's representations during the November 4, 2004 telephonic status conference, with one exception, the revisions and additions to Dr. Mathewson's January 2004 do *not* comment upon and are *not* based upon the discovery materials produced by the Government during the past five months in compliance with the Court's May 14, 2004 Order granting Renda's April 14, 2004 motion to compel. Rather, the changes and additions to the scope of Dr. Mathewson's expert testimony are based upon materials that Renda possessed as of January 2004 when Dr. Mathewson's initial report was issued or a visit to the Lost Lake Placement Area by Dr. Mathewson in March 2004.

The only comment in Dr. Mathewson's November 2004 revised report addressed to the discovery materials produced by the Government during recent months in compliance with the Court's May 14, 2004 Order is the following paragraph at the fourth page of the revised report:

> Documentation from previous maintenance projects at Lost Lake and other disposal areas prepared by the U.S. Government indicates that the Corps of Engineers had previously required contractors to excavate borrow pits along the interiors of the perimeter levees at Lost Lake in order to increase the height of the levees. The contract documents for those projects indicate that these side cast borrow areas were to be no closer than 50 feet from the interior toe of the levee, and no more than 3 or 4 feet deep.

Def. App. 54.

The following *new* aspects of Dr. Mathewson's revised report, by contrast, are not based upon anything that he might have learned from documents recently produced by the Government:

1. The 10 numbered paragraphs on the second page of the revised report. Def. App. 52.

2. Regarding Renda's Flare Area claim, the following statement at the third page of the revised report: "It is my opinion that Renda Marine encountered clays in the Flare Area that were stiffer than the clays and other materials indicated in the applicable soil borings. for the Flare Area. Renda relied on the appropriate soil borings. Soil borings taken elsewhere would not be as accurate as the ones actually taken at the Flare Area." Def. App. 53.

3. Regarding Renda's South Ferry Landing claim, the following statement at the third page of the revised report: "It appears, from Corps data and permit applications that the Corps of Engineers had information to indicate that revetments and riprap were placed in the area of the South Ferry Landing. However, this information was not contained in the contract documents. The Corps should have made such information known to the prospective bidders." Def. App. 53.

4. Regarding Renda's Section 7 Clay claim, the following statement at the bottom of the third and top of the fourth pages of the revised report: "I examined some of the Section 7 clay during my visit to the Lost Lake site and determined from field tests that it was much harder and more competent than the clays and other materials indicated in the contract documents for the Section 7 area." Def. App. 53-54.

5. Regarding Renda's Lost Lake Levees claim, the following parts of the analysis at the fourth, fifth, sixth, and seventh pages of the revised report:

    (a) The statement on the fourth page that Dr. Mathewson has "identified two related unfavorable site conditions," which are "the very low strength and slope failures of the constructed levees" and "the lack of available and suitable construction material for the completion of the project." Def. App. 54.

    (b) The opinions and other matter in the paragraph at the bottom of the fourth page and top of the fifth page and the first three full paragraphs on the fifth page, including the observation about the design stability circular failure analysis performed by HVJ Associates for the Corps of Engineers and the opinion that "[a] more appropriate analysis model would have used a slid-

ing block solution in which the soft new work materials formed the base of a sliding block rather than a circular failure that progressed below these weak materials." Def. App. 54-55.

(c) The discussion under Section B beginning in the middle of the fifth page, including the statement on the fifth page that "Renda Marine did not have enough clay and other suitable materials available from contractually authorized dredging areas to construct the levees at Lost Lake" and the statement on the sixth page that "[b]ased on the amount of settlement it appears clear that more than 3 or 4 feet were removed from the side cast borrow areas." Def. App. 55.

(d) The following statement on the sixth page: "One method of constructing the hydraulic levees that would ensure that the levees could reach and maintain a 30-foot elevation involves placing the hydraulic fill of clay and other suitable materials in lifts and allowing time for consolidation and dewatering of the materials before applying additional lifts. This process, however, would require more time than that allowed under the contract documents." Def. App. 56.

(e) The four concluding opinions on the seventh page that: (i) "there was insufficient volume of suitable material available to Renda Marine to construct the Lost Lake levees as designed; (ii) "the levees could not be constructed to reach and remain at the required 30-foot elevation under the circumstances;" (iii) "the side-cast borrow areas were larger than reported and consumed excessive amounts of suitable levee construction material;" and (iv) "there was insufficient time allowed by the contract to construct the levees in lifts to reduce the significance of slope failures." Def. App. 57.

Renda has not produced for the Government any work papers created by Dr. Mathewson relating to any of the new matter described above contained in his November 2004 revised report despite the Government's document production request for such materials. See Document Request No. 2 contained in "Defendant's First Set of Interrogatories and Second Request for Production of Documents" dated January 23, 2003, Def. App. 39.

On November 23, 2004, five days after Renda produced Dr. Mathewson's revised report, Renda's counsel "advised" defendant's counsel that Renda has provided to Dr. Mathewson, "for

his review," seven enumerated Corps of Engineers manuals, implying that yet another disclosure of expert testimony by Dr. Mathewson may be forthcoming, notwithstanding the Court's November 4, 2004 Order. See Def. App. 58. *None* of those manuals was part of the materials produced by the Government this past summer. *All* of the Corps of Engineers manuals existed and were available to Renda as of January 26, 2004, when Dr. Mathewson's initial report was issued.

(2) The November 2004 McCullough Revised Report

On or about November 18, 2004, Renda produced for the Government a report dated November 17, 2004, issued by Mr. McCullough. See Def. App. 59. The revised report states that, "[McCullough & Associates (M&A)] has revised its [March 3, 2004] report to incorporate new information as well as adjusted equipment rates based on our evaluation of audit comments and expert reports," that "we have incorporated the new rates as well as amounts shown as adjustments in our previous report into the damage calculations for Claim 5 through Claim 12," and that, "[a]s a result of these changes, we have revised the damage pricing sheets for Claim 5 through Claim 12." Def. App. 61. The revised McCullough report further states that, "[s]ince discovery in this case is ongoing M&A is continuing to analyze depositions and reports of [Corps of Engineers] personnel and experts *and reserves the right to revise these opinions as additional information becomes available*." Id. (emphasis added).

Mr. McCullough's revised report contains a revised estimate of Renda's damages, based in large part upon an overhaul of the rates for more than 100 pieces of marine and land-based equipment included in Renda's claims. The estimate of Renda's damages has *increased*, in the aggregate, by approximately $635,000, from the estimate of $13,379,369 contained in his March 2004 report to the $14,015,884 estimate contained in his November 2004 "update." See Exhibit

A-1 "Summary of Claims"), Def. App. 87. The damage estimate for each of Renda's claims has changed:

| | March 2004 | Nov. 2004 |
|---|---|---|
| Flare Area | $1,096,179 | $1,838,935 |
| South Ferry Landing | $ 947,054 | $1,016,292 |
| HL&P Transmission Tower Delays | $ 167,473 | $ 208,665 |
| Obstruction No. 1 | $1,986,551 | $2,092,372 |
| Obstruction No. 2 | $1,148,804 | $1,062,086 |
| Section 7 Clay | $ 978,271 | $1,230,072 |
| Lost Lake Levees | $7,055,037 | $6,567,464 |
| Total: | $13,379,369 | $14,015,884 |

Def. App. 87.

Again, contrary to Renda's counsel's representations during the November 4, 2004 telephonic status conference, most of the revisions to Mr. McCullough's March 2004 report do *not* comment upon and are *not* based upon the discovery materials produced by the Government during the past five months in compliance with the Court's May 14, 2004 Order granting Renda's April 14, 2004 motion to compel. Rather, the changes and additions to the scope of Mr. McCullough's expert testimony, in particular the new equipment rates, are a rehash of information that was available to Renda (and hence, Mr. McCullough) at the time that he issued the March 2004 report.

The following *new* aspects of Mr. McCullough's revised report are not based upon anything that he might have learned from documents recently produced by the Government in compliance with the Court's May 14, 2004 Order granting Renda's April 14, 2004 motion to compel:

1. The opinion that Renda "was released from the project prior to completing all the work in its contract," and, that "[t]his amounts to a termination for convenience by [the Government]," and that, "[a]s such, [Renda] is entitled to recover the reasonable and necessary costs expended in prosecuting the work prior to termination."

Def. App. 62.

2. Regarding the Flare Area claim, the following statement: "[Renda] encountered differing site conditions related to the clays encountered in the Flare Area. [Renda] utilized appropriate soil borings consistent with industry practice in determining soil conditions. [Renda] encountered stiffer clays than indicated by the bid documents and incurred additional compensation due to this issue as shown in the revised Damage Summary, Exhibit P." Def. App.64-65.

3. Regarding the South Ferry Landing claim, the following statement: "It appears that [the Government] had information on the subsurface man-made materials but failed to incorporate any information about those materials in the bid documents. [Renda] properly anticipated it would encounter only naturally occurring soil materials in this area." Def. App. 65.

4. Regarding the Section 7 Clay claim, the following statement: "[Renda] used the correct soil borings in its analysis to determine the anticipated soil type and conditions." Def. App. 75.

5. Regarding the Lost Lake Levees claim, the discussion of the alleged effect of "poor foundations caused by side-cast borrow areas" upon Renda's construction operations at the Lost Lake Placement Area. Def. App. 81.

6. Exhibit C ("Lost Lake Levees – Summary of Damages"). This is a spreadsheet from the March 2004 report that has been modified. The revised spreadsheet does not contain a "total days" column and, except for the zero values, all dollar amounts have changed. Def. App. 88.

7. Exhibit E ("Analysis of Claimed Delays"). This is a spreadsheet from the March 2004 report that has been modified. The revised spreadsheet does not contain an "impact days" column. In column "Claim 12a1 Planned HL Operations," entries for certain dates have been deleted, entries have been added for other dates that previously did not have an entry, and all entries have been converted from letters to numbers. In column "Claim 12a2," the numerical values have been changed from one decimal to two decimal points, for example, from 0.1 to 0.13. Def. App. 89-90.

8. Exhibit I-1 ("Claim 12a1 – Hydraulic Levees – Labor and Equipment Damage Calculations (Added Costs for Original Duration (10 months)"). This is a spreadsheet from the March 2004 report that has been modified. Two of the "Additional Worker" entries have been deleted. The values in the "Days" columns for labor and equipment for 1999, 2000, and 2001 have changed and the value in the "per diem" column has been changed from $50 to $25. Def. App 91.

9. Exhibit I-1a ("Claim 12a1 – Equipment Calculations"). This spreadsheet is a new exhibit without a counterpart in the March 2004 report. Def. App. 92.

10. Exhibit I-2 ("Claim 12a2 – Hydraulic Levees – Labor and Equipment Damage Calculations (Additional Costs for Full Crew for Extended Duration"). This is a spreadsheet from the March 2004 report that has been modified. Two of the "Additional Worker" entries have been deleted. The value in the "per diem" column has been changed from $25 to $50. Def. App 93.

11. Exhibit I-1a ("Claim 12a2 – Equipment Calculations"). This spreadsheet is a new exhibit without a counterpart in the March 2004 report. Def. App. 94.

12. Exhibit J-1a ("Claim 12a2 – Equipment Calculations"). This spreadsheet is a new exhibit without a counterpart in the March 2004 report. Def. App. 95.

13. Exhibit L ("Claim 12e – Booster Equipment and Labor Calculations"). This exhibit has been revised to substitute a rate for the booster based upon a November 2000 equipment lease agreement between Renda and Hendry Corporation. Def. App. 96-102.

14. Exhibit O (Equipment Rate Formula Explanations). This is a new exhibit without a counterpart in the March 2004 report. Def. App. 103-105.

15. Exhibits O-1 through O-10. This is a series of 25 spreadsheets that contain Mr. McCullough's recalculation of equipment rates for six-month intervals. The spreadsheets are new exhibits without any counterparts in the March 2004 report. The data for Renda's marine equipment (including the dredge *Millennium*) are not set out in the spreadsheets. For that equipment, the spreadsheet contained the following entry: "Rate computed per Chapter 4 methodology for dredging plant; see separate ("Long Form") worksheet for rate calculation." Def. App. 106.

16. Exhibits P and P-1 through P-8. These exhibits, a "Damages Summary" and spreadsheets for the Flare Area claim, are new exhibits without any counterparts in the March 2004 report. Def. App. 107-115.

17. Exhibits Q and Q-1 through Q-7. These exhibits, a "Damages Summary" and spreadsheets for the South Ferry Landing claim, are new exhibits without any counterparts in the March 2004 report. Def. App. 116-123.

18. Exhibits R and R-1 through R-3. These exhibits, a "Damages Summary" and spreadsheets for the HL&P Transmission Tower Delay claim, are new exhibits without any counterparts in the March 2004 report. Def. App. 124-127.

19. Exhibits S and S-1 through S-4. These exhibits, a "Damages Summary" and spreadsheets for the Obstruction No. 1 claim, are new exhibits without any counterparts in the March 2004 report. Def. App. 128-132.

20. Exhibits T and T-1 through T-4. These exhibits, a "Damages Summary" and spreadsheets for the Obstruction No. 2 claim, are new exhibits without any counterparts in the March 2004 report. Def. App. 133-138.

21. Exhibits U and U-1 through U-5. These exhibits, a "Damages Summary" and spreadsheets for the Obstruction No. 2 claim, are new exhibits without any counterparts in the March 2004 report. Def. App. 139-144.

Renda has not produced for the Government any work papers created by Mr. McCullough relating to any of the new matter described above contained in his November 2004 revised report despite the Government's document production request for such materials. See Document Request No. 2 contained in "Defendant's First Set of Interrogatories and Second Request for Production of Documents" dated January 23, 2003, Def. App. 39.

## ARGUMENT

### A. Renda's Experts Mathewson And McCullough Should Not Be Permitted To Testify Regarding The Matter Contained In Their November 2004 Reports, Except To The Extent That It Is Addressed To Information Contained In The Discovery Obtained By Renda From The Government After May 14, 2004, In Response To The Court's May 14, 2004 Order.

In May 2004, the Court vacated the trial for the purpose of allowing Renda to obtain discovery of Corps of Engineers Galveston District electronic mail messages and documents relating to certain previous dredging and/or levee maintenance contracts involving the Lost Lake Placement Area or the site of the Upper Bayou Project. The Government produced the materials and, during the November 4, 2004 status conference to reset the schedule for post-discovery pretrial and trial dates, Renda requested that it be afforded the opportunity to revise its previous expert testimony disclosures to address information gleaned from the documents

produced by the Government. The Court allowed that request and set a date of November 18, 2004, for the production of "updated versions" Renda's existing expert reports, with the understanding that, consistent with Renda's representation to the Court during the November 4 status conference, Renda was being afforded an opportunity "to revise its previously submitted expert reports, in light of material produced by defendant during discovery." Order, ¶ 2, Def. App. 28.

The revised expert reports produced by Renda do not comply with the Court's November 4, 2004 Order. Those reports do not consist of the opinions and analysis contained in the reports previously issued by Dr. Mathewson and Mr. McCullough, revised to include commentary, opinions, or analysis based upon information contained in the Galveston District electronic mail messages or documents relating previous dredging and/or levee maintenance contracts involving the Lost Lake Placement Area or the site of the Upper Bayou Project. As discussed above, with one exception, the November 2004 reports issued by Dr. Mathewson and Mr. McCullough are laden with new opinions and expanded analyses that are not based upon the materials produced by the Government in response to the Court's May 14, 2004 Order. Under the guise of being afforded an opportunity to supplement the earlier reports of Dr. Mathewson and Mr. McCullough with commentary upon the materials produced by the Government during the past five months, Renda has produced reports that retool, refine, and substantially expand the earlier opinions and analysis of these experts.

In its September 2003 scheduling order, as amended by its March 2004 order, the Court established deadlines for completing discovery of experts, including the disclosures required by RCFC 26(a)(2). The Government met that schedule, but Renda has not done so. The revisions to the previously-issued reports of Dr. Mathewson and Mr. McCullough reflected in the Novem-

ber reports are opinions and analyses that (with one exception) are not based upon the discovery obtained by Renda after May 14, 2004, and, thus, are untimely revisions that should have been included in the earlier reports of Dr. Mathewson and Mr. McCullough. The effect of the revised reports is to negate much of the discovery previously conducted by the Government of these experts (both document production and depositions), which was addressed to the expert testimony disclosures contained in the earlier reports of those experts.

Accordingly, the testimony of Dr. Mathewson should be limited to the opinions and other matter contained in his January 26, 2004 report and in the paragraph, quoted above, at the fourth page of his November 2004 report addressed to documents produced by the Government after May 14, 2004. The testimony of Mr. McCullough should be restricted to the opinions and other matter contained in his March 3, 2004 report.

B. If Renda's Experts Mathewson And McCullough Are Allowed To Testify Regarding The Opinions And Other Matters Contained In Their November 2004 Reports, The Court's November 4, 2004 Scheduling Order Should Be Vacated To Allow For The Completion Of Discovery Addressed To The Revised Reports.

If Renda's experts Mathewson and McCullough are allowed to testify regarding the opinions and other matter contained in their revised November 2004 reports, the Court's November 4, 2004 scheduling order should be vacated, including the dates for pretrial submissions and trial dates, so as to afford the Government a full and fair opportunity for discovery addressed to the new matters, discussed above, contained in the revised reports. The *first item* of discovery that we would need is document production, i.e., a supplementation by Renda of its response to the Government's outstanding document production requests concerning Renda's trial experts, including, but not limited to, the work papers of Dr. Mathewson and Mr. McCullough relating to the

revised reports. The *second item* of discovery that we would need is to take the depositions of Dr. Mathewson and Mr. McCullough, *after* the completion of document discovery. The *third item* of discovery that we would need is the opportunity (a) to identify additional expert(s) and make the required Rule 26(a)(2) disclosures for any such expert(s) and (b) to produce rebuttal report(s) from existing Government experts, *after* the completion of document discovery and depositions of Dr. Mathewson and Mr. McCullough.

CONCLUSION

For the foregoing reasons, defendant's motion should be granted and the Court should exclude from the trial of this case expert testimony regarding opinions and other matter contained in the November 2004 revised reports of plaintiff's trial experts Christopher Mathewson, Ph.D., P.E., and Robert B. McCullough, P.E., that are not based upon document discovery obtained by plaintiff pursuant to the Court's May 14, 2004 Order, thereby limiting the scope of the testimony of Dr. Mathewson to opinions and other matter contained in his January 26, 2004 report and in one paragraph, quoted below, of his November 2004 report that is addressed to documents produced by defendant after May 14, 2004, and restricting the scope of the testimony of Mr. McCullough to the opinions and other matter contained in his March 3, 2004 report (except to the extent that the opinions and matters addressed in the earlier reports of those experts should be excluded for other reasons). Alternatively, defendant requests that the Court vacate its November 4, 2004 scheduling order to allow for the completion of discovery relating to the content of the revised reports of Dr. Mathewson and Mr. McCullough, including document discovery and depositions, and the identification of any new experts that defendant may deem necessary to respond to the new opinions or other matter contained in the revised reports and the production of any rebuttal

reports by any of our presently-retained experts *after* the completion of such document discovery and depositions.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/John E. Kosloske
JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-0282
(fax) (202) 514-8624

Attorneys for Defendant

DECEMBER 2, 2004