# DEFENDANT'S APPENDIX

# In the United States Court of Federal Claims

No. 02-306 C

(E-Filed: September 10, 2003)

| | |
|---|---|
| RENDA MARINE, INC., | ) |
| Plaintiff, | ) |
| v. | ) |
| THE UNITED STATES, | ) |
| Defendant. | ) |

ORDER

Upon review of Defendant's Motion for Modification of Pretrial Schedule and further to the telephonic status conference held on the record on September 9, 2003, the court AMENDS its Pretrial Scheduling Order of October 18, 2002 as follows:

1. Fact Discovery. All fact discovery, including all depositions, shall conclude on or before Wednesday, January 14, 2004. In order to achieve this deadline, the parties shall make witnesses available at reasonably convenient times. The parties are reminded that the rules of the court contemplate the use of depositions at trial for testimonial purposes in certain circumstances "as though the witness were then present and testifying . . . ." See RCFC 32(a). As requested by the parties in their Joint Preliminary Status Report, the parties may conduct up to 30 depositions, up to 10 to be scheduled by plaintiff and up to 20 to be scheduled by defendant.

2. Expert Discovery. All expert discovery, including the exchange of expert reports and excepting only the completion of expert depositions, shall be completed on or before February 4, 2004.

3. Expert Depositions. All depositions of experts shall be completed on or before February 18, 2004.

4. Meeting of Counsel. As set forth in Appendix A ¶ 13, the parties shall meet to satisfy the requirements of this section including the exchange of exhibit and witness lists on or before March 24, 2004.

5. Dispositive Motions. Dispositive motions shall be filed on or before January 28, 2004. The motions and all responsive filings shall be filed simultaneously. Responsive briefing shall be filed within the time periods prescribed by the court's rules.

6. Memorandum of Contentions of Fact and Law. In accordance with Appendix A ¶ 14, plaintiff shall file its Memorandum of Contentions of Fact and Law on or before April 14, 2004. Defendant shall file its responsive memorandum on or before May 12, 2004. The memoranda shall be accompanied by witness lists and exhibit lists and any motions contemplated by Appendix A ¶¶ 15 and 16. Any objection to a witness or exhibit not made in the Memorandum of Contentions of Fact and Law or a separate motion filed on the same date shall be deemed waived unless justice shall otherwise require. The parties shall prepare a joint preliminary trial schedule or, if they cannot agree, separate trial schedules, using the template attached. The parties shall confer prior to the pretrial conference for the purpose of resolving as many objections as possible.

7. Pretrial Conference. The pretrial conference will be held on June 2, 2004 at the National Courts Building, 717 Madison Place, N.W., Washington, DC 20004. The parties shall bring to the pretrial conference at least three copies of any exhibit as to which an objection remains outstanding.

8. Trial. Trial will be held during the week of June 14, 2004. Trial will begin at 10:00 a.m. on Tuesday, June 15, 2004 and at 9:00 a.m. on successive days. Trial will be held in Houston, TX. The exact location of trial will be determined by further order of the court. Should additional time be required for trial, the court has set aside the following week of June 21, 2004 as well.

Due to the continuing problems with Washington, DC mail, the parties are directed to fax courtesy copies of any time-sensitive documents to the court and opposing counsel throughout the proceedings.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT

Judge

# In the United States Court of Federal Claims

No. 02-306 C

(E-Filed: March 19, 2004)

| | |
|---|---|
| RENDA MARINE, INC., | ) |
| Plaintiff, | ) |
| v. | ) |
| THE UNITED STATES, | ) |
| Defendant. | ) |

ORDER

Before the court are: (1) Defendant's Motion to Compel Compliance with Rule 26(a)(2)(B), to Compel Production of Documents, to Permit Defendant to Perform an Audit of Plaintiff's Job Cost Schedules, and for a Modification of the Pretrial and Trial Schedule (Defendant's Motion); (2) Response by Plaintiff, Renda Marine, Inc. to Defendant's Motion to Compel Compliance with Rule 26(a)(2)(B), to Compel Production of Documents, to Permit Defendant to Perform An Audit of Plaintiff's Job Cost Schedules, and for a Modification of the Pretrial and Trial Schedule and Contingent Motion for Leave to Require Defendant to Answer Renda's Discovery (Plaintiff's Response); and (3) Defendant's Reply to Plaintiff's Response to Defendant's Motion to Compel Compliance with Rule 26(a)(2)(B), to Compel Production of Documents, to Permit Defendant to Perform an Audit of Plaintiff's Job Cost Schedules, and for a Modification of the Pretrial and Trial Schedule. Further to the court's review of the parties' filings and further to the telephonic status conference held on March 18, 2004 during which the parties argued their positions, the court ORDERS the following:

1. With respect to defendant's request that plaintiff provide an expert report that complies with Rule 26(a)(2)(B) of the Court of Federal Claims (RCFC)[1] for plaintiff's retained expert Barry Smith, the court determines that Barry Smith is a fact witness rather than an expert witness and finds defendant's motion MOOT.

2. With respect to defendant's request that plaintiff provide an expert report that complies with RCFC 26(a)(2)(B) for plaintiff's retained expert Kent Ray, C.P.A., the court determines that Kent Ray is a fact witness rather than an expert witness and finds defendant's motion MOOT.

3. With respect to defendant's request that plaintiff provide an expert report that complies with RCFC 26(a)(2)(B) for plaintiff's retained expert Robert McCullough, P.E., the court DENIES defendant's motion. Based on plaintiff's representations during argument, the court DISREGARDS the report prepared by Mr. McCullough dated January 23, 2004 and deems the report prepared Mr. McCullough dated March 3, 2004 to SUPERCEDE the January 23, 2004 report. As soon as reasonably practicable, plaintiff shall make Mr. McCullough available to defendant for deposition.

4. With respect to defendant's request that plaintiff produce for inspection and or copying by defendant the documents prepared by its trial experts Barry Smith, Kent Ray, Robert McCullough, and Chris Mathewson, the court finds the motion MOOT with respect to Messrs. Smith and Ray who are fact witnesses only for purposes of this litigation. The motion is GRANTED with respect to Messrs.

---

[1]Rule 26(a)(2)(B) provides:

> Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

RCFC 26(a)(2)(B).

McCullough and Mathewson. On or before March 19, 2004, plaintiff shall provide Messrs. McCullough and Mathewson with a copy of Defendant's Second Request for Production of Documents.[2] Plaintiff shall respond, on or before March 25, 2004, provided that, with respect to documents that have been previously produced in this litigation and that are responsive to request no. 3, plaintiff may respond by listing the responsive documents, reasonably described by subject and/or title, number of pages, and date. Plaintiff shall produce all responsive documents not previously produced, for example, "the report of, or any other document prepared by, any non-testifying expert."

5. With respect to defendant's request for a DCAA audit, defendant's motion is GRANTED. Plaintiff shall cooperate with defendant in a DCAA audit of its job cost schedules for the Upper Bayou Project and a DCAA audit of the schedules that would support the revised expert opinion of Mr. McCullough dated March 3, 2004.

6. With respect to defendant's request to modify the pretrial and trial schedule, defendant's motion is DENIED in part and GRANTED in part as follows:

   a. The meeting of counsel is RESCHEDULED from March 14, 2004 until April 2, 2004.

   b. On or before May 19, 2004, the parties may amend their witness and exhibit lists for trial. Three copies of any contested exhibits shall be brought to the pretrial conference to be held in chambers on June 2, 2004 at 9:00 a.m.

   c. On or before May 26, 2004, the parties may file limited supplemental motions contemplated by Appendix A to the Rules of the Court of Federal Claims (limited, in the case of plaintiff, to evidence made available by defendant after April 2, 2004 and limited, in the case of defendant, to evidence made available by plaintiff after April 30, 2004). Any responses to such motions may be filed on or before June 1, 2004.[3]

---

[2]Appendix to Defendant's Motion to Compel Compliance with Rule 26(a)(2)(B), to Compel Production of Documents, to Permit Defendant to Perform an Audit of Plaintiff's Job Cost Schedules, and for a Modification of the Pretrial and Trial Schedule at 14.

[3]Courtesy copies of these motions and responses shall be transmitted by facsimile to opposing counsel and to chambers no later than 5:00 p.m. on the date of filing.

d. The court adds the week of June 28-July 2, 2004 to the current trial schedule, anticipating the allocation of the first two weeks, June 15-19 and June 21-25, 2004, to the presentation of plaintiff's case and the third week, June 28-July 2, 2004, to the presentation of defendant's case.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Judge

# In the United States Court of Federal Claims

No. 02-306 C

(E-Filed: May 14, 2004)

RENDA MARINE, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

ORDER

Further to the telephonic status conference held on May 13, 2004 in this matter, the court orders the following:

(1) Motion by Plaintiff, Renda Marine, Inc., to Compel is GRANTED as follows:

(A) With respect to the unproduced documents obtained from electronic discovery for which defendant asserts attorney/client privilege, defendant shall deliver to chambers, on or before 5:00 p.m. on May 14, 2004 for in camera review, a package of the documents in issue. The delivered package of documents shall contain the case caption and shall be designated as documents for in camera review only.

(B) With respect to the unproduced documents obtained from electronic discovery that defendant asserts are not responsive under the terms of the Agreement Regarding Scope of Electronic Discovery executed by

the parties on July 25, 2003, Universal Document Services, plaintiff's information technology consultant, shall select fifty (50) documents that are representative of the alleged underproduction of responsive documents by defendant, together with a memorandum explaining briefly why each such document is responsive, for in camera review by the court. The documents may be submitted by CD-Rom and shall be delivered to chambers on or before 5:00 p.m. on June 25, 2004. The submission to chambers shall be marked with the case caption and designated as documents for in camera review only.

(C) With respect to the production of documents identified as responsive to plaintiff's Interrogatory No. 5 concerning "borrow" material and the identification of certain persons who may have knowledge that is responsive to plaintiff's Interrogatory No. 5 concerning "borrow" material, the court GRANTS plaintiff's request to review the documents and, if desired, depose the identified persons if not presently employees of plaintiff.

(2) Further to the court's unwillingness to disadvantage the contractor at trial in this matter in light of discussions indicating that a significant volume of evidence that may be probative of plaintiff's largest claim has yet to be reviewed,[1] and with the concurrence of the parties, the

---

[1]The court read the following statement, guidance usually provided during the pre-trial conference, to the parties regarding the presentation of documentary evidence during trial :

> Any exhibit and/or any portion of an exhibit the import of which with respect to one or more issues in the case is not specifically pointed out by a witness at trial may be disregarded by the court in its determination of the case. "Specifically pointed out" means specific mention, with reference to an exhibit number, and to one or more specific page numbers within, or to an otherwise identifiable portion of, the exhibit, together with an indication of how the evidence supports or disproves a fact in issue. "Specifically pointed out" shall not include mention for the first time in post-trial briefing. No exhibits will be admitted after the close of evidence at the close of trial.

(continued...)

current pre-trial date and trial dates are VACATED, and discovery is REOPENED. The court's scheduling orders dated October 18, 2002, September 10, 2003, and March 19, 2004 are hereby SUPERCEDED and the due dates therein are VACATED.

(3) In light of the amendment to the trial schedule, Defendant's Motion for an Enlargement of Time to File Objections to Plaintiff's Trial Exhibits is MOOT.

(4) A telephonic status conference will be held on Thursday, November 4, 2004 at 2:00 E.S.T. to reschedule pre-trial proceedings and trial dates in this matter. A Sprint operator will initiate the call to the parties.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Judge

[1](...continued)

# In the United States Court of Federal Claims

No. 02-306 C

(E-Filed: July 26, 2004)

| | |
|---|---|
| RENDA MARINE, INC., | ) |
| Plaintiff, | ) |
| v. | ) |
| THE UNITED STATES, | ) |
| Defendant. | ) |

ORDER

Before the court on defendant's motion are the following documents: Defendant's Motion for a Protective Order (Def.'s Mot.), Response by Renda Marine, Inc. to Defendant's Motion for Protective Order (Pl.'s Resp.) and Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Protective Order (Def.'s Reply). Pursuant to Rule 26(c)(1) of the United States Court of Federal Claims (RCFC), defendant moves the court to issue an order relieving defendant of an obligation to respond to the following discovery requests: "(1) Document Requests Nos. 27 and 28 contained in Renda's first request for production of documents; (2) Renda's second set of interrogatories; (3) Renda's third set of document production requests; (4) Renda's fourth set of document production requests; and (5) any other discovery that Renda may seek apart from that which is the subject of Renda's motion to compel filed April 14, 2004 (to the extent allowed by the [c]ourt)." Def.'s Mot. at 1. For the reasons set forth in this order, defendant's motion is GRANTED.

Defendant argues that the foregoing discovery requests exceed the limited scope of discovery permitted to be undertaken in this case by Order dated May 14, 2004. Id. at 2-3, 6-7. Defendant further argues that the court made clear during the telephonic status conference held on May 13, 2004 that its decision to vacate the trial date of June 15, 2004

was intended only "to afford Renda the opportunity to pursue the discovery that is the subject of its April 14, 2004 motion to compel." Id. at 2 (citing Transcript of Telephonic Status Conference held on May 13, 2004 (Tr.) at 36-38). Defendant contends that "[a]t no point during the May 13, 2004 telephonic conference did Renda's counsel suggest or the [c]ourt indicate that Renda should or would be allowed to pursue any discovery apart from the three items that are the subject of Renda's April 14, 2004 motion to compel." Id. at 2-3. Defendant notes that, if the court denies its application for a protective order and permits the additional requested discovery, it "reserves the right . . . to raise appropriate objection(s), including that discovery is. . . unduly burdensome, privileged, or otherwise inappropriate." Id. at 7 n.6.

Plaintiff responds that defendant's motion reflect a "desire[] to block the reopening of discovery, despite the [c]ourt's May 14, 2004 Order , which reopened discovery, while vacating the [c]ourt's previous scheduling orders and the trial date." Pl.'s Resp. at 1. Plaintiff argues that "[a]s matters stand, there is no trial date, there are no scheduling orders, and discovery is wide open." Id. Plaintiff contends that "[t]he [c]ourt's May 14, 2004[] Order was designed to resolve inequities caused by Defendant's withholding of documents during discovery . . . [and that] [t]he May 14, 2004[] Order resulted from . . . concerns [about] (1) [e]lectronic discovery[] and (2) Interrogatory No. 5 documents." Id.

Plaintiff states that "[t]he ordering of the electronic discovery [restoration] operation was intended to remedy the spoliation of evidence." Id. at 2. Plaintiff asserts that "[p]art of the remedial process for the restoration of such relevant evidence is further discovery . . . [because] [r]elevant documents may raise intriguing questions." Id.

Plaintiff states that defendant also failed to produce documents in response to Interrogatory No. 5 concerning "the Lost Lake levees and associated sidecast borrow areas, [plaintiff's] largest claim." Id. at 3. Plaintiff indicates its expectation that the documents it seeks will show that "the soil borings that the Government included in the bid solicitation for the Upper Bayou Project in . . . the sideacast borrow areas were no longer accurate, and did not reflect the conditions that the prospective bidders would confront," plaintiff asserts that additional discovery will be needed. Id. Plaintiff contends that "[i]n reopening discovery, the [c]ourt recognized that Defendant's production of the withheld documents w[ould] require further investigation and discovery, [but defendant explains], [n]either the [c]ourt nor Renda c[ould] tell to what extent the documents produced m[ight] lead to other relevant documents or witnesses." Id. at 4. Arguing that the court's May 14, 2004 Order unambiguously reopens discovery without limitation, plaintiff urges the court to deny defendant's motion. Id. at 6.

In its reply, defendant argues that "[t]he discovery that Renda seeks . . . cannot be considered 'follow-up' discovery relating to the three discovery matters raised by its April 14, 2004 motion to compel." Def.'s Reply at 3. Defendant points out that "in addition to documents relating to the eight dredging projects in the Upper Bayou area [during the 12-year interval] from 1987 to 1999 referred to in the Government's response to Renda's Interrogatory No. 5, Renda now is seeking production of documents relating to thirty-three dredging projects in the Upper Bayou area during the 38-year interval from 1949 to 1987." Id. at 2. Defendant also challenges plaintiff's new "interrogatories requesting information about Lost Lake Placement Area back to 1980 and twenty new document production requests." Id. at 3.

By Order dated May 14, 2004, the court granted plaintiff's April 14, 2004 motion to compel, specifically directing: (1) an in camera review of the unproduced documents obtained from electronic discovery for which defendant asserts attorney/client privilege; (2) an in camera review of fifty documents, selected by plaintiff's information technology consultant Universal Document Services, that are representative of the alleged underproduction of responsive documents by defendant under the terms of the Agreement Regarding Scope of Electronic Discovery executed by the parties on July 25, 2003, and accompanying memorandum explaining briefly why each such document is responsive; and (3) the production by defendant for plaintiff's review of those documents "identified as responsive to plaintiff's Interrogatory No. 5 concerning 'borrow' material and the identification [by defendant] of certain persons who may have knowledge that is responsive to plaintiff's Interrogatory No. 5 concerning 'borrow' material," allowing plaintiff, "if desired, [to] depose the identified persons if not presently [plaintiff's] employees." Order of May 14, 2004. To afford plaintiff an opportunity to consider the foregoing discovery as possible evidence in support of its case, the court vacated the trial date and reopened discovery for the very limited purpose "of dealing with three specific issues." Id.; see also Tr. at 38 (lines 8-9) (court stating that "the point of opening up discovery is to deal with three specific issues"). During the May 13, 2004 telephonic status conference, the court specifically indicated that the June 2004 trial schedule would be vacated to ensure that the evidence and the presentation of the case at trial would be "as well prepared as possible." Tr. at 35 (lines 5-6). Informing the court's Order of May 14, 2004 were two considerations: (1) the court's "unwilling[ness] to have the contractor disadvantaged by th[]e set[] of circumstances where th[ere] is a significant claim, and . . . potentially significant evidence [pertaining to that claim] has not been examined by plaintiff's counsel," Tr. at 26 (lines 17-20), and (2) the court's interest in conducting a trial in which "material comes before [it] in an orderly way," Tr. at 32 (lines 15-16). Contrary to plaintiff's assertions, the scope of discovery to be conducted by plaintiff was addressed directly during the May 14, 2004 telephonic status conference. The court stated:

> [The court is] prepared to allow the motion [to compel] to the extent of allowing -- the government has already said it will provide -- it would produce documents relating to the contract. It has already offered that. That offer has not been taken up. Now is the time to take it up.
>
> What that will result in is the [c]ourt will vacate the trial date, and we will simultaneously perform other activities in connection with pre-trial, which is that we will review the documents. We will set up at the conclusion of this hearing a schedule to review [Universal Document Services'] documents so that we can determine yea or nay whether the discovery so far has been under-inclusive in connection with the electronic review.
>
> And we will also of course review the in camera -- as well as in camera, we will review [unproduced documents for] the attorney-client [privilege]. And then we will set a date. We recognize that this itself is -- and I think it has been indicated that looking at just the section of documents that are described in Interrogatory 5 could be a pretty substantial undertaking.
>
> We would give a date in the fall, mid-fall probably, by which the parties would advise -- I think the United States has already stated that it is ready for trial.
>
> The Plaintiff would state that it is ready to put forward a final list of exhibits, and then we would allow the Plaintiff to amend pre-trial fillings, put forward a final list of exhibits and witnesses.
>
> It would not include new witnesses, but would revise its exhibits to correct these omissions, and then we would schedule a trial from there, including the pre-trial activities.
>
> That is the best that I can think of to do here in order to -- not to have the Plaintiff suffer from the omission to review a[n] available and potentially important source [of evidence].

Tr. at 26-28 (emphasis added). Based on this understanding, the court issued its Order of May 14, 2004 permitting plaintiff to conduct discovery, prior to the rescheduling of trial, that is not open-ended but limited to the discovery contemplated by the grant of plaintiff's April 14, 2004 motion to compel.

For the foregoing reasons, the court GRANTS defendant's motion for protective order and thereby relieves defendant of any obligation to respond the following discovery requests: "(1) Document Requests Nos. 27 and 28 contained in Renda's first request for production of documents; (2) Renda's second set of interrogatories; (3) Renda's third set of document production requests; (4) Renda's fourth set of document production requests;

and (5) any other discovery that Renda may seek apart from that which is the subject of Renda's motion to compel filed April 14, 2004 (to the extent allowed by the [c]ourt)." Def.'s Mot. at 1.

IT IS SO ORDERED.

s/Emily C. Hewitt
EMILY C. HEWITT
Judge

# In the United States Court of Federal Claims

No. 02-306 C

(E-Filed: July 30, 2004)

RENDA MARINE, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

ORDER

Before the court are the following documents: (1) Motion by Renda Marine, Inc., for Leave of Court to Amend Complaint (Pl.'s Mot.), (2) Defendant's Response to Plaintiff's Motion for Leave to Amend Complaint (Def.'s Resp.) and (3) Reply by Renda Marine, Inc. to Defendant's Response to Plaintiff's Motion for Leave to Amend Complaint (Pl.'s Reply). Plaintiff moves to file an amended complaint "to assert issues which arose well after the Complaint was originally filed." Pl.'s Mot. at 1.

Defendant urges the court to deny the motion on two grounds, specifically: (1) that by waiting more than a year and a half to challenge the contracting officer's November 26, 2002 decision, "Renda unduly delayed in bringing the motion" and (2) that the amended complaint raises new claims for relief based on the alleged termination for convenience of the contract and on defendant's failure to investigate the alleged differing site conditions. Def.'s Resp. at 9. Defendant argues that "[c]ontrary to what Renda implies, as of April 2002, when this lawsuit was instituted, Renda possessed all of the information necessary to recognize and raise the new claims . . . that it now seeks to introduce into the case." Id. at 10. Defendant further argues that permitting this amendment would prejudice the government because discovery proceedings have concluded in this matter, "except for the discrete discovery requests by Renda that are the subject of the [c]ourt's May 14, 2004 Order." Id.

Plaintiff does not dispute its timely receipt of the contracting officer's final decision dated November 26, 2002. See Pl.'s Reply. Rather, plaintiff contends that the first time that the contracting officer's final decision "was discussed in this case" was during the deposition of Oscar Renda on January 15, 2004 when defendant's counsel "tendered the Final Decision as an exhibit." Id. at 2. Plaintiff argues that defendant's failure to respond, after Mr. Renda's deposition, to a January 19, 2004 follow-up letter from plaintiff inquiring whether the government intended to pursue the counterclaims addressed in the contracting officer's November 26, 2002 final decision "led Renda to believe that the [g]overnment had no interest in pursuing the Final Decision counterclaims." Id. Plaintiff asserts that "[i]t is only fair that Renda be allowed to address the Final Decision by way of amended complaint," id., and observes that "[i]n terms of scheduling, now is the time to allow the amendment [because] [t]here is no trial date [and] . . . [d]iscovery has been reopened," id. at 3.

Plaintiff further asserts that all of the claims in the amended complaint "arose out of the conduct, transaction, or occurrence set forth in Renda's original complaint . . . [and therefore,] relate back to the date of the original filing of Renda's complaint." Id. (citing Rule 15(c) of the Rules of the United States Court of Federal Claims (RCFC)). Plaintiff adds that it has no objection "[i]f [d]efendant needs additional discovery for any [of the] issues raised in the First Amended Complaint." Id. at 1.

Rule 15(a) permits a party to amend its pleading "only by leave of court or by written consent of the adverse party" if a responsive pleading has been served or if the action has been placed upon the trial calendar. RCFC 15(a). The rule provides that "leave shall be freely given when justice so requires." Id. Citing Foman v. Davis, 371 U.S. 178, 182 (1962), this court has observed that "[t]he Supreme Court has interpreted Rule 15(a) liberally." Siemens Aktiengesellschaft v. United States, 26 Cl. Ct. 312, 313 (1992) (footnote omitted) (Siemens). The Siemens court further observed that "[i]n deciding how to rule on a motion to amend, . . . the court must consider the presence of the following factors: undue delay, bad faith or dilatory motive on the part of the movant, futility of the proposed amendment, and undue prejudice to the opposing party." Id. "Particular emphasis" must be paid to the element of prejudice to the opposing party. Id. (citing United States v. Hougham, 364 U.S. 310, 316 (1960)).

The court first examines the proposed amended complaint. The proposed first amended complaint contains ten counts. See Pl.'s Mot. Ex. A (First Amended Complaint).

Count I of the amended complaint, see First Amended Complaint ¶¶ 20-54, corresponds to the "South Ferry Landing Differing Site Conditions Claim" contained in

the original complaint, see Pl.'s Mot. Ex. E (Complaint) ¶¶ 19-52, but adds a new theory of relief, specifically, plaintiff's alleged entitlement to compensation either as a result of the differing site conditions encountered or as a result of defendant's termination for convenience of the dredging work, see First Amended Complaint ¶ 54.

Counts II and III of the amended complaint, see First Amended Complaint ¶¶ 55-77; id. ¶¶ 78-87, correspond respectively to the "Flare Area Claim" and the "HL&P Tower Claim" contained in the original complaint, see Complaint ¶¶ 53-74; id. ¶¶ 75-83.

Count IV of the amended complaint corresponds to the "Section 7 Clay Claim" contained in the original complaint, compare First Amended Complaint ¶¶ 88-96 with Complaint ¶¶ 84-90, but adds a new theory of relief seeking recovery based, alternatively, on defendant's failure to investigate the alleged differing site conditions or on the Corps' termination for convenience of the dredging and levee construction work, see First Amended Complaint ¶ 96.

Count V of the amended complaint corresponds to the "West Levee Realignment Claim" contained in the original complaint, compare First Amended Complaint ¶¶ 97-109 with Complaint ¶¶ 91-101, but adds a new theory of relief in the alternative based either on the changes provision in the contract or on the Corps' termination for convenience of the levee construction work, see First Amended Complaint ¶ 109.

Counts VI and VII of the amended complaint correspond to the "Obstruction #1 Claim" and the "Obstruction #2 Claim" contained in the original complaint, compare First Amended Complaint ¶¶ 110-30; id. ¶¶ 131-59 with Complaint ¶¶ 102-20; id. ¶¶ 121-47, but asserts a new theory of relief in the alternative based either on the differing site conditions clause of the contract or on the Corps' termination for convenience of the dredging work, see First Amended Complaint ¶¶ 130, 159.

Count VIII of the amended complaint corresponds to the "Lost Lake Levees Claim"contained in the original complaint. Compare First Amended Complaint ¶¶ 160-226 with Complaint ¶¶ 148-97.

Count IX of the amended complaint is new. Count IX seeks a declaration that the November 26, 2002 final decision of the contracting officer in which the contracting officer determined that plaintiff owed defendant approximately $11.86 million for deficient or incomplete contract items, see Pl.'s Mot. Ex. B at 39, 42, "is a nullity or is otherwise invalid," First Amended Complaint ¶ 228.

Count X of the amended complaint is new. Count X is denominated "Damages," Amended Complaint ¶¶ 241-43, and asserts entitlement to compensation "for the extra or changed work that [it] had to perform . . . on the Project," id. ¶ 242. Plaintiff claims that its "entitlement is based on the differing site conditions and changes provisions in the contract or due to the Corps' termination for convenience of the work at issue." Id.

Of particular interest to the court is plaintiff's failure to provide a reasonable explanation for the timing of this motion. First, plaintiff offers no explanation for the belated assertion of the new theories of relief set forth in the proposed amended complaint. Instead, plaintiff attempts to seize what it apparently views as an opportunity presented by the vacated trial date to address legal theories that were knowable to plaintiff much earlier in this litigation. Plaintiff's claim that discovery has been reopened ignores the fact that the scope of discovery to be undertaken by the parties in the next few months is limited to three discrete issues. See Order of May 14, 2004 (granting plaintiff's motion to compel production); Order of July 28, 2004 (mooting plaintiff's motion to enforce Order of May 14, 2004). The vacating of the trial date provides no opportunity to expand the complaint. The court vacated the trial date to provide plaintiff's counsel the opportunity to address apparently incomplete aspects of its trial preparation.

At a telephonic status conference to discuss preparation for trial, defendant's counsel stated, without contradiction, that, in response to certain document production requests from plaintiff, the government had long before offered to make records available:

> [The government] indicated that . . . [it] would be prepared to produce the files from the previous contract job at a mutually convenient time and place.
>
> [Then] [b]asically, 15 months went by, and the discovery deadline closed without the [p]laintiff's attorney having raised the issue, picked up the phone and called me, or even sent me a letter saying . . . let's set up a schedule for reviewing those records and getting them from the records center. . . . Now the problem that we have with the request is that there is no explanation for why it was not raised earlier, but it was raised in mid-April, which is shortly before trial in this case.
>
> And frankly we are trying to get ready for the trial, and we have to stop now and go to records centers and produce these documents, and potentially do privilege reviews on these documents, [which,] in our view[,] is unfair to the government.

Transcript of Telephonic Status Conference held on May 13, 2004 (Tr.) at 22-23; see also id. at 25 (court observing that while "it is not the purpose of the [c]ourt to have the [p]laintiff contractor be unable to have the resources to bring his case," there is "some frustration" regarding "the athletic efforts . . . made to bring this to a speedy trial [that] have been at the behest of the [p]laintiff from the very beginning").[1]

---

[1]The court further stated:

> And I must tell you, Mr. Erikson, that Mr. Kosloske, in the view of the Court, has the better of it on where the ball falls on whether or not the Plaintiff has had an opportunity to look at these documents.
>
> That is, the documents -- this is the way that it looks to the Court. About a year-and-a-half ago the documents were requested. Not much less than that the documents were identified in a response.
>
> Then over a year passed. The discovery deadline passed, and only in the course of preparing apparently exhibit lists in preparation for the pre-trial activities did the Plaintiff notice that a hunk of its evidence had not been gathered.
>
> I mean, I think that is what it looks like to the Court, looks to the Court like what happened. Now, I am not -- I am unwilling to have the contractor in this circumstance, I am unwilling to have the contractor disadvantaged by those sets of circumstances where this is a significant claim, and with potentially significant evidence that has not been examined.
>
> I am also unwilling to conduct a trial in absolute chaos. I am prepared to allow the motion to the extent of allowing -- the government has already said it will provide -- it would produce documents relating to the contract. It has already offered that. That offer has not been taken up. Now is the time to take it up.
>
> What that will result in is the Court will vacate the trial date, and we will simultaneously perform other activities in connection with pre-trial, which is that we will review the documents. We will set up at the conclusion of this hearing a schedule to review UDS documents so that we can determine yea or nay whether the discovery so far has been under-inclusive in connection with the electronic review.
>
> And we will also of course review the in camera -- as well as in camera, we will review the attorney-client. And then we will set a date. We recognize that this itself is -- and I think it has been indicated that looking at just the section of documents that are described in Interrogatory 5 could be a pretty substantial undertaking.
>
> We would give a date in the fall, mid-fall probably, by which the parties would advise -- I think the United States has already stated that it is ready for trial.
>
> The Plaintiff would state that it is ready to put forward a final list of exhibits, and then we would allow the Plaintiff to amend pre-trial fillings, put

(continued...)

[1](...continued)
forward a final list of exhibits and witnesses. It would not include new witnesses, but would revise its exhibits to correct these omissions, and then we would schedule a trial from there, including the pre-trial activities.

> That is the best that I can think of to do here in order to -- not to have the Plaintiff suffer from the omission to review a available and potentially important source. That is the result of the thing.
>
> I feel or take some comfortable to the point of the view of the Plaintiff that this is a Contract Disputes Act case, which does afford in the case of money owed an interest remedy, as well as a principal remedy.
>
> So that I feel that if there were money owed to the Plaintiff contractor that the delay would be -- delay is always a problem, but it is less burdensome than it might be in some other cases.
>
> That is my instinct just based on the argument of what to do, and I will hear comment, but I am not sure that I can think of a better thing. Go ahead.

Tr. at 25-28. Before offering plaintiff's counsel a brief recess to confer with his client regarding the court's proposal, the court further stated:

> The Court was dismayed by . . . what the motion to compel practice indicated [-- which] was a somewhat overwhelmed by documents plaintiff.
>
> And, for example, the fact that the documents were filed when they were filed, were filed with many irregularities in the production of exhibit lists, was the subject of concern to the Court.
>
> And by this I mean that the Court would intend to control our own schedule so that material comes before us in an orderly way. This trial has been extended from 2 weeks to 3 weeks in an effort to afford some more space to the presentation of issues.
>
> . . . [A]n orderly presentation . . . did not appear to be what was coming at [the court] based on what [the court] ha[s] been seeing about the presentation here.
>
> The Court, at its pre-trial conference, and I would give you the following guidance, and would enter as an order after pre-trial -- I am going to read you the guidance now, because it may influence whether you want to, as opposed to possibly being ordered to, but want to and see the value of having a more -- for lack of a better phrase, fin[e]ly ground down preparation.
>
> Here is what the Court would order. Any exhibit and/or any portion of an exhibit, the import of which with respect to one or more issues in the case, is not specifically pointed out by a witness at trial may be disregarded by the Court in its determination of the case.
>
> Specifically pointed out means specific mention with reference to an

(continued...)

It is the view of the court that plaintiff's explanation for the delay in asserting its new theories of recovery is unreasonable and prejudices defendant.

Plaintiff's explanation for its belated challenge to the contracting officer's November 26, 2002 final decision is similarly unpersuasive. Plaintiff does not dispute either that it timely received the final decision or that it declined to exercise its appeal rights under the Contract Dispute Act, in particular, to appeal the decision to an agency board of contract appeals, 41 U.S.C. § 606 (2000), or to institute a proceeding in this court upon that claim, 41 U.S.C. § 609(a)(1), (3) (2000). Because plaintiff has failed to establish that "justice . . . requires," RCFC 15(a), the proposed amendment of the complaint, plaintiff's motion is DENIED.[2]

IT IS SO ORDERED.

s/Emily C. Hewitt
EMILY C. HEWITT
Judge

---

[1](...continued)
exhibit number, and to one or more specific page numbers within, or to an otherwise identifiable portion of the exhibit, together with an indication of how the evidence supports or disproves a fact in issue.

Specifically pointed out shall not include mentioned for the first time in post-trial briefing. No exhibits will be admitted after the close of evidence, at the close of trial.

Tr. at 32-33.

[2]In accordance with the rules of this court, however, if the issues that plaintiff seeks to raise by this proposed amendment to the complaint "are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." RCFC 15(b).

> If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits.

Id. The court necessarily reserves any ruling on proposed amendments to conform to the evidence presented at trial until trial.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket No.: 02-306C |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Chambers 712
National Courts Building
717 Madison Place, N. W.
Washington, D.C.

Thursday,
November 4, 2004

The parties met, pursuant to notice of the Court, at 2:00 p.m.

BEFORE: HONORABLE EMILY C. HEWITT
Judge

APPEARANCES:

For the Plaintiff:

BRIAN N. ERIKSON, Esquire
Quilling, Selander, et al.
2001 Bryan Street
Suite 1800, Bryan Tower
Dallas, TX 75201
(214) 871-2111

most helpful to bring the documents with sufficient copies, in three-ring binders with numbered tabs for each set, and try to keep them as orderly as possible. But the individual, I think, it can help you out because you will know, as a result of the practice relating to the findings of fact and conclusions of law in any *in limine* motions that you make, you will know which exhibits are up for grabs.

When I say that an exhibit is up for grabs, I am thinking of any objection that you reasonably could anticipate, which would go not only to authenticity but whether or not there is a witness on the witness list who could conceivably be thought to be able to bring the document in through, unless it is agreed to, a business records' exception for example.

But showing up with a front-end loader with all the documents for the pre-trial is not what we are looking for. We are just looking for the contested exhibits, at that time, and just several copies of each of those. So the binders, I think, are not something that normally would come to the pre-trial.

The Court, I think, has nothing further at this time. Mr. Erikson?

MR. ERIKSON: Your Honor, I do have one thing. Based on all of the documents that the

government has produced in recent months, Renda will probably have to change its expert report some. We will try to get those changes done as quickly as we can and submit them to counsel for the Defendant.

THE COURT: Mr. Erikson, [pause].

Mr. Kosloske?

MR. KOSLOSKE: I am not sure what to make of this, Your Honor.

THE COURT: No, I am not either. Discovery is over. We got a meeting of counsel which is scheduled for 12/17. And when is it anticipated that those revised expert reports would be produced? I mean this is exactly the kind of thing, Mr. Erikson, that got this thing derailed last spring.

This is the one-more thing. You and Mr. Kosloske should have been speaking about this and had some type of a plan for how you would reconcile this situation prior to coming to this meeting.

In any event, we will now address it. When is your proposed time to have an expert report, in accordance with Rule 26, that would be presented to the United States?

MR. ERIKSON: Your Honor, I would be happy to do it myself on limitation, but the government literally produced thousands and thousands and

thousands of documents and it is only fair that the experts have a chance to make some comment on the additional documents that the government produced. But, in any event, I think if you gave us two weeks that would be enough time.

THE COURT: Without objection, Mr. Kosloske?

MR. KOSLOSKE: Your Honor, if Mr. Erikson provides the reports to us within two weeks, I can compare them with our experts to look at them but again. It is difficult for the government to really say anything until we see them and we have no idea of how extensive the changes or revisions might be to the previously expressed opinions.

THE COURT: Yes.

MR. KOSLOSKE: It could be relatively insignificant; they may be major. Until we see the reports, we don't know.

THE COURT: I understand that.

MR. KOSLOSKE: Of course, the other problem is that two weeks from now -- I mean I can share the information with our experts and consultants to look at. But two weeks from now, I will be again personally tied up in getting ready for this two-week trial in December.

THE COURT: Right. [Pause]

I am making notes of dates that would allow us to hold the December 21 pre-trial date.

You can't answer this question now, Mr. Kosloske, but based on the prior expert report practice, would you foresee a rebuttal expert opinion?

MR. KOSLOSKE: Yes, it is conceivable, if we see substantially modified opinions or new opinions in these reports.

THE COURT: Since we still have Mr. Petty with us, I am going to go ahead and put in the order the production, and they would be in accordance with the Rule of Production.

And keep in mind that you need to cross the T's and dot the I's in the expert reports, that those be produced in two weeks, meaning from today, which I believe is 11/18. This is a pretty athletic schedule, that's Thursday in two weeks; and then, in order to get ready for the pre-trial now on the 21st -- wait a second. We have a holiday in there.

And that by Thursday, the 16th, any rebuttal expert report, and I recognize that you are still somewhat tied up at that point; if your trial hasn't abated by then, Mr. Kosloske, we will take Mr. Petty's presence as a possible source of support here. And that by Thursday, the 16th, if any rebuttal expert,

# In the United States Court of Federal Claims

No. 02-306 C

(E-Filed: November 4, 2004)

RENDA MARINE, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

## ORDER

Pursuant to Rule 16(b) of the Rules of the United States Court of Federal Claims (RCFC), the court held a telephonic status conference on the record with the parties on Thursday, November 4, 2004, to set a schedule for pretrial and trial and to address any outstanding issues with the parties. Further to the conference, the court schedules the following:

1. Fact Discovery. All fact discovery has concluded in this matter.

2. Expert Discovery. Plaintiff has requested the opportunity to revise its previously submitted expert reports, in light of material produced by defendant during discovery. Plaintiff also has represented to the court that it intends only to supplement its previously submitted expert reports, and that it does not intend to submit reports by any new expert witnesses.

   In accordance with RCFC 26(a)(2), plaintiff shall submit updated versions of its existing expert reports on or before November 18, 2004.

3. Rebuttal Expert Discovery. In accordance with RCFC 26(a)(2), defendant shall submit updated rebuttal expert reports, if any, on or before December 16, 2004.

4. Meeting of Counsel. The parties shall meet to satisfy the requirements of RCFC Appendix A ¶ 13, including the exchange of exhibit and witness lists, on or before Tuesday, December 21, 2004.

5. Memoranda of Contentions of Fact and Law. In accordance with RCFC Appendix A ¶ 14, plaintiff shall file its Memorandum of Contentions of Fact and Law (Memorandum) on or before Wednesday, January 12, 2005. Defendant shall file its responsive Memorandum on or before Wednesday, February 2, 2005. Each Memorandum shall be accompanied by witness lists and exhibit lists and any motions contemplated by Appendix A ¶¶ 14, 15 and 16. Any objection to a witness or exhibit not made in the Memorandum or in a separate motion filed on the same date shall, if the objection is of a type that could reasonably have been identified at the time of such filing, be deemed waived unless justice shall otherwise require.

6. Pretrial Conference. The pretrial conference will be held Wednesday, February 16, 2005, at the National Courts Building, 717 Madison Place, N.W., Washington, DC 20004. The parties shall bring to the pretrial conference at least three copies of any exhibit as to which an objection remains outstanding. The parties shall prepare and deliver at the pretrial conference a joint preliminary trial schedule or, if they cannot agree, separate trial schedules, using the template attached, a copy of which will be, at the request of a party, provided to the party in electronic form by the court.

7. Trial. Trial will be conducted in two two-week phases. Plaintiff shall present its case during the first phase, which will begin Monday, February 28, 2005, and will conclude Friday, March 11, 2005. Defendant shall present its case during the second phase, which will begin Monday, March 28, 2005, and will conclude Friday, April 8, 2005. Trial will take place Monday through Friday, and will begin at 9:00 a.m. each day. Trial will be held in Houston, Texas; the exact location of trial will be determined by further order of the court.

Due to continuing problems with Washington, DC mail, the parties are directed to fax courtesy copies of any time-sensitive documents to the court and opposing counsel throughout the proceedings. The parties are also urged to contact the court at any time when they believe the involvement of the court will help to secure the just, speedy and inexpensive determination of this action. See RCFC 1.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Judge

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 02-306C |
| v. | ) | |
| | ) | (Judge Hewitt) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S FIRST SET OF INTERROGATORIES
AND SECOND REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to RCFC 26, 33, and 34, defendant propounds the following interrogatories to plaintiff Renda Marine, Inc. (Renda) and requests production of the following documents. In responding to these interrogatories and the document production requests, defendant requests that Renda produce all information and documents in its possession, custody or control, or otherwise available to its employees, agents, consultants, attorneys, and accountants, whether past or present, or documents that are otherwise subject to its custody or control. If Renda cannot answer any or all of the following interrogatories after exercising due diligence to secure the information needed to do so, we request that Renda so state and answer the interrogatories to the extent possible, specifying the basis for Renda's inability to answer the remainder and stating whatever information or knowledge Renda has concerning the unanswered portion. We request that Renda produce all documents that respond, in whole or part, to any portion of the document production requests in their entirety, including all attachments and enclosures.

DEFINITIONS AND INSTRUCTIONS

As used herein, the following terms have the following meanings:

1. "And" and "or" shall be construed both conjunctively and disjunctively, and each

shall include the other whenever such construction will serve to bring within the scope of these requests any items that otherwise would not be brought within their scope.

2. "Communication" means the expression of any statement, question, command, idea, knowledge, information, or other matter, whether by speech, writing, sign, or otherwise.

3. "Computer" includes microcomputers (also known as personal computers), laptop computers, portable computers, notebook computers, palmtop computers, minicomputers, and mainframe computers.

4. "Computer network" means any combination of hardware or software that connects two or more computers and enables the computers to share or transfer digital signals between them. The connection between the computers need not be either physical or direct (e.g., modems may be the form of connection), nor need there be a central file data server or central operating system.

5. "Date" means the exact day, month, and year, if ascertainable, and, if not, the best approximation.

6. "Document" or "documents" means any written, recorded (by any means), or graphic matter, however produced or reproduced, in the possession, custody, or control of Renda or Renda's counsel, or known to Renda or Renda's counsel, whether or not claimed to be privileged or confidential or personal, including, but not limited to, any "document," "tangible thing," or "object," as those terms are used in RCFC 34, and any "writing," "recording," "photograph," "original, or "duplicate," as those terms are defined in Rule 1001 of the Federal Rules of Evidence. "Document" or "documents" includes, but is not limited to: letters; memoranda; reports; agreements; working papers; preliminary, intermediate, and final drafts; communications

(including intra- and inter-office communications, inter-company communications); correspondence; e-mail; reports of telephone or other conversations; electronic data, as defined below; computer runs; view-foils; compilations; summaries of records of personal conversations; diaries; appointment books; desk calendars; financial calculations; forecasts; statistical statements; graphs; charts; plans; drawings; minutes or records of meetings; minutes or records of conferences; expressions or statements of policy; lists of persons attending meetings or conferences; reports of or summaries of interviews; reports of or summaries of investigation opinions or reports of consultants; opinions of counsel; reports of or summaries of either negotiations by Sunshine or preparation of such; circulars; books; instruments; accounts; tapes and all other material of any tangible medium of expression and original or preliminary notes. A true copy will suffice so long as you waive any objection to authenticity and will have the original available for inspection upon request of defendant at the time of the preparation of the pretrial order and at the time of trial. "Document" or "documents" also include copies of documents that are not identical duplicates of the originals and copies of documents the originals of which are not in the possession, custody, or control of Renda.

7. "E-mail" means any computer-based system of electronic mail.

8. "Electronic data" means data of any kind or description, inscribed by computer, mechanical, facsimile, electronic, magnetic, digital, or other means, including, but not limited to, any and all items stored on e-mail; computer memories; hard disks; floppy disks; CD-ROMS, removable media such as Zip, Jaz, Bernoulli Box drives and their equivalent; magnetic tape of all types; microfiche; punched cards; punched tape, or data on or in any other vehicle for digital storage or transmittal; computer programs (whether private or commercial); programming notes

or instructions; output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs, outlines, electronic mail, any and all ASCII and EBCDIC files, and any miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether this electronic data exists in an active file, deleted file, or file fragment. The term "electronic data" also includes the file, folder tabs, containers and labels appended to or associated with any physical storage device for such data.

9. "Identification" or "identify" in reference to:

(a) a natural individual means to state (a) his or her full name, (b) his or her business and residential addresses, (c) his or her business and residential telephone numbers, and, (d) if presently employed by Renda, his or her present position(s) with Renda. (If the individual's current business and residential addresses and telephone numbers are not known, provide his or her last known business and residential addresses and last known business and residential telephone numbers);

(b) a person other than a natural individual means to state, to the extent known, its full name, address, and telephone number (If the person's current business and residential address and telephone number is not known, provide the last known address and telephone number);

(c) a document means to state, to the extent known, the author or originator, the addressee or addressees (if any), the date indicated on the documents as being the date thereof or the date (as exactly as possible) upon which the document was written or executed if no date is shown upon it, a description of the type of document (for example, letter, handwritten notes, etc.), the number of pages, the title (if any), and identification number, the present location and custodian of the original thereof, or, if unknown, the present custodian of any copy thereof and