UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC., PLAINTIFF, | § § | |
| | § | CASE NO. 02-306C |
| V. | § | |
| | § | (JUDGE HEWITT) |
| UNITED STATES, DEFENDANT. | § § | |

**RESPONSE BY PLAINTIFF, RENDA MARINE, INC., TO <u>DEFENDANT'S MOTION TO EXCLUDE TESTIMONY</u>**

*"The boy, having killed both his parents, threw himself on the mercy of the Court, claiming that he was an orphan."*

Responding to the Government's Motion to Exclude Testimony, Plaintiff, Renda Marine, Inc. ("Renda"), states the following:

**<u>Factual Background</u>**

1. The Government wilfully and intentionally destroyed email and other documents.

2. After Renda discovered the spoliation, Renda offered at Renda's cost to retrieve the deleted email and other documents from the Government's computer system. The Government refused.

3. After the Court ordered the Government to allow Renda to retrieve deleted documents, the Government delayed and disrupted the process from July 29, 2003, to December 11, 2003, despite the Court's Order which incorporated the parties' Agreement Regarding Scope of Electronic Discovery which mandated that the retrieval process should be complete in 14 days.

4. Once the retrieval process was complete, the Government was offered CD-Roms with electronic versions of the documents to review for privilege. The Government rejected the electronic versions, and insisted on printed out hard, paper copies of the retrieved documents. The Government was furnished 12 or 13 boxes of documents, Bates stamped with sequential numbers.

5. When the Government finally produced documents, it only produced about one quarter of those retrieved. In the documents that the Government did produce, the Government had hopelessly jumbled the pages, making it exceedingly difficult to track what had been produced and what had not.

6. Following another Order from the Court, the Government produced most of the withheld documents that had been restored from the Government's hard drives, email system, and backup tapes.

7. The Government also, at long last, produced records of previous projects at the Lost Lake Placement Area and other projects in the vicinity of Lost Lake and the Upper Bayou project.

8. Renda had discovered that many of the Corps' project files that Defendant claimed had been destroyed, had actually been electronically scanned prior to destruction. Renda pressed the issue and, in about August 2004, Defendant produced a significant number of boxes of documents and four CD-Roms containing Corps project documents. A true copy of Alex Petty's letter of August 4, 2004, to Renda's attorney is attached as Exhibit A. A small representative sample of these documents is attached as Exhibits B to I.

9. The documents that the Government produced show that the Government had historically and repeatedly excavated soil material along the interior perimeter of the containment levees at Lost Lake. These excavations created "side cast borrow areas" adjacent to the interior toe of the Lost Lake levees. See, e.g., Exhibits D (pages 02200-3 and 02200-4), E and F. The side cast borrow areas were subsequently filled in with extremely soft maintenance dredging material during maintenance dredging operations. See, e.g., Exhibits B and C. The Government did not reveal even the existence of the side cast borrow areas, much less their depths and widths, to prospective bidders for the Upper Bayou Project.

10. It has become clear why the Government has fought so hard to keep this information from Renda.

11. The Government also produced documents which for the first time revealed that the Government was aware that revetment and rip rap were placed in the area of the South Ferry Landing prior to bid opening for the Upper Bayou Project. See, e.g., Exhibits H and I. The Government did not disclose this knowledge to the prospective bidders.

**Response to Particulars**

Turning now to the particulars of the Government's Motion to Exclude Testimony, Renda notes the following.

Two of Renda's experts, Christopher Mathewson and Robert McCullough, issued reports updated to reflect documents the Government produced. When Renda tendered the reports, Renda inquired as to whether Defendant wished to redepose Renda's experts. See Exhibit J, which is a true copy of Renda's attorney's letter of November 18, 2004, to Defendant's counsel. Defendant did not respond. Instead, Defendant filed its Motion to Exclude Testimony.

When Renda received Defendant's Motion to Exclude Testimony, Renda again offered its experts for deposition. See Exhibit K, which is a true copy of Renda's attorney's letter of December 2, 2004, to Defendant's counsel. Defendant again has not responded. If Defendant truly desired information, Defendant would have accepted Renda's attorney's offer, a deposition or two would have been taken and Defendant's Motion would not have been necessary.

Had Defendant actually taken a deposition, Defendant would not have been surprised. Renda's experts either testified about the information in their previous depositions, or they have responded to resolve Defendant's and Defendant's experts' prior criticisms and critiques. In several

instances, Renda's experts have simply agreed not to contest points that Defendant or its experts have made, and have revised their reports to reflect agreement.

**Dr. Christopher Mathewson**

Defendant lists five "new" aspects for Dr. Mathewson's November 2004 report. Most of the five "new" aspects were either the subject of Dr. Mathewson's deposition testimony or respond to Defendant's or Defendant's experts' criticisms or critiques of Dr. Mathewson's previous report. Dr. Mathewson has also evaluated Defendant's additional documents.

For example, Defendant's first concern involves the ten numbered paragraphs of Dr. Mathewson's current report regarding his background and experience. Dr. Mathewson testified at length to his background and experience in his deposition. A true copy of Dr. Mathewson's deposition is attached as Exhibit L. A true copy of Dr. Mathewson's curriculum vitae is attached as Exhibit M. Dr. Mathewson also responded to some of Defendant's challenges to Dr. Mathewson's credentials in Defendant's Motion to Limit Testimony by Plaintiff's Experts. A true copy of Defendant's Motion to Limit Testimony is attached as Exhibit N. This information would be presented in any event by Affidavit if Defendant persisted in its challenge to Dr. Mathewson's experience and credentials.

Defendant's second concern involves Dr. Mathewson's opinions about the Flare Area claim. Dr. Mathewson testified to the same opinions Defendant cites on pages 123 to 125 of Dr. Mathewson's deposition.

Defendant's third concern involves Dr. Mathewson's opinions about the South Ferry Landing claim. Dr. Mathewson's opinion was prompted by documents recently produced by the United States Army Corps of Engineers (see, e.g., Exhibits H and I), and which are contained on the CD-Rom supplied to Defendant's counsel with a copy of Dr. Mathewson's November 2004 report. A

true and correct copy of Renda's attorney's transmittal letter for Dr. Mathewson's current report is attached as Exhibit O. Dr. Mathewson also testified in his deposition about the Corps' having misled prospective contractors, and hiding information. See pages 138-140.

Defendant's fourth concern involves Dr. Mathewson's opinions about Renda's Section 7 Clay claim. Dr. Mathewson testified about his visit to Lost Lake in his deposition. See pages 178-81. Dr. Mathewson's Lost Lake site photographs were furnished to Defendant by letter of March 17, 2004. Dr. Mathewson testified about the Section 7 Clay claim on pages 147 to 156 of his deposition.

Defendant's fifth concern involves Dr. Mathewson's opinions about Renda's Lost Lake Levees claim, and the side cast borrow areas. In his deposition, Dr. Mathewson testified about the side cast borrow areas. See, e.g., pages 164-65. However, the Corps recently produced documents which detailed the nature and extent of the side cast borrow areas to be constructed from the designs for earlier projects involving Lost Lake, information not previously revealed. See, e.g. Exhibits D, E, and F. Dr. Mathewson has revised his opinions as a result. During his deposition, Dr. Mathewson did prepare a sketch detailing his understanding of the side cast borrow areas. A true copy of his sketch is attached as Exhibit P. Dr. Mathewson previously testified that Renda lacked enough dredged materials to complete the project. See page 165 of his deposition.

Dr. Mathewson did not generate any additional work papers. See his letter of December 6, 2004, a true copy of which is attached as Exhibit Q. Dr. Mathewson's December 6, 2004, letter was provided to Defendant's counsel with Renda's counsel's letter of December 13, 2004, a true copy of which is attached as Exhibit R.

Contrary to Defendant's statement, Defendant did produce Corps design manuals in the past few months. In the interests of brevity, Renda is not attaching the manuals. Although

Dr. Mathewson is not planning to revise his report, Renda did update the listing of documents that Dr. Mathewson has reviewed, as Renda is required to do.

**Robert McCullough**

Mr. McCullough's report responds to criticisms and critiques by Defendant and Defendant's experts. The revisions to Mr. McCullough's report often were made to agree with critiques by William Connole of Franvel Corporation, Defendant's claims expert. As an example, in his reports, Mr. Connole pointed out that equipment rates should be recalculated on six month intervals to reflect the varying cost of money. Mr. McCullough has agreed not to contest Mr. Connole's approach. This agreement between the experts has greatly simplified their differences. Instead of being criticized, Mr. McCullough should be applauded. Making the change to six month intervals has, however, required significant revision in Mr. McCullough's supporting spreadsheets.

As another example, Mr. Connole contended that Renda's overhead was understated. Mr. McCullough has agreed, and has revised Renda's overhead to comport with Mr. Connole's comment.

Previously, Mr. McCullough incorporated by reference or implication much of Barry Smith's equipment and cost schedules. For his November 2004 report, Mr. McCullough attached the equipment and cost spread sheets for the reader's convenience.

Defendant complains that Mr. McCullough's total claim ($14,015,884) is higher than the total in his March report ($13,379.369). However, Defendant omits that Mr. McCullough's current claim total is still lower than his original claim total submitted in his January 2004 report ($14,406,646).

Mr. McCullough has prepared a report to respond to Defendant's concerns. A true copy of Mr. McCullough's changes report is attached as Exhibit S. Mr. McCullough's changes report details the changes and why the changes were made.

Much of Defendant's listed concerns were addressed by Mr. McCullough in his deposition. A true copy of Mr. McCullough's deposition is attached as Exhibit T. If Defendant truly had concerns about Mr. McCullough's report, Defendant would have already redeposed Mr. McCullough.

Mr. McCullough has produced his work papers. In addition, Mr. McCullough has produced source material from which his summaries and spread sheets were derived. Renda's attorney furnished the Government with four binders of such documents with his letter of December 13, 2004. A true copy of this December 13, 2004, transmittal letter is attached as Exhibit U. These documents were made available to the DCAA auditors when they audited Renda's claims. Barry Smith met with the auditors to explain the significance of the documents.

**Response to Government Argument**

It is patently unfair for the Defendant to intentionally destroy documents, resist the restoration of the documents, impermissibly withhold restored documents, withhold requested documents, and now feign innocence while complaining that Renda's experts' reports contain new words.

Had Defendant not embarked on document spoliation, and produced documents in a timely manner, this case would have already gone to trial. Instead, Defendant is seeking reward for its discovery abuse, by trying to limit the changes to Renda's experts' reports.

If Defendant were truly in good faith, Defendant would have already retaken one or both of Renda's experts' depositions.

Defendant has had a long history in this case of delay. Defendant has filed motion after motion seeking a delay in the trial or a disruption of the pretrial schedule. Defendant has proffered no reason why it did not retake Renda's experts' depositions. True, many of Mr. McCullough's numbers have changed somewhat. But Defendant never asked for any explanation like Mr. McCullough's changes report (Exhibit S). Defendant is not here complaining that Renda has refused Defendant's request for additional discovery. Defendant simply has not asked Renda for additional discovery.

It makes little sense to prohibit experts from reaching agreement after they announce their initial positions. In those cases where Mr. Connole had valid points, or points not worth contesting, Mr. McCullough has agreed, and has changed his numbers. Defendant has not shown that Mr. Connole does not understand the revisions. If Defendant requests that the two experts meet informally to discuss accountings, Renda would agree.

Defendant's insistence that it now needs massive discovery, and new experts is clearly an attempt to intimidate the Court. Defendant has not pointed out any opinion or revision that would support such drastic relief.

**<u>Conclusion</u>**

Renda has offered its experts for redeposition. Defendant has not accepted, a clear indication that Defendant does not need to redepose Renda's experts. Renda has furnished additional work papers for Mr. McCullough, and indicated that Dr. Mathewson had no more.

Renda is willing to cooperate with Defendant and resolve any discovery requests that Defendant has. Defendant, however, has made no discovery requests to Renda.

The changes in Renda's updated expert reports should not surprise the Government. Most of the revisions were reflected in the experts' deposition testimony. Significant revisions were

prompted by documents that the Government previously withheld from Renda. Significant revisions were made to accommodate points and critiques by Defendant or Defendant's experts.

The Court should deny Defendant's Motion to Exclude Testimony in its entirety.

Respectfully submitted,

QUILLING, SELANDER, CUMMISKEY & LOWNDS, P.C.

BY: s/BRIAN W. ERIKSON
Brian W. Erikson, TX Bar No. 06643800

2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Telefax)
ATTORNEYS FOR RENDA MARINE, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of December, 2004, a true and correct copy of Response by Plaintiff, Renda Marine, Inc. to Defendant's Motion to Exclude Testimony, was served by electronic means through the CM/ECF system of the Court of Federal Claims to counsel for Defendant, John E. Kosloske.

s/Brian W. Erikson
Brian W. Erikson