No. 02-306C
(Judge Hewitt)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

RENDA MARINE, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY OR, IN THE ALTERNATIVE, TO VACATE THE COURT'S NOVEMBER 14, 2004 SCHEDULING ORDER PENDING COMPLETION OF DISCOVERY RELATING TO PLAINTIFF'S EXPERTS' REVISED REPORTS

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-0282
(fax) (202) 514-8624

Attorneys for Defendant

OF COUNSEL:

MR. P. ALEX PETTY
Assistant District Counsel
Office of Counsel
Galveston District
U.S. Army Corps of Engineers
Galveston, TX

DECEMBER 21, 2004

## TABLE OF CONTENTS

Page

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY OR, IN THE ALTERNATIVE, TO VACATE THE COURT'S NOVEMBER 14, 2004 SCHEDULING ORDER PENDING COMPLETION OF DISCOVERY RELATING TO PLAINTIFF'S EXPERTS' REVISED REPORTS . . . . . 1

PRELIMINARY STATEMENT . . . . . 1

ARGUMENT . . . . . 3

I. The Content Of The November 2004 Mathewson Report . . . . . 3

II. The Content Of The November 2004 McCullough Report . . . . . 8

III. If Renda's Experts Mathewson And McCullough Are Allowed To Testify Regarding The Opinions And Other Matters Contained In Their November 2004 Reports, The Court's November 4, 2004 Scheduling Order Should Be Vacated To Allow For Completion Of Discovery Addressed To The Revised Reports . . . . . 10

CONCLUSION . . . . . 13

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Akeva L.L.C. v. Mizuno Corp.*, 212 F.Supp.2d 306 (M.D.N.C. 2002) .............................. 2

*Keener v. United States*, 181 F.R.D. 639 (D. Mont. 1998) ............................................... 2

*Lamarca v. United States*, 31 F. Supp. 2d 110 (E.D.N.Y. 1998) ..................................... 4

## DOCKETED CASES

*Sunshine Construction & Engineering, Inc. v. United States*,
No. 02-250C (Fed. Cl.) ............................................................................... 12

## FEDERAL STATUTES

Freedom of Information Act (FOIA), 5 U.S.C. § 552 ...................................................... 4

## MISCELLANEOUS

Rules of the Court of Federal Claims:

RCFC 26(a)(2)(B) ............................................................................................ 3

RCFC 26(a)(2)(C) ............................................................................................ 7

RCFC 26(e)(1) ................................................................................................ 2

## INDEX TO DEFENDANT'S SUPPLEMENTAL APPENDIX

**Document** **Page**

Letter dated June 14, 2004, from plaintiff's counsel to Alex Petty, Esq., Assistant District Counsel, Office of Counsel, Galveston District, U.S. Army Corps of Engineers, re: FOIA Request ........................................... 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 02-306C |
| v. | ) | |
| | ) | (Judge Hewitt) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY OR, IN THE ALTERNATIVE, TO VACATE THE COURT'S NOVEMBER 14, 2004 SCHEDULING ORDER PENDING COMPLETION OF DISCOVERY RELATING TO PLAINTIFF'S EXPERTS' REVISED REPORTS

PRELIMINARY STATEMENT

Pending before the Court is defendant's application to exclude from the trial of this case expert testimony by two of the designated trial experts of plaintiff, Renda Marine, Inc. (Renda), Christopher Mathewson, Ph.D., P.E., and Robert B. McCullough, P.E., regarding opinions and other matter contained in the November 2004 reports of those experts that are not based upon document discovery obtained by Renda pursuant to the Court's May 14, 2004 Order.[1/] Renda appears to acknowledge, for the most part, that the modifications and additions to the scope of the expert testimony of Messrs. Mathewson and McCullough disclosed in their November 2004

---

[1] In this reply, "Pl. Opp. ____" refers to the referenced page(s) of the "Response by Plaintiff, Renda Marine, Inc., to Defendant's Motion to Exclude Testimony" filed on December 14, 2004; "Pl. App. ____" refers to the referenced page(s) of the appendix to the "Response by Plaintiff, Renda Marine, Inc., to Defendant's Motion to Exclude Testimony" filed on December 14, 2004; "Def. App. ____" refers to the appendix to "Defendant's Motion to Exclude Testimony Regarding Opinions and Other Matter Contained in November 2004 Revisions of Reports of Plaintiff's Designated Trial Experts, or, in the Alternative, to Vacate the Court's November 4, 2004 Scheduling Order Pending Completion of Discovery Relating to Plaintiff's Experts' Revised Reports, Including Document Production and Depositions, and the Opportunity to Identify Additional Experts" dated December 2, 2004; and "Def. Supp. App. ____" refers to the referenced page(s) of the appendix to this reply.

reports are not based upon anything gleaned from the document discovery obtained by Renda this past summer pursuant to the Court's May 14, 2004 Order. Renda contends, rather, that the expert reports previously issued by Messrs. Mathewson and McCullough have been "updated" to reflect corrections of mistakes in their analyses allegedly pointed out by Government experts or to incorporate opinions about which these experts testified during the Government's depositions of those experts in April 2004.

As discussed below, we do not agree that the November 2004 reports issued by Messrs. Mathewson and McCullough only reflect corrections of mistakes in their earlier analyses pointed out by Government experts or incorporate opinions about which these experts testified during the Government's depositions of those experts in April 2004. We disagree. But even if that were so, the revised reports are untimely.[2]

The Government took the depositions of Messrs. Mathewson and McCullough in mid-April 2004. The Government provided Renda with the last of its rebuttal expert reports in mid-May 2004. Renda offers no excuse for waiting *six months* to issue the revised reports to make the desired corrections or to incorporate additional matters testified to by Messrs. Mathewson and McCullough at their depositions. If Renda had promptly produced such revised reports, the Government might have completed during June-October 2004 the discovery relating to the mod-

---

[2] RCFC 26(e)(1) provides that "[a] party is under a duty to supplement *at appropriate intervals* its disclosures under [Rule 26(a)] if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." (Emphasis added). "Supplementation under the Rules means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." Keener v. United States, 181 F.R.D. 639, 640 (D. Mont. 1998). It "does not cover failures of omission because the expert did an inadequate or incomplete preparation." Akeva L.L.C. v. Mizuno Corp., 212 F.Supp.2d 306, 310 (M.D. N.C. 2002).

ifications of the opinions and analyses of Messrs. Mathewson and McCullough that Renda's dilatory disclosures have put the Government in the position of not conducting until the present.

ARGUMENT

I. The Content Of The November 2004 Mathewson Report

In the Government's pending motion to exclude testimony, we identified the *new* aspects of the November 2004 Mathewson report that are not based upon anything that he might have learned from documents produced by the Government this past summer pursuant to the Court's May 14, 2004 Order. These new matters and Renda's response are addressed below.

Flare Area Claim

Regarding Renda's Flare Area claim, the following statement appears at the third page of the November 2004 Mathewson report: "It is my opinion that Renda Marine encountered clays in the Flare Area that were stiffer than the clays and other materials indicated in the applicable soil borings. for the Flare Area. Renda relied on the appropriate soil borings. Soil borings taken elsewhere would not be as accurate as the ones actually taken at the Flare Area." Def. App. 53.

Renda's Response: Renda does not argue that this new material is based upon anything produced by the Government pursuant to the Court's May 14, 2004 Order. Renda contends that Dr. Mathewson testified to the same opinions at his deposition in this case in mid-April 2004, citing pages 123-25 of the Mathewson deposition transcript. Pl. Opp. 4. The purpose of a deposition of an expert, however, is to provide the opposing party with an opportunity to probe the expert's opinions and analysis, as set forth in the expert's Rule 26(a)(2)(B) disclosure, not to give the expert a further opportunity to disclose new matter or develop new opinions "on the fly," so

to speak, at the deposition. Deposition testimony does not cure deficiencies in a Rule 26(a)(2)(B) notice. Lamarca v. United States, 31 F.Supp.2d 110, 123 (E.D.N.Y. 1998).

The deposition transcript pages cited by Renda, moreover, do not contain any testimony by Dr. Mathewson that (1) Renda relied upon appropriate soil borings when preparing its bid estimate for the Upper Bayou Project or (2) that soil borings elsewhere would not be as accurate as the ones actually taken at the Flare Area.

South Ferry Landing Claim

Regarding Renda's South Ferry Landing claim, the following statement appears at the third page of the November 2004 Mathewson report: "It appears, from Corps data and permit applications that the Corps of Engineers had information to indicate that revetments and riprap were placed in the area of the South Ferry Landing. However, this information was not contained in the contract documents. The Corps should have made such information known to the prospective bidders." Def. App. 53.

Renda's Response: Renda contends that this new material was prompted by "documents recently produced by" the Government. Pl. Opp. 4. What Renda neglects to make clear, however, is that the referenced documents are not the fruits of the limited discovery permitted by the Court's May 14, 2004 Order, but, rather, documents that Renda obtained from the Army Corps of Engineers in response to a June 2004 request by Renda's counsel under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, which does not constitute information acquired by Renda as part of the discovery in this litigation. See Def. Supp. App. 1-3.[3] Moreover, contrary to its

---

[3] Renda attempted (unsuccessfully) to obtain the information covered by its FOIA request in this litigation. See Court's July 26, 2004 Order, Def. App. 11-15, granting Government's motion for a protective order with respect to, among other discovery requests, Renda's third and fourth

claim, Dr. Mathewson did not testify at his deposition about the revetments or riprap in the area of the South Ferry Landing referred to in the regulatory permit documents that Renda obtained through the FOIA request.

Section 7 Clay Claim

Regarding Renda's Section 7 Clay claim, the following statement appears at the bottom of the third and top of the fourth pages of the November 2004 Mathewson report: "I examined some of the Section 7 clay during my visit to the Lost Lake site and determined from field tests that it was much harder and more competent than the clays and other materials indicated in the contract documents for the Section 7 area." Def. App. 53-54.

Renda's Response: Renda contends that Dr. Mathewson testified about his visit to Lost Lake at his deposition and about the Section 7 clay claim at his deposition, citing pages 147-56 and 178-81 of the Mathewson deposition transcript. Pl. Opp. 5. The cited deposition transcript pages, however, do not contain any testimony by Dr. Mathewson regarding any "field tests" of Section 7 clay or determinations made by Dr. Mathewson from any such tests about the hardness of the Section 7 clay compared with "other materials indicated in the contract documents for the Section 7 area." In point of fact, Dr. Mathewson testified that he had not performed tests with respect to the Section 7 clay claim:

> Q. Have you done any testing to verify Renda's claim with respect to Section 7 clay?
>
> A. No.

Tr. 149(9-11), Pl. App. 137. In his deposition testimony concerning his visit to the Lost Lake

---

sets of document production requests.

Placement Area, Dr. Mathewson was not asked, and did not volunteer, that he had performed any tests during the Lost Lake site visit.

Lost Lake Levees Claim

Regarding Renda's Lost Lake Levees claim, the following statements appear at the fourth, fifth, sixth, and seventh pages of the revised report:

(a) The statement on the fourth page that Dr. Mathewson has "identified two related unfavorable site conditions," which are "the very low strength and slope failures of the constructed levees" and "the lack of available and suitable construction material for the completion of the project." Def. App. 54.

(b) The opinions and other matter in the paragraph at the bottom of the fourth page and top of the fifth page and the first three full paragraphs on the fifth page, including the observation about the design stability circular failure analysis performed by HVJ Associates for the Corps of Engineers and the opinion that "[a] more appropriate analysis model would have used a sliding block solution in which the soft new work materials formed the base of a sliding block rather than a circular failure that progressed below these weak materials." Def. App. 54-55.

(c) The discussion under Section B beginning in the middle of the fifth page, including the statement on the fifth page that "Renda Marine did not have enough clay and other suitable materials available from contractually authorized dredging areas to construct the levees at Lost Lake" and the statement on the sixth page that "[b]ased on the amount of settlement it appears clear that more than 3 or 4 feet were removed from the side cast borrow areas." Def. App. 55.

(d) The following statement on the sixth page: "One method of constructing the hydraulic levees that would ensure that the levees could reach and maintain a 30-foot elevation involves placing the hydraulic fill of clay and other suitable materials in lifts and allowing time for consolidation and dewatering of the materials before applying additional lifts. This process, however, would require more time than that allowed under the contract documents." Def. App. 56.

(e) The four concluding opinions on the seventh page that: (i) "there was insufficient volume of suitable material available to Renda Marine to construct the Lost Lake levees as designed;" (ii) "the levees could not be constructed to reach and remain at the required 30-foot elevation under the circumstances;" (iii) "the side-cast borrow areas were larger than reported and consumed excessive amounts of suitable levee construction material;" and (iv) "there was insufficient time allowed by the contract

to construct the levees in lifts to reduce the significance of slope failures." Def. App. 57.

Renda's Response: Renda contends that Dr. Mathewson's revised opinions concern side cast borrow areas and that they were prompted by documents produced by the Government pursuant to the Court's May 14, 2004 Order. Pl. Opp. 5. We disagree. As noted above, in addition to side cast borrow areas, Dr. Mathewson's November 2004 report discloses several opinions not previously disclosed in Dr. Mathewson's previous report or testified about by Dr. Mathewson at his deposition: (a) that "there was insufficient volume of suitable material available to [Renda] to construct the Lost Lake levees as designed;"[4/] (b) that the stability analysis for the design of the Lost Lake levees should have used a "a sliding block solution" instead of the "stability circular failure analysis" performed by the designers; (c) that "[o]ne method of constructing the hydraulic levees that would ensure that the levees could reach and maintain a 30-foot elevation involves placing the hydraulic fill of clay and other suitable materials in lifts and allowing time for consolidation and dewatering of the materials before applying additional lifts" but that "[t]his process . . . would require more time than that allowed under the contract documents;" and (d) that "there was insufficient time allowed by the contract to construct the levees in lifts to reduce the significance of slope failures." See Def. App. 54-57.[5/]

---

[4] According to Renda, Dr. Mathewson testified at his deposition that "Renda lacked enough dredged materials to complete construction of the new Lost Lake levees," citing page 165 of the Mathewson deposition transcript. Pl. Opp. 5. The cited portion of the deposition transcript does not contain such a statement. See Pl. App. 141.

[5] These are the issues with respect to which, if Dr. Mathewson were permitted to testify about them, the Government likely would identify additional expert(s). Renda asserts, curiously, that our statement that we would need additional expert(s) is "an attempt to intimidate the Court." Pl. Opp. 8. We disagree. The Government has a perfect right under RCFC 26(a)(2)(C) to identify as a rebuttal expert an individual not previously disclosed by the Government as a trial expert.

Corps of Engineers Manuals

In our pending motion, we noted that, on November 23, 2004, five days after Renda produced Dr. Mathewson's revised report, Renda's counsel "advised" defendant's counsel that Renda has provided to Dr. Mathewson, "for his review," seven enumerated Corps of Engineers manuals, implying that yet another disclosure of expert testimony by Dr. Mathewson may be forthcoming, notwithstanding the Court's November 4, 2004 Order. See Def. App. 58. We further stated that *none* of those manuals was part of the materials produced by the Government this past summer and that *all* of these Corps of Engineers manuals existed and were available to Renda as of January 26, 2004, when Dr. Mathewson's initial report was issued.

In response, Renda disputes the Government's representation and asserts that the Government "did produce Corps design manuals in the past few months." Pl. Opp. 5. Again, what Renda does not make clear is that the Corps manuals are not the fruits of the limited discovery permitted by the Court's May 14, 2004 Order, but, rather, documents that Renda obtained from the Corps of Engineers in response to the June 2004 FOIA request by Renda's counsel, which does not constitute information acquired by Renda as part of the discovery in this litigation.

II. The Content Of The November 2004 McCullough Report

In the Government's pending motion to exclude testimony, we identified the *new* aspects of the November 2004 McCullough report that are not based upon anything that he might have learned from documents produced by the Government this past summer pursuant to the Court's May 14, 2004 Order. Among other things, the November 2004 McCullough report contains a revised estimate of Renda's damages, based in large part upon an overhaul of the rates for more than 100 pieces of marine and land-based equipment included in Renda's claims.

In its response to the Government's pending motion, Renda states that "[t]he revisions to Mr. McCullough's [March 2004] report often were made to agree with critiques by William Connole of Franvel Corporation, [d]efendant's claims expert." Pl. Opp. 6. According to Mr. McCullough, "[e]quipment rates were modified due to issues raised within the Franvel expert report dated January 30, 2004." See "Response to Defendant's Motion to Exclude Testimony," at page 2, Pl. App. 300. If Mr. McCullough revised his equipment rates in response to issues raised in Mr. Connole's January 2004 report, those revisions could (and should) have been set forth in Mr. McCullough's March 2004 report.

Renda further contends that, "[a]s an example, in his reports, [the Government's expert] Mr. Connole pointed out that equipment rates should be recalculated on sixth month intervals to reflect the varying cost of money." Pl. Opp. 6. According to Renda, "Mr. McCullough has agreed not to contest Mr. Connole's approach" and that "[t]his agreement between the experts has greatly simplified their differences." Id. The Government expert, Mr. Connole, however, does *not* state in any of his reports that equipment rates should be recalculated at six-month intervals and, in fact, Mr. Connole did not calculate equipment rates at six-month intervals. Even Mr. McCullough, in the response that he prepared to the Government's motion to exclude, does not suggest that he recalculated equipment rates at six-month intervals to match what Mr. Connole had done. Mr. McCullough merely states that "[e]quipment rates are now calculated at six-month intervals to more accurately account for variations in the cost of money and the cost of fuel." See "Response to Defendant's Motion to Exclude Testimony," at page 2, Pl. App. 300.

Renda argues that "much" of the Government's "listed concerns were addressed by Mr. McCullough in his deposition," referring the Court to the entire deposition transcript without

citing specific deposition testimony. Pl. Opp. 7. Again, we disagree.

Take, for example, the opinion disclosed in the November 2004 McCullough report that Renda "was released from the project prior to completing all the work in its contract," that "[t]his amounts to a termination for convenience by [the Government]," and that, "[a]s such, [Renda] is entitled to recover the reasonable and necessary costs expended in prosecuting the work prior to termination." Def. App. 62. The transcript of Mr. McCullough's deposition contains no such legal opinion.[6] The notion that Renda's contract for the Upper Bayou Project was terminated for the convenience of the Government is a claim that Renda first attempted to introduce in this litigation through the amended complaint that, in July 2004, Renda *unsuccessfully* sought leave of Court to file. See July 30, 2004 Order, at 3-4, Def. App. 18-19.

## III. If Renda's Experts Mathewson And McCullough Are Allowed To Testify Regarding The Opinions And Other Matters Contained In Their November 2004 Reports, The Court's November 4, 2004 Scheduling Order Should Be Vacated To Allow For Completion Of Discovery Addressed To The Revised Reports.

If Messrs. Mathewson and McCullough are permitted to testify regarding the opinions and other matter contained in their revised November 2004 reports, the Court's November 4, 2004 scheduling order should be vacated, including the dates for pretrial submissions and trial dates, so as to afford the Government a full and fair opportunity for discovery addressed to the new matters contained in the revised reports, including the production by Renda of work papers and other materials relating to the revised reports, followed by depositions of Messrs. Mathewson

[6] The only portion of the deposition transcript cited by Mr. McCullough makes no reference to a termination for the convenience of the Government. In the cited testimony, Mr. McCullough merely interpreted some language from his March 2004 report as stating that "Renda is entitled to compensation for these issues." See "Response to Defendant's Motion to Exclude Testimony," at page 5, Pl. App. 303.

and McCullough, followed by the opportunity (a) to identify additional rebuttal expert(s) and make the required Rule 26(a)(2) disclosures for any such expert(s) and (b) to produce rebuttal report(s) from existing Government experts.

Renda questions the Government's *bona fides* counsel regarding the need to vacate the pretrial and trial schedule, in the event that the Court were to deny the Government's motion to exclude the modified expert testimony, to allow for the completion of discovery relating to the content of the revised reports of Messrs. Mathewson and McCullough, including document discovery and depositions, and the identification of any new experts that the Government may deem necessary to respond to the new opinions or other matter contained in the revised reports and the production of any rebuttal reports by any of our presently-retained experts *after* the completion of such document discovery and depositions.

Renda asserts that, if the Government "were truly in good faith," it "would have already retaken one or both of Renda's experts' depositions." Pl. Opp. 7. According to Renda, when it "tendered" the November 2004 reports of its experts, Renda's counsel asked inquired whether the Government desired to "redepose" Renda's experts but that the Government did not respond. Pl. Opp. 3. Renda argues that, "[i]f [d]efendant truly desired information, [d]efendant would have accepted Renda's attorney's offer, a deposition or two would have been taken and [d]efendant's motion would not have been necessary." Id.

There are several problems with Renda's contentions regarding discovery by the Government of its experts. *First*, if the Court were to grant the Government's motion to exclude expert testimony by Messrs. Mathewson and McCullough, it would be a waste of time to conduct discovery of those experts relative to the content of their November 2004 reports, including deposi-

tions.

*Second*, the Court's November 4, 2004 Order does not provide for depositions or other discovery of Renda's experts. In order to conduct such discovery, the Government would have to obtain the Court's permission to reopen discovery for that purpose (notwithstanding Renda's consent to the discovery), which, in our pending motion, we have requested in the alternative should the Court deny our motion to exclude testimony by Messrs. Mathewson and McCullough regarding the content of their November 2004 reports.

*Third*, in order to prepare for depositions of Messrs. Mathewson and McCullough, the Government needs, and is entitled to, discovery of and a fair opportunity to review their work papers and other materials considered or relied upon by them in formulating the opinions and analysis contained in the November 2004 reports. Renda, however, neglected to provide the Government with any work papers associated with either of the November 2004 reports until December 13, 2004, nearly a month after the revised expert reports were produced and then only after the Government had noted Renda's omission to produce any such materials in our motion to exclude expert testimony.

*Last*, but not least, as Renda's counsel well knew when he asked whether the Government wished to "redepose" Messrs. Mathewson and McCullough, defendant's counsel was not available to take such depositions by virtue of his preparation for a trial and trial in another case, Sunshine Construction & Engineering, Inc. v. United States, No. 02-250C (Fed. Cl.). In that regard, during the November 4, 2004 telephonic status conference that resulted in the Court's November 4, 2004 scheduling order, defendant's counsel stated:

Mr. Kosloske: Your Honor, just in terms of schedules, for my schedule and I did discuss this with Mr. Erikson, I have a two-week trial scheduled in December.

* * * * *

Mr. Kosloske: Again, my situation is I have a two-week trial in December. Particularly from today through December 17th, I will be pretty much totally preoccupied with getting ready for that case and trying it. I discussed with Mr. Erikson possible dates for [the Renda Marine] trial. My suggestion was, in light of my schedule, no sooner for trial in the Renda case than late February, or the beginning of March at the earliest.

Tr. 8(6-9); 9(12-21).

The trial in Sunshine Construction was held during December 6-15, 2004, in Tampa, Florida. Defendant's counsel spent nearly all of the period from November 4, 2004, to December 6, 2004, preparing for that trial, including a trip to Florida the week of November 15-19, 2004, to prepare witnesses located in Florida. The pretrial conference in Sunshine Construction was held in Washington, D.C. on November 22, and defendant's counsel met with an expert witness to prepare him for trial on November 23 and 24 (the first three days of the week in which the Thanksgiving holiday fell). The following week, November 29 to December 3, 2004, also was devoted to pretrial preparations for the Sunshine Construction trial, except for the time that defendant's counsel was required to devote to the preparation of the pending motion in this case. The offer by Renda's counsel to make Messrs. Mathewson and McCullough available for depositions knowing that defendant's counsel was unable to take their depositions was a hollow gesture.

## CONCLUSION

For the foregoing reasons and the reasons set forth in our motion to exclude expert testimony or, in the alternative, to vacate the Court's November 14, 2004 scheduling order, defend-

ant's motion should be granted and the Court should exclude from the trial of this case expert testimony regarding opinions and other matter contained in the November 2004 revised reports of plaintiff's trial experts Christopher Mathewson, Ph.D., P.E., and Robert B. McCullough, P.E., that are not based upon document discovery obtained by plaintiff pursuant to the Court's May 14, 2004 Order, thereby limiting the scope of the testimony of Dr. Mathewson to opinions and other matter contained in his January 26, 2004 report and in the one paragraph at the fourth page of Dr. Mathewson's November 2004 report, discussed in defendant's motion to exclude expert testimony, that is addressed to documents produced by defendant after May 14, 2004, and restricting the scope of the testimony of Mr. McCullough to the opinions and other matter contained in his March 3, 2004 report (except to the extent that the opinions and matters addressed in the earlier reports of those experts should be excluded for other reasons). Alternatively, defendant requests that the Court vacate its November 4, 2004 scheduling order to allow for the completion of discovery relating to the content of the revised reports of Dr. Mathewson and Mr. McCullough, including depositions and the identification of any new experts that defendant may deem necessary to respond to the new opinions or other matter contained in the revised reports and the production of any rebuttal reports by any of our presently-retained experts *after* the completion of depositions.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/John E. Kosloske
JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-0282
(fax) (202) 514-8624

Attorneys for Defendant

DECEMBER 21, 2004

# DEFENDANT'S SUPPLEMENTAL APPENDIX

QSCL
QUILLING · SELANDER · CUMMISKEY · LOWNDS

BRIAN W. ERIKSON
Direct: 214.880.1844

Federal ID #75-2459334
E-mail: berikson@qsclpc.com

June 14, 2004

Mr. Alex Petty
Assistant District Counsel
Office of Counsel
Galveston District
U.S. Army Corps of Engineers
P. O. Box 1229
Galveston, Texas 77553-1229

*Via Facsimile & Certified Mail, Return Receipt Requested*

Re: Case No. 02-306C; *Renda Marine, Inc. v. United States Army Corps of Engineers*; United States Court of Federal Claims; DACW64-99-C-0001, Dredging Upper Bayou

Dear Mr. Petty:

Under the Freedom of Information Act, please allow me access to inspect and/or copy the documents identified below. This request includes, but is not limited to, any such documents connected to the "Upper Bayou Project" and associated dredging projects for Houston-Galveston Navigation Channels, Texas, Dredging Upper Bayou (45-Foot Project) in Harris and Galveston Counties, and is referred to hereafter as the "Project." The documents are as follows:

1. Any and all documents pertaining to or reflecting any soil or core borings undertaken in the Flare Area of the Project in May 2000.

2. Any and all documents pertaining to or reflecting any soil or core borings undertaken at any time on the Project after September 2001, including, without limitations, any borings undertaken in 2002 or 2003.

3. Any and all documents pertaining to or reflecting Corps claims handling or claims administration manual or policy or guidelines in existence at any time during the Project.

4. Any and all documents pertaining to or reflecting any soil or core borings taken for the Goat Island contract awarded to Great Lakes Dredge & Dock ("Great Lakes"), which concern any area of the Project.

5. Any and all documents pertaining to or reflecting the bid solicitation materials for the Goat Island contract subsequently awarded to Great Lakes.

6. Any and all documents pertaining to or reflecting records of use of the Lost Lake Placement Area at any time between January 1, 1990, and the present, including without limitation, any depositing of dredging maintenance material.

7. Any and all documents pertaining to or reflecting any work on increasing or maintaining the height of the levees at the Lost Lake Placement Area at any time between January 1, 1990, and the present.

8. Any and all documents pertaining to or reflecting any creation of borrow areas or removal of soil material from borrow areas near or adjacent to the existing levees at the Lost Lake Placement Area at any time between January 1, 1990, and the present.

9. Any and all documents pertaining to or reflecting any surveys or cross sections of the levees or borrow areas at the Lost Lake Placement Area performed at any time between January 1, 1990, and the present.

10. Any and all documents pertaining to or reflecting any manuals, policies, or guidelines for the design of levees relevant to the levees at the Lost Lake Placement Area in existence at any time during the Project.

11. Any and all documents pertaining to or reflecting any revisions or additions to manuals, policies, or guidelines for the design of levees relevant to the levees at the Lost Lake Placement Area since July 15, 1998.

12. Any and all documents pertaining to or reflecting any calculations of liquidated damages for the Project.

13. Any and all documents pertaining to or reflecting any determination of the contract amount for the liquidated damages listed in the contract for the Project.

14. The 1993 soil cores and samples referenced in paragraph 1.11 on page 02482-4 of the Project specification book.

15. Any and all documents pertaining to or reflecting any permits for depositing of dredged material in the Lost Lake Placement Area at any time between January 1, 1990, and the present.

16. Any and all documents pertaining to or reflecting any investigation in response to any of Renda's notices of differing site conditions at any time prior to Renda's filing of this suit.

17. Any and all documents pertaining to or reflecting the Corps Engineering Pamphlet EP 1110-1-8, "Construction Ownership and Operating Expense Schedule," whichever editions or versions were applicable to the Project.

18. Any and all documents, presentations, book chapters, abstracts, or speeches authored or partially authored by Jack Fowler, Ph.D., P.E., pertaining to any of the publications and/or presentations identified on his resume, and concerning dredging, levees, or related issues involved in this suit.

19. Any and all expert reports, affidavits, deposition transcripts, or trial testimony for any cases in which Jack Fowler, Ph.D., P.E., may have served as an expert witness.

20. Any and all documents, presentations, book chapters, abstracts, or speeches authored or partially authored by Robert W. Lofgren, pertaining to dredging or levee construction.

21. Any and all expert reports, affidavits, deposition transcripts, or trial testimony for any cases in which Robert W. Lofgren may have served as an expert witness.

22. Any and all documents, presentations, book chapters, abstracts, or speeches authored or partially authored by William Frank Connole.

23. Any and all expert reports, affidavits, deposition transcripts, or trial testimony for any cases in which William Frank Connole may have served as an expert witness, including, but not limited to, those cases identified on his resume.

This office guarantees the reasonable cost of copying such documents. Please advise when they are ready.

Sincerely yours,

Brian W. Erikson

BWE/cam
S:\Construction\Renda Marine\Upper Bayou 565.05\Petty 003.wpd

cc: Oscar Renda (via fax)
John Kosloske (via fax)