Transcript of Telephonic Status Conference held on May 13, 2004 (Tr.) at 22-23; see also id. at 25 (court observing that while "it is not the purpose of the [c]ourt to have the [p]laintiff contractor be unable to have the resources to bring his case," there is "some frustration" regarding "the athletic efforts . . . made to bring this to a speedy trial [that] have been at the behest of the [p]laintiff from the very beginning").[1]

---

[1]The court further stated:

> And I must tell you, Mr. Erikson, that Mr. Kosloske, in the view of the Court, has the better of it on where the ball falls on whether or not the Plaintiff has had an opportunity to look at these documents.
>
> That is, the documents -- this is the way that it looks to the Court. About a year-and-a-half ago the documents were requested. Not much less than that the documents were identified in a response.
>
> Then over a year passed. The discovery deadline passed, and only in the course of preparing apparently exhibit lists in preparation for the pre-trial activities did the Plaintiff notice that a hunk of its evidence had not been gathered.
>
> I mean, I think that is what it looks like to the Court, looks to the Court like what happened. Now, I am not -- I am unwilling to have the contractor in this circumstance, I am unwilling to have the contractor disadvantaged by those sets of circumstances where this is a significant claim, and with potentially significant evidence that has not been examined.
>
> I am also unwilling to conduct a trial in absolute chaos. I am prepared to allow the motion to the extent of allowing -- the government has already said it will provide -- it would produce documents relating to the contract. It has already offered that. That offer has not been taken up. Now is the time to take it up.
>
> What that will result in is the Court will vacate the trial date, and we will simultaneously perform other activities in connection with pre-trial, which is that we will review the documents. We will set up at the conclusion of this hearing a schedule to review UDS documents so that we can determine yea or nay whether the discovery so far has been under-inclusive in connection with the electronic review.
>
> And we will also of course review the in camera -- as well as in camera, we will review the attorney-client. And then we will set a date. We recognize that this itself is -- and I think it has been indicated that looking at just the section of documents that are described in Interrogatory 5 could be a pretty substantial undertaking.
>
> We would give a date in the fall, mid-fall probably, by which the parties would advise -- I think the United States has already stated that it is ready for trial.
>
> The Plaintiff would state that it is ready to put forward a final list of exhibits, and then we would allow the Plaintiff to amend pre-trial fillings, put

(continued...)

[1](...continued)
forward a final list of exhibits and witnesses. It would not include new witnesses, but would revise its exhibits to correct these omissions, and then we would schedule a trial from there, including the pre-trial activities.

That is the best that I can think of to do here in order to -- not to have the Plaintiff suffer from the omission to review a available and potentially important source. That is the result of the thing.

I feel or take some comfortable to the point of the view of the Plaintiff that this is a Contract Disputes Act case, which does afford in the case of money owed an interest remedy, as well as a principal remedy.

So that I feel that if there were money owed to the Plaintiff contractor that the delay would be -- delay is always a problem, but it is less burdensome than it might be in some other cases.

That is my instinct just based on the argument of what to do, and I will hear comment, but I am not sure that I can think of a better thing. Go ahead.

Tr. at 25-28. Before offering plaintiff's counsel a brief recess to confer with his client regarding the court's proposal, the court further stated:

The Court was dismayed by . . . what the motion to compel practice indicated [-- which] was a somewhat overwhelmed by documents plaintiff.

And, for example, the fact that the documents were filed when they were filed, were filed with many irregularities in the production of exhibit lists, was the subject of concern to the Court.

And by this I mean that the Court would intend to control our own schedule so that material comes before us in an orderly way. This trial has been extended from 2 weeks to 3 weeks in an effort to afford some more space to the presentation of issues.

. . . [A]n orderly presentation . . . did not appear to be what was coming at [the court] based on what [the court] ha[s] been seeing about the presentation here.

The Court, at its pre-trial conference, and I would give you the following guidance, and would enter as an order after pre-trial -- I am going to read you the guidance now, because it may influence whether you want to, as opposed to possibly being ordered to, but want to and see the value of having a more -- for lack of a better phrase, fin[e]ly ground down preparation.

Here is what the Court would order. Any exhibit and/or any portion of an exhibit, the import of which with respect to one or more issues in the case, is not specifically pointed out by a witness at trial may be disregarded by the Court in its determination of the case.

Specifically pointed out means specific mention with reference to an

(continued...)

It is the view of the court that plaintiff's explanation for the delay in asserting its new theories of recovery is unreasonable and prejudices defendant.

Plaintiff's explanation for its belated challenge to the contracting officer's November 26, 2002 final decision is similarly unpersuasive. Plaintiff does not dispute either that it timely received the final decision or that it declined to exercise its appeal rights under the Contract Dispute Act, in particular, to appeal the decision to an agency board of contract appeals, 41 U.S.C. § 606 (2000), or to institute a proceeding in this court upon that claim, 41 U.S.C. § 609(a)(1), (3) (2000). Because plaintiff has failed to establish that "justice . . . requires," RCFC 15(a), the proposed amendment of the complaint, plaintiff's motion is DENIED.[2]

IT IS SO ORDERED.

s/Emily C. Hewitt
EMILY C. HEWITT
Judge

---

[1](...continued)
exhibit number, and to one or more specific page numbers within, or to an otherwise identifiable portion of the exhibit, together with an indication of how the evidence supports or disproves a fact in issue.

> Specifically pointed out shall not include mentioned for the first time in post-trial briefing. No exhibits will be admitted after the close of evidence, at the close of trial.

Tr. at 32-33.

[2]In accordance with the rules of this court, however, if the issues that plaintiff seeks to raise by this proposed amendment to the complaint "are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." RCFC 15(b).

> If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits.

Id. The court necessarily reserves any ruling on proposed amendments to conform to the evidence presented at trial until trial.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | Docket No.: 02-306C |
| UNITED STATES, | ) | |
| Defendant. | ) | |

Chambers 712
National Courts Building
717 Madison Place, N. W.
Washington, D.C.

Thursday,
November 4, 2004

The parties met, pursuant to notice of the Court, at 2:00 p.m.

BEFORE: HONORABLE EMILY C. HEWITT
Judge

APPEARANCES:

For the Plaintiff:

BRIAN N. ERIKSON, Esquire
Quilling, Selander, et al.
2001 Bryan Street
Suite 1800, Bryan Tower
Dallas, TX 75201
(214) 871-2111

most helpful to bring the documents with sufficient copies, in three-ring binders with numbered tabs for each set, and try to keep them as orderly as possible. But the individual, I think, it can help you out because you will know, as a result of the practice relating to the findings of fact and conclusions of law in any *in limine* motions that you make, you will know which exhibits are up for grabs.

When I say that an exhibit is up for grabs, I am thinking of any objection that you reasonably could anticipate, which would go not only to authenticity but whether or not there is a witness on the witness list who could conceivably be thought to be able to bring the document in through, unless it is agreed to, a business records' exception for example.

But showing up with a front-end loader with all the documents for the pre-trial is not what we are looking for. We are just looking for the contested exhibits, at that time, and just several copies of each of those. So the binders, I think, are not something that normally would come to the pre-trial.

The Court, I think, has nothing further at this time. Mr. Erikson?

MR. ERIKSON: Your Honor, I do have one thing. Based on all of the documents that the

government has produced in recent months, Renda will probably have to change its expert report some. We will try to get those changes done as quickly as we can and submit them to counsel for the Defendant.

THE COURT: Mr. Erikson, [pause].

Mr. Kosloske?

MR. KOSLOSKE: I am not sure what to make of this, Your Honor.

THE COURT: No, I am not either. Discovery is over. We got a meeting of counsel which is scheduled for 12/17. And when is it anticipated that those revised expert reports would be produced? I mean this is exactly the kind of thing, Mr. Erikson, that got this thing derailed last spring.

This is the one-more thing. You and Mr. Kosloske should have been speaking about this and had some type of a plan for how you would reconcile this situation prior to coming to this meeting.

In any event, we will now address it. When is your proposed time to have an expert report, in accordance with Rule 26, that would be presented to the United States?

MR. ERIKSON: Your Honor, I would be happy to do it myself on limitation, but the government literally produced thousands and thousands and

thousands of documents and it is only fair that the experts have a chance to make some comment on the additional documents that the government produced. But, in any event, I think if you gave us two weeks that would be enough time.

THE COURT: Without objection, Mr. Kosloske?

MR. KOSLOSKE: Your Honor, if Mr. Erikson provides the reports to us within two weeks, I can compare them with our experts to look at them but again. It is difficult for the government to really say anything until we see them and we have no idea of how extensive the changes or revisions might be to the previously expressed opinions.

THE COURT: Yes.

MR. KOSLOSKE: It could be relatively insignificant; they may be major. Until we see the reports, we don't know.

THE COURT: I understand that.

MR. KOSLOSKE: Of course, the other problem is that two weeks from now -- I mean I can share the information with our experts and consultants to look at. But two weeks from now, I will be again personally tied up in getting ready for this two-week trial in December.

THE COURT: Right. [Pause]

I am making notes of dates that would allow us to hold the December 21 pre-trial date.

You can't answer this question now, Mr. Kosloske, but based on the prior expert report practice, would you foresee a rebuttal expert opinion?

MR. KOSLOSKE: Yes, it is conceivable, if we see substantially modified opinions or new opinions in these reports.

THE COURT: Since we still have Mr. Petty with us, I am going to go ahead and put in the order the production, and they would be in accordance with the Rule of Production.

And keep in mind that you need to cross the T's and dot the I's in the expert reports, that those be produced in two weeks, meaning from today, which I believe is 11/18. This is a pretty athletic schedule, that's Thursday in two weeks; and then, in order to get ready for the pre-trial now on the 21st -- wait a second. We have a holiday in there.

And that by Thursday, the 16th, any rebuttal expert report, and I recognize that you are still somewhat tied up at that point; if your trial hasn't abated by then, Mr. Kosloske, we will take Mr. Petty's presence as a possible source of support here. And that by Thursday, the 16th, if any rebuttal expert,

# In the United States Court of Federal Claims

No. 02-306 C

(E-Filed: November 4, 2004)

| | |
|---|---|
| RENDA MARINE, INC., | ) |
| Plaintiff, | ) |
| v. | ) |
| THE UNITED STATES, | ) |
| Defendant. | ) |

## ORDER

Pursuant to Rule 16(b) of the Rules of the United States Court of Federal Claims (RCFC), the court held a telephonic status conference on the record with the parties on Thursday, November 4, 2004, to set a schedule for pretrial and trial and to address any outstanding issues with the parties. Further to the conference, the court schedules the following:

1. Fact Discovery. All fact discovery has concluded in this matter.

2. Expert Discovery. Plaintiff has requested the opportunity to revise its previously submitted expert reports, in light of material produced by defendant during discovery. Plaintiff also has represented to the court that it intends only to supplement its previously submitted expert reports, and that it does not intend to submit reports by any new expert witnesses.

   In accordance with RCFC 26(a)(2), plaintiff shall submit updated versions of its existing expert reports on or before November 18, 2004.

3. Rebuttal Expert Discovery. In accordance with RCFC 26(a)(2), defendant shall submit updated rebuttal expert reports, if any, on or before December 16, 2004.

4. Meeting of Counsel. The parties shall meet to satisfy the requirements of RCFC Appendix A ¶ 13, including the exchange of exhibit and witness lists, on or before Tuesday, December 21, 2004.

5. Memoranda of Contentions of Fact and Law. In accordance with RCFC Appendix A ¶ 14, plaintiff shall file its Memorandum of Contentions of Fact and Law (Memorandum) on or before Wednesday, January 12, 2005. Defendant shall file its responsive Memorandum on or before Wednesday, February 2, 2005. Each Memorandum shall be accompanied by witness lists and exhibit lists and any motions contemplated by Appendix A ¶¶ 14, 15 and 16. Any objection to a witness or exhibit not made in the Memorandum or in a separate motion filed on the same date shall, if the objection is of a type that could reasonably have been identified at the time of such filing, be deemed waived unless justice shall otherwise require.

6. Pretrial Conference. The pretrial conference will be held Wednesday, February 16, 2005, at the National Courts Building, 717 Madison Place, N.W., Washington, DC 20004. The parties shall bring to the pretrial conference at least three copies of any exhibit as to which an objection remains outstanding. The parties shall prepare and deliver at the pretrial conference a joint preliminary trial schedule or, if they cannot agree, separate trial schedules, using the template attached, a copy of which will be, at the request of a party, provided to the party in electronic form by the court.

7. Trial. Trial will be conducted in two two-week phases. Plaintiff shall present its case during the first phase, which will begin Monday, February 28, 2005, and will conclude Friday, March 11, 2005. Defendant shall present its case during the second phase, which will begin Monday, March 28, 2005, and will conclude Friday, April 8, 2005. Trial will take place Monday through Friday, and will begin at 9:00 a.m. each day. Trial will be held in Houston, Texas; the exact location of trial will be determined by further order of the court.

Due to continuing problems with Washington, DC mail, the parties are directed to fax courtesy copies of any time-sensitive documents to the court and opposing counsel throughout the proceedings. The parties are also urged to contact the court at any time when they believe the involvement of the court will help to secure the just, speedy and inexpensive determination of this action. See RCFC 1.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Judge

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

RENDA MARINE, INC.,
Plaintiff,
v.
THE UNITED STATES,
Defendant.

No. 02-306C

(Judge Hewitt)

DEFENDANT'S FIRST SET OF INTERROGATORIES
AND SECOND REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to RCFC 26, 33, and 34, defendant propounds the following interrogatories to plaintiff Renda Marine, Inc. (Renda) and requests production of the following documents. In responding to these interrogatories and the document production requests, defendant requests that Renda produce all information and documents in its possession, custody or control, or otherwise available to its employees, agents, consultants, attorneys, and accountants, whether past or present, or documents that are otherwise subject to its custody or control. If Renda cannot answer any or all of the following interrogatories after exercising due diligence to secure the information needed to do so, we request that Renda so state and answer the interrogatories to the extent possible, specifying the basis for Renda's inability to answer the remainder and stating whatever information or knowledge Renda has concerning the unanswered portion. We request that Renda produce all documents that respond, in whole or part, to any portion of the document production requests in their entirety, including all attachments and enclosures.

DEFINITIONS AND INSTRUCTIONS

As used herein, the following terms have the following meanings:

1. "And" and "or" shall be construed both conjunctively and disjunctively, and each

shall include the other whenever such construction will serve to bring within the scope of these requests any items that otherwise would not be brought within their scope.

2. "Communication" means the expression of any statement, question, command, idea, knowledge, information, or other matter, whether by speech, writing, sign, or otherwise.

3. "Computer" includes microcomputers (also known as personal computers), laptop computers, portable computers, notebook computers, palmtop computers, minicomputers, and mainframe computers.

4. "Computer network" means any combination of hardware or software that connects two or more computers and enables the computers to share or transfer digital signals between them. The connection between the computers need not be either physical or direct (e.g., modems may be the form of connection), nor need there be a central file data server or central operating system.

5. "Date" means the exact day, month, and year, if ascertainable, and, if not, the best approximation.

6. "Document" or "documents" means any written, recorded (by any means), or graphic matter, however produced or reproduced, in the possession, custody, or control of Renda or Renda's counsel, or known to Renda or Renda's counsel, whether or not claimed to be privileged or confidential or personal, including, but not limited to, any "document," "tangible thing," or "object," as those terms are used in RCFC 34, and any "writing," "recording," "photograph," "original, or "duplicate," as those terms are defined in Rule 1001 of the Federal Rules of Evidence. "Document" or "documents" includes, but is not limited to: letters; memoranda; reports; agreements; working papers; preliminary, intermediate, and final drafts; communications

(including intra- and inter-office communications, inter-company communications); correspondence; e-mail; reports of telephone or other conversations; electronic data, as defined below; computer runs; view-foils; compilations; summaries of records of personal conversations; diaries; appointment books; desk calendars; financial calculations; forecasts; statistical statements; graphs; charts; plans; drawings; minutes or records of meetings; minutes or records of conferences; expressions or statements of policy; lists of persons attending meetings or conferences; reports of or summaries of interviews; reports of or summaries of investigation opinions or reports of consultants; opinions of counsel; reports of or summaries of either negotiations by Sunshine or preparation of such; circulars; books; instruments; accounts; tapes and all other material of any tangible medium of expression and original or preliminary notes. A true copy will suffice so long as you waive any objection to authenticity and will have the original available for inspection upon request of defendant at the time of the preparation of the pretrial order and at the time of trial. "Document" or "documents" also include copies of documents that are not identical duplicates of the originals and copies of documents the originals of which are not in the possession, custody, or control of Renda.

7. "E-mail" means any computer-based system of electronic mail.

8. "Electronic data" means data of any kind or description, inscribed by computer, mechanical, facsimile, electronic, magnetic, digital, or other means, including, but not limited to, any and all items stored on e-mail; computer memories; hard disks; floppy disks; CD-ROMS, removable media such as Zip, Jaz, Bernoulli Box drives and their equivalent; magnetic tape of all types; microfiche; punched cards; punched tape, or data on or in any other vehicle for digital storage or transmittal; computer programs (whether private or commercial); programming notes

or instructions; output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs, outlines, electronic mail, any and all ASCII and EBCDIC files, and any miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether this electronic data exists in an active file, deleted file, or file fragment. The term "electronic data" also includes the file, folder tabs, containers and labels appended to or associated with any physical storage device for such data.

9. "Identification" or "identify" in reference to:

(a) a natural individual means to state (a) his or her full name, (b) his or her business and residential addresses, (c) his or her business and residential telephone numbers, and, (d) if presently employed by Renda, his or her present position(s) with Renda. (If the individual's current business and residential addresses and telephone numbers are not known, provide his or her last known business and residential addresses and last known business and residential telephone numbers);

(b) a person other than a natural individual means to state, to the extent known, its full name, address, and telephone number (If the person's current business and residential address and telephone number is not known, provide the last known address and telephone number);

(c) a document means to state, to the extent known, the author or originator, the addressee or addressees (if any), the date indicated on the documents as being the date thereof or the date (as exactly as possible) upon which the document was written or executed if no date is shown upon it, a description of the type of document (for example, letter, handwritten notes, etc.), the number of pages, the title (if any), and identification number, the present location and custodian of the original thereof, or, if unknown, the present custodian of any copy thereof and

the last known address of each such custodian, and a summary of the contents thereof. We request that Renda also state whether it has possession or control of the original or a copy of the document, and state the manner and date of disposition of any document that was, but no longer is, in its possession or subject to its control. (Instead of identifying a document in the foregoing manner, when a document on its face indicates the date and author, the recipient, and the subject matter, Renda may furnish, simultaneously with the filing of answers to these interrogatories, such documents for inspection and copying by defendant.);

(d) a telephone conversation means to identify the caller and the recipient, and to identify any other person who was a party to the conversation, and to state, to the extent known, the location of each at the time the call was made, the date and time of the conversation, and the author or maker and addressee of each statement, question, or remark made during the telephone conversation, and the substance of each such statement, question, or remark; and

(e) a communication means to state the nature of the communication (for example, letter, telephone conversation, private meeting, advertisement) and, to the extent that the communication was recorded in writing or stored electronically, to identify the pertinent document or documents and, to the extent that the communication was not written, to identify the person or persons involved in the communication, and to state, to the extent known, the place, date, and method of communication, and the author or maker and addressee of each statement, question, or remark, and the substance of each such statement, question, or remark.

10. "Person" and "individual" include a corporation, partnership, other business association or entity, any natural person, and any domestic or foreign governmental body, commission, board, agency, branch, department, or component or element thereof.

11. "Plaintiff" or "Renda" means Renda Marine, Inc., including, without limitation, any division, group, affiliate, or other entity owned or controlled by Renda Marine, Inc., and all present and past officers, directors, employees, agents, or representatives of Renda Marine, Inc., including, but not limited to, counsel and consultants, who reasonably could be expected to have personal knowledge that would affect the completeness and accuracy of responses made to this request.

12. "Relate to," "relates to," or "relating to" means comprising, mentioning, analyzing, discussing, summarizing, describing, referring to, containing, depicting, embodying, evidencing, constituting, concerning, reporting, or involving an act, occurrence, event, transaction, fact, thing, or course of dealing.

13. The term "Complaint" means the "Complaint" filed in the above captioned action on or about April 11, 2002.

14. "Contract" means Contract No. DACW64-98-C-0001 between plaintiff and the United States, acting through the Army Corps of Engineers Galveston District, referred to at paragraph 10 of the complaint.

15. The term "Government" means the United States, including any and all agencies, departments, or branches, and, in particular, the Army Corps of Engineers Galveston District, including any and all present and former employees, representatives, officers, or agents.

16. "Upper Bayou Project" refers to the work performed or required to be performed by Renda under the Contract, including work performed or required to be performed by any subcontractors of Renda to complete all of the work under the Contract.

17. In responding to these requests, defendant requests that Renda produce all information and documents in its possession, custody or control, or otherwise available to its employees, agents, consultants, attorneys, and accountants, whether past or present, or documents that are otherwise subject to its custody or control. Defendant requests that Renda produce all documents that respond, in whole or part, to any portion of the production requests in their entirety, including all attachments and enclosures.

18. With respect to the documents requested, defendant requests that Renda produce all drafts, marked-up versions, preliminary versions, or other nonidentical copies of documents requested.

19. If any document is withheld under a claim of privilege, for each such document, defendant requests that Renda provide the following information:

(1) Principals. The name and title of the author(s), sender(s), addressee(s), and recipient(s) of the document.

(2) Date. The date of the document.

(3) Publications. The date and title of each person to whom the contents of the document has been disclosed by copy, exhibition, reading, summarization, or otherwise.

(4) Descriptions. A description of the nature and subject matter of the document.

(5) Privilege. A statement of the privilege(s) and the basis or bases upon which the privilege(s) is or are asserted.

If Renda claims that only part of a document is exempt from production by reason of a privilege or privileges, defendant requests that Renda produce the part(s) of the document that it does not claim is or are exempt from production by reason of a privilege or privileges.

20. If Renda cannot produce a requested document, defendant requests that Renda identify the document as accurately as it can and state the reason(s) that it is unable to produce the document.

21. This discovery request is continuing in nature. Defendant requests that Renda provide by way of supplemental responses and documents whatever information may hereafter be obtained by it, or by anyone upon its behalf, that will supplement this request.

DEFENDANT'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS

Defendant requests that Renda produce the following documents:

1. All documents that contain opinions or instructions given by Renda's counsel (or any employee or agent of Renda's counsel) to any individual that Renda expects to call as an expert witness at trial, including, but not limited to, the engagement document(s).

2. All reports, affidavits, declarations, memoranda, papers, notes, studies, graphs, charts, tabulations, analyses, summaries, data sheets, statistical or informational accumulations, and computer generated documents, including drafts or preliminary revisions of any of the above, prepared in connection with this litigation by or under the direction or supervision of any individual that Renda expects to call as an expert witness at trial.

3. All documents relied upon or considered by any individual that Renda expects to call as an expert witness at trial in formulating his or her opinion(s), including, but not limited to, the report of, or any other document prepared by, any non-testifying expert.

ROBERT D. McCALLUM, JR.
Assistant Attorney General

DAVID M. COHEN
Director