EQUIPMENT SUMMARY

| Claim Equip Item No. | Renda Equip ID No. | Type | Total Adjusted Hourly Operating Rate | Adjusted Standby Hourly Rate | Daily Rental Rate | Hourly Rental Operating Rate | Source Document |
|---|---|---|---|---|---|---|---|
| 1 | | Millennium | 468.96 | 70.26 | | | Vol III, Tab 1 |
| 2 | | Renda Built Booster Pump | 190.19 | 16.87 | | | Vol III, Tab 2 |
| 3 | XXX | Duplex High Pressure Pump | | | | | Vol III, Tab 3 |
| 4 | XXX | Cummins Generator | | | | | Vol III, Tab 4 |
| 5 | XXX | Pipeline - (26,000 LF) - per linear foot cost | 0.0013 | 0.0009 | | | Vol III, Tab 5 |
| 6 | XXX | Pipeline Joints - 24" | 13.56 | 6.95 | | | Vol III, Tab 6 |
| 7 | XXX | Pipeline Pontoons | 7.11 | 4.70 | | | Vol III, Tab 7 |
| 8 | B110 | Work Boat "Marilyn K McFarland" | 51.28 | 3.86 | | | Vol III, Tab 8 |
| 9 | B108 | Work Boat "Crista Dian" | 46.28 | 1.46 | | | Vol III, Tab 9 |
| 10 | AB102 | Anchor Barge AB102 | 1.85 | 0.80 | | | Vol III, Tab 10 |
| 11 | XXX | American Crane 4260 | 41.95 | 5.99 | | | Vol III, Tab 100 |
| 12 | CC915 | Grove Hydraulic Crane | 24.25 | 2.54 | | | Vol III, Tab 100 |
| 13 | XXX | Work Barge #1 | 1.29 | 0.64 | | | Vol III, Tab 13 |
| 14 | B102 | Survey Boat - Monark | 41.15 | 1.26 | | | Vol III, Tab 100 |
| 15 | B103 | Work Boat - Lafco | 41.06 | 0.98 | | | Vol III, Tab 100 |
| 16 | B105 | Work Boat - Monark | 41.06 | 0.97 | | | Vol III, Tab 100 |
| 17 | WS102 | Work Skiff | 18.36 | 0.52 | | | Vol III, Tab 100 |
| 18 | XXX | Fuel Barge | 1.29 | 0.63 | | | Vol III, Tab 18 |
| 19 | XXX | Fuel Tank | 4.83 | 0.96 | | | Vol III, Tab 100 |
| 20 | E17 | Linkbelt 3800 Excavator | 38.22 | 6.86 | | | Vol III, Tab 100 |
| 21 | XXX | Work Barge #2 - (4) Flexifloats | 1.74 | 0.85 | | | Vol III, Tab 21 |
| 22 | LS101 | Skid Loader - Timberjack 450 | 38.40 | 5.54 | | | Vol III, Tab 100 |
| 23 | LS103 | Skid Loader - Timberjack 380B | 38.40 | 5.54 | | | Vol III, Tab 100 |
| 24 | CC913 | American Crane 4260 on Barge #1 | 52.83 | 6.32 | | | Vol III, Tab 100 |

EQUIPMENT SUMMARY

| Claim Equip Item No. | Renda Equip ID No. | Type | Total Adjusted Hourly Operating Rate | Adjusted Standby Hourly Rate | Daily Rental Rate | Hourly Rental Operating Rate | Source Document |
|---|---|---|---|---|---|---|---|
| 24 | CC913 | American Crane 4260 on McDonough Barge | 33.61 | 4.37 | | | Vol III, Tab 100 |
| 25 | CC912 | Linkbelt Crane LS78 | 52.83 | 6.31 | | | Vol III, Tab 100 |
| 26 | MB101/ E18 | Marsh Buggy (Wilco) w/Caterpillar Excavator (EL200) | 53.68 | 8.87 | | | Vol III, Tab 100 |
| 27 | MD101 | Marsh Buggy #2 w/Dragline Crane (Little Giant) | 53.68 | 8.87 | | | Vol III, Tab 100 |
| 28 | W2815 | Lincoln Welder - SA300 TMD27 | 4.59 | 0.32 | | | Vol III, Tab 100 |
| 29 | XXX | Miller Welder | 4.59 | 0.32 | | | Vol III, Tab 100 |
| 30 | D412 | Caterpillar Dozer - D6H (LGP) | 46.08 | 4.78 | | | Vol III, Tab 100 |
| 31 | D413 | Caterpillar Dozer - D6H (LGP) | 46.08 | 4.78 | | | Vol III, Tab 100 |
| 32 | D402 | Caterpillar Dozer - D8L | 52.16 | 5.60 | | | Vol III, Tab 100 |
| 33 | DT1305 | Caterpillar Dump Truck - D275B (DJB) | 40.11 | 6.49 | | | Vol III, Tab 100 |
| 34 | GT818 | Lighting Set, Trailer Mounted - Next Generation (BLK64MH) | 4.91 | 0.34 | | | Vol III, Tab 100 |
| 35 | GT821 | Lighting Set, Trailer Mounted - Winco (LSC-411) | 5.27 | 0.68 | | | Vol III, Tab 100 |
| 36 | UT1720 | Utility Trailer - 20' | 1.31 | 0.24 | | | Vol III, Tab 100 |
| 37 | XXX | Ford Pickup Truck - F250HD (4x4) - RRenda | 8.39 | 0.79 | | | Vol III, Tab 100 |
| 38 | PT1028 | Ford Pickup Truck - F250HD (4x4) - Williams | 8.43 | 0.82 | | | Vol III, Tab 100 |
| 39 | PT1055 | Ford Expedition (2x2) - Fisher | 7.98 | 1.35 | | | Vol III, Tab 100 |
| 40 | PT1063 | Ford Pickup Truck - F250HD (4x4) - ARodriguez | 8.39 | 0.79 | | | Vol III, Tab 100 |
| 41 | PT1054 | Ford Pickup Truck - F250HD (2x2) - Goodloe | 7.21 | 0.70 | | | Vol III, Tab 100 |
| 42 | PT1057 | Ford Pickup Truck - F250HD (4x4) - Bowman | 9.89 | 1.66 | | | Vol III, Tab 100 |
| 43 | MT1112 | Ford Pickup Truck - F450 (2x2) - Maintenance | 10.25 | 1.46 | | | Vol III, Tab 100 |
| 44 | PT1059 | Ford Pickup Truck - F250 (2X2) - Machacek | 7.18 | 0.69 | | | Vol III, Tab 100 |
| 45 | PT1062 | Ford Pickup Truck - F150 (2x2) - Safety/QA-QC | 6.75 | 0.64 | | | Vol III, Tab 100 |
| 46 | G101 | John Deere Gator - 6x6 | 5.25 | 1.05 | | | Vol III, Tab 100 |
| 47 | | Rental: Tug Boat "Melissa B" (800 hp) Vendor: Melissa B Inc | 71.31 | 6.15 | | | Vol III, Tab 47 |

EQUIPMENT SUMMARY

| Claim Equip Item No. | Renda Equip ID No. | Type | Total Adjusted Hourly Operating Rate | Adjusted Standby Hourly Rate | Daily Rental Rate | Hourly Rental Operating Rate | Source Document |
|---|---|---|---|---|---|---|---|
| 69 | PT1019 | Ford Explorer (2x2) - BWarren | 8.02 | 1.14 | | | Vol III, Tab 100 |
| 70 | PT1067 | Ford Pickup Truck - F250HD (4x4) - Englen | 8.39 | 0.79 | | | Vol III, Tab 100 |
| 71 | DT1304 | Caterpillar Dump Truck - D275B (DJB) | 40.11 | 6.49 | | | Vol III, Tab 100 |
| 72 | D409 | Komatsu Dozer - D68P | 46.08 | 4.78 | | | Vol III, Tab 100 |
| 73 | PT1061 | Ford Pickup Truck - F250 - BWarren | 7.18 | 0.69 | | | Vol III, Tab 100 |
| 83 | JT101 | Jeep Flatbed Truck, Off-Road | - | - | | | no backup |
| 84 | D405 | Komatsu Dozer - D68P, Pyramid | - | - | | | no backup |
| 85 | RTL220 | Caterpillar 950E Loader w/Q/A Forks | 42.23 | 4.85 | | | Vol III, Tab 100 |
| 86 | MG2001 | Caterpillar 120G Motor Grader | - | - | | | no backup |
| 88 | | Rental: Komatsu Dozer - D65PX<br>Vendor: Waukesha-Pearce Ind Inc | - | - | | | |
| 92 | PT1073 | Ford Expedition (2x2) - Goodloe | 7.95 | 1.33 | | | Vol III, Tab 100 |
| 93 | PT1037 | Ford Pickup Truck-F250HD (4x4)-ECantu | 10.01 | 1.73 | | | Vol III, Tab 100 |
| 95 | D414 | Komatsu Dozer - D65PX-12 | 76.27 | 11.15 | | | Vol III, Tab 100 |
| 48 | | Rental: Combination Building - 18'<br>Vendor: International Quarters LLC | - | | 62.66 | | Vol III, Tab 100 |
| 49 | | Rental: Supply Barge (MCD212)<br>Vendor: McDonough Marine Service | 1.70 | | 83.88 | 0.58 | Vol III, Tab 100 |
| 50 | | Rental: Spud Barge (KS4001)<br>Vendor: McDonough Marine Service | 1.70 | | 111.84 | 0.58 | Vol III, Tab 100 |
| 51 | | Rental: Caterpillar Dozer LGP-D6M<br>Vendor: Nations Rent | 59.35 | | 29.22 | 28.35 | Vol III, Tab 100 |
| 52 | | Rental: Komatsu Dozer (SG)-(D65PX)<br>Vendor: Nations Rent | 75.94 | | 37.25 | 34.51 | Vol III, Tab 100 |
| 53 | | Rental: Volvo Articulated Truck A25C<br>Vendor: Nations Rent | 37.72 | | 316.92 | 13.74 | Vol III, Tab 100 |
| 54 | | Rental: Diesel Welder 400 amp-K1422-1<br>Vendor: Nations Rent | 3.82 | | 12.76 | 2.60 | Vol III, Tab 100 |
| 55 | | Rental: Lincoln Welder-500 amp<br>Vendor: Nations Rent | 3.85 | | 15.95 | 2.61 | Vol III, Tab 100 |
| 56 | | Rental: Diesel Welder 250 amp-K1383-4<br>Vendor: Nations Rent | 2.97 | | 12.82 | 2.45 | Vol III, Tab 100 |
| 57 | | Rental: Diesel Welder 250 amp-SA250<br>Vendor: Nations Rent | 2.97 | | 12.82 | 2.45 | Vol III, Tab 100 |
| 58 | | Rental: Air Compressor 185 cfm-P185WJD<br>Vendor: Nations Rent | 6.18 | | 18.34 | 4.41 | Vol III, Tab 100 |

EQUIPMENT SUMMARY

| Claim Equip Item No. | Renda Equip ID No. | Type | Total Adjusted Hourly Operating Rate | Adjusted Standby Hourly Rate | Daily Rental Rate | Hourly Rental Operating Rate | Source Document |
|---|---|---|---|---|---|---|---|
| 59 | | Rental: Air Compressor+Hose 185 cfm-P185WJD<br>Vendor: Nations Rent | 6.18 | | 18.34 | 4.41 | Vol III, Tab 100 |
| 62 | | Rental: Air Compressor 210 cfm-D210Q6JD<br>Vendor: Nations Rent | 5.66 | | 18.34 | 4.41 | Vol III, Tab 100 |
| 63 | | Rental: Komatsu Track Excavator-PC300LC-6<br>Vendor: Nations Rent | 58.63 | | 231.46 | 26.20 | Vol III, Tab 100 |
| 64 | | Rental: Komatsu Track Excavator-PC200LC-6<br>Vendor: Nations Rent | 37.81 | | 162.55 | 16.87 | Vol III, Tab 100 |
| 65 | | Rental: Komatsu Track Excavator-PC200LC-6<br>Vendor: Nations Rent | 37.81 | | 132.92 | 16.87 | Vol III, Tab 100 |
| 66 | | Rental: John Deere 550H Dozer-LGP<br>Vendor: Nations Rent | 22.21 | | 107.72 | 11.01 | Vol III, Tab 100 |
| 67 | | Rental: John Deere 550H Dozer-LGP<br>Vendor: Nations Rent | 22.21 | | 109.67 | 11.01 | Vol III, Tab 100 |
| 68 | | Rental: Caterpillar D5H Dozer-LGP<br>Vendor: Mustang Rental Services | 26.37 | | 176.26 | 12.89 | Vol III, Tab 100 |
| 74 | | Rental: Komatsu Track Excavator-PC200LC-6<br>Vendor: Nations Rent | 37.81 | | 168.67 | 16.87 | Vol III, Tab 100 |
| 75 | | Rental: John Deere D850C Dozer - LGP Crawler<br>Vendor: Rush Equipment Center | 26.37 | | 260.58 | 12.89 | Vol III, Tab 100 |
| 76 | | Rental: John Deere Track Excavator-JD230LC<br>Vendor: Rush Equipment Center | 32.40 | | 187.23 | 15.48 | Vol III, Tab 100 |
| 77 | | Rental: John Deere Track Excavator-JD450LC<br>Vendor: Rush Equipment Center | 51.10 | | 357.23 | 27.37 | Vol III, Tab 100 |
| 78 | | Rental: Link-Belt LS4300 Excavator<br>Vendor: Con-Equip, Inc. | 48.48 | | 218.10 | 23.33 | Vol III, Tab 100 |
| 79 | | Rental: Bell B25C Articulated Dump Truck<br>Vendor: Con-Equip, Inc. | 37.72 | | 218.10 | 13.74 | Vol III, Tab 100 |
| 80 | | Rental: Bell B25C Articulated Dump Truck<br>Vendor: Con-Equip, Inc. | 37.72 | | 218.10 | 13.74 | Vol III, Tab 100 |
| 81 | | Rental: Bell B25C Articulated Dump Truck<br>Vendor: Con-Equip, Inc. | 37.72 | | 218.10 | 13.74 | Vol III, Tab 100 |
| 82 | | Rental: Bell B25C Articulated Dump Truck<br>Vendor: Con-Equip, Inc. | 37.72 | | 218.10 | 13.74 | Vol III, Tab 100 |
| 87 | | Rental: Komatsu Dozer - D65PX<br>Vendor: Waukesha-Pearce Ind Inc | 75.94 | | 201.00 | 34.51 | Vol III, Tab 100 |
| 88 | moved to owned | Rental: Komatsu Dozer - D65PX<br>Vendor: Waukesha-Pearce Ind Inc | 75.94 | | | 34.51 | Vol III, Tab 100 |
| 90 | | Rental: Alco Redi-Prime Pump-12"<br>Vendor: Service Pump & Compressor Inc | 10.52 | | 85.07 | 8.03 | Vol III, Tab 100 |
| 91 | | Rental: Booster Pump No. 6*<br>Vendor: Hendry Corporation | | 9.19 | 3,169.41 | 179.78 | Vol III, Tab 100 |

*The amounts shown for standby and operating are operation cost only. Total rate would inlcude the daily rent plus the appropriate operating condition.

## Formula Explanations

### For Chapter 3 Methodology

| Column Heading | Formula |
|---|---|
| **OPERATING RATE** | |
| Total Hourly Rate | Depr + FCCM + Fuel + FOG + Tire Wear + Tire Repair + Repair (Table 2-2) |
| FCCM Adjust Factor | 6.865 / 5 (Average FCCM rate for claim periods April 2000 - April 2001 divided by FCCM rate in Corps Manual) |
| Adjusted FCCM Rate | FCCM Adjust Factor * FCCM |
| Adjusted Ownership Rate for Age | (Depr + Adjusted FCCM Rate) * Age Adjust Factor (Age Adjustment Factor from Table 3-1) |
| Shift Adjust Factor | 40 / Average Weekly Hours |
| Adjusted Ownership Rate for Shift | Adjusted Ownership Rate for Age * Shift Adjust Factor |
| Fuel & FOG Adjust Factor | 94.3 / 74 (Average fuel rate during claim period (94.34) divided by the fuel rate in Corps Manual (0.74) |
| Adjusted Fuel Rate | Fuel * Fuel & FOG Adjust Factor |
| Adjusted FOG Rate | FOG * Fuel & FOG Adjust Factor |
| Total Adjusted Hourly Operating Rate | Tire Wear + Tire Repair + Repair + Adjusted Ownership Rate for Shift + Adjusted Fuel Rate + Adjusted FOG Rate |
| **STANDBY RATE** | |
| FCCM Adjusted EP Standby Rate | (Depr / 2) + (FCCM * FCCM Adjust Factor) (based on 40 hours per week, 8 hours per day) |
| Adjusted Standby Hourly Rate | FCCM Adjusted EP Standby Rate * Standby Age Adjust Factor |
| Additional Adjustment | 40 hours / Average Weekly Hours (Additional Adjustment is to conform to hours allocated and Chapter 4 methodology) |
| Conforming Standby Rate | Adjusted Standby Hourly Rate * Additional Adjustment |

1. Additional adjustment made for Chapter 4 methodology of 24 hours standby per day. Standby rate calculated by methodology in Chapter 3 is 40 hours per week. Dredging standby adjustment factor is 0.24 (40 hrs/168 hrs)

2. For construction equipment, an additional adjustment is made to correspond with the standby hours claimed. The adjustment factor is 40 hours divided by Average Weekly Hours.

Franvel Corp
Renda Marine Inc. v. United States
No. 02-306C (Fed. Cl.)

## 6.0 Time Summary

Renda asserts that the original contract time allowed to complete the project is 566 calendar days.

In the solicitation, Section 00820, Specific Project Requirements, paragraph 1, Commencement, Prosecution and Completion of Work, states,

> "The Contractor will be required to (a) commence work under this contract within 15 calendar days after the date of receipt by him of Notice to Proceed, (b) prosecute the work diligently, and except for turfing, (c) complete Schedule No. 1 of the Bidding Schedule not later than 148 calendar days after the date of receipt by it of Notice to Proceed. An additional time of 418 calendar days after the date of receipt by it of Notice to Proceed for Option No. 1 of the Bidding Schedule will be added to the contract. If the total quantity of material to be paid for actually removed under the contract exceeds the limit established in the CONTRACT CLAUSE entitled VARIATIONS IN ESTIMATED QUANTITIES – DREDGING, additional time will be allowed at the rate of 1 calendar day for each 5,000 cubic yards in excess of the established limit. The time stated for completion shall include final clean-up of the premises."

Included in the solicitation, was a Bidding Schedule, which contained a base bid, Schedule One, for performance of primarily the mechanically constructed levees and an Option 1 which primarily covered the hydraulically constructed levees.

During the bidding process, Amendment No. 1 (Vol IV, Tab 4) was issued which contained a revised bidding schedule comprised of one combined schedule for all the work. Also included in Amendment No. 1 were Government responses to prospective bidders questions. One of the questions involved contract time. The Government responded,

> "Answer: An amendment will reflect performing the entire job as one bid, rather than a base and option. Construction time will be recomputed based on this scenario."

Also questioned was the option portion of the contract and here again the Government response was,

> "Answer: Yes. The option will be combined with the base bid as one single contract."

It was clear that the time and work were to be combined and procured as a single item. Amendment No. 1 modified the bid schedule to one item, Bid Schedule One. Also, paragraph 00820, was modified to read,

> "The Contractor will be required to (a) commence work under this contract within 15 calendar days after the date of receipt by him of Notice to Proceed, (b) prosecute the work diligently, and except for turfing, (c) complete the work not later than 446 calendar days after the date of receipt by it of Notice to Proceed. If the total quantity of material to be paid for actually removed under the contract exceeds the limit established in the CONTRACT CLAUSE entitled VARIATIONS IN ESTIMATED QUANTITIES – DREDGING, additional time will be allowed at the rate of 1 calendar day for each 10,000 cubic yards in excess of the established limit. The time stated for completion shall include final clean-up of the premises."

By amendment, the contract time was modified to 466 calendar days after receipt of the Notice to Proceed. The Notice to Proceed which Renda received on November 19, 1998, established the required completion date of February 8, 2000.

In April 2000, Renda asserted that the required completion date was May 22, 2000, based upon the original solicitation performance period of 566 days (418 plus 148). Renda acknowledges that the contract was awarded with the 446 day performance period, but that Government errors in some of the paperwork (pre-construction minutes and payment estimates) justify using a 566-day performance period.

The solicitation was properly modified by amendment and, in its pre-award submittal, Renda provided a tentative project schedule showing completion of the project within the 446 calendar day period. Renda understood the time provided for completing the work. February 8, 2000, is the original required completion date.

The following would be the new required completion date considering the time extensions determined in this report, assuming that Renda's claims are determined to have merit:

| Description | Days Added | Completion Date |
|---|---|---|
| Original Contract Completion Date | | February 8, 2000 |
| Modification P00006 | +20 days | February 28, 2000 |
| Modification P00008 | +22 days | March 21, 2000 |
| Modification P00009 | +18 days | April 8, 2000 |
| Modification P00023 | +56 days | June 3, 2000 |
| Modification P00026[1] | +29 days | July 2, 2000 |
| South Ferry Landing | + 2 days | July 4, 2000 |
| HLP Delay | +2 days | July 6, 2000 |
| Flare Area[2] | -45 days | May 22, 2000 |
| Obstructions #1 | +14 days | June 5, 2000 |
| Section 7 | 0 | June 5, 2000 |
| Obstructions #2 | +27 days | July 2, 2000 |
| West Levee | 0 | July 2, 2000 |
| Hydraulic Levees Claim | 0 | July 2, 2000 |

If the contract were to be considered complete as of June 1, 2001, the date Modification P00026 was issued to remove the remaining dredging work from Section 9 and accept the channel, then Renda was 335 days, or 11 months, late in completing the work.

Renda's bid was based on a production rate of 750 cy per effective hour[3]. As noted earlier in the report, Renda's average production for the Upper Bayou Project was 586 cy

[1] Modification No. P00026 was issued May 4, 2001, to suspend dredging on Upper Bayou so Renda could perform other private work. On May 22, Renda was directed to remove its submerged pipeline crossing and on June 1, 2001, the remaining dredging work in Section 9 was deleted and the channel work accepted as complete. Therefore, the time was suspended 29 days from May 4, 2001, to June 1, 2001.

[2] The Government issued Modification P00023 unilaterally and granted 56 days for the Flare Area. I have determined only eleven days time extension for work in the Flare Area. The net adjustment for the Flare Area is –45 days.

[3] 750 cy per effective hour is determined from Renda's bid (Vol IV, Tab 8 RM-COE-23212) and pre-award submitted (Vol IV, Tab 15, RM-COE-02672).

per effective hour[4]. Therefore, Renda's bid was too optimistic[5] and anticipated 164 cy more per effective hour than actually achieved. The higher anticipated bid production rate results in Renda underbidding the dredging work by 21.9 percent. Renda anticipated dredging 345 days (Vol IV, Tab 8). A 21.9 percent increase in the anticipated dredging time is 75 calendar days (345 times 21.9 percent) or two and a half months.

Renda performed at least 800,000 cy of non-pay (excessive dredging) work. At the actual average production rate of 586 cy per hour, this would require an additional 1,365 productive hours. Renda operated an average 10.8 effective hours per day[6]. Therefore, the amount of non-pay dredging performed results in 126 days (4.1 months) of additional time.

Renda planned to begin dredging on or about May 1, 1999 (Vol IV, Tab 39). Renda's subcontractor substantially completed the mechanically constructed levees on or about May 1, 1999. The subcontractor completely demobilized on May 19, 1999. Renda should have commenced dredging in early May 1999; however, dredging was started on September 13, 1999, or four months late.

In summary, due to inefficiency of the dredge, the pay quantity work required 2.5 months longer to perform. In addition to the pay quantity, Renda accomplished non-pay dredging. The non-pay dredging required at least 4.1 months to perform. Due to the dredge arriving four months late, the dredging work was delayed a total of 10.6 months.

Therefore, just the three items noted above caused the dredging to be finished 10.6 months late. The above analysis confirms that the 56 calendar days granted under Unilateral Modification P00023 for the additional stiff clay encountered in the Flare Area was 45 days too much and the net adjustment is supported.

---

[4] Volume V, Tab 36, contains a summary of the Inspection Report of Dredging for determining hourly production.

[5] Renda was either too optimistic or the dredge delivered did not have the capability of performing to expectations. Renda had no dredge at bid except a ballpark quote and had a purchase order for the design and construction of a new dredge Millennium for the pre-award submittal. The dredge actually delivered was modified from the pre-award submittal and contained numerous used components.

[6] See Volume V, Tab 36.

Following acceptance of the dredging work of the Upper Bayou Dredging on June 1, Renda agreed to complete as much of the west hydraulic levee with dredged material from other private work procured by Renda. Renda completed the private dredging work no later than July 20, 2001. Renda agreed to perform the levee work constructed from the private dredging for the contract unit price for Bid Item No. 6 of $100.00 per linear foot of completed levee. This agreement was part of bilateral Modification P00026 (Vol IV, Tab 26).

## ROBERT W. LOFGREN
**Senior Dredging Consultant**

### EDUCATION
M.S., Civil Engineering, University of California at Berkeley
B.S., Civil Engineering, Oregon State University

### PROFESSIONAL EXPERIENCE
Mr. Lofgren has over forty years of experience working with hydraulic and clamshell dredging. Mr. Lofgren started his career in the dredging industry as a field engineer on large hydraulic dredge in 1956. His tasks varied between cost keeping, surveying and management of dredging operations. He advanced to become Vice-President and President of Western Pacific Dredging, a dredging contractor. During these years, Mr. Lofgren was responsible for the design and assembly of five hydraulic dredges. He also was responsible for preparing and managing many multi-million dollar dredging projects throughout the United States and abroad. He is recognized for his ability to construct and coordinate the operation of dredges to meet the unique requirements of site locations. He currently works as a private consultant to various major marine and dredging contractors as well as design and consulting firms.

### REPRESENTATIVE PROJECT EXPERIENCE

*Columbia River Deepening*

This project required the modification of a 650 mm hydraulic dredge with a moveable submerged pipeline for the deepening of the ship channel on the Columbia River from –10 meters to –12 meters. The job involved working in currents as high as 3 meters per second. Careful planning and coordination of the dredging operation allowed vessel and tug traffic to occur without interruption.

*Restoration of Navigation and Flood Control Channels Following the Eruption of Mt. St. Helens*

Bob was responsible for the modifications, mobilization, and operation of six hydraulic dredges to clear the Columbia River Ship Channel and the Cowlitz River Flood Control Channel of sand, silt, and volcanic debris, following the eruption of Mt. St. Helens in 1980. This project required the coordination of all aspects of dredging, including the design of flood control channels and the procurement of disposal sites for much of the material.

Ultimately, over 50 million cubic meters of volcanic material were dredged from these areas. The results of this effort proved fruitful as both rivers were returned to their previous conditions.

EXHIBIT
E

*Deep Dredging at Itaipu Dam - Brazil*

As part of the construction process of the Itaipu dam, the rock bottom at the site needed to be cleaned and the surface prepared to receive a clay seal. Bob was hired to assess the specific needs of this remote area and coordinate the dredging of over 60 meters of material. Given the deep depth and cleaning requirements, the operation required the design, construction, and assembly of unique equipment. The owners were very satisfied with the work performed by Bob as it allowed the Itaipu dam to be completed ahead of schedule.

*Dredging of a Flood Control Channel - Northern Iraq*

Given the success of the deep dredging operation at the Itaipu Dam in Brazil, Bob was asked to assist a Brazilian contractor with a large flood control project in Iraq. Following a careful evaluation of the site's requirements, the dredge used at the Itaipu Dam was modified to meet the needs of this project location. Seven million cubic meters of clay material were removed from a new flood control channel. The procedure proved to be extremely successful as the work was completed on an accelerated timetable.

*Blair/Sitcum Waterway Dredging – Port of Tacoma, WA*

Bob developed the design plan for the removal of over 2 million cubic yards of contaminated sediments by both clamshell and hydraulic dredging methods. The materials were disposed of in an old waterway as a confined aquatic disposal (CAD) area. This required the construction of an underwater berm to close off the entrance of the waterway prior to the placement of dredged materials. The dredged materials were placed in a controlled manner which resulted in a stable fill. A sand cap was placed over the finer, contaminated material to provide a surface suitable for rocking and paving for industrial use.

*Terminal 2 Capping - Port of Portland, OR*

Bob managed the construction and assisted Beeman and Associates in the design of one the first underwater capping projects in the U.S. He developed a method of filling to allow the capping of soft sediments in the Willamette River prior to filling the area with a 40 foot sand fill. The means and methods that were developed are now used on most marine fill projects.

*Attorney-Client Privileged and Confidential*

# EXPERT REPORT
# UPPER BAYOU PROJECT

**In the matter of**

Renda Marine, Inc.

*versus*

U.S. Government

**Prepared for**

U.S. Department of Justice

Commercial Litigation Branch

Civil Division

1100 L Street, NW, Room 12052

Washington DC 20005

**Prepared by**

Robert W. Lofgren
Lofgren Imagineering & Construction Co.
2320 N.E. 110th Place
Vancouver, Washington 98686

Anchor Environmental, L.L.C
1423 Third Avenue, Suite 300
Seattle, Washington 98101

**January 30, 2004**

Robert W. Lofgren [signature]

EXHIBIT F

## Table of Contents

1 INTRODUCTION ..... 1

2 BACKGROUND AND EXPERIENCE OF QUALIFYING EXPERTS TO ADDRESS AND OFFER OPINIONS ..... 2

3 INFORMATION AND DATA REVIEWED AND CONSIDERED BY EXPERTS ..... 4

4 STATEMENT OF OPINIONS ..... 7
- 4.1 Pre-Bid Site Investigation ..... 7
- 4.2 South Ferry Landing Claim ..... 10
- 4.3 Flare Area Claim ..... 20
- 4.4 The Obstruction Claims ..... 25
- 4.5 Other Questions ..... 34
- 4.6 Additional South Ferry and Obstruction Claims Questions, October 24, 2003 letter ... 49

5 COMPENSATION ..... 53

6 REFERENCES ..... 54

### List of Tables

Table 1 Flow Velocity versus Material Type

Table 2 Pump Pressure (feet of head) from Pump Curves

Table 3 Estimated Production Rates at Upper Bayou

### List of Figures

Figure 1 Project Location and Vicinity Map

Figure 2 Site Plan

Figure 3 Cross Sections 470+00 and 472+00

Figure 4 Cross Sections 476+00 and 480+00

Figure 5 Cross Section 484+00

Figure 6 Cross Sections 524+00 and 527+35.12

Figure 7 Cross Sections 530+00 and 534+00

Figure 8 Cross Sections 538+00 and 544+06.55

Figure 9 Cross Section 556+00

Figure 10 Slope Dressing Using Box Cutting Techniques

Figure 11 Typical Slope Failure Mode

Figure 12 Production Charts for Various Materials

Figure 13 Production Chart: 24-inch dredge, with and without booster pump

## Table of Contents

Figure 14 Pipeline Routes to North Levee

**List of Appendices**

Appendix A Resume of Robert W. Lofgren

Appendix B U.S. Department of Justice letters from John Kosloske to Robert Lofgren dated May 9, 2003 and October 24, 2003

Appendix C USACE Payment Estimate – Contract Performance

Appendix D Renda Marine Dredge Disposal Plan

Appendix E Summary of Renda Marine's Report of Operations

Appendix F Renda Marine letter to U.S. Department of the Army, Galveston District Corps of Engineers, dated July 7, 1999

Appendix G Fluid velocity in pipeline as a function of pipe diameter and material characteristics

Appendix H Mobile Pulley and Machine Works Performance Curves

Appendix I Parsons Brinckerhoff Hydraulic Dredge "Pipeline" Model Results

# 1 INTRODUCTION

Anchor Environmental, L.L.C. (Anchor) was contacted by the United States Department of Justice (DOJ) in February 2003 to assist in the matter of Renda Marine, Inc. vs. United States (No. 02-306C [Fed. C1]). Anchor was asked to provide assistance on dredging related issues for three dredging obstructions and differing site conditions claims (the South Ferry Landing, Obstruction #1 and Obstruction #2 Claims), and other dredging related issues per DOJ contract number 3W-CIV01-0164. From Anchor's proposed team, DOJ specifically asked for my support, Bob Lofgren, as an Anchor subconsultant and former president of a large dredging firm, to provide expert testimony on dredging issues pertaining to the above claims. DOJ requested that I also provide expert opinion on an additional claim (i.e., Flare Area Claim).

The Upper Bayou Project was conducted as a Port of Houston sponsored dredging project managed by the United States Army Corps of Engineers (USACE), Galveston District. The project involved widening and deepening the existing Houston Ship Channel to accommodate deeper draft vessel traffic (Figure 1). The project included dredging approximately 3,500,000 cubic yards (CY) of material, some of which was to be used to build levees along Lost Lake Island. The project was advertised on June 16, 1998 with a bid opening on July 17, 1998. The USACE was responsible for preparing the bid documents and managing the construction activities. Renda Marine, Inc. was the apparent low bidder and was awarded the contract.

During construction, Renda Marine made several claims against the USACE, some of which alleged differing site conditions and unanticipated obstructions that caused delays to the dredging operations. This report states my opinions formed after reviewing the available information, and identifies the basis for my opinions. This expert report is organized into six different sections. Section 1 provides a brief introduction of the project and my role as an expert on dredging issues. Section 2 discusses my background and experience. Section 3 presents key information that I reviewed in order to formulate my opinions. Section 4 provides the Statement of Opinions for each of the claims I was asked to review. Section 5 provides the compensation to be paid to Anchor for my study and expert testimony time. Section 6 is the reference section for this report. Figures are attached at the end of this report.