IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 02-306C |
| v. | ) | |
| | ) | (Judge Hewitt) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION
TO LIMIT TESTIMONY BY DEFENDANT'S EXPERTS

Pending before the Court is the motion of plaintiff, Renda Marine, Inc. (Renda), to limit testimony by defendant's designated trial experts Jack Fowler, Ph.D., P.E., Robert Lofgren, and William F. Connole, P.E. The Court acts as a "gatekeeper" to exclude expert testimony that is irrelevant or does not result from the application of reliable methodologies or theories to the facts of the case." Micro Chemical, Inc. v. Lextron, Inc., 317 F.3d 1387, 1391 (Fed. Cir. 2003) (citing Daubert v. Merrell Dow Pharmaceuticals, Inc. 509 U.S. 579, 589-92 (1993)). Expert testimony is admissible "[i]f [it] will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702. This "'helpfulness' condition goes primarily to relevance." Westfed Holdings, Inc. v. United States, 55 Fed. Cl. 544, 574 (2003). The Daubert inquiry is a "flexible one" in which "the analysis will depend on the nature of the issue, the witness's expertise, and the subject of the testimony." Micro Chemical, 317 F.3d at 1391.

A. Jack Fowler, Ph.D., P.E.

According to Renda, "[w]hile Mr. Fowler certainly has expertise in geotechnical matters, he admitted in his deposition that he has no experience as a dredger and is not a dredging expert."

Pl. Mot. 1.[1] Renda contends that Dr. Fowler's testimony should be limited to "geotechnical matters" and that he should not be permitted to testify about "dredging" or "dredgeability matters," id., without stating what is embraced by such phrases or identifying specific opinion(s) or other matter contained in Dr. Fowler's report about which Renda contends Dr. Fowler should not be permitted to testify.

To the extent that Renda contends that Dr. Fowler is not qualified to provide an opinion about the significance of the color of soils to dredging (see Fowler report, pp. 3-4), we disagree. Dr. Fowler did not testify at his deposition that he is unqualified to give an opinion on that matter. Dr. Fowler's resume (Appendix C to his report) states that he was a principal investigator in the Corps of Engineers Waterways Experiment Station's Dredged Material Research Program "responsible for development of a Knowledge Based Expert Systems program for determining dredgeability of sediments for a work unit entitled 'Descriptors for Bottom Sediments to be Dredged.'" Fowler report, p. 32.

The publications listed at Appendix D to Dr. Fowler's report include Fowler, J. and Spigolon, S.J., "Geotechnical Descriptors for Dredgeability of Soil Sediments," *Twenty-First Annual Dredging Seminar,* New Orleans, LA, Oct. 20-21, 1988, and Spigolon, S.J. and Fowler, J., "Geotechnical Descriptors for Soils to be Dredged," *XIIth World Dredging Conference*, Orlando, FL, May 4-5, 1989. Fowler report, pp. 39, 40.

Another relevant publication not listed in Dr. Fowler's report is Spigolon, S.J. and Fowler, J., "Site Investigation for Dredging Operations," *Proc. 23d Annual Dredging Seminar*,

---

[1] "Pl. Mot. ____" refers to the referenced page(s) of "Renda Marine, Inc.'s Motion to Limit Testimony by Defendant's Experts" filed on April 14, 2004.

Center for Dredging Studies, Texas A&M University, Virginia Beach, VA, Oct. 1990, pp. 83-107, is cited by J.B. Herbich, Handbook of Dredging Engineering, (2d ed. 2000), p. 6.15, which states that "Spigolon and Fowler discuss the important soil properties that are significant for the various types of equipment employed in the several stages of a dredging operation." The Handbook of Dredging Engineering contains a table titled "Soil Properties Significant in Dredging" (Table 6.6, at p. 6.16) and cites that Spigolon and Fowler publication as a source of the information in the table. Dr. Fowler, therefore, should be permitted to provide opinion testimony about the significance of color of soils to dredging.

B. Robert Lofgren

Renda acknowledges that Robert Lofgren has "substantial dredging experience," but contends that Mr. Lofgren "should not be permitted to testify concerning, among other things, "geotechnical matters," Pl. Mot. 2, 3, without stating what is embraced by that phrase or identifying specific opinion(s) or other matter contained in Mr. Lofgren's report about which Renda contends Mr. Lofgren should not be permitted to opine at trial. Insofar as Renda contends that Mr. Lofgren should not be allowed to testify as to how a reasonably competent dredging contractor would have interpreted the contract documents for the Upper Bayou Project, including soil boring logs, we disagree. Mr. Lofgren's report states that he "has over forty years of national and international experience with both hydraulic and clamshell dredges," that he was employed by Western Pacific Dredging, a dredging contractor, where he managed "many major dredging projects" and was responsible for the design and assembly of five hydraulic dredges," and that he consults with national "dredging contractors." See Lofgren report, p.2

Moreover, Mr. Lofgren's testimony with respect to how a reasonably competent dredging contractor would have interpreted the contract documents for the Upper Bayou Project, including soil boring logs, will assist the Court in resolving one of the elements of a Type I differing site condition that must be demonstrated by Renda, e.g., the Flare Area and Section 7 Clay claims. To establish entitlement to compensation for a Type I differing site condition, Renda must prove, among other things, that "the conditions actually encountered were reasonably unforeseeable based on all the information available to the contractor at the time of bidding." H.B. Mac, Inc. v. United States, 153 F.3d 1338, 1347 (Fed. Cir. 1998) (internal quotation marks omitted). The "knowledge imputed to a contractor is the understanding that a reasonably competent bidder would have from reading the contract documents." Pleasant Excavating Co. v. United States, 229 Ct. Cl. 654, 656 (1981). Contractors "are not bound to know that which only an expert could derive from the bidding materials." Id. A "proper technique of contract interpretation is for the court to place itself into the shoes of a reasonable and prudent contractor and decide how such a contractor would act in interpreting the contract documents." Randa/Madison Joint Venture III v. Dahlberg, 239 F.3d 1264, 1274 (Fed. Cir. 2001).

Renda asserts, without demonstrating, that "any testimony" by Mr. Lofgren regarding "geotechnical matters" would be cumulative of testimony by Dr. Fowler. In fact, however, their opinions are not cumulative, either in content or from the standpoint of their training and experience. This is not a case where, as in Thorndike v. Daimlerchrysler Corp., 266 F.Supp. 2d 172, 185 (D. Me. 2003), the proffered expert merely parrots the conclusions of another expert. Mr. Lofgren, therefore, is qualified and should be allowed to testify about how a reasonably competent dredging contractor would have interpreted the contract documents for the Upper Bayou

Project, including soil boring logs.

III. William F. Connole, P.E.

Renda contends that William F. Connole, P.E., should not be permitted to testify as an expert regarding "geotechnical and geological matters," "dredging, dredging expectations, hydraulic levee design, and hydraulic levee construction," Pl. Mot. 2, again without stating what is embraced by those phrases or identifying specific opinion(s) or other matter contained in Mr. Connole's report about which Renda contends Mr. Lofgren should not be permitted to opine at trial. To the extent that Renda is contending that Mr. Connole should not be permitted, as part of his testimony, to interpret soil boring logs contained in the contract documents for the Upper Bayou Project, as part of his evaluation of Renda's damages claims, including the correctness of assumptions upon which Renda's "Measured Mile" damages methodology rests, we disagree.

Mr. Connole is President of Franvel Corporation, an engineering firm located in Tulsa, Oklahoma, that specializes in construction consulting. Connole Declaration, ¶ 1, Def. App. 1.[2] Most of his clients are levee builders. Id., ¶ 5, Def. App. 2. For the past 20 years, Mr. Connole has prepared or evaluated construction claims and he has had substantial experience with claims in Corps of Engineers projects that involve construction of levees and embankments. Id. Mr. Connole has provided construction consulting and claims services to clients for Army Corps of Engineers levee construction projects throughout the Southeastern United States and also in Oklahoma, Texas, Missouri, and Arkansas, including projects along the Mississippi River from St. Louis to New Orleans. Id. In that connection, Mr. Connole has been qualified by the Corps of Engineers Board of Contract Appeals, among other things, as an expert upon the means and

---

[2] "Def. App. ___" refers to the referenced page(s) of the appendix to this response.

methods of constructing embanked material with soils of different classifications and moisture content as well as an expert with respect to damages and delay. Id., ¶ 7, Def. App. 2.

The claims that Mr. Connole evaluates frequently involve differing site conditions claims in which he is called upon to testify as to the reasonableness of the contractor's interpretation of soil boring logs and bid, as well as the effect upon construction activities of any earth materials encountered that vary from what is indicated in the contract documents. Connole Declaration, ¶ 6, Def. App. 2. In Mr. Connole's experience, evaluation of the boring logs usually is central to the issue in any damages calculation for an earthwork project and Mr. Connole makes those evaluations and prices the cost associated with those differences. Id. As may be required, Mr. Connole orders, witnesses, and reviews soil boring logs, soil samples, and other soil tests to evaluate their properties and construction issues. Id.[3/]

Although Mr. Connole admittedly is not an expert in the design or operation of dredges, he is more than qualified to evaluate the costs associated with dredging equipment for purposes of claims, having evaluated and prepared marine equipment costs for at least 30 claims, including dredging equipment. Connole Declaration, ¶ 9, Def. App. 3. In Renda's case, Mr. Connole evaluated, among other things, the marine equipment cost components of Renda's claims, including Renda's use and application of the Corps of Engineers Construction Equipment Ownership and Operating Expense Schedule, EP 1110-1-8 (Vol. 6) (June 1999). Id. In that connection, Mr.

[3] At his deposition in this case, Mr. Connole was asked whether he "know[s] enough about soils to be able to determine what its geological background is?," to which he replied that he would "leave it to somebody else" to tell him what "age" a soil is. Connole Depo. Tr. 41(16-22)-42(1), Def. App. 9-10. But this case and Mr. Connole's opinions regarding soil conditions concern the *engineering* properties of soils (e.g., strength, moisture content), *not* their geological properties.

Connole has been qualified by the Armed Services Board of Contract Appeals as an expert in the use and application of the Corps of Engineers Construction Equipment Ownership and Operating Expense Schedule. Id., ¶ 10, Def. App. 3.

Renda asserts, without demonstrating, that "any testimony" by Mr. Connole regarding "geotechnical and levee design matters" and "dredging issues" would be cumulative. In fact, however, their opinions are not cumulative, either in content or from the standpoint of their professional perspectives. Again, this case is unlike Thorndike where the proffered expert merely parroted the conclusions of other experts. Mr. Connole, therefore, is qualified and should be permitted to provide opinion testimony relative to, among other things, the interpretation of boring logs contained in the contract documents for the Upper Bayou Project, the means and methods of levee construction, and the pricing of dredging equipment for a differing site conditions claim.

For the foregoing reasons, plaintiff's motion to limit testimony by defendant's trial experts Jack Fowler, Ph.D., P.E., Robert Lofgren, and William F. Connole, P.E., should be denied.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/John E. Kosloske
JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-0282
(fax) (202) 514-8624

Attorneys for Defendant

OF COUNSEL:

MR. P. ALEX PETTY
Assistant District Counsel
Office of Counsel
Galveston District
U.S. Army Corps of Engineers
Galveston, TX

APRIL 30, 2004

# DEFENDANT'S APPENDIX

# INDEX TO DEFENDANT'S APPENDIX


| **Document** | **Page** |
|---|---|
| Declaration of William F. Connole, P.E. dated April 29, 2004 .................................... | 1 |
| Excerpt from transcript of April 9, 2004 deposition of William F. Connole, P.E. ....... | 4 |

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC., | ) | |
| Plaintiff, | ) | No. 02-306C |
| v. | ) | (Judge Hewitt) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DECLARATION OF WILLIAM F. CONNOLE, P.E.

I, WILLIAM F. CONNOLE, P.E., declare as follows:

1. I am the President of Franvel Corp., an engineering firm located in Tulsa, Oklahoma, that specializes in construction consulting. I have been designated by the United States Department of Justice as expert witness in the above captioned proceeding, which is scheduled for a trial in Houston, Texas, in June 2004.

2. On January 30, 2004, I issued a six-volume report titled "Evaluation of Claims submitted under Renda Marine, Inc. v. United States, No. 02-306C (Fed. Cl.)." My curriculum vitae appears at Appendix A at the end of Volume I of the report.

3. On April 9, 2004, Brian Erikson, Esq., attorney for Renda Marine, Inc. (Renda) took my deposition in Washington, D.C., at the offices of the Commercial Litigation Branch, Department of Justice.

4. I was retained by the Department of Justice to evaluate Renda's claims in the above captioned action, in particular the damages claimed by Renda, including, but not limited to, the delay and loss-of-productivity components of Renda's claims. My evaluation of Renda's claims is contained in the January 30, 2004 written report identified above.

5. I have been preparing or evaluating construction claims for the past twenty years. I have substantial experience with claims in Corps of Engineers projects that involve construction of levees and embankments. Over the years, most of my clients have been levee builders and most of my work involves heavy construction. I have provided construction consulting and claims services to clients for U.S. Army Corps of Engineers levee construction projects mainly in the Southeastern United States but also in Oklahoma, Texas, Missouri, and Arkansas, including projects along the Mississippi River from St. Louis to New Orleans.

6. The claims that I evaluate frequently are differing site conditions claims in which I am asked to testify about the reasonableness of the contractor's interpretation of soil boring logs, the reasonableness of the contractor's bid, and the effect upon construction activities where the earth materials encountered vary from what is indicated in the contract documents. Evaluation of the boring logs usually is central to the issue in any damages calculation for any earthwork project. I make those evaluations and price the cost associated with those differences. As may be required, I order, witness, and review soil boring logs, soil samples, and other soil tests to evaluate their properties and construction issues.

7. In the Appeal of Jim Smith Contracting Company, Inc., ENG BCA No. 6324, listed on my curriculum vitae, which involved a contract for a Corps of Engineers levee enlargement project, I was qualified by the Corps of Engineers Board of Contract Appeals as an expert on the means and methods of constructing embanked material with soils of different classifications and moisture content.

8. In the Appeal of Souter Construction, Inc., ENG BCA No. 5701Q, also listed on my curriculum vitae, which involved a contract for a Corps of Engineers rock excavation and disposal project, I was qualified by the Corps of Engineers Board of Contract Appeals as a damages and delay expert.

9. Renda priced the equipment component of its claims using the Corps of Engineers Construction Equipment Ownership and Operating Expense Schedule, EP 1110-1-8 (Vol. 6) (June 1999). I evaluated the land-based and marine equipment components of Renda's claims, including Renda's use and application of the Construction Equipment Ownership and Operating Expense Schedule. I have had considerable experience with the use and application of the Corps' Construction Equipment Ownership and Operating Expense Schedule in pricing equipment costs for claims. I have evaluated and prepared marine equipment costs for at least 30 claims, including dredging equipment.

10. In the Appeal of Four F. Corporation, ASBCA No. 48161, also listed on my curriculum vitae, I was qualified by the Armed Services Board of Contract Appeals as an expert in the use and application of the Corps of Engineers Construction Equipment Ownership and Operating Expense Schedule.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 29, 2004, at Tulsa, Oklahoma.

[signature]

WILLIAM F. CONNOLE, P.E., President
Franvel Corp.
1416 South Terrace Drive
Tulsa, OK 74104
Tele: (918) 749-3592

UNITED STATES COURT OF FEDERAL CLAIMS

- - - - - - - - - - - - - - X
RENDA MARINE, INC., :
Plaintiff, :
vs. : Case No. 02-306C
UNITED STATES ARMY CORPS OF : (Judge Hewitt)
ENGINEERS, :
Defendants. :
- - - - - - - - - - - - - - X Pages 1-233

Deposition of WILLIAM F. CONNOLE, P.E.
District of Columbia
Friday, April 9, 2004

Reported by: Marilyn Feldman, RPR
Job No. 159633



4

April 9, 2004

9:05 a.m.

Deposition of WILLIAM F. CONNOLE, P.E. held at the offices of:

U.S. Department of Justice

1100 L Street, NW

Washington, D.C. 20005

Pursuant to notice, before Marilyn Feldman, Registered Professional Reporter, a Notary Public in and for the District of Columbia.

APPEARANCES:

For the Plaintiff:

Brian W. Erikson, Esq.
Quilling, Selander, Cummiskey & Lownds, PC
2001 Bryan Street, Suite 1800
Dallas, TX 75201
(214) 871-2100

For the Defendant:

John E. Kosloske, Esq.
U.S. Department of Justice
Civil Division, Commercial Litigation Branch
1100 L Street, NW, Room 12052
Washington, D.C. 20005
(202) 307-0282

Also Present:

Oscar Renda (a.m. session)
Barry L. Smith

CONTENTS


EXAMINATION OF WILLIAM F. CONNOLE: PAGE:
BY MR. ERIKSON 5
BY MR. KOSLOSKE 228

CONNOLE DEPOSITION EXHIBITS: * PAGE:
1 Notice of Deposition 77
2 Inspection Report of Dredging Galveston District 101
3 Renda Marine Report of Operations 101
4 Log of Soil boring 203
5 Approx. Boring Locations 203


* Exhibits attached to deposition.

Thereupon,

WILLIAM F. CONNOLE, P.E.

after having been duly sworn (or affirmed) by the notary, was examined and testified as follows:

EXAMINATION BY COUNSEL FOR PLAINTIFF

BY MR. ERIKSON:

Q. Mr. Connole, my name is Brian Erikson. Could you state your name for the record?
A. William F. Connole.
Q. Mr. Connole, you have been deposed before, right?
A. Yes, I have.
Q. Are you familiar with the rules concerning depositions?
A. I would say I'm vaguely familiar with them. I couldn't recite them.
Q. If at any time during the course of this deposition I ask you a question that you don't understand or it wasn't clear, inarticulate, unintelligible, will you agree to stop me and have me repeat the question so you understand it?
A. I'll do my best.

A. Well, I think when you talk about a stiff clay, you are talking about something that's bound together in soil. It would not be stiff clay as maintenance material.

Q. Do you consider yourself to be a geotechnical expert?

A. I wouldn't consider myself to be a geotech expert, although through the years I have gained a lot of geotechnical knowledge and we do do dam safety inspections for the Corps of Engineers in the Tulsa District and you have to be able to recognize soils and know when a relief well system or something like that along the dam is beginning to show signs of repair or need repair or degradation.

Q. Do you know enough about soils to be able to determine what its geological background is?

A. No.

Q. That's something you would leave for geologists or geotechnical experts?

A. I would leave it to somebody else to

tell me what age it is.

Q. Any other involvement with a confined disposal facility?

A. Yes, that was in the New Orleans District.

Q. What was that project about?

A. It was dredging on the lower Mississippi and the disposal area was to be behind a perimeter rock dike -- or I guess it wasn't a perimeter rock dike, it was a rock dike, as I recall, that was in the water and then the shore formed the other bank of the facility. So it was a combined disposal facility, it's just one side of it was a rock dike.

Q. Let me go back to the Verdigris River project. I assume in that project there were no issues over problems pumping the material, right?

A. No.

Q. There were no issues concerning dredging of the material, right?

A. No, that's correct.

Q. It was just a function of whether or