UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC., | § | |
| PLAINTIFF, | § | |
| | § | CASE NO. 02-306C |
| V. | § | |
| | § | (JUDGE HEWITT) |
| UNITED STATES | § | |
| DEFENDANT. | § | |

# PLAINTIFF'S RESPONSE TO DEFENDANT'S REVISED MOTION TO LIMIT TESTIMONY BY PLAINTIFF'S EXPERTS

TO THE HONORABLE COURT:

Plaintiff, Renda Marine, Inc., files this Response to Defendant's Revised Motion to Limit Testimony by Plaintiff's Experts, as follows:

## I.

## BACKGROUND

1. This suit concerns eight (8) different claims by Plaintiff against the United States, through the United States Army Corps of Engineers ("Corps"). Plaintiff first submitted Requests for Equitable Adjustment ("REA") to the Corps arising from Plaintiff's performance of Contract No. DACW64-99-C-0001 (the "Contract") for the "Houston-Galveston Navigation Channels, Texas, 45-Foot Project, Dredging Upper Bayou" (the "Project"). The Corps acknowledged that some of the REA's had merit and denied others. When the Corps delayed in paying or resolving the REA's, Plaintiff converted them to certified claims. This suit resulted from the Corps' failure to pay or otherwise resolve the certified claims.

2. Under an earlier version of this Court's Scheduling Order, Plaintiff designated three testifying experts. The three designated, testifying, experts are: Christopher Mathewson, Ph.D., P.E. ("Dr. Mathewson"), Robert McCullough, Jr. , P.E., ("McCullough"), and Benton Goodloe ("Goodloe").

3. Dr. Mathewson is Plaintiff's geotechnical expert. As is set forth in his report, he is expected to testify with regard to Plaintiff's claims pertaining to the "Flare Area", the "South Ferry Landing", "Section 7 Clay", and the "Lost Lake Placement Area Levees". Mr. McCullough, is a certified cost engineer. Mr. McCullough's talent is to analyze conditions and expenses against a template of what is commonly done in the industry, and then formulate conclusions. Mr. McCullough was asked, *inter alia*, to review the claims Plaintiff made to the Corps, to evaluate any Corps response, and to evaluate the audit conducted at the Corps' request. Mr. Goodloe worked on the Project as Plaintiff's dredging manager. Mr. Goodloe is a dredging expert, and has over 30 years experience in dredging operations. He is expected to testify *inter alia,* regarding the obstructions Plaintiff encountered during dredging operations, the industry custom with regard to such obstructions, the type of clay encountered during dredging, the impact on dredging operations when stiffer material or obstructions were encountered, the lack of sufficient material to build the levees, and site condition at the Lost Lake Placement Area.

**II.**

**DEFENDANT'S COMPLAINTS**

4. Defendant complains that Dr. Mathewson and Mr. McCullough are expected to provide opinions on the ultimate issue, and argues that such is improper and should not be allowed. With regard to Mr. Goodloe, Defendant complains about his lack of qualification to render opinions regarding levee design. In so doing, Defendant seeks to exclude the various expert's testimony

pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.,*509 U.S. 579, 597 (1993), and its progeny.[1]

5. Before addressing Defendant's specific complaints, it is important to recognize that the issue in *Daubert* can be summed up in one word, reliability.[2] Thus, a trial court *may* consider one or more of the specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability. The test of reliability, however, is flexible, and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case.[3] Indeed,

> [T]here is no requirement that the District Court always hold a *Daubert* hearing prior to qualifying an expert witness under [Fed. R. Evid.] 702. [Fed. R. Evid.] 702 permits a district court to allow the testimony of a witness whose knowledge, skill, training, experience or education will assist a trier of fact in understanding an area involving specialized subject matter.[4]

For the admission of expert testimony to be erroneous, it must plainly appear that such error was "clear and obvious" and that it not only affected the defendant's substantial rights, but it also seriously impaired the fairness, integrity, or public reputation of the judicial proceedings.[5]

## III.

## PLAINTIFF'S RESPONSE, DISCUSSION AND AUTHORITIES

### A. DR. MATHEWSON:

6. As is set forth in Plaintiff's Memorandum of Contentions of Fact & Law:

---

[1]. *E.g., Kumho Tire Co., Ltd. v. Carmichael,*526 U.S. 137 (1999).

[2]. *See, Id* at 1171.

[3]. *Id.*

[4]. *United States v. Solorio-Tafolla*, 324 F.3d 964, 965-66 (8th Cir. 2003).

[5]. *United States. v. Diaz,* 300 F.3d 66, 76 (1st Cir. 2002)(internal citations omitted).

> While performing its work, Renda encountered various differing site conditions or changed conditions that caused Renda to expend substantial additional funds and to invest additional time in performing its work. Because of these differing site conditions or changed conditions, Renda submitted multiple Requests for Equitable Adjustment ("REA") to Defendant. When Defendant ignored the REA's, Renda resubmitted them as Certified Claims.[6]

In other words, the gist of Plaintiff's claims are that Plaintiff either encountered differing site conditions or changed site conditions. The legal difference in the two is set forth in Plaintiff's Memorandum of Contentions of Fact and Law ("Plaintiff's Memorandum").[7] As is set forth in Plaintiff's Memorandum, Plaintiff is seeking to recover for both type I differing site conditions,[8] and type II differing site conditions.[9] There are well accepted elements of proof that must be shown in order to arrive at a "true differing site condition". Characterizing a particular condition as a "differing site condition" is simply a "short hand" rendition of those elements.

7. Whether there was a difference between contract documents indications as to site conditions and those that a contractor actually encountered is a fact question. Whether the difference was material is also a fact question. Dr. Mathewson will testify as to the existence of a difference, and its materiality. Such testimony is not precluded by Defendant's cited precedents.

---

[6]. Renda Marine, Inc.'s Memorandum of Contentions of Fact & Law, at pps. 1-2.

[7]. *Id*, at pps. 29-30.

[8]. In order to recover additional costs for a type I differing site condition, Plaintiff must show: 1) the contract documents affirmatively indicate the subsurface or latent conditions forming the basis of the claim; 2) the Plaintiff acted as a reasonable and prudent contractor in interpreting the contract documents; 3) the Plaintiff relied on the indications of the subsurface or latent conditions in the contract; 4) the subsurface or latent conditions actually encountered at the site materially differed from the contract indications; 5) the actual conditions were reasonably unforeseeable; and 6) the costs claimed was solely attributable to materially different subsurface conditions. *Appeal of Simpson Const. Co.*, 91-1 BCA P 23,630, VABCA No. 3176 (1990).

[9]. In order to recover costs resulting from a type II differing site conditions, the Plaintiff must show: 1) it did not know about the physical condition; 2) it could not have anticipated the condition from inspection or general experience; and 3) the condition varied from the norm in similar contracting work. *Lathan Co., Inc., v. United States*, 20 Cl. Ct. 122, 128 (1990).

8. The Government, appears to take the position that having a clearly qualified expert testify as to the ultimate issue is somehow inappropriate. In support of its position, the Government cites as controlling authority a thirty-five year old precedent.[10] While the precedent appears to remain good law as to other matters, it clearly was written prior to the current formulation of the Federal Rules of Evidence. Fed. R. Evid. 704, which undercuts Defendant's proposition, states in pertinent part:

> ...testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

Certainly it is axiomatic that contract interpretation is a question of law for the court. It is not impermissible, however, for an expert to testify with regard to his analysis of facts, that if believed by the Court would necessarily impact the ultimate issue. Courts have repeatedly held that experts may express an opinion on the "ultimate questions". Testimony "is not defective merely because it utilize[s] the words of the legal standard. Commonly used words and their plain meaning often match their legal meaning."[11] Further, an expert may offer an opinion as to facts, that if found, would support the conclusion that the legal standard at issue was satisfied.[12] This is all Dr. Mathewson seeks to do, no more, and no less. Accordingly, he should be permitted to testify as set forth in his report, and Defendant's motion as to Dr. Mathewson should be in all things, denied.

**B. MR. MCCULLOUGH:**

9. Defendant's seek to exclude Mr. McCullough's testimony complaining that Mr. McCullough "sets forth opinions with respect to the interpretation and application of two

---

[10]. *Foster Construction Co. v. United States,* 193 Ct. Cl. 587, 435 F.2d 873 (1970).

[11]. *United States v. Two Eagle,* 318 F.3d 785, 793 (8th Cir. 2003).

[12]. *Burkhart v. Washington Metro. Area Transit Auth.,* 112 F.3d 1207, 1212-13 (D.C. Cir. 1997).

regulations." Defendant goes on to charge that "opinion testimony concerning the meaning of a regulation is improper." However, Mr. McCullough has not been retained to testify as to the meaning of a regulation. He will testify concerning his use of the regulations, how he applied the regulations to the facts, and the results he obtained. Mr. McCullough's testimony is proper, appropriate and admissible.

10. In the course of Plaintiff's claims, the Defense Contract Audit Agency ("DCAA") undertook limited audits of Plaintiff's REA's and certified claims. The DCAA made no attempt to determine entitlement, as the Corps refused to respond to the DCAA's request for technical analyses. In its audits, the DCAA noted areas of concern that the parties needed to address.

11. Mr. McCullough was tasked with evaluating and analyzing the Corps' responses to Plaintiff's claims. In so doing, he necessarily was guided, *inter alia*, by the applicable regulations, as well as by the DCAA's audit reports and other documents Defendant provided. Mr. McCullough has expertise in evaluating and costing engineering claims. Certainly it is not Plaintiff's intention to invade the province of the Court. The purpose of an expert, however, is to assist a trier of fact in understanding specialized subject matters, with the expert's knowledge, skill, training, experience or education.[13] Clearly, the Court can choose to accept or reject such expert testimony as it deems appropriate.

12. Again, Defendant intimates that Mr. McCullough should not be opining as to ultimate issues. Fed. R. Evid. 704 allows Mr. McCullough to do so. It would be awkward and cumbersome for Mr. McCullough to testify at length about his accumulation of costs for a particular claim, without expressing why he had done so. Obviously, Mr. McCullough's cost accountings for claims

---

[13]. *United States v. Solorio-Tafolla,* 324 F 3d. 964, 965-66 (8th Cir. 2003).

implicitly connote his opinions regarding merit for the claim. The fact that he collected costs in the first place for a claim indicates that he has opinions about the merit of the claim. He is certainly permitted to testify as to why under the circumstances he included certain costs, and the facts upon which the claim is based. His opinion as to merit simply answers an "ultimate question" permissible under Fed. R. Evid. 704.

13. Mr. McCullough will *not* be opining to the Court what meaning the Court should assign to a given regulation or a regulatory provision. Mr. McCullough will testify as to his use of regulations in developing the appropriate costs and values for Plaintiff's claims. Mr. McCullough's methodology to determine the quantum of Plaintiff's claims is relevant to the case, and will assist the Court in understanding the Plaintiff's case. Accordingly, Defendant's motion to exclude portions of Mr. McCullough's testimony should be denied.

**C. MR. GOODLOE**

14. Mr. Goodloe is a fact witness, with special expertise developed over the years in marine dredging and construction. It is not necessary that a witness have a myriad of degrees in order to qualify as an expert on a given subject.[14] Mr. Goodloe has been in the dredging business since 1970, and was Plaintiff's dredging and project manager for the Project. During his over 30 years in the dredging business, he held "all different positions on a dredge" and has worked as project manager or superintendent on numerous hydraulic dredging operations, some of which included the building of levees.[15]

---

[14]. *See, Id* at 966; Fed. R. Evid. 702.

[15]. Defendant's Appendix, at pps. 43, 44 and 45.

15. It is true that Mr. Goodloe is not a man of letters, however, few individuals in his line of work are. He is, however, based upon his experience, intimately familiar with industry standards in dredging operations, and has certainly been involved in levee projects in the past. He is, therefore, qualified to testify as an expert in hydraulic dredging and levee building.

16. The Government seeks to exclude his testimony with regard to the "design or construction of levees" because he is not "qualified by education." Mr. Goodloe will not testify as to how Defendant should have designed the hydraulic levees, the calculations that Defendant should have employed and the design process that was necessary. Mr. Goodloe will testify that based on his experience (both on this Project and others) the hydraulic levees were not constructible as designed.

17. Mr. Goodloe's situation could be likened to a race car driver who has taken a number of laps in a particular car. Based on his experience, he could testify as to the car's expected top speed and performance, without having the education to design the car's engine in the first place.

18. While the record clearly shows that he *is* qualified by experience, his opinions with regard to levee building in this instance are admissible in any event. Fed. R. Evid. 701 allows a witness to testify in the form of opinions or inferences which are "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge." Thus, even though Mr. Goodloe does not possess the requisite college education concerning levee design, as the project manager, he is still competent to testify as to why, in his opinion, the "levees could not be built as designed" based upon his own observation and perception.

19. Thus, the Government's complaint raises a distinction without a difference. Clearly, Mr. Goodloe is competent to testify as an expert with regard to dredging operations. Indeed, the Government does not challenge him in this area. He also has the requisite experience to testify regarding how the levee performed on this Project. He was the dredging and project manager on the Lost Lake Placement Area Levee. As such, he observed first hand, all of the issues and problems with the Corps' levee design. Accordingly, whether he testifies pursuant to rule 701 or 702, his opinion as to whether or not the levees could be built as designed, are admissible. Accordingly, the Government's motion to exclude portions of Mr. Goodloe's testimony should also be denied.

## IV.

## SUMMARY AND CONCLUSION

20. Fed. R. Evid. 704 makes it clear that the objected to portions of Dr. Mathewson and Mr. McCullough's expert testimony are not objectionable. While the Government seeks to exclude a portion of Mr. Goodloe's analysis, it is also clear from Fed. R. Evid. 701 and 702, that such testimony is admissible in any event. All of Plaintiff's experts are qualified, and there is nothing raised in the Government's motion that attacks their reliability. Accordingly, Plaintiff prays that Defendant's Revised Motion to Limit Testimony by Plaintiff's Experts be in all things DENIED.

Respectfully submitted,

QUILLING, SELANDER, CUMMISKEY & LOWNDS, P.C.

BY: s/Brian W. Erikson
Brian W. Erikson, TX Bar No. 06643800

2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Telefax)

ATTORNEYS FOR RENDA MARINE, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of February, 2005, a true and correct copy of the Response to Defendant's Revised Motion to Limit Testimony by Plaintiff's Experts, was served electronically through the CM/ECF system for the Court of Federal Claims.

s/Brian W. Erikson
Brian W. Erikson