UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC., PLAINTIFF, | § § § | CASE NO. 02-306C |
| V. | § § | (JUDGE HEWITT) |
| THE UNITED STATES, DEFENDANT. | § § | |

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE EXPERT REPORT OR IN THE ALTERNATIVE TO LIMIT TESTIMONY**

TO THE HONORABLE COURT:

RENDA MARINE, INC., ("Plaintiff") files this its reply to Defendant's Opposition to Plaintiff's Motion to Strike Expert Report or in the Alternative to Limit Testimony (the "Defendant's Response"), as follows:

1. In the absence "of other directions from the court or stipulation by the parties", RCFC 26(a)(2)(C) controls when reports by rebuttal experts are due.[1] By the contents of Defendant's Response, Defendant admits that the Expert Witness Report of Michael Hasen, P.E., dated January 30, 2005, is untimely, and should be stricken.[2] The factual chronology with regard to this issue, is set forth in table 1, below:

[1]. RCFC (a)(2)(B) requires that as part of the disclosure of expert testimony, a disclosure "shall...be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefore;" RCFC (a)(2)(C) governs "rebuttal experts" and states: "if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under paragraph (2)(B) [such as Dr. Mathewson, the report shall be delivered] within 30 days after the disclosure made by the other party."

[2]. RCFC 37(c)(1); *See, Hester v. CSX Transportation, Inc.*, 61 F3d 382 (5th Cir. 1995)(construing Fed. R. Civ. P. 26(a)(2)(C)).

**Table 1**

| item | description/event | date | Δ time |
|---|---|---|---|
| 1. | Superseding Report of Dr. Mathews | 11-17-04 | -30 days |
| 2. | disclosure of Mr. Hasen as a rebuttal expert due per RCFC (a)(2)(C) | 12-17-04 | 0 |
| 3. | Court's order allowing "necessary" rebuttal experts | 12-28-04 | +11 days |
| 4. | Mr. Hasen's report disclosed to Plaintiff | 2-2-04 | +47 days |
| 5. | Plaintiff files Motion to Strike Hasen Report | 2-4-04 | +49 days |

Absent court intervention, the Rules of the Court of Federal Claims dictate the timing with regard to supplementing expert reports, including those of "rebuttal" experts. The clear direction is that such reports are due 30 days after "the disclosure made by the other party". In other words, once Plaintiff delivered its superseding reports rebuttal expert reports were due thirty days later in accordance with RCFC (a)(2)(C).

2. Oddly, the Government's rhetoric implies that the Plaintiff is to blame for the Government's untimely designation and disclosure of Mr. Hasen. Such argument is at worst misleading, and at best disingenuous. Had the Government not engaged in a pattern and practice of document destruction and spoliation, and had the Government not resisted the production and discovery of clearly relevant evidence, there would have been no need for the Court to vacate the previous scheduling order, nor for Plaintiff's experts to render superseding reports. For the Government to now insinuate that Mr. Hasen's 11th hour designation and untimely report disclosure is the Plaintiff's fault, is unconscionable.

3. The Government argues that Mr. Hasen is "the natural choice of expert", and that the Government "has a perfect right under RCFC 26(a)(2)(C)" to designate a rebuttal expert. It is indeed

interesting that after years of pre-trial discovery, preparation and analysis, the Government only now recognizes this "logic", and decides to utilize the original designer as an expert at trial to defend his own design. If Mr. Hasen is the natural choice, why did the Government initially designate Dr. Fowler to testify regarding the *same subject matter?* The Government's switch of horses indicates that the Government has now lost confidence in its original expert. Plaintiff deposed Dr. Fowler about two years ago, and has prepared for trial with Dr. Fowler in mind. Defendant should not be allowed on the eve of trial to abandon Dr. Fowler.

4. Defendant has admitted that "much of the design basis of the [hydraulic] levees came from [Dr. Fowler's] research." See Plaintiff's Exhibit 1820, appended as Exhibit A. Plaintiff has prepared at length for Dr. Fowler and his hydraulic levee research. Defendant's notice came so late that Plaintiff was not even provided a chance to submit excerpts from Dr. Fowler's deposition.

5. In the light most favorable to complying with the spirit and the purpose of the rules, Mr. Hasen should have been disclosed pursuant to RCFC (a)(2)(C) no later than December 18, 2004. If one wanted to be overly charitable to the Government, one could interpret the Court's order of December 28, 2004, which suggested the potential of a rebuttal expert, as somehow modifying the requirements of RCFC (a)(2)(C). If one accepts that analysis, however, since the Court did not provide specific deadlines with regard to disclosure of any rebuttal expert (except that such should be done "expeditiously"), RCFC (a)(2)(C) dictates that such disclosure was due 30 days after the order, or January 28, 2005. Mr. Hasen was not disclosed as a rebuttal expert until February 2, 2005, six (6) days too late. Thus, in the light most favorable to the Plaintiff, the Government was forty-seven (47) days late, in the light most favorable to the Government, it was six (6) days late. Any way it is calculated, the designation of Mr. Hasen was untimely and late.

6. The sanction for failing to timely disclose experts, including rebuttal experts, is clear and mandatory.[3] RCFC 37(c)(1) states in pertinent part:

> "A party that without substantial justification fails to disclose information required by RCFC26(a) or 26(e)(1), or to amend a prior response to discovery as required by RCFC 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed."

In exercising its discretion in refusing to permit the undisclosed expert to testify, Court's have looked to four factors: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness in not disclosing the evidence at an earlier date.[4]

7. The prejudice and surprise is patent and obvious. Plaintiff took the deposition of Dr. Fowler almost a year ago. Dr. Fowler was the *only* geotechnical expert Defendant designated. For a year, the Plaintiff has prepared its case in rebuttal to Dr. Fowler's opinions and conclusions as they affect Plaintiff's various claims.

8. The only way that the Defendant can cure the prejudice, is to withdraw Mr. Hasen, and go with its originally designated expert. The only way that Plaintiff could cure the prejudice, would be to once again postpone the trial date, due to the misconduct of the Government. In short, the prejudice cannot be reasonably cured. To allow Mr. Hasen to be Defendant's geotechnical expert, the trial schedule will be disrupted.

---

[3]. *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003) ("the sanction of exclusion is automatic and mandatory").

[4]. *Spray-Rite Serv. Corp. v. Monsanto Co.*, 684 F.2d 1226, 1245 (7th Cir. 1982); *cited as controlling*, *David v. Caterpillar, Inc.*, *supra*, at 857.

9. Finally, Mr. Hasen may be Defendant's "natural choice"as a geotechnical expert. However, when Mr. Hasen was contacted about assisting Dr. Fowler concerning the Flare Area soil borings, Mr. Hasen wrote an email stating: "We were involved in the design of the disposal areas directly under contract to the USACE but didn't do any borings along the channel." See Plaintiff's Exhibit 1835, appended as Exhibit B.

10. Defendant's preference for Dr. Fowler over Mr. Hasen was clear. Defendant had Mr. Hasen meet with Dr. Fowler to discuss the Project's design in September 2003, but did not select Mr. Hasen as an expert for well over a year later. See Plaintiff's Exhibit 1849, appended as Exhibit C.

11. Indeed, the Government candidly admits that Mr. Hasen was "tentatively identified...as a rebuttal expert witness shortly" after this Court's December 28, 2004 order.[5] Defendant is clearly trying to replace Dr. Fowler as a witness since Dr. Fowler was more frank and forthright in his deposition than Defendant preferred.

12. Having flouted the spirit as well as the letter of the rules, Defendant next takes a "you can't make me" attitude. In its response to Plaintiff's Motion, the Government declares that Mr. Hasen will, indeed, be called to cover much more than the supplemental information in Dr. Mathewson's report, admitting that its purpose it utilizing Mr. Hasen is unfair surprise.[6] Citing to *Gomez v. Rivera Rodriguez,* 344 F.3d 103, 113 (1st Cir. 2003), the Government states that it does not have to designate a percipient witness who happens to be an expert.[7] Defendant further contends

---

[5]. Defendant's Response at page 7.

[6]. *See,* Defendant's Response at page 8.

[7]. If such is the case, why does the Government seek to have Mr. Goodloes' testimony stricken or otherwise limited in Defendant's Revised Motion to Limit Testimony by Plaintiff's Experts?

that its failure to timely designate Mr. Hasen "would not prevent [him] from testifying to factual matters as to which he has first-hand knowledge, such as the detailed design prepared by HVJ Associates for the hydraulically-placed levees at Lost Lake." Did the Government really expect in good faith, to cover such matters in one hour of direct testimony?[8]

13. Plaintiff does not contest that the Government can call fact witnesses as it deems appropriate, however, Plaintiff does urge that had this matter proceeded to trial on the original trial date, Mr. Hasen would not have testified, as he was listed only as a "may call" witness on that witness list. As is set forth on the Defendant's Trial Witness List filed on May 12, 2004, Mr. Hasen does not appear on the list of "Witnesses Whom the Government Expects to Present at Trial."[9] Indeed, Mr. Hasen appears on said list only as a witness "Whom the Government May Call At Trial if the Need Arises",[10] and then well down on the list, as number 9 out of 12.[11]

14. Directly opposing Defendant's contention that Plaintiff cannot be surprised because Mr. Hasen was "disclosed" in their witness list, is the fact that on their original witness list the Government represented to the Court and the Plaintiff "Mr. Hasen's direct testimony is expected to take one hour." Further, during the original discovery time period in this action, substantial discussion was held with the Government's counsel, regarding depositions, and who needed to be deposed. Mr. Hasen was never discussed, and indeed, was never designated on any of the original

---

[8]. *See,* Appendix to Defendant's Response at page 8, statement of Mr. Hasen's expected testimony.

[9]. A copy of Defendant's Trial Witness List, dated May 12, 2004, is included in Plaintiff's Appendix, attached hereto, and marked as Exhibit "D". The "will call" list is at pages 1-6.

[10]. Exhibit A at page 9.

[11]. Inasmuch at the witnesses have not been alphabetized, it is conjectured that they are listed in their order of relative importance or likelihood to be called.

expert lists. If he was, as the Government now contends, the "natural choice", why was he not timely disclosed during the previous discovery period?

## SUMMARY AND CONCLUSION

15. But for the discovery abuses of the Government, this matter would have gone to trial last year. After the wrongfully withheld documents were finally produced, the Plaintiff's experts timely and expeditiously rendered superseding reports. Per RCFC 26 (a)(2)(C), any rebuttal expert designation (along with their report) was due thirty days after the superseding report.

16. As a result of this Court's order of December 28, 2004, the Government's motion to strike the superseding reports was essentially denied, however, the Court's order permitted a rebuttal expert for the Government.[12] The Court's order was silent on the timing of the production/designation of such rebuttal expert, and per RCFC 26 (a)(2)(C), such should have been accomplished within thirty (30) days of the order. It was not.

17. The fact that the Government has failed to comply with RCFC 26 (a)(2)(C) is clear and uncontroverted. The sanction for such activity is set forth in RCFC 37 (c)(1), and is mandatory–the exclusion of the testimony and the striking of the report. The only exception to this sanction is if the failure to disclose was harmless. Given the actions and activities of the Government in this action, particularly the past actions of discovery abuse, it cannot credibly be said that such action was harmless. Accordingly, the expert report of Mr. Hasen must be stricken. Additionally, while it is true that Mr. Hasen can be called to testify as a fact witness, the Government

[12]. The December 28, 2004 Order stated in pertinent part: "Defendant may obtain a rebuttal expert report with respect to the Lost Lake Levees claim, and the parties shall cooperate in the expeditious scheduling of any necessary deposition of such rebuttal expert."

should be limited to one hour of direct testimony, as is set forth in its witness list, so that the Government will not profit from its own violation of the rules.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that the witness report of Michael Hasen, P.E. be stricken, and as an additional equitable sanction, that his direct testimony be limited to one hour, and for such other and further relief to which Plaintiff may justly be entitled.

Respectfully submitted,

QUILLING, SELANDER, CUMMISKEY & LOWNDS, P.C.

BY: s/Brian W. Erikson
Brian W. Erikson, TX Bar No. 06643800

2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Telefax)

ATTORNEYS FOR RENDA MARINE, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on the11th day of February, 2005, a true and correct copy of Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion to Strike Expert Report or in the Alternative to Limit Testimony, was served electronically through the CM/ECF system for the Court of Federal Claims.

s/Brian W. Erikson
Brian W. Erikson

**From:** Russek, Eric G SWG [/O=ORGANIZATION/OU=USACE SWG GALVESTON TX/CN=RECIPIENTS/CN=LOCAL/CN=M3RUSSEE]
**Sent:** Friday, January 10, 2003 8:02 AM
**To:** McClenan, Cecil M SWG; Krueger, Dalton H SWG
**Subject:** FW: LOST LAKE surveys of record

FYI...

Eric G. Russek, P.E.
Project Engineer
Bay Area Office
409-766-3007

-----Original Message-----
**From:** George Strickler [mailto:gstrickler@cpmiteam.com]
**Sent:** Friday, January 10, 2003 6:31 AM
**To:** Russek, Eric G SWG
**Subject:** RE: LOST LAKE surveys of record

Eric
I am familiar with Greyhawk. They are a firm similar to ours. Although I do not know Mr. Boland, I do know others in their firm. In picking firms to assist DOJ in the evaluation/defense of Renda's claims we did not consider Greyhawk to be a viable source for the services and we did not solicit a quals package or a proposal from them. This was largely based on my knowledge of them as well as consideration of their past experiences at DOJ. John K. was comfortable with this.

I might add that this is a rather ackward approach to introduce oneself to a potential client.

As I mentioned in my previous memo, John and I are meeting on th 16th to evaluate the proposals that we have for both the dredging/geotech and delay/disruption and we will likely make our selections/recommendations at that time. I will definitely push the need for Dr. Fowler although I suspect that one way or the other we will need to provide him substantial support.

George

> -----Original Message-----
> **From:** Russek, Eric G SWG [mailto:eric.g.russek@swg02.usace.army.mil]
> **Sent:** Wednesday, January 08, 2003 12:00 PM
> **To:** 'gstrickler@cpmiteam.com'
> **Subject:** RE: LOST LAKE surveys of record
>
> George,
> Sorry about the late answer. Unfortunately, Lawrence sent the email only to me and didn't CC anyone else. Coming back after a little over 2 weeks of taking use-or-lose leave and dealing with 3 kids on Christmas vacation is a little overwhelming. Its kind of nice to be back at work to get a little rest!?!?!? Congrats on the new granddaughter!!!! Hope all are doing well.
>
> I'll check with the IM folks regarding the copying of the emails and get back to you. As far as Dr. Fowler – we definitely need him – much of the design basis of the hydro levees came from his research. One other thing – we received an unsolicited email from a company called "Greyhawk" copied below for you to review – know anything about them???
>
> > -----Original Message-----
> > **From:** Charlie Boland [mailto:cboland@greyhawk.com]
> > **Sent:** Monday, December 30, 2002 11:15 AM
> > **To:** paswg@swg02.usace.army.mil
> > **Subject:** Houston-Galveston Navigation Channel Project

Px 1820

RM-GAL-0020243

EXHIBIT
A

I have been made aware of certain contractor claims and disputes that have surfaced on the performance of work on the above referenced project. GREYHAWK provides professional consulting services in the investigation and resolution of claims and disputes in a wide range of construction projects, including marine matters. We are currently providing construction consulting services to the City of Houston and would like to be considered in any procurement of construction consulting and dispute resolution services on the Channel Project.

Please provide me with the names and contact information of the individuals in responsible charge of this project so I can explore this matter further. Thank you for your anticipated assistance.

Regards,

**Charlie Boland**
GREYHAWK North America, L.L.C.
855 Springdale Drive
Exton, PA 19341
610-524-3929

Best regards,

Eric G. Russek, P.E.
Project Engineer
Bay Area Office
409-766-3007

-----Original Message-----
**From:** George Strickler [mailto:gstrickler@cpmiteam.com]
**Sent:** Tuesday, January 07, 2003 5:05 PM
**To:** Russek, Eric G SWG
**Subject:** RE: LOST LAKE surveys of record

Eric
It was a little late, the answer was served last Friday, however I think we covered it OK for now but I suspect that down the road we may need to talk with Mr. Redd and will probably need to copy his field book on the relevant dates.

In the interim, could you check with the information management folks and see how they are doing with copying the e-mails of Tom Benero, John R., Mike M. and Luis S. Also, as a question is it possible to get the e-mails in an electronic format? Do not do it yet, but the other side has made such a request and we are trying to decide if we want to use to our advantage in any way? Part of the decision will be basd upon the current status of the hard copies of the above e-mails, if it is pretty far along we will either say no or tell them it will take more time. For now we should be targeting having all the e-mails copied no later than the 24th of January. we will need time to review them for privilege and then send them out for bates stamping and scanning before we turn it over to Renda. If this is going to be a problem, we need to know sooner not later!

That aside, we are going to go see Renda's documents 1/20 thru 1/23. They now have something like 22 boxes of documents, a significant increase over the 9 boxes they indicated originally.

Other than that, it was indeed a happy new year!! On the 30th we we delivered a new granddaughter!!

Also, I have received proposals from the three delay/disruption experts that we had

solicited. The cost range is pretty wide so we will have to think about it some. So far we have received only two proposals from the dredging/geotech folks. One is from Dr. Jack Fowler. I think is overall numbers are light on the hours but I think we want him involved if at all possible. It may mean the COE and /or others may have tio support him in his efforts but he is one of Tim Few's main guys. After that we have one firm that has responded with a proposal that I haven't seen yet (it was faxed and was not legible) and we are awaiting a proposal from another group that will not work under a contract with Justice but would work under a contract with you folks directly ( they would work under the direction of DOJ however). If this firm is selected we may well need to work out some kind of contract with them. I suppose we could put this in the lap of the new agency counsel when he gets on board! I might add that this would probably be a wise thing to do if possible as I believe that DOJ is still working under rather strict budget constraints that severely limit funds for expert witness services. There does not seem to be a clear picture as to when it may ease up and within the next month or so we are going to need to get these folks started if we are going to get done by the current discovery cutoff.

With all that said, hope you had a good holiday leave. I'm sure you're well rested and ready to give Renda hell!!! when the time comes.

George

-----Original Message-----
**From:** Russek, Eric G SWG [mailto:eric.g.russek@swg02.usace.army.mil]
**Sent:** Tuesday, January 07, 2003 3:24 PM
**To:** McClenan, Cecil M SWG; 'gstrickler@cpmiteam.com'
**Subject:** FW: LOST LAKE surveys of record

Happy New Year to All,

Hope this info from Lawrence is satisfactory and not too late....

Eric G. Russek, P.E.

Project Engineer

Bay Area Office

409-766-3007

-----Original Message-----

**From:** Redd, Lawrence L SWG

**Sent:** Monday, December 23, 2002 3:20 PM

**To:** Russek, Eric G SWG

**Cc:** Redd, Lawrence L SWG

**Subject:** LOST LAKE surveys of record

Eric

Let me know if I need to elaborate on this list. Thanks.

<<LOSTLAKE.rtf>> Lawrence

**From** Mike Hasen [MHASEN@HVJ COM]
**Sent** Monday, June 30 2003 8 32 PM
**To** Few James T SWG
**Subject** RE Boring Logs Plotted on Channel Cross Sections

Tim
I've talked to Erik and Jack Fowler This has to do with the Upper Bayou contract, we were involved in the design of the disposal areas directly under contract to USACE but didn t do any borings along the channel I am working through Erik to see how we can support their needs, but it doesn't have anything to do with the borings we drilled in the Bayport Channel Flare

*Michael Hasen*
Executive Vice President
HVJ Associates, Inc
Telephone (281) 933-7388, Ext 3014

-----Original Message-----
**From** james t few@swg02 usace army mil [mailto james t few@swg02 usace army mil]
**Sent** Wednesday, June 25, 2003 12 59 PM
**To** Mike Hasen
**Subject** FW Boring Logs Plotted on Channel Cross Sections

Mike Can you contact Dr Fowler and see that he gets what he needs with regards to the Flare borings y all did for the Hou-Gal Upper Bay contract? He s helping us try to get this contract "wrapped up" so any assistance you can provide will be appreciated

Thanks Tim
-----Original Message-----
**From** Jack Fowler [mailto jfowler@vicksburg com]
**Sent** Tuesday, June 24, 2003 10 17 PM
**To** Russek, Eric G SWG'
**Cc** Tim Few, George Strickler
**Subject** Boring Logs Plotted on Channel Cross Sections

Thanks for calling me today and discussing ways of exhibiting the boring log data and channel profiles

Please contact HVJ and determine if they can overlay the boring log data onto the channel cross sections and plot the Moisture Content Unit Dry Weight Liquid Limit and Plastic Limits vs depth on the channel profile The boring logs should be plotted on the nearest channel cross section I have included a typical cross section and plot of the boring log data

Plotting the boring log data on the channel cross sections will allow us to determine the dredge-ability of these materials

Please contact me ASAP if this is possible and I will meet with HVJ in Houston at their convenience and assist in directing the work George Strickler wants this information and an opinion as to the dredge-ability of these materials by August

Best Regards

Jack Fowler Ph D PE
Geotec Associates
5000 Lowery Road
Vicksburg MS 39180

Phone 601-636-5475

Px 1835

RM-GAL-0023129

EXHIBIT
B

umberg No. 5118

Fax 601-630-9911
Cell Ph 601-831-3818

www geotec biz

**From** Mike Hasen [MHASEN@HVJ COM]
**Sent** Wednesday September 03 2003 7 46 PM
**To** jfowler@geotec biz
**Cc** Wendell Mears Few James T SWG
**Subject** RE Volume Calculation of Different Types of Materials

Jack
I ll be out of town Wed Sep 10 I m available at your convenience Thursday Sep 11 I have an afternoon meeting at 4PM that I d like to make but isn t critical I d have to leave my office by 3 30 I m also available Monday and Tuesday Wednesday is my only conflict

*Michael Hasen*
Executive Vice President
HVJ Associates Inc
Telephone (281) 933-7388 Ext 3014

- ---Original Message
**From** Jack Fowler [mailto jfowler@geotec biz]
**Sent** Wednesday, September 03, 2003 11 55 AM
**To** Mike Hasen
**Cc** Wendell Mears, Tim Few
**Subject** RE Volume Calculation of Different Types of Materials

Yes I am still coming to Galveston on 8-9 Sept Monday-Tuesday with Tim Few and with you and Wendell on 10-11 Sept Wed-Thurs I will be interested in determining how the volumes for different materials were determined and how the CDF dikes were designed

Thanks and Best Regards

Jack Fowler Ph D PE
Geotec Associates
5000 Lowery Road
Vicksburg MS 39180

Phone 601-636-5475
Fax 601-630-9911
Cell Ph 601-831-3818

www geotec biz

-----Original Message-----
**From** Mike Hasen [mailto MHASEN@HVJ COM]
**Sent** Wednesday, September 03 2003 10 37 AM
**To** jfowler@geotec biz
**Subject** RE Volume Calculation of Different Types of Materials

Jack
I haven t heard anything about travel plans for next week Are you still coming? Do you need to meet with me?

*Michael Hasen*
Executive Vice President
HVJ Associates Inc
Telephone (281) 933-7388 Ext 3014

- Original Message -
**From** Jack Fowler [mailto jfowler@geotec biz]

A 1849

RM-GAL-0023028

EXHIBIT
C

**Sent** Wednesday August 27, 2003 10 35 AM
**To** Russek, Eric G SWG
**Cc** Wendell Mears Mike Hasen Tim Few George Strickler
**Subject** Volume Calculation of Different Types of Materials

I just got back from a meeting in Philadelphia with George Strickler John Kosloske Bill Connole and Bob Lofgren concerning the RMI s DSC claim I have been tasked to determine the quantity of different type materials and the consistency of these materials for RMI s DSC claim I need to discuss the philosophy on how your folks made volume calculations for the different types of materials

I also need the volumes in the channel that the contractor was required to excavate Do the volumes in the contract include the one foot allowable over depth? Did we provide him volumes for each reach and station to contractor? If he is not required to excavate the one foot allowable over depth materials did he also claim these materials in his DSC even though he was not required to excavate these materials? What was the allowable over depth volumes between stations? It seems like he was also claiming difficult to excavate materials outside the required dredging prism

For me to make these volume calculations I need cross sections before dredging with the boring logs located on them to some specified scale I also need the volumes between stations and how these volumes were determined There are dotted lines and solids lines on the profiles shown in the specification drawings and I am not sure what they indicate I assume the dotted line is material accumulated since the last dredge contract

I have performed some of this work but John Kosloske wants me to complete this work ASAP and provide him with a time table

I have contacted Wendell Mears and Mike Hasen HVJ and plan to visit their offices the week of 7-12 Sept to determine how they calculated these quantities and determine the slope stability analysis method that was used in their design I also need to visit with Tim Few and determine how he designed the CDF dikes

Thanks

Jack Fowler Ph D PE
Geotec Associates
5000 Lowery Road
Vicksburg MS 39180

Phone 601-636-5475
Fax 601-630-9911
Cell Ph 601-831-3818

www geotec biz

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 02-306C |
| v. | ) | |
| | ) | (Judge Hewitt) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S TRIAL WITNESS LIST

Pursuant to paragraph 15(a) of Appendix A to the Rules of the Court of Federal Claims and the Court's September 10, 2004 Order, defendant, the United States, provides the following list of witnesses:

I. Witnesses Whom The Government Expects To Present At Trial

1. Mr. Thomas Benero
Chief, Contracting Division
United States Army Corps of Engineers
Galveston District
2000 Fort Point Road
P.O. Box 1229
Galveston, TX 77553
Tele: 409-766-3899

Topic(s) of testimony: Contract award and administration; contract documents, including contract modifications P00023 (CO-8), P00026 (CO-9), P00027 (CO-10), P00028 (CO-11); cure and show cause notices; meetings and communications with plaintiff regarding progress and issues. Mr. Benero's direct testimony is expected to take two hours.

2. Mr. C. Michael McClenan
Area Engineer, Bay Area Office
United States Army Corps of Engineers
Galveston District
2000 Fort Point Road
P.O. Box 1229
Galveston, TX 77553
Tele: 409-766-3899

EXHIBIT
D
Blumberg No. 5118

Topic(s) of testimony: Overall Houston Ship Channel deepening and widening project; scope of the Upper Bayou Contract; Corps of Engineers/Port of Houston Authority program and project management; plaintiff's claims; observations of plaintiff's work; meetings and communications with plaintiff; contract administration; plaintiff's progress of the work; West Levee Realignment; CO-10; CO-11. Mr. McClenan's direct testimony is expected to take three hours.

3. Mr. Eric G. Russek
Civil Engineer, Bay Area Office
United States Army Corps of Engineers
Galveston District
2000 Fort Point Road
P.O. Box 1229
Galveston, TX 77553
Tele: 409-766-3899

Topic(s) of testimony: Personal site inspections/observations/quality assurance; contract modifications; pre-construction conference; progress before/after dredge surveys; quantity analysis (BDs/ADs, cross sections quantities, etc.); payments and estimates; meetings and communications with plaintiff; preparatory meetings. Mr. Russek's direct testimony is expected to take three hours.

4. Mr. James Few
Civil Engineer
Geotechnical & Structures Section
Engineering Branch
Engineering & Construction Division
United States Army Corps of Engineers
Galveston District
2000 Fort Point Road
P.O. Box 1229
Galveston, TX 77553
Tele: 409-766-3899

Topic(s) of testimony: Lost Lake levee design; other hydraulic placement projects; personal observations of plaintiff's levee construction; monitoring of levee construction; anticipated foundation conditions at Lost Lake; changes to the levee construction alignment; suitable material available to build material. Mr. Few's direct testimony is expected to take four hours.

5. Mr. Alton Meyer
Project Engineer, Bay Area Office
United States Army Corps of Engineers
Galveston District
2000 Fort Point Road
P.O. Box 1229
Galveston, TX 77553
Tele: 409-766-3899

Topic(s) of testimony: Channel design and related contract drawings and specifications. Mr. Meyer's direct testimony is expected to take one hour.

6. Mr. Will Sanford
United States Army Corps of Engineers
Fort Worth District
819 Taylor Street
Fort Worth, TX 76102
Tele: 817-886-1000

Topic(s) of testimony: Corps of Engineers initial assessment of plaintiff's Flare Area claim. Mr. Sanford's direct testimony is expected to take one hour.

7. Mr. Tom Hunt
United States Army Corps of Engineers
Galveston District
2000 Fort Point Road
P.O. Box 1229
Galveston, TX 77553
Tele: 409-766-3899

Topic(s) of testimony: Surveys at Lost Lake Placement Area and Houston Ship Channel (Upper Bayou Reach). Mr. Hunt's direct testimony is expected to take one hour.

8. Mr. Bruce Bennett
Physical Scientist
United States Army Corps of Engineers
Galveston District
2000 Fort Point Road
P.O. Box 1229
Galveston, TX 77553
Tele: 409-766-3899

Topic(s) of testimony: Permit for HL&P Tower activity at Lost Lake Placement Area.

9. Mr. Darillo Herrera
United States Army Corps of Engineers
1645 S. 101st East Ave.
Tulsa, OK 74159
Tele: 918-669-7366

Topic(s) of testimony: Plaintiff's internal reports and procedures; communications with COE/JV, plaintiff's Quality Control (CQC) Program, submittals and reports; plaintiff's operations on Upper Bayou Project through May 2000. Mr. Herrera's direct testimony is expected to take three hours.

10. Mr. Wendell Mears
Gahagan & Bryant Associates, Inc.
5757 Woodway Drive, Suite 210
Houston, TX 77057
Tele: 713-267-2943

Topic(s) of testimony: Observations of plaintiff's dredging and levee construction operations; meetings and communications with plaintiff; observations of Lost Lake Placement Area; observations relative to plaintiff's claims; quality assurance inspections/surveys; quantity estimates. Mr. Mears's direct testimony is expected to take three hours.

11. Leon Hrabovsky, P.E.
Senior Engineer
Gahagan & Bryant Associates, Inc.
5757 Woodway Drive, Suite 210
Houston, TX 77057
713-267-2943

Topic(s) of testimony: Observations of plaintiff's dredging and levee construction operations; meetings and communications with plaintiff; observations of Lost Lake Placement Area; observations relative to plaintiff's claims; quality assurance site visits; prior experience at Lost Lake Placement Area; prior dredging experience; evaluation of plaintiff's pre-award submittal; HL&P effort to move pipe. Mr. Hrabovsky's direct testimony is expected to take two hours.

12. Charles Baron, P.E.
Gahagan & Bryant Associates, Inc.
5757 Woodway Drive, Suite 210
Houston, TX 77057
Tele: 713-267-2943

Topic(s) of testimony: Observations of plaintiff's dredging and levee construction operations; meetings and communications with plaintiff. Mr. Baron's direct testimony is expected to take two hours.

13. Mr. Christopher Babitzke
2514 Forgestone Drive
Friends Wood, TX 77545
Tele: 281-993-2838

Topic(s) of testimony: Observations of plaintiff's dredging and levee construction operations; communications with plaintiff. Mr. Babitzke's direct testimony is expected to take two hours.

14. Mr. Kenneth Affolter
Affolter Contracting Company, Inc.
P.O. Box 1436
LaMarque, TX 77568
Tele: 409-938-3837

Topic(s) of testimony: Site conditions at Lost Lake Placement Area; pricing of contract modifications that relate to Affolter Contracting. Mr. Affolter's direct testimony is expected to take two hours.

15. Darrell Shobert, C.P.A.
Senior Auditor
Dallas Branch Office
Defense Contract Audit Agency
6321 E. Campus Circle Drive
Irving, TX 75063-2742
Tele: 972-753-2584

Topic(s) of testimony: DCAA audits of plaintiff's claims. Mr. Shobert's direct testimony is expected to take four hours.

16. Jack Fowler, Ph.D., P.E.
Geotech Associates
5000 Lowery Road
Vicksburg, MS 39180
Tele: 601-636-5475

Topic(s) of testimony: The opinions and basis and reasons for those opinions set forth in Dr. Fowler's expert report of February 2, 2004, and his rebuttal report of February 26, 2004. Mr. Fowler's direct testimony is expected to take three hours.

17. Mr. Robert Lofgren
2320 NE 110th Place
Vancouver, WA 98686
Tele: 360-573-4081

Topic(s) of testimony: The opinions and basis and reasons for those opinions set forth in Mr. Lofgren's expert report of January 30, 2004, and his rebuttal report of February 18, 2004. Mr. Lofgren's direct testimony is expected to take four hours.

18. William F. Connole, P.E.
President
Franvel Corporation
1416 S. Terrace Drive
P.O. Box 4396
Tulsa, OK 74159-0396
Tele: 918-749-3592

Topic(s) of testimony: The opinions and basis and reasons for those opinions set forth in Mr. Connole's expert report of January 30, 2004, and his rebuttal report of February 23, 2004. Mr. Connole's direct testimony is expected to take eight hours.

II. Witnesses As To Whom The Government Will Offer Testimony Via Depositions

1. Mr. Oscar Renda, Roanoke, TX

2. Mr. Rudy Renda, Roanoke, TX

3. Mr. Burson Warren, Flower Mound, TX

4. Mr. Steve Bowman, Arlington, TX

5. Mr. Eddie Fisher, Austin, TX

6. Mr. William Wetta, II, River Ridge, LA

The specific deposition testimony of these individuals to be offered at trial is identified in "Defendant's Motion for Leave to File Portions of Deposition Transcripts" dated May 12, 2004.

III. Witnesses Whom The Government May Call At Trial If The Need Arises

1. Mr. Dalton Krueger
Project Manager
Project Management Branch
Programs & Project Management Division
United States Army Corps of Engineers
Galveston District
2000 Fort Point Road
P.O. Box 1229
Galveston, TX 77553
Tele: 409-766-3899

Topic(s) of testimony: Overall Houston Ship Channel deepening and widening program; Upper Bayou Project; USACE and Port of Houston Authority program and project management. Mr. Krueger's direct testimony is expected to take one hour.

2. Mr. Luis Saenz
United States Army Corps of Engineers
Galveston District
2000 Fort Point Road
P.O. Box 1229
Galveston, TX 77553
Tele: 409-766-3899

Topic(s) of testimony: Past projects at Lost Lake and Houston Ship Channel (Upper Bayou Reach). Mr. Saenz's direct testimony is expected to take one hour.

3. Mr. David Brown
Engineering Manager
United States Army Corps of Engineers
Galveston District
2000 Fort Point Road
P.O. Box 1229
Galveston, TX 77553
Tele: 409-766-3899

Topic(s) of testimony: Levee design; considerations of levee design and construction during contract performance. Mr. Brown's direct testimony is expected to take one hour.

4. Mr. Johnny Rozsypal
Chief, Construction Branch
Engineering & Construction Division
United States Army Corps of Engineers
Galveston District
2000 Fort Point Road
P.O. Box 1229
Galveston, TX 77553
Tele: 409-766-3899

Topic (s) of testimony: Levee construction maintenance/raising; dredging of Houston Ship Channel (Upper Bayou Reach); contract administration issues, other hydraulic placement projects. Mr. Rozsypal's direct testimony is expected to take one hour.

5. Mr. Herbert Mauer
United States Army Corps of Engineers
Galveston District
2000 Fort Point Road
P.O. Box 1229
Galveston, TX 77553
Tele: 409-766-3899

Topic(s) of testimony: Project design; use of hydraulic levee construction in Galveston District; other projects to ±30 ft. levees; construction contract administration. Mr. Mauer's direct testimony is expected to take one hour.

6. Mr. Art Martin
Survey Coordinator
United States Army Corps of Engineers
Galveston District
2000 Fort Point Road
P.O. Box 1229
Galveston, TX 77553
Tele: 409-766-3899

Topic(s) of testimony: Surveys at Lost Lake Placement Area and Houston Ship Channel (Upper Bayou); quantity calculations for Upper Bayou Project. Mr. Martin's direct testimony is expected to take one hour.

7. Mr. Lawrence Redd
Surveyor
United States Army Corps of Engineers
Galveston District
2000 Fort Point Road
P.O. Box 1229
Galveston, TX 77553
Tele: 409-766-3899

Topic(s) of testimony: Surveys performed at Lost Lake Placement Area and Houston Ship Channel (Upper Bayou); calculation of quantities. Mr. Redd's direct testimony is expected to take one hour.

8. Mr. Chris Rossi
United States Army Corps of Engineers
Galveston District
2000 Fort Point Road
P.O. Box 1229
Galveston, TX 77553
Tele: 409-766-3899

Topic(s) of testimony: Processing of hydrographic and land survey data; calculation of contract dredging and overdredging quantities for Upper Bayou Project. Mr. Rossi's direct testimony is expected to take one hour.

9. Michael Hasen, P.E.
Vice President
HVJ Associates, Inc.
6120 S. Dairy Ashford
Houston, TX 77072
Tele: 281-933-7388

Topic(s) of testimony: Levee design; materials suitable for levee construction; May 2000 flare area borings. Mr. Hasen's direct testimony is expected to take one hour.

10. Alan Jefts, P.E.
Project Manager
Turner Collie Braden
5757 Woodway
Houston, TX 77057
Tele: 713-780-4100

Topic(s) of testimony: Joint Venture structure and relationship to Port of Houston Authority; Joint Venture Quality Assurance contract; Joint Venture review and assessment of plaintiff's claims and plaintiff's progress and quality of work; meetings with plaintiff. Mr. Jefts's direct testimony is expected to take one hour.

11. Mr. James Van Norman
Great Lakes Dredge & Dock Company
16639 Jacintoport Blvd.
Houston, TX 77015
Tele: 281-452-3373

Topic (s) of testimony: Dredging of Dredge Section 9; construction of levees at Lost Lake Placement Area. Mr. Van Norman's direct testimony is expected to take one hour.

12. Mr. Jeremy Glasgow
J. Simmons Group
7129 N. Loop East
Houston, TX 77028
Tele: 713-675-5100

Topic(s) of testimony: Observations of plaintiff's dredging and levee construction operations; communications with plaintiff. Mr. Glasgow's direct testimony is expected to take one hour.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/John E. Kosloske
JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-0282
(fax) (202) 514-8624

Attorneys for Defendant

OF COUNSEL:

MR. P. ALEX PETTY
Assistant District Counsel
Office of Counsel
Galveston District
U.S. Army Corps of Engineers
Galveston, TX

MAY 12, 2004