# In the United States Court of Federal Claims

No. 02-306 C

(E-Filed: February 15, 2005)

| | |
|---|---|
| RENDA MARINE, INC., | ) |
| Plaintiff, | ) |
| v. | ) |
| THE UNITED STATES, | ) |
| Defendant. | ) |

OPINION AND ORDER

Before the court are Plaintiff's Motion to Strike Expert Report or, in the Alternative, to Limit Testimony (Pl.'s Expert Mot. or plaintiff's expert motion), Defendant's Opposition to Plaintiff's Motion to Strike Expert Report or, in the Alternative, to Limit Testimony (Def.'s Opp. or defendant's opposition), and Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion to Strike Expert Report or, in the Alternative, to Limit Testimony (Pl.'s Reply or plaintiff's reply). In its motion, plaintiff requests that the court either strike the rebuttal expert report of defendant's expert, Michael Hasen, Pl.'s Expert Mot. at 1, or that the court limit Mr. Hasen's testimony "to anything new raised in" the November 17, 2004 revised report of plaintiff's expert, Dr. Christopher Mathewson, Pl.'s Expert Mot. at 7.

For the following reasons, plaintiff's motion is DENIED.

I. Procedural Background

Plaintiff, Renda Marine, Inc. (plaintiff or Renda) is a marine dredging contractor. Complaint (Compl.) ¶ 1. In April 2002, plaintiff filed suit against the United States, acting through the Army Corps of Engineers, Galveston, Texas District (defendant or Corps), alleging that it encountered differing site conditions during the course of its

contract performance of the "Upper Bayou Project." Id. at 1–3. The "Upper Bayou Project" contract involved the partial dredging of the Galveston-Houston Ship Channel and the construction of levees at the Lost Lake Containment Area for the dredged material. Renda Marine, Inc. v. United States, 58 Fed. Cl. 57, 58 (2003) (Renda I). Discovery in this matter lasted from approximately October 2002 through November 2004, and trial is now scheduled to begin in less than two weeks.

Trial in this matter has been postponed once as a result of several delays caused by the parties during discovery. Discovery was initially complicated by the Corps' electronic document retention practices, which "provide[d] that after e-mail ha[d] been read, it should be deleted or move[d] to a personal folder as soon as possible." Renda I, 58 Fed. Cl. at 61 (citation omitted). In an opinion and order issued August 29, 2003, the court determined that the Corps' "records retention policy [was] inconsistent with a party's obligations to a potential or actual adversary in litigation," and ordered defendant "to produce at its expense those back-up tapes that were created on and after March 8, 2000 and to provide plaintiff with access to [the contracting officer's] hard drive in accordance with the terms of the Protective Order Regarding Electronic Discovery filed with the court on July 29, 2003." Id. at 61–62.

After the court addressed defendant's document retention practices in its August 29, 2003 Opinion and Order, the court issued a pretrial scheduling order requiring, inter alia, that "[a]ll expert discovery, including the exchange of expert reports and excepting only the completion of expert depositions, . . . be completed on or before February 4, 2004," and scheduling trial for June 2004. Pretrial Scheduling Order dated Sept. 10, 2003. Pursuant to this order, plaintiff submitted, inter alia, a two and one-half page report by one of its experts, Dr. Christopher Mathewson. See Appendix to Plaintiff's Motion to Strike Expert Report or, in the Alternative, to Limit Testimony (Pl.'s Expert Mot. App.), at 128–30 (Expert Report by Dr. Mathewson dated Jan. 26, 2004).

More than two months after the close of discovery, plaintiff filed a motion asking the court to compel defendant to produce two categories of documents: (1) certain documents retrieved from computer hard drives, e-mail servers, and backup tapes belonging to the Corps, which defendant claimed were privileged; and (2) certain documents responsive to plaintiff's Interrogatory Number 5 concerning "borrow" material at the Upper Bayou Project, and the identification of persons who may have knowledge responsive to this interrogatory. See Pl.'s Expert Mot. App. at 90 (Order dated May 14, 2004). During a conference on the record with the court held May 13, 2004, defendant's counsel provided the court with background information concerning plaintiff's request for documents relating to Interrogatory Number 5:

> We got this discovery request, Interrogatory Number 5, in November of 2002, and beginning in January of 2003, we responded to the interrogatory. And part of that response was that there may be information contained in the documents of previous dr[e]dging jobs we identified in response to a couple of document production requests that also contain information that is responsive to the interrogatory. And we indicated that at the time that we would be prepared to produce the files from the previous contract job at a mutually convenient time and place.
>
> Basically, 15 months went by, and the discovery deadline closed without the Plaintiff's attorney having raised the issue, picked up the phone and called me, or even sent me a letter saying let's arrange . . . a schedule for reviewing those records and getting them from the records center. . . . Now the problem that we have with the request is that there is no explanation for why it was not raised earlier, but it was raised in mid-April, which is shortly before trial in this case.

Transcript of Post-Discovery Status Conference dated May 13, 2004 (5/13/04 Tr.), at 22:2–23:2 (statement of defendant's counsel) (emphasis added). Plaintiff did not contradict defendant's statement. The court then investigated the degree to which information referred to in Interrogatory Number 5 would impact plaintiff's overall claim:

> THE COURT: How large is your overall claim, Mr. Erikson, the [p]laintiff's claim?
>
> MR. ERIKSON: Relating to the lev[ee], it is $7.3 million. In all total it is about $13.3 million.
>
> THE COURT: And the information that is referred to in Interrogatory 5 is probative of how much of that claim?
>
> . . . .
>
> MR. ERIKSON: Well, it relates to the lev[ee] claim, which is $7.3 million.
>
> THE COURT: And without any of this material how much weakened is your ability to bring a lev[ee] claim, which is over half of your case?
>
> MR. ERIKSON: It is hard to tell without seeing the documents, Your Honor.

. . . .

THE COURT: Would you say that these documents are material to [p]laintiff's case [regarding the levee]?

MR. ERIKSON: Yes, Your Honor.

Id. at 23:18–25:12 (colloquy between court and plaintiff's counsel). Realizing that plaintiff had not gathered or reviewed a substantial amount of evidence relating to the majority of its claim, the court stated:

> I will express some frustration here, because the court has done some very . . . athletic scheduling to bring this case to a prompt trial. And it is not the purpose of [this scheduling] to have the [p]laintiff contractor be unable to have the resources to bring his case. That is not our purpose. But the athletic efforts that we have made to bring this to a speedy trial have been at the behest of the [p]laintiff from the very beginning.
>
> . . . .
>
> [T]his is the way that it looks to the [c]ourt[:] About a year-and-a-half ago the documents were requested. Not much less that, the documents were identified in a response. Then over a year passed. The discovery deadline passed, and only in the course of preparing . . . exhibit lists in preparation for the pretrial activities did [p]laintiff notice that a hunk of its evidence had not been gathered.

Id. at 25:13–26:12 (statement of the court).

Because the court was "unwilling to have the contractor disadvantaged . . . where there is a significant claim and . . . potentially significant evidence that has not been examined[, and because the court is] unwilling to conduct a trial in absolute chaos," id. at 26:15–22, the court vacated the trial schedule and reopened discovery, including plaintiff's request to review the documents responsive to Interrogatory Number 5.[1] Pl.'s

---

[1]The court also ordered "Universal Document Services, plaintiff's information technology consultant, . . . [to] select fifty (50) documents that are representative of the alleged underproduction of responsive documents by defendant, together with a memorandum explaining why each such document is responsive for in camera review by the court." Pl.'s Expert Mot. App. at 90 (Order dated May 14, 2004). In an Order dated July 27, 2004, the court determined that "the sample documents [were] responsive documents." Order dated July 27, 2004. After (continued...)

Expert Mot. App. at 90–91 (Order dated May 14, 2004) ("Further to the court's unwillingness to disadvantage the contractor at trial in this matter in light of discussions indicating that a significant volume of evidence that may be probative of plaintiff's largest claim has yet to be reviewed, and with the concurrence of the parties, the current pre-trial date and trial dates are VACATED, and discovery is REOPENED.") (footnote omitted). In a subsequent order, the court clarified that "its Order of May 14, 2004 permitting plaintiff to conduct discovery prior to the rescheduling of trial [was] not open-ended but limited to the discovery contemplated by the grant of plaintiff's . . . motion to compel." Pl.'s Expert Mot. App. at 95 (Order dated July 26, 2004). The court scheduled a November 4, 2004 post-discovery telephonic conference to set a schedule for pretrial and trial. Id. at 91.

At the November 4, 2004 conference, the parties confirmed that discovery had concluded. See Transcript of Nov. 4, 2004 conference (11/4/04 Tr.), at 4:19–21 (statement of plaintiff's counsel that "[w]e are post-discovery . . . and we are ready to proceed to the next stage"); id. at 4:24–25 (statement of defendant's counsel that "the government is ready to proceed with the next stage, too"). After the court and the parties agreed upon dates for pretrial and trial, the court informed the parties that it "had nothing further at this time." Id. at 18:22–23. Plaintiff's counsel then stated:

> Your Honor, I do have one thing. Based on all of the documents that the government has produced in recent months, Renda will probably have to change its expert report some. We will try to get those changes done as quickly as we can and submit them to counsel for the [d]efendant.

Id. at 18:24–19:4 (statement of plaintiff's counsel). Surprised, the court observed:

> Discovery is over. We [have] a meeting of counsel . . . scheduled for [December 17, 2004]. And when is it anticipated that these revised expert reports would be produced? . . . . [T]his is exactly the kind of thing . . . that got [trial] derailed last spring. This is the one more thing. [Counsel for the parties] should have been speaking about this and had some type of a plan for how [they] would reconcile this situation prior to . . . this meeting.

Id. at 19:9–18 (statement of the court). Plaintiff's attorney replied:

---

[1](...continued)
further in camera of responsive e-mail communications designated by defendant as privileged, the court determined that some of these e-mails were privileged communications and others were not privileged. See generally Renda Marine, Inc. v. United States, 62 Fed. Cl. 371 (2004) (Renda II).

> Your Honor, I would be happy to do it myself on limitation, but the government literally produced thousands and thousands and thousands of documents and it is only fair that the experts have a chance to make some comment on the additional documents the government produced. But in any event, I think if you gave us two weeks that would be enough time.

Id. at 19:23–20:5 (statement of plaintiff's counsel). Regarding the need for rebuttal expert reports from defendant's trial experts, defendant's counsel stated:

> It is difficult for the government to really say anything until we see [plaintiff's revised expert reports] and we have no idea how extensive the changes or revisions might be to the previously expressed opinions. . . . It could be relatively insignificant; they may be major. Until we see the reports, we don't know.

Id. at 20:10–17 (statement of defendant's counsel). In light of this discussion, the court provided the following deadlines for expert discovery in its pretrial scheduling order:

> 2. Expert Discovery. Plaintiff has requested the opportunity to revise its previously submitted expert reports, in light of material produced by defendant during discovery. Plaintiff also has represented to the court that it intends only to supplement its previously submitted expert reports, and that it does not intend to submit reports by any new expert witnesses.
>
> In accordance with RCFC 26(a)(2), plaintiff shall submit updated versions of its existing expert reports on or before November 18, 2004.
>
> 3. Rebuttal Expert Discovery. In accordance with RCFC 26(a)(2), defendant shall submit updated rebuttal expert reports, if any, on or before December 16, 2004.

Pl.'s Expert Mot. App. at 1–2 (Order dated Nov. 11, 2004), ¶¶ 2–3.

On or about November 18, 2004, plaintiff provided defendant with two "superceding expert report[s]." See Pl.'s Expert Mot. App. at 131, 140 (letters from plaintiff's counsel to defendant's counsel dated November 17, 2004 and November 18, 2004). Whereas Dr. Mathewson's original expert report was approximately two and one half pages, see generally id. at 128–30 (Expert Report by Dr. Mathewson dated Jan. 26, 2004), his "superceding" report is approximately six and one half pages, see generally id. at 132–38 (Revised Expert Report by Dr. Mathewson dated Nov. 17, 2004). "On December 2, 2004, [defendant] moved to exclude from trial . . . testimony by Dr.

Mathewson regarding his opinions and other matter contained in his November 2004 revised report, thereby limiting the scope of Dr. Mathewson's testimony to opinions and other matter contained in his original . . . report and the matter covered in . . . his November 2004 revised report that was based upon discovery obtained by Renda in response to the [c]ourt's May 14, 2004 Order." Def.'s Opp. at 2. In an order dated December 28, 2004, the court granted-in-part and denied-in-part defendant's motion. With respect to Dr. Mathewson's revised report, the court ordered:

> The parties shall cooperate in the expeditious scheduling of any necessary deposition of Dr. Mathewson. Defendant may obtain a rebuttal expert report with respect to the Lost Lake Levees claim, and the parties shall cooperate in the expeditious scheduling of any necessary deposition of such rebuttal expert.

Pl.'s Expert Mot. App. at 228 (Order dated Dec. 28, 2004).

On January 11, 2005, defendant deposed Dr. Mathewson at plaintiff's counsel's law offices in Dallas. Def.'s Opp. at 3. On February 1, 2005, defendant produced a rebuttal expert report of Michael C. Hasen, P.E., with respect to the Lost Lake Levees claim. Id.; Pl.'s Expert Mot. App. at 229–301 (Rebuttal Expert Report of Mr. Hasen dated Jan. 30, 2005). In a letter transmitted "[b]y Telecopy and First Class Mail" on February 3, 2005, defendant's counsel informed plaintiff's counsel that "if [plaintiff's counsel] would like to take the deposition of defendant's expert, Michael Hasen, P.E., please contact [defendant's counsel] to schedule a date for the deposition." Pl.'s Expert Mot. App. at 312 (letter from defendant's counsel to plaintiff's counsel dated Feb. 3, 2005). Plaintiff filed its motion to strike Mr. Hasen's report on February 4, 2005. Pl.'s Expert Mot. at 8.

## II. Discussion

### A. Use of Mr. Hasen as a Rebuttal Expert

Plaintiff argues that defendant may not elicit testimony from its rebuttal expert, Mr. Hasen, with respect to the Lost Lake Levees claim because defendant had previously designated a different individual, Dr. Jack Fowler, as its testifying expert concerning that claim. Pl.'s Expert Mot. at 1 ("At the time of the November 4, 2004 order [permitting plaintiff to revise its expert report], the United States had designated Jack Fowler, Ph.D., P.E., as its testifying expert."). Plaintiff insists that "[t]he only need for [a rebuttal] expert would be to cover materials not already reviewed by [d]efendant's existing geotechnical expert, Dr. Fowler, and then only to the extent that new material arose as a result of the superceding report." Id. at 5. Characterizing the differences "between Dr. Mathewson's

superceding report and his original report" as "subtle," plaintiff claims that defendant should only be able to offer "a small analysis of additional material" on rebuttal. Id. Instead, plaintiff argues that defendant "obtain[ed] a completely new analysis of its position with regard to the Lost Lake[] Levees claim, an area already reviewed and analyzed by Dr. Fowler," and that defendant's rebuttal expert report "constitutes an unfair surprise on the [p]laintiff," which can only be cured by excluding Mr. Hasen's rebuttal report. Id.

Defendant claims that Dr. Mathewson's revised expert report contains a number of "design-related opinions that are not included in his original . . . report." Def.'s Opp. at 4–6 (listing eight opinions concerning the design of the Lost Lake Levees that appear for the first time in Dr. Mathewson's revised report). Because Mr. Hasen's firm prepared "the detailed design for the hydraulically-placed levees at the Lost Lake Placement Area," defendant insists that "Mr. Hasen is a natural choice of expert to respond to Dr. Mathewson's revised report." Id. at 6. Defendant further notes that nothing in Rule 26(a)(2)(C) of Rules of the Court of Federal Claims (RCFC) or the court's December 28, 2004 Order "restricts the Government from identifying an additional expert to rebut the new matter contained in Dr. Mathewson's revised report." Id.

The gravamen of plaintiff's claim appears to be that one cannot designate a new expert on rebuttal, and that a rebuttal expert report cannot cover material that was addressed in some fashion in a previously submitted expert report. Plaintiff cites no authority for these propositions, and the court is aware of none. The court finds plaintiff's arguments on this point unpersuasive, and agrees with defendant that Mr. Hasen may testify as a rebuttal expert as contemplated in the court's December 28, 2004 Order.

As the procedural history of this case reveals, see Part I, supra, the preparation and presentation of plaintiff's revised expert report was permitted by the court in response to plaintiff's need for additional discovery. After the court authorized plaintiff to submit a revised report, plaintiff submitted a report by Dr. Mathewson that was nearly three times longer than Dr. Mathewson's original report. Compare Pl.'s Expert Mot. App. at 128–30 (Expert Report by Dr. Mathewson dated Jan. 26, 2004) with id. at 132–38 (Revised Expert Report of Dr. Mathewson dated Nov. 17, 2004). When Dr. Mathewson's more expansive revised report came in, defendant requested and was granted the opportunity to file its rebuttal report. See id. at 228 (Order dated Dec. 28, 2004).

B. Timing of Defendant's Rebuttal Expert Report

In its reply, plaintiff raises for the first time the alternative argument that defendant's rebuttal expert report should be excluded because it is "untimely and late."

Pl.'s Reply at 3. Acknowledging that the court's Order dated December 28, 2004 "permitted a rebuttal expert for the Government," plaintiff reasons that because the "[O]rder was silent on the timing/designation of such rebuttal expert, per RCFC 26(a)(2)(C), such should have been accomplished within thirty (30) days of the order." Id. at 7. The court disagrees.

As plaintiff notes, the court's December 28, 2004 Order does not set a deadline for defendant's rebuttal report. Neither party objected to the lack of such a deadline. The court notes, however, that the Order provides that (1) "[t]he parties shall cooperate in the expeditious scheduling of any necessary deposition of Dr. Mathewson," (2) "[d]efendant may obtain a rebuttal expert report with respect to the Lost Lake Levees claim," and (3) "the parties shall cooperate in the expeditious scheduling of any necessary deposition of such rebuttal expert." Pl.'s Expert Mot. App. at 228 (Order dated Dec. 28, 2004). In this case, defendant filed its rebuttal report fewer than three weeks after deposing Dr. Mathewson. The court finds that this is a reasonable amount of time, and defendant's rebuttal report is timely. The court cannot agree with plaintiff that the deadline in RCFC 26(a)(2)(C) should be read into the court's December 28, 2004 Order, and notes that, long before the court issued its December 28, 2004 Order, the time constraints of the RCFC and its discovery deadlines had been substantially revised by the court to accommodate plaintiff's discovery needs.

In its reply, plaintiff suggests that, if the court permits defendant to offer Mr. Hasen as a rebuttal expert, "the only way that [p]laintiff could cure the prejudice would be to once again postpone the trial date." Pl.'s Reply at 4. The court disagrees. Plaintiff received Mr. Hasen's rebuttal report four weeks before the scheduled start of trial. Even after the pretrial conference, a full seven business days remain before trial. The court directs defendant to make reasonable efforts to make Mr. Hasen available for deposition prior to the start of trial.

B. Use of Mr. Hasen as a Fact Witness

Defendant's witness list identifies Mr. Hasen as both a rebuttal expert and as a fact witness on "[l]evee design; materials suitable for levee construction; [and] May 2000 flare area borings." Pl.'s Expert Mot. App. at 307 (Def.'s Trial Witness List dated Feb. 2, 2005). Defendant acknowledges that "[p]rior to identifying Mr. Hasen as a rebuttal expert with respect to the analysis of the Lost Lake Levees claim contained in Dr. Mathewson's report, the Government had listed Mr. Hasen . . . as a fact witness upon [certain] topics," and correctly notes that "if the [c]ourt were to strike Mr. Hasen as an expert witness under Rule 702 [of the Federal Rules of Evidence], that would not prevent Mr. Hasen from testifying to factual matters as to which he had first-hand knowledge." Def.'s Opp. at 8–9.

In its reply, plaintiff raises a new request for relief from the court and asks the court to limit defendant's use of Mr. Hasen as a fact witness "to one hour of direct testimony . . . so that the Government will not profit from its violation of the rules." Pl.'s Reply at 8. Plaintiff reasons that such a limitation is appropriate because

> had this matter proceeded to trial on the original date, Mr. Hasen would not have testified, as he was listed only as a "may call" witness on [defendant's original] witness list. As is set forth on Defendant's Trial Witness List filed on May 12, 2004, Mr. Hasen does not appear on the list of "Witnesses Whom the Government Expects to Present at Trial." Indeed, Mr. Hasen appears on said list only as a witness "Whom the Government May Call At Trial if the Need Arises," and then well down the list, as number 9 out of 12.

Pl.'s Reply at 6 (quoting Appendix to Plaintiff's Reply (Pl.'s Reply App.), Ex. D (Defendant's Trial Witness List dated May 12, 2004)).

The court is not persuaded by plaintiff's argument. Plaintiff has not cited any precedent—nor is the court aware of any—that justifies either limiting the scope or duration of Mr. Hasen's testimony as a fact witness. Although RCFC Appendix A, Part IV, Rule 15 provides, with regard to witness lists, that, "[a]s to each witness, the party shall indicate . . . the time needed for direct examination," RCFC App. A, Pt. IV, R. 15, the court believes that this provision, which is designed to facilitate an orderly trial, cannot be viewed as perfectly predictive. However, even if defendant was bound by the times listed in its witness list, the witness list prepared by defendant for trial and filed with the court on February 2, 2005, provides that "Mr. Hasen's direct testimony is expected to take four hours." Pl.'s Expert Mot. App. at 307 (Defendant's Trial Witness List dated Feb. 2, 2005). Accordingly, defendant's request to limit Mr. Hasen's testimony as a fact witness to one hour is DENIED.

## III. Conclusion

For the foregoing reasons, plaintiff's expert motion is DENIED. Defendant shall make reasonable efforts to make Mr. Hasen available for deposition prior to the start of trial.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Judge