UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC.,<br>PLAINTIFF,<br><br>V.<br><br>UNITED STATES,<br>DEFENDANT. | §<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 02-306C<br><br>(JUDGE HEWITT) |

**FACTS ADMITTED BY DEFENDANT IN DEFENDANT'S RESPONSE TO PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSIONS**

TO THE HONORABLE JUDGE HEWITT,
UNITED STATES COURT OF FEDERAL CLAIMS:

RENDA MARINE, INC., ("Renda") files this Facts Admitted by Defendant in Defendant's Response to Plaintiff's First Set of Requests for Admissions, as follows:

**I.**

**DEFINITIONS**

As used in the Plaintiff's First Set of Requests for Admissions, the term "Corps" referred to the United States Army Corps of Engineers, Galveston District.

As used in the Plaintiff's First Set of Requests for Admissions, the term "Contract" referred to Contract No. DACW64-99-C-0001, for Houston-Galveston Navigation Channels, Texas, Dredging Upper Bayou (45-Foot Project) in Harris and Galveston Counties.

**II.**

**ADMISSIONS**

In responding to many of the Plaintiff's First Set of Requests for Admissions, the Corps provided either qualified admissions or qualified denials. In the spirt of Appendix A, ¶17 of the USCS, Plaintiff attempted to craft these qualified responses into a Stipulation of Facts. The Corps,

however, through its counsel, was unable or unwilling to do so. Accordingly, the qualified admissions are set forth, herein.

## III.

## FACTS ADMITTED BY DEFENDANT

1. During the course of the Upper Bayou Project, Renda encountered obstructions such as the sunken buoy in the Houston Ship Channel, and problems such as the late delivery of the dredge *Millennium* to the Upper Bayou Project and a seal failure on the cutter shaft , which caused extra time and expense for Renda's work on the Upper Bayou Project.[1]

2. On or about April 25, 2000, the Contracting Officer identified performance requirements which, if not met by Renda, would result in termination of the Contract.[2]

3. On or about November 6, 2000, the Contracting Officer issued a Show Cause Notice, advising Renda that the Corps was considering terminating the Contract for default due to insufficient production following the March 8, 2000, cure notice.[3]

4. Renda submitted to the Contracting Officer a request for equitable adjustment in the amount of $3,641,643.00 and a 76 calendar day extension of contract time, concerning the alleged Flare Area differing site condition.[4]

---

[1]. From Defendant's Response to Plaintiff's Request for Admission No. 16, (hereinafter "RFA No. ___"). A true copy of each RFA response is attached hereto.

[2]. RFA No. 34.

[3]. RFA No. 45.

[4]. RFA No. 77.

5. The Corps paid Renda $3,083,833.00 [for the Flare Area claim].[5]

6. On December 13, 2000, the Administrative Contracting Officer [issued an opinion] to Renda in which the Administrative Contracting Officer indicated that Renda should have anticipated stiff clay material in Dredge Section 7.[6]

**7.** On August 18, 2000, Renda sent a letter to the Corps in which Renda alleged a change to the contract as a result of the revised levee alignment, which allegedly would require extra work.[7]

8. [In the course of the realignment work for the Lost Lake levees,] Renda repositioned previously placed material.[8]

9. Contract Modification CO-05 (P00019) increased the Contract amount by $66,000 and added four (4) calendar days to the Contract.[9]

10. On or about March 13, 2001, Renda sent a letter to the Contracting Officer regarding Dredge Section 9, and that it did not intend to return to Dredge Section 9 with the dredge *Millennium*.[10]

11. On or about April 12, 2001, Renda contacted the Administrative Contracting Officer

---

[5]. RFA No. 80.

[6]. RFA No. 97.

[7]. RFA No. 105.

[8]. RFA No. 107.

[9]. RFA No. 122.

[10]. RFA No. 148.

by telephone and requested that the Corps view trash in Dredge Section 9.[11]

12. Prior to June 16, 1998, the Corps was aware of soft to very soft material areas adjacent to the existing levees in the Lost Lake Placement Area.[12]

13. Prior to July 17, 1998, the Corps knew that soil material had been removed from areas adjacent to existing levees at the Lost Lake Placement Area.[13]

14. The existing levees at the Lost Lake Placement Area were "dressed up" sometime in 1995 or 1996 with soil material taken from areas adjacent to the existing levees that also may be described as sidecast borrow areas.[14]

15. Specifications issued by the Corps for subsequent embankment projects are not the same as the specifications for the Upper Bayou Project.[15]

16. Renda was required [as part of the Upper Bayou Project] to install a new outlet box structure and a 48" diameter discharge pipe.[16]

17. The Corps knew that additional quantities of suitable clay material would be required to complete the training levees in the northeast corner of the Lost Lake Placement Area, which were to be built with a mechanical method of construction.[17]

---

[11]. RFA No. 152.

[12]. RFA No. 187.

[13]. RFA No. 190.

[14]. RFA No. 193.

[15]. RFA No. 207.

[16]. RFA No. 209.

[17]. RFA No. 222.

18. Contract Modification CO-10 formalized a field change agreement in which Renda requested a realignment of the west levees.[18]

19. By letter dated June 1, 2001, Renda was advised of a decision of the Contracting Officer to delete the remaining, unfinished dredging in Dredge Section 9 from the contract for the upper Bayou Project and [said] letter did not delete work upon levees at the Lost Lake Placement Area.[19]

Respectfully submitted,

QUILLING, SELANDER, CUMMISKEY & LOWNDS, P.C.

BY: s/Brian W. Erikson
Brian W. Erikson, TX Bar No. 06643800
Clark B. Will, P.C. TX Bar No. 21502500

2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Telefax)

ATTORNEYS FOR RENDA MARINE, INC.

---

[18]. RFA No. 253.

[19]. RFA No. 255.

## CERTIFICATE OF SERVICE

I hereby certify that on the22nd day of February, 2005, a true and correct copy of Facts Admitted by Defendant in Defendant's Response to Plaintiff's First Set of Requests for Admissions, was served electronically through the CM/ECF system for the Court of Federal Claims.

s/Brian W. Erikson
Brian W. Erikson

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 02-306C |
| v. | ) | |
| | ) | (Judge Hewitt) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S
FIRST SET OF REQUESTS FOR ADMISSION

Pursuant to Rules 26 and 36 of the United States Court of Federal Claims, defendant, the United States, responds to "First Request for Admissions By Plaintiff, Renda Marine, Inc. to Defendant, United States" as follows:

REQUEST FOR ADMISSION NO. 34: On about April 26, 2000, the Contracting Officer imposed strict performance requirements on Renda which, if not met, would result in an immediate termination of the Contract.

RESPONSE: Denied, except to admit that on April 25, 2000, the Contracting Officer identified performance requirements which, if not met by Renda, could result in termination of the Contract.

REQUEST FOR ADMISSION NO. 45: On about November 6, 2000, the Contracting Officer issued a Show Cause Notice, advising Renda that the Corps was considering terminating the Contract for default due to allegedly insufficient production since the March 8,2000, cure notice.

RESPONSE: Denied, except to admit that about November 6, 2000, the Contracting Officer issued a Show Cause Notice, advising Renda that the Corps was considering terminating the Contract for default due to insufficient production following the March 8, 2000 cure notice.

REQUEST FOR ADMISSION NO. 77: In its request for equitable adjustment, Renda initially requested payment of $3,631,643.00 and a 76 calendar day extension of contract time, concerning the Flare Area differing site condition.

RESPONSE: Denied, except to admit that Renda submitted to the Contracting Officer a request for equitable adjustment in the amount of $3,631,643.00 and a 76 calendar day extension of contract time, concerning the alleged Flare Area differing site condition.

REQUEST FOR ADMISSION NO. 79: The Corps' estimate of Renda's extra costs for the Flare Area differing site condition was $4,111,778.00.

RESPONSE: Denied, except to admit that, with respect to the alleged Flare Area differing site condition, the estimate prepared by the Corps of the increased costs of performance allegedly incurred by Renda was $4,111,778.00, which was subject to an audit.

REQUEST FOR ADMISSION NO. 97: On about December 13, 2000, the Corps issued an opinion in which the Corps concluded that Renda should have anticipated the stiff clay material in Dredge Section 7.

RESPONSE: Denied, except to admit that, on December 13, 2000, the Administrative Contracting Officer to Renda in which the Administrative Contracting Officer indicated that Renda should have anticipated stiff clay material in Dredge Section 7.

REQUEST FOR ADMISSION NO. 105: On about August 18, 2000, Renda confirmed the Corps' levee realignment directive as a change in the contract drawings, requiring extra work.

RESPONSE: Denied, except to admit that on August 18, 2000, Renda sent a letter to the Corps in which Renda alleged a change to the contract as a result of the revised levee alignment, which allegedly would require extra work.

REQUEST FOR ADMISSION NO. 107: In the course of the realignment work for the Lost Lake levees, Renda had to remove and reposition material which had been previously placed.

RESPONSE: Denied, except to admit that Renda repositioned some previously placed material.

REQUEST FOR ADMISSION NO. 122: Modification P00019 increased the Contract amount by $60,000 and added four (4) calendar days to the Contract.

RESPONSE: Denied, except to admit that Contract Modification CO-05 (P00019) increased the contract amount by $66,000 and added four (4) calendar days to the contract time.

REQUEST FOR ADMISSION NO. 148: On about March 13, 2001, Renda wrote to the Contracting Officer and advised that Renda could not proceed with further dredging in Dredge Section 9 on the Project.

RESPONSE: Denied, except to admit on about March 13, 2001, Renda sent a letter to the Contracting Officer regarding Dredge Section 9, and that it did not intend to return to Dredge Section 9 with the dredge *Millennium*.

REQUEST FOR ADMISSION NO. 152: On about April 12, 2001, Renda contacted the Administrative Contracting Officer by telephone and requested that the Corps verify the excessive trash in Dredge Section 9 on the Project.

RESPONSE: Denied, except to admit that on or about April 12, 2001, Renda contacted the Administrative Contracting Officer by telephone and requested that the Corps view trash in Dredge Section 9.

REQUEST FOR ADMISSION NO. 187: Prior to June 16, 1998, the Corps was aware of sidecast borrow areas adjacent to the existing levees in the Lost Lake Levee area of the Project, and that such borrow areas were not indicated in the bid solicitation materials for the Project.

RESPONSE: Assuming that "sidecast borrow" means "soft to very soft material" and that "Project" refers to the Upper Bayou Project, defendant admits that the Corps was aware of sidecast borrow areas adjacent to the existing levees in the Lost Lake Placement Area and defendant denies that such borrow areas were not indicated in the bid solicitation materials for the Upper Bayou Project.

REQUEST FOR ADMISSION NO. 190: Prior to July 17, 1998, the Corps knew that in connection with previous projects in the Lost Lake Levee area of the Project, contractors had removed soil material from adjacent to the Lost Lake Levees on the Project.

RESPONSE: Denied, except to admit that, prior to July 17, 1998, the Corps knew that soil material had been removed from areas adjacent to existing levees at the Lost Lake Placement Area.

REQUEST FOR ADMISSION NO. 193: The existing levees in the Lost Lake area were "dressed up" sometime in 1995 or 1996, using sidecast borrow areas adjacent to the existing levees.

RESPONSE: Denied, except to admit that the existing levees at the Lost Lake Placement Area were "dressed up" sometime in 1995 or 1996 with soil material taken from areas adjacent to the existing levees that also may be described as sidecast borrow areas.

REQUEST FOR ADMISSION NO. 207: The Corps has issued specifications for projects after the Project involving embankment construction that are similar to the modified specifications issued for the Project.

RESPONSE: Denied, except to admit that specifications issued by the Corps for subsequent embankment projects are not the same as the specifications for the Upper Bayou Project.

<u>REQUEST FOR ADMISSION NO. 209</u>: As part of the Project, Renda was required to install a new outlet box structure, and a 48" diameter discharge pipe within the new levee.

<u>RESPONSE</u>: Denied, except to admit that Renda was required to install a new outlet box structure and 48" diameter discharge pipe.

REQUEST FOR ADMISSION NO. 222: At the time of the change in hydraulic levee alignment in the northeast corner of Lost Lake, the Corps knew that additional quantities of suitable clay material were required to be able to construct the Lost Lake Levees on the Project.

RESPONSE: Denied, except to admit that the Corps knew that additional quantities of suitable clay material would be required to complete the training levees in the northeast corner of the Lost Lake Placement Area, which were to be built with a mechanical method of construction.

REQUEST FOR ADMISSION NO. 253: Contract Modification No. CO-10 realigned the west levees.

RESPONSE: Denied, except to admit that Contract Modification CO-10 formalized a field change agreement in which Renda requested a realignment of the west levees.

REQUEST FOR ADMISSION NO. 255: On about June 1, 2001, the Contracting Officer deleted the remainder of Dredge Section 9 from the Contract, but did not delete the levee work.

RESPONSE: Denied, except to admit that, by letter dated June 1, 2001, Renda was advised of a decision by the Contracting Officer to delete the remaining, unfinished dredging in Dredge Section 9 from the contract for the Upper Bayou Project and, further, to admit that the letter did not delete work upon levees at the Lost Lake Placement Area.

ROBERT D. McCALLUM, JR.
Assistant Attorney General

DAVID M. COHEN
Director

JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-0282

Attorneys for Defendant

OF COUNSEL:

MR. P. ALEX PETTY
Assistant District Counsel
Office of Counsel
Galveston District
U.S. Army Corps of Engineers
Galveston, TX

JUNE 25, 2003

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 25th day of JUNE, 2003, I caused to be sent by United States mail (postage prepaid) a copy of "DEFENDANT'S RESPONSE TO PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION" addressed as follows:

BRIAN W. ERIKSON, ESQ.
Quilling, Selander, Cummiskey & Lownds, P.C.
2001 Bryan Street, Suite 1800
Dallas, TX 75201

[signature]
_______________________________