UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC., PLAINTIFF, | § | CASE NO. 02-306C |
| V. | § | (JUDGE HEWITT) |
| UNITED STATES, DEFENDANT. | § | |

**PLAINTIFF'S MEMORANDUM BRIEF**

TO THE HONORABLE JUDGE HEWITT,
UNITED STATES COURT OF FEDERAL CLAIMS:

As requested at the Pre-trial Conference, completed telephonically on February 23, 2005, RENDA MARINE, INC., ("Plaintiff") submits this Memorandum Brief on the issue of constructive change, as it is relevant to Renda's Claim 3-Houston Light & Power Tower, as follows:

**I.**

**ASSUMED FACTS**

1. In April of 1998, in an e-mail[1] from Dalton Krueger[2] to Casey Cutler, agents of the Government acknowledged that Houston Light & Power's ("HL & P") lines across the Houston Ship Channel were not in compliance with Coast Guard Regulations. In that e-mail it was stated that compliance would be handled "under the permit process", and not as part of the Houston-Galveston Navigation Channel improvements project. Bid solicitations for what ultimately became the

---

[1]. *See*, Plaintiff's Exhibit 0358.

[2]. Mr. Krueger is listed on Defendant's Witness list as a "may call" witness.

Contract,[3] were sent out on June 16, 1998.

2. At the time of Contract award, there existed at the Lost Lake Placement Area ("Lost Lake"), one HL&P electrical tower. As has been stipulated by the parties, Renda was awarded the Contract by the U.S. Army Corps of Engineers (the "Corps") on October 28, 1998.

3. In January of 1999, after Renda had commenced performance under the Contract, HL & P applied to the Corps for a permit to install an additional electrical tower at Lost Lake. In April of 1999, the Corps issued a permit to HL & P for the construction of the additional tower. HL & P's construction activities undertaken pursuant to its permit, interfered with Plaintiff's activities at Lost Lake, causing Plaintiff to move or disconnect its dredge disposal line, thereby causing delay and expense. Plaintiff is seeking $167,473.00 in equitable adjustment and 3 calendar days as a result of the HL & P's interference at Lost Lake.

## II.

## PLAINTIFF'S CONTENTIONS

4. The Corps had an affirmative duty to not undertake any activity that would hinder Plaintiff in its performance of the Contract. Further, the Corps had an affirmative duty to do what ever was necessary to enable Plaintiff's performance. Plaintiff contends that the issuance of the permit to HL & P operated as a constructive change to the Contract and Plaintiff is entitled to an equitable adjustment for costs and expenses incurred as a result of the constructive change.

5. Additionally, or in the alternative, Plaintiff contends that the superior knowledge that the Corps had with regard to HL & P's lines, and the impact that it would have on any contractor's

[3]. The government contract at issue in this matter is contract no. DACW64-99-C-0001, and is hereinafter referred to as the "Contract".

performance of the Contract, should have been disclosed. The Corps failure to disclose said information results in a contract breach . Since Plaintiff could not have reasonably known about the HL & P matter and include it in its bid process, Plaintiff seeks damages for the costs and expenses incurred as a result of the Corps non-disclosure.

**III.**

**DISCUSSION OF AUTHORITIES**

6. It is an "implied provision of every contract, whether it be one between individuals or between an individual and the Government, that neither party to the contract will do anything to prevent performance thereof by the other party or that will hinder or delay him in its performance."[4] Not only must the Government not breach said implied provision, it "must do whatever is necessary to enable the contractor to perform."[5] The authorities supporting Plaintiff's contention are legion, and have withstood the test of time.[6] Plaintiff contends that the Corps' action in allowing another contractor to go onto the Lost Lake Placement Area and erect an electrical tower was such a hindrance. This is particularly true in light of the fact that the Government was in possession of the plans and specifications for Lost Lake, and had actual knowledge of Plaintiff's construction schedule on the site. Presumably, in granting a permit to HL & P, the Government either discovered, or had the opportunity to discover, the precise location of the proposed electrical tower installation, and

---

[4]. *E.g., Essex Electro Engineers, Inc. v.* Danzig, 224 F 3d. 1283, 1291 (Fed. Cir. 2000); *George A. Fuller Co. v. United States,* 108 Ct. Cl. 70, 69 F. Supp. 409, 411 (1947); *CEMS v. United States,*59 Fed. Cl. 168, 194-95 (2003).

[5]. *E.g., United States v. Speed,* 8 Wall. 77, 81, 75 U.S. 77, 81 (1868); *Lewis-Nicholson v. United States,* 213 Ct. Cl. 192, 550 F.2d 26, 32 (1977)(*per curiam*); *Kehm Corp. v. United States,* 119 Ct. Cl. 454, 93 F. Supp. 620, 623 (1950).

[6]. *See, United States v. Speed, supra.*

what impact that would necessarily have on Plaintiff's dredge discharge line, or Plaintiff's ability to comply with the other Contract requirements at Lost Lake.

5. *CEMS, Inc. v. United States,*[7] concerned a contract for the construction of a bicycle path on a portion of the Historic Columbia River Highway in Cascade, Locks, Oregon. *Id* at 172. After an in depth factual analysis, the court found that the Government had breached the implied duty not to hinder performance and to cooperate by using improper methods for inspection, and arbitrarily changing the grades of the bicycle path,[8] and had constructively changed the contract based upon the actions of the project engineer in instructing the contractor to perform additional work.[9] In so doing, the court found that the concepts relative to a duty not to hinder, and to cooperate, still apply to the Government, and awarded equitable adjustments based upon the Government's breach.[10]

6. Additional authorities supporting Plaintiff's contention with regard to a duty not to hinder or delay performance include: *Roberts v. United States,* 174 Ct. Cl. 940, 357 F.2d 938, 943 (1966) (overzealous supervision of construction representative amounted to unlawful hindrance); *Fuller v. United States*, 108 Ct. Cl. 70. 69 F. Supp. 409, 411 (1947) (delay in delivery of models for construction project amounted to unlawful hindrance of contractor); and *Lewis-Nicholson, Inc. v. United States,* 213 Ct. Cl. 192, 550 F.2d 26 (1977)(inadequate advanced planning by government

---

[7]. 59 Fed. Cl. 168 (2003).

[8]. *Id* at 201.

[9]. *Id* at 203-205.

[10]. *Id* at 233.

held to be breach of contractual obligation not to prevent or interfere with contractor's performance).

7. With regard to Plaintiff's contract breach claim, in *Delta Equipment & Construction Co. v. United States,* 122 Ct. Cl. 340, 104 F. Supp. 549 (1952), the Plaintiff contracted to perform work in a channel improvement project in Ouachita and Morehouse Parishes in Louisiana. The contract called for the excavation fo a drainage canal, across property owned by a George Franklin, Jr. The contract also stated that the Levee Board, working with the United States, would provide "the lands, easements, and rights-of-way necessary" for the work. *Id* at 550. Close to the end of the project, Mr. Franklin forcibly evicted the contractor at gun point, and the contract was delayed almost forty days while the Levee Board obtained an injunction. In holding for the Plaintiff, the court reasoned that Mr. Franklin's adverse claim was something that was well known to the Levee Board, and that knowledge was imputed to the United States. Further, there was no disclosure of these facts to the contractor at the time it entered into the contract, and the Government was responsible to the contractor for damages incurred as a result of the non-disclosure. *Id* at 551.

8. Cases that are in accord with *Delta Equipment*, include *Jones Construction Company v. United States,* 182 Ct. Cl. 615, 390 F.2d 886, 889 where the Court held that the Air Force had a duty to disclose its superior knowledge to the bidder of its plans to "saturate the market" with high paying technical jobs, which would necessarily adversely impact its labor costs after contract award and during performance, and increase its costs. *See also, A.T. & T. Communications, Inc. v. Perry,* 296 F.3d 1307, 1312 (Fed. Cir. 2002)(government may breach a contract by withholding information when it has superior knowledge of that information and a duty to disclose it to the contractor); *Northrop Grumman Corporation, Military Aircraft Division v. United States,* 63 Fed. Cl. 12, 19,

(2004)(government had a duty to make some disclosure of its superior knowledge even if the basis for the knowledge was classified).

9. The Plaintiff anticipates that the evidence that will be offered at trial, will show by the proper evidentiary standard that the Plaintiff has been damaged by the actions of the Corps, and as the authorities cited herein reflect, the Plaintiff is entitled to be compensated.

Respectfully submitted,

QUILLING, SELANDER, CUMMISKEY & LOWNDS, P.C.

BY: */S/BRIAN W. ERIKSON*
Brian W. Erikson, TX Bar No. 06643800
Clark B. Will, P.C. TXBar No. 21502500

2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Telefax)
ATTORNEYS FOR RENDA MARINE, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 24th day of February, 2005, a true and correct copy of the foregoing Plaintiff's Memorandum Brief was sent via United States mail, postage prepaid, in an envelope addressed as follows:

John E. Kosloske, Esq.
Senior Trial Counsel, Commercial Litigation Branch
Department of Justice
Attn.: Classification Unit
1100 L Street N.W., Room 8012
Washington, DC 20530

*/S/BRIAN W. ERIKSON*
Brian W. Erikson