UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC., PLAINTIFF, | § | |
| | § | CASE NO. 02-306C |
| v. | § | |
| | § | (JUDGE HEWITT) |
| UNITED STATES, DEFENDANT. | § | |

# PLAINTIFF'S MOTION FOR TRIAL AMENDMENT

Plaintiff, Renda Marine, Inc.(hereinafter "Renda" or "Plaintiff"), pursuant to Rule 15(b) of the Rules of the Court of Federal Claims (RCFC), hereby files this, its Motion for Trial Amendment and in support thereof would show the Court as follows:

## I. REQUESTED AMENDMENT OF PLEADINGS

Plaintiff hereby requests that the Court permit Plaintiff to amend its Complaint to conform to the evidence presented at the trial of this matter so that the Complaint clearly sets forth the issue that has been tried by implied consent of the Defendant. The requested amendment, which is to be inserted immediately after paragraph 197 of the Complaint and in substitution of the "Liquidated Damages" section of the Complaint, is to read as follows:

"**Release of Liquidated Damages – Payment of Earned Contract Balance**

198. The allegations set forth in paragraphs 1 through 197 are hereby incorporated by reference and reaverred as if set out herein.

199. At the time the Corps unilaterally issued Contract Modification CO-11 (P00028), deleting the remaining dredging and levee work from the Contract, Renda was owed the sum of $399,840.85 for work performed on the Project. That sum remains due, owing and unpaid.

200. On November 26, 2002 the Corps acknowledged in writing to Renda that "at the present time the Government is withholding approximately $259,840.85 in retainage. In addition to this, we are withholding $236,016.00 in liquidated damages …."

201. Under the circumstances, the Corps has no legal justification for withholding payment from Renda of its earned but unpaid contract balance, including earned retainage. The Corps should release all withheld earned contract funds, including any amounts withheld for alleged liquidated damages and Renda should be paid an amount not less than $399,840.85 as its earned contract balance, including contractual retainage. This amount due Renda is in addition to the various amounts requested for the claims addressed herein."

## II. ARGUMENT

Under Rule 15(b) of the Rules of the Court of Federal Claims (RCFC) a party may seek an amendment of its pleadings as may be necessary to cause them to conform to the evidence presented at trial. When an issue is tried by implied consent of the parties, then that issue is to be treated in all respects as if it had been raised in the pleadings. "Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party

at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues." RCFC 15(b).

At trial, Rudy Renda, Plaintiff's designated corporate representative and Vice President of Renda Marine, Inc., testified regarding Renda Pay Estimates Nos. 29 and 30 (Joint Exhibits 8.029 and 8.030 respectively) and the billings represented thereby. Draft Trial Transcript (hereafter "DTT") pp. 2570-2584, a copy of which is attached hereto as Exhibit "A". Mr. Renda testified that in Pay Estimate No. 30, Renda billed the Corps $140,000 for 1,400 linear feet of levee construction work (DTT p.2578, line15 – p.2579, line 7) and that the Corps never paid for this work. (DTT p. 2584, lines 3-6).

Mr. Renda also testified regarding the earned contractual retainage for which Renda has not yet received payment from the Corps. He stated that the amount of $259,840.85 is the retainage amount still owed to Renda by the Corps. (DTT p. 2583, lines 14-25). Finally, Mr. Renda testified that the Corps still owes Renda the sum of $399,840.85 (DTT p. 2584, lines 7-14) for work performed under the Contract, including earned retainage.

Counsel for the Government did not object to any of Mr. Renda's testimony on this issue nor did he object to either of the exhibits admitted into evidence (Joint Exhibits 8.029 and 8.030) in support of such testimony. Further, counsel for the Government did not even cross-examine Mr. Renda on any of his testimony regarding the issue of the earned but unpaid contract balance claimed by Renda as due an owing from the Corps. In the absence of any objection by the Government to the foregoing evidence, the Court should conclude that the issue of what amount is owed by the Corps to Renda as its unpaid earned contract balance has been tried by implied consent of the parties. The

Court should also conclude from the absence of any objection by the Government, that the Government has waived any objection that the admission of said evidence would prejudice the Government's defense upon the merits.

The unnumbered section immediately after paragraph 197 in Plaintiff's Complaint might be construed as raising the issue of what earned contract funds are being withheld by the Corps from Renda for alleged liquidated damages and that language in this section seeks payment of such funds in the form of a "release and/or waive[r] of any and all liquidated damages." To avoid any ambiguity and to clearly set forth the issue that has been tried by consent of the parties, Renda requests that this Motion for Trial Amendment be granted under the provisions of RCFC 15(b).

WHEREFORE, Plaintiff, Renda Marine, Inc., respectfully requests that the Court enter an order granting Plaintiff's Motion for Trial Amendment.

Respectfully submitted,

Quilling Selander Cummiskey & Lownds, P.C.

By: s/Terry L. Salazar
Brian W. Erikson, TX Bar No. 06643800
Clark B. Will, TX Bar No. 21502500
Terry L. Salazar, TX Bar No. 17527500

2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Telefax)
ATTORNEYS FOR RENDA MARINE, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of April, 2005, a true and correct copy of Plaintiff's Motion for Trial Amendment was served electronically through the CM/ECF system for the Court of Federal Claims.

s/Terry L. Salazar
Terry L. Salazar

MR. ERIKSON: Yes.

DIRECT EXAMINATION

BY MR. ERIKSON:

Q Afternoon, Mr. Renda.

A Afternoon.

Q Now, are you Renda Marine's designated corporate representative?

A Yes.

Q Okay. Tell the Court about your educational background, sir.

Q I have a bachelor of science degree in business administration with a major in accounting out of Seton Hall University in South Orange, New Jersey. Graduated in 1974.

Q Did you ever work as an accountant?

A Yes. I worked two years with Price Waterhouse and Company out of New York before moving down to Texas.

Q And what have you done for business since moving for Texas, sir?

A I been in the construction business ever since I moved down here.

Q Did you have some connection with Renda Marine?

A Yes.

Q And what was that connection, sir?

A I was a acting vice president at the time Renda Marine became in existence.



EXHIBIT A

Q Have you had -- as a numbers guy, have you had an interest in Renda's accounts receivable?

A Yes.

Q Now, could I get you to turn to Joint Exhibit 8.029. Now, Mr. Renda, you should have a nine-page document, Joint Exhibit 8.029, and on the very first sheet it says, Payment Estimate, and if you look over in block number 11 on the first sheet, it should say Payment Estimate Number 29? Very first sheet, block 11, over on the right-hand side. Very first sheet, sir.

A Okay. Yes.

Q It should be for the 30th of April, 2001? That's block number 1, top of the page.

A Thirtieth of April, yes.

Q Okay. Turn to page number 8.

A JX-08.0299.08

Q Yes. Joint Exhibit 8, but it's page number 8, toward the back of the exhibit.

A Okay.

Q Now, you see under the Schedule of Values it's got SOV Number 29 --

A Yes.

Q -- at the very top under Schedule of Values?

A Yes.

(The document referred to was

marked for identification as
Joint Exhibit JX-08.029.)

BY MR. ERIKSON:

Q Okay. And the first thing I want to direct your attention to is Item Number 6, hydraulically-constructed levees. You see that line item?

A Yes.

Q The total quantity is 13,700 linear feet?

A Yes.

Q And then if you go over to the Completed This Period column, how many linear feet did Renda complete that period?

A One thousand feet, 1,000 linear feet.

Q And how much did Renda indicate in the next column was completed to date?

A 12,000 linear feet.

Q And now the next column, the Amount Due This Period -- well, first off, are you familiar with contractors' estimates -- payment estimates?

A Yes.

Q The next item -- the next column says Amount Due This Period. What does that mean?

A That's the amount of money that's due based on the linear feet that you install per the unit price.

Q Okay. And how much is indicated for the

hydraulically-constructed levees for this period?

A $100,000.

Q And the next column says Amount Due to Date, and what does that column say?

A That's 1,200,000, which -- yes.

Q Okay. Let's look at item 7, mob/demob?

A Yes.

Q And can you tell the Court what mob/demob is?

A Well, under the contract, when you mobilize to a project, they usually give you a certain amount of money to mobilize to the project. And then when you are completed with the project, they give you a certain amount to demobilize your equipment and, you know, you're done with the job.

Q Okay. Now, under the Total Cost Column, right in the middle, what's the total of the line item for mob/demob?

A The total cost?

Q Yes, sir.

A Okay. Total cost is $800,000.

Q Okay. Now, as of payment estimate number 29, how much had Renda -- how much was the amount due to date for mobilization/demobilization?

A Due to date?

Q The very last column, sir. Amount due to date.

A Oh, due to date total. Okay. Oops, lost it.

552,000.

Q Okay. And so --

A Oh, wait a minute, whoa, whoa, whoa. I got the wrong one. I'm sorry. Yes, it is 552,000.

Q All right. Now, we'll give you a calculator if you need it, but what's the difference between 800,000 and 552,000?

A Well, the difference would be 248,000.

Q Okay. Now, down toward the bottom of this page you see the Less Retainage. If you keep following that column down --

A Yes.

Q -- there's a completed to date of 16,434,665.16. And under that is less retainage. What is that figure, sir?

A The retainage figure or the completed to date?

Q No, the less retainage figure.

A Okay. The less retainage figure is $511,840.85.

Q And what's retainage mean?

A Retainage is the amount that they hold back, based on a percentage of what -- of the amount completed, and it could be anywhere from 5 percent to 10 percent, just depends on what the contract states.

Q Okay. Is this money that the contractor has earned?

A Yes.

Q Is it money that the owner is holding for some reason?
A Yes. The owner is holding until the project is completed.
Q Okay. Now let's go over to the first page of this exhibit. Should have Bates-stamped page number 1.
A Okay.
Q And you see the block that's got the 14 in it. It's got 14A, B, C, on down to L?
A Yes.
Q The second item down, 14B, says Previous retained percentage?
A Yes.
Q Now, that $511,840 figure -- is that the same as what we just looked at on Bates-stamped page 8?
A Yes, that's correct.
Q Now turn to Bates-stamped page 2, one page, sir, and go to line item number 6, hydraulically-constructed levees.
A Yes.
Q Now, do you remember how many feet Renda had requested be paid?
A It was 1,000 -- you talking about the -- on the estimate it was 1,000 linear feet was requested to be paid.
Q And what would the total be if that 1,000 were

included from -- page we just looked at, page 9?

A That would be 12,000.

Q Page 8, I'm sorry. Okay. How much has the Corps approved?

A The quantity -- well, the quantity was 11,000 linear feet --

Q Okay.

A -- and the amount, the total amount, was 1,100,000.

Q Okay.

A That would be at $100 a foot.

Q Did the Corps pay all that Renda had requested?

A Well, it was in this total. (Perusing document.) It seems like it did.

Q I'm just talking about the hydraulically-constructed levee line item.

A They paid -- there was 11,000 linear feet.

Q And how much -- how many linear feet did Renda request, total?

A How many linear feet?

Q Did Renda request total? You got to go back to page 8.

A Oh. We requested 12,000 --

Q Okay.

A -- or 1,000 we requested that pay period.

Q All right.

A For a total of 12,000.

Q Now answer my question. Did the Corps pay all that Renda had requested or not for line item 6?

A No. It did not.

Q Okay. How many dollars is it short?

A It would be short 1,000 linear feet, which is $100,000.

Q Okay. And while we're on this page, look at line item number 7, mobilization and demobilization on Bates-stamped page 2. Bates-stamped page 2, sir.

A Okay.

Q And how much has the Corps paid to date -- that would be column H, where it says Amount, H, far right-side?

A 552,000.

Q Okay. And did that agree with Renda's records?

A Yes, I believe it did.

Q Okay.

MR. ERIKSON: I move that Joint Exhibit Number 8.029 be introduced into evidence.

MR. KOSLOSKE: No objection.

THE COURT: JX-08.029 is admitted.

(The document referred to, having been previously marked for identification as Joint

Exhibit PX-08.029, was received into evidence.)

BY MR. ERIKSON:

Q All right. Turn to the next exhibit, sir, JX-8.030. JX-8.030. Are you there, sir?

A Are you talking about 0003 or 029 --

Q JX --

(Handing documents.)

MR. ERIKSON: Thank you, Ms. Moseley.

THE WITNESS: Thank you.

BY MR. ERIKSON:

Q All right. Now, you should have a 13-page document.

A It appears they're all here.

Q Okay. And the first page indicates in box number 11 that it's estimate number 30? That what you have?

A Yes.

Q Okay. Now, let's go back to Bates-stamped page number 9.

A Okay.

Q And take a look at the hydraulically-constructed levee line item, item 6?

A Okay.

Q And how much did Renda say was completed this period, the Complete this period column?

A 1,400 linear feet.
Q And next line, the next column, Complete to date, how much was completed, sir?
A For a total of 12,400.
Q And how much was -- how much money was Renda requesting this period?
A 140,000.
Q And that would be the total to date of how much for the hydraulically-constructed levees?
A 1,240,000.
Q Okay. Now we're up here -- look at line item number 7, the mob/demob?
A Okay.
Q And go over to the amount due this period, the second to the last column?
A Yes.
Q How much was Renda requesting for mobilization/demobilization?
A We were requesting 248,000 to complete the mobilization.
Q Okay.
A Demobilization, I should say.
Q Now, go down to the Less retainage toward the bottom of the page. You see that?
A Yes.

Q And what's that figure, sir?

A It says 158,400 was the retainage.

Q Was Renda requesting that the retainage be reduced?

A Yes.

Q And how much was Renda requesting in total for this particular pay estimate?

A We were requesting $741,440.85.

Q Okay. Now let's turn back to the very first page, sir.

A Okay.

Q You see under block 14B the previous retained percentage?

A Yes.

Q Now, is that the same figure that it was for the last pay estimate?

A Yes.

Q $511,840.85?

A Yes.

Q And down item I, retainage refunded, what is that figure, sir?

A 252,000.

Q Okay. Now turn to the next page, sir, Bates-stamped page 2. And let's first look at line item 6, hydraulically-constructed levees.

A Yes.
Q You see quantity and unit? It's column G.
A Yes.
Q How much is the Corps paying Renda for under that column and total? How many linear feet?
A 11,000.
Q Okay. Now look at the next line item, line item 7, mobilization/demobilization?
A Yes.
Q Under amount H, what is that figure now?
A 800,000.
Q Okay. Was that increased from the last one?
A Yes.
Q And if you go back to the very first page of this exhibit, and you go over to the right-hand column under 14E, earnings this period total, earnings to date minus D?
A You're talking D or E? D as in David?
Q I'm sorry -- Item E.
A E is 248.
Q Okay.
A 248,000
Q Is that the demobilization amount?
A Yes.
Q And if you go back to Bates-stamped page 9, Bates-stamped page 9 --

A All right.

Q -- is there a checkmark by that $248,000 figure?

A Yes. There's a checkmark next to it.

Q And is there $248,000 item written over to the right?

A Yes.

Q And then the refund that was shown on the first page of the exhibit, is that written in $252,000 with refund inside of parens?

A Yes. It appears they gave us the 252,000 as a reduction in retainage --

Q Okay.

A -- and that made it a total payment of 500,000, is what they paid us on this estimate.

Q Okay. Let me give you a calculator for this next one, just in case.

THE COURT: Counsel, is this handwriting recognized by anyone?

BY MR. ERIKSON:

Q Do you know whose handwriting it is, sir?

A I don't.

Q Who was --

MR. ERIKSON: Your Honor. It was produced by the Corps. We don't know whose it is.

MR. KOSLOSKE: Just for clarification, are we

referring to page 9?

MR. ERIKSON: I was, Your Honor.

MR. KOSLOSKE: Well, that's a Renda estimate; not a Corps document.

MR. ERIKSON: We'll get to that with a later witness, Your Honor.

THE COURT: At the moment, the handwriting -- the source of the handwriting is unknown.

MR. ERIKSON: Yes, Your Honor.

THE COURT: And we will not be able to accord that any weight at the moment.

MR. ERIKSON: Yes, Your Honor.

BY MR. ERIKSON:

Q Now, Mr. Renda, if Renda's retainage -- go back to the very first page of the exhibit -- if Renda's retainage was $511,840.85 -- you see that figure?

A Uh-huh.

Q And the Corps is refunding $252,000, how much retainage is left?

A Oh, it would be the difference between the two.

Q I gave you a calculator. How much?

A Oh, I'm sorry. Well, the difference is still there. It's written there. It's 259,840.85 is the difference. That would be still owed. That's the retained amount.

Q Okay.
A If they gave us the $252,000 refund.
Q Okay. Now, did the Corps of Engineers pay the $140,000 that was requested for the hydraulically-constructed levees?
A No.
Q Now, if you add 140,000 to the $259,840.85 figure, what do you get, sir?
A Well, they would still owe us $399,840.85, and if that's the case they -- they would still owe that to us, yes.
Q Okay. Will you give me that figure again, sir?
A 300 -- it would be -- they would owe us 399,840.85,
Q Okay. Now, as of the time of Joint Exhibit 8.030 -- in other words, June 2001 -- did the Corps of Engineers give Renda any reason why they weren't paying the $399,840.85?
A As of June --
Q As of June 2001, the date of this payment estimate, did the Corps of Engineers give Renda any reason why they weren't paying that amount?
A No.
Q Okay. Now, let me get you to switch to another book, and we're going to look at Joint Exhibit 6.028.