# In the United States Court of Federal Claims

No. 02-306 C

(E-Filed:  April 19, 2005)

_____
)
RENDA MARINE, INC.,                              )
)
               Plaintiff,           )    Trial; Motion to Amend
)    Pleading, RCFC 15(b); Limits
v.                           )    of This Court's Jurisdiction
)    Under 41 U.S.C. §§ 605–609
THE UNITED STATES,                               )    (2000).
)
               Defendant.           )
_____ )

Brian W. Erikson, Dallas, TX, for plaintiff.  Terry L. Salazar, Dallas, TX, of counsel.

John Edgar Kosloske, with whom were Peter D. Keisler, Assistant Attorney General, and David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.  P. Alex Petty, Galveston District, United States Army Corps of Engineers, Galveston, TX, of counsel.

## OPINION AND ORDER

HEWITT, Judge

Before the court[1] is plaintiff's Motion for Trial Amendment (Pl.'s Mot.), filed

---

[1]Plaintiff's motion contains a deficiency.  Rule 11 of the Rules of the Court of Federal Claims (RCFC) provides that all filings with the court "shall be signed by or for the attorney of record."  RCFC 11(a); cf. RCFC 83.1(c)(1) ("There shall be but one attorney of record for a party in any case at any one time, and such attorney of record shall be an individual (and not a firm) who has been admitted to practice before this court.").  Rule 83.1(c) permits "[a]ny attorney who is a member of the bar of this court [to] sign any filing in the attorney of record's name.  An attorney who signs the name of the attorney of record shall so indicate by adding the following after the name of the attorney of record: 'by [the signing attorney's full name].'"  RCFC 83.1(c)(2).  Although plaintiff's motion was signed neither by nor for the attorney of record, the attorney of record endorsed the motion during oral argument.  See Transcript of 4/13/05 Oral

(continued...)

electronically on April 6, 2005, which the court construes as a motion for an amendment of the pleadings pursuant to Rule of the Court of Federal Claims (RCFC) 15(b).  In its motion, plaintiff claims that "the issue of what amount is owed by the Corps to Renda as its unpaid earned contract balance has been tried by implied consent of the parties," Pl.'s Mot. at 3, and asks "that the [c]ourt permit [p]laintiff to amend its Complaint to conform to the evidence presented at the trial of this matter so that the Complaint clearly sets forth the issue that has been tried by implied consent of the [d]efendant," id. at 1; see also id. at 2–3 (citing RCFC 15(b) (2004)).  In a telephonic oral argument, held on the record on April 13, 2005 pursuant to the court's Order dated April 12, 2005, the parties addressed the propriety of plaintiff's motion and, in particular, whether a jurisdictional basis exists for the amendment of plaintiff's complaint.

I.    Background

    A.    Plaintiff's Complaint

    On April 11, 2002, plaintiff filed suit against the United States, acting through the Army Corps of Engineers, Galveston (TX) District (defendant).  Complaint (Compl.) at 1.  Plaintiff alleges that it encountered a number of differing site conditions during the course of its performance of the Upper Bayou Project Contract (Upper Bayou Contract or Contract).  See id. at 3, ¶ 11.  The Contract involved dredging a portion of the Houston-Galveston Navigation Channel and the mechanical and hydraulic construction of levees at the Lost Lake Placement Area.  See Renda Marine, Inc. v. United States, 58 Fed. Cl. 57, 58 (2003) (Renda I).  In its complaint, plaintiff seeks $14,244,848 in damages resulting from the alleged differing site conditions,[2] Compl. at 29, and requests that "[u]nder the circumstances, the Corps should release and/or waive any and all liquidated damages," id. at 28.

    A four-week trial of this matter was held in Houston, Texas.  Plaintiff presented its case-in-chief from February 27, 2005 through March 11, 2005 and defendant presented its case-in-chief from March 28, 2005 through April 7, 2005.  Post-trial briefing is now underway.

---

    [1](...continued)
Argument (Arg. Tr.) at 2:19–3:3 (colloquy between plaintiff's counsel and the court).  Accordingly, the court accepts the filing of plaintiff's motion.

    [2]Plaintiff ultimately reduced the amount of damages attributed to the alleged differing site conditions to $10,842,811.  See Transcript of Trial (Trial Tr.) at 2456:10–11.

B.      Plaintiff's Motion to Amend its Complaint

On April 6, 2005, plaintiff electronically filed a motion to amend its pleadings to conform to evidence presented at trial on March 10, 2005, during the testimony of Mr. Rudy Renda, one of plaintiff's two designated corporate representatives.  See generally, Pl.'s Mot. at 2–4.  The direct examination of Mr. Renda focused on the contents of three joint exhibits (JX):  Pay Estimate Nos. 29 and 30, see JX 8.029 & 8.030, which plaintiff submitted to defendant to request payment for work performed under the Contract, and Contract Modification No. 28, which was issued by defendant on September 18, 2001 and deleted all remaining work from the Contract, see JX 6.028.  Of the three exhibits, only Pay Estimate 29 was admitted during Mr. Renda's testimony.

Using Pay Estimate No. 29 as a template, plaintiff's counsel asked Mr. Renda to explain the information recorded in each column of the document and focused on various sums that were billed by plaintiff to defendant.  See Transcript of Trial (Trial Tr.) at 2571:4–2577:22.  Plaintiff's counsel moved this exhibit into evidence without objection from defendant's counsel.  Id. at 2577:19–22.

Mr. Renda then was questioned about Pay Estimate No. 30.  His testimony focused primarily on two items that were billed to the defendant, but allegedly not paid for:  $140,000 for hydraulic levee construction, see id. at 2579:5–7, 2584:3–6, and $259,840.85 in earned contract retainage, see id. at 2583:14–25.  Plaintiff's counsel asked Mr. Renda, "Now, if you add [$]140,000 to the $259,840.85 figure, what do you get, sir?" Id. at 2584:7–8.  Mr. Renda replied, "Well, they would still owe us $399,840.85, and if that's the case they—they still would owe that to us, yes."  Id. at 2584:9–11; see also id. at 2584:13–14 (statement of Mr. Renda that "they would owe us [$]399,840.85").  Plaintiff's counsel then asked Mr. Renda, "As of June 2001, the date of this payment estimate, did the Corps of Engineers give Renda any reason why they weren't paying that amount [the $399,840.85]?," id. at 2584:20–22, and Mr. Renda replied, "No," id. at 2584:23.  Defendant did not object to Mr. Renda's testimony about Pay Estimate No. 30.

Plaintiff's counsel then showed Mr. Renda JX 6.028, the September 18, 2001 contract modification deleting all remaining dredging and levee construction work from the contract.  Id. at 2584:25.  Mr. Renda testified that his understanding of the modification was that "[Renda] w[as] done" with its work under the contract.  Id. at 2586:25.  Plaintiff's counsel asked Mr. Renda whether, "at the time that this [modification] was issued, did the Corps of Engineers give Renda any reason why the Corps was not paying the contract balance."  Id. at 2587:1–3.  Mr. Renda replied, "No." Id. at 2587:4.  Although this question assumed that plaintiff never was paid the contract

balance—a fact not in evidence when Mr. Renda testified—defendant did not object.  Nor did defendant cross-examine Mr. Renda concerning any of his testimony.

Approximately four weeks later, plaintiff's counsel filed a Rule 15(b) motion to amend its pleadings to conform to the testimony and evidence presented during the examination of Mr. Renda.  In its motion, plaintiff argues that

> [c]ounsel for the Government did not object to any of Mr. Renda's testimony . . . nor did he object to either of the exhibits admitted into evidence (Joint Exhibits 8.029 and 8.030) in support of such testimony.[3] Further, counsel for the Government did not even cross-examine Mr. Renda on any of his testimony regarding the issue of the earned but unpaid contract balanced claimed by Renda as due an[d] owing from the Corps.  In the absence of any objection by the Government to the foregoing evidence, the Court should conclude that the issue of what amount is owed by the Corps to Renda as its unpaid earned contract balance has been tried by implied consent of the parties.

Pl.'s Mot. at 3 (footnote added).

In its motion, plaintiff provides a four-paragraph "amendment, which is to be inserted immediately after paragraph 197 of the Complaint and in substitution of the 'Liquidated Damages' section of the Complaint."  Pl.'s Mot. at 1.  The proposed amendment to plaintiff's complaint is titled "Release of Liquidated Damages—Payment of Earned Contract Balance," id., and seeks the following relief:

> The Corps should release all withheld earned contract funds, including any amounts withheld for alleged liquidated damages and Renda should be paid

---

[3]This assertion is accurate only in part.  Pay Estimate No. 30 (JX 8.030)—the exhibit upon which plaintiff primarily relies in its motion—was already in evidence when Mr. Renda testified.  This document was used to examine Mr. Steve Bowman, one of plaintiff's case-in-chief witnesses, on March 9, 2005.  Plaintiff's counsel neglected to offer the exhibit into evidence following this examination.  Recognizing his oversight, plaintiff's counsel moved the exhibit into evidence on March 10, 2005, several hours before Mr. Renda appeared as a witness.  See Trial Tr. at 2564:3–12.  The record reflects that this exhibit was admitted through Mr. Bowman's testimony, see id.; however, the court asked the parties during Mr. Renda's testimony to confirm that the exhibit had been admitted, id. at 2585:11–13.  Plaintiff re-offered the exhibit and the court confirmed its admission into evidence.  Id. at 2585:14–17.  Defendant did not object to the admission of JX 8.030 at either time.

an amount not less than $399,840.85 as its earned contract balance, including contractual retainage.  The amount due Renda is in addition to the various amounts requested for the claims addressed herein.

Id. at 2, ¶ 201.

C.      The November 2002 Contracting Officer's Final Decision

The proposed amendment to plaintiff's complaint quotes from, but does not cite or otherwise reference, a November 2002 contracting officer's final decision that found plaintiff liable to defendant on certain counterclaims arising under the Upper Bayou Contract.  See Pl.'s Mot. at 2, ¶ 200 ("On November 26, 2002, the Corps acknowledged in writing to Renda that 'at the present time the Government is withholding approximately $259,840.85 in retainage.  In addition to this, we are withholding $236, 016.00 in liquidated damages. . . .'").  In this final decision, "the contracting officer determined that plaintiff owed defendant approximately $11.86 million for deficient or incomplete contract items."  Order dated July 30, 2004 (7/30/04 Order) at 3 (denying plaintiff's RCFC 15(a) Motion to Amend Pleadings dated July 1, 2004 (Pl.'s 7/1/04 Mot.)).

The November 2002 contracting officer's final decision, which is not part of the evidence admitted at trial, was issued more than seven months after plaintiff filed its complaint.  Cf. Compl. at 1 (date stamped April 11, 2002).  Plaintiff failed to appeal the decision to the Armed Services Board of Contracting Appeals within ninety days, or to the Court of Federal Claims within twelve months, as required by the Contract Disputes Act of 1978 (CDA), see 41 U.S.C. §§ 606, 609(a)(1), (3) (2000); see also Trial Tr. at 299:2 (statement by plaintiff's counsel that "there was no appeal" of this decision); id. at 5357:15 (same).  The decision became "final and conclusive and not subject to review by any forum, tribunal, or Government agency," on November 26, 2003.  See 41 U.S.C. § 605(b) (2000).

Although the period for timely appeal of this contracting officer's decision had expired seven months earlier, plaintiff filed a motion pursuant to RCFC 15(a) in July, 2004 to amend its complaint to include a "declaration that the November 26, 2002 final decision . . . 'is a nullity or is otherwise invalid.'"  7/30/04 Order at 3 (quoting Pl.'s 7/1/04 Mot., Ex. A at 34 (proposed amended complaint)).  In an order dated July 30, 2004, the court noted that plaintiff's challenge to the contracting officer's decision occurred more than nineteen months after plaintiff received the decision, and that plaintiff did not provide a persuasive explanation for its belated appeal.  7/30/04 Order at 7 ("Plaintiff does not dispute either that it timely received the final decision or that it

5

declined to exercise its appeal rights under the Contract Disputes Act, in particular, to appeal the decision to an agency board of contract appeals . . . or to institute a proceeding in this court upon that claim.") (citations omitted); cf. Pl.'s 7/1/04 Mot., Ex. B (11/26/02 contracting officer's final decision), at 42 (showing that a copy of the decision was provided to plaintiff's counsel and providing instructions for appealing the decision to both the Armed Services Board of Contract Appeals and the United States Court of Federal Claims).  The court denied plaintiff's motion to amend, finding that plaintiff "failed to establish that 'justice . . . requires' . . . the proposed amendment of the complaint" to include a claim that was jurisdictionally barred as a result of plaintiff's own inaction.  7/30/04 Order at 7 (quoting RCFC 15(a)); cf. Foman v. Davis, 371 U.S. 178, 182 (1962) (finding "undue delay . . . on the part of the movant" a proper basis for denying a motion to amend a complaint under correlative Federal Rule of Civil Procedure (FRCP) 15(a)); Te-Moak Bands of Western Shoshone Indians of Nevada v. United States, 948 F.2d 1258, 1262–63 (Fed. Cir. 1991) ("Delay alone, even without a demonstration of prejudice, has thus been sufficient grounds to deny amendment of pleadings [under FRCP 15(a)]. . . . [T]he party seeking to amend must justify that request by more than invocation of the concept of the rule's liberality.").

    Notwithstanding the court's determination that it lacks jurisdiction to review a contracting officer's final decision that was not timely appealed, see 41 U.S.C. § 605(b), plaintiff attempted, without success, to bring the decision before the court twice during pretrial proceedings,[4] twice during trial,[5] and again, by indirection, in the motion

---

    [4]On the first day of the pretrial conference, February 16, 2005, the court ruled on a number of objections to each party's trial exhibit list.  See generally Transcript of Pretrial Conference (Pretrial Tr.) at 24:22–254:24.  Defendant objected to a number of plaintiff's exhibits that related to the November 2002 decision, including a copy of the decision itself, as not relevant "to the extent that these documents are being offered as part of the challenge to the validity of that decision." Id. at 183:16–18 (statement of defendant's counsel).  In its objection, defendant referenced the court's July 30, 2004 order. Id. at 183:19–21 (statement of defendant's counsel).  The court emphasized that it lacked jurisdiction to review the decision and sustained defendant's objection. Id. at 197:3–10 (colloquy between the court and plaintiff's counsel); 199:13–17 (same).  At this time, plaintiff averred, and the court agreed, that these exhibits would be offered only to impeach testimony by government witnesses, and not for plaintiff's case-in-chief. See, e.g, id. at 198:5–7 ("I'm not talking case in chief.  These are all for impeachment purposes of the government witnesses.") (statement of plaintiff's counsel).

    On the second day of the pretrial conference, February 23, 2005, plaintiff's counsel raised the November 2002 decision as "an issue related to" the settlement of this case:

(continued...)

6

_____

[4](...continued)
There is a legal impediment that we have run into that I think the [c]ourt can help us with, and the problem that we have run into is that before we can begin any meaningful settlement discussions, the government feels that the government has a trump card, namely the contracting officer's final decision of November 26th, 2002, which was issued about seven months after Renda filed this lawsuit.  We feel as a matter of law that it is a legal nullity, and if the court could give us some guidance on that, and if the court would entertain some briefing, I think that it would become pretty clear, and then we could discuss settlement with some earnest, but—

Id. at 239:5–18.  The court rejected plaintiff's late-appearing attempt to raise this jurisdictionally-barred issue in the guise of an impediment to settlement:  "You have known at least since 2002 that you had this circumstance.  This is completely out of order. . . .  [I]f you have a vulnerability here, that is lawyering, and not settlement."  Id. at 239:20–25.

[5] On the first day of trial, plaintiff's counsel attempted to introduce into evidence Plaintiff's Exhibit (PX) 1793, a copy of the November 2002 decision, to impeach testimony of Thomas Benero, the contracting officer responsible for the Upper Bayou Contract.  Trial Tr. at 298:11–17.  After establishing that the decision had not been appealed and was not at issue in this trial, id. at 298:25–299:25 (colloquy between the court and plaintiff's counsel), the court asked plaintiff's counsel to identify the testimony that he intended to impeach, id. at 300:2–3.  Plaintiff's counsel proffered, "Your Honor, this is his decision that runs diametrically opposed with what he's already testified to, but we believe that the position that the other government witnesses are going to take later on during the presentation of the Government's case in chief will be inconsistent with what Mr. Benero has already testified about."  Id. at 300:4–10.

The court reminded plaintiff's counsel of the "pretrial conference ruling that this exhibit will come in for impeachment only," and again asked, "What has Mr. Benero said that needs to be impeached?"  Id. at 300:11–13; see also id. at 301:7–14 ("This is your direct case. . . .  If there is something in here that's useful for impeachment of a factual statement that is made by a government witness that's contradicted by . . . the statements in this letter, I see no difficulty using it for impeachment.  That's the [c]ourt's order.") (colloquy between the court and plaintiff's counsel).  Plaintiff's counsel replied, "Your honor, at this point it may be premature to use it for impeachment . . . of this witness. . . .  And I'll withdraw the exhibit at this point."  Id. at 301:18–23 (colloquy between the court and plaintiff's counsel).   Plaintiff's counsel abandoned the use of proposed PX 1793 voluntarily, without raising or even attempting to raise any issue of its admissibility or to preserve any type of objection.

Contrary to the prediction of plaintiff's counsel, plaintiff did not attempt to re-introduce the November 2002 decision with any government witness.  However, at the close of trial on

(continued...)

presently pending before the court.  At oral argument, the court asked plaintiff's counsel to explain "the circumstances which resulted in the Plaintiff not appealing the [November] 2002 contracting officer's decision."  Transcript of 4/13/05 Oral Argument (Arg. Tr.) at 16:13–14.  Plaintiff's counsel replied:

> When we looked at the . . . decision, which is Plaintiff's Exhibit 1793, we saw it as the mirror image or the flip side of exactly the claims that we had already asserted against the government, and so those exact issues were already in play before the [c]ourt.  The government did ask permission from the [c]ourt to be able to file a counterclaim, and we were waiting for the government to assert a counterclaim in the court proceeding, and the government just simply never did it.

Id. at 16:16–17:1.  The court replied, "So you were, then, aware."  Id. at 17:2.  Referring to plaintiff's July 2004 motion to amend, which the court "denied based on the CDA," id. at 17:5 (statement of the court), the court pointed out that the copy of the decision appended to plaintiff's motion showed that plaintiff's counsel had been provided with a copy of the decision at the time it was issued.  Id. at 17:3–4, 11.  Plaintiff replied, "I don't know if that's how I got it, but I did become aware of it."  Id. at 17:12–13.

II.    Discussion

    A.    Amendment of the Pleadings Under RCFC 15(b)

---

[5](...continued)
April 7, 2005, more than five weeks after Mr. Benero testified and after the last government witness had concluded his testimony, see Tr. at 5355:16, plaintiff's counsel sought "to make an offer of proof in connection with Plaintiff's Exhibit [(PX)] 1793[,] . . . the contracting officer's [final] decision on our claims [dated] November 26, 2002."  Id. at 5356:18–23.  Plaintiff's counsel stated that he wished to "submit [the decision] for the record . . . for the purposes of an appeal, if there is one."  Id. at 5356:25–5357:4.  Given the timing of plaintiff's request and the circumstances surrounding this particular exhibit, the court asked plaintiff's counsel,  "[W]hat is the authority for doing this? . . .  [T]his trial is not about[, and] you know it is not about that contracting officer's decision.  It hasn't been appealed."  Id. at 5357:12–14.  Plaintiff's counsel cited no authority in support of its request and agreed with the court that it had not timely appealed the decision.  Id. at 5357:16.  The court continued, "So it is not in front of me," id. at 5357:16, and plaintiff's counsel replied with the retort, "Well, it should have been," id. at 5357:17.  The court advised plaintiff that it could raise this issue on appeal and denied plaintiff's request to make the offer of proof.  Id. at 5357:18–19.

Rule 15(b) of the Rules of the United States Court of Federal Claims states:

> When issues not raised by the pleadings are tried by express or implied
> consent of the parties, they shall be treated in all respects as if they had been
> raised in the pleadings.  Such amendment of the pleadings as may be
> necessary to cause them to conform to the evidence and to raise these issues
> may be made upon motion of any party at any time, even after judgment;
> but failure so to amend does not affect the result of the trial of these issues.

RCFC 15(b) (2004).  Although "Rule 15(b) is to be 'liberally construed'" to ensure that controversies are properly tried on the merits, John R. Sand & Gravel Co. v. United States, 62 Fed Cl. 556, 568 (2004) (quoting Tucker v. United States, 8 Cl. Ct. 575, 586 (1985)), the application of the rule is limited in several important respects.

Most notably, this court cannot try—by implied consent or otherwise—a claim over which the court lacks jurisdiction.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter spring[s] from the nature and limits of the judicial power of the United States and is inflexible and without exception.") (quotations and citation omitted).  Because "[s]ubject-matter jurisdiction . . . is . . . a statutory requirement[,] . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.  Thus, consent of the parties is irrelevant" where jurisdiction does not exist in the first place.  Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982); see also In re Alappat, 33 F.3d 1526, 1530 (Fed. Cir. 1994) ("[J]urisdiction cannot be conferred on this court by waiver or acquiescence [by a party].");  Jeppesen Sanderson, Inc. v. United States, 19 Cl. Ct. 233, 237 (1990) ("[N]either actions of the parties nor of other courts can confer jurisdiction on this court where it does not otherwise exist.").  Nor can the jurisdiction of this court be expanded by the creation or invocation of this court's procedural rules.  E.g., United States v. Sherwood, 312 U.S. 584, 589–90 (1941) ("An authority conferred upon a court to make rules of procedure for the exercise of its jurisdiction is not an authority to enlarge that jurisdiction.").  Accordingly, Rule 15(b) cannot be invoked by either party to confer jurisdiction over claims that are otherwise beyond the purview of this court.  AAAA Enters. v. United States, 10 Cl. Ct. 191, 194 (1986) ("This court cannot endow itself with jurisdiction through exercise of its discretion to allow amendments.").

B.      Jurisdiction of the United States Court of Federal Claims Under the CDA

Like all courts in our democracy, the United States Court of Federal Claims is a court of "limited jurisdiction."  United States v. King, 395 U.S. 1, 3 (1969).  The Tucker

Act, 28 U.S.C. § 1491 (2000), vests this court with jurisdiction over certain claims against the United States; however, the Tucker Act does not itself create substantive rights enforceable against the sovereign.  United States v. Testan, 424 U.S. 392, 398 (1976); Khan v. United States, 201 F.3d 1375, 1377 (Fed. Cir. 2000).  The Tucker Act sets out this court's CDA jurisdiction as follows:  "The Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the [CDA] . . . on which a decision of the contracting officer has been issued under [section 605 of the CDA]."  28 U.S.C. § 1491(a)(2).

   Section 605(a) of the CDA requires that "[a]ll claims by a contractor against the government relating to a contract . . . be in writing and . . . be submitted to the contracting officer for a decision."  41 U.S.C. § 605(a).  Where the amount of a claim exceeds $100,000, the claim must be certified by the contractor.  § 605(c)(1).  Section 605 also requires "the contracting officer [to] issue his decisions in writing, and . . . [to] furnish a copy of the decision to the contractor."  § 605(a).  If the contracting officer fails to issue a decision upon the contractors' claim within the statutory time period, the CDA provides that the contracting officer is deemed to have made a decision denying the claim.  § 605(c)(5).  The Federal Circuit has interpreted section 605 to impose two distinct prerequisites to this court's jurisdiction over disputes between contractors and the government: the contractor must have submitted a "claim"[6] to a contracting officer, and the contracting officer must have issued a "final decision" concerning that claim.  See, e.g., England v. Swanson Group, Inc., 353 F.3d 1375, 1379 (Fed. Cir. 2004); Bath Iron Works Corp. v. United States, 20 F.3d 1567, 1578 (Fed. Cir. 1994).  A party must establish both jurisdictional prerequisites to proceed in this court.  E.g., Alliant Techsystems, Inc. v. United States, 178 F.3d 1260, 1264 (Fed. Cir. 1999) ("[T]he CDA grants jurisdiction to the Court of Federal Claims . . . over a contractor's request for relief only when the appeal or action is based on a qualifying claim filed by the contractor and a final decision by the contracting officer.").

---

[6]The term "claim" is not defined in the CDA; however, courts routinely look to the Federal Acquisition Regulations to ascertain its meaning:

> Claim means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract. However, a written demand or written assertion by the contractor seeking the payment of money exceeding $100,000 is not a claim under the Contract Disputes Act of 1978 until certified as required by the Act.

48 C.F.R. § 2.101 (2004).

C.     The Court Lacks Jurisdiction to Review Plaintiff's Claim for Payment

Plaintiff's complaint acknowledges that this court's jurisdiction over its eight differing site conditions claims is predicated on the CDA.  See Compl. at 1 ("This Honorable Court has jurisdiction under the Contract Disputes Act, since Renda's claims arise from a United States Government construction contract, which is subject to that [A]ct.").  Plaintiff established both jurisdictional prerequisites for each differing site condition claim that was pleaded in its complaint and addressed at trial.  See generally id. at 4–28.  In its motion to amend, however, plaintiff seeks to augment its complaint with a new claim for "Release of Liquidated Damages—Payment of Earned Contract Balance."  Pl.'s Mot. at 1.  This claim seeks "an amount not less than $399,840.85 as [plaintiff's] earned contract balance, including contractual retainage . . . in addition to the various amounts requested for the claims addressed herein."  Id. at 2, ¶ 201.  By its terms, this new claim relates to the Upper Bayou Contract and, like plaintiff's other claims, is governed by the CDA.  However, in contrast to plaintiff's differing site conditions claims, its claim for unpaid contract earnings has not been the subject of a contractor's certified claim.

Defendant points out this distinction and adds that the proposed amendment to plaintiff's complaint seeks relief "in addition to," and distinct from the relief sought in plaintiff's differing site condition claims.  Arg. Tr. at 7:17–19.  According to defendant, plaintiff's claim for unpaid contract earnings "is not set forth in any of the claims pending before the [c]ourt that are the subject of Renda's complaint in this matter. . . .  Nor has Renda presented a certified claim of unpaid contract balance to the contracting officer, much less obtained a decision upon such a claim from the contracting officer."  Id. at 7:13–22 (statement of defendant's counsel).  Defendant's counsel argues that there "is no basis for jurisdiction in this [c]ourt" over the proposed amendment to plaintiff's complaint because, "[a]bsent a claim, no [contracting officer's final] decision is possible."  Id. at 6:23–25 (citing Vanalco, Inc. v. United States, 48 Fed. Cl. 68, 75 (2000) (noting that "a claim must be a non-routine request for payment. . . .  A request for payment is routine if it is made under the contract, not outside of it.") (citations and quotations omitted).

Plaintiff disputes "that this is essentially a new claim that is being presented to the [c]ourt and that it had to go through the claim prerequisites of the CDA," and argues instead that "this is an integral part of the contractor's claims in the complaint that was filed," for two reasons.  Id. at 10:11–16.  First, plaintiff points to the sentence in its complaint relating to liquidated damages, Compl. at 28 ("Under the circumstances, the Corps should release and/or waive any and all liquidated damages."), and insists that

the complaint did address the issues of funds being withheld that were otherwise due the contractor under the notice of a withholding for liquidated damages.  It asked, generally, for specific relief with regard to those damages, and that would be in the form of a release of monies due and owing but withheld as the contract balance.

Id. at 10:17–23.  The court disagrees.  As defendant correctly notes, a claim for liquidated damages is premised upon a different set of circumstances and is analyzed using a different legal framework from a claim for alleged unpaid earned contract balance:

The claim for remission of liquidated damages is based upon the assumption that the government assessed [liquidated damages] for a period of excusable delay, and the test of that kind of a case is that when a contractor seeking extensions of contract time for—excusable delay which will relieve it from the consequences of having failed to complete the work within the time allowed for performance has the burden of establishing by a preponderance of the evidence not only the existence of an excusable delay but also the extent to which completion of the contract work as a whole was delayed thereby.  That's a completely different kind of claim than what the Plaintiff is requesting . . ., which is simply a claim that the government is holding a contract balance which was earned by the Plaintiff and not returned or paid to them on completion of the project.

Id. at 14:12–15:4.  The court finds that the one-line generalized request for liquidated damages in plaintiff's complaint, Compl. at 28 ("Under the circumstances, the Corps should release and/or waive any and all liquidated damages."), could not possibly foreshadow plaintiff's present request for unpaid contract earnings.

Plaintiff argues in the alternative that the claim set forth in its RCFC 15(b) motion relates back to, and is necessarily included in, the differing site conditions claims pleaded in its complaint:

[T]he essential question[s] that the [c]ourt has to ask . . . is whether or not the contractor's performance was adversely affected by differing site conditions, and [whether] the contractor has met his burden of proving an entitlement to additional monies based upon the existence of differing site conditions that not only increased the difficulty of performance but also increased the duration of the time frame of performance.

12

> And to the extent that the contractor has met this burden in proving these claims, the contractor would also be demonstrating that tied up in the same transaction or occurrences as were addressed in the original complaint is the issue of whether or not the contractor should be paid for the original contract work that they performed.

Id. at 11:1–18.  Relying primarily upon Case, Inc. v. United States, 25 Cl. Ct. 379 (1992), plaintiff argues that "the [c]ourt's rules simply require some type of fair notice, and that, in fact, under the authority of Rule 15, where the claim asserted in the amendment arises out of a transaction or an occurrence set forth in the original complaint, the amendment is given retroactive effect to the date of the original complaint."  Id. at 11:23–12:4.  Plaintiff insists that

> the claims that were certified and submitted seeking additional compensation clearly and fairly put into play the issue of whether [or] not the contractor's performance overall was excused because of the differing site conditions that were the subject of the claim.  And so we do not believe that this required a separate certified claim to the contracting officer.

Id. at 12:13–20.  According to plaintiff, the issue of unpaid earned contract retainage "stem[s] from the same factual situation and [was] part of or included in claims that were submitted to the contracting officer," and therefore is "appropriate subject matter for an amendment under Rule 15."  Id. at 13:19–23.

Plaintiff's reliance on Case is misplaced.[7]  The contractor in Case filed a complaint

---

[7]The other decisions cited by plaintiff, Constr. Equip. Lease Co. v. United States, 17 Cl. Ct. 628 (1989); AAAA Enters., Inc. v. United States, 10 Cl. Ct. 191 (1986); Design & Prod., Inc. v. United States, 10 Cl. Ct. 80 (1986); and Cross Constr. Co. v. United States, 225 Ct. Cl. 616 (1980), are equally inapposite.  Both Construction Equipment Lease and Cross Construction address whether it is permissible to amend complaints timely filed by subcontractors after the twelve-month CDA appeals period passed, to join the real party in interest (the prime contractor) as a plaintiff to the action.  See Constr. Equip. Lease, 17 Cl. Ct. at 630; Cross Constr., 225 Cl. Ct. at 616.  In Design & Production, the court granted a contractor's RCFC 15(a) motion to amend its complaint where the contractor's original complaint stated more than once that it was appealing a contracting officer's entire final decision, but the facts pleaded in the complaint did not discuss every aspect of that final decision.  10 Cl. Ct. at 81.  AAAA Enterprises holds, inter alia, that "[u]nder the CDA, the relation back doctrine has no automatic application to all contractor claims arising under a single contract," and that the CDA "makes all claims presented separately to the contracting officer distinct, despite their common contractual origin."  10 Cl. Ct.

(continued...)

appealing a contracting officer's final decision that terminated the contractor for default. 25 Cl. Ct. at 380.  The complaint was jurisdictionally defective because it "assert[ed] a right to relief not previously presented to the contracting officer for decision, i.e., the right to a no-fault contract termination together with appropriate monetary allowances." Id. at 381.  To cure this jurisdictional defect, plaintiff moved for leave to amend its complaint to incorporate the appeal of a later-issued contracting officer's final decision demanding the return of progress payments under the same contract.  Id.  Although plaintiff would have been time-barred from appealing this later decision in a separate lawsuit, see 41 U.S.C. § 605(b), this court allowed the contractor to amend its complaint to include an appeal of the second final decision because

> [t]he existing complaint . . . brings into issue the same core dispute upon which the Government's demand [for progress payments] is based, and it asserts an entitlement—the right to a convenience termination—which, on the facts of this case, could . . . extinguish altogether the amount of progress payments returnable to the Government. . . . Thus, the Government's claim is tied to, and is subordinate to, the contractor's claim.  Essentially, then, the claims are inseparable.  Both must be tested in light of the same facts, and the outcome of one is necessarily determinative of the other.

> Given this linkage, it would not be responsive to reality to characterize the amendment as a new claim.  The existing complaint's demand for invalidation of the default is necessarily a demand for the invalidation of the Government's right to recover progress payments . . .  It follows, therefore, that the claim set out in the complaint may be amended to specifically identify a lesser included claim.

Id. at 383 (citations and footnote omitted).

The differences between plaintiff's situation and the circumstances presented in Case are numerous and significant.  First, the procedural postures are distinct:  Whereas both claims in Case were addressed in contracting officer's final decisions, plaintiff's claim for unpaid contract earnings was not presented to a contracting officer.  Second, in contrast to the default termination and progress payment claims at issue in Case, plaintiff's differing site conditions claim and its claim for unpaid contract earnings are not

---

[7](...continued)
at 193 (emphasis omitted).  To the extent that this decision applies to the present case, it appears to undercut, rather than bolster, plaintiff's arguments.

legally and factually intertwined such that a demand for relief under one would necessarily be a demand for relief under the other.  Although both claims arise under the same contract, they are predicated upon different facts and analyzed under different precedent.  Third, in contrast to the situation in <u>Case</u>, plaintiff's entitlement to unpaid contract earnings, if properly asserted, does not depend on the successful prosecution of plaintiff's claim for <u>additional</u> compensation due to alleged differing site conditions.  <u>Cf.</u> Arg. Tr. at 8:11–21 (similar statement by defendant's counsel).  Finally, as defendant pointed out during oral argument, plaintiff's differing site condition certified claims requested "additional time [due to alleged differing site conditions].  There is nothing in the claims that are pending before the [c]ourt that seek[s] the return of an alleged unpaid but earned contract balance at the end of the job."  <u>Id.</u> at 16:6–9.

Plaintiff's claim seeking unpaid contract earnings cannot fairly be read as intertwined with or subordinate to the properly-pleaded differing site conditions claims presently pending before the court.  Because plaintiff's request for unpaid contract earnings was not presented as a certified claim to a contracting officer, the court finds that it is without jurisdiction to amend plaintiff's complaint as requested.  <u>Cf.</u> <u>Wilner v. United States</u>, 26 Cl. Ct. 260, 277–78 (1992) (holding that "the Claims Court lacks jurisdiction to consider" a post-trial motion to amend defendant's answer pursuant to RCFC 15(b), where the "counterclaim comes within the purview of section 605(a) [and] [t]he contracting officer has not rendered a written decision on the claim that defendant wants to prosecute"), <u>aff'd</u>, 994 F.2d 783 (Fed. Cir. 1993), <u>vacated in part on other grounds</u>, 24 F.3d 1397 (Fed. Cir. 1994) (en banc).  Because plaintiff's claim cannot be read as intertwined with or subordinate to the claims properly before the court, plaintiff's RCFC 15(b) motion is DENIED.

> D.   Plaintiff May Not Invoke RCFC 15(b) to Bring the November 2002 Contracting Officer's Final Decision Before the Court

It is not clear whether plaintiff's motion is, in part, another attempt to have the court review the November 2002 contracting officer's decision.  However, the court notes that the proposed amendment to plaintiff's complaint both alludes to and quotes from this decision.  <u>See</u> Pl.'s Mot. at 2, ¶ 200 ("On November 26, 2002 the Corps acknowledged in writing to Renda that 'at the present time the Government is withholding approximately $259,840.85 in retainage.  In addition to this, we are withholding $236,016.00 in liquidated damages.'").  To the extent that plaintiff attempts to bring this time-barred claim before the court, the court notes an alternative basis for denying the motion:  "This court cannot endow itself with jurisdiction through exercise of its discretion to allow amendments.  Permitting joinder of claims that, due to the passage of time, Congress made unreviewable, would be an abuse of discretion."  <u>AAAA Enters.</u>, 10 Cl. Ct. at 194.

At the close of trial, plaintiff's counsel was again advised by the court that the November 2002 contracting officer's decision was not before the court, whereupon plaintiff's counsel retorted, "Well, it should have been." Trial Tr. at 5357:17. It may indeed be true that the claim "should have been" before the court, but plaintiff has its own litigation strategy to blame for the circumstance that it is not. Plaintiff's counsel admits that he was aware of the contracting officer's decision at or near the time it was issued. Arg. Tr. at 17:12–13. Plaintiff's counsel also admits that he expected defendant to bring the decision before the court in a counterclaim and that plaintiff made a conscious choice not to appeal the decision within the twelve-month statutory timeframe. Id. at 16:22–17:1. Plaintiff itself failed timely to appeal the November 2002 contracting officer's decision. That decision is now "final and conclusive" and not reviewable by this court. 41 U.S.C. § 605(b).

Rule 15(b) cannot be invoked to resurrect an otherwise time-barred claim and bring it within this court's jurisdiction. To the extent that plaintiff's motion seeks to amend its complaint to include a claim involving the November 2002 final decision, that request is DENIED for lack of jurisdiction.

III.    Conclusion

Plaintiff's motion seeks to add to its complaint a claim 1) that was not certified and presented to a contracting officer for a final decision, as required by the Contract Disputes Act and 2) that appears intended to effect an untimely appeal of a final and conclusive contracting officer's decision that is not reviewable by this court. Because this court's rules cannot be invoked to bring a jurisdictionally-barred claim before the court, plaintiff's motion to amend the pleadings under RCFC 15(b) is DENIED.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Judge