UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC.,<br>PLAINTIFF,<br><br>V.<br><br>UNITED STATES<br>DEFENDANT. | §<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 02-306C<br><br>(JUDGE HEWITT) |

# PLAINTIFF'S MOTION FOR CLARIFICATION

Plaintiff, Renda Marine, Inc., ("Renda"), respectfully requests that the Court order Defendant, United States, to clarify whether or not it has conceded to the mooring buoy as a Type II differing site condition in connection with Renda's Obstructions No. 2 claim. In support, Renda states the following.

At the pretrial conference held on February 23, 2005, the Government conceded to certain obstructions as being Type II differing site conditions. The Government's concession was as it turns out ambiguous, and Renda respectfully seeks clarification.

Attached hereto for the Court's convenience, are true and correct copies of pages 290 and 291 from the transcript of the Pretrial Hearing conducted on February 23, 2005. As can be seen, at page 290, lines 15 through 22, Mr. Kosloske, counsel for the Government states:

> "I understand, but I wanted to before we got to damage address one item on liability, and it has to do with the Plaintiff's Instruction [sic] Number 2 claim. And on that claim the government has conceded that two of the obstructions that were encountered by the Plaintiff's dredge are differing site conditions, but the basis for our concession is that those obstructions were Type II."

At the Pretrial Conference, the Government's counsel continued: "The conex box and the other is a dredge stern swivel, are the two objects." Trial Transcript, pages 290 at line 25 through page 291 at line 1. In its post trial briefing, Renda advocated that the Government had conceded portions of the Obstructions No. 2 claim, and cited to this "colloquy in the record."

However, the Conex box and the stern swivel were obstructions that were cited in the Obstructions No. 1 claim, and *not* the Obstructions No. 2 claim. Renda cannot determine whether the Government truly meant the Obstructions No. 2 claim, or mistakenly referenced the Obstructions No. 2 claim when he meant the Obstructions No. 1 claim.

Logically, given its size, shape and weight, the mooring buoy should be a similar condition as both the stern swivel and the Conex box. In reading the portions of the Pretrial Conference transcript, Renda had concluded that the Government had intended to concede these three large obstructions. Indeed, such an interpretation of the Government's ambiguous statements is reasonable.

The Stipulations of Facts (deemed from the Government's admissions) lend support to this interpretation. Stipulation of Facts No. 122 states: "On or about April 16, 2001, Renda's dredge hit a submerged ship's mooring buoy on the Project." Stipulation of Facts No. 123 states: "The submerged ship's mooring buoy was not shown in the Contract Documents or the Corps' underwater obstruction and trash survey report in Dredge Section 9 on the Upper Bayou Project." Attached hereto for the Court's convenience, are true and correct copies of pages 1, 13, 20, and 21 from the Stipulation of Facts filed by the parties on February 23, 2005.

To the extent that the Court may have perceived that Renda in some way was seeking to gain an advantage concerning the mooring buoy, Renda assures the Court that such was not the case. To set this matter to rest, Renda respectfully requests that the Court direct the Government to take a position on whether or not the mooring buoy was a differing site condition.

Wherefore, Plaintiff, Renda Marine, Inc., respectfully requests that the Court direct the Government to take a position on whether or not the Government concedes that the mooring buoy constitutes a Type II differing site condition.

Respectfully submitted,

QUILLING, SELANDER, CUMMISKEY & LOWNDS, P.C.

BY: s/Brian W. Erikson
Brian W. Erikson, TX Bar No. 06643800
Clark B. Will, TX Bar No. 21502500
Terry L. Salazar, TX Bar No. 17527500

2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Telefax)

ATTORNEYS FOR RENDA MARINE, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 26th day of April, 2004, a true and correct copy of the Plaintiff's Motion for Clarification, was served electronically through the CM/ECF system for the Court of Federal Claims.

s/Brian W. Erikson
Brian W. Erikson

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket No.: 02-306C |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Suite 712
National Courts Building
717 Madison Place, N.W.
Washington, D.C.

Wednesday,
February 23, 2005

The parties met, pursuant to notice of the Court, at 8:00 a.m.

BEFORE: HONORABLE EMILY C. HEWITT
Judge

APPEARANCES: (Telephonically)

<u>For the Plaintiff</u>:

BRIAN W. ERIKSON, Esquire
TERRY SALAZAR, Esquire
WILL CLARK, Esquire
CHERYL MOSELEY, Esquire
Quilling, Selander, et al.
2001 Bryan Street
Suite 1800, Bryan Tower
Dallas, Texas 75201
(214) 880-1844

which is the issue of damages.

MR. KOSLOSKE: Your Honor?

THE COURT: Yes.

MR. KOSLOSKE: John Kosloske.

THE COURT: Yes.

MR. KOSLOSKE: If I may.

THE COURT: Yes.

MR. KOSLOSKE: The Plaintiff has indicated that it is proceeding on a theory only that the differing site conditions are Type I, which is somewhat of a surprise to us. We had assumed that they were proceeding on both grounds.

THE COURT: Well, this is hard to complain about, Mr. Kosloske.

MR. KOSLOSKE: I understand, but I wanted to before we got to damages address one item on liability, and it has to do with the Plaintiff's Instruction Number 2 claim. And on that claim the government has conceded that two of the obstructions that were encountered by the Plaintiff's dredge are differing site conditions, but the basis for our concession is that those obstructions were Type II.

THE COURT: Without looking at your document, I will guess one is the box.

MR. KOSLOSKE: The conex box and the other

is a dredge stern swivel, are the two objects.

THE COURT: Is this the stern swivel from a dredge that was encountered in the channel?

MR. KOSLOSKE: Yes, Your Honor. Those two obstructions, I just wanted to have the record be clear that we are conceding their differing site conditions.

THE COURT: Okay. But there is no litigated liability on Type II is what I understood, and so these are conceded Type II, with damages to be tried.

MR. KOSLOSKE: Yes.

THE COURT: But all the litigated items will be Type I?

MR. KOSLOSKE: Yes, Your Honor.

THE COURT: That is very helpful. Thank you. Is that the understanding of the Plaintiffs as well?

MR. ERIKSON: Brian Erikson. Yes, Your Honor.

THE COURT: Great. Okay. We turn now to the question of damages, and the appropriate measure of damages. Who will be addressing this for the Plaintiff?

MR. ERIKSON: I will, Your Honor, Brian Erikson.

UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC., | § | |
| PLAINTIFF, | § | |
| | § | CASE NO. 02-306C |
| V. | § | |
| | § | (JUDGE HEWITT) |
| UNITED STATES, | § | |
| DEFENDANT. | § | |



## STIPULATION OF FACTS

Pursuant to Appendix A, ¶17, of the Rules of the United States Court of Federal Claims, Plaintiff, Renda Marine, Inc. ("Renda"), and Defendant, the United States, hereby agree and stipulate to the facts set forth herein below, and respectfully submit this Stipulation of Facts. The purpose of this Stipulation of Facts is to avoid the time and expense of formal proof of facts that are not reasonably in dispute. The Parties agree, however, that by entering into this Stipulation, they shall not be precluded from offering evidence to further explain or supplement a particular fact covered by this Stipulation.

## GENERAL BACKGROUND

1. On about June 16, 1998, the United States Army Corps of Engineers, Galveston District (the "Corps") requested proposals for Invitation No. DACW64-98-B-0004, "Houston-Galveston Navigation Channels, Texas (45-Foot Project) - Dredging Upper Bayou," for the Upper Bayou Project.

2. Invitation No. DACW64-98-B-0004 for the Upper Bayou Project made no mention of the Port of Houston Authority.

3. Invitation No. DACW64-98-B-0004 for the Upper Bayou Project made no mention of any agreement that the Corps had signed or may sign with the Port of Houston Authority.

122. On or about April 16, 2001, Renda's dredge hit a submerged ship's mooring buoy on the Project.

123. The submerged ship's mooring buoy was not shown in the Contract Documents or the Corps' underwater obstruction and trash survey report in Dredge Section 9 on the Upper Bayou Project.

124. After Renda's dredge hit a submerged ship's mooring buoy, Renda wrote to the Contracting Officer on April 16, 2001, and again requested that the remainder of Dredge Section 9 be deleted from the Contract.

125. Renda's April 16, 2001, letter to the Contracting Officer is Plaintiff's Exhibit 1390.

126. On about April 24, 2001, Renda wrote to the Contracting Officer to request that he allow Renda to demobilize its dredge from the Project until the Corps could reach a decision regarding the completion of Dredge Section 9 on the Upper Bayou Project.

127. Renda's April 24, 2001, letter to the Contracting Officer is Plaintiff's Exhibit 1404.

128. During March 2001, Renda proposed to the Corps that Renda's dredge *Millennium* be allowed to pursue private dredging work in the immediate vicinity of the Upper Bayou Project.

129. On about May 4, 2001, the Corps issued Contract Modification No. CO-09 (P00026), which suspended dredging operations for 30 to 60 days while Renda's dredge performed work for a private owner on the Houston Ship Channel.

130. On about March 22, 2001, the Corps and Renda had a meeting concerning the Upper Bayou Project.

131. On about March 22, 2001, during a meeting, the Corps and Renda discussed dredging in Dredge Section 9 on the Upper Bayou Project.

192. Contract Modification P00028 deleted the remaining, unfinished levee construction at the Lost Lake Placement Area from the contract for the Upper Bayou Project.

193. Contract Modification P00028 was a modification that the Corps issued to Renda on the Project.

194. As a result of Contract Modification P00028, Renda was not required to complete the remaining, unfinished levee construction at the Lost Lake Placement Area.

195. Renda did not sign Contract Modification P00028.

196. On about October 16, 2001, Renda submitted a request for equitable adjustment to the Corps in the amount of $6,258,853.00, plus a 397 calendar day extension of contract time, concerning the Lost Lake Levees.



AGREED AND STIPULATED:

Respectfully submitted,

QUILLING, SELANDER, CUMMISKEY & LOWNDS, P.C.

BY: /s Brian W. Erikson

Brian W. Erikson, TX Bar No. 06643800
Clark B. Will, P.C. TXBar No. 21502500

2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Telefax)
ATTORNEYS FOR RENDA MARINE, INC.

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

/s John E. Kosloske
John E. Kosloske, Esq.
Senior Trial Counsel
Commercial Litigation Branch
Department of Justice
Attn.: Classification Unit
1100 L Street N.W., Room 8012
Washington, DC 20530

ATTORNEYS FOR DEFENDANT