No. 02-306C
(Judge Hewitt)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

RENDA MARINE, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO REOPEN RECORD TO INTRODUCE THE DEPOSITION OF ERIC RUSSEK

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-0282
(fax) (202) 514-8624

Attorneys for Defendant

<u>OF COUNSEL</u>:

MR. P. ALEX PETTY
Assistant District Counsel
Office of Counsel
Galveston District
U.S. Army Corps of Engineers
Galveston, TX

NOVEMBER 28, 2005

# TABLE OF CONTENTS

Page

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO REOPEN RECORD TO INTRODUCE THE DEPOSITION OF ERIC RUSSEK ................................. 1

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND .................................................................................................... 2

ARGUMENT ......................................................................................................... 3

I. With Respect To The Deposition Of Eric Russek, Renda Did Not Comply With The Court's Procedures For The Use Of Deposition Transcripts At Trial And It Has Not Presented A Compelling Reason For The Failure To List The Deposition Transcript (Or Any Part Of It) As An Exhibit On Any Of Its Trial Exhibit Lists ................................. 3

II. The Standards Advanced By Renda For Reopening The Record To Admit The Transcript Of The Deposition Of Eric Russek Are Inconsistent With And Have Been Supplanted By RCFC Appendix A, ¶¶ 13(a), 15(b)........................................................................................ 5

III. Even Under The Standards Advanced By Renda For Reopening The Record To Admit Additional Evidence, The Record Should Not Be Reopened To Admit The Transcript Of The Deposition Of Eric Russek ....... 7

A. The Claims That Are The Subject Of Renda's Complaint And The Claims That, Allegedly, Were Tried By Consent ................ 7

B. The Additional Claims Not Set Forth In Renda's Complaint That, Allegedly, Are Established By The Russek Deposition ............ 7

(1) Additional Claim #1 ........................................................... 11

(2) Additional Claim #2 ........................................................... 14

(3) Additional Claim #3 ........................................................... 15

## TABLE OF CONTENTS (CONT'D)

**Page**

IV. The Court May Not Reopen The Record For The Purpose Of Receiving The Transcript Of Mr. Russek's Deposition Without Affording The Government The Protections That Obtain At A Trial ........ 16

CONCLUSION ........ 18

## TABLE OF AUTHORITIES

### CASES

Alliant Techsystems, Inc. v. United States,
178 F.3d 1260 (Fed. Cir. 1999) .......... 11

Briscoe v. Fred's Dollar Store, Inc.,
24 F.3d 1026 (8th Cir. 1994) .......... 17

Calhoun v. United States,
14 Ct. Cl. 193 (1878) .......... 6

Cerebronics, Inc. v. United States,
13 Cl. Ct. 415, 417 (1987) .......... 11

Comtrol, Inc. v. United States,
294 F.3d 1357 (Fed. Cir. 2002) .......... 13

Container Transport International, Inc. v. United States,
199 Ct. C 468 F.2d 926 (1972) .......... 9

England v. Swanson Group, Inc.,
353 F.3d 1375 (Fed. Cir. 2004) .......... 10

Garrett v. General Electric Co.,
987 F.2d 747 (Fed. Cir. 1993) .......... 10

Kanag'iq Construction Co. v. United States,
51 Fed. Cl. 38 (2001) .......... 9, 10

Kiewit Construction Co. v. United States,
56 Fed. Cl. 414 (2003) .......... 14

Lussier v. Runyon,
50 F.3d 1103 (1st Cir. 1995) .......... 17

Placeway Construction Corp. v. United States,
920 F.2d 903 (Fed. Cir. 1990) .......... 9

Reflectone, Inc. v. United States,
60 F.3d 1572 (Fed. Cir. 1995) .......... 10

## TABLE OF AUTHORITIES (CONT'D)

### CASES (CONT'D)

Renda Marine, Inc. v. United States,
65 Fed. Cl. 152 (2005) .......... 10, 11

Renda Marine, Inc. v. United States,
66 Fed. Cl. 639 (2005) .......... passim

Scott Timber Co. v. United States,
333 F.3d 1358 (Fed. Cir. 2003) .......... 11

Shanteau v. United States,
No. 395-73, 1979 U.S. Ct. LEXIS 958 (Trial Division, Ct. Cl.) .......... 5, 6

Shrewsbury v. United States,
13 Ct. Cl. 183 (1877) .......... 6

Vanalco, Inc. v. United States,
48 Fed. Cl. 68 (2000) .......... 10

Wertz v. United States,
2 Cl.Ct. 45 (1983) .......... 5, 6,7,9

### STATUTES

United States Code:

41 U.S.C. § 605(c)(5) (2000) .......... 11

Public Laws:

Contract Disputes Act of 1978, as amended (41 U.S.C. §§ 601-13 (2000)) .......... 10

### REGULATIONS

Code of Federal Regulations:

48 C.F.R. § 33.201 .......... 10

## TABLE OF AUTHORITIES (CONT'D)

## REGULATIONS (CONT'D)

Federal Acquisition Regulations:

FAR 1.602(b) .................... 8

FAR 1.602-2(b) .................... 8

## MISCELLANEOUS

Rules of the Court of Federal Claims:

RCFC 15(b) .................... 9

RCFC 26(b)(1) .................... 16

RCFC 32(b) .................... 17

RCFC Appendix A, ¶ 13(a) .................... 4, 5, 6, 7

RCFC Appendix A, ¶ 15(b) .................... 4, 5, 6,7

RCFC Appendix A, ¶ 16 .................... 4

Federal Rules of Evidence:

Fed.R.Evid. 611(b) .................... 5

Fed.R.Evid. 615 .................... 2

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 02-306C |
| v. | ) | |
| | ) | (Judge Hewitt) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION
TO REOPEN RECORD TO INTRODUCE THE DEPOSITION OF ERIC RUSSEK

PRELIMINARY STATEMENT

Pending before the Court is the motion of plaintiff, Renda Marine, Inc. (Renda) "to reopen the record to introduce in evidence the deposition of Eric G. Russek . . . to avoid substantial injustice in this case." Pl. Mot. 1.[1/] Renda asserts that "Mr. Russek's testimony is critical not only to the claims pleaded in the complaint, but also to additional claims tried by consent." Pl. Mot. 4. Mr. Russek is a Corps of Engineers employee who was the project engineer for the Upper Bayou Project and who reported to Mr. C. Michael McClenan, the Area Engineer for the Galveston District's Bay Area Office and the administrative contracting officer for the Upper Bayou Project. See Renda Marine, Inc. v. United States, 66 Fed. Cl. 639, 644 n.5 (2005) (description of C. Michael McClenan). For the reasons stated below, Renda's motion to reopen the record and admit the transcript of Mr. Russek's deposition should be denied.

---

[1] "Pl. Mot. ____" refers to the referenced page(s) of "Plaintiff's Motion to Reopen to Introduce Deposition of Eric Russek in Evidence to Avoid Substantial Injustice in This Case" dated November 15, 2005.

BACKGROUND

The first attempt by Renda to have any part of the transcript of the deposition of Mr. Russek admitted into evidence occurred at the trial of this case, after Renda had presented its case-in-chief and six days into the Government's presentation of its case. On April 4, 2005, just prior to adjournment of proceedings for the day and in response to an inquiry by the Court whether there was anything of a housekeeping nature that needed to be addressed, Brian Erikson, Renda's initial counsel of record in this case, requested that Renda be allowed to offer excerpts from the transcript of the pretrial deposition of Mr. Russek taken by Renda on January 14, 2004:

THE COURT: . . . Is there anything else of a housekeeping nature at this time?

MR. ERIKSON: Yes, there is, Your Honor.

THE COURT: Yes, Mr. Erikson.

MR. ERIKSON: And it concerns depositions.

THE COURT: Okay.

MR. ERIKSON: Now that the Government has announced that it will not be calling Mr. Russek, that was a big surprise to us because he was always on the witness list and Mr. Russek was here in the courtroom.[[2]] We expected him to testify, and we never anticipated having to propose deposition excerpts for Mr. Russek. But now that the Government has announced that Mr. Russek will not testify, we would like the opportunity to offer some deposition excerpts from Mr. Russek.

THE COURT: Comment?

---

[2] In fact, Mr. Russek was at the courthouse available to testify, but not in the courtroom. During the trial of this case, scheduled witnesses were sequestered pursuant to Fed.R.Evid. 615. See February 23, 2005 Order, at 2, ¶ 5.

MR. KOSLOSKE: The Plaintiff has rested its case. The Plaintiff has had an opportunity as part of [its] case to call Mr. Russek, and in fact, [Mr. Russek] was listed [by plaintiff] as . . . a may-call witness for the Plaintiff. If the Plaintiff felt that it needed testimony from Mr. Russek to establish its case, it had the opportunity to call him as part of [its] case. It's inappropriate at this point to move in a deposition transcript, once the Plaintiff has rested.

Trial Transcript 4565(21-25)-4566(1-20). The Court denied Renda's motion to introduce parts of the transcript of Mr. Russek's deposition. Trial Transcript 4567(22).

In its July 28, 2005 post-trial decision, the Court noted that, at the trial, "[d]efendant did not call as a witness Eri[c] Russek, Project Engineer with the Corps" and that "[p]laintiff had not taken the precaution of designating Mr. Russek's deposition as a trial exhibit." Renda Marine, 66 Fed. Cl. at 646.

## ARGUMENT

I. With Respect To The Deposition Of Eric Russek, Renda Did Not Comply With The Court's Procedures For The Use Of Deposition Transcripts At Trial And It Has Not Presented A Compelling Reason For The Failure To List The Deposition Transcript (Or Any Part Of It) As An Exhibit On Any Of Its Trial Exhibit Lists.

Regarding the use of deposition testimony at trial, the Rules of the Court of Federal Claims provide:

> Any party intending to present substantive evidence by way of deposition testimony, other than as provided by Federal Rule of Evidence 801(d), *shall serve and file* [together with the party's memorandum of contentions of fact and law] the transcript of this testimony. The motion shall show cause why the deposition testimony should be admitted and identify specifically the portion(s) of the transcript(s) the party intends to use at trial. See RCFC 32(a)(2) & (3). If the motion is granted, only those portions of the transcript may be filed.

RCFC Appendix A, ¶ 15(b) (emphasis added). Pursuant to that rule, Renda filed a motion for leave to file portions of the transcripts of Renda's depositions of Messrs. Saenz, Mauer, and Rozsypal, three Corps of Engineer employees, which the Court granted. See "Motion by Renda Marine, Inc., for Leave to File Portions of Deposition Transcripts," filed on January 13, 2005; Order filed on January 13, 2005. Renda, however, did not file any such pretrial motion with respect to the transcript of its deposition of Mr. Russek and it has not offered any justification or excuse for the failure to do so.

Additionally, the Court's rules require that, for cases to be resolved by trial, counsel for the parties meet before pretrial submissions and the pretrial conference and, among other things, "[e]xchange a list of all exhibits . . . to be used at trial for case-in-chief or rebuttal purposes, except those to be used exclusively for impeachment." RCFC Appendix A, ¶ 13(a). "Failure to list an exhibit shall result, absent agreement of the parties or a showing of a compelling reason for the failure, in an exclusion of the exhibit at trial." Id. Mr. Russek's deposition transcript does not appear as an exhibit on the 260-page "Renda Marine's Preliminary Exhibit List" dated December 21, 2004, listing 1,871 exhibits to be used by Renda at trial, served by Renda upon the Government pursuant to RCFC 13(a), the trial exhibit list filed by Renda, pursuant to RCFC 16, on January 12, 2005, or the amended trial exhibit list filed by Renda thereafter on February 10, 2005.

Renda has not demonstrated a "compelling reason for the failure" to list the transcript of Mr. Russek's deposition on *any* of its pretrial exhibit lists, including the exhibit list furnished to the Government pursuant to RCFC Appendix A, ¶ 13(a). In that case, "absent agreement of the

parties," RCFC Appendix A, ¶ 13(a) is quite clear: Renda's failure to list the Russek deposition transcript as a trial exhibit "shall result . . . in an exclusion of the exhibit at trial."[3/]

Renda failed to comply with the requirements of RCFC Appendix A, ¶¶ 13(a), 15(b), for the use of Mr. Russek's deposition testimony at the trial of this case. Renda's motion to reopen the record and admit the transcript of the deposition of Mr. Russek, thus, should be denied.

## II. The Standards Advanced By Renda For Reopening The Record To Admit The Transcript Of The Deposition Of Eric Russek Are Inconsistent With And Have Been Supplanted By RCFC Appendix A, ¶¶ 13(a), 15(b).

Renda argues that "[m]otions to reopen proof continue to be recognized by the Court as an important tool[.]" Pl. Mot. 1. According to Renda, "[t]he standards to be applied to a motion to reopen proof are within the Court's discretion" and these standards include: (1) a showing by the moving party of justification for failure to discover and present the proposed evidence during the ordinary course of the trial; (2) a specific statement of what the additional evidence would be; (3) a finding that proffered evidence would not be merely cumulative; and (4) a substantial showing that the proposed evidence could materially affect the findings and the outcome of the case. Id., citing Shanteau v. United States, No. 395-73, 1979 U.S. Ct. Cl. LEXIS 958, at *5 (Trial Division, Ct. Cl.); accord Wertz v. United States, 2 Cl.Ct. 45, 55 (1983).

---

[3] Renda asserts that Mr. Russek's testimony is "critical" to the claims pleaded in its complaint as well as claims allegedly tried by consent of the parties. Pl. Mot. 4. If that is the case, why did Renda not list the deposition transcript on any of its trial exhibit lists or file a motion for leave to file the transcript, as required by RCFC Appendix A, ¶¶ 13(a), 15(b)? If the Government had called Mr. Russek to testify during the presentation of its case, Renda would not necessarily have been able to elicit from Mr. Russek through cross-examination any or all of the testimony that Renda asserts is "critical" to the claims that are the subject of its complaint. Under Fed.R.Evid. 611(b), "cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness." While a court *may* "permit inquiry into additional matters as if on direct examination," it is not required to do so. Id.

The standards for reopening the record to admit additional evidence advanced by Renda fly in the face of the requirements of RCFC Appendix A, ¶¶ 13(a), 15(b), discussed above concerning the use of depositions as trial exhibits. They would permit the Court to admit a deposition transcript into evidence that the proponent of the exhibit has not sought leave of court in a pretrial motion to file, as required by RCFC Appendix A, ¶ 15(b), and that has not been listed by the proponent of the exhibit on its trial exhibit list, without agreement of the parties or a showing by the proponent of the exhibit of a compelling reason for the failure to list the exhibit, contrary to RCFC Appendix A, ¶ 13(a).

The Court of Claims and Claims Court decisions relied upon by Renda in support of the standard for reopening the record to admit additional evidence urged by Renda were issued prior to 1985 when the precursors of the provisions appearing at RCFC Appendix A, ¶¶ 13(a), 15(b), initially were adopted by the Claims Court.[4/] The requirements of RCFC Appendix A, ¶¶ 13(a), 15(b) first appeared in the rules of the Claims Court adopted in 1985. See Court Rules, Appendix H, ¶¶ 10.a., 16, 9 Cl. Ct. XXI, CXXXIV, CXXXVI (1985). The initial version of the Claims Court's rules adopted in 1982 did not have any counterparts to RCFC Appendix A, ¶¶ 13(a), 15(b). See Court Rules, 1 Cl. Ct. XXV-CXLVI (1982). There was no counterpart in the original Claims Court rules to Appendix H to the rules of the Claims Court adopted in 1985 or Appendix A to the rules of the Court of Federal Claims presently in effect.

The standards for when the Court may reopen the record to admit additional evidence enumerated in the Shanteau and Wertz, the pre-1985 authorities relied upon by Renda, are incon-

[4] See Pl. Mot. 1-3 (Calhoun v. United States, 14 Ct. Cl. 193 (1878); Shrewsbury v. United States, 13 Ct. Cl. 183 (1877); Wertz v. United States, 2 Cl.Ct. 45 (1983); Shanteau v. United States, No. 395-73, 1979 U.S. Ct. Cl. LEXIS 958).

sistent with and have been supplanted by the later-adopted requirements of RCFC Appendix A, ¶¶ 13(a), 15(b), discussed above. Hence, they should not be the gauge for determining whether the Court should reopen the record to receive the transcript of the deposition of Mr. Russek.

## III. Even Under The Standards Advanced By Renda For Reopening The Record To Admit Additional Evidence, The Record Should Not Be Reopened To Admit The Transcript Of The Deposition Of Eric Russek.

### A. The Claims That Are The Subject Of Renda's Complaint And The Claims That, Allegedly, Were Tried By Consent

Under the test enunciated by Renda for when a court may reopen a trial record to receive additional evidence, Renda, among other things, must demonstrate that the deposition testimony of Mr. Russek could materially affect the Court's findings in, and the outcome of, this case. E.g., Wertz, 2 Cl. Ct. at 56. Renda has not made any such showing with respect to the claims that are the subject of its complaint or that, allegedly, were tried by consent of the parties. Renda merely asserts, baldly, that "Mr. Russek's testimony is critical not only to the claims pleaded in its complaint, but also to additional claims tried by consent." Pl. Mot. 4.

### B. The Additional Claims Not Set Forth In Renda's Complaint That, Allegedly, Are Established By The Russek Deposition

Renda argues that, if the transcript of the deposition of Mr. Russek were before the Court, "three additional claims would be available to [Renda] – all of which would have been tried by consent." Pl. Mot. 8. Renda acknowledges that these additional claims are dependent upon Mr. Russek's testimony without which "these claims were not, and are not, before the Court and cannot be deemed to have been tried by consent." See "Plaintiff's Motion to Deem Claims for The Government's Breach of Implied Duty to Have Been Tried by Consent," dated November 15, 2005, at 3. The three additional claims are described by Renda as follows:

1. The contracting officer failed to recognize that the Government's specifications were defective and that [Renda] was entitled to an equitable adjustment under the Changes Clause.

2. The contracting officer permitted both the [Port of Houston Authority] and the Joint Venture (the Government's consultants[5/]) to interfere with and prevent him from performing his duties of promptly addressing and taking fair and equitable action on problems and claims arising under the contract.[6/]

3. The contracting officer failed to permit [Renda] to use its recommended solution to the levee failures experienced in building new levees of placing the toe of the new levee on the inside top of the existing levee, because the [Port of Houston Authority] and the Joint Venture insisted on displacement of the soft foundation notwithstanding the impossibility of doing so under the contract.

Pl. Mot. 8.

There are several problems with Renda's argument. *First*, even if the Court were to re-open the record and admit the transcript of Mr. Russek's deposition into evidence, that would not result in the three additional claims identified above having been tried by consent of the parties. As noted above, during the trial, the Government *objected* to the admission of Mr. Russek's deposition into evidence. We continue to *object* to the receipt of Mr. Russek's deposition testi-

---

[5] In fact, as the Court found, the Joint Venture (JV) was a consultant to the Port of Houston Authority (PHA), *not* the Government. See Renda Marine, 66 Fed. Cl. at 680. The JV provided inspection services to the Government upon the Upper Bayou Project, pursuant to a Supplemental Quality Assurance Agreement between the Government and the PHA. Id.

[6] At another point in its motion to reopen the record, Renda asserts: "If Mr. Russek's deposition is not admitted in evidence, the Court's final decision will result in substantial injustice by precluding [Renda] from presenting evidence of improper outside interference causing the contracting officer to breach his duty under FAR 1.602(b). One of the important duties of the contracting officer is to '[e]nsure that contractors receive impartial, fair, and equitable treatment.' FAR 1.602-2(b). The contracting officer in this case breached that duty by permitting the [Port of Houston Authority] and the Joint Venture to interfere and improperly influence his discharge of that duty." Pl. Mot. 5. These allegations do not appear in Renda's complaint, either.

mony into the record in this case. RCFC 15(b) only permits issues not raised by the pleadings that were *tried by express or implied consent of the parties* to be treated as if they had been raised in the pleadings. A court's receipt of evidence over a party's *objection* – whether during or after trial – does not constitute *consent* by the *parties* to the trial of an issue not raised by the pleadings to which that evidence relates.

*Second*, while it has been held that a "motion to reopen is appropriate to raise substantive issues of fact and law not previously heard and is not limited to offers to prove mere formal deficiencies in the trial record," Wertz, 2 Cl. Ct. at 55, this does not mean that a court may reopen a trial record – as Renda would have the Court do here – to receive additional evidence relating to *new* claims that are *outside* the scope of the complaint or claims that were not tried by consent of the parties. A motion to reopen the record is properly addressed to the introduction of additional evidence that relates to a party's *pleaded* claims or claims tried by consent of the parties. Such a motion is inappropriate to present evidence of additional claims outside the complaint or that were not tried by consent.[7/]

---

[7] Excluding the deposition of Mr. Russek would not result in a substantial injustice because it would not have the effect of preventing Renda from pursuing in a separate proceeding the three additional claims ostensibly established by Mr. Russek's deposition. Generally, a final decision upon the merits of a claim "bars a subsequent action on that same claim or any part thereof, including issues which were not but could have been raised as part of the claim." Container Transport International, Inc. v. United States, 199 Ct. Cl. 713, 717, 468 F.2d 926, 928 (1972). Thus, "[a] plaintiff who splits his claim (or cause of action) and fails to include his entire demand in his first suit will have, as a result, to give up the part on which he fails to sue the first time." Id. But in the case of a contract governed by the Contract Disputes Act (CDA), such as Renda's contract for the Upper Bayou Project, the general rule against claim-splitting does not apply. "The CDA recognizes that a single government contract may give rise to more than one claim and that a contractor may pursue its rights by filing 'two or more suits' in either one or more fora." Kanag'iq Construction Co. v. United States, 51 Fed. Cl. 38, 46 (2001) (citing Placeway Construction Corp. v. United States, 920 F.2d 903, 907 (Fed. Cir. 1990)). "The only limitation that the courts have (continued...)

A *third* problem with Renda's motion to reopen the record for the purpose of introducing evidence relating to the three additional claims discussed above is that it would be a futile exercise because it does not appear that the Court has jurisdiction to entertain those claims. As the Court has noted, the Court of Federal Claims is a tribunal of limited jurisdiction. Renda Marine, 65 Fed. Cl. 152, 158 (2005). The Court's authority to act upon a claim that is governed by the Contract Disputes Act of 1978, as amended (41 U.S.C. §§ 601-13 (2000)) (CDA) – including any claims that Renda has relating to the contract for the Upper Bayou Project – is subject to two distinct jurisdictional prerequisites: the contractor must have submitted a "claim"[8] to a contracting officer and the contracting officer must have issued a "final decision" upon the claim or the claim must be "deemed denied" as a result of the contracting officer's failure to issue a decision upon the claim within the time prescribed by the CDA. England v. Swanson Group, Inc., 353 F.3d 1375, 1379 (Fed. Cir. 2004). Absent a "claim," no decision is possible and, thus, there is no basis for jurisdiction in this Court. Vanalco, Inc. v. United States, 48 Fed. Cl. 68, 76 (2000). The claimant – Renda here – "must establish both jurisdictional prerequisites to proceed in this

---

[7] (...continued)
placed on the contractor's ability to split his claims is that a single, unified claim based on a common related set of facts cannot be fragmented for the purpose of eluding the CDA's certification requirement." Kanag'iq, 51 Fed. Cl. at 46.

[8] The term "claim" is not defined in the CDA itself. To determine the meaning of that term, the courts have looked to the definition of "claim" supplied by the FAR, the language of the contract in dispute, and the facts of the particular case. Reflectone, Inc. v. United States, 60 F.3d 1572, 1575 (Fed. Cir. 1995); Garrett v. General Electric Co., 987 F.2d 747, 749 (Fed. Cir. 1993). The FAR defines "claim," in relevant part, as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." 48 C.F.R. § 33.201.

court" upon any of its claims. Renda Marine, 65 Fed. Cl. at 159 (citing Alliant Techsystems, Inc. v. United States, 178 F.3d 1260, 1264 (Fed. Cir. 1999).

Renda does not even contend, much less point to any *evidence* which establishes, that it submitted to the contracting officer any of the three additional claims allegedly supported by Mr. Russek's deposition and that either the contracting officer issued a decision upon those claims or the claims are "deemed denied" pursuant to 41 U.S.C. § 605(c)(5) (2000).

It has been held that the Court may assert jurisdiction over a CDA complaint that is "based on the same set of operative facts" underlying the certified claim presented to the contracting officer. Cerebronics, Inc. v. United States, 13 Cl. Ct. 415, 417 (1987); see also Scott Timber Co. v. United States, 333 F.3d 1358 (Fed. Cir. 2003) (trial court correctly found that it had jurisdiction over the contractor's claims "because they arise from the same operative facts, claim essentially the same relief, and merely assert differing legal theories for that recovery"). That legal precedent is of no help to Renda, however, because the three additional claims allegedly supported by Mr. Russek's deposition testimony either (a) are so intertwined with the Lost Lake Levees Type I differing site conditions claim as to constitute a single claim governed by the differing site conditions clause (and judicial precedent construing that clause) already tried and decided by the Court or (b) are not based upon the same operative facts as the Lost Lake Levees Type I differing site conditions claim.

(1) Additional Claim #1

The first of the three additional claims allegedly supported by Mr. Russek's deposition testimony is that "[t]he contracting officer failed to recognize that the Government's specifications were defective and that [Renda] was entitled to an equitable adjustment under the Changes

Clause." Pl. Mot. 8. In its motion to deem claims tried by consent of the parties, Renda expands upon this claim as follows:

> The contract specifications required most of the levees to be built hydraulically on soft foundations with materials derived from dredging. This new material was intended to displace the soft materials and provide 30' MLT levees on stable foundations. The specifications were defective because suitable materials from dredging to build the levees to 30' MLT were inadequate, notwithstanding the Corps' pre-bid assurance that the materials dredged would be adequate to build the levees. The anticipated materials from dredging was inadequate primarily because the extensive side cast borrow areas were much deeper and closer to [the] existing levee than permitted by the Corps' policy. The side cast borrow areas were not disclosed to bidders, including [Renda].

See "Plaintiff's Motion to Deem Claims for The Government's Breach of Implied Duty to Have Been Tried by Consent," dated November 15, 2005, at 3.

Although Renda characterizes this claim as one based upon the failure of the contracting officer to recognize that the specifications for the design of the Lost Lake levees to be constructed by the hydraulic placement of dredged materials were defective entitling Renda to an equitable adjustment under the "Changes" clause contained in the contract for the Upper Bayou Project, this claim in reality is a rehash of the allegations advanced by Renda in support of its Lost Lake Levees Type I differing site conditions claim which the Court held Renda did not prove. See Renda Marine, 66 Fed. Cl. at 710-16.

In its opening statement at the outset of the trial, Renda advanced substantially the same allegations as the allegations that are contained in this defective specifications claim. Renda asserted three bases for the Lost Lake Levees differing site conditions claim: (1) "insufficient suitable material" from the required dredging areas to build the hydraulic levees; (2) the levees "would not stand due to the soft foundations;" and (3) the levee "could not be completed within

the contract time if you were to undertake some method different than what was specified in the contract "to try and get the levees to stand by allowing time for consolidation and [dewatering]." Trial Transcript 51. Renda also contended that side cast borrow areas were not disclosed in the contract documents and that the side cast borrow areas interfered with the maximum displacement design for the hydraulic levees prepared by HVJ Associates for the Corps. Id., 59-62.

As the Court noted in its post-trial opinion in this case, see Renda Marine, 66 Fed. Cl. at 711 n.72, the Federal Circuit has observed:

> Although differing site conditions and defective specifications claims are distinct in theory, they collapse into a single claim . . . where the alleged defect in the specification is the failure to disclose the alleged differing site condition. Where the differing site conditions claim and the defective specifications claim are so intertwined as to constitute a single claim, that claim will be governed by the specific differing site conditions clause and the cases under that clause.

Comtrol, Inc. v. United States, 294 F.3d 1357, 1362 (Fed. Cir. 2002). This would appear to be the case with the Type I differing site conditions claim presented by Renda at trial and the defective specifications rubric under which Renda now attempts to repackage the Lost Lake Levees claim. The defective specifications claim appears to be so intertwined with the Type I differing site conditions claim that adjudication of the former would be controlled by the differing site conditions clause and judicial precedent construing that clause. Accordingly, because the Court already has decided the Lost Lake Levees Type I differing site conditions claim, renewed proceedings upon that claim under a defective specifications theory would be improper and a futility.

Assuming for the sake of discussion that the defective specifications claim concerning the Lost Lake Levees and the Lost Lake Levees Type I differing site conditions claim decided by the Court are not so intertwined as to constitute a single claim, the Court nevertheless would appear

to lack jurisdiction to entertain a defective specifications claim. While, as noted above, there is precedent to the effect that the Court may assert jurisdiction over a CDA complaint that is "based on the same set of operative facts" underlying a claim presented to the contracting officer, that would be of no help to Renda in this instance because "differing site condition claims and defective specifications claims depend upon varying sets of operative facts." Kiewit Construction Co. v. United States, 56 Fed. Cl. 414, 419 (2003).

Whereas a differing site condition claim "focus[es] upon the [c]ontract's description of the work site, particularly with respect to subsurface conditions, and [the contractor's] reliance on that description," "a defective specifications claim under the CDA requires showing that a contractor was misled by design specification errors presented within a government contract." Kiewit, 56 Fed. Cl. at 420. "A defective specifications claim therefore focuses on the viability of design requirements that a contractor is required to implement in a government contract." Id. Accordingly, insofar as Renda is attempting to raise a defective specifications claim that is not intertwined with the Lost Lake Levees Type I differing site conditions claim so as to constitute a single claim governed by the differing site conditions clause and cases construing that clause, the Court lacks jurisdiction to entertain the defective specifications claim.

(2) Additional Claim #2

The second of the three additional claims allegedly supported by Mr. Russek's deposition testimony is that the Government breached the implied duty to cooperate with Renda and not to hinder Renda's performance of the contract when, allegedly, the contracting officer permitted the Port of Houston Authority (PHA) and the Joint Venture (JV) to interfere with and prevent him from "performing his duties of promptly addressing and taking fair and equitable action on prob-

lems and claims arising under the contract." Pl. Mot. 8. Renda does not provide any specifics regarding the "problems and claims" that are the subject of this claim. On their face, the operative facts of this interference claim are not the same as the operative facts of any of the differing site conditions or other claims that are the subject of the complaint in this case. The Court, thus, lacks jurisdiction to assert jurisdiction over any claim that is predicated upon alleged improper influence upon the contracting officer by the PHA or JV.

(3) Additional Claim #3

The third of the three additional claims allegedly supported by Mr. Russek's deposition testimony is that the Government breached the implied duty to cooperate with Renda and not to hinder Renda's performance of the contract when "[t]he contracting officer failed to permit [Renda] to use its recommended solution to the levee failures experienced in building new levees . . . ." Pl. Mot 8. Renda embellishes upon this claim as follows:

> [Renda] requested permission to place the toe of the new levee on the inside top of [the] existing levees, and was allowed to do so on part of the North Levee. However, the [PHA] and the [JV] insisted on displacement of the soft levee foundation on the other levees – notwithstanding the impossibility of doing so under the contract – and the contracting officer refused to allow [Renda] to utilize the method the company proposed elsewhere. Despite the treatment of [Renda], the Government allowed the successor contractor to utilize [Renda's] proposed method in later building the levees.

See "Plaintiff's Motion to Deem Claims for The Government's Breach of Implied Duty to Have Been Tried by Consent," dated November 15, 2005, at 4.

The operative facts of this claim, thus, would appear to be that (a) Renda requested that the Corps allow it to construct the East and West Levees at the Lost Lake Placement Area by placing the toe of the new, hydraulically-placed levee on "the inside top" of the existing levees,

which was a departure from the contract design for the new levees, (b) the Government refused permission to construct the East and West Levees as proposed by Renda, even though that Renda had been allowed to use the proposed modified design to build a part of the North Levee, and insisted that Renda construct the East and West Levees in accordance with the design called for by the contract plans and specifications for the Upper Bayou Project, and (c) notwithstanding that the Government permitted a "successor contractor" to use the modified design that Renda had proposed "in later building the levees." These operative facts are not the same as the operative facts any of the differing site conditions or other claims that are the subject of the complaint in this case. The Court, therefore, lacks jurisdiction to entertain a claim predicated upon the alleged improper refusal of the Government to construct the East and West Levees by placing the toe of the new, hydraulically-placed levee on "the inside top" of the existing levees.

## IV. The Court May Not Reopen The Record For The Purpose Of Receiving The Transcript Of Mr. Russek's Deposition Without Affording The Government The Protections That Obtain At A Trial.

Renda argues that "[g]ranting this [motion to reopen the record] and introducing Mr. Russek's deposition in evidence will not prejudice the Government." Pl. Mot. 6. According to Renda, because it "seeks to introduce Mr. Russek's entire deposition," "[t]here cannot . . . be any argument that certain testimony is being proffered out of context." Id. In addition, Renda asserts that "[t]he Government was adequately represented at Mr. Russek's deposition, and it recognized the relevance of Mr. Russek's testimony by placing him on its witness list." Id.[9/]

---

[9] Renda's last point – i.e., that listing an individual on a trial witness list is a concession that any testimony given by the witness in a pretrial deposition is relevant and admissible – is curious. The scope of permissible examination in a deposition is governed by RCFC 26(b)(1), which provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant (continued...)

A court may not reopen the record and admit additional evidence "without affording the parties the standard prophylaxis that generally obtains at trial." Lussier v. Runyon, 50 F.3d 1103, 1113 (1st Cir. 1995). "These protections include, but are not limited to, the right to object to evidence, the right to question its source, relevance, and reliability, the right to cross-examine its proponent, and the right to impeach or contradict it." Id. at 1113 n.13; see also Briscoe v. Fred's Dollar Store, Inc., 24 F.3d 1026, 1028 (8th Cir. 1994) ("It is not an abuse of discretion for a district court to reopen a plaintiff's case where a defendant is given an opportunity to challenge the new evidence introduced.").

Therefore, if the Court were to grant Renda's motion to reopen the record for the purpose of receiving in evidence the transcript of Mr. Russek's deposition, the Government would be entitled to "the standard prophylaxis that generally obtains at trial," including the right to object to the admission into evidence of the deposition or any part of it upon any ground permitted by the Federal Rules of Evidence (subject RCFC 32(b)), the right to cross-examine Mr. Russek, and the right to challenge any deposition testimony admitted into evidence through the testimony of other witnesses or documentary evidence.

---

[9] (...continued)
to the claim or defense of any party," but that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Moreover, RCFC 32(b), which governs the use of depositions in court proceedings, provides that, subject to certain enumerated exceptions, such as, for example, objections to the form of deposition questions or answers, "objection may be made at the trial or hearing to receiving in evidence any deposition or part thereof for any reason which would require the exclusion of the evidence if the witness were then present and testifying."

## CONCLUSION

For the foregoing reasons, plaintiff's motion to reopen the record to introduce in evidence the deposition of Eric Russek should be denied.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/John E. Kosloske
JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-0282
(fax) (202) 514-8624

Attorneys for Defendant

OF COUNSEL:

MR. P. ALEX PETTY
Assistant District Counsel
Office of Counsel
Galveston District
U.S. Army Corps of Engineers
Galveston, TX

NOVEMBER 28, 2005