No. 02-306C
(Judge Hewitt)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

RENDA MARINE, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO DEEM CLAIMS FOR THE GOVERNMENT'S BREACH OF IMPLIED DUTY TO HAVE BEEN TRIED BY CONSENT

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-0282
(fax) (202) 514-8624

Attorneys for Defendant

OF COUNSEL:

MR. P. ALEX PETTY
Assistant District Counsel
Office of Counsel
Galveston District
U.S. Army Corps of Engineers
Galveston, TX

NOVEMBER 28, 2005

# TABLE OF CONTENTS

**Page**

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO DEEM CLAIMS FOR THE GOVERNMENT'S BREACH OF IMPLIED DUTY TO HAVE BEEN TRIED BY CONSENT ..... 1

PRELIMINARY STATEMENT ..... 1

BACKGROUND ..... 2

ARGUMENT ..... 3

I. The Claim That The Contracting Officer Failed To Timely Issue A Final Modification Upon The Flare Area Claim ..... 3

II. The Three Additional Claims Contingent Upon Reopening The Trial Record And Admitting Into Evidence The Deposition Of Eric Russek ..... 7

A. Additional Claim #1 ..... 10

B. Additional Claim #2 ..... 13

C. Additional Claim #3 ..... 13

CONCLUSION ..... 15

# TABLE OF AUTHORITIES

## CASES

In re Acequia, Inc.,
34 F.3d 800 (9th Cir. 1994) .......... 4, 5

Alliant Techsystems, Inc. v. United States,
178 F.3d 1260 (Fed. Cir. 1999) .......... 9

Cerebronics, Inc. v. United States,
13 Cl.Ct. 415 (1987) .......... 9

Comtrol, Inc. v. United States,
294 F.3d 1357 (Fed. Cir. 2002) .......... 12

England v. Swanson Group, Inc.,
353 F.3d 1375 (Fed. Cir. 2004) .......... 9

Exxon Research and Engineering Co. v. United States,
44 Fed. Cl. 597 (1999) .......... 5

Garrett v. General Electric Co.,
987 F.2d 747 (Fed. Cir. 1993) .......... 9

Kenda Corp. v. Pot O'Gold Money Leagues, Inc.,
329 F.3d 216 (1st Cir. 2003) .......... 5

Kiewit Construction Co. v. United States,
56 Fed. Cl. 414 (2003) .......... 12, 13

Portis v. First National Bank,
34 F.3d 325 (5th Cir. 1994) .......... 5

Reflectone, Inc. v. United States,
60 F.3d 1572 (Fed. Cir. 1995) .......... 9

Renda Marine, Inc. v. United States,
65 Fed. Cl. 152 (2005) .......... 8, 9

Renda Marine, Inc. v. United States,
66 Fed. Cl. 639 (2005) .......... passim

## TABLE OF AUTHORITIES (CONT'D)

## CASES (CONT'D)

Scott Timber Co. v. United States,
333 F.3d 1358 (Fed. Cir. 2003) .......... 9

Transamerica Insurance Corp. United States,
28 Fed. Cl. 418 (1993) .......... 6,7

United States v. 890 Noyac Road, Noyac, New York,
945 F.2d 1252 (2d Cir. 1991) .......... 5

Vanalco, Inc. v. United States,
48 Fed. Cl. 68 (2000) .......... 9

Wesco Mfg., Inc. v. Tropical Attractions of Palm Beach, Inc.,
833 F.2d 1484 (11th Cir. 1987) .......... 5

Wheeler v. United States,
11 F.3d 156 (Fed. Cir. 1993) .......... 4

## STATUTES

United States Code:

41 U.S.C. § 605(c)(5) (2000) .......... 9

Public Laws:

Contract Disputes Act of 1978, as amended (41 U.S.C. §§ 601-13 (2000)) .......... 8,9

## REGULATIONS

Code of Federal Regulations:

48 C.F.R. § 33.201 .......... 9

## TABLE OF AUTHORITIES (CONT'D)

## MISCELLANEOUS

Rules of the Court of Federal Claims:

RCFC 15(b) .......................................................................................................... 1,8,13,15

Federal Rules of Civil Procedure:

Fed.R.Civ.P. 15(b) ........................................................................................................ 4

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 02-306C |
| v. | ) | |
| | ) | (Judge Hewitt) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO DEEM CLAIMS FOR THE GOVERNMENT'S BREACH OF IMPLIED DUTY TO HAVE BEEN TRIED BY CONSENT

PRELIMINARY STATEMENT

Pending before the Court is the motion of plaintiff, Renda Marine, Inc. (Renda), pursuant to RCFC 15(b),[1] to "deem its claims relating to the Government's breach of implied duty to cooperate with [Renda] and not to hinder [Renda's] performance to have been tried by consent." Pl. Mot. 1.[2] According to Renda, "evidence in the record demonstrates that the Government breached its implied duty to cooperate and its implied duty not [to] hinder performance of the contract" in the following ways:

1. The contracting officer failed to timely address the misalignment of the West Levee at Lost Lake; failed to respond timely to [Renda's] request for guidance about the realignment of this levee; and failed, upon observing [Renda's] relocation of the levee, to correct what the Government now claims was [Renda's] misunderstanding.

2. The contracting officer failed to timely issue a final modification on the Flare Area claim.

---

1 Rule 15(b) provides, in pertinent part: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."

2 "Pl. Mot. ____" refers to the referenced page(s) of "Plaintiff's Motion to Deem Claims for the Government's Breach of Implied Duty to Have Been Tried By Consent" dated November 15, 2005.

Pl. Mot. 2.

Renda also contends that, should the Court grant Renda's pending motion to reopen the trial record and admit the deposition of Eric Russek, a Corps of Engineers employee,[3] "[Renda] will have three additional claims that the Government breached its duty to cooperate and not hinder performance of the contract" that "should be deemed to have [been] tried by consent." Pl. Mot. 3. These claims are described by Renda as follows:

> 1. The contracting officer failed to recognize that the Government's specifications were defective and that [Renda] was entitled to an equitable adjustment under the Changes Clause. . . . .
>
> 2. The contracting officer permitted the Port Authority and the Joint Venture to interfere and prevent him from performing his duties of promptly addressing and taking fair action on problems and claims arising under the contract.
>
> 3. The contracting officer failed to permit [Renda] to use a method it recommended to solve the problem of the levee failures it experienced in building the new levees.

Pl. Mot. 3-4.

For the reasons stated below, with the exception of Renda's additional claim concerning the West Levee realignment, Renda's motion to deem claims tried by consent should be denied.[4]

## BACKGROUND

At the conclusion of its post-trial decision upon the claims that are the subject of Renda's complaint, the Court stated that it "would entertain a motion to deem a claim for breach of the duty not to hinder to have been tried by consent and would consider as well a motion to schedule

---

[3] See "Plaintiff's Motion to Reopen to Introduce Deposition of Eric Russek in Evidence to Avoid Substantial Injustice in This Case" dated November 15, 2005.

[4] The Government agrees that the Court should establish a schedule for additional briefing, but only with respect to Renda's additional claim concerning realignment of the West Levee.

additional briefing, *to be based entirely on the testimony and documentary evidence in the trial record . . . .*" Renda Marine, Inc. v. United States, 66 Fed. Cl. 639, 722 (2005) (emphasis added). The Court stated that it believed that the evidence adduced at trial might support a claim of a breach by the Government of the implied contractual duty not to hinder a contractor's performance: "For example, both the government's failure to respond timely to plaintiff's request for guidance about the West Levee realignment, and the government's failure, upon observing plaintiff's relocation of the levee, to correct what the government now claims is plaintiff's misunderstanding, appear on their face to be unreasonable." Id. at 721-22.

## ARGUMENT

### I. The Claim That The Contracting Officer Failed To Timely Issue A Final Modification Upon The Flare Area Claim.

Renda asserts that "evidence in the record demonstrates that the Government breached its implied duty to cooperate and its implied duty not [to] hinder performance of the contract" when "[t]he contracting officer failed to timely issue a final modification on the Flare Area claim." Pl. Mot. 2.[5] By "final modification," Renda presumably refers to the provision contained in *unilateral* Modification P00023 to the contract for the Upper Bayou Project regarding the Flare Area claim which stated that "[a] supplemental agreement will be issued to definitize any time and pricing adjustments related to this change upon mutual agreement." JX 6.023, at 2, ¶ G (quoted in Renda Marine, 66 Fed. Cl. at 687).

---

[5] Renda does not indicate how the failure of the contracting officer to issue a "final modification" upon the Flare Area claim supposedly hindered Renda's performance of any of *its* duties under the contract for the Upper Bayou Project.

The Court should not entertain further proceedings, including additional briefing, upon a claim that the contracting officer did not timely issue a final modification upon the Flare Area claim. Renda has not established that the Government expressly or impliedly consented to a trial of this claim.

Renda has not pointed to anything in the record or otherwise which reflects that the Government expressly consented to trial of a claim that the contracting officer did not timely issue a final modification upon the Flare Area claim. The complaint in this case does not aver that the Government breached a duty of good faith and fair dealing by failing to issue a final modification upon the Flare Area claim. Nor does the Order entered by the Court after the pretrial conference indicate that this claim was in the case. Quite the contrary, the Order states:

> During the pretrial conference, the parties further clarified the issues to be tried as follows:
>
> a. Liability: With the exception of its 'HL&P Tower Claim,' see Compl. at 11-12, ¶¶ 75-83, each of plaintiff's claims alleges a Type I differing site condition. None of the claims to be litigated at trial alleges a Type II differing site condition.

Order filed on February 23, 2005, ¶ 8.a., at 3.

Renda also has not demonstrated that the Government impliedly consented to a trial of that claim. To establish implied consent, Renda must demonstrate that the Government understood evidence had been introduced to prove the new claim and that the new claim was directly addressed, not merely inferentially raised by incidental evidence. In re Acequia, Inc., 34 F.3d 800, 814 (9th Cir. 1994) (construing the identical Fed.R.Civ.P. 15(b)[6/]). As a rule, "a party impli-

[6] In applying the Rules of the Court of Federal Claims, the Court "examines the general federal law interpreting the corresponding Federal Rule of Civil Procedure as persuasive." Wheeler v. (continued...)

edly consents by failing to object to evidence supporting issues that go beyond the pleadings." Portis v. First National Bank, 34 F.3d 325, 332 (5th Cir. 1994); accord United States v. 890 Noyac Road, Noyac, New York, 945 F.2d 1252, 1257 (2d Cir. 1991) ("Usually, consent may be implied from failure to object at trial to the introduction of evidence relevant to the unpled issue."). "But the introduction of evidence directly relevant to a pleaded issue cannot be the basis for a founded claim that the opposing party should have realized that a new issue was infiltrating the case." Kenda Corp. v. Pot O'Gold Money Leagues, Inc., 329 F.3d 216, 232 (1st Cir. 2003) (internal quotation marks omitted); accord Portis, 34 F.3d at 332 ("Recognition of whether an unpleaded issue has entered the case at trial depends on whether the evidence supporting the issue is also relevant to another issue in the case. If the evidence overlaps in this fashion, it does not equate to implied consent absent a clear indication that the party who introduced the evidence was attempting to raise a new issue." (internal citation and quotation marks omitted)).[7/]

In support of its motion, Renda has not cited to *any* specific evidence in the trial record that is relevant to a claim that the contracting officer breached the contract for the Upper Bayou Project by, allegedly, not timely issuing a final modification upon the Flare Area claim, much

---

[6] (...continued)
United States, 11 F.3d 156, 157n.1 (Fed. Cir. 1993); accord Exxon Research and Engineering Co. v. United States, 44 Fed. Cl. 597, 599 (1999).

[7] See also Acequia, 34 F.3d at 814 (Where evidence alleged to have shown implied consent was also relevant to the other issues at trial, it cannot be used to imply consent to try the issue that was not pleaded.); 890 Noyac Road, 945 F.2d at 1257 ("Failure to object to evidence that is relevant to both pled and unpled issues does not imply consent to try the unpled issue . . . absent some *obvious attempt* to raise [it]." (emphasis in original) (internal quotation marks omitted)); Wesco Mfg., Inc. v. Tropical Attractions of Palm Beach, Inc., 833 F.2d 1484, 1487 (11th Cir. 1987) ("The introduction of evidence arguably relevant to pleaded issues cannot serve to give a party fair notice that new issues are entering the case.").

less demonstrated that any such evidence is relevant *only* to that claim. Indeed, it appears that even Renda's former counsel, who represented Renda during the trial and in post-trial briefing, did not think that the parties had tried a claim that the Government breached the contract in this case by not timely issuing a final modification upon the Flare Area claim. In its post-trial briefs, Renda does not advance any argument whatsoever in support of such a claim. And the Government did not address that issue in its post-trial briefs, either.

Even assuming for the sake of discussion that Renda could demonstrate that its claim based upon the failure of the contracting officer to issue a "final modification" upon the Flare Area claim was tried by consent, additional proceedings upon that claim would not be warranted. The Court ruled that Renda is not entitled to any relief upon the Flare Area claim – the claim that is the object of the "final modification" which the contracting officer did not issue, allegedly in breach of the implied covenant of good faith and fair dealing. See Renda Marine, 66 Fed. Cl. at 687 (Renda "is not entitled to additional compensation under its Flare Area claim because it has not proven by preponderant evidence each of the six elements of a Type I differing site conditions claim."). Therefore, to entertain further proceedings, including briefing, upon a claim that is based upon whether the contracting officer timely issued a final modification upon the Flare Area claim would be a futile exercise. The adjudication of the Flare Area claim renders moot any claim by Renda that is founded upon the failure of the contracting officer to issue a final modification upon the Flare Area claim.[8/]

---

[8] Indeed, Renda's institution of judicial proceedings upon the Flare Area claim, based upon the "deemed denial" of that claim, negated the existence of the previously-issued unilateral Modification P00023. See Renda Marine, 66 Fed. Cl. at 647-48 (citing Transamerica Insurance Corp. v. United States, 28 Fed. Cl. 418, 423 n.4 (1993)). As the Court further observed, "[b]ecause inter-
(continued...)

II. The Three Additional Claims Contingent Upon Reopening The Trial Record And Admitting Into Evidence The Deposition Of Eric Russek.

Renda has identified three additional "claims" that it contends are supported by a pretrial deposition of Mr. Eric Russek, a Corps of Engineers employee who was the project engineer for the Upper Bayou Project and who reported to Mr. C. Michael McClenan, the Area Engineer for the Galveston District's Bay Area Office and the administrative contracting officer for the Upper Bayou Project. See Renda Marine, 66 Fed. Cl. at 644 n.5 (description of C. Michael McClenan). As noted above, these claims are described by Renda as follows:

> 1. The contracting officer failed to recognize that the Government's specifications were defective and that [Renda] was entitled to an equitable adjustment under the Changes Clause. . . . .
>
> 2. The contracting officer permitted the Port Authority and the Joint Venture to interfere and prevent him from performing his duties of promptly addressing and taking fair action on problems and claims arising under the contract.
>
> 3. The contracting officer failed to permit [Renda] to use a method it recommended to solve the problem of the levee failures it experienced in building the new levees.

Pl. Mot. 3-4.

According to Renda, these additional claims are dependent upon Mr. Russek's testimony without which "these claims were not, and are not, before the Court and cannot be deemed to have been tried by consent." Pl. Mot. 3. If, however, the Court were to grant Renda's pending

---

[8] (...continued)
im decisions are subject to the same de novo review as a contracting officer's final decisions, . . . a contractor who undertakes an appeal of an interim award of partial relief must relitigate the entire claim–not only the portion of that claim that was denied by the contracting officer." Renda Marine, 66 Fed. Cl. at 647 (citing Transamerica, 28 Fed. Cl. at 423).

motion to reopen the trial record and admit the deposition of Mr. Russek, Renda contends that these claims "should be deemed to have been tried by consent." Id. We do not agree.

During the trial, the Government *objected* to the admission of Mr. Russek's deposition into evidence. We continue to *object* to the receipt of Mr. Russek's deposition testimony into the record in this case. Rule 15(b) only permits issues not raised by the pleadings that were *tried by express or implied consent of the parties* to be treated as if they had been raised in the pleadings. A court's receipt of evidence over a party's *objection* – whether during or after trial – does not constitute *consent* by the *parties* to the trial of an issue not raised by the pleadings to which that evidence relates. Therefore, even if the Court were to reopen the trial record and admit the deposition of Mr. Russek, Renda's motion to deem the three additional claims to which Mr. Russek's deposition testimony relates as having been tried by consent should be denied.

There is another problem with Renda's motion to deem tried by consent the additional claims allegedly supported by Mr. Russek's deposition. As the Court already has held in this case, "Rule 15(b) cannot be invoked by either party to confer jurisdiction over claims that are otherwise beyond the purview of this court." Renda Marine, Inc. v. United States, 65 Fed. Cl. 152, 158 (2005). The Court "cannot try – by implied consent or otherwise – a claim over which the court lacks jurisdiction." Id.

The Court of Federal Claims is a tribunal of limited jurisdiction. Renda Marine, 65 Fed. Cl. at 158. The Court's authority to act upon a claim that is governed by the Contract Disputes Act of 1978, as amended (41 U.S.C. §§ 601-13 (2000)) (CDA) – including any claims that Renda has relating to the contract for the Upper Bayou Project – is subject to two distinct jurisdictional

prerequisites: the contractor must have submitted a "claim"[9] to a contracting officer and the contracting officer must have issued a "final decision" upon the claim or the claim must be "deemed denied" as a result of the contracting officer's failure to issue a decision upon the claim within the time prescribed by the CDA. England v. Swanson Group, Inc., 353 F.3d 1375, 1379 (Fed. Cir. 2004). Absent a "claim," no decision is possible and, thus, there is no basis for jurisdiction in this Court. Vanalco, Inc. v. United States, 48 Fed. Cl. 68, 76 (2000). The claimant – Renda here – "must establish both jurisdictional prerequisites to proceed in this court" upon any of its claims. Renda Marine, 65 Fed. Cl. at 159 (citing Alliant Techsystems, Inc. v. United States, 178 F.3d 1260, 1264 (Fed. Cir. 1999)).

Renda does not even contend, much less point to any *evidence* which establishes, that it submitted to the contracting officer any of the three additional claims allegedly supported by Mr. Russek's deposition and that either the contracting officer issued a decision upon those claims or the claims are "deemed denied" pursuant to 41 U.S.C. § 605(c)(5) (2000).

It has been held that the Court may assert jurisdiction over a CDA complaint that is "based on the same set of operative facts" underlying the certified claim presented to the contracting officer. Cerebronics, Inc. v. United States, 13 Cl. Ct. 415, 417 (1987); see also Scott Timber Co. v. United States, 333 F.3d 1358 (Fed. Cir. 2003) (trial court correctly found that it

---

9 The term "claim" is not defined in the CDA itself. To determine the meaning of that term, the courts have looked to the definition of "claim" supplied by the FAR, the language of the contract in dispute, and the facts of the particular case. Reflectone, Inc. v. United States, 60 F.3d 1572, 1575 (Fed. Cir. 1995); Garrett v. General Electric Co., 987 F.2d 747, 749 (Fed. Cir. 1993). The FAR defines "claim," in relevant part, as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." 48 C.F.R. § 33.201.

had jurisdiction over the contractor's claims "because they arise from the same operative facts, claim essentially the same relief, and merely assert differing legal theories for that recovery"). That legal precedent is of no help to Renda, however, because the three additional claims allegedly supported by Mr. Russek's deposition testimony either (a) are so intertwined with the Lost Lake Levees Type I differing site conditions claim as to constitute a single claim governed by the differing site conditions clause and related judicial precedent already tried and decided by the Court or (b) are not based upon the same operative facts as the Lost Lake Levees Type I differing site conditions claim.

A. Additional Claim #1

The first of the three additional claims allegedly supported by Mr. Russek's deposition testimony is that "[t]he contracting officer failed to recognize that the Government's specifications were defective and that [Renda] was entitled to an equitable adjustment under the Changes Clause." Pl. Mot. 3. Renda expands upon this claim as follows:

> The contract specifications required most of the levees to be built hydraulically on soft foundations with materials derived from dredging. This new material was intended to displace the soft materials and provide 30' MLT levees on stable foundations. The specifications were defective because suitable materials from dredging to build the levees to 30' MLT were inadequate, notwithstanding the Corps' pre-bid assurance that the materials dredged would be adequate to build the levees. The anticipated materials from dredging was [sic] inadequate primarily because the extensive side cast borrow areas were much deeper and closer to [the] existing levee than permitted by the Corps' policy. The side cast borrow areas were not disclosed to bidders, including [Renda].

Pl. Mot. 3.

Although Renda characterizes this claim as one based upon the failure of the contracting officer to recognize that the specifications for the design of the Lost Lake levees to be construc-

ted by the hydraulic placement of dredged materials were defective entitling Renda to an equitable adjustment under the "Changes" clause contained in the contract for the Upper Bayou Project, this claim in reality is a rehash of the allegations advanced by Renda in support of its Lost Lake Levees Type I differing site conditions claim which the Court held Renda did not prove. See Renda Marine, 66 Fed. Cl. at 710-16.

In its opening statement at the outset of the trial, Renda advanced substantially the same allegations as the allegations that are contained in this defective specifications claim. Renda asserted three bases for the Lost Lake Levees differing site conditions claim: (1) "insufficient suitable material" from the required dredging areas to build the hydraulic levees; (2) the levees "would not stand due to the soft foundations;" and (3) the levee "could not be completed within the contract time if you were to undertake some method different than what was specified in the contract "to try and get the levees to stand by allowing time for consolidation and [dewatering]." Trial Transcript 51. Renda also contended that side cast borrow areas were not disclosed in the contract documents and that the side cast borrow areas interfered with the maximum displacement design for the hydraulic levees prepared by HVJ Associates for the Corps. Id., 59-62.

As the Court noted in its post-trial opinion in this case, see Renda Marine, 66 Fed. Cl. at 711 n.72, the Federal Circuit has observed:

> Although differing site conditions and defective specifications claims are distinct in theory, they collapse into a single claim . . . where the alleged defect in the specification is the failure to disclose the alleged differing site condition. Where the differing site conditions claim and the defective specifications claim are so intertwined as to constitute a single claim, that claim will be governed by the specific differing site conditions clause and the cases under that clause.

Comtrol, Inc. v. United States, 294 F.3d 1357, 1362 (Fed. Cir. 2002). This would appear to be the case with the Type I differing site conditions claim presented by Renda at trial and the defective specifications rubric under which Renda now attempts to repackage the Lost Lake Levees claim. The defective specifications claim appears to be so intertwined with the Type I differing site conditions claim that adjudication of the former would be controlled by the differing site conditions clause and judicial precedent construing that clause. Accordingly, because the Court already has decided the Lost Lake Levees Type I differing site conditions claim, renewed proceedings upon that claim under a defective specifications theory would be improper and a futility.

Assuming for the sake of discussion that the defective specifications claim concerning the Lost Lake Levees and the Lost Lake Levees Type I differing site conditions claim decided by the Court are not so intertwined as to constitute a single claim, the Court nevertheless would appear to lack jurisdiction to entertain a defective specifications claim. While, as noted above, there is precedent to the effect that the Court may assert jurisdiction over a CDA complaint that is "based on the same set of operative facts" underlying a claim presented to the contracting officer, that would be of no help to Renda in this instance because "differing site condition claims and defective specifications claims depend upon varying sets of operative facts." Kiewit Construction Co. v. United States, 56 Fed. Cl. 414, 419 (2003).

Whereas a differing site condition claim "focus[es] upon the [c]ontract's description of the work site, particularly with respect to subsurface conditions, and [the contractor's] reliance on that description," "a defective specifications claim under the CDA requires showing that a contractor was misled by design specification errors presented within a government contract." Kiewit, 56 Fed. Cl. at 420. "A defective specifications claim therefore focuses on the viability

of design requirements that a contractor is required to implement in a government contract." Id. Accordingly, to the extent that Renda is attempting to raise a defective specifications claim that is not so intertwined with the Lost Lake Levees Type I differing site conditions claim as to constitute a single claim governed by the differing site conditions clause, the Court lacks jurisdiction to entertain the defective specifications claim. And, as discussed above, Rule 15(b) may not be invoked to confer jurisdiction over a claim that is beyond the Court's purview.

B. Additional Claim #2

The second of the three additional claims allegedly supported by Mr. Russek's deposition testimony is that the Government breached the implied duty to cooperate with Renda and not to hinder Renda's performance of the contract when, allegedly, the contracting officer permitted the Port of Houston Authority (PHA) and the Joint Venture (JV) to interfere and prevent him from "performing his duties of promptly addressing and taking fair action on problems and claims arising under the contract." Pl. Mot. 4. Renda does not provide any specifics regarding the "problems and claims" that are the subject of this claim. On their face, the operative facts of this interference claim are not the same as the operative facts of any of the differing site conditions or other claims that are the subject of the complaint in this case. The Court, thus, lacks jurisdiction to assert jurisdiction over any claim that is predicated upon alleged improper influence upon the contracting officer by the PHA or JV.

C. Additional Claim #3

The third of the three additional claims allegedly supported by Mr. Russek's deposition testimony is that the Government breached the implied duty to cooperate with Renda and not

to hinder Renda's performance of the contract when "[t]he contracting officer failed to permit [Renda] to use a method it recommended to solve the problem of the levee failures it experienced in building the new levees." Pl. Mot 4. Renda expands upon this claim as follows:

> [Renda] requested permission to place the toe of the new levee on the inside top of [the] existing levees, and was allowed to do so on part of the North Levee. However, the [PHA] and the [JV] insisted on displacement of the soft levee foundation on the other levees – notwithstanding the impossibility of doing so under the contract – and the contracting officer refused to allow [Renda] to utilize the method the company proposed elsewhere. Despite the treatment of [Renda], the Government allowed the successor contractor to utilize [Renda's] proposed method in later building the levees.

Pl. Mot. 4.

The operative facts of this claim, thus, would appear to be that (a) Renda requested that the Corps allow it to construct the East and West Levees at the Lost Lake Placement Area by placing the toe of the new, hydraulically-placed levee on "the inside top" of the existing levees, which was a departure from the contract design for the new levees, (b) the Government refused permission to construct the East and West Levees as proposed by Renda, even though that Renda had been allowed to use the proposed modified design to build a part of the North Levee, and insisted that Renda construct the East and West Levees in accordance with the design called for by the contract plans and specifications for the Upper Bayou Project, and (c) notwithstanding that the Government permitted a "successor contractor" to use the modified design that Renda had proposed "in later building the levees." These operative facts are not the same as the operative facts any of the differing site conditions or other claims that are the subject of the complaint in this case. The Court, therefore, lacks jurisdiction to entertain a claim predicated upon the alleged

improper refusal of the Government to permit Renda to construct the East and West Levees by placing the toe of the new, hydraulically-placed levee on "the inside top" of the existing levees.

CONCLUSION

For the foregoing reasons, plaintiff's motion, pursuant to RCFC 15(b), to deem claims tried by consent of the parties should be denied, except for the additional claim concerning the West Levee realignment.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/John E. Kosloske
JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-0282
(fax) (202) 514-8624

Attorneys for Defendant

OF COUNSEL:

MR. P. ALEX PETTY
Assistant District Counsel
Office of Counsel
Galveston District
U.S. Army Corps of Engineers
Galveston, TX

NOVEMBER 28, 2005