**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| RENDA MARINE, INC.,<br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 02-306C<br>(Judge Hewitt) |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS CLAIMS RELATING TO THE GOVERNMENT'S BREACH OF THE IMPLIED DUTY TO COOPERATE**

In its Response to Plaintiff's Brief in Support of Its Claims Relating to the Government's Breach of the Implied Duty to Cooperate, the Government has failed to focus on the facts determinative of the Government's liability and amount of damages.

These facts are simple and can be succinctly stated:

Renda Marine built the West Levee according to the specifications given to it by the government. The government accepted and paid for this levee *before* it made the determination that, contrary to the government's intention, it was diverging too much from the old levee. After viewing the levee, the government told Renda Marine to relocate it. The only reason why Renda Marine relocated the West Levee was because the Corps told it to do so.

A part of the realigned West Levee was placed hydraulically. The relevant portion of the levee – *i.e.,* the part constructed with the relocated materials – was constructed mechanically.

The relocation of the materials used in the mechanical construction of the West Levee started in August and continued through November 2001.

Applicable damages principles entitle Renda Marine to recover damages that will place it monetarily in the position it would have been in had the government performed its implied obligation to cooperate in the relocation of the West Levee. The amount of damages payable to Renda Marine for relocating the West Levee is $789,304.

This amount is calculated based on the line item unit price and the amount of material relocated. The line item unit price of $4.60 pcy for mechanically constructing levees is the minimum contract price, as well as the minimum reasonable price for the tasks performed. As recognized in previous change orders on the project for mechanical levees constructed by means of multiple handling of the material (such as that involving the subcontract on the South Levee), a rate of $4.70 pcy was recognized as a reasonable price for the work.

There is no precise way to measure the cubic yards of the relocated material because it could not measure the material before and after placement. Thus, Renda Marine made a reasonable estimate of 167,937 cy. Renda Marine's claim with the contracting officer for payment for the relocated materials was very conservative. It is undisputed that the company was overrunning its costs and hoped to resolve this matter quickly to receive prompt payment. Applying the contract unit price of $4.60 pcy reveals damages of $772,510. Application of the $4.70 pcy reasonable price results in damages of $789,304.

## ARGUMENT

### I. THE ONLY REASON FOR RENDA MARINE TO RELOCATE THE WEST LEVEE WAS BECAUSE THE CORPS TOLD IT TO DO SO

As set forth more fully in Plaintiff's Brief, Renda Marine alone made efforts to ensure that its intended course of action was understood and accepted by the government.

Despite the government's independent obligation – and despite Renda Marine's requests – the government failed to cooperate with Renda Marine. Instead, after the fact, the government has taken the position that Renda Marine misunderstood its instructions and now must suffer for this misunderstanding. In order to support this position, the government characterizes its agreement as one to "allow" Renda Marine to realign the levee. Def. Resp. at 6.

This flies in the face of the facts discussed in Plaintiff's Brief and those conceded in the Government's Response. The West Levee was relocated because the specifications were causing it to diverge from the old levee, contrary to the government's intent, and was trapping the soft material between the old and new levees. *See* Pl. Brief at 2-4. In addition, the subgrade displacement was creating a mudwave that was likely to go over the old levee and into the river. *Id.* Prompt written direction by the government to realign the West Levee would have eliminated the frivolous assertion in Modification P00027 issued more than nine (9) months later, on May 23, 2001, that the realignment was done as a favor to Renda Marine and at no cost to the government.

The government's argument that the Army Corps of Engineers was unaware of Renda Marine's relocation of the portion of the West Levee that had been accepted and paid simply is not creditable. *See* Pl. Brief at 6-7. Renda Marine met regularly Corps representatives from August through November 2000 to discuss what was being done and what needed to be done. Tr. 3310, 3311-19. Reports of problems were required to be documented – and none exist that discuss a problem with Renda Marine's realignment of the West Levee.

The government may now claim that the Corps always intended the realignment of the West Levee would be allowed only prospectively, but they did nothing to make this clear to Renda Marine and ignored Renda Marine's attempts to make sure it understood the Corps' directions.

## II. THE PORTION OF THE WEST LEVEE CONSTRUCTED WITH RELOCATED MATERIAL WAS CONSTRUCTED MECHANICALLY

The Government cites references to testimony about the realigned West Levee being constructed hydraulically. This testimony is irrelevant to the issues before this Court here, however. Renda Marine agrees that *part* of the West Levee was placed hydraulically – but not the portion constructed with the relocated material. It is undisputed that Renda Marine *mechanically* relocated the material from the already constructed portion of the West Levee to the realigned levee. Indeed, the only way such material could be relocated was mechanically. The mechanically moved material was then used to mechanically construct a portion of the West Levee. Renda Marine relocated this material with the same process that was used in constructing the South Levee and should be compensated similarly.

## III. THE RELOCATION OF THE MATERIAL USED IN THE MECHANICAL CONSTRUCTION OF THE WEST LEVEE STARTED IN AUGUST AND CONTINUED THROUGH NOVEMBER 2000

Prior to trial, the parties stipulated that "[b]etween about September 2000 and November 2000, Renda realigned the levee between stations 166+00 to 183-00 and 183+00 to 188+00." Joint Stipulation of Facts ¶ 82; *see also* Def. Resp. at 12. In order to dispute Renda Marine's claims for damages, the government *now* seeks to nullify this joint stipulation. This attempt should be rejected.

The government argues that the stipulation "should be disregarded because it is contrary to facts established by the evidence." Def. Resp. at 12. This argument ignores the fact that the reason why parties stipulate is so the parties will *not* spend time or attention proving facts or establishing evidence on the stipulated point. Lack of evidence addressing a stipulated fact cannot be used to nullify the stipulation, because the stipulation eliminated the need to prove the fact.

The government argues that a court "*may* disregard a situation when it is . . . contrary to fact." *Id.* This position misconstrues applicable law.

As stated by the United States Court of Claims, "[a] stipulation is a judicial admission binding on the parties making it absent special considerations." *John McShain, Inc. v. United States*, 179 Ct. Cl. 632, 635 (1967); *Gresham & Co. v. United States*, 200 Ct. Cl. 97, 112 (1972). Where such special considerations are not present, the stipulations on issues of fact are binding on the parties who made them. *Id.; see also Bromley Contracting Co. v. United States,* 14 Cl. Ct. 69, 74 (1987), *aff'd without op.*, 861 F.2d 729 (Fed. Cir. 1988).

The cases cited by the Government do not support its position. On the contrary, they provide support for this court to enforce Stipulation ¶ 82. "Special circumstances" do not include an inconsistency between the stipulation and some facts presented at trial. Rather, a party may be "relieved" of a stipulation "to prevent an injustice." *H.B. Zachry Co. v. United States,* 170 Ct. Cl. 115, 123 (1965). For example, in *H.B. Zachry,* the Court rejected a stipulation, finding that the literal reading of the stipulation would moot questions in dispute and that the parties did not intend such a meaning. Similarly, in *D.E.W., Inc.,* ASBCA No. 49735, 96-2 B.C.A. (CCH) ¶ 28,488, the court found that both

parties agreed on the facts, but the facts were not accurately stated in the stipulation. Under these circumstances, the court granted the government's motion to withdraw from the stipulation. In *Dillon, Reed & Co. v. United States*, 875 F.2d 293, 300 (Fed. Cir. 1989), the Court rejected the stipulation because of its "internal inconsistencies" and stated that "[t]he trial court has a duty to reject stipulations which are demonstrably false." The other cases cited by the government are also inapposite, since they involved stipulations on questions of law and where the facts clearly demonstrated the stipulation was incorrect.

The Government has failed to show special considerations necessary to overcome Stipulation ¶ 82. Here, the parties undertook extensive discovery in this matter. Both parties knew what the facts were at the time of stipulation. The government had the documents and deposed Rudy Renda, the witness whose testimony it now cites as contrary to the stipulation. It *now* attempts unfairly to use selected references from these sources. This court set strict time limits on the presentation of proof. Renda Marine had no reason to explain why some information – such as the relocation efforts – was not routinely recorded in the CQG Reports. Renda Marine was more concerned with getting the job done than compiling records for a claim.

Similarly, the testimony of Rudy Renda does not support repudiation of the stipulation. The government focuses on Mr. Renda's references to "fine dressing" the levee. Def. Resp. at 13. Because of the stipulation, Renda Marine had no reason to ensure that Mr. Renda's testimony precisely stated the time period when all work was done to relocate the West Levee – to do so would have been a waste of time in light of the stipulation. As the government well knows, the West Levee failed and required more

mechanical relocation of material through November 2000 and indeed was not completed when the Corps instructed Renda Marine to use remaining clay to build foundations. To allow the government to nullify the stipulation would encourage parties to accept stipulations, and then attempt to sprinkle the record with testimony it will later use – at its convenience – to avoid its prior agreement. The court should not countenance such tactics. The government agreed to the stipulation, and it should stand. The stipulation should be accepted as establishing the duration of Renda Marine's rework on the realignment of the West Levee

## IV. APPLICABLE DAMAGE PRINCIPLES ENTITLE RENDA MARINE TO RECOVER DAMAGES THAT WILL PLACE IT MONETARILY IN THE POSITION IT WOULD HAVE BEEN IN HAD THE GOVERNMENT PERFORMED ITS IMPLIED OBLIGATION TO COOPERATE IN THE RELOCATION OF THE WEST LEVEE

The remedy for breach of contract is pecuniary damages that place the non-breaching party in as good a position monetarily as that in which it would have been if the breaching party had fully performed under the contract. *White v. Delta Constr. Int'l, Inc.,* 285 F.3d 1040, 1043 (Fed. Cir. 2002); *see also Restatement (Second) of Contracts* § 329 cmt. a; 11 Joseph M. Perillo, *Corbin on Contracts* § 55.3 (2005). In this case, the Government breached its implied duty to cooperate by failing to provide prompt written direction and payment for the realignment of the portion of the West Levee. Therefore, in order to be in as good a pecuniary position as if the Government had fully performed its implied obligation to cooperate, Renda Marine is entitled to be promptly and fully paid for the work to relocate the West Levee in accordance with the oral directive, field sketches, and dimensions to realign the West Levee provided during the August 7, 2000 site visit.

## V. THE AMOUNT OF DAMAGES RECOVERABLE BY RENDA MARINE FOR RELOCATING THE WEST LEVEE IS $789,304

The government's breach created some uncertainty on the amount of damages. In *Locke v. United States,* 151 Ct. Cl. 262, 267-68 (1960) (citations omitted), relying on Supreme Court decisions, the Court of Claims stated and applied the applicable common law damage rules:

> Wrongdoer shall bear the risk of the uncertainty that his wrong has created. The plaintiff must establish that he sustained some injury . . . The amount may be approximated if a reasonable basis of computation is afforded. All that the law requires is that such damage be allowed as, in the judgment of fair men, directly and naturally resulted from the breach of the contract for which the suit is brought. Certainty is sufficient if the evidence adduced enables the court to make a fair and reasonable approximation of the damages.

The uncertainty on the amount of recoverable damages in *Locke*, involving a breached requirements contract, was enormous and the court made reasonable assumptions to approximate the damages.

The Supreme Court in *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251 (1946), applied this principle in a loss of revenue case, specifically holding that if the defendant contributed to the damages by wrong action the uncertainty principle must be resolved in favor of the plaintiff. *See also Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931). In short, the government's breach clearly damaged Renda Marine and any uncertainty on the amount must be resolved in favor of Renda Marine.

The line item unit price of $4.60 pcy for mechanically constructing levees is the minimum contract price, and in any event is the minimum reasonable price, for the work.

The relocated material was obviously multiply handled and therefore $4.70 pcy is a reasonable price for the work.

There is no precise way to measure the cubic yards of the relocated material and therefore a reasonable estimate has to be made. Renda Marine's estimate of 167,937 cy is reasonable. Application of the bid contract unit price of $4.60 pcy to 167,937 results in a recovery of $772,510. Application of the $4.70 pcy price results in a damages payable in the amount of $789,304.

Line Item No. 2 of the contract provides for the payment of the Unit Price of $4.60 pcy for mechanically constructed levees. Contrary to the Government's argument, the contract does not limit the applicability of the unit price for mechanically constructed levees to those specifically identified in the contract at time of contract award. Mechanical construction of part of the West Levee involved the same type of mechanical process as the mechanical construction of the South Levee. The Corps knows that the relocated material was multiply handled. In any event, the unit price is a reasonable approximation of the damages caused by the government's breach of its implied obligation to cooperate in the relocation of the West Levee.

**CONCLUSION**

For the foregoing reasons, the Court should hold that Renda Marine is entitled to recover $789,304 for the government's breach of its implied obligation to cooperate in the relocation of the West Levee and enter judgment for that amount.

Respectfully submitted,

/s Clarence T. Kipps, Jr.

Clarence T. Kipps, Jr.
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W.
Suite 900
Washington, D.C. 20005
(202) 626-5800 (Telephone)
(202) 628-0858 (Facsimile)

Counsel for Renda Marine, Inc.
Plaintiff

*Of Counsel*:
Mary Lou Soller
Lara A. Covington
Justin C. Miller
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W., Suite 900
Washington, D.C. 20005
(202) 626-5800 (Telephone)
(202) 628-0858 (Facsimile)

Dated: February 24, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that I have this 24th day of February 2006 caused the foregoing "Plaintiff's Reply Brief in Support of Its Claims Relating to the Government's Breach of the Implied Duty to Cooperate" to be served by the United States Court of Federal Claims ECF system upon the following:

David M. Cohen
John E. Kosloske
Commercial Litigation Branch
Civil Division
United States Department of Justice
1100 L Street, N.W.
Room 8012
Washington, DC 20530
Telephone: 202-307-0282

/s Clarence T. Kipps, Jr.
Clarence T. Kipps, Jr.