IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| RENDA MARINE, INC., Plaintiff, v. THE UNITED STATES OF AMERICA, Defendant. | No. 02-306C (Judge Hewitt) |

**PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION TO MODIFY THE COURT'S APRIL 19, 2005 OPINION**

During oral argument on July 14, 2005, the Court expressed concern over whether it had jurisdiction to consider Renda's Motion requesting that the Court modify its April 19, 2005 Opinion (the "Motion to Modify). In the Motion to Modify, Renda asked the Court to hold that the November 26, 2002, letter of the contracting officer ("the CO's Letter") (Exhibit 1) is a nullity to the extent it constituted the same claim already subject to litigation before the Court. At argument, the Court stated that it might not have jurisdiction to resolve whether the CO's Letter is a nullity, because of Renda's failure to appeal within the 12-month period specified in the CDA.

**A. Jurisdiction**

Renda submits that this Court does have jurisdiction to resolve the question whether the CO's Letter is a nullity, and it asks the Court to do so. As set forth in Renda's Motion to Modify, the basis for Renda's request is that under the *Sharman* decision, the CO's Letter is a nullity because it asserts claims premised on issues already the subject of litigation before this Court. Necessarily, this Court is in the best position to resolve the question at hand, that is, whether the CO's Letter is premised on issues already the subject of litigation before this Court.

Moreover, the CO's Letter on its face shows that the Government knew its claims addressed claims that were already the subject of litigation in this Court - namely, the CO's Letter states that it "serves as a Contracting Officer counter-claim," and the six claims presented are each entitled "Counter Claims." *See* Exhibit 1 at 1-4. Further, by the enactment of the Contract Disputes Act ("CDA"), Congress intended that the Court of Federal Claims and the Federal Circuit constitute the Courts with the greatest expertise in government contract matters. It is only logical that this Court, not any other court, resolve a question about the finality of a CO's final decision.

**B. Merits**

The courts have recognized that there are exceptions to the general rule set forth in section 605(b) of the CDA that a CO's final decision is accorded finality if not timely appealed. This Court should examine whether any of the following exceptions applies to excuse Renda's failure to appeal the CO's Letter within one year.

**1. Exceptions To the Finality Rule of Section 605(b) of the CDA**

First, in *Am-Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234 (Fed. Cir. 2002), the Federal Circuit considered whether duress imposed by a CO on a contractor could excuse the contractor's failure to timely appeal the CO's final decision. The Court stated: "If we were to conclude that the failure to timely file could have resulted from duress, however, a plausible argument could be made for the equitable tolling of the statutory period." *Id.* at 1238. On the facts before it, the Court concluded that Am-Pro had failed to create a genuine factual issue about duress and affirmed dismissal of the complaint.

Second, a CO's final decision that is procedurally defective cannot trigger the running of the one-year limitations period. *See Pathman Constr. Co. v. United States*, 817 F.2d 1573, 1578

(Fed. Cir. 1987) (finding CO's failure to issue a final decision was defective as a means of commencing the running of the limitations period under the "deemed denial" provision).

Third (as set forth in Renda's Motion to Modify), the Federal Circuit held in *Sharman* that a CO's final decision is "a nullity" if it is issued after the claim is subject to litigation in court. *Sharman Co. v. United States,* 2 F.3d 1564, 1571-72 (Fed. Cir. 1993), *overruled in other part by Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1579 (Fed. Cir. 1995). If the CO's decision is a nullity, it cannot be final and conclusive.

Fourth, the Supreme Court has recognized for more than a century that a government official's decision resolving a contract dispute is not accorded finality if that decision is based on "fraud or such gross mistake as would necessarily imply bad faith, or a failure to exercise an honest judgment…." *See United States v. Wunderlich,* 342 U.S. 98, 99-100 (1951) (citing *Kihlberg v. United States*, 97 U.S. 398, 402 (1878); *Sweeney v. United States*, 109 U.S. 618, 620 (1883); *Martinsburg & P.R. Co. v. March*, 114 U.S. 549, 553 (1885); and *Chicago, S .F. & C. R. Co. v. Price*, 138 U.S. 185, 195 (1891)). *See also United States v. Moorman*, 338 U.S. 457, 461 (1950).

Fifth, the courts have consistently recognized over the years that a CO's action is not valid if it was not the independent decision of the CO. *See generally Schlesinger v. United States*, 390 F.2d 702, 708-09 (Ct. Cl. 1968) (CO improperly influenced by pressure from Congressional Committee); *John A. Johnson Contracting Corp. v. United States*, 132 F. Supp. 698, 705 (Ct. Cl. 1955) (CO improperly terminated for irrelevant reason unrelated to performance); *Darwin Constr. Co. v. United States,* 811 F.2d 593, 596 (Fed. Cir. 1987) (CO improperly terminated for irrelevant reason unrelated to performance).

**2. Application of Exceptions to Renda**

The principal exception that applies to excuse Renda's failure to appeal the CO's Letter within one year is the third exception identified above, based on the *Sharman* case. To make its determination, this Court will need to compare the claims asserted in the CO's Letter with the claims and facts at issue in the litigation before the Court. Both Renda and the Government have provided the CO's Letter to this Court, but Renda again attaches this decision as Exhibit 1 for the Court to consider in making its determination. Renda respectfully requests that the Court permit further briefing on the comparison between the claims asserted in the CO's Letter with the claims and facts at issue in the litigation before the Court.

The fourth exception concerning "gross mistake" also applies to Renda. Renda believes there is significant evidence that the CO's Letter was issued as a result of gross mistake and that its failure to appeal within one year is therefore excused. For example, Counter Claim No. 1 in the CO's Letter seeks recovery of $2 million for work in Section 9 that Renda Marine did not complete. *See* Exhibit 1 at 1-2. But this is directly contrary to the CO's testimony in his deposition that:

> . . . Renda completed the majority of the contract with the exception of Section 9. We terminated a portion – we, the Government – a portion *for the convenience of the Government* on Section 9 and that was the end of the contract.

Benero Dep. at 57-58 (Exhibit 2) (emphasis added). In addition, all of the claims asserted in the CO's Letter are predicated on Renda being in default. Specifically, the CO's Letter seeks reprocurement costs, plus liquidated damages for default. *See* Exhibit 1 at 1-4. But this is incorrect – Renda was *not* terminated for default. Indeed, the CO testified at trial that: "The contractor was never – there was never any termination for default on this contract." Trial Tr. at 297-98 (Exhibit 3).

Finally, the fifth exception applies here as well. In light of the testimony of the CO that is contrary to some of the facts asserted in the CO's Letter, as well as the other factual errors in that letter, there is a serious question as to whether any of the claims asserted in the CO's Letter were actually the CO's decisions. Indeed, Mr. Russek, the Corps' Project Engineer, testified that the Joint Venture interfered with the administration of the contract, and that without this interference, the Army Corps of Engineers would have worked out "all the issues" – *i.e.*, the issues raised in this litigation and in the CO's letter. Russek Dep. at 102-05, 108-11, 116, 142-43, 158-62, 182-87, 209-10 (Exhibit 4). If the CO's Letter does not represent the decision of the contracting officer, it is invalid, under *Schlesinger* and *Darwin*.

**C. Process**

To develop the relevant facts, Renda will likely need to take additional discovery, and there will likely be the need for a further hearing before this Court. Most importantly, the Government withheld documents concerning the decision-making process of the CO's Final Decision on the ground of privilege. Those documents should be produced, to determine whether the CO's Letter was the decision of the CO, or whether it was rendered as a result of "fraud or such gross mistake as would necessarily imply bad faith, or a failure to exercise an honest judgment."

## CONCLUSION

For the above reasons, Renda requests that the Court decide the merits of whether the CO's Letter is a nullity, either because it was premised on issues already the subject of litigation before this Court, or for one of the other reasons that a purported CO final decision is not accorded finality under section 605(b) of the CDA.

Respectfully submitted,

/s Clarence T. Kipps, Jr.
Clarence T. Kipps, Jr.
MILLER & CHEVALIER CHARTERED
Suite 900
655 Fifteenth Street, N.W.
Washington, D.C. 20005-5701
Tel: 202/626-5814
Fax: 202/628-0858

Counsel for Renda Marine, Inc.

Dated: April 7, 2006