No. 02-306C
(Judge Hewitt)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

RENDA MARINE, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND PLAINTIFF'S JUNE 1, 2005 MOTION TO MODIFY THE COURT'S APRIL 19, 2005 OPINION AND ORDER AND TO FILE A SUPPLEMENTAL BRIEF

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-0282
(fax) (202) 514-8624

Attorneys for Defendant

<u>OF COUNSEL</u>:

MR. P. ALEX PETTY
Assistant District Counsel
Office of Counsel
Galveston District
U.S. Army Corps of Engineers
Galveston, TX

APRIL 24, 2006

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..... 1

BACKGROUND ..... 3

I. Renda's Previous Attempts To Challenge The November 2002 Contracting Officer Decision ..... 3

II. Renda's June 1, 2005 Motion To Modify The Court's April 19, 2005 Opinion And Order ..... 4

III. Renda's April 7, 2006 Motion To Modify The June 1, 2005 Motion To Modify The Court's April 19, 2005 Opinion And Order ..... 5

ARGUMENT ..... 6

I. The Standards For Deciding A Motion For Leave To Amend A Pleading ..... 6

II. Renda's Motion, Which Is Tantamount To A Motion For Leave To Amend The Complaint To Add A New Claim Seeking A Declaration That The November 26, 2002 Contracting Officer's Decision Is A Nullity And Not Final And Conclusive Under 41 U.S.C. § 605(b), Should Be Denied Because Renda Unduly Delayed In Seeking To Raise That Claim In These Proceedings ..... 7

III. Renda's Motion Should Be Denied Because Of The Prejudice To The Government That Would Result If Renda Were Permitted To Raise The New Claim As To The Validity Of The November 26, 2002 Contracting Officer Decision ..... 9

IV. Renda's Motion Should Be Denied Because Permitting Renda To Raise The New Claim Regarding The Validity Of The November 26, 2002 Contracting Officer Decision Would Be Futile ..... 10

A. Futility As A Basis For Denying A Motion For Leave To Amend A Complaint ..... 10

B. Permitting Renda To Amend Its Complaint To Raise The New Claim Regarding The Validity Of The November 26, 2002 Contracting Officer Decision Would Be A Futility Because Review Of The Claim Is Precluded By 41 U.S.C. § 605(b) ..... 11

(1) The CDA's Exclusive And Comprehensive Scheme For The Resolution Of Government Contract Disputes ..... 11

(2) The Finality And Conclusiveness Of Contracting Officer's Decisions ........ 13

(3) The Statutes Of Limitations Applicable To Appeals Or Suits Under The CDA ........ 13

(4) Renda Did Not Commence An Action In The Court Of Federal Claims Regarding The November 26, 2002 Contracting Officer's Decision Within The Twelve-Month Time Limit Prescribed By 41 U.S.C. § 609(a)(3) ........ 14

(5) Assuming That The Doctrine Of Equitable Tolling May Be Invoked With Respect To The CDA's 12-Month Time Limitation For Commencing An Action Upon A Claim In The Court Of Federal Claims, This Doctrine Would Not Aid Renda . 15

(6) Renda's Proposed Amendment To The Complaint Seeking A Determination Of The Validity Of The November 2002 Contracting Officer Decision Would Not Relate Back To The Date Of The Complaint ........ 17

C. The Alleged "Exceptions" To The Finality Rule Of 41 U.S.C. § 605(b) Identified By Renda ........ 20

(1) Duress ........ 21

(2) Procedurally-Defective Contracting Officer Decision ........ 22

(3) The *Sharman* Issue ........ 23

(4) Gross Mistake ........ 25

(5) The Contention That The November 2002 Decision Is Not The Decision Of The Contracting Officer ........ 29

CONCLUSION ........ 30

## TABLE OF AUTHORITIES

### CASES

Acosta-Mestre v. Hilton International of Puerto Rico, Inc.,
156 F.3d 49 (1st Cir. 1998) .......... 10

Alfa Laval Separation, Inc. v. United States,
47 Fed. Cl. 305 (2000) .......... 7

Am-Pro Protective Agency, Inc. v. United States,
281 F.3d 1234 (Fed. Cir. 2002) .......... 21

Arono, Inc. v. United States,
49 Fed. Cl. 544 (2001) .......... 16

Assurance Co. v. United States,
813 F.2d 1202 (Fed. Cir. 1987) .......... 12

Bailey v. West,
160 F.3d 1360 (Fed. Cir. 1998) .......... 15

Baldwin County Welcome Center v. Brown,
466 U.S. 147 (1984) .......... 18

Bell v. Allstate Life Insurance Co.,
160 F.3d 452 (8th Cir. 1998) .......... 9

Bonneville Associates, Ltd. v. United States,
165 F.3d 1360 (Fed. Cir. 1999) .......... 15, 17

Bonneville Associates v. United States,
43 F.3d 649 (Fed. Cir. 1994) .......... 12

Borough of Alpine v. United States,
923 F.2d 170 (Fed. Cir. 1991) .......... 14

Bower v. Jones,
978 F.2d 1004 (7th Cir. 1992) .......... 6, 10

Cecile Industries, Inc. v. United States,
995 F.2d 1052 (Fed. Cir. 1993) .......... 11, 12

## TABLE OF AUTHORITIES (CONT'D)

## CASES (CONT'D)


Christofferson v. United States,
64 Fed. Cl. 316 (2005) .......... 16

Computer Products International, Inc. v. United States,
26 Cl. Ct. 518 (1992) .......... 13

Crown Coat Front Co. v. United States,
386 U.S. 503 (1967) .......... 28

Cupey Bajo Nursing Home, Inc. v. United States,
36 Fed. Cl. 122 (1996) .......... 7

Dalton v. Sherwood Van Lines, Inc.,
50 F.3d 1014 (Fed. Cir. 1995) .......... 12

Darwin Construction Co. v. United States,
811 F.2d 593 (Fed. Cir. 1987) .......... 29, 30

Educators Associates, Inc. v. United States,
41 Fed. Cl. 811 (1998) .......... 14

Ewer v. United States,
63 Fed. Cl. 396 (2005) .......... 16

Exxon Research and Engineering Co. v. United States,
44 Fed. Cl. 597 (1999) .......... 7

FDIC v. Bennett,
898 F.2d 477 (5th Cir. 1990) .......... 18

FDIC v. Conner,
20 F.3d 1376 (5th Cir. 1994) .......... 10

Foman v. Davis,
371 U.S. 178 (1962) .......... 7

Garrett v. General Electric Co.,
987 F.2d 747 (Fed. Cir. 1993) .......... 12

## TABLE OF AUTHORITIES (CONT'D)

## CASES (CONT'D)

Gibson v. Resolution Trust Corp.,
51 F.3d 1016 (11th Cir. 1995) .......... 19

Gregory Lumber Co. v. United States,
229 Ct. Cl. 762 (1982) .......... 14, 16

Hamza v. United States,
36 Fed Cl. 10 (1996) .......... 13, 14, 16

Handel v. United States,
16 Cl. Ct. 70 (1988) .......... 16

Hickman v. United States,
43 Fed. Cl. 424 (1999), aff'd, 232 F.3d 906 (Fed. Cir. 2000) (Table) .......... 16

Holland v. United States,
62 Fed. Cl. 395 (2004) .......... 11

Holmes v. Greyhound Lines, Inc.,
757 F.2d 1563 (5th Cir. 1985) .......... 19

Irwin v. Department of Veterans Affairs,
498 U.S. 89 (1990) .......... 15, 16, 17

J.A. Terteling & Sons, Inc. v. United States,
182 Ct. Cl. 691, 390 F.2d 926 (1968) .......... 30

Janicki Logging Co., Inc. v. United States,
36 Fed. Cl. 338 (1996), aff'd, 124 F.3d 226 (Fed. Cir. 1997) (Table) .......... 16

Krueger v. United States,
26 Cl. Ct. 841 (1992) .......... 14, 16

Maney Aircraft Parts, Inc. v. United States,
202 Ct. Cl. 54, 479 F.2d 1350 (1973) .......... 28

Middle Atlantic Utilities Co. v. S. M. W. Development Corp.,
392 F.2d 380 (2d Cir. 1968) .......... 10

**TABLE OF AUTHORITIES (CONT'D)**

**CASES (CONT'D)**

Moore v. Baker,
989 F.2d 1129 (11th Cir. 1993) .................................................................. 18, 19

National Neighbors, Inc. v. United States,
839 F.2d 1539 (Fed. Cir. 1988) ........................................................................ 12

New York Shipbuilding Corp. v. United States,
180 Ct. Cl. 446, 385 F.2d 427 (1967) ................................................................ 28

Oliver-Finnie Co. v. United States,
150 Ct. Cl. 189, 279 F.2d 498 (1960) ................................................................ 28

Pacific Architects and Engineers, Inc. v. United States,
203 Ct. Cl. 499, 491 F.2d 734 (1974) ................................................................ 29

Pathman Construction Co. v. United States,
817 F.2d 1573 (Fed. Cir. 1987) .................................................................. 14, 22

Renda Marine, Inc. v. United States,
65 Fed. Cl. 162 (2005) ........................................................................... 1, 3, 4, 15

Renda Marine, Inc. v. United States,
66 Fed. Cl. 639 (2005) ............................................................................................ 1

Riley & Ephriam Construction Co., Inc. v. United States,
408 F.3d 1369 (Fed. Cir. 2005) ........................................................................ 14

Rockwell Automation, Inc. v. United States,
___ Fed. Cl. ____, 2006 WL 581035 (March 10, 2006) .................................................. 6

Santa Fe Engineers, Inc. v. United States,
230 Ct. Cl. 512, 677 F.2d 876 (1982) ................................................................ 12

Schlesinger v. United States,
181 Ct. Cl. 21, 383 F.2d 1004 (1967) ................................................................ 28

Schlesinger v. United States,
182 Ct. Cl. 571, 390 F.2d 702 (1968) ........................................................... 29, 30

## TABLE OF AUTHORITIES (CONT'D)

## CASES (CONT'D)


Seaboard Lumber Co. v. United States,
903 F.2d 1560 (Fed. Cir. 1990), cert. denied, 499 U.S. 919 (1991). (3) .................... 13,27

Sharman Co., Inc. v. United States,
2 F.3d 1564 (Fed. Cir. 1993) .................................................................... 5, 7, 23, 25

Shaver v. United States,
11 Cl. Ct. 594 (1987) ........................................................................................ 13, 16

Spalding & Son, Inc. v. United States,
22 Cl. Ct. 678 (1991) ............................................................................................ 7

Stockton East Water District v. United States,
62 Fed. Cl. 379 (2004) ........................................................................................ 18

Summit Contractors v. United States,
15 Cl. Ct. 806 (1988) .......................................................................................... 18

Te-Moak Bands of Western Shoshone Indians v. United States,
948 F.2d 1258 (Fed. Cir. 1991) .............................................................................. 7

Texas Health Choice, L.C. v. OPM,
400 F.3d 895 (Fed. Cir. 2005) .............................................................................. 12

Tuttle/White Constructors v. United States,
228 Ct. Cl. 354, 656 F.2d 644 (1981) ................................................................... 11

United States v. Dabbs,
608 F.Supp. 507 (S.D. Miss. 1985) ...................................................................... 25

United States v. Joseph A. Holpuch Co.,
328 U.S. 234 (1946) ........................................................................................... 28

United States v. Kasler Electric Co.,
123 F.3d 341 (6th Cir. 1997) ........................................................................... 24, 25

United States v. Roarda,
671 F.Supp. 1084 (D. Md. 1987) ......................................................................... 25

## TABLE OF AUTHORITIES (CONT'D)

### CASES (CONT'D)

United States v. Wunderlich,
342 U.S. 98 (1951) .......... 27, 28

Vepco of Sarasota, Inc. v. United States,
26 Cl. Ct. 639 (1992), aff'd, 6 F.3d 786 (Fed. Cir. 1993) (Table) .......... 16

Vista Scientific Corp. v. United States,
808 F.2d 50 (Fed. Cir. 1986) .......... 27

Wheeler v. United States,
11 F.3d 156 (Fed. Cir. 1993) .......... 7

White Buffalo Construction, Inc. v. United States,
28 Fed. Cl. 145 (1992) .......... 14

Williams v. United States Postal Service,
873 F.2d 1069 (7th Cir. 1989) .......... 10

Wilner v. United States,
24 F.3d 1397 (Fed. Cir. 1994) .......... 11, 12

Wood-Ivey Systems Corp. v. United States,
4 F.3d 961 (Fed. Cir. 1993) .......... 16

### STATUTES

United States Code:

12 U.S.C. § 1464(d)(2)(B) .......... 19

28 U.S.C. §§ 516-20 .......... 23

41 U.S.C. §§ 321, 322 .......... 27

41 U.S.C. § 605(a) (2000) .......... 23, 24, 26

41 U.S.C. § 605(b) (2000) .......... passim

41 U.S.C. § 605(c)(5) .......... 22

## TABLE OF AUTHORITIES (CONT'D)

## STATUTES (CONT'D)

United States Code (cont'd):

41 U.S.C. § 606 (2000) .......... 3, 12, 13, 16

41 U.S.C. § 607 .......... 26

41 U.S.C. § 608(d) (2000) .......... 26

41 U.S.C. § 609(a)(1) (2000) .......... 3, 12, 13

41 U.S.C. § 609(a)(3) .......... 3, 13, 16, 21, 22, 26, 28

41 U.S.C. § 609(b) (2000) .......... 26

Public Laws:

Contract Disputes Act of 1978, as amended (41 U.S.C. §§ 601-13 (2000)) .......... passim

Wunderlich Act, Pub. L. No. 356, 68 Stat. 81 (1954) (41 U.S.C. §§ 321, 322) .......... 27

## MISCELLANEOUS

Rules of the Court of Federal Claims:

RCFC 12(b)(1) .......... 21

RCFC 15(a) .......... 2, 6

RCFC 15(b) .......... 4

RCFC 15(c)(2) .......... 17, 18, 20

Federal Rules of Civil Procedure:

Fed.R.Civ.P. 15(a) .......... 6, 7

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| RENDA MARINE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 02-306C |
| v. | ) | |
| | ) | (Judge Hewitt) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND PLAINTIFF'S JUNE 1, 2005 MOTION TO MODIFY THE COURT'S APRIL 19, 2005 OPINION AND ORDER AND TO FILE A SUPPLEMENTAL BRIEF

## PRELIMINARY STATEMENT

This case involves claims governed by the Contract Disputes Act of 1978, as amended (41 U.S.C. §§ 601-13) (CDA), arising under or relating to Contract No. DACW64-99-C-0001 between plaintiff, Renda Marine, Inc. (Renda), and the United States, acting through the Army Corps of Engineers, Galveston, Texas District, to dredge a reach of the Houston Ship Channel known as the Upper Bayou and to construct containment levees and other structures at the Lost Lake Placement Area, a disposal facility for dredged material owned and operated by the Port of Houston Authority. The scope of work under the contract is referred to in the complaint and other documents as the "Upper Bayou Project."

On April 7, 2006, eight months after the July 14, 2005 hearing upon Renda's motion to modify the Court's April 19, 2005 Opinion and Order[1/] and the Court's July 28, 2005 post-trial Opinion upon the claims that are the subject of Renda's complaint in this case[2/] and 3-1/2 years after the November 26, 2002 contracting officer decision for $11.86 million upon Government

---

[1] See Renda Marine, Inc. v. United States, 65 Fed. Cl. 162 (2005).

[2] See Renda Marine, Inc. v. United States, 66 Fed. Cl. 639 (2005).

claims relating to the Upper Bayou Project, Renda filed the pending motion "for leave to amend" its motion to modify the April 19, 2005 Opinion and Order and "to file a supplemental brief in support thereof." Pl. Mot. 1.[3] Renda now "requests that the Court decide the merits of whether [the November 26, 2002 contracting officer decision] is a nullity, either because it was premised on the issues already the subject of litigation before this Court, or for one of the other reasons that a purported [contracting officer] final decision is not accorded finality under section [6(b)] of the [CDA]."[4] Id. According to Renda, this request is made "in light of the views expressed by the Court at [the July 14, 2005] oral argument" upon Renda's motion to modify the Court's April 19, 2005 Opinion and Order and "in light of the Court's July 28, 2005, denial of Renda's differing cite conditions claims[.]" Id.

Renda's motion, which is tantamount to a motion pursuant to RCFC 15(a) for leave to amend the complaint to add a claim challenging the validity of the November 26, 2002 contracting officer decision, should be denied because of undue delay by Renda in raising this claim, undue prejudice to the Government that would result from allowing the proposed amendment, and futility of the amendment because review of the claim is precluded by 41 U.S.C. § 605(b), which prohibits review of a contracting officer's decision that is not appealed to a board within

---

[3] In this response, "Pl. Mot. ____" refers to the referenced page(s) of "Plaintiff's Motion for Leave to File a Supplemental Brief in Support of Its Motion to Modify the Court's April 19, 2005 Opinion" dated April 7, 2006;" "Pl. Supp. Br. ____" refers to the referenced page(s) of Plaintiff's Supplemental Brief in Support of Its Motion to Modify the Court's April 19, 2005 Opinion" dated April 7, 2006; and "Tr. ____ (____)" refers to the referenced page(s) and (parenthetically) line(s) of the cited transcript.

[4] Section 6(b) of the CDA provides, in relevant part: "The contracting officer's decision on a claim shall be final and conclusive and not subject to review by any forum, tribunal, or Government agency, unless an appeal or suit is timely commenced as authorized by this chapter." 41 U.S.C. § 605(b) (2000).

90 days of the contractor's receipt of the decision or as to which a proceeding is not commenced in the Court of Federal Claims within 12 months of the contractor's receipt of the decision.

## BACKGROUND

### I. Renda's Previous Attempts To Challenge The November 2002 Contracting Officer Decision

This is not the first time that Renda has sought leave to bring into this case a challenge to the validity of the November 26, 2002 contracting officer decision upon Government claims relating to the Upper Bayou Project, in which the contracting officer determined that Renda owes the Government $11.86 million for deficient or incomplete contract items. See July 30, 2004 Order, at 3. In July 2004, Renda filed a motion for leave to file an amended complaint, seeking, among other things, a declaration that the November 26, 2002 contracting officer decision is "a nullity or is otherwise invalid." Id. (quoting from Count IX of the proposed amended complaint). The Court denied that motion, finding Renda's "belated challenge" to the contracting officer's decision "unpersuasive" and noting that Renda "does not dispute either that it timely received the final decision or that it declined to exercise its appeal rights under the [CDA], in particular, to appeal the final decision to an agency board of contract appeals, 41 U.S.C. § 606 (2000), or to institute a proceeding in this court upon that claim, 41 U.S.C. § 609(a)(1), (3) (2000)." Id., at 7.

Notwithstanding that ruling, Renda has attempted at every turn to interject into this litigation the question of the validity of the November 26, 2002 contracting officer decision and each time, the Court, for good and sufficient reasons, has rejected the attempt to do so. When Renda listed the November 26, 2002 contracting officer decision as a trial exhibit, the Court ruled that Renda could use the document at trial only for the purpose of impeachment. See Renda Marine,

65 Fed. Cl. at 156-57 & n.4. When, during the pre-trial conference, Renda requested "guidance" from the Court (ostensibly to facilitate settlement discussions) as to whether the November 26, 2002 contracting officer decision is a "legal nullity," the Court ruled that request "completely out of order." Id. At trial, Renda twice attempted without success to bring the November 26, 2002 contracting officer decision before the Court. Id. at 156-57 & n.5.

Toward the end of the trial, Renda filed a motion to amend the complaint pursuant to RCFC 15(b), alleging that a claim by Renda for the contract balance had been tried by implied consent. The Rule 15(b) motion quoted from but did not cite or otherwise reference the November 26, 2002 contracting officer decision. In denying the motion, the Court observed that the contracting officer's decision "is not part of the evidence admitted at trial" and that Renda had not appealed the decision to a board within the 90-day window prescribed by the CDA or commenced an action upon the decision in the Court of Federal Claims within the 12-month period prescribed by the CDA so that, on November 26, 2003, the decision had become "final and conclusive and not subject to review by any forum, tribunal, or Government agency," quoting from 41 U.S.C. § 605(b). Renda Marine, 65 Fed. Cl. at 156. The Court opined that, "[t]o the extent that [Renda's] [Rule 15(b)] motion seeks to amend its complaint to include a claim involving the November 2002 final decision, that request is DENIED for lack of jurisdiction." Id. at 162.

## II. Renda's June 1, 2005 Motion To Modify The Court's April 19, 2005 Opinion And Order

On June 1, 2005, Renda filed "Plaintiff's Motion Requesting the Court's Modification of its April 19, 2005 Opinion and Order," which, in its June 6, 2005 Order, the Court construed as a motion for reconsideration of the Court's April 19, 2005 Opinion and Order. In that motion,

Renda requested that the Court modify its April 19, 2005 Opinion and Order and "hold that the contracting officer's November 26, 2002 'final decision' . . . is a nullity to the extent the November letter addresses or is premised on denial of the certified claims included in Renda's Complaint filed in this Court on April 11, 2002," citing Sharman Co., Inc. v. United States, 2 F.3d 1564 (Fed. Cir. 1993). Pl. Mot. Recon. 1.

The parties briefed that motion and the Court heard argument upon the motion on July 14, 2005. At the July 14 argument, the Court stated: "I don't see how this proceeding, which doesn't read [the November 26, 2002 contracting officer's decision], picks from the myriad of things that could be defects of that decision." Tr. 19(7-10). The Court noted that "[t]he ideal thing would have been to appeal [the contracting officer's decision] and then to sort the [Sharman] issue out in the proceeding." Tr. 21(13-15). The Court also was critical of Renda's request for, in effect, an advisory ruling as to the circumstance(s) under which the contracting officer's decision would be a legal nullity. Tr. 23(18-25)-24(1-5).

III. Renda's April 7, 2006 Motion To Modify The June 1, 2005 Motion To Modify The Court's April 19, 2005 Opinion And Order

In its motion "for leave to amend" the motion to modify the April 19, 2005 Opinion and Order and "to file a supplemental brief in support thereof," Renda requests that the Court decide whether the November 26, 2002 contracting officer decision is a nullity and should not be accorded finality under 41 U.S.C. § 605(b). Renda contends that the contracting officer's decision is a nullity for three reasons: (1) the decision allegedly concerns claims that were the subject of the pending litigation as of the time the decision was issued; (2) the decision was issued "as a result of gross mistake," which, allegedly, excuses Renda's failure to appeal the decision within twelve

months of Renda's receipt of the decision; and (3) the decision, allegedly, does not represent the independent decision of the contracting officer upon the claims addressed by the decision. See Pl. Supp. Br. 4-5.

According to Renda, "[t]o develop the relevant facts, Renda will likely need to take additional discovery, and there will likely be the need for a further hearing before this Court." Id. at 5. "Most importantly," Renda states, "the Government withheld documents concerning the decision-making process of the [contracting officer's] Final Decision on the ground of privilege" and "[t]hose documents should be produced, to determine whether the [contracting officer's] [l]etter was the decision of the [contracting officer], or whether it was rendered as a result of 'fraud or such gross mistake as would necessarily imply bad faith, or a failure to exercise an honest judgment.'" Id.

## ARGUMENT

### I. The Standards For Deciding A Motion For Leave To Amend A Pleading

RCFC 15(a) provides, in pertinent part, that "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served" and that, "[o]therwise, a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." "The decision whether to grant leave to amend is within the sound discretion of the trial court." Rockwell Automation, Inc. v. United States, ___ Fed. Cl. ____, 2006 WL 581035 (March 10, 2006), at 7. "Although Rule 15 states that leave to amend shall be 'freely given,' it may be denied where there is undue delay, bad faith, dilatory motive, a repeated failure to cure deficiencies, undue prejudice to the opponent, or where the amendment would be futile." Bower v. Jones, 978 F.2d 1004, 1008 (7th

Cir. 1992) (citing Foman v. Davis, 371 U.S. 178, 183 (1962)).[5] "The existence of any one of these criteria is sufficient to deny a motion to amend, the theory being that the amendment would not be necessary to serve the interests of justice under such circumstances." Alfa Laval Separation, Inc. v. United States, 47 Fed. Cl. 305, 312 (2000) (quoting Spalding & Son, Inc. v. United States, 22 Cl.Ct. 678, 680 (1991)).

II. Renda's Motion, Which Is Tantamount To A Motion For Leave To Amend The Complaint To Add A New Claim Seeking A Declaration That The November 26, 2002 Contracting Officer's Decision Is A Nullity And Not Final And Conclusive Under 41 U.S.C. § 605(b), Should Be Denied Because Renda Unduly Delayed In Seeking To Raise That Claim In These Proceedings.

The Federal Circuit has observed that, "[n]otwithstanding the view that [Rule 15(a)] is to be construed liberally, courts have not hesitated to deny motions to amend that have been filed after significant delay." Te-Moak Bands of Western Shoshone Indians v. United States, 948 F.2d 1258, 1262 (Fed. Cir. 1991). "Delay alone, even without a demonstration of prejudice, has thus been sufficient grounds to deny amendment of pleadings." Id. The party seeking to amend the pleading – Renda here – "bears the burden of showing that the delay was justified." Alfa Laval, 47 Fed. Cl. at 313; accord Cupey Bajo Nursing Home, Inc. v. United States, 36 Fed. Cl. 122, 132 (1996). "Without an offer of justification, delay alone suffices for denial of a motion for leave to amend." Alfa Laval, 47 Fed. Cl. at 313.

Renda is attempting to inject into this proceeding a challenge to the validity of a contracting officer's decision issued nearly 3-1/2 years ago on November 26, 2002. The Sharman issue

---

[5] In applying the Rules of the Court of Federal Claims, the Court "examines the general federal law interpreting the corresponding Federal Rule of Civil Procedure as persuasive." Wheeler v. United States, 11 F.3d 156, 157n.1 (Fed. Cir. 1993); accord Exxon Research and Engineering Co. v. United States, 44 Fed. Cl. 597, 599 (1999).

is based upon a comparison of the November 2002 contracting officer decision and the claims that are the subject of the complaint in this case. Renda possessed that information upon receipt of the contracting officer's decision in late November or early December 2002. Similarly, upon receipt of the contracting officer's decision, Renda possessed sufficient information to pursue an appeal to a board of contract appeals or to institute an action in this Court challenging the decision upon the grounds that it constitutes a "gross mistake" or that it does not represent the independent decision of the contracting officer.[6/]

Fact discovery in this case, except to the limited extent allowed by the Court's May 14, 2004 Order, closed on January 14, 2004. See September 10, 2003 Order. A four-week trial in this case concluded on April 7, 2005, one year to the day before Renda's present motion to add the new claim challenging the validity of the November 2002 contracting officer decision. The Court previously rejected as untimely a motion by Renda for leave to amend the complaint to add new claims, including a count challenging the validity of the November 2002 contracting officer decision. See July 27, 2004 Order. Renda has not even offered, much less demonstrated, a justification for its substantial delay in raising the new claim challenging the validity of the November 2002 contracting officer decision.[7/]

---

[6] Moreover, Renda possessed the information relied upon in its supplemental brief for those allegations, i.e., excerpts from depositions of Messrs. Thomas Benero and Eric Russek, in January 2004. Renda thus possessed all of the information upon which its present challenge to the validity of the contracting officer's decision is predicated 26 months ago.

[7] Renda states that its present motion that the Court "decide the merits of whether the [contracting officer's November 26, 2002] [l]etter is a nullity" is made "in light of the views expressed by the Court at [the July 14, 2005] oral argument, and in light of the Court's July 28, 2005, denial of Renda's differing site conditions claims . . . ." But, for the purpose of evaluating whether a party has unduly delayed in seeking to amend a pleading, the period of delay should be measured

(continued...)

III. Renda's Motion Should Be Denied Because Of The Prejudice To The Government That Would Result If Renda Were Permitted To Raise The New Claim As To The Validity Of The November 26, 2002 Contracting Officer Decision.

The attempt by Renda to raise the new claim concerning the validity of the November 2002 contracting officer decision should be rejected for the additional reason that permitting Renda to inject this claim into the proceedings at this late stage would result in prejudice to the Government. Renda states that this new claim will require additional discovery (including the discovery of documents concerning the decision-making process of the November 2002 contracting officer decision that allegedly are the subject of a claim of privilege[8/]) and a second trial. See Pl. Supp. Br. 5.

The refusal to permit a late-tendered amendment has been upheld upon the ground of undue prejudice where the amendment would require the reopening of discovery or a postponement of trial. For example, in Bell v. Allstate Life Insurance Co., 160 F.3d 452, 454 (8th Cir. 1998), the Eighth Circuit declined to disturb a district court's denial of a proposed amendment of the complaint where the amendment was sought after the discovery deadline and five weeks before the trial, the amendment would have required additional discovery by the parties, and the issues raised by the amendment involved different factual and legal issues than the allegations in

---

[7] (...continued)
from no later than the date upon which the party possessed the information upon which the new claim is predicated. Renda possessed the information upon which its new claim is based in January 2004. At any rate, Renda offers no explanation for the eight-month delay between July 28, 2005, and April 7, 2006, the date upon which the motion to add the new claim challenging the validity of the contracting officer's decision was filed.

[8] Renda does not specifically identify in its papers the documents relating to the decision-making process of the November 2002 contracting officer decision that it asserts were withheld from production by the Government during discovery in this litigation based upon a claim of privilege.

the original complaint. Similarly, in Acosta-Mestre v. Hilton International of Puerto Rico, Inc., 156 F.3d 49, 52 (1st Cir. 1998), the First Circuit sustained the district court's denial of a motion to amend the complaint in view of the prejudice that would have resulted to the defendants from the reopening of discovery and significant postponement of trial.

According to Renda, its new claim will require the reopening of discovery and another trial. Renda's belated attempt to raise the new claim concerning the validity of the November 2002 contracting officer decision, therefore, should be denied because of the substantial prejudice to the Government that would result from permitting the amendment.

## IV. Renda's Motion Should Be Denied Because Permitting Renda To Raise The New Claim Regarding The Validity Of The November 26, 2002 Contracting Officer Decision Would Be Futile.

### A. Futility As A Basis For Denying A Motion For Leave To Amend A Complaint

A third ground for denying Renda's attempt to raise the new claim challenging the validity of the November 26, 2002 contracting officer decision is futility of the amendment. "While our guiding principle is that leave to amend should be freely given, this principle is inapplicable where the amendment would prove futile." Williams v. United States Postal Service, 873 F.2d 1069, 1072 (7th Cir. 1989); accord FDIC v. Conner, 20 F.3d 1376, 1385 (5th Cir. 1994) ("leave to amend need not be granted when it would be futile to do so"). An amendment may be futile when it "fails to state a valid theory of liability" or "could not withstand a motion to dismiss." Bower, 978 F.2d at 1008; see also Middle Atlantic Utilities Co. v. S. M. W. Development Corp., 392 F.2d 380, 385 (2d Cir. 1968) ("It is normally proper for the trial judge to consider the statute of limitations on a motion to amend. To delay until there is a later motion to dismiss because the claim is time-barred would be a wasteful formality.").

For example, in Holland v. United States, 62 Fed. Cl. 395 (2004), a breach-of-contract action by shareholders of a thrift created in certain supervisory mergers, the shareholders sought leave to amend their complaint to assert that the claims of First Banks, Inc. (successor-in-interest to River Valley, the thrift involved in the relevant transactions) had been assigned to them by a Letter Agreement between the shareholders and First Banks. Id. at 398. The court held that if the Letter Agreement merely assigned the proceeds of the First Banks claims to the shareholders, the assignment was not an assignment of the claims themselves, and, in that case, the assignees (shareholders) would have no claim against the Government. Id. at 399. Alternatively, the court held that, if the Letter Agreement could be construed as having assigned the claims to the shareholders, the assignment nevertheless could not be enforced against the Government because the Agreement had not been executed in accordance with the Anti-Assignment Act. Id. at 401. The court, therefore, denied the shareholders' motion to amend the complaint as futile. Id.

B. Permitting Renda To Amend Its Complaint To Raise The New Claim Regarding The Validity Of The November 26, 2002 Contracting Officer Decision Would Be A Futility Because Review Of The Claim Is Precluded By 41 U.S.C. § 605(b).

(1) The CDA's Exclusive And Comprehensive Scheme For The Resolution Of Government Contract Disputes.

With the enactment of the CDA, "a new era in the resolution of Government contracts emerged." Wilner v. United States, 24 F.3d 1397, 1402 (Fed. Cir. 1994) (quoting Tuttle/White Constructors v. United States, 228 Ct. Cl. 354, 357, 656 F.2d 644, 646 (1981)). "The CDA exclusively governs Government contracts and Government contract disputes." Cecile Industries, Inc. v. United States, 995 F.2d 1052, 1055 (Fed. Cir. 1993). The CDA "clearly and comprehensively defines the procedures for all contractual disputes between the United States and private

contractors." Id.; accord Texas Health Choice, L.C. v. OPM, 400 F.3d 895, 898-99 (Fed. Cir. 2005) ("The purpose for centralizing the resolution of government contract disputes in the Court of Federal Claims, rather than in district court, is to ensure a national uniformity in government contract law."); see also Dalton v. Sherwood Van Lines, Inc., 50 F.3d 1014, 1017 (Fed. Cir. 1995) ("When the [CDA] applies, it provides the exclusive mechanism for dispute resolution; the [CDA] was not designed to serve as an alternative administrative remedy, available at the contractor's option.").

The CDA "provides alternative forums for challenging a [contracting officer's] final decision: a contractor may file an appeal with the appropriate board of contract appeals, 41 U.S.C. § 606, or appeal directly to the Court of Federal Claims, 41 U.S.C. § 609(a)(1)." Bonneville Associates v. United States, 43 F.3d 649, 653 (Fed. Cir. 1994). This is an "either-or choice of forum." Id.[9/] "Thus, once a contractor makes a binding election to appeal the [contracting officer's] final decision to a board of contract appeals or to the Court of Federal Claims, the contractor can no longer pursue its claim in the other forum." Id.; accord National Neighbors, Inc. v. United States, 839 F.2d 1539, 1542 (Fed. Cir. 1988); Santa Fe Engineers, Inc. v. United States, 230 Ct. Cl. 512, 515, 677 F.2d 876, 878 (1982).

---

[9] "The CDA has as one of its purposes the elimination of differences in the jurisdictions of the forums which decide Government contract disputes." Garrett v. General Electric Co., 987 F.2d 747, 749 (Fed. Cir. 1993). Proceedings before boards of contract appeal and in the Court of Federal Claims are de novo. Wilner, 24 F.3d at 1401-02; Assurance Co. v. United States, 813 F.2d 1202, 1206 (Fed. Cir. 1987). The CDA provides that a board "is authorized to grant any relief that would be available to a litigant asserting a contract claim in the United States Court of Federal Claims," 41 U.S.C. § 607(d) (2000), thereby creating "jurisdictional parity" between these two avenues of appeal. General Electric, 987 F.2d at 750.

(2) The Finality And Conclusiveness Of Contracting Officer's Decisions

If an appeal or suit "is not timely commenced as authorized by [the CDA]," "the contracting officer's decision on the claim shall be final and conclusive and not subject to review by any forum, tribunal, or Government agency . . . ." 41 U.S.C. § 605(b) (2000). Thus, "once the decision of the contracting officer becomes final on a government claim against the contractor, the merits of that decision cannot be judicially challenged." Seaboard Lumber Co. v. United States, 903 F.2d 1560, 1562 (Fed. Cir. 1990), cert. denied, 499 U.S. 919 (1991).

(3) The Statutes Of Limitations Applicable To Appeals Or Suits Under The CDA

Under the CDA, an appeal of a contracting officer's decision to a board of contract appeals must be commenced within 90 days from the date of the contractor's receipt of the decision. 41 U.S.C. § 606 (2000). Alternatively, "a contractor may bring an action directly on the claim in the United States Court of Federal Claims" and any such action "shall be filed within twelve months from the date of the receipt by the contractor of the decision of the contracting officer concerning the claim . . . ." Id. at § 609(a)(1),(3). These time limits for commencing an appeal to a board or a suit in the Court of Federal Claims are waivers of sovereign immunity that must be strictly construed. Hamza v. United States, 36 Fed Cl. 10, 13-14 (1996); Computer Products International, Inc. v. United States, 26 Cl. Ct. 518, 525 (1992).

The relevant portion of the CDA thus "provides that in order to bring an action in the [Court of Federal Claims], the complaint shall be filed within twelve months from the date of *receipt* by the contractor of the decision of the contracting officer concerning the claim." Shaver v. United States, 11 Cl. Ct. 594, 595 (1987) (emphasis in original). "Congress has set the twelve-month limit, and this court cannot and should not read into it exceptions and tolling provisions

Congress did not contemplate or authorize." Gregory Lumber Co. v. United States, 229 Ct. Cl. 762, 763 (1982); see also White Buffalo Construction, Inc. v. United States, 28 Fed. Cl. 145, 147 (1992) ("Because Congress legislatively mandated the twelve-month time period, it cannot be extended out of sympathy for particular litigants, even if this effects a seemingly harsh result[.]"). Accordingly, "[i]f the contractor does not begin an action within one year of the receipt of the final decision by the contracting officer, the Claims Court lacks the requisite jurisdiction to entertain the claim, and the contracting officer's decision is final and conclusive." Krueger v. United States, 26 Cl. Ct. 841, 844 (1992).[10/]

(4) Renda Did Not Commence An Action In The Court Of Federal Claims Regarding The November 26, 2002 Contracting Officer's Decision Within The Twelve-Month Time Limit Prescribed By 41 U.S.C. § 609(a)(3).

Under the CDA, "[r]eceipt is the 'critical event that starts the running of the limitations period.'" Borough of Alpine v. United States, 923 F.2d 170, 172 (Fed. Cir. 1991) (quoting Pathman Construction Co. v. United States, 817 F.2d 1573, 1577 (Fed. Cir. 1987)). The courts have interpreted receipt by the contractor to mean actual physical receipt of the contracting officer's decision by the contractor or his representative. See Riley & Ephriam Construction Co., Inc. v. United States, 408 F.3d 1369, 1372 (Fed. Cir. 2005); Borough of Alpine, 923 F.2d at 172; Educators Associates, Inc. v. United States, 41 Fed. Cl. 811, 814 (1998); Hamza, 36 Fed. Cl. at 14.

---

[10] In its supplemental brief, Renda argues, in support of the Court's jurisdiction to entertain its challenge to the validity of the November 2002 contracting officer decision, that "by the enactment of the [CDA], Congress intended that the Court of Federal Claims and the Federal Circuit constitute the Courts with the greatest expertise in government contract matters" and that, "[i]t is only logical that this Court, not any other court, resolve a question about the finality of a [contracting officer's] decision." Pl. Supp. Br. 2. We do not disagree that this Court and the Federal Circuit are best suited to resolving questions about the legality of a contracting officer's decision. The problem here is that the CDA only authorizes this Court (and, through its derivative appellate jurisdiction, the Federal Circuit) to resolve *timely* challenges to contracting officer decisions.

It is undisputed that Renda did not commence a timely appeal of the November 26, 2002 contracting officer's decision either to a board of contract appeals or to this Court. As the Court stated in its July 30, 2004 Order denying Renda's motion to amend the complaint to add a count challenging the validity of the November 2002 contracting officer decision, "[Renda] does not dispute either that it timely received the final decision or that it declined to exercise its appeal rights under the [CDA], in particular, to appeal the decision to an agency board of contract appeals . . . or to institute a proceeding in this court upon that claim." Renda Marine, 65 Fed. Cl. at 156 (quoting July 30, 2004 Order at 7).

(5) Assuming That The Doctrine Of Equitable Tolling May Be Invoked With Respect To The CDA's 12-Month Time Limitation For Commencing An Action Upon A Claim In The Court Of Federal Claims, This Doctrine Would Not Aid Renda.

In Irwin v. Department of Veterans Affairs, 498 U.S. 89, 95-96 (1990), the Supreme Court held: "[T]he same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States. Congress, of course, may provide otherwise if it wishes to do so." In Bailey v. West, 160 F.3d 1360, 1364 (Fed. Cir. 1998) (en banc), the Federal Circuit opined: "The rule we draw from Irwin is that the doctrine of equitable tolling, when available in comparable suits of private parties, is available against the United States, unless Congress has expressed its intent to the contrary. Irwin thus leaves us two questions: would equitable tolling be available between private litigants in [the claimant's] situation, and did Congress provide otherwise."

The Federal Circuit has not "decided whether equitable tolling applies to the time limitations in the [CDA] for challenging a contracting officer's decision." Bonneville Associates,

Ltd. v. United States, 165 F.3d 1360, 1365 (Fed. Cir. 1999).[11/] Court of Federal Claims decisions are divided upon that question. Compare Hamza, 36 Fed. Cl. at 14; Krueger, 26 Cl. Ct. at 525; Handel v. United States, 16 Cl. Ct. 70, 73 (1988); Shaver, 11 Cl. Ct. at 594 (noting that equitable tolling does not apply to CDA's twelve-month time limit, citing Gregory Lumber, a pre-Irwin precedent), with Janicki Logging Co., Inc. v. United States, 36 Fed. Cl. 338, 342 (1996), aff'd, 124 F.3d 226 (Fed. Cir. 1997) (Table) (CDA's twelve-month time limit is subject to equitable tolling, citing Irwin).

Even assuming for the sake of discussion that the CDA's 12-month time limit for challenging a contracting officer's decision were subject to equitable tolling, the doctrine would not apply in Renda's situation. The equitable tolling doctrine has been applied where the claimant can show that: (1) there was a defective pleading filed during the statutory period; (2) the claimant was induced or tricked by the Government's misconduct into allowing the filing deadline to pass; or (3) the claimant's injury was inherently unknowable. Christofferson v. United States, 64 Fed. Cl. 316, 326 (2005); Ewer v. United States, 63 Fed. Cl. 396, 401 (2005); Hickman v. United States, 43 Fed. Cl. 424, 427 n.4 (1999), aff'd, 232 F.3d 906 (Fed. Cir. 2000) (Table).[12/]

---

[11] In Wood-Ivey Systems Corp. v. United States, 4 F.3d 961, 964 n.4 (Fed. Cir. 1993), the Federal Circuit noted the argument made by the claimant that the CDA's 12-month time limitation is subject to equitable tolling, but did not reach it in view of the court's decision that the complaint in that case had been timely filed.

[12] A contracting officer's reconsideration of a decision upon a claim would *suspend* the finality of the decision, in which case, the 12-month limitation period contained in 41 U.S.C. § 609(a)(3) would begin to run upon the contractor's receipt of the reconsideration decision. Arono, Inc. v. United States, 49 Fed. Cl. 544, 548-52 (2001); Vepco of Sarasota, Inc. v. United States, 26 Cl.Ct. 639, 646 (1992), aff'd, 6 F.3d 786 (Fed. Cir. 1993) (Table); Summit Contractors v. United States, 15 Cl. Ct. 806, 809 (1988). Renda does not suggest, however, that, at any point, the contracting officer reconsidered his November 26, 2002 decision.

None of these conditions for applying the doctrine of equitable tolling is present here. Renda did not file a defective pleading raising the issue of the validity of the November 2002 contracting officer decision during the CDA's 12-month filing period and Renda does not suggest, much less show, that it was induced or tricked by Government misconduct into allowing the filing deadline to pass. Moreover, Renda's injury was not inherently unknowable: it received the November 26, 2002 contracting officer's decision containing the demand for $11.86 million. Renda's failure to commence a timely action in this Court with respect to the November 2002 contracting officer decision at best is a "garden variety claim of excusable neglect" to which the principles of equitable tolling do not extend. Irwin, 498 U.S. at 96; see also Bonneville, 165 F.3d at 1366 (contractor which untimely attempted to reinstate appeal to board of contract appeals did not establish a basis for equitable tolling of 90-day time limit in 41 U.S.C. § 606 where contractor's justification – that it mistakenly voluntarily dismissed its appeal rather than seeking a stay of the board proceedings on the erroneous assumption that it had the right to reinstate the appeal at any time within three years – was comparable to the "garden variety claim of excusable neglect" that Irwin held was insufficient to justify equitable tolling).

(6) Renda's Proposed Amendment To The Complaint Seeking A Determination Of The Validity Of The November 2002 Contracting Officer Decision Would Not Relate Back To The Date Of The Complaint.

RCFC 15(c)(2) provides that "[a]n amendment of a pleading relates back to the date of the original pleading when . . . the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." "The rationale of the 'relation back' doctrine, which is inextricably linked to the rationale of the statute of limitations, 'is that a party who has been notified of litigation concern-

ing a particular occurrence has been given all the notice that statutes of limitations were intended to provide.'" Stockton East Water District v. United States, 62 Fed. Cl. 379, 391-92 (2004) (quoting Baldwin County Welcome Center v. Brown, 466 U.S. 147, 149 n.3 (1984)). "The critical issue in Rule 15(c) determinations," thus, "is whether the original complaint gave notice to the defendant of the claim now being asserted." Moore v. Baker, 989 F.2d 1129, 1131 (11th Cir. 1993).

Stockton involved a dispute between plaintiffs, local government units, and the Bureau of Reclamation relating to agreements that involved the appropriation of water upon the completion of a dam constructed in California. 62 Fed. Cl. at 382. The plaintiffs initially filed a complaint in district court, alleging a taking, which action was transferred to the Court of Federal Claims. Id. The complaint filed in the Court of Federal Claims added a breach-of contract claim. The Court of Federal Claims, applying Rule 15(c), held that the breach-of-contract claim related back to the date of the original complaint filed in district court because, "[n]ot only does the breach of contract claim arise out of the same conduct, transaction, or occurrence that was pleaded in support of the takings claim, but all operative facts for both legal theories were made apparent" in the original complaint. Id. at 392. Similarly, in FDIC v. Bennett, 898 F.2d 477, 478 (5th Cir. 1990), the court held that, in a suit by FDIC claiming ownership rights in a parcel of real estate, a claim appearing in the amended complaint based upon a statutory right to redeem the property from its purchaser at a foreclosure sale related back to the date of the original complaint because "the transaction upon which the complaint is based is identical in both the original complaint and the amended complaint."

By contrast, in Gibson v. Resolution Trust Corp., 51 F.3d 1016 (11th Cir. 1995), the court declined to find that a new claim raised in an amended complaint related back to the date of the original complaint. In the amended complaint, the plaintiffs asserted that the actions of the Resolution Trust Corporation (RTC) in repudiating an agreement entered by a thrift for which RTC had become the conservator were taken pursuant to an unconstitutional appointment. 51 F.3d at 1026. The court held that the objection to the appointment was untimely because it had not been commenced within 30 days of the appointment, as required by 12 U.S.C. § 1464(d)(2)(B), which established the exclusive mechanism for challenging the appointment of a conservator. Id. The court dismissed the plaintiffs' contention that their illegal appointment claim was timely under the relation-back doctrine:

> Under that doctrine, amendments to complaints relate back to the original filing date when the issue was raised in the original complaint. In this case, however, the Appointments Clause issue had not been raised in plaintiffs' original complaint filed within 30 days of RTC's appointment as conservator. Therefore, the relation-back doctrine does not apply.

Id. at 1027; see also Moore, 989 F.2d at 1131 (issues alleged for the first time in amended complaint do not relate back; recovery on those issues is barred by statute of limitations if amended complaint filed after statute of limitations has run); Holmes v. Greyhound Lines, Inc., 757 F.2d 1563, 1566 (5th Cir. 1985) ("when new or distinct conduct, transactions, or occurrences are alleged as grounds for recovery, there is no relation back, and recovery under the amended complaint is barred by limitations if it was untimely filed").

Under these principles, Renda's proposed amendment to the complaint challenging the validity of the November 26, 2002 contracting officer's decision does not relate back to April 11,

2002, the date upon which the complaint was filed in this action. The complaint does not (and could not) mention the contracting officer's decision, which was not issued until seven months *after* the complaint was filed. Renda's proposed amendment focuses upon the status of the November 2002 contracting officer decision, i.e, its validity, whereas the complaint is addressed to affirmative claims for monetary relief under the differing site conditions clause contained in the contract for the Upper Bayou Project. The operative facts with respect to the differing site conditions claims that are the subject of the April 2002 complaint and the operative facts relating to Renda's challenge to the November 2002 contracting officer decision (seeking a declaration that the decision is a "nullity") are not the same. The conduct, transaction, or occurrence of which Renda now complains – the November 2002 contracting officer decision – is not addressed by the April 2002 complaint.

In short, the April 2002 complaint does not give notice to the Government of Renda's present challenge to the November 2002 contracting officer decision. Under Rule 15(c), therefore, Renda's proposed amendment to the complaint does not relate back to April 11, 2002, the date of the complaint.

C. The Alleged "Exceptions" To The Finality Rule Of 41 U.S.C. § 605(b) Identified By Renda

Renda asserts that "[t]he courts have recognized that there are exceptions to the general rule set forth in [41 U.S.C. § 605(b)] that a [contracting officer's] final decision is accorded finality if not timely appealed." Pl. Supp. Br. 2. We disagree and address each of the so-called "exceptions" identified by Renda below.

(1) Duress

The first "exception" to the "finality rule" identified by Renda is "duress imposed by a [contracting officer] on a contractor," citing Am-Pro Protective Agency, Inc. v. United States, 281 F.3d 1234 (Fed. Cir. 2002). See Pl. Supp. Br. 2. Am-Pro involved a contract action subject to the CDA that the Court of Federal Claims dismissed as untimely and holding, alternatively, that the Government was entitled to summary judgment based on a previously-executed release. Id. at 1236. The contractor asserted that neither the release nor the applicable limitations period barred its claim because it had executed the release under duress. Id. The Federal Circuit upheld the grant of summary judgment in favor of the Government without reviewing the dismissal for lack of jurisdiction under RCFC 12(b)(1), concluding that the contractor had not created a genuine factual issue about duress. Id. at 1236.

The opinion in Am-Pro contains the following remarks: "It is not disputed that Am-Pro did not timely file suit with respect to the 1992 claim. If we were to conclude that the failure to timely file could have resulted from duress, however, a plausible argument could be made for the equitable tolling of the statutory period." 281 F.3d at 1238. Contrary to Renda's assertion, this dicta does not purport to identify an exception to the finality provision of 41 U.S.C. § 605(b). It concerns, rather, a reason for equitable tolling of the limitations period established by 41 U.S.C. § 609(a)(3) – duress by a contracting officer, which would fall under the recognized equitable tolling category, discussed above, of being induced or tricked by the Government's misconduct into allowing the filing deadline to pass. The Federal Circuit, moreover, did not decide whether that circumstance would constitute a basis for equitable tolling, much less that equitable tolling may be invoked with respect to the time limit contained in section 609(a)(3). At any rate, Renda

does not contend that the 12-month limitations period established by section 609(a)(3) should be tolled on account of duress with respect to its challenge to the November 2002 contracting officer decision.

(2) Procedurally-Defective Contracting Officer Decision

The second "exception" to the "finality rule" identified by Renda is that "a [contracting officer's] decision that is procedurally defective cannot trigger the running of the one-year limitations period," citing Pathman Construction, Inc. v. United States, 817 F.2d 1573 (Fed. Cir. 1987). See Pl. Supp. Br. 3. Pathman, however, does not stand for the broad exception to the finality provision contained in 41 U.S.C. § 605(b) asserted by Renda.

In Pathman, the Claims Court had dismissed a contractor's CDA claim, holding that the limitations period for commencing an action in the Claims Court began to run when the claim was "deemed denied," pursuant to 41 U.S.C. § 605(c)(5), and dismissing the suit as untimely because it had not been filed within twelve months of such "deemed denial." 817 F.2d at 1574. The Federal Circuit disagreed, concluding that "the language of the [CDA], its legislative history, and its basic purpose demonstrate that, contrary to the conclusion of the Claims Court in this case, the twelve-month limitations period for bringing suit in the Claims Court does not begin to run until the contracting officer has issued his decision on the contractor's claim." Id. at 1576. Renda's proposed amendment to the complaint challenging the validity of the November 2002 contracting officer decision, by contrast, is not predicated upon the "deemed denial" of a claim.

In the course of the opinion in Pathman, the Federal Circuit noted that "[a] contracting officer's final decision that does not give the contractor adequate notice of its appeal rights is defective and therefore does not trigger the running of the limitations period." 817 F.2d at 1578.

Renda, however, does not contend that the November 2002 contracting officer decision did not adequately apprise Renda of its appeal rights under the CDA or that the decision does not otherwise comport with the CDA's requirements for a contracting officer's decision, i.e., that it be in writing, that it contain a statement of the reasons for the decision, and that it be furnished to the contractor. See 41 U.S.C. § 605(a) (2000).

(3) The *Sharman* Issue

The third "exception" to the "finality rule" identified by Renda is the rule announced in Sharman Co., Inc. v. United States, 2 F.3d 1564, 1571-72 (Fed. Cir. 1993), that, "[o]nce a claim is in litigation, the Department of Justice gains exclusive authority to act in the pending litigation" and "[t]hat exclusive authority divests the contracting officer of his authority to issue a final decision on the claim," by virtue of 28 U.S.C. §§ 516-20, and that any final decision on the claim issued during litigation was "without authority and consequently . . . a nullity." See Pl. Supp. Br. 3.[13/] We disagree that this constitutes an exception to the finality rule in 41 U.S.C. § 605(b).

On its face, 41 U.S.C. § 605(b) has a preclusive effect upon any contracting officer's decision consonant with the criteria established by 41 U.S.C. § 605(a) for such decisions that is not the subject of a timely appeal to a board or action in this Court, including a contracting officer's decision alleged to have been issued without the requisite authority. Section 605(b) unambiguously provides that "[t]he contracting officer's decision on a claim shall be final and

[13] Citing Sharman, Renda contends that the November 2002 contracting officer decision is a nullity because it was issued while the present litigation was pending and, allegedly, is a decision upon Renda's claims against the Government that are the subject of the complaint in this litigation. Our response to Renda's arguments in that regard are set forth in "Defendant's Response to Plaintiff's Motion for Reconsideration of [the] Court's April 19, 2005 Opinion and Order" dated June 20, 2005.

conclusive and not subject to review by any forum, tribunal, or Government agency, unless an appeal or suit is timely commenced as authorized by this chapter." Neither section 605(b) nor, for that matter, section 605(a) mentions a contracting officer's authority to issue a decision or otherwise distinguishes between valid and invalid decisions. Under the CDA, a contractor who believes that a contracting officer's decision is unauthorized *must* appeal the decision to a board of contract appeals or commence an action in the Court of Federal Claims within the time limits prescribed by the statute in order to avoid the preclusive effect of section 605(b). Otherwise, the contracting officer's decision "*shall* be final and conclusive and not subject to review by any forum, tribunal, or Government agency . . . ." (Emphasis added.)

This result is supported by United States v. Kasler Electric Co., 123 F.3d 341 (6th Cir. 1997). In Kasler, the contractor (Kasler) and the Veterans Administration entered a contract for installation of a fire alarm system at a VA hospital. The contracting officer issued a decision in 1987 terminating the contract for default. The contractor filed suit in the Claims Court in 1988 challenging the default termination. In 1990, during the pendency of that litigation, the contracting officer issued another decision determining excess reprocurement costs and demanding that the contractor pay those costs, which totaled $131,111.88. The Claims Court dismissed the suit in 1992 without prejudice for lack of subject matter jurisdiction, finding that Kasler had not submitted a CDA "claim" to the contracting officer, as required by the CDA. Id. at 342. Thereafter, in 1994, the Government filed an action in district court seeking a judgment to enforce the 1990 decision. The district court granted summary judgment in favor of the United States. Id. at 343.

On appeal, the contractor in Kasler contended that the 1990 contracting officer's decision regarding excess reprocurement costs was void when issued because the pending litigation in the

Claims Court divested the contracting officer of authority to issue a final decision on the matter, citing Sharman. 123 F.3d at 345. The Sixth Circuit held that the CDA precluded consideration of the lack-of-authority claim, except by a timely appeal to a board or a timely action in the Court of Federal Claims: "Because the language of 41 U.S.C. § 605(b) clearly imparts finality and unreviewability on a contracting officer's decision that is not properly appealed, and makes no mention of the contracting officer's authority to issue the decision, we hold that challenges to the existence of that authority, like the merits of the dispute, can only be pursued through the statutorily provided means. The district court, and this court on appeal, may inquire only as to the finality and unreviewability of the decision that was issued – i.e., whether the contractor received notice of a final decision, and whether it timely commenced an appeal or suit in one of the provided forums." Id. at 346.[14/]

(4) Gross Mistake

The fourth "exception" to the "finality rule" identified by Renda is that "a government official's decision resolving a contract dispute is not accorded finality if that decision is based on 'fraud or such gross mistake as would necessarily imply bad faith, or a failure to exercise an honest judgment . . . .'" See Pl. Supp. Br. 3. Renda contends that this alleged exception also applies to the November 2002 contracting officer decision. Pl. Supp. Br. 4 ("Renda believes there is significant evidence that the [contracting officer's] Letter was issued as a result of gross mistake and that its failure to appeal within one year is therefore excused.").

---

[14] Other courts similarly have confined their review of a contracting officer's decision as to which the Government seeks a judgment for purposes of enforcement to whether the contractor received the decision and, if so, whether a timely appeal of the decision was made to a board or the Court of Federal Claims. See United States v. Roarda, 671 F.Supp. 1084 (D. Md. 1987); United States v. Dabbs, 608 F.Supp. 507 (S.D. Miss. 1985).

We do not agree that a contractor may evade the preclusive effect of 41 U.S.C. § 605(a) when it can demonstrate that a contracting officer's decision is the product of a "gross mistake." Section 605(a) makes no exception for decisions issued as the result of a gross mistake and that would not be a recognized ground for tolling of the limitations period in 41 U.S.C. § 609(a)(3), assuming for the sake of discussion that the CDA's time limits for appeal are subject to equitable tolling.

Moreover, when Congress intends to provide that a decision is not final or conclusive and is subject to review for gross mistake, it knows how to do so. The CDA itself, with respect to the finality of board decisions, provides that, "[i]n the event of an appeal by a contractor or the Government from a decision by any agency board pursuant to [41 U.S.C. § 607], notwithstanding any contract provision, regulation, or rules of law to the contrary, the decision of the agency board shall be final and conclusive and shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious, or *so grossly erroneous as to necessarily imply bad faith*, or if such decision is not supported by substantial evidence." 41 U.S.C. § 609(b) (2000) (emphasis added); see also 41 U.S.C. § 608(d) (2000) ("A decision against the Government or the contractor reached under the small claims procedure shall be final and conclusive and shall not be set aside *except in cases of fraud*." (emphasis added)). No such exceptions to finality are called out in 41 U.S.C. § 605(b), however. A contracting officer's decision upon a claim that is not the subject of a timely appeal or suit "shall be final and conclusive and not subject to review by any forum, tribunal, or Government agency . . . ." Id.

The Supreme Court precedent cited by Renda does not support reading a "gross mistake" exception into the finality provision of section 605(b), either. Those decisions concern the vali-

dity of finality provisions contained in *pre-CDA* disputes clauses in Government contracts. They do not purport to construe or read an exception into a statutory provision concerning the finality of a contracting officer's decision upon a claim, such as 41 U.S.C. § 605(b).

In United States v. Wunderlich, 342 U.S. 98 (1951), for example, a *contractual* disputes clause provided that "all disputes concerning questions of fact arising under this contract shall be decided by the contracting officer subject to written appeal by the contractor within 30 days to the head of the department concerned or his duly authorized representative, whose decision shall be final and conclusive upon the parties thereto." Id. at 99 n.1. The Supreme Court noted that it had "consistently upheld the finality of the department head's decision, unless it was founded on fraud, alleged and proved" and that, by "fraud," the Court meant "conscious wrongdoing, an intention to cheat or be dishonest." Id. at 100. There being no allegation or finding of fraud in that case, the judgment of the Court of Claims in favor of the contractor, which was based upon a finding that the decision of the department head was "arbitrary," "capricious," and "grossly erroneous," was reversed. Id. at 100-01.[15]

---

[15] This result was not deemed desirable by Congress, which enacted the so-called "Wunderlich Act" (Pub. L. No. 356, 68 Stat. 81 (1954) (codified at 41 U.S.C. §§ 321, 322)), to overturn the Supreme Court's decision in Wunderlich. See Vista Scientific Corp. v. United States, 808 F.2d 50, 51 (Fed. Cir. 1986). Under the terms of the Wunderlich Act, the decision of an agency head (or his authorized representative, e.g., board of contract appeals) "in a dispute involving a question arising under [a] contract" "shall be final and conclusive unless the same is fradulent [sic] or capricious or arbitrary or so grossly erroneous as to imply bad faith, or is not supported by substantial evidence," 41 U.S.C. § 321, and "the decision of any administrative official, representative, or board" upon a question of law was not accorded finality, id. at § 322. As noted in Seaboard Lumber, 903 F.3d at 1565, "[t]he CDA, which followed the Wunderlich Act, further restricted the government's options on dispute resolution" by "mandat[ing] that the government had to include in its contracts the broader review provisions set out in the CDA, that is, the dual avenues of review either by appeal to a Board of Contract Appeals or by a direct access suit in the Court of Claims."

Wunderlich, moreover, did not concern the finality of a contracting officer's decision that was not timely appealed to an agency deciding official. In United States v. Joseph A. Holpuch Co., 328 U.S. 234 (1946), the Supreme Court held that the doors of the Court of Claims were closed to a contractor who neglected to exhaust the administrative appeal remedy under the standard contractual disputes clause involved in Wunderlich: "[The contractor] having failed to avail itself of the procedure created by Article 15 for the settlement of disputes arising under the contracts, it was precluded from bringing suit on such matters in the Court of Claims" and "[t]he Court of Claims erred in entertaining and deciding the claims involving those disputes." Id. at 243; accord Crown Coat Front Co. v. United States, 386 U.S. 503, 512 (1967); see also Schlesinger v. United States, 181 Ct. Cl. 21, 27-28, 383 F.2d 1004, 1008 (1967) ("[A] contracting officer's determination shall be considered final and conclusive unless an appeal is lodged within the 30-day period set out in the disputes clause. Appeals after such time cannot be entertained.").[16/]

Section 605(b) provides that, if an appeal or suit "is not timely commenced as authorized by [the CDA]," "the contracting officer's decision on the claim shall be final and conclusive and

---

[16] In Joseph A. Holpuch, the Supreme Court indicated that a failure to exhaust contractually-specified administrative remedies, including the appeal procedure, could be excused if they were shown to be "inadequate or unavailable." 328 U.S. at 240; see, e.g., New York Shipbuilding Corp. v. United States, 180 Ct. Cl. 446, 385 F.2d 427 (1967) (administrative remedy inadequate); Oliver-Finnie Co. v. United States, 150 Ct. Cl. 189, 279 F.2d 498 (1960) (administrative remedy unavailable). And, in Maney Aircraft Parts, Inc. v. United States, 202 Ct. Cl. 54, 60, 479 F.2d 1350, 1353 (1973), the Court of Claims held that a board of contract appeals "has the power and authority, in its discretion, for good cause shown, to waive the requirement that a contractor must file his appeal with the [b]oard within 30 days after he receives the decision of the contracting officer," observing that "[t]he 30-day requirement is contractual and not jurisdictional and may be tolled or excused by the [b]oard, in the exercise of its discretion, if the contractor has good cause for failing to file his appeal within such time period." By contrast, the procedures established by the CDA for challenging contracting officer's decisions, including the 12-month time limit at 41 U.S.C. 609(a)(3), are jurisdictional and may not be waived or otherwise disregarded.

not subject to review by any forum, tribunal, or Government agency . . . ." To construe section 605(b) as permitting a contractor who has not timely appealed a contracting officer's decision to nevertheless obtain judicial review of the merits of the decision simply by alleging that it is the product of a "gross mistake" would stand this provision on its head, creating an exception to the finality of a contracting officer's decision that swallows section 605(b)'s prohibition of review, judicial or otherwise, of any decision not timely appealed.

(5) The Contention That The November 2002 Decision Is Not The Decision Of The Contracting Officer

The fifth "exception" to the "finality rule" identified by Renda is that "a [contracting officer's] action is not valid if it was not the independent decision of the [contracting officer]." See Pl. Supp. Br. 3. Renda asserts that this "exception" applies to it, citing Darwin Construction Co. v. United States, 811 F.2d 593 (Fed. Cir. 1987), and Schlesinger v. United States, 182 Ct. Cl. 571, 390 F.2d 702 (1968). Pl. Supp. Br. 5.

Darwin and Schlesinger do not hold that a statutory time limit upon the commencement of a judicial proceeding with respect to the decision of a contracting officer that allegedly is not the "independent decision" of the contracting officer either does not begin to run or is tolled.[17]

[17] In Pacific Architects and Engineers, Inc. v. United States, 203 Ct. Cl. 499, 517-18, 491 F.2d 734, 744 (1974), a pre-CDA case, the Court of Claims stated: "[I]n entering into the contract it is fair to impute to the parties the intent that the determination [of an equitable adjustment of the contract price] be made by the contracting officer in the exercise of his own discretion. On the other hand, it is unreasonable to construe the requirement for decision by the contracting officer to preclude the obtaining of legal advice, and particularly where the contracting officer is not a lawyer. Even if an overly liberal grant by a contracting officer would not be reviewable on the Government's appeal, it would have to be assumed that the contracting officer like any other officer of the United States would do his best to follow the requirements of law. It was contemplated that after receiving recommendations, legal opinions and advice, in the end he put his own mind to the problems and render his own decisions. But there was no implied prohibition against (continued...)

Those decisions do not involve untimely challenges to contracting officer's decisions or address the finality of a contracting officer's decision that is not timely challenged. They do not even mention the finality provision of 41 U.S.C. § 605(b). Darwin and Schlesinger overturned default termination actions where the procuring agency either did not exercise the discretion required of it by the default termination article or did so unreasonably. Darwin, 811 F.2d at 596; Schlesinger, 182 Ct. Cl. at 581-84, 390 F.2d at 707-09.

CONCLUSION

For the foregoing reasons, plaintiff's motion for leave to amend its June 1, 2005 motion for reconsideration of the Court's April 19, 2005 Opinion and Order and to file a supplemental brief in support of that motion – tantamount to a motion for leave to amend the complaint to add a new count challenging the validity of the November 26, 2002 contracting officer decision upon Government claims – should be denied. The predicament in which plaintiff finds itself, i.e., the lack of an opportunity to test the validity of the November 2002 contracting officer decision in either of the fora designated by the CDA, is one of its own making. Plaintiff neglected to timely challenge that decision either by an appeal to a board of contract appeals or by a direct action in the Court of Federal Claims. The Court, consequently, is now precluded by 41 U.S.C. § 605(b) from reviewing the contracting officer's decision.

---

[17] (...continued)
his first obtaining or even agreeing with the views of others." (citations and internal quotation marks omitted). In J.A. Terteling & Sons, Inc. v. United States, 182 Ct. Cl. 691, 694, 390 F.2d 926, 927 (1968), the Court of Claims rejected the contractor's request for further proceedings to "determine whether the contracting officer actually devoted his personal and independent consideration to the decisions bearing his signature" where "[a]ll that the plaintiff has shown is that these decisions were prepared by a subordinate of the contracting officer and were adopted by the latter without change."

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/John E. Kosloske

JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-0282
(fax) (202) 514-8624

Attorneys for Defendant

OF COUNSEL:

MR. P. ALEX PETTY
Assistant District Counsel
Office of Counsel
Galveston District
U.S. Army Corps of Engineers
Galveston, TX

APRIL 24, 2006