# In the United States Court of Federal Claims

No. 02-306 C

(E-Filed: June 30, 2006)

| | |
|---|---|
| _____ ) | Motion for Reconsideration; |
| ) | Whether the CDA Bars Review |
| RENDA MARINE, INC., ) | of Allegedly Invalid Contracting |
| ) | Officer's Decision When |
| Plaintiff, ) | Review is Sought After More |
| ) | Than Twelve Months Have |
| v. ) | Elapsed "From the Date of the |
| ) | Receipt by the Contractor of the |
| ) | Decision of the Contracting |
| THE UNITED STATES, ) | Officer"; 41 U.S.C. § 609(a)(3); |
| ) | Whether Allegedly Invalid |
| Defendant. ) | Contracting Officer's Decision |
| ) | is "Final and Conclusive" Under |
| _____ ) | 41 U.S.C. § 605(b) |

Clarence T. Kipps, Jr., Washington, DC, for plaintiff.  Lisanne E.S. Cottington, Washington, DC, and Brian W. Erikson, Dallas, TX, of counsel.

John E. Kosloske, with whom were Peter D. Keisler, Assistant Attorney General, and David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.  P. Alex Petty, Office of Counsel, Galveston District, United States Army Corps of Engineers, Galveston, TX, of counsel.

## OPINION

HEWITT, Judge

The court has before it Plaintiff's Motion Request[i]ng the Court's Modification of Its April 19, 2005 Opinion and Order (Pl.'s Reconsid. Mot. or Motion for Reconsideration);[1] Defendant's Response to Plaintiff's Motion for Reconsideration of

---

[1]The court found that this filing "is most appropriately construed as a Motion for

(continued...)

Court's April 19, 2005 Opinion and Order (Def.'s Reconsid. Resp. or Reconsideration Response) accompanied by an appendix (Def.'s Reconsid. Resp. App.); Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Reconsideration of Court's April 19, 2005 Opinion and Order (Pl.'s Reconsid. Reply or Reply); Plaintiff's Motion for Leave to File a Supplemental Brief in Support of Its Motion to Modify the Court's April 19, 2005 Opinion (Pl.'s Mot. for Leave or Motion for Leave) with which was filed Plaintiff's Supplemental Brief in Support of Its Motion to Modify the Court's April 19, 2005 Opinion (Pl's Supp. Br. or Supplemental Brief); and Defendant's Response to Plaintiff's Motion for Leave to Amend Plaintiff's June 1, 2005 Motion to Modify the Court's April 19, 2005 Opinion and Order and to File a Supplemental Brief (Def.'s Supp. Br. Resp. or Supplemental Brief Response).  Plaintiff moves the court "to modify its April 19, 2005 Opinion and Order . . . to hold that the contracting officer's November 26, 2002 'final decision' . . . is a nullity to the extent [that] [the decision of the contracting officer] addresses or is premised on denial of the certified claims included in Renda's Complaint filed in this [c]ourt on April 11, 2002."  Pl.'s Reconsid. Mot. at 1.  Plaintiff also "moves the [c]ourt for leave to amend its Motion to Modify the Court's April 19, 2005 Opinion . . . to file the attached supplemental brief in support thereof."  Pl.'s Mot. for Leave at 1.  The court hereby GRANTS plaintiff's Motion for Leave and considers plaintiff's Supplemental Brief and defendant's Supplemental Brief Response in its disposition of plaintiff's Motion for Reconsideration.  For the following reasons, plaintiff's Motion for Reconsideration is DENIED.

I.      Background

        Between January and October of 2001, Renda Marine, Inc. (Renda) submitted a number of certified claims to Thomas Benero, Contracting Officer, Chief of the Contracting Division for the Army Corps of Engineers in Galveston, Texas, related to Renda's performance of Contract No. DACW64-99-C-0001, known as the Upper Bayou Project Contract (Upper Bayou Contract or Contract).  See Def.'s Reconsid. Resp. App. (Final Decision) at 8; Renda Marine, Inc.'s Memorandum of Contentions of Fact & Law (Pl.'s Memo.) at 2; PX 1614 (letter of November 6, 2001 from Mr. Benero to Renda acknowledging receipt of certified claim); PX 1615 (same); PX 1617 (same); JX 92 (same); PX 1619 (same but dated November 7, 2001).  As of April 2002, the contracting officer had not yet issued a final decision on any of Renda's certified claims.  See Complaint (Compl.) ¶ 17.  Accordingly, on April 11, 2002, Renda filed suit against the government under the Contract Disputes Act, 41 U.S.C. §§ 601-613 (2000) (CDA), seeking a total of $14,244,848 plus interest upon eight claims related to Renda's

[1](...continued)
Reconsideration."  Order of June 6, 2005 at 2.

performance of the Upper Bayou Contract.[2]  See Complaint (Compl.) at 1, 29.  Defendant filed its answer to plaintiff's complaint on July 25, 2002.  See Answer (Ans.).  On November 26, 2002 the contracting officer (CO) for the Upper Bayou Contract issued a "Final Decision" (Final Decision) upon six government counterclaims against Renda relating to the Upper Bayou Contract in the total amount of $11,860,016.  See Def.'s Reconsid. Resp. App. (Final Decision) at 1-4.  The Final Decision stated, in pertinent part:

> This is a final decision of the Contracting Officer.  This decision may be appealed to the Armed Services Board of Contract Appeals . . . .  If you decide to appeal, you must mail or . . . otherwise furnish written notice thereof to the Armed Services Board of Contract Appeals within 90 days from the date you received this decision. . . .  In lieu of appealing to the Armed Services Board of Contract Appeals, you may bring an action directly in the U.S. Court of Federal Claims . . . within 12 months of the date you receive this decision.

Id. at 5.  Renda did not appeal the CO's Final Decision to Armed Services Board of Contract Appeals (the Board), nor did it bring an action in this court in lieu of filing an appeal with the Board within twelve months of its receipt of the Final Decision on or around November 26, 2002.  See Def.'s Reconsid. Resp. at 3-4.

On July 1, 2004, more than nineteen months after the approximate date on which Renda received the CO's Final Decision, plaintiff filed a motion for leave in this court, pursuant to Rule 15(a) of the Rules of the Court of Federal Claims (RCFC), to amend its complaint in this case "to make the Contracting Officer's Final Decision 'a subject of Renda's complaint in this case.'"  Motion by Renda Marine, Inc., for Leave of Court to Amend Complaint (Mot. to Amend or Motion to Amend) at 2.  The Motion to Amend was accompanied by an Appendix ( Mot. to Amend App.).  The Motion to Amend sought

---

[2]Section 605(a) of the Contract Disputes Act, 41 U.S.C. §§ 601-613 (2000) (CDA), requires that "[a]ll claims by a contractor against the government relating to a contract . . . be in writing and . . . be submitted to the contracting officer for a decision."  41 U.S.C. § 605(a).  Where the amount of a claim exceeds $100,000, the claim must be certified by the contractor.  § 605(c)(1).  Section 605 also requires "[t]he contracting officer [to] issue his decisions in writing, and . . . [to] furnish a copy of the decision to the contractor."  § 605(a).  If the CO fails to issue a decision upon the contractor's claim within sixty days, the CDA provides that the contracting officer is deemed to have made a decision denying the claim, § 605(c)(1), (5), and authorizes the commencement of an appeal to an agency board of contract appeals (BCA), § 606, or an action brought directly in this court, § 609.

to amend the plaintiff's complaint with, inter alia, a count that "the Contracting Officer's Final Decision of November 26, 2002, is a nullity or is otherwise invalid" and requesting relief in the form of a delcaration by the court to that effect.  Mot. to Amend App. A ¶ 228.  On July 30, 2004, the court denied plaintiff's Motion to Amend, finding that "[p]laintiff's explanation for its belated challenge to the contracting officer's November 26, 2002 final decision is . . . unpersuasive."  Order of July 30, 2004 at 7.  The court noted that "[p]laintiff does not dispute either that it timely received the final decision or that it declined to exercise its appeal rights under the Contract Dispute[s] Act, in particular, to appeal the decision to an agency board of contract appeals or to institute a proceeding in this court upon that claim.  Id. (citing 41 U.S.C. §§ 606, 609(a)(1), (3) (2000)).  The court concluded:  "Because plaintiff has failed to establish that 'justice . . . requires' the proposed amendment of the complaint, plaintiff's motion is DENIED."  Id. (quoting RCFC 15(a)); see also Foman v. Davis, 371 U.S. 178, 182 (1962) (recognizing "undue delay . . . on the part of the movant" as a proper basis for denying a motion to amend a complaint under correlative Federal Rule of Civil Procedure (FRCP) 15(a)); Te-Moak Bands of W. Shoshone Indians of Nev. v. United States, 948 F.2d 1258, 1262-63 (Fed. Cir. 1991) ("Delay alone, even without a demonstration of prejudice, has thus been sufficient grounds to deny amendment of pleadings [under FRCP 15(a)]. . . . [T]he party seeking to amend must justify that request by more than invocation of the concept of the rule's liberality.").

On April 6, 2005, one day before the close of trial in this case, Renda filed Plaintiff's Motion for Trial Amendment (Motion for Trial Amendment), which the court construed as a motion to amend the complaint pursuant to RCFC 15(b).  Renda Marine, Inc. v. United States (Renda I), 65 Fed. Cl. 152, 153 (2005).  On April 19, 2005 the court denied plaintiff's Motion for Trial Amendment for lack of subject matter jurisdiction, finding that the motion sought to insert a claim into this case that Renda had not previously submitted as a certified claim to the contracting officer for decision.  Id. at 162.  The court also stated that "[i]t is not clear whether plaintiff's [Motion for Trial Amendment] is, in part, another attempt to have the court review the November 2002 contracting officer's decision."  Id.  To the extent that plaintiff's Motion for Trial Amendment was such an attempt, the court rejected it, explaining that,

> [a]t the close of trial, plaintiff's counsel was again advised by the court that the November 2002 contracting officer's decision was not before the court, whereupon plaintiff's counsel retorted, "Well, it should have been."  Trial Tr[anscript (Tr.)] at 5357:17.  It may indeed be true that the claim "should have been" before the court, but plaintiff has its own litigation strategy to blame for the circumstance that it is not.  Plaintiff's counsel admits that he was aware of the contracting officer's decision at or

4

near the time it was issued.  Arg[ument] Tr. at 17:12-13.  Plaintiff's counsel also admits that he expected defendant to bring the decision before the court in a counterclaim and that plaintiff made a conscious choice not to appeal the decision within the twelve-month statutory timeframe.  Id. at 16:22-17:1.  Plaintiff itself failed timely to appeal the November 2002 contracting officer's decision.  That decision is now "final and conclusive" and not reviewable by this court.  41 U.S.C. § 605(b).[3]

Id.  The court concluded, "R[CFC] 15(b) cannot be invoked to resurrect an otherwise time-barred claim and bring it within this court's jurisdiction.  To the extent that plaintiff's motion seeks to amend its complaint to include a claim involving the November 2002 final decision, that request is DENIED for lack of jurisdiction."  Id.

On June 1, 2005 plaintiff filed its Motion for Reconsideration, requesting that the court modify its April 19, 2005 Opinion and Order and "hold that the contracting officer's November 26, 2002 'final decision' . . . is a nullity to the extent the [Final Decision] addresses or is premised on denial of the certified claims included in Renda's Complaint filed in this [c]ourt on April 11, 2002.  Pl.'s Reconsid. Mot. at 1.  After responsive briefing on plaintiff's Motion for Reconsideration had concluded, the court heard oral arguments on plaintiff's Motion for Reconsideration on July 14, 2005.  On July 28, 2005 the court issued its trial opinion in this case (Trial Opinion), finding that plaintiff "failed to prove by a preponderance of the credible evidence that it is entitled to recover on its [differing site condition] claims."  Renda Marine, Inc. v. United States (Renda II), 66 Fed. Cl. 639, 721 (2005).[4]  On April 7, 2006, plaintiff explained in its Motion for Leave that,

> [a]t the time it filed its [Motion for Reconsideration], Renda anticipated that the [c]ourt would rule that Renda was entitled to recover on the differing site conditions claims, and that Renda would be able to raise the merits of

---

[3]Section 605(b) of the CDA states, in pertinent part:  "The contracting officer's decision on the claim shall be final and conclusive and not subject to review by any forum, tribunal, or Government agency, unless an appeal or suit is timely commenced as authorized by this chapter." 41 U.S.C. § 605(b).

[4]The Trial Opinion did not enter judgment for the  United States, however.  The court instead suggested certain further proceedings to be based on the record at trial.  Renda II, 66 Fed. Cl. at 721-722.  In its opinion filed on June 29, 2006 in this matter, the court entered its order terminating those further proceedings.

the . . . issue [of whether the contracting officer's Final Decision is a nullity] when the Government asserted its claims as an offset.

However, in light of the views expressed by the [c]ourt at oral argument, and in light of the [c]ourt's July 28, 2005[] denial of Renda's differing site conditions claims, Renda now requests that the [c]ourt decide the merits of whether the CO's Letter is a nullity, either because it was premised on issues already the subject of litigation before this [c]ourt, or for one of the other reasons that a purported CO final decision is not accorded finality under section 605(b) of the [CDA].

Pl.'s Mot. for Leave at 1. The court proceeds now to address plaintiff's Motion for Reconsideration and Supplemental Brief.

II.     Discussion

A.     Motions for Reconsideration

RCFC 59(a)(1) affords this court discretion to grant reconsideration "to all or any of the parties and on all or part of the issues, for any of the reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States." RCFC 59(a)(1) (2002); see Yuba Natural Res., Inc. v. United States, 904 F.2d 1577, 1583 (Fed. Cir. 1990). A showing in support of the motion "must be based 'upon manifest error of law, or mistake of fact, and is not intended to give an unhappy litigant an additional chance to sway the court.'" Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 300 (1999) (quoting Bishop v. United States, 26 Cl. Ct. 281, 286 (1992)). A party moving under RCFC 59 "does not persuade the court to grant . . . a motion [for reconsideration] by merely reasserting arguments which were previously made and were carefully considered by the court." Coconut Grove Entm't, Inc. v. United States, 46 Fed. Cl. 249, 255 (2000); see also Gelco Builders & Burjay Constr. Corp. v. United States, 369 F.2d 992, 1000 n.7 (Ct. Cl. 1966). Moreover, RCFC 59 is not intended to allow a movant to raise additional theories that it failed to advance in connection with the underlying decision that it moves the court to reconsider. Corrigan v. United States, 70 Fed. Cl. 665, 669 (2006); see Fru-Con, 44 Fed. Cl. at 301 ("Because '[t]he litigation process rests on the assumption that both parties present their case once, to their best advantage,' a strong public policy precludes a reconsideration motion based on evidence that was readily available at the time the original motion was heard." (quoting Aerolease Long Beach v. United States, 31 Fed. Cl. 342, 376 (1994))). "'Litigants should not, on a motion for reconsideration, be permitted to attempt an extensive retrial based on evidence which was manifestly available at [the] time of the hearing.'" Hill v. United States, 69 Fed. Cl. 467,

468 (2006) (quoting <u>Bishop</u>, 26 Cl. Ct. at 286); <u>see also</u> <u>Frietsch v. Refco, Inc.</u>, 56 F.3d 825, 828 (7th Cir. 1995) ("It is not the purpose of allowing motions for reconsideration to enable a party to complete presenting his case after the court has ruled against him.").

        B.     The Parties' Arguments

Plaintiff argues that "41 U.S.C. § 605(c)(5)[5][] gives this [c]ourt . . . exclusive jurisdiction over the certified claims included in Renda's Complaint and divests the contracting officer of authority to take action with respect to those claims." Pl.'s Reconsid. Mot. at 2. Thus, according to plaintiff, the CO's Final Decision – issued over seven months after plaintiff filed its complaint in this court – was not "final and conclusive" as the court found in its April 19, 2006 Opinion and Order, <u>see</u> <u>Renda I</u>, 65 Fed. Cl. at 156, but rather, was "invalid" or a "nullity" because "the contracting officer lacked authority to issue a final decision on Renda's certified claims that were properly before this [c]ourt." Pl.'s Reconsid. Mot. at 9-10.

Without citing any authority directly supporting this proposition, plaintiff argues that "Renda was not required to appeal an unauthorized contracting officer's decision." Pl.'s Reconsid. Reply at 2. And, because plaintiff did not appeal the CO's Final Decision within the statutory period provided by 41 U.S.C. § 609(a)(3),[6] plaintiff argues that "there are exceptions to the general rule set forth in section 605(b) . . . that a CO's final decision is accorded finality if not timely appealed." Pl.'s Supp. Br. at 2. Thus, plaintiff contends that the court "should examine whether any of the . . . exceptions applies to excuse Renda's failure to appeal the CO's [Final Decision] within one year." <u>Id.</u> According to plaintiff, "[t]he principal exception that applies to excuse Renda's failure to appeal the CO's [Final Decision] within one year is based on the <u>Sharman</u> case." <u>Id.</u> at 4. In addition, plaintiff alleges that an "exception concerning 'gross mistake' . . . applies to Renda." <u>Id.</u> Finally, plaintiff contends that an exception to the statutory period provided in section 605(b) for appeal may apply here because "there is a serious question as to

---

[5]Section 605(c)(5) of the CDA states, in pertinent part:  "Any failure by the contracting officer to issue a decision on a contract claim within the period required will be deemed to be a decision by the contracting officer denying the claim and will authorize the commencement of the appeal or suit on the claim as otherwise provided in this chapter."  41 U.S.C. § 605(c)(5).

[6]Section 609(a)(3) of the CDA states, in pertinent part, that actions in the Court of Federal Claims in lieu of appealing the decision of the contracting officer to an agency board "shall be filed within twelve months from the date of the receipt by the contractor of the decision of the contracting officer concerning the claim."  41 U.S.C. § 609(a)(3).

whether any of the claims asserted in the CO's [Final Decision] were actually the CO's decisions." Id. at 5.

Defendant responds that

the Government claims which are the subject of the November 2002 contracting officer's decision are not the "mirror image" of, or the same as, the equitable adjustment claims by Renda that are the subject of the complaint in this litigation.  Consequently, the filing of the complaint in this case did not divest the contracting officer of the authority to issue the November 2002 final decision.

Def.'s Reconsid. Resp. at 22.  In addition, defendant argues that,

[o]n its face, 41 U.S.C. § 605(b) has a preclusive effect upon any contracting officer's decision consonant with the criteria established by 41 U.S.C. § 605(a) for such decisions that is not the subject of a timely appeal to a board or action in this [c]ourt, including a contracting officer's decision alleged to have been issued without the requisite authority. . . .  Neither section 605(b) nor, for that matter, section 605(a) mentions a contracting officer's authority to issue a decision or otherwise distinguishes between valid and invalid decisions.  Under the CDA, a contractor who believes that a contracting officer's decision is unauthorized must appeal the decision to a board of contract appeals or commence an action in the Court of Federal Claims within the time limits prescribed by the statute in order to avoid the preclusive effect of section 605(b).

Def.'s Supp. Br. Resp. at 23-24.

As to plaintiff's contention that an exception to the statutory period provided in sections 605 and 609 exists where the CO's final decision is based on "gross mistake," defendant responds that "Section 605(a) makes no exception for decisions issued as the result of a gross mistake and [gross mistake] would not be a recognized ground for tolling of the limitations period in 41 U.S.C. § 609(a)(3)."  Id. at 26.  Finally, defendant argues that the authorities on which plaintiff relies do not support plaintiff's contention that the statutory time limit in sections 605 and 609 does not apply where the final decision of a CO is allegedly not the CO's "independent decision."  Id. at 29-30.  Defendant concludes:

The predicament in which plaintiff finds itself, i.e., the lack of an opportunity to test the validity of the November 2002 contracting officer

decision in either of the fora designated by the CDA, is one of its own
making.  Plaintiff neglected to timely challenge that decision either by an
appeal to a board of contract appeals or by a direct action in the Court of
Federal Claims.  The [c]ourt, consequently, is now precluded by 41 U.S.C.
§ 605(b) from reviewing the contracting officer's decision.

Id. at 30.

C.   Analysis

In summary, the court agrees with defendant.  Plaintiff has repeatedly attempted to
interject into this litigation the question of the validity of the CO's Final Decision of
November 2002 that was never appealed by plaintiff, and the court has consistently
rejected plaintiff's attempts.  See Renda I, 65 Fed. Cl. at 156-57 ("Notwithstanding the
court's determination that it lacks jurisdiction to review a contracting officer's final
decision that was not timely appealed, plaintiff attempted, without success, to bring the
decision before the court twice during pretrial proceedings, twice during trial, and again,
by indirection, in the motion presently pending before the court." (citing 41 U.S.C. §
605(b))) (footnotes omitted).  As the court explained in Renda I,

On the second day of the pretrial conference, February 23, 2005, plaintiff's
counsel raised the November 2002 decision as "an issue related to" the settlement of this
case:

> There is a legal impediment that we have run into that I think
> the court can help us with, and the problem that we have run
> into is that before we can begin any meaningful settlement
> discussions, the government feels that the government has a
> trump card, namely the contracting officer's final decision of
> November 26th, 2002, which was issued about seven months
> after Renda filed this lawsuit.  We feel as a matter of law that
> it is a legal nullity, and if the court could give us some
> guidance on that, and if the court would entertain some
> briefing, I think that it would become pretty clear, and then
> we could discuss settlement with some earnest, but–

[Pretrial Tr.] at 239:5-18.  The court rejected plaintiff's late-appearing
attempt to raise this jurisdictionally-barred issue in the guise of an
impediment to settlement:  "You have known at least since 2002 that you

> had this circumstance.  This is completely out of order. . . .  [I]f you have a
> vulnerability here, that is lawyering, and not settlement."  Id. at 239:20-25.

65 Fed. Cl. at 156 n.4.  The court declines to reconsider its previous rejections and
fashion an "exception" to the specific limitations period and concomitant finality rule
under the CDA for bringing an action in this court based on a CO's final decision.

> 1.    The Statute of Limitations for Appeal of a Contracting Officer's Final
>       Decision Under the CDA

As sovereign, the United States is "immune from suit save as it consents to be
sued."  United States v. Sherwood, 312 U.S. 584, 586 (1941).  "Statutes of limitations,
such as contained in the CDA, are 'waiver[s] of sovereign immunity and thus must be
strictly construed.'"  Hamza v. United States, 36 Fed. Cl. 10, 13-14 (1996) (quoting
Bowen v. City of New York, 476 U.S. 467, 479 (1986)).  Section 605(b) of the CDA
provides that a  CO's final decision on a contractor's claim "shall be final and conclusive
and not subject to review by any forum, tribunal, or Government agency, unless an appeal
or suit is timely commenced as authorized by this chapter."  41 U.S.C. § 605(b).  A
contractor who contests a contracting officer's decision has a choice between two
exclusive remedies:  it may appeal the decision to an agency board of contract appeals
(BCA) within ninety days from the date of receipt of the decision, 41 U.S.C. § 606, or it
may "bring an action directly on the claim in the United States Court of Federal Claims,"
41 U.S.C. § 609(a); see Seaboard Lumber Co. v. United States, 903 F.2d 1560, 1562
(Fed. Cir. 1990).  For a contractor that chooses the latter remedy, the CDA provides that
an action filed in the United States Court of Federal Claims "shall be filed within twelve
months from the date of the receipt by the contractor of the decision of the contracting
officer concerning the claim."  41 U.S.C. § 609(a)(3).  Actual physical receipt of the
contracting officer's decision is the critical event that starts the running of the statute of
limitations.  Borough of Alpine v. United States, 923 F.2d 170, 172 (Fed. Cir. 1991).
Timely filing provides the court with the requisite jurisdiction to allow adjudication of the
claim.  See Handel v. United States, 16 Cl. Ct. 70, 73 (1988).  On the other hand, "the
lack of timely filing renders the contracting officer's decision 'final and conclusive and
not subject to review by any forum . . . .'"  Hamza, 36 Fed. Cl. at 14 (quoting 41 U.S.C. §
605(b)); see also Seaboard Lumber, 903 F.2d at 1562 ("[O]nce the decision of the
contracting officer becomes final on a government claim against the contractor, the merits
of that decision cannot be judicially challenged."); Krueger v. United States, 26 Cl. Ct.
841, 844 (1992) ("If the contractor does not begin an action within one year of the receipt
of the final decision by the contracting officer, the Claims Court lacks the requisite
jurisdiction to entertain the claim, and the contracting officer's decision is final and
conclusive.").

As stated by this court's predecessor, "Congress has set the twelve-months limit, and this court cannot and should not read into it exceptions and tolling provisions Congress did not contemplate or authorize." Gregory Lumber Co. v. United States, 229 Ct. Cl. 762, 763 (1982). "Absent any express and unequivocal statutory basis, this court may not, under long established principles, waive or extend a statutory limitation on the sovereign's immunity to suit." Dico, Inc. v. United States, 33 Fed. Cl. 1, 4 n.3 (1993), aff'd, 48 F.3d 1199 (Fed. Cir. 1995). The court "cannot extend jurisdiction in the interest of equity." UNR Indus., Inc. v. United States, 962 F.2d 1013, 1023 (Fed. Cir. 1992) (en banc) (citing Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 818 (1988)); see also White Buffalo Constr., Inc. v. United States, 28 Fed. Cl. 145, 147 (1992) ("Because Congress legislatively mandated the twelve-month time period, it cannot be extended out of sympathy for particular litigants, even if this effects a seemingly harsh result."). Nor is the court "free to engraft exceptions on the statute of limitations. Should Congress so desire, it may lengthen the time for bringing suit against the government." Hart v. United States, 910 F.2d 815, 819 (Fed. Cir. 1990); see also id. at 818-19 ("The statute of limitations is jurisdictional in nature and, as an express limitation on the waiver of sovereign immunity, may not be waived."). Absent congressional action, the court cannot read into the CDA "exceptions" to the specific statutory time limit for bringing actions under the CDA in this court. See United States v. Kasler Elec. Co., 123 F.3d 341, 346 (6th Cir. 1997) ("The provisions of the CDA allowing a contractor to dispute the government's claims regarding a contract are specific, unambiguous, and exclusive; the statute clearly states that a contractor may seek review of a final decision only in a board of contract appeals or in the Court of Federal Claims. Absent commencement of such review within the prescribed period of time, the decision becomes impervious to any substantive review." (citing 41 U.S.C. §§ 605(b), 606, 609(a))).

> 2.    Whether Plaintiff Is Excepted From the Twelve-Month Statutory Time Limit Provided in the CDA for Bringing an Action in This Court Based on a Contracting Officer's Final Decision

Plaintiff does not dispute that it received the CO's Final Decision issued on November 26, 2002. Renda I, 65 Fed. Cl. at 156 (quoting Order of July 7, 2005 at 7). Plaintiff does not allege – nor could it – that the Final Decision did not adequately inform plaintiff of its appeal rights. See Def.'s Reconsid. Resp. App (Final Decision) at 5 (clearly and expressly informing plaintiff of its appeal rights and applicable limitations periods). Nor does plaintiff contend that it did file an appeal of the CO's Final Decision with the Board within ninety days of its receipt or that it brought an action in this court based on the CO's Final Decision within twelve months of its receipt. Accordingly, in the court's view, the inquiry is at an end and the court's conclusion in its April 19, 2005 Opinion and Order that the CO's Final Decision is "'final and conclusive' and not

reviewable by this court," <u>Renda I</u>, 65 Fed. Cl. at 162, should not be disturbed, <u>see</u> <u>W. Coast Gen. Corp. v. Dalton</u>, 39 F.3d 312, 315 (Fed. Cir. 1994) ("West Coast received the CO's decision denying its gas line claim on April 28, 1989.  The CO's decision set forth West Coast's appeal rights.  The appeal period thus commenced April 28, 1989.  West Coast's period for appealing to the Board ended in July 1989, and the period for filing a complaint in the Court of Federal Claims ended in April 1990.  Under the CDA, West Coast could no longer appeal after April 1990.  Thus, the Board properly dismissed West Coast's March 20, 1992 appeal.").

However, plaintiff argues that "[t]he courts have recognized that there are exceptions to the general rule set forth in section 605(b) of the CDA that a CO's final decision is accorded finality if not timely appealed."  Pl.'s Supp. Br. at 2.  The court proceeds now to address the "exceptions" to section 605(b) alleged by plaintiff to excuse its failure to bring an action in this court based on the CO's Final Decision within twelve months of its receipt.[7]

    a.    Whether <u>Sharman</u> Provides an Exception to the Twelve-Month Statutory Time Limit Provided in the CDA for Bringing an Action in This Court Based on a Contracting Officer's Final Decision

Plaintiff places its principal reliance on <u>Sharman Co. v. United States</u>, 2 F.3d 1564 (Fed. Cir. 1993), <u>overruled on other grounds by</u> <u>Reflectone, Inc. v. Dalton</u>, 60 F.3d 1572 (Fed. Cir. 1995) (en banc), to support its argument that the court should reconsider its April 19, 2005 Opinion and Order and excuse plaintiff's failure to appeal timely the CO's Final Decision.  <u>See</u> Pl.'s Supp. Br. at 4 ("The principal exception that applies to excuse Renda's failure to appeal the CO's [Final Decision] within one year is . . . based on the <u>Sharman</u> case.").  In <u>Sharman</u>, the plaintiff filed a complaint against the government in the United States Claims Court[8] on February 2, 1990, alleging, inter alia, entitlement to certain progress payments from the government under the plaintiff's contract with the United States Marine Corps.  2 F.3d at 1566-67.  Afterwards, on October 18, 1990, the contracting officer sent the plaintiff a "notice of the Contracting Officer's final decision"

---

[7]Plaintiff mentions five purported "exceptions" to the finality rule set forth in section 605(b) of the CDA.  However, plaintiff only argues that three of these exceptions apply to Renda <u>See</u> Pl.'s Supp. Br. at 4-5.  Accordingly, the court considers only these three.

[8]At the time that the plaintiff in <u>Sharman</u> initiated its action, the trial court was known as the "United States Claims Court."  As of October 29, 1992, pursuant to Title IX of the Federal Courts Administration Act of 1992, Pub. L. No. 102-572, 106 Stat. 4506, the Claims Court was renamed the "United States Court of Federal Claims."

regarding the return of the progress payments.  Id. at 1567.  After the trial court partially dismissed the case, Sharman amended its complaint on January 6, 1992 to include a specific challenge to the government's right to payment of the progress payments.  Id. at 1567-68.  The government then counterclaimed in the trial court for the progress payments.  Id. at 1568.  On June 11, 1992, the Claims Court entered judgment for the government on its counterclaim.  Id.  On appeal, the United States Court of Appeals for the Federal Circuit held that once a claim is the subject of litigation, the Justice Department has exclusive authority over the claim and the CO is divested of authority to issue a final decision on that claim.  2 F.3d at 1571-72.  Accordingly, the final decision regarding the progress payments issued by the CO during the litigation of that claim in the Claims Court was "issued without authority and consequently . . . a nullity."  Id. at 1572.  And, because there was no final decision "prior to the commencement of [the plaintiff's] suit, the Claims Court lacked jurisdiction to entertain the suit."  Id. at 1568 (quotation omitted).[9]

The Sharman court based its holding on 28 U.S.C. §§ 516-520 (2000), see Sharman, 2 F.3d at 1571, which states, in pertinent part, that "the conduct of litigation in which the United States . . . is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General," 28 U.S.C. § 516.  Based on this section, the Federal Circuit found that once a claim is "in litigation," the CO is divested of authority to issue a final decision on that claim because the Justice Department has exclusive authority over the claim.  Sharman, 2.F.3d at 1571-72.  The court reasoned as follows that the government's claim had been "in litigation" at the time the contracting officer purported to issue a final decision with respect to it:

> Sharman's original complaint was filed on February 2, 1990, alleging entitlement to the government's progress payments under a quantum meruit theory as part of its "reimburse[ment] . . . for the value of the work performed." . . .  [T]his asserted entitlement to the progress payments in

---

[9]Sharman has been overruled by Reflectone, Inc. v. Dalton, 60 F.3d 1572 (Fed. Cir. 1995) (en banc), but only on the point made by the court in Sharman that a claim is not a "claim" for purposes of 48 C.F.R. § 33.201 (2005), unless it was disputed at the time it was submitted to the CO.  See Reflectone, 60 F.3d at 1579, 1579 n.10 ("To the extent that Dawco and its progeny [citing page 1571 of Sharman in the footnote] have been read to also hold that, based on FAR 33.201, a 'claim' . . . must already be in dispute when submitted to the CO, they are hereby overruled.").  The holding for which plaintiff cites Sharman, however, was not affected by Reflectone and has been reaffirmed in subsequent Federal Circuit case law.  See, e.g., Case, Inc. v. United States, 88 F.3d 1004, 1009-10 (Fed. Cir. 1996).

> Sharman's original complaint is the same "claim" as stated by Sharman's amended complaint and the government's counterclaim, because in each case the "claim" alleges entitlement to the same money based on the same partial performance, only under a different legal label.  Therefore, the progress payment "claim" was in litigation between the parties as of the date that Sharman's original complaint was filed.
>
> . . . .
>
> Because this claim was effectively put in litigation by Sharman's original complaint and because the contracting officer had not issued a final decision as to either the government claim or the contractor's mirror image claim before the original suit was filed, the Claims Court did not have jurisdiction over either claim.

Id. at 1571-73 (first ellipsis in original); see also Case, Inc. v. United States, 88 F.3d 1004, 1010 (Fed. Cir. 1996) ("In Sharman, both the contractor's initial claim asserting entitlement to progress payments and the government's subsequent counterclaim for the return of progress payments involved precisely 'the same money based on the same partial performance, only under a different label.'  Thus, we referred to the contractor's claim as being the 'mirror image' of the government's claim." (quoting Sharman, 2 F.3d at 1573)).

    Contrary to plaintiff's assertions, the Sharman court did not hold that the rule that the CO is divested of authority to issue a final decision on a claim once that claim is the subject of litigation constitutes an "exception" to the twelve-month limitations period set forth in section 609(a)(3) of the CDA or the finality rule set forth in section 605(b) of the CDA.  See id. passim.  In fact, the twelve-month limitations period was not mentioned in Sharman and the Federal Circuit offered no opinion as to whether its holding could somehow be construed as carving out an "exception" to the clearly stated finality rule in section 605(b) of the CDA.  Cf. id. at 1571 n.10 ("Because claimed entitlement to the progress payments was at issue when the original complaint was filed, this is the time at which jurisdiction must be determined.  Therefore, . . . we need not address the effect of Sharman's later amendments to the complaint or the government's counterclaim and their relation to the October 1990 decision to determine whether the Claims Court had jurisdiction.").  In this court's view, the omission of such a discussion in Sharman is explained because, among other reasons, it could not be so construed.  See Hart, 910 F.2d at 819 ("Courts are not free to engraft exceptions on the statute of limitations.  Should Congress so desire, it may lengthen the time for bringing suit against the government."); Gregory Lumber, 229 Ct. Cl. at 763 ("Congress has set the twelve-months limit, and this

court cannot and should not read into it exceptions and tolling provisions Congress did not contemplate or authorize.").

Section 605(b) unambiguously provides that "[t]he contracting officer's decision on the claim shall be final and conclusive and not subject to review by any forum, tribunal, or Government agency, unless an appeal or suit is timely commenced as authorized by this chapter." 41 U.S.C. § 605(b). The plain language of the CDA clearly confers finality and unreviewability on a CO's decision that is not properly appealed within the statutory period provided. That finality is not limited by the CO's authority to issue such a decision or the validity of the CO's decision. Kasler, 123 F.3d at 346. The statute affords the opportunity to challenge the authority and/or validity of a decision, provided the challenge is made within the statutory period. If a challenge is not made within the statutory period, section 605(b) mandates that the CO's decision "be final and conclusive and not subject to review." 41 U.S.C. § 605(b). The court refuses to read into the CDA an exception to this clear finality rule. See Hamza, 36 Fed. Cl. at 15 ("With respect to actions filed under the CDA, Congress has limited th[e government's] waiver [of sovereign immunity] by virtue of the twelve month statute of limitations and only Congress can expand the extent to which consent has been given. Since the statute of limitations is a jurisdictional requirement, 'the court cannot waive it on grounds of policy or equity.' Accordingly, this court lacks the power to extend the statute of limitations beyond the twelve month period authorized by Congress." (quoting Computer Prods. Int'l, Inc. v. United States, 26 Cl. Ct. 518, 528 (1992))).

The court notes that absent from sections 605(b) and 609(a)(3) is any mention of the "validity" of a CO's decision or a CO's "authorization" to issue a decision. Section 605(b) does not state that a – "valid" or "authorized" – "contracting officer's decision on the claim shall be final and conclusive and not subject to review . . . unless an appeal or suit is timely commenced as authorized by this chapter." 41 U.S.C. 605(b). In addition, section 609(a)(3) does not state that "[a]ny action [challenging the decision of a contracting officer brought in the United States Court of Federal Claims] shall be filed within twelve months from the date of the receipt by the contractor of the" – "valid" or "authorized" – "decision of the contracting officer concerning the claim." 41 U.S.C. § 609(a)(3). The court declines to read these words into the CDA in order to fashion an exception to the twelve-month limitations period and the finality rule in the CDA that would permit it to consider the merits of an otherwise time-barred claim. See 2A Norman J. Singer, [Sutherland] Statutes and Statutory Construction § 46:01, at 113-118 (6th ed. 2000) (Singer) ("[W]hen the language of the statute is clear and not unreasonable or illogical in its operation, the court may not go outside the statute to give it a different meaning."); Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980) ("[T]he starting point for interpreting a statute is the language of the statute

itself."); Greyhound Corp. v. Mt. Hood Stages, Inc., 437 U.S. 322, 330 (1978) (same); Brown v. Dept. of Health and Human Servs., 920 F.2d 918, 920 (Fed. Cir. 1990) ("[A]bsent ambiguous language or clearly contrary legislative intent, a statute is construed in accordance with its plain meaning."); Skillo v. United States, 68 Fed. Cl. 734, 744 (2005) ("The canons of statutory interpretation require the court to consider first the plain language of the statute . . . .").

To be sure, the court must add that the circumstances in which plaintiff finds itself after having failed to appeal the CO's Final Decision are "particularly harsh," Renda II, 66 Fed. Cl. at 721, and that this case presents a difficult question:  whether the court may review – and determine to be a nullity – a CO's final decision that was not appealed within the specifically prescribed statutory period under the CDA because the CO allegedly lacked the authority to issue the final decision under Sharman.

The parties have not identified, and the court has not found, any binding or persuasive authority in this court, the Federal Circuit, or the United States Supreme Court addressing precisely this issue.  The Federal Circuit has noted that "an invalid contracting officer's decision may not serve as the basis for a CDA action."  Case, 88 F.3d at 1009 (citing United States v. Grumman Aerospace Corp., 927 F.2d 575, 579 (Fed. Cir. 1991)); see also id. ("A contracting officer's final decision is invalid when the contracting officer lacked authority to issue it.").  However, this observation begs the question of how a contractor is to determine in the first place whether a CO's final decision is "invalid" or whether the CO "lacked authority to issue it."  It is the court's view that, under the plain language of the CDA, a contractor obtains this determination by appealing an allegedly invalid or unauthorized final decision to the BCA within ninety days, 41 U.S.C. § 606, or by bringing action challenging such a final decision in this court within twelve months, 41 U.S.C. § 609(a)(3).  See, e.g., Medina Constr., LTD v. United States, 43 Fed. Cl. 537, 541-45 (1999) (addressing whether a CO's final decision was issued without authority because it was already the subject of pending litigation where challenge to that authority was made by the plaintiff within the twelve-month statutory period); see also Buse Timber & Sales, Inc. v. United States, 45 Fed. Cl. 258, 264 (1999) (addressing defendant's argument that the CO's final decision was issued without authority because it was already the subject of pending litigation where plaintiff filed an amended complaint challenging the final decision less than four months after CO issued it).

As a practical matter, to allow for an exception to these statutory time limits set forth in the CDA simply because the plaintiff's challenge is to the "validity" of the CO's decision or the CO's "authority" to issue it under Sharman, as opposed to the merits of the decision, potentially would open the door to confusion, delay, and prejudice to the government.  Indeed, as is underscored by the parties' extensive arguments on this issue,

16

compare Pl.'s Reconsid. Mot. at 2 ("The November letter addresses or is premised on a denial of Renda's certified claims before this [c]ourt and involves the same operative facts.") with Def.'s Reconsid. Resp. at 18-22 (arguing that "the government claims to which the November 26, 2002 [CO]'s decision is addressed are not the 'mirror image' of, or the same as, the claims by Renda that are the subject of the complaint in this case") (capitals omitted), the Sharman "mirror image" analysis, whereby courts are to determine whether a CO has issued a final decision on the same "claim" that is the "mirror image" of a claim already "in litigation" such that the final decision should be deemed a nullity, see Sharman, 2 F.3d at 1571, 1573; Case, 88 F.3d at 1010, can be difficult, fact-intensive, and highly contentious, see, e.g., Case, 88 F.3d at 1010-11; Buse Timber, 45 Fed. Cl. at 264-267.

Under these circumstances, a contractor should not be free to determine, on its own, that a final decision is necessarily "in litigation" and thus a nullity, without timely appealing the final decision to the BCA or timely filing an action challenging the final decision in this court as set forth under the CDA.  See 41 U.S.C. §§ 605(b), 606, 609(a)(3).  Yet this is precisely what Renda did here.  See Transcript (Tr.) of Oral Argument of April 13, 2005 at 16:17-22 (plaintiff's counsel, stating, "When we looked at the November 26, 2002, contracting officer's decision, . . . we saw it as the mirror image or the flip side of exactly the claims that we had already asserted against the government, and so those exact issues were already in play before the [c]ourt").  To hold otherwise would render uncertain and inconclusive a CO's final decision that was not challenged within the statutory period (or not challenged at all) for an undefined and potentially prejudicial length of time.  Cf. Kasler, 123 F.3d at 346 ("Holding that district courts may engage in inquiries as to the authority of a contracting officer at any given time would unnecessarily and unjustifiably mire district courts in precisely the kind of substantive review of government contract matters that the [CDA] seeks to limit to a special statutory scheme.").  Instead, as plainly stated in the CDA, if a contractor does not elect either of its options for appeal within the statutory period, the contracting officer's final decision – valid or not – "shall be final and conclusive and not subject to review by any forum, tribunal, or Government agency." 41 U.S.C. § 605(b); see Brown, 920 F.2d at 920 ("[A]bsent ambiguous language or clearly contrary legislative intent, a statute is construed in accordance with its plain meaning.").

The court has identified a line of cases in this court holding that the statute of limitations in the CDA is not triggered when a CO issues a final decision based on an uncertified claim (where the claim was required to be certified under the CDA) because the claim was not "properly submitted" and therefore the CO had no authority to issue a decision on the claim.  See United Construction Co. v. United States, 7 Cl. Ct. 47, 51 (1984) ("'If the "claim" to the contracting officer is not certified, it has not been "properly

submitted," so the contracting officer does not have authority to issue a decision.' A contracting officer's decision based on an uncertified claim cannot trigger the running of the limitations periods under the CDA, because such a decision has no life under the CDA apart from the underlying claim." (quoting Skelly & Loy v. United States, 685 F.2d 414, 419 (Ct. Cl. 1982))); H.H.O Co. v. United States, 12 Cl. Ct. 147, 160 (1987) (""[T]he contracting officer's denial of said claims in his October 26, 1983 decision is of no consequence.  Defendant's position that a contracting officer's decision on uncertified claims over $50,000 have vitality if not appealed or resubmitted within 12 months of receipt thereof is rejected.  Such a decision is a nullity and the limitations provision of section 609(a)(3) of the CDA is accordingly not activated."); Witherington Constr. Corp. v. United States, 45 Fed. Cl. 208, 213 (1999) (citing, inter alia, United Construction, Skelly & Loy, and H.H.O., and finding that, "[a]s these decisions indicate, the 12-month statute of limitations will not be triggered until receipt of a valid final decision on the monetary claims").  However, the facts essential to the holdings in this line of cases are not present in this case:  namely, the failure to certify a claim submitted to the CO as is required under the CDA for claims of more than the statutory amount.  See Def.'s Reconsid. Resp. App. (Final Decision) at 8 (stating that "the Contracting Officer issued 6 letters to [Renda] acknowledging receipt of various certified claims submitted by [Renda]"); Pl.'s Memo. at 2 ("When [d]efendant ignored the [Requests for Equitable Adjustment], Renda resubmitted them as Certified Claims."); see also 41 U.S.C. § 605(c)(1) ("For claims of more than $100,000, the contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable, and that the certifier is duly authorized to certify the claim on behalf of the contractor.").  Such a failure "taint[s] every 'decision' that follows."  Skelly and Loy, 685 F.2d at 419; see also id. ("In sum, any proceedings on an uncertified claim – under the CDA – are of no legal significance.  In such a case, as in this case, the review process simply has not begun.").  The factual circumstance addressed by these authorities – in which "the review process simply [never] beg[a]n" – is distinguishable from this case.

Although the court has not found any binding authority addressing whether the court may review – and determine to be a nullity under Sharman – a CO's final decision that was not appealed within the specifically prescribed statutory period under the CDA, the court has found persuasive authority from the United States Court of Appeals for the Sixth Circuit that addresses precisely this issue in United States v. Kasler Electric Co., 123 F.3d 341 (6th Cir. 1997).  In Kasler, the plaintiff and the Veterans Administration (VA) entered into a contract in 1982 for the installation of a fire system at a VA hospital. Id. at 342.  In 1987, the plaintiff received notice of a decision from the CO terminating the contract for default.  Id.  The contractor filed suit in the Claims Court in 1988

challenging the default termination.  Id.  In 1990, during the pendency of the Claims Court litigation, the CO issued another decision determining excess reprocurement costs and ordering the contractor to pay those costs.  Id.  The Claims Court dismissed the suit challenging the default termination in 1992 without prejudice for lack of subject matter jurisdiction, finding that Kasler had not submitted a CDA "claim" to the contracting officer as was required for jurisdictional purposes under the CDA.  Id.  Thereafter, in 1994, the United States filed an action in district court seeking a judgment to enforce the CO's 1990 decision.  Id. at 343.  The district court granted summary judgment in favor of the United States, holding that "the final decision was 'valid, final and unreviewable under [41 U.S.C.] § 609.'"  Id. (quotation omitted) (alteration in original).  The Sixth Circuit affirmed.  Id. at 350.

The Sixth Circuit in Kasler rejected the argument, made by the contractor, that "the final decision was void when issued in 1990 because the pending litigation in the Claims Court divested the contracting officer of authority to issue a final decision on the matter." Id. at 345 (noting that "Kasler bases its argument on Sharman"); see also id. ("Kasler contends that no decision rendered during the pendency of the litigation . . . was valid."). The court explained:

> The provisions of the CDA allowing a contractor to dispute the government's claims regarding a contract are specific, unambiguous, and exclusive; the statute clearly states that a contractor may seek review of a final decision only in a board of contract appeals or in the Court of Federal Claims.  41 U.S.C. §§ 605(b), 606, 609(a).  Absent commencement of such review within the prescribed period of time, the decision becomes impervious to any substantive review.  41 U.S.C. § 605(b).
>
> . . . .
>
> Because the language of 41 U.S.C. § 605(b) clearly imparts finality and unreviewability on a contracting officer's decision that is not properly appealed, and makes no mention of the contracting officer's authority to issue the decision, we hold that challenges to the existence of that authority, like the merits of the dispute, can only be pursued through the statutorily provided means.  The district court, and this court on appeal, may inquire only as to the finality and unreviewability of the decision that was issued – i.e., whether the contractor received notice of the final decision, and whether it timely commenced an appeal or suit in one of the provided forums.

Id. at 346.  The court finds the Sixth Circuit's analysis to be persuasive, and in accordance with the express provisions and plain meaning of the CDA.

Here, the CO's Final Decision may well have been on "claims" that were the "mirror image" of the claims "in litigation" before this court.  Compare Def.'s Reconsid. Resp. App. (Final Decision) at 8 (noting, in the final paragraph of the "Findings of Fact," the "[b]reakdown of [the certified] claims [submitted to the CO] and dollar amounts") with Compl. at 29 (summarizing claims brought in this court and stating the same claims with the same dollar amounts (less one payment on Flare Area claim)).  However, this issue was not raised within the specifically prescribed statutory period under the CDA and thus was never properly before the court.  The time and place to challenge the authority of the CO to issue the Final Decision was within ninety days of plaintiff's receipt of the Final Decision in the Board, 41 U.S.C. § 606, or within twelve months of plaintiff's receipt of the Final Decision in this court, 41 U.S.C. § 609(a)(3).  Plaintiff failed to do either, and this failure is fatal to plaintiff's challenge.  The government has not waived its sovereign immunity with respect to challenges of a CO's final decision lodged after the prescribed statutory period has expired, and the court refuses to fashion an exception to this statutory period absent Congressional action or authority to do so.  See Hart, 910 F.2d at 819 ("Courts are not free to engraft exceptions on the statute of limitations.  Should Congress so desire, it may lengthen the time for bringing suit against the government."); Gregory Lumber, 229 Ct. Cl. at 763 ("Congress has set the twelve-months limit, and this court cannot and should not read into it exceptions and tolling provisions Congress did not contemplate or authorize.").  Accordingly, the court declines to rule on the validity of the CO's Final Decision, and plaintiff's arguments based on Sharman do not persuade the court to reconsider the court's April 19, 2005 Opinion and Order finding that the Final Decision "is now 'final and conclusive' and not reviewable by this court."  Renda I, 65 Fed. Cl. at 162 (quoting 41 U.S.C. § 605(b)); accord Kasler Elec., 123 F.3d at 346.

        b.      Whether the Contracting Officer's Alleged "Gross Mistake" Provides an Exception to the Twelve-Month Statutory Time Limit Provided in the CDA for Bringing an Action in This Court Based on a Contracting Officer's Final Decision

Plaintiff states that it "believes there is significant evidence that the CO's [Final Decision] was issued as a result of gross mistake and that its failure to appeal within one year is therefore excused."  Pl.'s Supp. Br. at 4.  Plaintiff provides no authority in support of the proposition that the "gross mistake" of a CO in issuing a decision on a contractor's claim excuses the contractor from timely appealing the CO's decision.  See id. at 3-4.  The reason plaintiff provides no authority in support of this proposition is that such authority does not exist.  "Because Congress legislatively mandated the twelve-month

time period, it cannot be extended out of sympathy for particular litigants, even if this effects a seemingly harsh result." White Buffalo Constr., 28 Fed. Cl. at 147. If Congress had wanted to provide an exception to the twelve-month statute of limitations in section 609(a)(3) or the finality rule in section 605(b) for "gross mistake" on the part of the CO, it would have done so.[10] Absent such congressional action, regardless of whether or not the CO's Final Decision was made as a result of "gross mistake," the court may not review the Final Decision because the twelve-month period had indisputably expired before plaintiff raised its challenge in this court. See 41 U.S.C. §§ 605(b), 609(a)(3); Hart, 910 F.2d at 819; Gregory Lumber, 229 Ct. Cl. at 763.

> c.    Whether the Contracting Officer's Lack of Independence Provides an Exception to the Twelve-Month Statutory Time Limit Provided in the CDA for Bringing an Action in This Court Based on a Contracting Officer's Final Decision

Plaintiff argues that, "[i]n light of the testimony of the CO that is contrary to some of the facts asserted in the CO's [Final Decision], as well as the other factual errors in that [Final Decision], there is a serious question as to whether any of the claims asserted in the CO's [Final Decision] were actually the CO's decisions." Pl.'s Supp. Br. at 5. According to plaintiff, if they are not, "the decision of the contracting officer . . . is invalid" and

---

[10]Indeed, as pointed out by defendant, Congress knows how to draft exceptions to finality rules when it wishes to do so:

> The CDA itself, with respect to the finality of board decisions, provides that, "[i]n the event of an appeal by a contractor or the Government from a decision by any agency board pursuant to [41 U.S.C. § 607], notwithstanding any contract provision, regulation, or rules of law to the contrary, the decision of the agency board . . . on any question of fact shall be final and conclusive and shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence." 41 U.S.C. § 609(b) (2000) (emphasis added); see also 41 U.S.C. § 608(d) (2000) ("A decision against the Government or the contractor reached under the small claims procedure shall be final and conclusive and shall not be set aside except in cases of fraud." (emphasis added)). No such exceptions to finality are called out in 41 U.S.C. § 605(b), however. A contracting officer's decision upon a claim that is not the subject of a timely appeal or suit "shall be final and conclusive and not subject to review by any forum, tribunal, or Government agency[]." [41 U.S.C. § 605(b)].

Def.'s Supp. Br. Resp. at 26 (first alteration in original).

plaintiff is excepted from complying with the statute of limitations for challenging the CO's Final Decision.  Id.  Again, plaintiff provides no authority in support of this purported "exception" to the statute of limitations in the CDA.  See id. at 3, 5. Accordingly, the court declines to read into the statute such an exception and does not reach the merits of plaintiff's contention.  See Hart, 910 F.2d at 819; Gregory Lumber, 229 Ct. Cl. at 763.

Plaintiff was on notice of any "factual errors" in the final decision when it received it on or around November 26, 2002.  Under the clear and specific procedure set forth in the CDA and communicated to plaintiff in the Final Decision, plaintiff could have challenged the alleged "factual errors" in the Final Decision by appealing it to the Board within ninety days, or by bringing an action in this court within twelve months.  Plaintiff failed to do so.  The court's inquiry is therefore at an end.

     d.     Conclusion

For the foregoing reasons, the court finds that plaintiff is not excepted from the twelve-month statutory time limit provided in section 609(a)(3) of the CDA for bringing an action in this court based on the CO's Final Decision, 41 U.S.C. § 609(a)(3), and that plaintiff is not excepted from the clear and explicit finality rule provided in section 605(b) of the CDA mandating that the CO's Final Decision be "final and conclusive" and unreviewable by this court if an appeal or suit is not timely commenced, 41 U.S.C. 605(b).

III.    Conclusion

For the foregoing reasons, plaintiff's Motion for Reconsideration is DENIED.  The court's April 19, 2005 Opinion and Order remains in full force and effect.  The foregoing resolves all outstanding issues in this case.[11]  For the reasons stated in the court's Trial Opinion and opinions and orders of the court issued thereafter, the Clerk of the Court is hereby directed to ENTER JUDGMENT for defendant.  No costs.

     IT IS SO ORDERED.

                              s/ Emily C. Hewitt
                              EMILY C. HEWITT
                              Judge

---

[11]The court notes the existence of several outstanding motions relating to pretrial and trial proceedings.  See Docket Nos. 62, 64, 88, 89, 129, 165 and 191.  All such motions, to the extent not disposed of in pretrial and trial proceedings, are MOOT.