ORIGINAL

*United States Court of Appeals for the Federal Circuit*

FILED
MAR 18 2008
U.S. COURT OF FEDERAL CLAIMS

2006-5127

RENDA MARINE, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

# *Judgment*

*ON APPEAL from the* UNITED STATES COURT OF FEDERAL CLAIMS

*in CASE NO(S).* 02-CV-306

*This CAUSE having been heard and considered, it is*

*ORDERED and ADJUDGED:* **AFFIRMED**

*ENTERED BY ORDER OF THE COURT*

*DATED* DEC 11 2007

*Jan Horbaly, Clerk*

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT IS A TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE.
UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
By: Date: 3/18/08

ISSUED AS A MANDATE: MAR 18 2008

# United States Court of Appeals for the Federal Circuit

2006-5127

RENDA MARINE, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Terry L. Salazar, Quilling Selander Cummiskey Lownds, of Dallas, Texas, argued for plaintiff-appellant.

John E. Kosloske, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Peter D. Keisler, Acting Attorney General and Jeanne E. Davidson, Director. Of counsel on the brief was P. Alex Petty, Assistant District Counsel, Office of Counsel, United States Army Corps of Engineers, of Galveston, Texas.

Appealed from: United States Court of Federal Claims

Judge Emily C. Hewitt

# United States Court of Appeals for the Federal Circuit

2006-5127

RENDA MARINE, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

---

DECIDED: December 11, 2007

---

Before SCHALL, Circuit Judge, PLAGER, Senior Circuit Judge, and MOORE, Circuit Judge.

SCHALL, Circuit Judge.

This is a government contract case. Renda Marine, Inc. ("Renda"), entered into Contract No. DACW64-99-C-0001 ("contract") with the United States Army Corps of Engineers ("Corps") for the dredging of a portion of the Houston-Galveston Navigation Channel ("navigation channel"). The contract was governed by the Contract Disputes Act of 1978, as amended ("CDA"). 41 U.S.C. §§ 601–13 (2000). Upon completion of the dredging work, Renda submitted various claims to the contracting officer ("CO") seeking additional compensation under the contract. Following the denial of those

claims, Renda filed suit in the United States Court of Federal Claims pursuant to 41 U.S.C. § 609(a)(1). On July 28, 2005, following a trial, the Court of Federal Claims issued a decision holding that Renda was not entitled to recover on its claims. Renda Marine, Inc. v. United States, 66 Fed. Cl. 639 (2005) ("Merits Decision"). Subsequently, on June 30, 2006, the court issued a decision denying Renda's motion for reconsideration of certain prior rulings of the court. Renda Marine, Inc. v. United States, 71 Fed. Cl. 782 (2006) ("Reconsideration Decision"). In those prior rulings, the court had denied Renda's motion for leave to amend its complaint to challenge a decision of the CO asserting government claims against Renda. The court did so on the ground that Renda's challenge to the CO's decision was untimely. Following its denial of Renda's motion for reconsideration, the Court of Federal Claims entered final judgment in the case in favor of the United States. Renda has timely appealed from that judgment. We affirm.

BACKGROUND

I.

Renda is a marine dredging contractor. Under the contract, it was required to increase the depth of the navigation channel to -45 feet Mean Low Tide ("MLT"). Merits Decision at 657. This means that the channel had to be dredged to a depth 45 feet below its level at MLT.

During the period between January and October of 2001, Renda submitted various claims to the CO, including seven differing site condition claims. Reconsideration Decision at 784. After its claims were denied, on April 11, 2002, Renda filed suit in the Court of Federal Claims. Id. In its suit, Renda challenged the

CO's denial of its seven differing site condition claims, as well as the CO's denial of an additional claim that was based upon the Corps' alleged constructive modification of the contract. See Merits Decision at 642. Based upon its claims, Renda sought additional compensation under the contract in the total amount of $14,244,848. Id.

During the period between February 28, and April 7, 2005, the Court of Federal Claims conducted a trial on Renda's eight claims. Id. at 643. Thereafter, on July 28, 2005, the court issued a decision in favor of the government, holding that Renda was not entitled to recover on any of its claims. Id. at 721.

II.

On November 26, 2002, while Renda's suit was pending in the Court of Federal Claims, the CO issued a final decision under the contract asserting six separate government claims against Renda, in the total amount of $11,860,016. Reconsideration Decision at 784. In his final decision, the CO informed Renda that it had the right to appeal the decision to the Armed Services Board of Contract Appeals ("ASBCA") within 90 days of receipt of the decision, see 41 U.S.C. § 606, or to initiate an action in the Court of Federal Claims within twelve months of receipt of the decision, see id. § 609(a)(3). Reconsideration Decision at 784.

Renda received the CO's final decision on or about November 26, 2002. Id. at 784–85. Thus, it had until February 24, 2003 to challenge the decision in the board of contract appeals and until November 26, 2003 to do so in the Court of Federal Claims. Renda, however, did not pursue either course. Instead, on July 1, 2004, roughly nineteen months after the approximate date on which it received the final decision, it sought leave to amend its complaint in the ongoing Court of Federal Claims litigation in

order to challenge the validity of the decision there. Id. at 785. The Court of Federal Claims denied Renda's motion on July 30, 2004, on the ground that Renda's challenge to the CO's decision was untimely. Id. Subsequently, on April 19, 2005, the court denied a second motion by Renda to amend its complaint to challenge the CO's decision, again on the ground that Renda's challenge to the decision was untimely. Id.

On June 1, 2005, following the completion of trial, but prior to the issuance of the Merits Decision, Renda sought reconsideration of the Court of Federal Claims' decision denying its motion for leave to amend its complaint. Id. at 786. In its motion, Renda asserted that the government claims in the CO's November 26, 2002 decision were related to the claims in Renda's suit in the Court of Federal Claims. Starting from this premise and relying upon our decision in Sharman Co. v. United States, 2 F.3d 1564 (Fed. Cir. 1993), overruled on other grounds by Reflectone, Inc. v. Dalton, 60 F.3d 1572 (Fed. Cir. 1995) (en banc), Renda argued that its suit divested the CO of authority to render a final decision on the government's claims, thereby rendering the CO's November 26, 2002 decision a nullity inasmuch as it issued after the initiation of litigation by Renda. Reconsideration Decision at 786. On June 30, 2006, the court denied Renda's motion, holding that, because Renda had failed to appeal the CO's final decision within the twelve-month period set forth in the CDA, 41 U.S.C. § 609(a)(3), Renda was precluded from challenging the validity of the decision. Reconsideration Decision at 797.

On June 30, 2006, based upon the Merits Decision and the Reconsideration Decision, the court entered final judgment in favor of the United States. As noted,

Renda has timely appealed from that judgment. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

DISCUSSION

On appeal, Renda challenges both the Merits Decision and the Reconsideration Decision. As far as the former is concerned, Renda argues that the Court of Federal Claims erred insofar as it denied Renda compensation for one of its seven differing site condition claims. That claim involved a section of the navigation channel known as the "Flare Area." Turning to the Reconsideration Decision, Renda argues that the Court of Federal Claims erred in denying it leave to amend its complaint in order to challenge the CO's November 26, 2002 final decision. We address these contentions in turn.

I.

A.

We consider first Renda's differing site condition claim. The Flare Area was a portion of the navigation channel where the width of the channel "flare[d] out" from 400 to 600 feet to permit safe passage of ships. Merits Decision at 685 n.52. While performing dredging work in the Flare Area, Renda encountered "stiff clays" in locations where it claimed it expected to encounter "soft clays." Id. at 686. The presence of stiff clays allegedly increased Renda's cost of performing under the contract, leading Renda to seek some $4.7 million in additional compensation and approximately 100 additional days in contract performance time. Id. Ultimately, the Corps awarded Renda an additional $3.1 million and extended the time for contract performance by 56 days. Id. at 687. After the CO denied Renda's claim for the $1.6 million difference between Renda's original claim and what the Corps had awarded it, Renda included the Flare

Area claim in its suit in the Court of Federal Claims, where it sought to recover $900,000 additional compensation for the claim. Id.

In the Court of Federal Claims, Renda presented the Flare Area claim as based upon an alleged Type I differing site condition. A Type I differing site condition arises when the conditions encountered differ from what was indicated in the contract documents. See FAR 52.236-2, 48 C.F.R. § 52.236-2(a)–(b) (2006). It is distinguished from a Type II differing site condition, which arises when the conditions encountered are of an unusual nature and differ materially from those normally encountered in the kind of work contemplated by the contract. See id. In order to be eligible to recover for a Type I differing site condition, a contractor must first prove, as a threshold matter, that the contract contained some identification of the conditions to be encountered at the site. H.B. Mac, Inc. v. United States, 153 F.3d 1338, 1345 (Fed. Cir. 1998); P.J. Maffei Bldg. Wrecking Corp. v. United States, 732 F.2d 913, 916 (Fed. Cir. 1984). The contractor must then prove by a preponderance of the evidence that the conditions encountered during the contract performance differed materially from the conditions indicated in the contract. To carry this burden, the contractor must demonstrate that the conditions encountered were not reasonably foreseeable in light of all information available to the contractor when bidding, that the contractor reasonably relied upon its original interpretation of the contract, and that the contractor suffered damages as a result of the material variation between the conditions expected and those encountered. H.B. Mac, 153 F.3d at 1345; Stuyvesant Dredging Co. v. United States, 834 F.2d 1576, 1581 (Fed. Cir. 1987).

The Court of Federal Claims held that Renda had failed to establish that it was entitled to additional compensation based upon the Flare Area Claim. Merits Decision at 687–90. The court found that Renda's interpretation of the contract documents was not reasonable. Id. at 687–88. Renda purportedly relied solely upon two boring logs to predict the character of the material that it would encounter in the Flare Area. Id. at 687. Those two boring logs, logs 93-62 and 92-63, were located in the Flare Area, and the court acknowledged that "they would be the first borings that a contractor would examine to determine the character of soils in the vicinity." Id. Those logs did not indicate the presence of stiff clays. Id. at 686. The court determined, however, that those boring logs, whose uppermost elevations were at depths of -33 feet MLT and -44 feet MLT, respectively, reflected subsurface conditions at depths considerably below where Renda would be required to do most of its dredging. Id. at 687. Under these circumstances, the court found, those logs gave an incomplete account of the materials to be dredged in the Flare Area, and Renda should have considered boring logs 3ST-4, 3ST-5, and 3ST-6. Id. at 688. The court stated that those logs, although from locations on the opposite side of the navigation channel from the Flare Area, provided "a more complete picture of the soils to be dredged in the vicinity of the Flare Area than 93-62 and 93-63. The tops of each of these logs is [sic] located between 0 feet MLT and +10 feet MLT." Id. Continued the court, "[e]ach of these logs shows stiff or hard clay at approximately -35 feet MLT through at least -45 feet MLT. These contract indications are consistent with the conditions plaintiff encountered in the Flare Area." Id. (internal citations omitted). The court concluded: "To the extent that plaintiff disregarded these boring logs entirely and decided to rely solely upon logs 93-62 and 93-63 to predict the

character of materials to be dredged in the Flare Area, plaintiff did not act as a reasonably prudent contractor." Id.

Second, the Court of Federal Claims determined that the existence of stiff clays was reasonably foreseeable to Renda. The court stated that, "prior to its bid, [Renda] expected to encounter stiff clays in the Flare Area—and, in fact, relied on its estimates concerning the quantity of such materials when preparing its levee construction plan." Id. at 689. The court noted that a Renda employee, in submitting information to the Corps during contract performance, presented a spreadsheet prepared by Renda during the bid preparation process. Id. at 688. On the spreadsheet, the Flare Area was included within a larger area in which there was shown the likelihood of the existence of stiff clays. Id. The court further noted that the same Renda employee indicated to the Corps that medium to stiff clays from the Flare Area would be utilized in constructing the levies required under the contract. Id. In the court's view, this evidence strongly suggested that Renda was aware of the likelihood of encountering stiff clays in the Flare Area. Id. at 689.

Third, the court determined that Renda had not proven that the damages it suffered as a consequence of encountering stiff clays were solely attributable to the clays and not to other causes. Id. at 689–90.

Renda challenges each of the Court of Federal Claims' findings. First, it asserts that its belief that stiff clays were unlikely in the Flare Area was reasonable, noting that it relied solely on the two borings within the Flare Area precisely because those borings would presumably provide the most accurate picture of clay consistency within the Flare Area. Second, it maintains that the discovery of stiff clays was indeed unforeseeable,

asserting that the items of evidence upon which the court relied to find to the contrary, including the spreadsheet that placed the Flare Area within a region wherein stiff clays were expected, concerned a very large area and were not intended to be particularly precise analyses of where stiff clays were expected. Renda also argues that the unforeseeability of stiff clays is supported by the CO's decision to award Renda an additional $3.1 million under the contract. Third, Renda contends that, by their very nature, stiff clays have the effect of slowing dredging work, regardless of the existence of additional factors that might slow contract performance further. For these reasons, Renda argues that it did in fact prove the marginal harm it incurred as a consequence of stiff clays, thereby entitling it to appropriate damages.

B.

Following a trial, we review factual findings by the Court of Federal Claims for clear error. See Columbia Gas Sys., Inc. v. United States, 70 F.3d 1244, 1246 (Fed.Cir.1995). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). We review the court's legal conclusions de novo. See Columbia Gas, 70 F.3d at 1246.

We see no error in the Court of Federal Claims' findings that stiff clays were foreseeable in the Flare Area and should reasonably have been anticipated, and that, therefore, Renda was not entitled to additional compensation under the contract by reason of a Type I differing site condition. Under these circumstances, it is not

necessary for us to address the issue of whether Renda established the costs it incurred on account of the stiff clays it encountered in the Flare Area.

The pertinent findings of the Court of Federal Claims are set forth above. Having reviewed the record, we cannot say that those findings are clearly erroneous. Boring logs 93-62, 93-63, 3ST-4, 3ST-5, and 3ST-6 are in the record, and their contents are undisputed. As noted, the latter three logs show the presence of stiff clays. At the same time, while the latter three boring logs are, as the court noted, from locations across the navigation channel from the Flare Area, those locations are aligned so that if one extends the borders of the Flare Area to across the channel, each of those logs falls within the Flare Area. This is reflected on page 3 of Exhibit 5, a prebid drawing prepared by the Corps showing the dredging plan for the navigation channel. In addition, Mr. Robert Lofgren, the government's expert in hydraulic dredging, including the preparation of bid estimates for hydraulic dredging work, testified that it was unreasonable to rely upon the two borings within the Flare Area to the exclusion of other borings in adjacent areas that provided additional information. Finally, we think that Renda's claim that it was reasonable in not anticipating stiff clays in the Flare Area is belied by the fact that, as the Court of Federal Claims noted, the spreadsheet prepared by Renda showed the Flare Area as being within an area in which there was the likelihood of encountering stiff clays, as well as by the fact that Renda indicated to the Corps that medium to stiff clays drawn from the Flare Area would be utilized in

constructing levies required under the contract. For these reasons, we will not disturb the Court of Federal Claims' rejection of the Flare Area claim.[1]

II.

A.

We turn now to Renda's challenge to the Reconsideration Decision. In that decision, the Court of Federal Claims declined to alter its two prior rulings denying Renda's motion for leave to amend its complaint to challenge the November 26, 2002 final decision of the CO asserting government claims against Renda. Reconsideration Decision at 797. As seen, the court did so on the ground that Renda's challenge to the CO's decision was untimely because it was not brought within the twelve-month period set forth in the CDA. Id.

We review a ruling by the Court of Federal Claims denying a motion for leave to amend a complaint for an abuse of discretion. E.W. Bliss Co. v. United States, 77 F.3d 445, 450 (Fed. Cir. 1995). The same standard of review applies to the court's denial of a motion for reconsideration. Mass. Bay Transp. Auth. v. United States, 254 F.3d 1367, 1378 (Fed. Cir. 2001). An abuse of discretion occurs when a court misunderstands or misapplies the relevant law or makes clearly erroneous findings of fact. PPG Indus., Inc. v. Celanese Polymer Specialties Co., 840 F.2d 1565, 1572 (Fed. Cir. 1988).

Renda asserts that the Court of Federal Claims erred in its determination that the CDA bars any challenge to the CO's final decision. Relying upon Sharman, Renda

---

[1] As support for its claim that the parties did not foresee encountering stiff clays in the Flare Area, Renda notes that the Corps agreed to provide Renda additional compensation when Renda first reported its discovery of stiff clays in the Flare Area. However, a CO's decision to award additional compensation is not binding upon the agency in subsequent CDA litigation. See Wilner v. United States, 24 F.3d 1397, 1401 (Fed. Cir. 1994).

argues that its pending suit in the Court of Federal Claims divested the CO of his authority to issue a final decision on the government claim. Under these circumstances, Renda urges, even though it did not seek to do so within the twelve-month period set forth in the CDA, it should have been allowed to amend its complaint to challenge the decision, so as to permit the Court of Federal Claims to issue a declaratory judgment with respect to the validity of the November 26, 2002 final decision.

B.

We consider first Renda's reliance upon Sharman. Sharman was a party to a CDA contract with the Navy. Sharman, 2 F.3d at 1566. The contract was for the construction of steel water tanks. Id. On August 7, 1989, the contracting officer terminated the contract for default. Id. On February 2, 1990, Sharman filed suit in what was then the United States Claims Court. Id. at 1567. In its suit, Sharman sought to invalidate the default termination. Id. In addition, it sought to recover alleged uncompensated costs incurred in performing the contract. Id. Subsequently, on October 18, 1990, while Sharman's suit was pending in the Claims Court, the contracting officer issued a final decision asserting a government claim against Sharman in the amount of $1,391,240 for the return of unliquidated progress payments. Id. On January 6, 1992, Sharman filed an amended complaint in the Claims Court, to which the government responded on February 18, 1992, by filing a counterclaim seeking the return of unliquidated progress payments in the amount of $1,391,240, the matter that had been the subject of the October 18, 1990 final decision. Id. at 1567–68. In due course, after a trial, the Claims Court ruled that the default termination was valid and that the government was entitled to recover on the full amount of its counterclaim.

Id. at 1568. After judgment was entered in favor of the United States, Sharman appealed. Id.

On appeal, this court held that the Claims Court had lacked jurisdiction over the government's counterclaim. Id. at 1572. The court started from the premise that "[o]nce a claim is in litigation, the Department of Justice gains exclusive authority to act in the pending litigation[,] . . . [a]nd that exclusive authority divests the contracting officer of his authority to issue a final decision on the claim." Id. at 1571 (internal citations omitted). Viewing the government's counterclaim for unliquidated progress payments as "effectively the same claim" as Sharman's claim for uncompensated performance costs, "but made by the other party," id. at 1570, the court reasoned that the government's progress payments claim was in litigation and therefore could not be the subject of a valid contracting officer's decision: "Because the progress payment claim was the subject of litigation at the outset, the contracting officer had no authority to issue a final decision on the claim after the complaint was filed. Therefore, the October 1990 final decision letter was issued without authority and consequently is a nullity." Id. at 1572. Accordingly, the court reversed the money judgment in favor of the United States. Id.

Renda's reliance on Sharman is misplaced. In Sharman, this court ruled that the Claims Court lacked jurisdiction over the government's claim because it was the product of an invalid contracting officer's decision. Id. However—and this is the critical point—the government's claim and the underlying contracting officer's decision were properly before the Claims Court and this court because the government had put them in issue by asserting its counterclaim. The Claims Court and this court thus were both in a position to rule on the validity of the contracting officer's final decision. That is not the

case here. Renda did not timely appeal the November 26, 2002 final decision, and the government did not put the decision in issue by filing a counterclaim based upon the decision. Renda's argument that the CO's final decision is invalid because, in the words of Sharman, it involves a claim that is the "mirror image" of a claim already in litigation, see id. at 1573, is thus beside the point. Only a court, after hearing argument from both a contractor and the government, may declare a contracting officer's final decision invalid—for whatever reason. A contractor may not do so unilaterally. In this case, the Court of Federal Claims was not in a position to consider the validity of the November 26, 2002 final decision because Renda did not timely appeal the decision and the government did not put it in issue.

That brings us to the basic issue in the case: whether the Court of Federal Claims abused its discretion when it denied Renda's motion for leave to amend its complaint. We hold that it did not. The statutory language is clear and unambiguous. Pursuant to 41 U.S.C. § 605(a), "[a]ll claims by the government against a contractor relating to a contract shall be the subject of a decision by the contracting officer." When dissatisfied with a contracting officer's final decision, a contractor has a choice. "Within ninety days from the date of receipt of . . . [the] decision," it "may appeal [the] decision to an agency board of contract appeals." 41 U.S.C. § 606. Alternatively, the contractor "may bring an action directly on the claim in the United States Court of Federal Claims." Id. § 609(a)(1). If the contractor chooses this latter option, any action in the Court of Federal Claims "shall be filed within twelve months from the date of the receipt by the contractor of the decision of the contracting officer concerning the claim." Id. § 609(a)(3). The statute further provides that "[t]he contracting officer's decision on the

claim shall be final and conclusive and not subject to review by any forum, tribunal, or Government agency, unless an appeal or suit is timely commenced as authorized by this chapter." Id. § 605(b); see United States v. Kasler Elec. Co., 123 F.3d 341, 346 (6th Cir. 1997) ("[T]he statute clearly states that a contractor may seek review of a final decision only in a board of contract appeals or in the Court of Federal Claims. Absent commencement of such review within the prescribed period of time, the decision becomes impervious to any substantive review." (internal citations omitted) (emphasis in original)).

Here, it is undisputed that Renda received the CO's final decision on or about November 26, 2002, and that it was informed of its appeal rights at the time. It further is undisputed that Renda did not appeal to the ASBCA within 90 days of receipt of the decision, and that it was not until July 1, 2004, approximately nineteen months after receipt of the decision, that Renda sought to amend its complaint in the Court of Federal Claims in order to challenge the decision. In denying Renda's motion to amend its complaint on the ground that the motion was untimely, the Court of Federal Claims simply applied the clear language of the CDA to the undisputed facts of the case. See, e.g., Cosmic Constr. Co. v. United States, 697 F.2d 1389, 1391 (Fed. Cir. 1982) (upholding dismissal of an appeal filed outside of the 90-day statutory period for appealing a final decision to a board of contract appeals); Handel v. United States, 16 Cl. Ct. 70, 73 (1988) (denying jurisdiction on the basis of plaintiff's failure to file appeal in Claims Court within one year of final decision). The Court of Federal Claims neither erred as a matter of law nor acted arbitrarily or capriciously. In short, it did not abuse its discretion.

## CONCLUSION

For the foregoing reasons, we see no error in the Merits Decision and no abuse of discretion in the Reconsideration Decision. Accordingly, we affirm both decisions. We also affirm the final judgment of the Court of Federal Claims based upon those two decisions.

AFFIRMED

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT IS A TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE.
UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
By: [signature] Date: 3/18/2008